ELLEN F. ROSENBLUM
Attorney General
CARLA A. SCOTT #054725
Senior Assistant Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
CRAIG M. JOHNSON #080902
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.state.or.us
          Sheila.Potter@doj.state.or.us
          Craig.M.Johnson@doj.state.or.us

Attorneys for Defendants Patrick Allen and Dolores Matteucci

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No.  3:02-cv-00339-MO (Lead Case)<br>Case No.  3:21-cv-01637-MO (Member Case)<br>Case No.  6:22-CV-01460-MC (Member Case) |
| Plaintiffs, | |
| v. | DECLARATION OF DEREK WEHR |
| PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, | |
| Defemds | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES, | |
| Intervenors. | |

Page 1 -    DECLARATION OF DEREK WEHR
          CAS/mm8/ 594169513
                              Department of Justice
                              100 SW Market Street
                              Portland, OR 97201
                              (971) 673-1880 / Fax: (971) 673-5000

| | |
|---|---|
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, | Case No. 3:21-cv-01637-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity, | |
| Defendants, | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES, | |
| Intervenors. | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES OREGON, | Case No. 6:22-CV-01460-MC (Member Case) |
| Plaintiffs, | |
| v. | |
| PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, | |
| Defendant. | |

**I, Derek Wehr, hereby declare:**

1.      I am the Deputy Superintendent of the Oregon State Hospital (OSH) at its Salem campus. During my 29-year career with the State of Oregon, I have served OSH for 25 years in the following roles: Director of Performance Improvement, Forensic Unit Director, Psychiatric

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Social Worker, Transformation Leader, Community Outreach Specialist, Lean Leader, Mental Health Therapist, and Mental Health Therapy Technician. I hold a bachelor's degree in Psychology from Western Oregon University and a master's degree in Social Work from Portland State University.

2.      I make this declaration based upon a combination of personal knowledge and in reliance upon records which are regularly maintained in the ordinary course of business.

3.      My job duties include, among other things: (a) oversight of hospital occupancy management on both OSH campuses; (b) oversight of the OSH Admissions Department; (c) oversight of the six specialized programs on the OSH Salem and Junction City Campuses that govern 24 in-patient psychiatric units licensed as Hospital Level of Care and five behavioral health units licensed as Secure Residential Treatment Programs; and (d) serving as acting Superintendent of OSH when the current Superintendent is away from the office.

4.      Three populations are served within OSH: (1) Civilly committed patients, people who have been found by the court to be an imminent danger to themselves or others, or who are unable to provide for their own basic health and safety needs due to their mental illness; (2) those found Guilty Except for Insanity (GEI) in a criminal case; and (3) aid-and-assist patients, people who have been arrested but are not able to participate in their defense because of a mental illness. Aid-and-assist patients have been ordered committed to OSH under ORS 161.370 (.370 orders) for stabilization and educational services that enable them to understand the criminal charges against them and thus to "aid and assist" in their own defense.

5.      Between October 10-23, 2022, OSH admitted 42 patients (39 aid-and-assist and 2 GEI/PSRB) with an average wait time of 30.3 days for the 39 aid-and-assist patients and 31.7 days for the 3 GEI/PSRB patient. As of October 24, 2022, 91 patients (86 aid-and-assist and 5

CAS/mm8/ 594169513

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

GEI/PSRB) were on the admission list.

6.      Attached as Exhibit 1 is a graph depicting the increase in .370 orders between 2012 and September 2022.

7.      I understand that this Court has entered an Order at ECF No. 271 that limits the length of inpatient restoration at OSH for a person ordered committed to OSH pursuant to ORS 161.370 as follows:

   a.   For patients whose most serious charge is a misdemeanor, the maximum duration of commitment for restoration shall be the lesser of the maximum permissible sentence for the underlying offense or 90 days;

   b.   For patients whose most serious charge is a felony, the maximum duration of commitment for restoration shall be six (6) months, unless the felony is listed in ORS 137.700(2) in which case the maximum duration of commitment for restoration shall be one year.

