**Eric J. Neiman, OSB #823513**
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800
Facsimile: 971.712.2801

**Thomas R. Johnson, OSB #010645**
TRJohnson@perkinscoie.com
**Alex Van Rysselberghe, OSB #174836**
AVanRysselberghe@perkinscoie.com
PERKINS COIE, LLP
1120 NW Couch 10th Floor
Portland, Oregon 97209
Telephone: 503.727.2000
Facsimile:  503.727.2222

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, <br><br> Defendant. | Case No. 6:22-cv-01460-MO <br><br> **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 1

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

## INTRODUCTION

Under Oregon law, individuals who are dangerous to themselves, dangerous to others, or unable to take care of their own basic needs due to a mental disorder may be civilly committed to the Oregon Health Authority for involuntary detention and treatment. Involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509 (1972). The State and Federal Constitutions require that mentally ill persons who are involuntarily detained receive treatment calculated to lead to the end of their involuntary detention. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). It is not acceptable under the law—let alone basic standards of human dignity and decency—to merely "warehouse" mentally ill individuals away from the community and not provide them appropriate treatment during their involuntary detention. *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (recognizing that "all too often the promise of treatment has served only to bring an illusion of benevolence to what is essentially a warehousing operation of social misfits") (quoting *U.S. ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 936 (7th Cir. 1975)).

Civil commitment is "to the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). However, the Oregon Health Authority (OHA) has failed in its responsibilities to this vulnerable population. Rather than ensure and provide timely access to meaningful treatment, OHA is abandoning civilly committed patients and leaving them for extended periods of time in acute care community hospitals. These acute care community hospitals are not equipped, staffed, or intended to provide long-term treatment for mental illness. Acute care community hospitals are meant to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises—treatment which involves emergency care, highly restrictive settings, and constant monitoring. But civilly committed patients who have already been stabilized (that is, most civilly committed patients) do not need that kind of care; instead, they need long-term treatment. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 2

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

with the goal of enabling the patient to recover from their illness and return to the community. Long-term treatment requires a calmer, less stressful, less-restrictive environment where patients have more independence, peer support, socialization, and opportunities to develop life and health skills. Thus, when OHA leaves civilly committed patients indefinitely in acute care hospitals, they do not meaningfully recover because they are denied access to long-term treatment. This failure to provide the appropriate level of treatment violates patients' constitutional rights.

OHA's practice also violates the constitutional rights of acute care community hospitals by taking hospitals' property with neither due process of law nor just compensation. Instead of meeting its statutory obligation to provide mental health services and treatment to civilly committed individuals, the state has inappropriately transferred all of its responsibilities to care for those individuals to acute care hospitals. OHA's failure to make even minimal efforts to locate appropriate long-term treatment facilities for civilly committed individuals forces acute care hospitals to shoulder the obligation. Because hospitals cannot discharge civilly committed individuals, who desperately need long-term treatment, OHA's failure to act means that acute care hospitals must hold civilly committed individuals for long periods of time. In many cases, acute care hospitals have held civilly committed individuals for weeks, months, or even the patient's entire 180-day commitment period (and sometimes additional recommitment periods). As a result, acute care hospitals must dedicate significant resources to patients who have no medical reason to be in acute care settings. These resources include the efforts of physicians, nurses, other care providers, and hospital staff as well as costs associated with medication, housing patients who should be elsewhere, injuries to hospital staff, and damage to hospital property. OHA does not adequately compensate and reimburse hospitals for expending these resources and fails to assist in the protection of hospital staff and other patients.

In addition to harming civilly committed individuals and community hospitals, OHA's actions also negatively impact the community. Oregon is in the middle of an unprecedented mental health crisis and community hospitals are desperately needed to treat and stabilize other

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 3

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness. Because the beds of acute care hospitals are taken up by civilly committed individuals, who should be transferred to long-term treatment facilities that can provide them with meaningful treatment, individuals in acute mental health crises are unable to access care at acute care hospitals.

OHA has been keenly aware of this problem for years but has done nothing to fix it. Instead, OHA has abdicated all responsibility for civilly committed individuals, and done nothing to increase capacity to ensure these individuals have access to appropriate long-term placements.

OHA has defended its actions by offering expedited admission to the Oregon State Hospital (OSH) for certain civilly committed individuals. But OSH has limited expedited admission to only those civilly committed patients who are severely violent (which most are not) and gone so far as to require the patient to injure others while in an acute care hospital to even be considered for admission. While care providers are routinely assaulted (be it kicked, punched, shoved, or bitten), rarely is that enough to gain expedited admission to OSH. Even when care providers and others are injured, OHA routinely refuses expedited admission due to the patient not being violent enough. This unlawful practice, which encourages workplace violence, should not be permitted to continue. Acute care hospitals are not set up to handle that level of aggression. Nor is it acceptable, safe, or sustainable to require other patients and care providers to be exposed to a heightened risk of violence in community hospitals, which are supposed to be therapeutic healing environments.

OHA also points to the fact that a federal court order requires it to accommodate criminal defendants at OSH who are found guilty except for insanity or unable to aid and assist in their own defense. Yet OHA has been under these orders for years, and has done little to build capacity in the community to ensure an adequate supply of secure beds are available for individuals who are civilly committed. To be clear, Plaintiffs strongly support the rights of

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 4

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

criminal defendants with severe mental illness to be moved out of jails and provided treatment. But OHA is supposed to serve all three populations of patients. It is past time for change.

Acute care community hospitals now bring this lawsuit to remedy OHA's unlawful practice of abandoning civilly committed individuals in acute care facilities and failing to even attempt to provide them with appropriate treatment during their involuntary detention. This practice violates OHA's statutory duties and ignores the fundamental rights of civilly committed Oregonians: access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980).

Plaintiffs do not seek compensatory damages—instead, Plaintiffs seek only declaratory and injunctive relief, nominal damages, and recovery of their attorneys' fees for having to pursue litigation to force OHA to accept its responsibility to provide mental health services to civilly committed individuals. Plaintiffs seek a declaration that OHA's practices of forcing acute care hospitals to fulfill OHA's statutory obligations violate the constitutional rights of both civilly committed individuals and the community hospitals where they are unnecessarily confined. Plaintiffs further seek an injunction abolishing these practices and requiring OHA to fulfill its statutory obligations to ensure civilly committed individuals finally receive the care and treatment they are entitled to by law.

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12132, and 28 U.S.C. § 2201.