8.      Applying this Order in consultation with the neutral expert, the chart attached hereto as Exhibit 2 chart depicts the discharge status of patients at OSH as of October 26, 2022: As noted in Exhibit 2, of the 255 in "Cohort 1" still at OSH, 97 (38.0%) are already over their restoration limit under this Court's Order at ECF No. 271.  Also as noted in Exhibit 2, of the 154 discharged from Cohort 1 since September 1, 2022, only 7 (4.5%) discharged after meeting the 30-day Restoration Limit notice period under the order referenced in paragraph 7 above.  The other 147 patients discharged in the ordinary course (for example, through the ready to place process under SB 295, upon a finding of able or never able, or at the end of their statutory end of jurisdiction).

9.      Attached hereto as Exhibit 3 is a chart projecting compliance with the seven-day

CAS/mm8/ 594169513                          Department of Justice
                                            100 SW Market Street
                                            Portland, OR 97201
                                      (971) 673-1880 / Fax: (971) 673-5000

admission requirement under *Mink* with and without the length of inpatient restoration limits in this Court's Order at ECF No. 271.

10.     I have reviewed the document entitled "Amicus Brief Regarding Judicial Authority Filed by Marion and Washington Counties" at ECF No. 290.  On page 10, this document includes a chart entitled "OSH Average Daily Population by Month and Legal Status Type since 2000."  ECF No. 290 at p. 10. Citing this document, Washington and Marion Counties assert that "it is clear that physical capacity to house additional patients currently in county jails without adequate mental health services appears to exist."  ECF No. 290 at pp. 10-11.  This assertion is incorrect.

11.     In October 2004, the OSH "system" had the highest number of licensed beds, with a total of 777 beds.[1]  This total included the old Salem campus (649 beds), the old Portland campus (68 beds), and the old Blue Mountain Recovery Center (60 beds).  None of those facilities currently exist.

12.     In 2012, the old Salem campus was replaced by the new and current Salem campus. The current Salem campus opened with a lower bed capacity than the old Salem campus, with the new and current Salem campus having only 561 beds.  The Blue Mountain Recovery Center was closed in 2014 and was not replaced.  This resulted in a loss of 60 beds. The old Portland campus was replaced by the current Junction City campus in 2015.  This increased bed capacity from 68 beds at the Old Portland campus to 144 beds at the current Junction City campus.  The current OSH "system" includes the Salem and Junction City; together they have a total of 705 hospital level of care available beds.  The attached Exhibit 4 reflects current bed capacity within the OSH system for those needing hospital level of care.

---

[1] In 2004 and 2005 OSH was serving more patients than for which it had licensed beds.

Page 5 -   DECLARATION OF DEREK WEHR

13.     I also reviewed page 13 of the document at ECF No. 276 and the conclusions Washington and Marion counties ask this Court to draw from "Table 1" that appears on that page.  The data in Table 1 are correct, but this filing draws an incorrect conclusion regarding the average days waiting to admission for those in jail under forensic admissions orders.  The average days waiting value in Table 1 refers to all people *currently* waiting to be admitted (i.e., they are still in jail) and is not a good indication of how long patients actually wait to be admitted since they have not been admitted yet.  The more accurate data element for understanding the wait time to admission for forensic persons in jail is the average days waited for all forensic patients who have been admitted to OSH where we know exactly how long each has waited prior to admission.  This data is reflected in the chart below, which is current through September 2022:

| Month | Average Wait Time Prior to Admission | |
| --- | --- | --- |
| | Aid & Assist | GEI/PSRB |
| Jan-22 | 30.8 | 58.9 |
| Feb-22 | 42.7 | 35.3 |
| Mar-22 | 34.3 | 27.0 |
| Apr-22 | 25.1 | 24.0 |
| May-22 | 31.1 | 20.9 |
| Jun-22 | 34.6 | 21.1 |
| Jul-22 | 39.2 | 28.9 |
| Aug-22 | 34.6 | 23.1 |
| Sep-22 | 35.3 | 36.3 |

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on November  27 , 2022.