2.      This Court has subject matter jurisdiction pursuant to 28 USC § 1331 (federal question jurisdiction) and 28 USC § 1343 (civil rights jurisdiction), and supplemental jurisdiction over claims based on state law pursuant to 28 USC § 1367.

3.      Declaratory and additional relief are authorized by 28 U.S.C. §§ 2201 and 2202.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b).

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 5

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

**PARTIES**

5.      Plaintiffs are not-for-profit corporations licensed to provide hospital and healthcare services. The community hospitals operated by Plaintiffs all receive patients who are detained or civilly committed pursuant to Oregon law, as alleged below.

6.      The community hospitals operated by Plaintiffs are not designed, equipped, staffed, or intended to provide long-term mental health treatment for civilly committed individuals. The behavioral health units operated by Plaintiffs are intended to serve the community as acute care facilities at which patients experiencing acute mental health crises are evaluated, stabilized, and discharged to the next appropriate level of care. By design, the average length of stay for most patients in those units is 14 days or less. However, due to the practices and conduct of OHA, civilly committed individuals commonly remain in the behavioral health units of community hospitals for much longer periods of time. These units are highly restrictive, locked environments. Patients are able to leave the units only for short periods of time, if at all, because of environmental and staffing limitations. This type of confined setting is not designed to provide the appropriate therapeutic setting for long-term treatment. As a result, patients left languishing in these environments by OHA do not receive needed care and, in some cases, decompensate back to unstable conditions. OHA's failure to provide appropriate treatment settings for civilly committed patients, despite its legal responsibility to do so, directly results in unnecessarily long lengths of stay in community hospitals.

7.      Plaintiffs also operate emergency departments and medical-surgical units within their community hospitals. As alleged below, patients experiencing mental health crises often are detained in those units pursuant to Oregon civil commitment laws because of the shortage of acute psychiatric beds due to practices and conduct of OHA. These patients cannot access behavioral health units or other treatment settings that they desperately need because there are no beds available for care.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 6

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

8.      Plaintiff Legacy Emanuel Hospital & Health Center, doing business as Unity Center for Behavioral Health (Unity), operates an acute care behavioral health hospital in Portland, Oregon. It has 85 adult beds and 22 adolescent beds. Unity provides both emergency and inpatient services to individuals experiencing mental health crises. Unity is an acute care hospital, meaning it provides assessment and short-term stabilizing treatment for patients experiencing an acute behavioral health crisis. Unity is not a long-term treatment facility, nor is it designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed.

9.      Plaintiff Legacy Health operates six hospitals in Oregon. These hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

10.     Plaintiff PeaceHealth operates four hospitals in Oregon. One of those hospitals has a 35-bed acute care behavioral health unit. It has an average length of stay of ten days. It is not designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other PeaceHealth hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

11.     Plaintiff Providence Health & Services – Oregon operates eight hospitals in Oregon. Four of these hospitals have acute care behavioral health units, which combined include 66 adult beds, 19 senior beds, and 22 adolescent beds. None of those acute care behavioral health units are designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 7

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

12.     Plaintiff St. Charles Health System, Inc. operates four hospitals in Bend, Redmond, Madras, and Prineville, Oregon. Only the hospital in Bend has acute behavioral health beds. It has a five-bed secure psychiatric services unit, and a 15-bed acute care behavioral health unit. The Bend hospital is not equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

13.     Defendant Patrick Allen is director of OHA, an agency of the State of Oregon. He is sued in his official capacity.

## FACTS

**A.    Civilly committed patients are entitled to meaningful long-term treatment during their involuntary detention.**

14.     More than 500 individuals with severe mental illnesses are civilly committed to OHA for treatment every year. These individuals exhibit acute symptoms such as psychosis (dissociation with reality), paranoia, hallucinations, suicidal or homicidal ideation, and sometimes violent behaviors toward themselves and others. In short, these individuals are very ill and require significant care and treatment.

15.     Civil commitment is a drastic measure that the state takes only if no other option for care is available. A judge may commit a person only if a mental illness makes the person a danger to themself or others or unable to provide for basic personal needs like health and safety. The Supreme Court has held that involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509. Accordingly, due process requires that civilly committed persons receive treatment calculated to lead to the end of their involuntary detention. *Id.* Failing to provide this type of care to persons who are involuntarily detained—and instead using involuntary commitment to merely "warehouse" mentally ill persons away from the community—violates due process, not to mention basic standards of human dignity and decency.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 8

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

16.     To that end, when the state pursues civil commitment, the state must provide mental health treatment that gives civilly committed patients "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778. Thus, civil commitment requires individualized treatment in the least restrictive setting possible with the goal of restoring the person's liberty, and commitment can last only long enough for the purpose of giving patients treatment that gives them a "realistic opportunity to be cured or to improve" so that they can return to the community and not be recommitted.

17.     To get a "realistic opportunity to be cured or to improve," a patient typically requires two phases of treatment. First, the patient must be stabilized. The goal of stabilization is to manage and alleviate patients' most acute symptoms so that those symptoms do not inhibit long-term recovery. Stabilizing treatment typically involves medication to manage acute symptoms like psychosis, hallucinations, delusions, and/or aggressive or violent physical behavior. The patient must be monitored so medications can be managed and staff can promptly intervene if patients try to hurt themselves or others. Due to these limitations, the patient must be in a highly restrictive setting, and patients often cannot be allowed to move about as they please. Because stabilization is intended to last for only 1-10 days, this highly restrictive environment is meant to be only temporary and is the role acute care hospitals are intended to play in the process.

18.     After being stabilized, a civil commitment patient typically requires long-term treatment. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself with the goal of enabling the patient to recover from their illness and return to the community. Each patient in long-term treatment typically has an individualized treatment plan, which helps them recover from their acute mental illness. Long-term treatment involves fewer restrictions and offers more independence so that patients

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 9

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

can practice and develop life and health skills for being successful in the community, including the ability to take day passes and overnight visits to facilitate transition back to the community. It involves a more stable peer environment with less patient turnover, more socialization, more group counseling, and more peer support. It involves training and education programs for patients to learn how to care for their basic needs, maintain employment, and maintain healthy relationships. It requires a calmer, less stressful environment than an acute-care hospital, that reduces the risk of the individual decompensating back into an acute mental health crisis.

19.    An acute care environment, where patients are stabilized, is not appropriate for patients who need long-term recovery. Acute care environments are, by necessity, far more restrictive than long-term treatment environments. Acute care environments typically house peer patients in crisis and require more monitoring and staffing than do long-term treatment environments. These features can be counterproductive to patients who have already been stabilized and who are working to recover from their mental illness so that they can regain their freedom and return to their community. A patient in long-term recovery cannot receive the socialization and skill-development opportunities in an acute care environment, and the increased level of restriction is unnecessary for such patients and often can cause decompensation.