*s/ Derek Wehr*
DEREK WEHR

Page 6 -     DECLARATION OF DEREK WEHR

CAS/mm8/ 594169513



Exhibit 1
Page 1 of 1

| Cohort 1 | At OSH as of 9/1/2022 | At OSH as of 10/26/2022 | Restoration Limit Notice Outcomes (total since 9/1/2022) | | | Discharge Reasons (total since 9/1/2022) | | | | | | | Total Discharged |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 30-Day RL Notices Sent | Discharged Prior to Meeting 30-Day RL Notice Period | Discharged After Meeting 30-Day RL Notice Period | Found Able | Found Never Able | Community Restoration | Charges Dismissed or Released | Discharged After Meeting 30-Day RL Notice Period | End of Statutory Jurisdiction | Other | |
| Misdemeanor | 85 | 34 | 35 | 16 | 5 | 14 | 2 | 21 | 6 | | 5 | 3 | | 51 |
| Felony | 217 | 139 | 24 | 6 | 2 | 41 | 8 | 24 | 3 | 2 | | | | 78 |
| Violent Felony | 107 | 82 | | | | 15 | 8 | | 1 | | 1 | | 25 |
| Total | 409 | 255 | 59 | 22 | 7 | 70 | 18 | 45 | 10 | 7 | 4 | 0 | 154 |

| Cohort 2 | Admitted since 9/1/2022 | At OSH as of 10/26/2022 | Restoration Limit Notice Outcomes (total since 9/1/2022) | | | Discharge Reasons (total since 9/1/2022) | | | | | | Total Discharged |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 30-Day RL Notices Sent | Discharged Prior to Meeting 30-Day RL Notice Period | Discharged After Meeting 30-Day RL Notice Period | Found Able | Found Never Able | Community Restoration | Charges Dismissed or Released | Discharged After Meeting 30-Day RL Notice Period | Other | |
| Misdemeanor | 47 | 46 | | | | | | 1 | | | | 1 |
| Felony | 81 | 79 | | | | 2 | | | | | | 2 |
| Violent Felony | 16 | 16 | | | | | | | | | | 0 |
| Total | 144 | 141 | 0 | 0 | 0 | 2 | 0 | 1 | 0 | 0 | 0 | 3 |

Exhibit 2
Page 1 of 1

**Projections with and without Plaintiffs' proposed order regarding length of restoration**

| Month | No Changes to Current Practices | | | | Implement Restoration Limits Starting Sep 2022 | | | |
|---|---|---|---|---|---|---|---|---|
| | Est. New Orders[1] | Est. Discharges[2] | Difference | **Est. Admit List Count[3]** | Est. New Orders[1] | Est. Discharges[4] | Difference | **Est. Admit List Count[3]** |
| Sep-22 | 74 | 66 | +8 | **83** | 74 | 84 | -10 | **65** |
| Oct-22 | 74 | 66 | +8 | **91** | 74 | 84 | -10 | **55** |
| Nov-22 | 74 | 66 | +8 | **99** | 74 | 84 | -10 | **45** |
| Dec-22 | 74 | 66 | +8 | **107** | 74 | 84 | -10 | **35** |
| Jan-23 | 74 | 66 | +8 | **115** | 74 | 84 | -10 | **25** |
| Feb-23 | 74 | 66 | +8 | **123** | 74 | 84 | -10 | **15** |
| Mar-23 | 79 | 66 | +13 | **136** | 79 | 83 | -4 | **11** |
| Apr-23 | 79 | 66 | +13 | **149** | 79 | 83 | -4 | **7** |
| May-23 | 79 | 66 | +13 | **162** | 79 | 83 | -4 | **3** |
| Jun-23 | 79 | 66 | +13 | **175** | 79 | 83 | -4 | **0** |
| Jul-23 | 79 | 66 | +13 | **188** | 79 | 83 | -4 | **0** |
| Aug-23 | 79 | 66 | +13 | **201** | 79 | 83 | -4 | **0** |
| Sep-23 | 83 | 66 | +17 | **218** | 83 | 83 | 0 | **0** |
| Oct-23 | 83 | 66 | +17 | **235** | 83 | 83 | 0 | **0** |
| Nov-23 | 83 | 66 | +17 | **252** | 83 | 83 | 0 | **0** |
| Dec-23 | 83 | 66 | +17 | **269** | 83 | 83 | 0 | **0** |