20.    For these reasons, it is difficult to overstate how crucial it is that a civilly committed patient, once stabilized, be transitioned into an environment conducive to long-term treatment. If a civilly committed patient is not transferred, the patient's liberty is unnecessarily curtailed, the patient does not meaningfully recover, the patient may decompensate, and the very purpose of civil commitment is undermined.

**B.    Oregon law requires OHA to ensure that civilly committed individuals receive appropriate long-term treatment.**

21.    The state is responsible for the civil commitment process. The state initiates civil commitment proceedings; the state pursues civil commitment from the court; and, if commitment is ordered, patients are committed "to **the Oregon Health Authority** for treatment."

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 10

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

ORS 426.130(1)(a)(C) (emphasis added). As such, it is the responsibility of the state to provide civilly committed individuals with necessary treatment in the most appropriate and least restrictive setting possible to fulfill patients' constitutional rights.

22.     Where a person has been civilly committed, Oregon law charges OHA with the responsibility for finding an appropriate placement for long-term treatment. Oregon law requires that, "[u]pon receipt of the order of commitment, OHA or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1). By statute, OHA must direct civilly committed persons "**to the facility best able to treat**" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "**suitable**" facility. ORS 426.060(2)(a), (d) (emphasis added).

23.     The director of OHA may assign or transfer the civilly committed person to any facility "which, in the opinion of the director, will appropriately meet the mental health needs of the committed person." OAR 309-033-0290(1)(a). The director of OHA *may* place the person in a community hospital—however, in doing so, the director of OHA must "consult" with the community hospital's admitting physician, and both must, together, "determine whether the best interests of a committed person are served by an admission to a community hospital." OAR 309-033-0270(3)(a).

**C.     OHA has shut the doors of the Oregon State Hospital to civilly committed patients and failed to create appropriate long-term placement options in the community.**

24.     Oregon's civil commitment system has broken down as OHA has, for years, ignored its statutory obligations to this most vulnerable population. Rather than increasing capacity and addressing the problems, OHA has completely abdicated its lawful duty to transfer civilly committed patients out of highly-restrictive acute care hospitals and into appropriate long-term treatment settings. For most of these individuals, a hospital is the doorway to the civil commitment system. However, many patients experiencing a mental health crisis do not get past

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 11

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

that doorway. By law, every patient coming to a hospital emergency department must be given a medical screening examination and provided stabilizing treatment for an emergency medical condition, including a psychiatric crisis. Some are admitted to the hospital for acute stabilization of their symptoms. Once a patient is committed, however, OHA is leaving them stuck in acute care hospitals indefinitely, instead of transferring them to appropriate long-term placements. Some civil commitment patients even remain in overly restrictive hospital settings for the entire length of their commitment, which can be 180 days or longer if renewed by the court. Despite the hospitals' best efforts, they cannot provide the long-term treatment civilly committed individuals need and are entitled to by law. The acute care community hospitals are not equipped, staffed, or designed to house civilly committed individuals for months at a time, let alone six months or more, when there is an urgent need for those beds by other acute psychiatric patients in the community.[1]

25.    OHA has neglected its responsibilities to civilly committed patients because it has failed to provide and build out adequate treatment capacity for civilly committed individuals, and because OHA is unlawfully prioritizing care for other populations of mentally ill individuals. Historically, civilly committed individuals went to OSH, the mental health hospital operated and managed by OHA. ORS 179.321(1). OSH is intended to be used by the state "for the care and treatment of persons with mental illness." ORS 426.010. It is the only state hospital in Oregon and is supposed to serve three populations of mentally ill persons: (1) civilly committed individuals, (2) those found guilty except for insanity (GEI) in a criminal case, and (3) aid-and-

---

[1] Meanwhile, civilly committed patients have no one to advocate on their behalf because Oregon's civil commitment scheme does not provide them with counsel after the point of commitment. While individuals who are detained have a right to counsel during the court process leading up to an order of commitment, that representation ends at the time the order is entered. Having been civilly committed, individuals are no longer represented by counsel to protect their rights. They are lost to the oversight of the courts that have committed them, as is OHA, which disclaims responsibility for their care.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 12

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

assist patients who are arrested but not able to participate in their defense because of a mental illness.

26.     However, over the years and as a result of other federal court litigation, OHA has increasingly prioritized the admission of aid-and-assist and GEI patients at OSH over civil commitment patients. For example, in November of 2018, a 26-bed unit for civil commitment patients at OSH was turned into a unit for aid-and-assist patients. In July of 2019, another 26-bed unit for civil commitment patients was converted to use for aid-and-assist patients. In December of 2019, OSH stopped taking civilly committed patients, with very few exceptions, and shifted admission priorities to focus almost entirely on the aid-and-assist and GEI populations. Over this period, OHA has done virtually nothing to create additional capacity for civilly committed patients to receive needed treatment in appropriate settings.

27.     As a result, and as shown below, the admittance rate of civilly committed patients to OSH has plummeted (and the number of civilly committed individuals stuck in acute care hospitals has skyrocketed). Five years ago, about one-third of OSH patients, or more than 200, were civilly committed. Between January and March of 2021, 94% of new patients at OSH were aid-and-assist patients, and in June of 2021, the civil commitment population made up less than 5% of OSH patients. Yet, at the same time, OHA has failed to provide other options for appropriate long-term placements and done nothing to build capacity in the community to ensure an adequate supply of secure beds are available for individuals who are civilly committed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 13

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222



28.    Plaintiffs strongly support the rights of aid-and-assist and GEI patients to be removed from jail and to receive meaningful treatment. But OHA must do this without abandoning civilly committed patients. By law, OHA may not prioritize aid-and-assist patients over civilly committed patients if it means giving civilly committed patients inadequate care. The Ninth Circuit has held that, when it comes to providing constitutionally adequate treatment to involuntarily detained patients, "[l]ack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Ohlinger*, 652 F.2d at 779. Indeed, OHA's recent practices have already been adjudged unlawful by this Court. On November 15, 2021, in *Bowman v. Matteucci*, 3:21-cv-01637, Judge Marco A. Hernández granted injunctive relief to GEI patients who claimed that they were unconstitutionally being denied admission to OSH because OHA was prioritizing the admission of aid-and-assist patients. OHA argued that, due to an injunction regarding admission requirements for aid-and-assist patients in *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121–22 (9th Cir. 2003), OHA had to prioritize aid-and-assist patients over other populations of patients. Judge Hernández expressly rejected the notion that OHA may prioritize the constitutional rights of some patients over others:

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 14

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

> If OSH cannot admit GEI patients while admitting aid-and-assist patients within the court-ordered timeframe, it's because OSH lacks the space and the funding to do so—not because the *Mink* order compels it to prioritize one group over another. In other words, any prioritization stems from Defendant's failure to provide the funds, staff, and facilities necessary to satisfy the constitutional rights of both groups. **When satisfying constitutional guarantees, Defendants cannot rob Peter to pay Paul.**

*Bowman v. Matteucci*, 3:21-cv-01637, 2021 WL 5316440, at *2 (D. Or. Nov. 15, 2021) (emphasis added). Despite this unambiguous ruling, OHA continues to systematically prioritize care for other patients over care for civilly committed patients, once again "robbing Peter to pay Paul."

29.     OHA's failure to provide appropriate and legally required treatment to civilly committed individuals—and the negative impact on Oregon's community hospitals—is well known to OHA. A 2017 study for OHA concluded: "Patients at the state hospital for aid and assist take up beds that could be used for civil commitment patients. This results in more civilly committed individuals waiting in acute care for a state hospital bed to open up. This decreases the access to acute care beds, which causes a backup in the ED. Multiple strategies have tried to reverse this trend with only minimal success. OHA is revitalizing planning and actions and will have a strategic action plan in place by February 2017."[2] But, despite having known of its practices since 2017, OHA has continued to ignore its statutory obligations and has continued to knowingly **reduce** long-term placement options for civilly committed patients over that time.

30.     Today, OSH rarely admits civilly committed patients—despite the fact that OSH is not at 100% capacity and has empty beds.[3] This last year, OSH averaged less than 20 civil commitment patients per month, including a grand total of 16 in June of 2022. In the last few years, the only way a handful of civilly committed individuals have gotten into OSH is by

---

[2] Oregon Health Authority, Emergency Department Boarding of Psychiatric Patients in Oregon, Report Briefing, Feb. 1, 2017, *available at* https://www.oahhs.org/assets/documents/files/publications/0%20OHA%20Psychiatric%20ED%20Boarding%20Report%20Brief%20Final.pdf.

[3] This is according to sworn testimony from behavioral health director Steve Allen on July 20, 2022.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 15

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

qualifying for expedited admission due to being severely violent. To qualify for expedited admission, OHA requires that the person exhibit severe aggression directed towards other persons and/or property in the previous two weeks, and which has (1) resulted in injury to others or property destruction, (2) required frequent or prolonged restraint and/or seclusion, (3) has persisted and remains at ongoing high risk of recurrence despite adequate treatment, and (4) cannot be safely treated on an acute psychiatric unit.[4] In other words, OHA requires the person to be severely violent towards others and/or property and have *already injured someone or destroyed property* while in the acute care hospital to even be considered for admission to OSH. Even then, individuals who should qualify for expedited admission are routinely denied, and left in acute care hospitals. In effect, OHA has made admission to OSH next to impossible for most civilly committed individuals who are not violent at all, and have done nothing wrong other than to suffer from a mental illness. And OHA has provided essentially no other options where these individuals can receive appropriate long-term treatment they are entitled to by law.

31.    Meanwhile, **not one** civilly committed person has been admitted to OSH in the last several years based on the regular admission criteria. While individuals who meet regular admission criteria are routinely placed on the wait list for OSH, they are never admitted. Essentially, it has become a wait list to nowhere.

32.    The closure of OSH's doors to the civilly committed population, without other capacity having been built, means that these individuals are denied access to appropriate long-term treatment in a far less restrictive setting. In comparison to a restrictive acute care unit, OSH and secure residential treatment facilities are a much more humane place for an individual to be not only because they offer long-term treatment (which acute care hospitals do not), but also because individuals have much more freedom and a better quality of life. For example, a patient

---

[4] Request for Oregon State Hospital Expedited Admission,
https://www.oregon.gov/oha/OSH/LEGAL/Documents/Expedited_Admission_for_Patients_Under_CIVIL_Commitments.pdf.

4868-8709-5093.2
AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 16

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

at an acute care unit necessarily must live in confined, closed-off, heavily monitored physical spaces:






4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 17

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

A patient at OSH or a secure residential facility, meanwhile, may recover in a living space far more conducive to meaningful long-term recovery:



OSH also has gym facilities, education and vocational opportunities, extensive outdoor facilities, and even a café, market, and coffee shop. Individuals at OSH can go places on day passes, wear their own clothes, and go outside daily for fresh air. There are also family and friend events and peer support specialists on staff at OSH. None of those amenities and opportunities are available in acute care hospitals. And OHA has done nothing to build capacity to create appropriate long-term placements in the community that offer such essential amenities and opportunities so that civilly committed individuals can practice and develop life and health skills for being successful in the community.

**D.      OHA has systematically failed the civilly committed population and left them to languish indefinitely in acute care community hospitals.**

33.      OHA has systematically failed in its responsibility to ensure that civilly committed individuals receive the care and treatment they need and are legally entitled to receive as a condition of taking away their liberty. This failure has been the subject of rulings by Oregon courts and repeated pleas to OHA for help.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 18

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

34.     Due to OHA's inaction, there is a severe shortage of appropriate placements that are able to provide higher levels of care and long-term treatment needed to care for this vulnerable population.[5] Most secure residential treatment facilities are often full and have closed waitlists. Even when facilities are not full, they generally prioritize referrals from OSH, while referrals from acute care hospitals are given less priority. With no options for long-term placement, civilly committed individuals remain stuck in acute care hospitals without access to meaningful treatment. It leads to an unconscionable, but all too common situation, where individuals are denied the care that justifies their commitment in the first place and that they are constitutionally entitled to receive.

35.     The following stories represent just some of the harrowing experiences civilly committed patients have endured after being committed to OHA and then left to languish in community hospitals indefinitely, without access to appropriate long-term treatment.