[1] The average number of orders received over the previous 12 months (Aug 2021 through Jul 2022) has been 74 per month. But that number has been increasing each year (by 12% from 69 orders per month the previous 12 months) and the expectation is that it will continue to increase. To reflect that, the estimated new orders in this projection increase every six months based on that 12% annual rate.

[2] Based on the average A&A discharges over the last 12 months (Aug 2021 through Jul 2022).

[3] Using the admit list count as of 8/23/22 (75) and adding or subtracting the difference each month.

[4] Assumes OSH will have the estimated 66 discharges per month with an additional 18 per month as the 109 patients who will be over the proposed restoration limits as of 8/31/2022 are discharged over the next 6 months - resulting in a total of 84 discharges per month until all 109 have been discharged. After those 109 patients have been discharged, the estimated discharges per month moving forward (83) are calculated based on the estimated lengths of stay with the proposed restoration limits in place.

After the 109 Aid & Assist patients at OSH who are already over the proposed restoration limits have been discharged by the end of February 2023 (indicated by the double line between Feb-23 and Mar-23 in the data table above), and with the limits in place for new admissions, the anticipated average lengths of stay are estimated to generate roughly 83 discharges per month. From this point forward, OSH should be able to maintain compliance with Mink/Bowman as long as new orders don't exceed 83 per month.



Exhibit 3
Page 1 of 1

# Oregon State Hospital Census by Unit Type          September 20, 2022

| Unit Type | Number of Units | Total Beds | Managed Occupancy | Current Population | Aid & Assist Population | Civil Population | PSRB & GEI Population | Scheduled Admissions |
|---|---|---|---|---|---|---|---|---|
| **SALEM CAMPUS** | | | | | | | | |
| Progressive Care (A&A, Civil, PSRB) | 14 | 350 | **336** | **332** | 262 | 9 | 61 | **+3 A&A** |
| CV-19 PUI/COVID + Admissions (PSRB, A&A, Civil) | 1 | 24 | **23** | **16** | 11 | | 5 | |
| High-Acuity (PSRB, A&A, Civil) | 6 | 124 | **115** | **116** | 101 | 1 | 14 | |
| SRTF PSRB | 3 | 90 | **87** | **87** | 33 | | 54 | |
| **JUNCTION CITY CAMPUS** | | | | | | | | |
| Progressive Care (PSRB, Civil) | 3 | 75 | **72** | **72** | | 3 | 69 | |
| SRTF PSRB | 3 | 75 | **72** | 72 | | | 72 | |
| **SRTF Totals** | 6 Units | 165 Beds | **159 (96.4%)** | **159 (96.4%)** | **407** | **13** | **275** | **Total Pop 695 +3** |
| **Available Hospital Level of Care Totals** | 24 Units | 573 Beds | **546 (95.3%)** | **536 (+3) (94%)** | + 3 A&A scheduled | | | **Total scheduled 3** |
| **Total Beds** | 30 Units | 738 Beds | **705 (95.5%)** | **695 (+3) (94.6%)** | +77 A&A unscheduled | +14 Civil unscheduled | +3 PSRB/GEI unscheduled | **Total Waiting 94** |

Exhibit 4

Page 1 of 1