36.     In late 2021, an individual was brought by ambulance to the emergency department of a community hospital after assaulting another resident at his group home. He was on a trial visit after having been initially committed for 180 days in late 2020, and then recommitted for another 180 days. Once evaluated in the emergency department, he revealed that he was acting on command auditory hallucinations. Given his risk of assaultive behavior, he was admitted to the acute behavioral health unit. The court then revoked his trial visit and remanded him to the custody of OHA. The order should have resulted in him being transferred to an appropriate long-term placement. But that did not happen, and he remained in the community hospital. The court subsequently renewed his commitment for an additional 180 days. This order, too, should have resulted in him being transferred to an appropriate long-term placement. But

---

[5] For example, in the entire State of Oregon, there are currently **only two** Class One secure residential treatment facilities. A Class One facility is approved "to be locked to prevent a person from leaving the facility, to use seclusion and restraint, and to involuntarily administer psychiatric medication." OAR 309-033-0520(3). These are critical resources that some civilly committed individuals may require before they are ready to step down to a lower level of care.

4868-8709-5093.2
AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 19

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

again, that did not happen and he remained indefinitely in a restrictive acute care setting. During his admission, the patient exhibited exceptionally aggressive behavior that was instantaneous and unpredictable. He assaulted a nurse which resulted in a concussion, verbally threatened to kill staff, threw objects at his care team, and cornered a nurse in the hallway. As a result of his threatening and disruptive behavior, staff called out for their own mental health, voluntary patients left, and one staff member resigned. The attending physician described the patient as "ONE OF THE MOST DANGEROUS patients [he had] treated on an acute unit in [his] 30 plus years as a psychiatrist." The community hospital tried to get the patient admitted to OSH, but he was denied expedited admission three times. On one of the denials, a physician from OSH said "off the record" that the patient would almost have to kill someone to get in that way. Ultimately, it took intervention[6] in the civil commitment case by the hospital, until two days before a hearing, OSH finally offered expedited admission. Had there been a hearing, the court would have heard that this civilly committed individual spent **over five months** confined in a restrictive setting, where he was only allowed to walk outside his room for 10-15 minutes per shift, could not safely go outside for fresh air, and wore scrubs every day. The court would have heard that this civilly committed individual spent **165 days** in a community hospital, with no placement decision ever being made by OHA to whom he was committed for treatment.

37.    In another instance in late 2021, an individual with chronic schizophrenia was arrested for threatening pedestrians with a knife. Officers intervened in time, but had to use tasers, less than lethal ammunition, and pepper spray to subdue him. He was arrested and taken to jail. Officials asked to transfer him to OSH, but OSH denied the request. He was then placed on a magistrate's hold, which required him to be transported to a community hospital due to the court's belief that he was an imminent danger to self or others. Once in the emergency

---

[6] Plaintiffs have intervened in civil commitment cases on several occasions to advocate for their patients to receive appropriate long-term placements. Nevertheless, it is clear that intervention will not be enough to create meaningful change because OHA has continued to use community hospitals to house civilly committed individuals indefinitely, if not permanently.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 20

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

department, he was placed on a notice of mental illness where he was held until being transferred to the behavioral health unit and subsequently involuntarily committed to the custody of OHA for 180 days of treatment. Again, after the commitment order was entered, OHA deliberately failed to make any placement decision for him, and instead left him to languish in the community hospital for almost his entire commitment. The patient spent **more than four months** (a total of **137 days**) confined in a restrictive setting, where he spent his days in a small room, and crying because he wanted to get out of the hospital. Ultimately, it took intervention in the civil commitment case by the community hospital, a full day hearing, and several rounds of briefing and orders from the trial and appellate courts until OHA complied and he was discharged to a secure residential treatment facility in the spring of 2022.

38.     In early 2022, an individual with impulsive and unpredictable behavior motivated by psychosis was admitted to an acute care hospital. This patient had a lengthy history of psychiatric hospitalizations and interactions with the criminal justice system, including convictions for attempted kidnapping, assault in the fourth degree, and strangulation. She was involuntarily committed to OHA for 180 days of treatment on February 11. However, she remained in the acute care hospital for the next **49 days**. During that time, she required a one-on-one sitter 24 hours a day, and frequently endorsed suicidal ideation with a plan to overdose and homicidal ideation towards her family. She was hypersexual towards male patients and assaulted several staff members. After **90 days**, she was discharged on a trial visit, but she rapidly decompensated in the community and was sent to jail. After her trial visit failed, OHA should have taken custody of her. But that did not happen. Instead, she was sent back to the acute care hospital. Due to her psychotic symptoms, the hospital was unable to keep other patients and staff safe from her explosive and violent outbursts. She spent approximately **96 hours in seclusion**. She was placed on the wait list for OSH on May 3, but denied expedited admission. On July 15, she was transferred to a Class Two secure residential treatment facility, only to return the next day around midnight. According to reports from the facility, she engaged in highly aggressive

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 21

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

sexual behavior towards others, refused medication, and eloped. Staff were able to bring her back, but she continued to refuse medication and engaged in inappropriate behavior. The facility called 911, and she was taken back to the acute care hospital. Due to OHA's failure to find an appropriate long-term placement for her, she remained in the acute care hospital, confined in a restrictive setting without access to appropriate long-term treatment for **more than four months** until she was finally transferred to a secure residential treatment facility on November 17.

39.    In spring 2022, an individual presented to the emergency department of a community hospital after she was found wandering the streets. She presented with symptoms of schizoaffective disorder and psychosis. She was six weeks pregnant. She was detained and subsequently involuntarily committed to the custody of OHA for 180 days of treatment. Despite the court's order committing her to OHA for treatment, OHA never made a placement decision, and instead left her in the acute care hospital. She remained there into the third trimester of her pregnancy, depressed, and sad that all of the other patients were being discharged except for her. She spent her birthday in the hospital and was isolated even more afterward. Due to OHA's failure to find an appropriate long-term placement for her, she remained stuck in the acute care hospital, in the most restrictive setting possible, that was not best able to treat her—**for more than four months, while pregnant, and for most of her entire 180-day commitment**.

**E.    OHA's practices negatively impact community hospitals and the community.**

40.    OHA's practices also negatively impact community hospitals. When civilly committed patients are left in community hospitals, they require Plaintiffs to divert significant resources to care for civilly committed patients and not Plaintiffs' other patients. Civilly committed patients require significant care by physicians, nurses, and other healthcare professionals—care that Plaintiffs cannot simultaneously direct toward other patients. Civilly committed individuals receive a hospital bed, medication, food, housekeeping services, and other hospital resources, which Plaintiffs accordingly cannot allocate to other patients. Oftentimes,

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 22

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

civilly committed patients require a one-on-one sitter 24 hours a day to ensure their safety and the safety of other patients and staff.

41.    Due to acuity of illness, security personnel frequently are involved, and staff and other patients are often threatened and sometimes injured, and sometimes hospital property is destroyed. As a result of their illness and symptoms, civilly committed patients are often disruptive to the care environment, affecting other patients, visitors, and staff and affecting the care that can be provided to other patients.

42.    The beds unnecessarily occupied by civilly committed patients are not available for other patients who need them, as patients back up in emergency departments, resulting in hardship for others who need to access acutely needed medical and mental health treatment. Some individuals are so acute that adjacent rooms must be closed for safety. In many cases, these individuals cannot safely be in shared rooms, further reducing capacity.

43.    OHA's practices deprive Plaintiffs of their property without due process of law and effectuate a taking of Plaintiffs' property as OHA forces community hospitals to hold and care for civilly committed individuals who, by law, have been committed to the custody of OHA for treatment. Although OHA provides Plaintiffs with a small amount of reimbursement for holding civilly committed patients, the reimbursement received is inadequate, causing financial harm. In addition, Plaintiffs incur additional expenses for additional staff and workers' compensation costs, property damage, and room closures, for which they are not reimbursed. Plaintiffs are all non-profits, but their behavioral health units are suffering unsustainable losses that amount to tens of millions of dollars a year. If this continues, some of these important behavioral health resources may be forced to close.

44.    Despite knowing of its unlawful practices for years, OHA continues to allow them. OHA benefits by passing the costs of treating severely mentally ill patients to private entities. In effect, OHA has silently outsourced the civil commitment system, including the role of OSH, to Oregon health systems and acute care community hospitals.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 23

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

45.     The negative impact of OHA's practices, conduct, failures, and inaction on Plaintiffs and other Oregon community hospitals are severe and ongoing. Because the patients are civilly committed, they can only be discharged to secure settings, or else must be kept in the hospital until they no longer meet commitment criteria. This can mean hospital stays of several weeks, to several months, up to the entire 180-day commitment, and, in some cases, through recommitment periods as well. In turn, this prevents community hospitals from being able to treat and stabilize other vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness.

**F.    Rather than engage meaningfully with the problem, OHA has failed to find a solution for civilly committed individuals and blamed the counties and nonprofit care providers.**

46.     Over the past several years, Plaintiffs have pleaded with OHA for assistance and support in finding appropriate placements for civilly committed individuals countless times. Plaintiffs have asked OHA to seek more resources, expand services, and build capacity, rather than detain civilly committed individuals indefinitely in restrictive acute care settings. Plaintiffs have offered to collaborate with OHA to find, or invent, a workable solution. Almost without exception, OHA has been unresponsive and has failed to provide a solution for the patients for whom it is responsible.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 24

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

47.    In fact, OHA has gone so far as to **deny** having **any** responsibility for civilly committed patients and asserting that <u>all</u> its responsibility has been delegated to counties. In sworn testimony to a trial court on February 11, 2022, OHA's behavioral health director Steve Allen testified as follows:

```
14        Q    Oregon Health Authority has responsibilities
15    to civilly committed patients, true?
16        A    Yes.
17        Q    And is it your testimony that those
18    responsibilities have all been delegated to Oregon
19    counties?
20        A    I'm not -- I can't -- I'm not picking up an
21    example particular to this case that that isn't.
```

48.    In testimony to the legislature on February 18, 2022, Mr. Allen testified as follows with respect to OHA's role in providing appropriate treatment for civilly committed patients: "we don't actually do the work."[7]

49.    And in sworn testimony to a trial court on August 24, 2022, Defendant Patrick Allen, testifying for OHA, would not answer whether OHA had responsibility to an individual committed to OHA for 180 days of treatment as a civilly committed individual. Instead, Mr. Allen testified that OHA had delegated responsibility for civilly committed patients to the county and that "they would have the primary responsibility."

---

[7] Relevant portions of his testimony begin at about 1:41:00, and can be accessed at the following link: https://olis.oregonlegislature.gov/liz/mediaplayer/?clientID=4879615486&eventID=2022021222.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 25

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

50.     OHA may not delegate its ultimate responsibility to provide constitutionally adequate care to civilly committed patients. By law, OHA is responsible for ensuring that civilly committed individuals receive appropriate long-term placements because civilly committed individuals are committed to OHA, not the county or a community mental health program. ORS 426.130(1)(a)(C) (the court may "order commitment of the person with mental illness to the Oregon Health Authority for treatment"); ORS 426.060(1) ("[c]ommitments to the Oregon Health Authority are only to be made by a judge of circuit court in a county of this state."). As such, Plaintiffs seek declaratory and injunctive relief against OHA's unlawful practices.

## CAUSES OF ACTION

### FIRST CLAIM

**Violation of Civilly Committed Individuals' Rights Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution**

51.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 above.

52.     All individuals have the constitutional right not to be deprived of liberty without due process of law. U.S. Const. amend. XIV, § 1. Involuntarily detaining a person due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509.

53.     The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process prohibits governmental deprivation of liberty without adequate procedure. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Substantive due process forbids the government from depriving a person of liberty in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp. v. City of Milwaukie*, 450 F. Supp. 2d 1164, 1175 (D. Or. 2006) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). Liberty interests "may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009).

54.     Civilly committed individuals have a constitutional liberty interest in being free from bodily restraint. The state may involuntarily detain individuals for purposes of providing

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 26

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

treatment; however, individuals who are involuntarily detained for this purpose "have a liberty interest in receiving restorative treatment." *Mink*, 322 F.3d at 1121. Due process requires that mentally ill persons who are detained receive treatment calculated to lead to the end of their involuntary detention. *Id.* To that end, states must provide all civilly committed persons with access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778.

55.    Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant Patrick Allen was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

56.    For years, OHA has engaged in conduct and a policy and practice that violates civilly committed individuals' right to substantive and procedural due process. OHA's conduct, policy, and practice violates civilly committed individuals' liberty interest in restorative treatment and deprives them of a realistic opportunity to be cured or improve the mental condition for which they were confined. When OHA leaves civilly committed individuals in acute care community hospitals, they do not receive access to specialized treatment, care, and training oriented to their long-term needs and focused on their reentry into the community. Instead, they remain confined in unnecessary, overly-restrictive settings without access to long-term treatment for weeks, months, and sometimes their entire 180-day commitment. As a result of OHA's practices, they are more likely to be recommitted and cycle through the system over and over again.

57.    OHA lacks legitimate state interests in leaving civilly committed patients in unnecessary, overly restrictive settings where patients do not receive access to minimally adequate treatment and transition services. Despite knowing of its practices for years, OHA has

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 27

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

deliberately avoided addressing these problems, at least in part because OHA directly benefits from its practices by effectively outsourcing the civil commitment process to community hospitals and making community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

58.    There is no state law procedure for community hospitals to ensure civilly committed individuals are placed by OHA in the facility best able to treat them or a suitable facility during their 180-day commitment, so they can receive appropriate long-term treatment.

59.    OHA will continue engaging in its conduct, policy, and practice in violation of the Fourteenth Amendment unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law to protect their patients' right to appropriate long-term treatment.

60.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates civilly committed individuals' Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

61.    Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys' fees and costs in bringing this action.

## SECOND CLAIM

### Violation of Community Hospitals' Rights Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution

62.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 above.

63.    The Due Process Clause of the Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in the Nation's history and tradition, and implicit

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 28

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The right to exclude others from an owner's property and to use the property as the owner sees fit is one such fundamental right. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).

64.     The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process prohibits governmental deprivation of liberty and property rights without adequate procedure. *Cleveland Bd. of Educ.*, 470 U.S. at 541. Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp.*, 450 F. Supp. 2d at 1175 (quoting *Nunez*, 147 F.3d at 871).

65.     Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant Patrick Allen was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

66.     For years, OHA has engaged in conduct and a policy and practice that violates Plaintiffs' and other community hospitals' right to substantive and procedural due process. OHA's conduct, policy, and practice results in a taking of property belonging to Plaintiffs and other community hospitals for public use and a denial of Plaintiffs' fundamental right to use its hospital beds. When a civilly committed individual is committed to the custody of OHA and not immediately transferred to an appropriate long-term placement, the relevant community hospital is required to house the individual for weeks, months, and sometimes their entire 180-day commitment and recommitment period. As a result, community hospitals are deprived of using their hospital beds for other patients, which negatively impacts community hospitals' ability to serve the community and have throughput in their emergency departments, which are often full of patients waiting to be admitted. Because of OHA's failure to comply with its statutory

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 29

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

obligations, Plaintiffs and other community hospitals must dedicate significant resources to civilly committed patients who have no medical reason to be in acute care settings. These resources include not only the costs associated with medicating and housing these individuals for extended periods of time, but also damage to hospital property as well as the services of its care providers and other precautions needed, such as security and one-on-one sitters, to ensure the safety of the individual and others.

67. OHA has known about its practices—and the resulting effects on community hospitals—for years but has failed to meaningfully address these problems. OHA has deliberately avoided addressing these problems at least in part because OHA directly benefits from its practices, and the resulting harm to community hospitals and patients, by effectively outsourcing the civil commitment process to community hospitals and making community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

68. There is no state law procedure for community hospitals to contest being forced to house civilly committed individuals indefinitely during their 180-day commitment. Although Oregon civil commitment procedure involves a process by which OHA or its delegee consults with the admitting physician of a hospital to "determine whether the best interests of a committed person are served by an admission to [that] community hospital," OAR 309-033-0270(3)(a), that procedure is not being followed. Plaintiffs are not being afforded a meaningful opportunity to be heard regarding whether a civilly committed patient should be committed to Plaintiffs' community hospitals for long-term treatment lasting up to 180 days. Rather, OHA is simply leaving patients at Plaintiffs' hospitals without any meaningful process. Nor is there a remedy available for community hospitals to seek compensation from OHA for most of its costs associated with OHA forcing them to house civilly committed individuals in lieu of OHA providing placements for them at OSH or another appropriate long-term treatment facility. OHA's policy and practice has resulted in working conditions for Plaintiffs' care providers that many find intolerable. As a result, an already difficult workforce shortage has

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 30

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

become a crisis. The strains on Plaintiffs' care providers and resources are not sustainable, presenting a risk of loss of critical mental health services to members of the community who are in crisis.

69.     OHA will continue engaging in its policy and practice in violation of the Due Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory and injunctive relief are appropriate because Plaintiffs lack an adequate remedy at law.

70.     Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates community hospitals' Fourteenth Amendment substantive and procedural due process rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and practice.

71.     Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys' fees and costs in bringing this action.

## THIRD CLAIM

### Violation of Community Hospitals' Rights Under the Takings Clause of the Fifth Amendment to the United States Constitution

72.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 above.

73.     The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the taking of private property for public use, without just compensation. U.S. Const. Amend. V. The Fifth Amendment is applicable to individual states pursuant to the Fourteenth Amendment.

74.     The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The prohibition extends not only to a physical taking in which the government condemns or physically appropriates an owner's property, but also regulatory interferences which occur when a significant restriction is placed on

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 31

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

an owner's ability to use its own property for which justice and fairness require that compensation be given. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071-72 (2021).

75.    Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant Patrick Allen was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

76.    For years, OHA has engaged in conduct and a policy and practice that results in a taking of Plaintiffs' and other community hospitals' property for public use without just compensation. Once a general judgment of commitment is entered and individuals are civilly committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility at the time of commitment. Instead, however, after individuals are civilly committed—and as a result no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals, where they are forgotten by OHA.

77.    Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospital beds for weeks, months, and sometimes their entire 180-day commitment and recommitment periods, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in an acute care setting, and prevents other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments. Because of OHA's actions, community hospitals are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 32

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

78.     OHA does not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

79.     OHA will continue engaging in its conduct, policy, and practice in violation of the Fifth and Fourteenth Amendments unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using Plaintiffs' hospitals and other community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly committed patient left in Plaintiffs' care because the expenses of pursuing so many individual legal actions would exceed the compensation Plaintiffs seek to recover.

80.     Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' Fifth and Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

81.     Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys fees' and costs in bringing this action.

## FOURTH CLAIM

### Violation of Community Hospitals' Rights under Article I, Section 18 of the Oregon Constitution – Unlawful Taking

82.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 above.

83.     Article I, Section 18, of the Oregon Constitution provides in part that "[p]rivate property shall not be taken for public use . . . without just compensation; nor except in the case of the state, without such compensation first assessed and tendered."

84.     For years, OHA has engaged in conduct and a policy and practice that results in a taking of Plaintiffs' and other community hospitals' property for public use without just

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 33

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

compensation. Once a general judgment of commitment is entered and individuals are civilly committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility at the time of commitment. Instead, however, after individuals are civilly committed—and they are no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals, where they are forgotten by OHA.

85.     Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospitals' beds for weeks, months, and sometimes their entire 180-day commitment and recommitment period, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in acute care settings, and prevents other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments. Because of OHA's actions, community hospitals are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day.

86.     OHA does not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

87.     OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 34

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

committed patient left in Plaintiffs' care because the expenses of pursuing so many individual legal actions would exceed the compensation Plaintiffs seek to recover.

88.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' rights under Article 1, Section 18 of the Oregon Constitution. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

89.    Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys fees' and costs in bringing this action.

## FIFTH CLAIM

### Violation of Civilly Committed Individuals' Rights under ORS 426.060

90.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 above.

91.    OHA must direct civilly committed persons "to the facility best able to treat" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "suitable" facility. ORS 426.060(2)(a), (d).

92.    OHA's conduct, policy, and practice violates its statutory duties under ORS 426.060 by deliberately failing to make any placement decision for civilly committed individuals. Instead of being placed in the facility "best able to treat" them or a "suitable facility" at the time of commitment, OHA is choosing to leave civilly committed individuals indefinitely in acute care hospitals, and deliberately failing to make any placement decision for them as contemplated by the statute.

93.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 35

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

94.     Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates its duties under ORS 426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place civilly committed individuals in the facility best able to treat them or a suitable facility at the time of commitment.

95.     Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys fees' and costs in bringing this action.

## SIXTH CLAIM

### Violation of Civilly Committed Individuals' Rights under ORS 426.150(1)

96.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 above.

97.     When an individual is civilly committed, "[OHA] or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1).

98.     OHA's conduct, policy, and practice violates its statutory duties under ORS 426.150(1). Once individuals are civilly committed, OHA is failing to take custody of these individuals and ensure the safekeeping and proper care of these individuals until they are delivered to an assigned treatment facility or to a representative of the assigned treatment facility. Instead, OHA is leaving civilly committed individuals in acute care community hospitals where they are initially detained for emergency purposes on a notice of mental illness, and failing to place patients after they are civilly committed.

99.     OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 36

158177756.2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

100.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates its duties under ORS 426.150, and that OHA has a legal duty to take civilly committed individuals into its custody, and ensure the safekeeping and proper care of them by delivering them to an assigned treatment facility that is best able to treat them or a suitable facility.

101.    Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys fees' and costs in bringing this action.

## SEVENTH CLAIM

### Violation of Civilly Committed Individuals' Rights under ORS 659A.142(5)(a) and (6)(a)

102.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 above.

103.    ORS 659A.142(5)(a) provides that "[i]t is an unlawful practice for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability."

104.    ORS 659.142(6)(a) provides that "[i]t is an unlawful practice for a provider or any person acting on behalf of a provider to discriminate by doing any of the following based on the patient's race, color, national origin, sex, sexual orientation, gender identity, age or disability: (A) Deny medical treatment to the patient that is likely to benefit the patient based on an individualized assessment of the patient using objective medical evidence; or (B) Limit or restrict in any manner the allocation of medical resources to the patient."

105.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A.142(5)(a) because OHA is excluding civilly committed individuals from admission to OSH, and denying them an alternative appropriate long-term placement when they are civilly committed to the custody of OHA for 180 days of treatment.

106.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A.142(6)(a) because OHA is discriminating against civilly committed individuals by denying

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 37

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

them appropriate long-term treatment once they are civilly committed to the custody of OHA, and limiting and restricting the allocation of resources to them.

107.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law.

108.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' rights under ORS 659A.142(5)(a) and (6)(a). Plaintiffs also seek a permanent injunction pursuant to ORS 659A.885(1) enjoining OHA from continuing its statutory violations and their attorneys' fees pursuant to ORS 659A.885(8)(d).

## RELIEF REQUESTED

Plaintiffs respectfully request the following relief:

A.    Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates the Fifth and Fourteenth Amendments to the United States Constitution because:

      i.    They force community hospitals to house and treat civilly committed individuals indefinitely, thus occupying and taking their property, despite the fact that community hospitals are not equipped, staffed, or designed to provide long-term care and treatment appropriate for civilly committed individuals;

      ii.    There is no state law procedure for community hospitals to contest being forced to house civilly committed individuals;

      iii.    They result in a taking of community hospitals' private property for public use without just compensation;

      iv.    They result in a violation of civilly committed individuals' right to receive appropriate treatment and, further, deny liberty interests arising from state law; and

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 38

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

      v.  There is no state law procedure for community hospitals to ensure that civilly committed individuals are placed by OHA in the facility best able to treat them or even a suitable facility.

B.     Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates Article I, Section 18, of the Oregon Constitution because they result in a taking of Plaintiffs' and other community hospitals' private property for public use without just compensation.

C.     Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place them in the facility best able to treat them or a suitable facility at the time of commitment.

D.     Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 426.150, and that OHA has a legal duty to take civilly committed individuals into its custody, and ensure the safekeeping and proper care of them by delivering them to an assigned treatment facility best able to treat them or a suitable facility.

E.     Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates ORS 659A.142(5) and (6).

F.     Permanently enjoin OHA from continuing to violate civilly committed patients' due process rights to liberty and hospitals' due process rights to property, and from continuing to take hospitals' property without just compensation, and further requiring OHA to fulfill its obligations to provide civilly committed patients the care and treatment they are entitled to by law.

/ / /

/ / /

/ / /

/ / /

4868-8709-5093.2

AMENDED COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF - 39

158177756.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

G.      Award Plaintiffs nominal damages and their reasonable attorneys' fees and costs

in this action pursuant to 42 U.S.C. § 1988(b) and ORS 659A.885(8)(d); and

H.      Grant such further relief as justice requires.

DATED this 1st day of December, 2022.

LEWIS BRISBOIS BISGAARD & SMITH LLP


By:     *s/ Eric J. Neiman*
        Eric J. Neiman, OSB #823513
        Emma P. Pelkey, OSB #144029
        Telephone: 971.712.2800
        Facsimile: 971.712.2801


PERKINS COIE, LLP


By:     *s/ Thomas R. Johnson*
        Thomas R. Johnson, OSB #010645
        Alex Van Rysselberghe, OSB #174836
        Telephone: 503.727.2000
        Facsimile:  503.727.2222

        *Attorneys for Plaintiffs*

4868-8709-5093.2

AMENDED COMPLAINT FOR          LEWIS BRISBOIS BISGAARD & SMITH LLP    PERKINS COIE LLP
DECLARATORY                    888 SW Fifth Avenue, Suite 900         1120 N.W. Couch Street, Tenth Floor
AND INJUNCTIVE RELIEF - 40     Portland, Oregon 97204-2025            Portland, Oregon 97209-4128
                               Telephone: 971.712.2800 • Fax 971.712.2801   Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158177756.2