**Eric J. Neiman, OSB #823513**
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800

**Thomas R. Johnson, OSB #010645**
Tom.Johnson@stoel.com
STOEL RIVES LLP
730 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  503.294.9466

**Alex Van Rysselberghe, OSB #174836**
AVanRysselberghe@perkinscoie.com
PERKINS COIE, LLP
1120 NW Couch 10th Floor
Portland, OR  97209
Telephone: 503.727.2000

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDERS INCORPORATED, and A.J. MADISON, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, <br><br> Defendants, <br><br> and | Case No. 3:02-cv-00339-MO (Lead Case) <br> Case No. 3:21-cv-01637-MO (Member Case) <br> Case No. 6:22-CV-01460-MO (**Member Case**) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> **By Plaintiffs Legacy Emanuel Hospital & Health Center d/b/a Unity Center for Behavior Health, Legacy Health System, PeaceHealth, and Providence Health & Services – Oregon, and St. Charles Health System** <br><br> ORAL ARGUMENT REQUESTED |

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

| | |
|---|---|
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH, LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES – OREGON, | |
| Intervenors. | |
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, | Case No. 3:21-cv-01637-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity, | |
| Defendants, | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES, | |
| Intervenors. | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM, | Case No. 6:22-CV-01460-MO (**Member Case**) |
| Plaintiffs, | |
| v. | |
| PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, | |
| Defendant. | |

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

# Table of Contents

Page

I.  INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD ......................................................................................... 3

III. BACKGROUND ................................................................................................ 4

    A.  Plaintiffs Health Systems ........................................................................ 4

    B.  Civil Commitment in Oregon ................................................................. 6

    C.  Health Systems' allegations and claims ................................................. 8

IV. ARGUMENT ................................................................................................... 10

    A.  Health Systems' Claims Are Justiciable. .............................................. 12

        1.  Health Systems have Article III standing to assert their own claims. ...................... 12

        2.  Health Systems have third-party standing to assert the constitutional claims of civilly committed patients in their care. ........................................... 17

            (a)  Health Systems and patients have a sufficiently close relationship for purposes of the claims asserted in this lawsuit. ................................. 18

            (b)  Patients are hindered from asserting their own claims. .................................... 22

        3.  Health Systems' claims are ripe. ....................................................... 24

    B.  Health Systems Have Alleged Sufficient Claims. ................................ 25

        1.  Health Systems' Due Process claims are viable. ................................ 25

            (a)  Patients' Due Process Rights ....................................................... 25

            (b)  Health Systems Acute Care Hospitals' Due Process Rights ........................... 28

        2.  Health Systems' Takings claims are viable. ...................................... 32

        3.  Health Systems' Oregon statutory claims are viable. ........................ 37

V.  CONCLUSION ................................................................................................ 40

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

159922529.10

## Table of Authorities

**Page**

**CASES**

*Alaska Right to Life PAC v. Feldman,*
    504 F.3d 840 (9th Cir. 2007) .................................................13

*AlohaCare v. Hawaii Department of Human Services,*
    567 F. Supp. 2d 1238 (D. Haw. 2008)..................................20

*Andrus v. Allard,*
    444 U.S. 51 (1979)................................................................34

*Ark. Game & Fish Comm'n,*
    568 U.S. 23 (2012) ...............................................................34

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................4, 27

*Atwood v. Stickler,*
    No. 3:19-cv-01699-IM, 2020 WL 3549662 (D. Or. June 29, 2020)................37

*Barnum Timber Co. v. U.S. E.P.A.,*
    633 F.3d 894 (9th Cir. 2011) ...............................................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................4

*Boeing Co. v. Movassaghi,*
    768 F.3d 832 (9th Cir. 2014) ...............................................14

*CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.,*
    880 F.3d 1048 (9th Cir. 2018) ...............................................4

*Cedar Point Nursery v. Hassid,*
    ___ U.S. ___, 141 S. Ct. 2063 (2021).......................33, 34, 35

*Clark v. City of Lakewood,*
    259 F.3d 996 (9th Cir. 2001) ...............................................19

*Coal. Of Clergy, Lawyers, & Professors v. Bush,*
    310 F.3d 1153 (9th Cir. 2002) .............................................17

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

*Confederated Tribes and Bands of Yakama Nation v. Airgas USA, LLC*,
   435 F. Supp. 3d 1103 (D. Or. 2019) ...................................................13

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998).............................................................................29, 30

*Crown Point Development, Inc. v. City of Sun Valley*,
   506 F.3d 851 (9th Cir. 2007) ..............................................................29, 31

*Dahlia v. Rodriguez*,
   735 F.3d 1060 (9th Cir. 2013) .............................................3, 12, 15, 28

*Doe v. Commissioner, New Hampshire Department of Health and Human Services*,
   No. 18-cv-1039-JD, 2021 WL 27009 (D.N.H. Jan. 4, 2021)...................17

*Doe v. Shibinette*,
   16 F.4th 894 (1st Cir. 2021)..................................................................17

*Endsley v. Mayberg*,
   No. CIV S-09-2311 WBS GGH P, 2010 WL 482 9549 (E.D. Cal. Nov. 22, 2020) .....................................................................................................24

*Epona v. County of Ventura*,
   876 F.3d 1214 (9th Cir. 2017) .............................................................19

*Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*,
   548 F.3d 1184 (9th Cir. 2008) .............................................................13

*Griswold v. Connecticut*,
   381 U.S. 479 (1965).........................................................................19, 22, 23

*Home Care Ass'n of Am. v. Bonta*,
   No. 21-15617, 2022 WL 445522 (9th Cir. Feb. 14, 2022) .................18, 22

*Horne v. Dep't of Agric.*,
   ___ U.S. ___, 135 S. Ct. 2419 (2015)....................................................36

*Horne v. Dept. of Agric.*,
   576 U.S. 350 (2015)...............................................................................33, 34

*In re Grand Jury Subpoena*,
   No. 16-03-217, 875 F.3d 1179 (9th Cir. 2017).....................................19

*Isaacson v. Horne*,
   716 F.3d 1213 (9th Cir. 2013), *cert. denied*, 571 U.S. 1127 (2014)......................19

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

4871-0459-0156.1 159922529.2
159922529.10

*Kaiser Aetna v. United States*,
  444 U.S. 164 (1979) .................................................................................. 34

*Knick v. Twp. of Scott, Pennsylvania*,
  139 S. Ct. 2162 (2019) ............................................................................. 37

*Kriz v. Roy*,
  No. 8:20CV110, 2020 WL 6135442 (N.D. Neb. Oct. 19, 2020) .............. 24

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................... 15

*Lingle v. Chevron U.S.A., Inc.*,
  544 U.S. 528 (2005) .................................................................................. 28

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................. 13

*Managed Pharmacy Care v. Sebelius*,
  716 F.3d 1235 (9th Cir. 2013) ............................................................ 35, 36

*Martyr v. Mazur-Hart*,
  789 F. Supp. 1081 (D. Or. 1992) ............................................................. 26

*New York State Nat. Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990) .......... 19

*Nollan v. Cal. Coastal Comm'n*,
  483 U.S. 825 (1987) .................................................................................. 34

*Nunez v. City of Los Angeles*,
  147 F.3d 867 (9th Cir. 1998) ................................................................... 32

*Ohlinger v. Watson*,
  652 F.2d 775 (9th Cir. 1980) .............................................................. 25, 26

*Oregon Advocacy Center v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) .......................................................... passim

*Parenthood of Idaho, Inc. v. Wasden*,
  376 F.3d 908 (9th Cir. 2004) ................................................................... 19

*Parks School of Business, Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ................................................................... 18

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

*Patru v. Rush*,
No. 3:13-cv-00357-SI, 2015 WL 2062193 (D. Or. May 4, 2015) .......................................... 32

*Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*,
280 F.3d 278 (3d Cir. 2002) ................................................................................. 19, 23

*Planned Parenthood Ass'n v. City of Cincinnati*,
822 F.2d 1390 (6th Cir. 1987) .................................................................................. 19

*Powers v. Ohio*,
499 U.S. 400 (1991) ................................................................................................ 18, 22

*Salcido v. Woodbury Cnty., Iowa*,
119 F. Supp. 2d 900 (N.D. Iowa) ................................................................................ 24

*Shanks v. Dressel*,
540 F.3d 1082 (9th Cir. 2008) ................................................................................... 31

*Sierra Medical Services Alliance v. Kent*,
883 F.3d 1216 (9th Cir. 2018) ............................................................................... 32, 36

*Singleton v. Wulff*,
428 U.S. 106 (1976) ......................................................................................... passim

*Siskiyou Hospital, Inc. v. California Department of Health Care Services*,
No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409 (E.D. Cal. Jan. 12, 2022) ......................... 21

*Sprint v. Commc'n Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008) ............................................................................................... 13

*State ex rel. Schrunk v. Metz*,
125 Or. App. 405, 125 Or App 405 (1993) ..................................................................... 33

*State v. T.T.*,
293 Or. App. 376, 428 P.3d 921 (2018) (Aoyagi, J., dissenting) ........................................ 23

*Teixeira v. Cty. of Alameda*,
873 F.3d 670 (9th Cir. 2017) ..................................................................................... 4

*United States v. Central Eureka Mining Co.*,
357 U.S. 155 (1958) ............................................................................................... 34

*United States v. S. Cal. Edison Co.*,
300 F. Supp. 2d 964 (E.D. Cal. Jan. 8, 2004) .................................................................. 15

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

*Updike v. City of Gresham,*
   62 F. Supp. 3d 1205 (D. Or. 2014) .................................................................24

*Vesta Corp. v. Amdocs Mgmt. Ltd.,*
   129 F. Supp. 3d 1012 (D. Or. 2015) .................................................................15

*Village of Euclid v. Ambler Realty Co.,*
   272 U.S. 365 (1926) .................................................................34

*Volunteer Medical Clinic, Inc. v. Operation Rescue,*
   948 F.2d 218 (6th Cir. 1991) .................................................................19

*Warren v. Fox Family Worldwide, Inc.,*
   328 F.3d 1136 (9th Cir. 2003) .................................................................4

*Washington v. Trump,*
   847 F.3d 1151 (9th Cir. 2017) .................................................................18, 31

*Youngberg v. Romeo,*
   457 U.S. 307 (1982) .................................................................26, 27

**STATUTES**

ORS 426.060 ................................................................. passim

ORS 426.070 .................................................................6

ORS 426.095 .................................................................6, 7

ORS 426.130 .................................................................2, 7, 22

ORS 426.150 .................................................................8, 10, 38, 39

ORS 426.232 .................................................................7

ORS 426.385 .................................................................23

ORS 659A.142 .................................................................10, 38, 39

**OTHER AUTHORITIES**

42 C.F.R. § 482.43 .................................................................9, 16

Fed. R. Civ. P. 8 .................................................................4, 31

Fed. R. Civ. P. 15(a)(2) .................................................................4

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

4871-0459-0156.1 159922529.2
159922529.10

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................4

OAR 309-032-0870(2)...........................................................................................6, 15, 26

OAR 309-033-0270(3)(a) ............................................................................................ passim

OAR 309-033-0290(1)(a) .........................................................................................8, 11

Or. Const. Art. I, § 18 .............................................................................................10, 33

United States Constitution ............................................................................................ passim

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Plaintiffs Legacy Emanuel Hospital & Health Center d/b/a Unity Center for Behavioral Health, Legacy Health System, PeaceHealth, and Providence Health & Services – Oregon, and St. Charles Health System ("Health Systems") file this Opposition to Defendant's Motion to Dismiss, ECF 30,[1] filed by Defendant Patrick Allen in his official capacity as Director of Oregon Health Authority ("OHA").

## I.    INTRODUCTION

Plaintiffs are four Oregon health systems that have proudly provided emergency and acute psychiatric care to civilly committed individuals for decades and hope to continue doing so for decades more. As part of that effort, Plaintiffs applied to the State of Oregon, and received, licenses addressing the specific type of care they were to provide. Health Systems' hospitals are consequently equipped to provide emergency and acute psychiatric care to individuals in crisis. Because their patients are experiencing an acute mental health crisis, the environment must be restrictive to ensure the safety of the patient, other patients on the unit, hospital providers and staff.

For years, OHA has taken advantage of Health Systems' willing participation in Oregon's behavioral healthcare system by forcing civilly committed patients to remain in an acute care setting long after it is appropriate for them to do so. Civilly committed individuals generally need more than just emergency and acute care during their 180-day commitment. After being stabilized at one of Health Systems' acute care hospitals, these patients usually require long-term treatment to restore their health and freedom. Long-term treatment, however, requires less restrictive facilities, increased social interaction, and a plethora of other things—none of which are realistically available in the highly restrictive setting of an acute care hospital.

---

[1] Throughout this brief, Health Systems use the ECF numbers in the *Legacy v. Allen* matter. Accordingly, Health Systems refer to OHA's Motion to Dismiss as ECF 30; that document also appears in the *Disability Rights Oregon v. Allen* matter as ECF 329. In citing to documents in the record with an ECF number, Health Systems use the ECF page number at the top-center of the page rather than the motion page number at the bottom-left of the page.

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

159922529.10

OHA is violating these civilly committed individuals' constitutional rights by refusing to provide them with treatment aimed at restoring their freedom. When a court restrains the liberty of a patient by ordering a civil commitment, it commits the patient "to the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). Under the U.S. Constitution, OHA is obligated to provide civilly committed individuals with **"restorative treatment"** that gives them "a realistic opportunity to be cured or improve the mental condition for which they were confined." *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). Oregon law requires OHA to do this by assigning civilly committed individuals to the facility "best able to treat" them or a "suitable" facility for their 180-day period of commitment. ORS 426.060(2)(a), (d); OAR 309-033-0270(3)(a). But OHA has shirked these, and other, responsibilities by adopting an unlawful policy and practice of abandoning civilly committed patients in emergency departments and acute care behavioral health units (to which they generally were brought before commitment) and refusing to make available state or community facilities that are capable of providing appropriate long-term care and treatment. Instead, OHA confines civilly committed patients in the highly restrictive acute settings of community hospitals where they cannot receive the care they need despite the providers' best efforts.

Remarkably, OHA has responded to Health Systems' lawsuit by arguing that it is not required to provide civilly committed individuals with "restorative treatment aimed" at giving them a realistic opportunity to regain their freedom. *Mink*, 322 F.3d at 1121. Instead OHA claims that its only responsibility is to give civilly committed individuals "minimally adequate" treatment. ECF 30 at 29. This is not the standard set by the Courts for how the state must care for vulnerable individuals who have committed no crime but whose freedom has been taken away by the state.[2] For most civilly committed patients, "restorative treatment" means long-term treatment. But patients cannot access that care in Plaintiffs' acute care hospitals, which are

---

[2] It is notable that OHA's position in this lawsuit repudiates a generation of Ninth Circuit authority about the rights of civilly committed individuals.

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

neither designed nor equipped to provide such care. As such, civilly committed patients fail to get the care they need and to which they are constitutionally entitled.

OHA's practice also hurts Health Systems' hospitals and the communities they serve. While Health Systems house civilly committed patients for lengths of stays sometimes far exceeding what the patient medically needs for acute care and stabilization, hospitals must divert beds, space, and other resources to care for abandoned civilly committed patients when those resources would otherwise go to caring for other patients experiencing acute psychiatric crises. Such services are a crucial part of fixing the current mental health crisis in Oregon.

After years of unsuccessfully trying to work with OHA to end its unlawful policy and practice, Health Systems have resorted to filing this lawsuit to compel OHA to honor its responsibilities under the Constitution and Oregon law. Health Systems bring seven claims seeking to protect the constitutional rights of both Health Systems and the civilly committed patients they care for. Health Systems seek a declaration that OHA's practices are unlawful and an injunction prohibiting their conduct.

OHA now moves to dismiss Health Systems' claims, arguing that Health Systems lack standing under Article III of the United States Constitution and further that Health Systems have failed to state valid claims. In arguing for dismissal, however, OHA mischaracterizes Health Systems' claims, misrepresents Oregon law, and assumes unproven facts that cannot serve as a basis for dismissal at the pleadings stage. Accordingly, as explained below, the Court should deny OHA's motion.

## II.    LEGAL STANDARD

On a motion to dismiss, the court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013) (quoting *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)). Where a defendant moves to dismiss for lack of Article III standing, the court evaluates

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 3

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

whether it has subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). The court evaluates other arguments for dismissal under Rule 12(b)(6).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.*, 880 F.3d 1048, 1061 (9th Cir. 2018). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678; *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017).

To the extent certain necessary allegations are lacking from Plaintiffs' Amended Complaint, the Court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

## III.   BACKGROUND

### A.   Plaintiffs Health Systems

Plaintiffs Health Systems own and operate several acute care hospitals throughout Oregon that provide emergency and acute psychiatric care to mentally ill individuals in crisis. Am. Compl. ¶¶ 5–12. Acute care involves careful and coordinated teamwork by doctors, nurses, administrators, security personnel, and other staff, all of whom must be specially trained and experienced in providing such care. *Id.* ¶ 17. Because some patients in acute crisis may exhibit violent tendencies and behaviors, acute care must occur in a restricted and heavily monitored setting to ensure the safety of staff and other patients. *Id.*

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 4

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

159922529.10

While most of Health Systems' acute psychiatric patients are stabilized and discharged within hours or days, some patients require additional long-term treatment after being stabilized. *Id.* ¶ 18. This includes most or all patients who become civilly committed while at Health Systems' hospitals. Health Systems' acute care hospitals are neither designed nor equipped to provide long-term treatment. *Id.* ¶¶ 18–19. Long-term treatment aimed at restoring a patient to the community requires a less-restricted setting, a more stable peer environment, more socialization, more group counseling, more peer support, and more patient independence so that patients can practice and develop life and health skills for being successful in the community (including, for instance, the ability to take day passes and overnight visits to facilitate transition back to the community). *Id.* ¶ 18. As such, an emergency and acute care environment cannot function as a long-term treatment setting that can provide a patient with a meaningful opportunity to be restored to the community. *Id.* ¶ 19. Health Systems cannot offer long-term treatment without giving up some or all of their emergency and acute behavioral health care services. *Id.*

As acute care hospitals, Health Systems are proud to provide emergency and acute psychiatric care to civilly committed individuals and, contrary to OHA's assertions, **do not** want to "get [civilly committed patients] out of" Health Systems' beds. ECF 30 at 25. Health Systems want to continue providing emergency and acute psychiatric care to all patients. Health Systems have accordingly sought approval from OHA to provide emergency and acute psychiatric care services to civilly committed patients. *See generally* Plaintiffs' Brief Regarding Judicial Notice and Request for Additional Judicial Notice.

Importantly, however, Health Systems have *not* voluntarily sought to provide long-term care because Health Systems are not, and have never been, equipped to provide long-term care. *See id.* at 7. For example, Health Systems' applications for certification do not seek approval to provide long-term treatment to treat civilly committed individuals or otherwise suggest that their

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 5

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

acute care hospitals are equipped or offering to do so. Instead, in the applications submitted by Health Systems, they request only to be certified for "Regional Acute Care Psychiatric Services for Adults" and "Hospital Hold and Seclusion Room Services (5 day Hold)." Both of those selections refer to short-term treatment. Indeed, OAR 309-032-0870(2) provides that "[t]he goal of a regional acute care service is the stabilization, control, and amelioration of acute dysfunctional symptoms or behaviors **that result in the earliest possible return of the individual to a less restrictive environment.**" OHA failed to provide this critical context to the Court.

Under a properly functioning civil commitment system, Health Systems' emergency and acute care services should comprise just the first step in a continuum of care for civilly committed individuals. Am. Compl. ¶¶ 17–20. However, Oregon's civil commitment scheme is not functioning properly. OHA has unlawfully outsourced its responsibilities to civilly committed individuals by coopting Health Systems' acute care hospitals to provide long-term treatment that they are not equipped, staffed, or designed to provide, to the detriment of civilly committed patients, Health Systems, and community members who are experiencing an acute mental health crisis and are unable to access services. *See id.* ¶¶ 33–45.

### B. Civil Commitment in Oregon

OHA provides a substantially incomplete summary of Oregon's civil commitment laws in its Motion to Dismiss, omitting crucial provisions that confine OHA's discretion and authority. *See* ECF 30 at 13–15. Health Systems offer a more complete summary of Oregon's civil commitment laws below.

ORS 426.070 through ORS 426.095 sets out the process for initiating civil commitment. As discussed above, in the days preceding an individual's civil commitment, the individual is often brought to the emergency department of one of Health Systems' acute care hospitals in a state of severe crisis, where they are given a medical screening examination and provided

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 6

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

stabilizing treatment for the psychiatric crisis as well as any other emergency medical conditions. There, they may be detained in the same or a different hospital if a physician believes the person is "dangerous to self or to any other person and is in need of emergency care or treatment for mental illness" pursuant to a process known as a physician's hold and notice of mental illness. ORS 426.232(1). The patient may be involuntarily held at Health Systems' hospitals for no more than five judicial days while an investigation occurs. *See* ORS 426.232(2); 426.074. Assuming the person continues to meet civil commitment criteria after the initial five day detention, the state may seek a civil commitment hearing before a state circuit court judge. *See* ORS 426.095. The hearing often occurs at the hospital itself; in fact, some of Health Systems' hospitals have dedicated space for court hearings.

If the court determines that civil commitment criteria are met, the court "may order commitment of the person with mental illness to the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). If the court orders commitment, the court shall establish a period of commitment "not to exceed 180 days." ORS 426.130(2). From that point forward, OHA is statutorily responsible for the civilly committed person upon commitment.

While OHA suggests it thereafter enjoys unfettered discretion in managing the individual's care and housing, *see* ECF 30 at 14, OHA still must abide by both the United States Constitution and Oregon laws and regulations. Contrary to what OHA (remarkably) argues, civilly committed patients are constitutionally entitled to "restorative treatment" that gives them "a realistic opportunity to be cured or improve the mental condition for which they were confined." *Mink*, 322 F.3d at 1121. OHA is ultimately responsible for ensuring that such individuals receive restorative treatment. OHA's argument that it need not provide restorative treatment is strong evidence that OHA is violating the rights of civilly committed patients.

In addition to constitutional obligations, Oregon law also charges OHA with the responsibility for finding an appropriate placement for long-term treatment. Specifically, "[u]pon

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

receipt of the order of commitment, OHA or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility . . . ." *See* ORS 426.150(1). By statute, OHA must direct civilly committed persons "**to the facility best able to treat**" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "**suitable**" facility. ORS 426.060(2)(a), (d) (emphasis added). Assignments may be made only to facilities that OHA has approved, and that "appropriately meet the mental health needs of the person under civil commitment." OAR 309-033-0290(1)(a).

A crucial part in this process—which OHA minimizes—is that, when OHA or its delegee seeks to assign a civilly committed patient to a community hospital, the receiving community hospital must play a part in making and accepting the assignment. Specifically, the admitting physician of the community hospital must be consulted and must determine whether "the best interests of [the] person under civil commitment are served by an admission to [the] community hospital." OAR 309-033-0270(3)(a). OHA is thus not the only decisionmaker in determining what facility is "best able to treat" a civilly committed individual. ORS 426.060(2)(a).

### C.    Health Systems' allegations and claims

Health Systems bring this lawsuit because Oregon's civil commitment system has broken down and OHA has failed to address the problem for years. Am. Compl. ¶¶ 46–50. Ideally, an individual experiencing an acute mental health crisis should be brought to one of Health Systems' hospitals for emergency for acute psychiatric treatment, and the commitment process should be initiated for those patients who meet the standard. If a court orders that the patient be civilly committed, then, after the patient has stabilized, OHA (or OHA's delegate) should transfer the patient to a suitable long-term care facility "best able to treat" the patient so that the patient's liberty can be restored. ORS 426.060(2)(a). If a patient needs to stay longer at one of Health Systems' hospitals for purposes of receiving additional emergency or acute psychiatric

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 8

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

treatment, the assignment decision should be made by *both* the State and the admitting physician of Health Systems' hospitals and the patient should be eventually transferred to an appropriate long-term facility when ready. OAR 309-033-0270(3)(a).

But that is not happening. Rather than assign civilly committed patients to appropriate long-term treatment facilities, OHA is abandoning patients indefinitely in the acute care hospitals to which they were brought before commitment (and without consulting hospitals' admitting physicians). When that happens, Health Systems are forced to continue using scarce beds, space, and other resources to treat civilly committed patients. Health Systems are ethically and legally unable to discharge these patients, because OHA's failure to find a proper treatment environment means that there is no safe way to do so. *See* 42 C.F.R. § 482.43. Meanwhile, civilly committed patients' needs for long-term treatment go unmet because Health Systems are not equipped, staffed, or designed to provide such care, and other patients experiencing acute psychiatric crises become backed up in emergency departments.

Health Systems have tried to address the problem with OHA cooperatively for years. Am. Compl. ¶ 46. But OHA has done nothing to indicate that it will materially change its practices. *Id.* Health Systems accordingly file this action as a last resort, seeking to enjoin OHA to change its conduct and stop violating the rights of vulnerable civilly committed patients whose liberty has been restricted by the state. Health Systems bring seven claims on behalf of both Health Systems themselves and the civilly committed patients left in their care (Health Systems will detail these claims further in Part IV.B.):

- **First Claim:** Violation of civilly committed patients' substantive and procedural due process rights under the Fourteenth Amendment of the United States Constitution;

- **Second Claim:** Violation of Plaintiffs Acute Care Hospitals' substantive and procedural due process rights under the Fourteenth Amendment of the United States Constitution;

- **Third Claim:** Violation of Plaintiffs Acute Care Hospitals' rights under the Takings Clause of the Fifth Amendment of the United States Constitution;

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 9

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

159922529.10

- **Fourth Claim:** Violation of Plaintiffs Acute Care Hospitals' rights under the Takings Clause of Article I, Section 18, of the Oregon Constitution;

- **Fifth Claim:** Violation of Civilly Committed Patients' Rights under ORS 426.060;

- **Sixth Claim:** Violation of Civilly Committed Patients' Rights under ORS 426.150(1); and

- **Seventh Claim:** Violation of Civilly Committed Patients' Rights under ORS 659A.142(5) and (6)(a).

OHA has moved to dismiss all seven claims. ECF 30. The Court should deny the motion for the reasons explained in this Opposition.

## IV.    ARGUMENT

OHA moves to dismiss on the grounds that (1) Health Systems lack standing to pursue their claims (and, relatedly, the claims are not ripe), and (2) Health Systems fail to state viable claims upon which relief may be granted. ECF 30. Health Systems will address those arguments below. Health Systems first note, however, that OHA's arguments rely on several incorrect premises concerning the claims, facts, and law at the heart of this case. Before responding to each of OHA's arguments individually, Health Systems provide the following corrections to the false global premises on which OHA's motion is based:

- **Civilly committed patients are entitled to receive "restorative treatment"** that gives them "a realistic opportunity to be cured or improve the mental condition for which they were confined." *Mink*, 322 F.3d at 1121. Civilly committed patients are not entitled to only "minimally adequate" treatment, as OHA argues. ECF 30 at 29. OHA has all but admitted that it is violating the rights of civilly committed patients by claiming that it is only required to provide "minimally adequate" treatment.

- **Health Systems do not want to "get [civilly committed patients] out of" their beds.** Rather, Health Systems *want to* provide emergency and acute psychiatric treatment to patients, including patients who become (or are already) civilly committed. Indeed, Health Systems want to care for even more civil commitment patients than they are now,

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 10

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

but cannot because Health Systems' beds and other resources are frequently being used to care for civilly committed patients who no longer meet criteria for emergency or acute care.

- **Health Systems have never sought OHA's approval to provide long-term care to civilly committed patients past the point when they are ready for the next level of care.** Health Systems have sought approval only to provide emergency and acute psychiatric care, which is what Health Systems' hospitals are designed to provide. *See* Am. Compl. ¶¶ 5–12; *see also* Plaintiffs' Brief Regarding Judicial Notice and Request for Additional Judicial Notice at 7–11. When OHA abandons civilly committed patients at Health Systems' acute care hospitals who need long-term treatment, Health Systems are forced to care for such patients indefinitely because there are no options for appropriate long-term placements and hospitals are obligated to ensure there is a discharge plan in place.

- **Health Systems' hospitals cannot provide long-term treatment to civilly committed patients.** Restorative care often includes, initially, emergency or acute psychiatric care and, later, long-term treatment, and because long-term treatment is mutually exclusive with emergency and acute psychiatric care, civilly committed patients cannot receive full restorative treatment at an acute care hospital. Further, Health Systems cannot begin offering long-term treatment services without giving up some or all of its emergency and acute psychiatric care services (contrary to what OHA implies). *See* Am. Compl. ¶¶ 5–12, 17–19.

- **OHA does not have unfettered discretion in assigning civilly committed patients to treatment facilities.** Assignments may be made only to facilities that OHA has approved, OAR 309-033-0290(1)(a), that "appropriately meet the mental health needs of the person under civil commitment," *id.*, and that are "best able to treat the [civilly committed]

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

person," ORS 426.060(2)(a). Further, the admitting physician of a community hospital receiving a civilly committed individual must be consulted and must determine whether "the best interests of [the] person under civil commitment are served by an admission to [the] community hospital." OAR 309-033-0270(3)(a).

- **OHA is not making lawful assignments or deliveries of civilly committed patients to treatment facilities, contrary to what OHA asserts.** *See* ECF 30 at 13–15, 36–38. Instead, patients are typically brought to the emergency departments of Health Systems' hospitals *before* the civil commitment process begins and then left there after commitment is ordered. OHA's inaction does not constitute a lawful "assignment" or "delivery" of civilly committed patients as required by ORS chapter 426.

OHA presumably disagrees with all these corrections, but this does not justify dismissal of Health Systems' claims. Rather, this creates issues of fact that should be explored in discovery and eventually tried to a factfinder. In deciding *this* motion, the Court must accept Health Systems' factual allegations as true and must draw all reasonable inferences in Health Systems' favor. *Dahlia*, 735 F.3d at 1066.

Health Systems now respond to each of OHA's arguments for dismissal. For the reasons below, the Court should reject OHA's arguments and deny OHA's Motion to Dismiss in its entirety.

### A.    Health Systems' Claims Are Justiciable.

OHA first argues that Health Systems lack standing to assert both their own claims and the claims of Health Systems' civilly committed patients. OHA further argues that Health Systems' claims are not ripe. The Court should reject each of these arguments.

### 1.    Health Systems have Article III standing to assert their own claims.

To bring an action in federal court, a plaintiff must first have standing to do so under Article III of the United States Constitution. A plaintiff must establish (1) it has suffered an

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 12

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

"injury in fact" that is concrete and particularized and actual or imminent, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision by the court. *Sprint v. Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008). Importantly, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because, on motions to dismiss, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Confederated Tribes and Bands of Yakama Nation v. Airgas USA, LLC*, 435 F. Supp. 3d 1103, 1122–23 (D. Or. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (alteration in original).

OHA argues that Health Systems lack Article III standing to assert their own claims because Health Systems purportedly "have not alleged and cannot establish any injury in fact that is fairly traceable to OHA." ECF 30 at 20–22. According to OHA, Health Systems have failed to assert a valid injury because they "voluntarily applied for the opportunity to" provide treatment to civilly committed patients. *Id.* at 21. OHA continues that Health Systems have identified no "specific policy or practice on OHA's part pursuant to which Health Systems are 'forced' to admit and treat civilly committed persons." *Id.* at 20.

OHA's argument, which appears to conflate "injury" with "traceability," is without merit. Health Systems have sufficiently alleged both. To allege a viable injury, a plaintiff must allege a "concrete and particularized" invasion of a legally protected interest, *Alaska Right to Life PAC v. Feldman*, 504 F.3d 840, 848–49 (9th Cir. 2007), affecting the plaintiff "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Where harms to property are involved, this element is easily met. The Ninth Circuit has held, for instance, that harms to pecuniary interests in property constitute an injury. *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 (9th Cir. 2008). Reductions in property value also constitute an injury. *See Lujan*, 504 U.S. at 560. Restrictions in

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 13

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

transferring property constitute an injury. *Boeing Co. v. Movassaghi*, 768 F.3d 832, 838 (9th Cir. 2014). And both permanent and temporary takings of property constitute an injury. *See Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 898 (9th Cir. 2011).

Likewise, here, Health Systems allege harms to their property interests. Health Systems specifically allege that OHA is coopting Health Systems' hospital beds and hospital rooms for state use for extended periods of time, restricting Health Systems from using their property for other purposes—namely, treating other civilly committed patients who are experiencing acute psychiatric crises. Am. Compl. at 3-4, ¶¶ 42-43, 66, 77, 85. Health Systems further allege that OHA has permanently coopted and used up various consumable property, such as medications, food, and personal care items, which, similarly, could be used to support other patients in crisis. Am. Compl. at 3, ¶¶ 40, 66, 77, 85. This readily meets the injury requirement. *See, e.g.*, *Barnum Timber Co.*, 633 F.3d at 898.

Health Systems' injuries are "fairly traceable" to OHA if they are either directly or indirectly linked to OHA's conduct. Here, Health Systems satisfy that requirement by alleging that OHA has abdicated its constitutional and statutory obligations to civilly committed individuals by failing to assign them to appropriate long-term treatment facilities and, instead, abandoning them in Health Systems' hospitals. Am. Compl. at 2, 4-5, ¶¶ 24-25, 33–45. Health Systems further allege that OHA has failed to build out and provide adequate treatment options in the community and the Oregon State Hospital system. *Id.* at 4, ¶¶ 24-27, 32, 46. This directly results in the coopted use of Health Systems' property to continuously care for civilly committed patients abandoned in Health Systems' hospitals who are ready to transition to an appropriate placement for long-term treatment.

OHA's argument that Health Systems lack standing because they "voluntarily applied for the opportunity to" care for civilly committed patients is based on an incorrect assumption of fact supported only by a motion for judicial notice that omits Health Systems' actual applications to

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 14

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

OHA. Health Systems' applications show that Health Systems did *not* voluntarily apply for the opportunity to provide long-term care to civilly committed patients. Instead, Health Systems sought only to provide *emergency and acute psychiatric care* to civilly committed patients. Specifically, Health Systems applied to be approved to provide "Regional Acute Care Psychiatric Services for Adults" and "Hospital Hold and Seclusion Room Services (5 day Hold)." *See* Plaintiffs' Brief Regarding Judicial Notice and Request for Additional Judicial Notice at 7–11. Both of those selections refer to short-term treatment. Indeed, OAR 309-032-0870(2) provides that "[t]he goal of a regional acute care service is the stabilization, control, and amelioration of acute dysfunctional symptoms or behaviors that result in the earliest possible return of the individual to a less restrictive environment."

Moreover, this Court should limit its judicial notice of the certificates of approval to their existence. The Court should not conclude the certificates prove that Health Systems voluntarily agreed to provide long-term treatment to civilly committed patients for weeks, months, or their entire 180-day commitment, nor could it. "A court may not take judicial notice of one party's opinion of how a matter of public record should be interpreted." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. Jan. 8, 2004). "When a court takes judicial notice of a public record, 'it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity.'" *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1021 (D. Or. 2015) (quoting *Klein v. Freedom Strategic Partners*, LLC, 595 F. Supp. 2d 1152, 1157 (D. Nev. 2009) (alteration in original)); *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (public records are appropriate subjects for judicial notice, not for the truth of the facts recited therein but for the records' existence). To the extent OHA disagrees about the scope of Health Systems' certification, the Court must construe all the allegations and record in Health Systems' favor and permit the Parties to develop evidence on this issue in discovery. *Dahlia*, 735 F.3d at 1066.

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 15

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Even had Health Systems voluntarily sought to offer long-term treatment to civilly committed patients (which they did not), that would not constitute voluntary acceptance of every patient abandoned by OHA to Health Systems' care. Oregon law requires that Health Systems' admitting physicians are consulted before Health Systems' hospitals accept a patient for treatment, meaning that even hospitals that are certified to care for civilly committed individuals must have a say in determining whether to accept a patient. *See* OAR 309-033-0270(3)(a). That is not happening; instead, patients typically are brought to the emergency departments of Health Systems' acute care hospitals *before* civil commitment occurs and remain stuck in the acute care hospital indefinitely when OHA fails to transfer them to an appropriate long-term placement. *E.g.*, Am. Compl. ¶¶ 24, 37, 38, 39. Thus, even if OHA was correct about the scope of Health Systems' certificates of approval (which it is not), Health Systems' injuries remain fairly traceable to OHA.

The Court should likewise reject OHA's argument that Health Systems are not "forced" to treat civilly committed individuals abandoned in their care, as that argument ignores crucial legal context. When OHA abandons civilly committed patients in Health Systems' acute care hospitals, Health Systems remain required under both medical ethics and federal law to continue caring for such patients until either they are safe to discharge or their period of civil commitment expires. *See* 42 C.F.R. § 482.43. Thus, in context, OHA's conduct forces Health Systems to hold civilly committed individuals that OHA abandons and care for those individuals to the best of their ability, notwithstanding the restrictive nature of their acute care setting. OHA can deliberately leave patients in acute care hospitals without meeting its statutory obligations, because it knows that Health Systems must continue providing care (and meanwhile, OHA refuses to work with Health Systems to find meaningful long-term care solutions).

Notably, OHA's arguments against Article III standing have already been tried and rejected in similar federal litigation pending in New Hampshire at both the trial court and

appellate levels. In *Doe v. Shibinette*, several hospitals are pursuing constitutional claims against the Commissioner of the New Hampshire Department of Health and Human Services for implementing a pattern and practice of failing to hold timely civil commitment hearings while patients are being involuntarily held at the plaintiffs' hospitals. 16 F.4th 894, 898–99 (1st Cir. 2021). Like here, the *Doe* hospitals alleged that the Commissioner's practice resulted in the deprivations of hospitals' property. *Id.* The Commissioner moved to dismiss for lack of Article III standing, arguing that the hospitals' injuries were not fairly traceable to her because they were "self-imposed," as hospitals had voluntarily admitted all the patients in question. *Id.* at 902. Both the district court and First Circuit rejected that argument. *See Doe v. Commissioner, New Hampshire Department of Health and Human Services*, No. 18-cv-1039-JD, 2021 WL 27009, at *5 (D.N.H. Jan. 4, 2021); *Doe*, 16 F.4th at 902. The First Circuit reasoned that state law required "private hospitals in New Hampshire to have open emergency rooms and to treat patients in line with professional ethical standards." *Id.* (citing N.H. Rev. Stat. § 151:2-g; N.H. Code Admin. R. Med. § 501.02(h)). Thus, under the circumstances, the hospitals' injuries were fairly traceable to the Commissioner. The same reasoning applies here.

In short, Health Systems allege concrete injuries that are fairly traceable to OHA. Health Systems thus have Article III standing to pursue their claims.

### 2. Health Systems have third-party standing to assert the constitutional claims of civilly committed patients in their care.

OHA next argues that Health Systems lack standing to assert claims based on civilly committed patients' rights. The Court should reject these arguments, too, for the reasons below.

While Article III standing is constitutional in nature, standing also includes a prudential component. That includes the general guidepost that "a litigant may assert only his own legal rights and interests and cannot rest a claim for relief on the legal rights or interests of third parties." *Coal. Of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002). That guidepost, however, is not a strict rule. A plaintiff may assert claims based on rights of a

third party where three criteria are met: (1) the plaintiff has a "concrete interest" in the outcome of the dispute (in other words, has suffered an "injury in fact"); (2) the plaintiff has a "close relationship" with the third party whose rights are being asserted; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991); *see also Home Care Ass'n of Am. v. Bonta*, No. 21-15617, 2022 WL 445522, at *3 (9th Cir. Feb. 14, 2022). Here, OHA argues that Health Systems satisfy none of these three criteria.

OHA's argument under the first factor (injury in fact) is no different than OHA's previous "injury" argument regarding Article III standing, so Health Systems need not address it further. Health Systems, however, address OHA's two new arguments below: that Health Systems lack a "close relationship" with their patients and that patients are not "hindered" from protecting their own interests.

> (a)   **Health Systems and patients have a sufficiently close relationship for purposes of the claims asserted in this lawsuit.**

OHA argues that Health Systems lack a sufficiently "close relationship" with patients to satisfy the prudential standing requirement. ECF 30 at 23–25. Close-relationship standing exists where a third party's rights are "inextricably bound up with the activity the litigant wishes to pursue." *Singleton v. Wulff*, 428 U.S. 106, 114 (1976). The Ninth Circuit interprets that requirement to mean that the litigant's and third party's interests must be "aligned." *Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir. 2017) (permitting states to assert the claims of its universities' students because "the interests of the States' universities here are aligned with their students").

The Ninth Circuit applies the "aligned" standard liberally, finding alignment in many commonplace business and fiduciary relationships. For example, the Ninth Circuit has allowed schools to pursue claims on behalf of their students, *see Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir. 2017); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1487–88 (9th

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Cir. 1995); vendors to pursue claims on behalf of their customers, *see Epona v. County of Ventura*, 876 F.3d 1214, 1219–1220 (9th Cir. 2017), *In re Grand Jury Subpoena*, No. 16-03-217, 875 F.3d 1179, 1183–1184 n.2 (9th Cir. 2017); and employers to pursue claims on behalf of their employees, *see Clark v. City of Lakewood*, 259 F.3d 996, 1009–11 (9th Cir. 2001).

Importantly here, both the Ninth Circuit and Supreme Court have repeatedly held that doctors have standing to pursue rights on behalf of their patients. *See, e.g.*, *Singleton*, 428 U.S. at 114; *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Isaacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2013), *cert. denied*, 571 U.S. 1127 (2014); *Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918 (9th Cir. 2004). This is because doctors enjoy a patently intimate, confidential, and fiduciary relationship with patients and the rights of one frequently affect the rights of the other. *Singleton*, 428 U.S. at 117–18; *Griswold*, 381 U.S. at 481.

Moreover, courts of other jurisdictions have extended the doctor-patient relationship to relationships between patients and organization-providers. *See, e.g.*, *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987) (standing between patients and a health clinic); *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991) (same); *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1347–48 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990) (same); *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278, 287–91 (3d Cir. 2002) (standing between patients and an association of psychiatrists). These courts have found close relationships under the same reasoning that other courts have found close relationships between patients and individual doctors.

Here, too, as acute care hospitals, Health Systems have intimate and confidential relationships with their patients, both through their doctors, nurses, and other staff that are part of the care team. Am. Compl. ¶ 40. Health Systems also manage patients' confidential information and provide patients with both healthcare and housing. *Id.* Moreover, their interests are aligned

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 19

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

in that success in this action will, for patients, result in more-available and more-appropriate treatment options (without any treatment restrictions) and, for Health Systems, ceased deprivations of property so that they can provide care to more patients experiencing acute psychiatric crises. *Id.* Meanwhile, failure in this action will not change the status quo for either patients or Health Systems. Patients' rights are therefore "inextricably bound up with the activity" that Health Systems "wish[] to pursue," justifying third-party standing. *Singleton*, 428 U.S. at 114.

OHA urges this Court to find the opposite because Health Systems are supposedly "two steps removed from the civilly committed persons they seek to represent." ECF 30 at 23–24. OHA cites *AlohaCare v. Hawaii Department of Human Services*, 567 F. Supp. 2d 1238, 1260 (D. Haw. 2008), wherein a Hawaii district court precluded a health maintenance organization (HMO) from asserting claims on behalf of its members' patients because the HMO had a "twice-removed" relationship with the patients (the HMO consisted of several member-health systems, and those health systems treated patients). *Id.* OHA argues that Health Systems here are similarly "two steps removed" from their civilly committed patients. ECF 30 at 24.

However, the number of "steps removed" is not the standard by which a court evaluates third-party standing. The proper standard is whether Health Systems and their civilly committed patients' interests are "aligned" in their claims and relief sought, which they are here for the reasons already discussed. Regardless, Health Systems are not "two steps removed" from their patients. Health Systems are not HMOs, which are made up of legally distinct member-providers. Health Systems instead wholly owns and operates the same hospitals that care for their patients. As discussed, courts have repeatedly held that clinics and organization-providers have third-party standing to assert patients' claims in the same way that individual doctors do. OHA's *AlohaCare* argument accordingly fails.

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

OHA next argues that Health Systems lack a close relationship with civilly committed patients because Health Systems' interests are adverse to patients' interests. ECF 30 at 24. That argument also fails because it relies on the incorrect premise that "Plaintiffs want to exclude civilly committed persons from receiving care at their hospitals." ECF 30 at 15–16 (citing *Siskiyou Hospital, Inc. v. California Department of Health Care Services*, No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409 (E.D. Cal. Jan. 12, 2022) (precluding a plaintiff-hospital from asserting claims on behalf of its patients where the hospital sought to stop those patients from being brought to the hospital altogether, including the emergency department for medical care)).[3]

But as detailed above, Health Systems do *not* want to exclude any civilly committed persons from their hospitals. Health Systems want to continue providing emergency and acute psychiatric care to civilly committed patients. No matter the outcome of this lawsuit, Health Systems will continue doing so. What Health Systems seek in this action is for OHA to adhere to its obligations to provide appropriate facilities for civilly committed individuals to receive appropriate long-term placements *where clinically necessary*. Under no circumstances will Health Systems' claims, if successful, deter civilly committed patients from receiving appropriate acute care treatment at hospitals.

---

[3] The plaintiff-hospital in *Siskiyou Hospital* sued the state of California for requiring the hospital to treat Medicaid patients. *Id.* at *1. The hospital brought claims both on its own behalf and third-party claims asserting the rights of Medicaid patients in its care. *Id.* The district court found that the hospital lacked a sufficiently close relationship with patients for the hospital to have third-party standing to assert its Medicaid patients' claims because, critically, the hospital sought an injunction prohibiting Medicaid "patients from being brought to Plaintiffs' [emergency department] at all, apparently regardless of any physical health emergency those patients may be experiencing." *Id.* at *4. Unsurprisingly, the *Siskiyou Hospital* court found that the hospitals' endeavor to "bar all [Medicaid] patients" precluded third-party standing. *Id.* (emphasis in Siskiyou). The court explained that, by "seeking to avoid providing any care to these patients, Plaintiff was clearly putting its own stated interests in avoiding disruptions, safety threats, and costs above those of the [Medicaid] patients." *Id.* (emphasis in Siskiyou). The court was thus "not convinced that [Medicaid] patients would advance the same arguments or seek the same outcome as" the hospital. *Id.* This is the opposite of the situation in the present case.

As such, civilly committed patients, who have a strong interest in restoring their mental health so that they can regain their liberty, would likely seek the same relief as Health Systems. *Compare Siskiyou Hospital*, 2022 WL 118409, at *4 (precluding close-relationship standing where the court was "not convinced that [Medicaid] patients would advance the same arguments or seek the same outcome as" the hospital). Because the interests of Health Systems and civilly committed patients are "aligned," a sufficiently close relationship exists for third-party standing.

**(b)    Patients are hindered from asserting their own claims.**

OHA next argues that Health Systems lack Article III standing to assert claims for patients because patients are not hindered in their ability to protect their own interests. ECF 30 at 25–27. The Court should reject this argument too.

"To bar a third party from bringing a claim, a hindrance must present a genuine obstacle beyond a lack [of] a sufficient individual economic stake in the outcome or motivation." *Home Care Ass'n of Am.*, 2022 WL 445522, at *3 (internal quotation marks omitted). This criterion is a low bar. It does not require an "insurmountable" bar from suit, but merely "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991); *Singleton*, 428 U.S. at 118 (noting that hindrances to abortion patients are not "insurmountable," as patients could assert claims under a pseudonym to circumvent privacy hindrances). For example, the Supreme Court has repeatedly held that doctors have third-party standing to challenge abortion laws on their patients' behalf because patients are often "hindered" from doing so themselves, due to both concerns of privacy and the likelihood that their claims will become moot before litigation resolves. *See, e.g.*, *Singleton*, 428 U.S. at 117–18 (plurality opinion); *Griswold*, 381 U.S. at 481.

Likewise, here, civilly committed patients are hindered due to both privacy concerns and the likelihood that their claims will become moot before litigation resolves. Civilly committed patients are typically discharged within 180 days, making it extremely likely that patients' claims

will become moot before litigation can run its course. *See* ORS 426.130(b) (civil commitment period shall not last more than 180 days). Moreover, courts have recognized that "[t]he stigma associated with receiving mental health services presents a considerable deterrent to litigation." *Pennsylvania Psychiatric Soc.*, 280 F.3d at 290. As a result, civilly committed patients may be disinclined to bring a lawsuit out of concerns of privacy. *See generally State v. T.T.*, 293 Or. App. 376, 386, 428 P.3d 921, 927 (2018) (Aoyagi, J., dissenting) (noting the "serious . . . social stigma . . . attendant to a civil commitment"); *Pennsylvania Psychiatric Soc.*, 280 F.3d at 290 (noting that concerns of privacy "apply with equal, if not greater, force to mental health patients"). "Besides the stigmatization that may blunt mental health patients' incentive to pursue litigation, their impaired condition may prevent them from being able to assert their claims." *Pennsylvania Psychiatric Soc.*, 280 F.3d at 290. Although these obstacles are not necessarily "insurmountable," they have been deemed sufficient "hindrances" to justify third-party standing in other cases. *E.g.*, *Singleton*, 428 U.S. at 117–18; *Griswold*, 381 U.S. at 481; *Pennsylvania Psychiatric Soc.*, 280 F.3d at 291.

In addition, active legal representation for civilly committed patients generally ends upon commitment. In most cases, such patients are not provided with an advocate who reasonably can help challenge conditions of confinement or the adequacy of treatment where patients fail to receive restorative treatment. Am. Compl. ¶ 24 n.1. There is certainly no advocacy made available to them by OHA. Thus, the civilly committed patient often becomes lost to the oversight of the courts that have committed them. *Id.* This is yet another way in which patients are hindered from asserting their own due process rights.

OHA disagrees, noting that Oregon laws that give civilly committed patients the "right to . . . [b]e represented by counsel whenever the substantial rights of the person may be affected," ORS 426.385(1)(i), in addition to habeas rights, *see* ORS 426.385(1)(j). But having the "right" to counsel is not the same as being actively represented by counsel during one's period of

commitment. Oregon law leaves patients to their own devices in finding and retaining counsel,

all while the patient is being detained involuntarily and suffering from a severe mental illness

(which often entails acute symptoms). For many patients, that burden is insurmountable. On top

of that, after commitment, indigent civilly committed patients do not have a right to counsel paid

for by the state. These patients often lack the independent financial resources necessary to hire a

private lawyer, substantially limiting their ability to find counsel. For all these reasons, civilly

committed patients' lack of legal representation also constitutes a "hindrance."[4]

So far in both this lawsuit and the ongoing *Mink* case (which has been pending for

decades), no one aside from Health Systems has stepped forward to assert the rights of civilly

committed patients. It is high time that someone meaningfully advocate for their interests in the

ongoing disputes over Oregon's broken behavioral health system. Health Systems have standing

to do so here, and the Court should let civilly committed patients' claims proceed.

### 3.      Health Systems' claims are ripe.

OHA argues that none of Plaintiffs' claims are ripe because Health Systems have not

sufficiently alleged an "imminent threat of harm." ECF 30 at 27–28 (citing *Lueck v. Nev. Jud.*

*Ethics Prac.s Comm'n*, 106 Fed. Appx. 552, 554 (9th Cir. 2004)). OHA's argument is based on

the same points as discussed above: that Health Systems were not "forced" to admit and treat

civilly committed persons because Health Systems treat civilly committed persons on a voluntary

basis. ECF 30 at 28. The Court can readily reject this argument for all the same reasons above

and in Health Systems' concurrent briefing.

---

[4] OHA cites a small handful of lawsuits brought by patients in other states to supposedly show
that civilly committed patients in Oregon are not hindered from pursuing claims on their own
behalf. *E.g.*, *Kriz v. Roy*, No. 8:20CV110, 2020 WL 6135442, at *1 (N.D. Neb. Oct. 19, 2020);
*Endsley v. Mayberg*, No. CIV S-09-2311 WBS GGH P, 2010 WL 482 9549 (E.D. Cal. Nov. 22,
2020); *Salcido v. Woodbury Cnty., Iowa*, 119 F. Supp. 2d 900 (N.D. Iowa). But the fact that
civilly committed patients in other states —which have different civil commitment systems and
laws—have brought litigation says nothing about whether it is easy or even possible for a civilly
committed patient in Oregon to bring their own action.

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

To the extent that OHA means to also argue that Health Systems have failed to

"demonstrate a 'real and immediate threat of repeated injury,'" *Updike v. City of Gresham*, 62 F.

Supp. 3d 1205, 1213 (D. Or. 2014) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974)),

that assertion is also meritless. Health Systems have amply alleged that OHA's unlawful and

harmful practices have been ongoing for years, *see* Am. Compl. ¶¶ 24–27, 30–34, 45, 56, 66, 76,

84, 92, 98, 106, and will continue into the future indefinitely, *see* Am. Compl. ¶¶ 59, 69, 79, 87,

93, 99, 107. Accordingly, the claims in this action are ripe for the Court's review.

**B.      Health Systems Have Alleged Sufficient Claims.**

OHA next argues that Health Systems fail to make out sufficient claims under the Due

Process Clause, Takings Clause, and Oregon statutes. Health Systems address each of these

arguments in turn.

**1.      Health Systems' Due Process claims are viable.**

**(a)      Patients' Due Process Rights**

Health Systems' First Claim seeks to enforce the rights of civilly committed patients left

by OHA in Health Systems' care. *See* Am. Compl. ¶ 51–61. As discussed, civilly committed

patients have "a liberty interest in receiving restorative treatment" that gives them "a realistic

opportunity to be cured or to improve [the] mental condition" for which they were confined.

*Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980). The First Claim alleges that OHA

deprives patients of that liberty interest, in violation of both substantive and procedural due

process, by abandoning civilly committed patients in Health Systems' acute care hospitals where

patients fail to receive the long-term care necessary for restorative treatment.

OHA repudiates Ninth Circuit law when it urges the Court to dismiss this claim on the

ground that civilly patients are, in fact, *not* entitled to restorative treatment. *See* ECF 30 at 28–31.

OHA asserts "*Ohlinger* is not controlling" and that civilly committed individuals are not entitled

to "a realistic opportunity to be cured or improve [the] the mental condition" for which they were

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 25

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

confined. *Id.* at 29, n.1. OHA instead contends that civilly committed patients are entitled to only "minimally adequate" treatment. *Id.* at 29 (citing *Youngberg v. Romeo*, 457 U.S. 307, 319 (1982)).

That is simply wrong. For decades, it has been well-established in the Ninth Circuit that "civilly committed persons must be provided with mental health treatment that gives them 'a realistic opportunity to be cured or improve the mental condition for which they were confined." *Mink*, 322 F.3d at 1121 (quoting *Sharp*, 233 F.3d at 1172 and citing *Ohlinger*, 652 F.2d at 779). The Ninth Circuit recognized this constitutional right first in *Ohlinger*:

> [A] person committed solely on the basis of his mental incapacity has a constitutional right to receive 'such treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition. Adequate and effective treatment is constitutionally required because, absent treatment, appellants could be held indefinitely as a result of their mental illness, while those convicted and sentenced under [a criminal] statute need only serve the [crime's] maximum term.

652 F.2d at 778. The Ninth Circuit later reaffirmed this liberty right in *Sharp*, 233 F.3d at 1172 ("The appropriate legal standard for analyzing the constitutionality of [the plaintiff's] treatment program is set forth in *Ohlinger v. Watson* . . . . In *Ohlinger*, we held that the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released."), and again in *Mink*, 322 F.3d at 1121. Patients also have liberty rights arising from Oregon statutes, like OAR 309-032-0870(2), under which patients have the right to be returned to "a less restrictive environment" as early as possible. *See Martyr v. Mazur-Hart*, 789 F. Supp. 1081, 1087 (D. Or. 1992) (acknowledging that civilly committed patients have liberty interests in rights created by Oregon statutes). It is on these liberty interests that Health Systems base the First Claim. *See* Am. Compl. ¶ 56.

OHA counters that "*Youngberg*, not *Ohlinger*, sets forth the applicable constitutional minimum standard of care for civilly committed persons," because *Youngberg* purportedly

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

"supersedes *Ohlinger*" and, further, *Ohlinger* purportedly applies to only "sex offenders serving indeterminate life sentences in prison." ECF 30 at 29 n.1. But the Ninth Circuit's decision in *Sharp*—decided long after *Youngberg*—dictates otherwise. *Sharp* was brought by plaintiffs involuntarily confined to Washington's Special Commitment Center ("SCC"), a special hospital which provides "treatment, not punishment, for offenders who have completed their criminal sentences." 233 F.3d at 1168. The plaintiffs in *Sharp* sued the SCC for not providing residents with constitutionally adequate psychiatric treatment. *Id.* The Ninth Circuit acknowledged the Supreme Court's decision in *Youngberg* but nonetheless followed *Ohlinger*. *Id.* at 1171–72 ("The Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released."). The court further observed that, "[b]ecause the purpose of confinement is not punitive, the state must also provide the civilly-committed with 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Id.* at 1172 (quoting *Youngberg*, 457 U.S. at 322).

OHA's apparent belief that it must only provide "minimally adequate" treatment to civilly committed individuals and that it has no obligation to provide restorative treatment aimed at regaining their freedom strongly suggests that it is violating the Due Process rights of civil commitment patients in Oregon.

OHA also argues that Health Systems' allegations are "conclusory" because "Plaintiffs identify no specific patients, no specific mental health conditions allegedly going untreated, and no specific 'overly-restrictive' placements." ECF 30 at 30. But Health Systems need not be so specific to make out a "plausible" claim. *Iqbal*, 556 U.S. at 678 (requiring only allegations that "allow[] the court to draw the reasonable inference that the defendant is liable" and not necessarily "detailed factual allegations"). It is enough that Health Systems allege that civilly committed individuals typically suffer from psychosis, paranoia, hallucinations, suicidal or

homicidal ideation, and sometimes violent behaviors; Am. Compl. ¶¶ 14, 17; that such individuals generally require, and are entitled to, both acute psychiatric treatment and long-term treatment, *id.* ¶¶ 16–20; and that OHA's conduct prevents patients from receiving long-term treatment, *id.* ¶¶ 33–45; all of which the Court must assume true in deciding this motion. *Dahlia*, 735 F.3d at 1066. In any event, the Amended Complaint *does* describe several specific patients, specific conditions and needs, and specific illustrations of how OHA is causing patients not to receive restorative long-term treatment. *See generally* Am. Compl. ¶¶ 36–39 (detailing several specific cases of real, albeit anonymous, patients). Accordingly, Health Systems have sufficiently alleged both a substantive and procedural due process claim based on the rights of civilly committed patients. The Court should reject OHA's argument for dismissing the First Claim.

### (b)    Health Systems Acute Care Hospitals' Due Process Rights

Health Systems' Second Claim seeks to enforce Health Systems Hospital Systems' rights. *See* Am. Compl. ¶¶ 62–71. Health Systems allege that OHA is violating their fundamental property rights by unlawfully leaving civilly committed patients in Health Systems' care indefinitely, forcing Health Systems to use beds, hospital rooms and space, and consumable resources to care for those patients who are ready to transition to the next level of long-term care. *See generally Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005) (holding that a property owner's "right to exclude others from entering and using her property" is "perhaps the most fundamental of all property interests"). Health Systems allege that this conduct violates Health Systems' substantive and procedural due process rights.

OHA first challenges this claim on the ground that it is "subsumed by [Health Systems'] federal takings claim." ECF 30 at 31–32. OHA argues that, because Health Systems' due process claim and takings claim are both based on violations of Health Systems' property rights, the due process claim cannot stand separately unless OHA's conduct is "so arbitrary or irrational that it

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

runs afoul of the Due Process Clause." *Id.* (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). OHA asserts that Health Systems fail to allege that OHA acted arbitrarily. *Id.*

To be sure, some substantive due process claims based on deprivations of property may be subsumed within takings claims if the due process claim alleges no more than a recognized application of the Takings Clause. *See Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851, 855–56 (9th Cir. 2007); *see generally County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). However, where the claim alleges more—like arbitrary or irrational conduct—then a substantive due process claim is proper. That is because a viable due process violation "cannot be remedied under the Takings Clause, because if a government action is found to be impermissible—for instance because it is . . . is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action." *Crown Point Development*, 506 F.3d at 856. Thus, where a defendant's alleged conduct rises to the level of being arbitrary, irrational, conscience-shocking, deliberately indifferent, or something else that is actionable as a substantive due process claim, the claim is appropriate under the rubric of substantive due process and not the Takings Clause. *Id.*

That is so here. Contrary to OHA's assertions, Health Systems have more than sufficiently alleged that OHA has engaged in arbitrary, conscience-shocking, and deliberately indifferent conduct. The Amended Complaint amply describes both the disturbing nature of OHA's conduct and OHA's persistent and deliberate indifference about it. The Amended Complaint specifically alleges that, for years, OHA has engaged in policies and practices in which civilly committed patients who are committed to OHA's custody are abandoned in Health Systems' acute care hospital beds, where the patients do not receive the type of long-term care they need to reasonably recover, and acute care hospitals must dedicate significant resources to

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 29

159922529.10

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

caring for those patients who have no medical reason to be in acute care settings at the cost of treating other patients who are experiencing a mental health crisis. *See* Am. Compl. ¶¶ 40–50.

The Amended Complaint further details specific examples of real (anonymous) patients who have been subject to OHA's policies and practices. *See generally id.* ¶¶ 36–39. Those graphic stories illustrate how civilly committed patients are abandoned by OHA for lengthy periods (and sometimes most of their entire 180-day commitment) without access to an appropriate long-term placement and the burden placed on Health Systems who are not equipped or staffed to provide long-term treatment. Because OHA's policies and practices result in patients receiving inappropriate care for any meaningful recovery, patients often decompensate from a stabilized state back to severe crisis. *Id.* ¶¶ 6, 20. Moreover, hospital resources are used and strained in caring for civilly committed patients who have no medical need for emergency care or acute treatment; and because hospital beds are taken for this purpose, other incoming patients in the community who are experiencing acute mental health crises (including other patients who will end up in either the aid-or-assist or civil commitment track) cannot get needed emergency care and acute treatment. *Id.* ¶¶ 66, 77, 85.

OHA has known about its practices—and their troubling results—for years, but has failed to meaningfully address them despite having more than ample time to do so. Indeed, OHA has knowingly benefited from its practices by passing costs and the responsibilities to civilly committed patients to Health Systems and other acute care community hospitals, at the grave expense of patients, acute care hospitals, and the community as a whole. *Id.* ¶¶ 40–50. This is more than enough for a jury to find that OHA's conduct is sufficiently "conscience shocking" to support a substantive due process claim distinct from a takings claim. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (conscience-shocking conduct includes "deliberate indifference" where the actor has reasonable time for deliberation before acting); *Crown Point*

*Dev.*, 506 F.3d at 856 ("No amount of compensation can authorize [arbitrary or irrational deprivation of property].").[5]

OHA alternatively argues that Health Systems fail to state a substantive due process claim because Health Systems have not alleged that OHA infringed on Health Systems' liberty interests. ECF 30 at 32. OHA argues that substantive due process rights protect only liberty interests, *id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997)), and that no liberty interests were infringed here purportedly because Health Systems' "voluntarily undertook to treat civilly committed persons" and thus were never "forced" to house civilly committed patients. *Id.* at 32–33.

This argument fails for several reasons, not least because Health Systems' due process claims are based on deprivations of Health Systems' *property* interest rather than *liberty* interests. Am. Compl. ¶¶ 63, 66. OHA is simply wrong that "substantive due process protects only fundamental liberty interests." *Id.* at 32 (citing *Washington*, 521 U.S. at 703). *Washington* does not hold that substantive due process protects "only" liberty interests, and numerous other cases (even those cited by OHA) establish otherwise. In *Crown Point Development*, for example, the Ninth Circuit reversed the district court's dismissal of the plaintiffs' substantive due process claim, which alleged that the defendant "arbitrarily interfered with [the plaintiff's] property rights" by denying a zoning application. 506 F.3d at 853, 856–57. That holding is consistent with numerous other decisions in the Ninth Circuit holding that substantive due process claims may be based on harms to property interests. *See, e.g.*, *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) ("To state a substantive due process claim, the plaintiff must show as a threshold

---

[5] Plaintiffs' Third and Fourth Claims under the federal and state takings clauses are, effectively, claims in the alternative of Plaintiffs' Second Claim under the Fourteenth Amendment Due Process Clause. Plaintiffs may permissibly assert claims in the alternative. Fed. R. Civ. P. 8(d)(2)–(3). The Court should permit all claims to proceed through discovery and to trial because if, for some reason, OHA were to convince the factfinder that OHA's conduct was short of arbitrary, irrational, conscience-shocking, and deliberately indifferent, Plaintiffs could still prove other facts supporting relief under the federal and state takings clauses.

matter that a state actor deprived it of a constitutionally protected life, liberty *or property* interest." (emphasis added)); *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (same); *Patru v. Rush*, No. 3:13-cv-00357-SI, 2015 WL 2062193, at *5 (D. Or. May 4, 2015) (holding that the plaintiff had alleged a viable substantive due process claim based on a property interest).

OHA also argues that Health Systems' due process claim fails because Health Systems "voluntarily undertook to treat civilly committed persons" and were therefore never "forced" to house civilly committed patients. ECF 30 at 32–33. But that argument fails for the reasons already discussed in Part IV.A.1. It is also not supported by OHA's cited cases.[6]

In short, OHA fails to identify any meritorious reason why Health Systems fail to state a viable due process violation. The Court should deny OHA's Motion to Dismiss the Second Claim.

### 2.    Health Systems' Takings claims are viable.

Health Systems' Third and Fourth Claims assert federal and state takings claims. OHA moves to dismiss these claims on two grounds: (1) Health Systems' voluntary admission and treatment of civilly committed patients bars the claim, and (2) Health Systems ultimately

---

[6] The case on which OHA relies, *Sierra Medical Services Alliance v. Kent*, 883 F.3d 1216, 1226 (9th Cir. 2018), does not support OHA's argument that Plaintiffs' voluntary participation in Oregon's civil commitment process precludes Plaintiffs' due process claim. *Sierra* holds that plaintiffs who participate voluntarily in Medicaid reimbursement programs have no constitutionally protected liberty interests in particular reimbursement rates. That has no bearing on Plaintiffs' claim here, as (1) Plaintiffs' claim does not pertain to Medicaid, (2) Plaintiffs' claim is based on property interests rather liberty interests, and (3) Plaintiffs assert an interest in their own beds and other personal property rather than reimbursement rates handed down by the Medicaid program in which they voluntarily participate. Indeed, the *Sierra* court expressly distinguished that, although voluntary Medicaid participants lack constitutionally protected interests in particular Medicaid reimbursement rates, they still have constitutionally protected interests in their own property. *Id.* at 1226 ("[T]he Plaintiffs voluntarily participate in Medi-Cal and therefore have no constitutionally protected interest in any particular Medi-Cal reimbursement rate (as opposed to a constitutionally protected interest in their ambulances and other personal property)." (emphasis added)). Tellingly, although OHA quoted the first part of that sentence from *Sierra*, OHA omitted that important parenthetical.

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 32

159922529.10

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

describe a regulatory takings claim but fail to allege facts sufficient to show a regulatory taking. *See* ECF 30 at 34–35. The Court should reject both arguments.

The Fifth Amendment of the United States Constitution provides: "Nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Similarly, Article I, section 18, of the Oregon Constitution provides: "Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation[.]" Or. Const. Art. I, § 18. The analysis under both provisions is the same. *State ex rel. Schrunk v. Metz*, 125 Or. App. 405, 412 n.9, 125 Or App 405 (1993). Both federal and Oregon law recognize two types of takings: physical, or *per se*, takings and regulatory takings. *See Cedar Point Nursery v. Hassid*, ___ U.S. ___, 141 S. Ct. 2063, 2071–72 (2021) (explaining the standards for determining whether government action is a physical or regulatory taking).

OHA seeks dismissal on the ground that Health Systems allege "at most . . . a regulatory takings claim" yet have failed to allege sufficient facts to support a regulatory takings claim. *See* ECF 30 at 34–35. However, OHA provides no analysis beyond the brief statement that "Courts have generally limited per-se takings claims to real property (land)." *Id.* That reasoning is flawed for multiple reasons—not least of which is that OHA is incorrect that *per se* takings are generally "limited" to claims to real property. The Supreme Court has stated unequivocally that *per se* takings may occur with personal property just as much as real property. *Horne v. Dept. of Agric.*, 576 U.S. 350, 360 (2015).

Regardless, whether the taking involves real or personal property is not the standard governing whether a taking is physical or regulatory. As the Supreme Court recently reaffirmed, the nature of the taking depends instead on the nature of the government's conduct interfering with one's property rights; the "essential question" is "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, ___ U.S. ___,

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

141 S. Ct. 2063, 2071–72 (2021). A regulatory taking may occur, for instance, where zoning ordinances go "too far" in restricting a landowner's ability to use or build on land, *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387–388 (1926), where government orders bar the mining of gold on private land, *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168 (1958), or where regulations prohibit the sale of eagle feathers, *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979).

A physical taking, meanwhile, may occur when the government "occupies" or "appropriates" private property for itself or others. *Id.* The Supreme Court has held that, where the government requires property owners to allow others to use or access their private property, a physical taking occurs. *E.g.*, *Cedar Point Nursery*, 141 S. Ct. at 2074 (law granting labor organizations the "right to take access" to an agricultural employer's property to solicit union support for fixed periods was physical taking); *Horne v. Dept. of Agric.*, 576 U.S. 350, 362 (2015) (regulation requiring raisin farmers' to forfeit a percentage of raisin yield to state use was a physical takings); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 828 (1987) (appropriation of private land for creation of public easements was a physical taking); *Kaiser Aetna v. United States*, 444 U.S. 164, 166–67 (1979) (same); *see also Ark. Game & Fish Comm'n*, 568 U.S. 23, 31–34 (2012) (land deprivation caused by intermittent flooding from the government's dam of a river was physical taking).

Under these authorities, OHA's conduct constitutes a physical taking. Health Systems allege that, because OHA causes civilly committed individuals to occupy acute care hospital beds for weeks, months, and sometimes their entire 180-day commitment and recommitment periods, OHA's conduct deprives Health Systems and other community hospitals of their hospital beds. Am. Compl. ¶ 77. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in an acute care setting and ready to transition to the next level of long-term care, and prevents other acute psychiatric patients in the

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

community from accessing much needed care, including patients who are backed up in emergency departments. *Id.* Because of OHA's actions, community hospitals and the communities they serve are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day. *Id.* Those allegations are more than enough to state a viable *per se* takings claim. *See Cedar Point Nursery*, 141 S. Ct. at 2075 ("[A] physical appropriation is a taking whether it is permanent or temporary. . . . [P]hysical invasions constitute takings even if they are intermittent as opposed to continuous."). As such, the Court should reject OHA's request to dismiss the Third and Fourth Claims for relief on the grounds that those claims do not sufficiently allege regulatory takings claims.[7]

OHA next urges the Court to dismiss Health Systems' takings claims because "Health Systems' voluntary admission and treatment of civilly committed patients bars their takings claims." ECF 30 at 34. But this argument fails several reasons. For one, it again raises a disputed issue of fact that is inappropriate for resolution on a motion to dismiss, and the Court should reject the argument as discussed in Part IV.A.1. *See also* Plaintiffs' Brief Regarding Judicial Notice and Request for Additional Judicial Notice.

Further, OHA's argument is not supported by case law. OHA relies on *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1252 (9th Cir. 2013), a Medicaid case holding that a plaintiff's voluntary participation in a Medicaid program forecloses the plaintiff's protected interest to *particular Medicaid reimbursement rates*. However, the fact that Medicaid participants lack constitutional interests in *particular Medicaid reimbursement rates* does not

---

[7] To the extent the Court disagrees, Plaintiffs respectfully request leave to file a Second Amended Complaint adding allegations supporting a regulatory takings claim.

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 35

159922529.10

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

negate that Health Systems have a fundamental interest in *their own property*, including their beds, physical spaces, and consumables.

Indeed, the Ninth Circuit has already rejected OHA's very argument from *Managed Pharmacy Care*. In *Sierra Medical Services Alliance v. Kent*, 883 F.3d 1216 (9th Cir. 2018), ambulance companies brought takings claims against the state of California for setting low Medicaid reimbursement rates for ambulance services; the ambulance companies alleged takings of both their own personal property in addition to their purported rights to adequate reimbursement rates. *Id.* at 1224. The district court dismissed the takings claim, reading *Managed Pharmacy Care* as foreclosing the claim entirely. *Id.* The Ninth Circuit rejected the district court's reasoning, holding that, although the ambulance companies lacked a protected interest in particular Medicaid rates due to their voluntary participation in the program, they nonetheless had a protected interest in their own property. 883 F.3d at 1225. The *Sierra* court held that "voluntary participation in a market that is subject to regulation does not defeat a takings claim." *Id.* Here, too, Health Systems' voluntary participation in Oregon's civil commitment system does not foreclose their takings claim based on their ownership rights to their own property (like beds, hospitals spaces, and consumables). *Id.*; *Horne v. Dep't of Agric.*, ___ U.S. ___, 135 S. Ct. 2419, 2430–31 (2015) (raisin farmers' voluntary participation in the raisin market did not defeat their takings claim against the Department of Agriculture's raisin-reserve requirement)).

Finally, OHA argues that Health Systems fail to state viable takings claims because "the Amended complaint seeks injunctive relief" despite that "[s]uch relief is not available via a takings claim." ECF 30 at 35–36. But while it is true that most plaintiffs asserting takings claims seek monetary compensation rather than injunctive relief, injunctive relief is not necessarily prohibited in takings lawsuits. Where no "adequate provision for obtaining just compensation

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

exists," other relief may be available. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2176 (2019).

In Oregon, there is no adequate provision under which Health Systems can obtain just compensation for OHA's takings. The only possible way for Health Systems to obtain "just compensation" for caring for civilly committed patients abandoned in their acute care hospitals would be to serially assert state lawsuits. *Cf. Atwood v. Stickler*, No. 3:19-cv-01699-IM, 2020 WL 3549662, at *5 (D. Or. June 29, 2020) (adequate remedy providing compensation was available to plaintiff through a state-court action). But due to the continuous and ongoing nature of OHA's policies and practices—and the relatively small damages that each individual lawsuit would yield—this remedy would be impractical. Health Systems would have to initiate a new lawsuit for each committed patient once that patient is finally discharged seeking the difference between "just compensation" and the compensation paid. That difference will usually be smaller than the legal costs of bringing the lawsuit. Moreover, Health Systems would have to repeatedly bring such lawsuits—in perpetuity—due to the ongoing nature of OHA's practices.

Accordingly, no adequate takings remedy exists for monetary relief. Injunctive relief is the only reasonable way to adequately redress OHA's takings. Accordingly, the Court should allow Health Systems' takings claims to proceed.

### 3. Health Systems' Oregon statutory claims are viable.

Health Systems' last three claims (the Fifth, Sixth, and Seventh Claims) seek declarations that OHA is violating Oregon statutes. The Fifth Claim alleges that OHA is violating ORS 426.060, which requires OHA to direct civilly committed persons "to the facility best able to treat them." Health Systems allege that OHA is failing to do so by leaving civilly committed patients in Health Systems' acute care hospitals indefinitely, and deliberately failing to make any placement decision for them as contemplated by the statute. Am. Compl. ¶¶ 90–95. The Sixth Claim alleges that OHA, through the same conduct, is violating ORS 426.150(1), which requires

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 37

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

OHA to "take [civilly committed patients] into its custody" and "ensure the safekeeping and proper care" of patients. Am. Compl. ¶¶ 96–101. Health Systems allege that OHA is violating this statute by failing to take custody of civilly committed individuals and ensure the safekeeping and proper care of them until they are delivered to an assigned treatment facility or to a representative of the assigned treatment facility. Am. Compl. ¶ 98. Instead, OHA is leaving civilly committed individuals in acute care community hospitals where they are initially detained for emergency purposes on a notice of mental illness, and failing to place patients after they are civilly committed. *Id.*

The Seventh Claim alleges that OHA is violating ORS 659A.142(5)(a), which prohibits the State from discriminatorily denying benefits and services to a person because of that person's disability; Health Systems allege that OHA is doing just that by denying civilly committed patients admission to OSH, and denying them an alternative appropriate long-term placement when they are civilly committed to the custody of OHA for 180 days of treatment. Am. Compl. ¶¶ 102–108.

OHA asks the Court to dismiss the Fifth and Sixth Claims, alleging violations of ORS 426.060 and ORS 426.150, on the ground that "there is no allegation that suggests or a legal basis to conclude that '*choosing* to leave civilly committed individuals . . . in acute care hospitals' is not a statutorily sufficient placement decision by OHA or by the [community mental health provider] to which placement authority has been delegated" or that "leaving civilly committed individuals in acute care community hospitals" does not constitute "deliver[ing] [civilly committed individual] to an assigned treatment facility." ECF 30 at 36 (emphasis and alterations in original). OHA also argues that "there has been no allegation that any of the Health Systems are not appropriate facilities to which a civilly committed person could be placed or delivered." *Id.* In short, OHA argues that Health Systems' statutory claims fail because OHA has always acted within its statutory authority.

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 38

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

159922529.10

These arguments fail because they all turn on issues of fact which, for purposes of this motion, must be construed in Health Systems' favor. A jury could reasonably find that, if true, OHA's "deliberate[] fail[ure] to make any placement decision for" civilly committed patients, and OHA's "leaving civilly committed individuals in acute care community hospitals where they are initially detained for emergency purposes," violates both ORS 426.060(2)(a)'s and (d)'s requirements that patients are "assigned" to "the facility best able to treat" them (or a "suitable" facility), and ORS 426.150(1)'s requirement that OHA "deliver" patients to an appropriate assigned treating facility. Am. Compl. ¶¶ 92, 98. That Health Systems have phrased their allegation as involving a "choice" by OHA to deliberately fail to assign patients does not change the analysis. Moreover, Health Systems have sufficiently alleged that their acute care hospitals are not appropriate facilities for long-term care—Health Systems have alleged that their hospitals are equipped and staffed to only provide emergency and acute care (i.e., short-term care), *id.* ¶¶ 5–12, that they cannot reasonably provide long-term care, *id.* ¶¶ 18–19, and that patients need long-term care rather than short-term acute care to succeed, *id.* ¶¶ 17–20. Accordingly, the Court should let the Fifth and Sixth Claims proceed.

OHA also argues that the Seventh Claim, alleging violations of ORS 659A.142(5)(a) and (6)(a), should be dismissed because Health Systems fail to allege "that placement or delivery of a civilly committed patient to an authorized facility (*i.e.* one of their community hospital) constitutes a discriminatory denial or restriction of care." ECF 30 at 37. But this too raises an issue of fact.[8] Where Health Systems have specifically alleged that patients need certain long-term care offered at the Oregon State Hospital and other long-term secure residential treatment facilities—and that OHA has prioritized other patient populations in deciding who receives that treatment, over civilly committed patients—a reasonable factfinder could find discrimination.

---

[8] OHA's argument also assumes that Plaintiffs' acute care hospitals are certified to provide long-term treatment, which is false. *See* Plaintiffs' Brief Regarding Judicial Notice and Request for Additional Judicial Notice.

4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 39

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Further, where Health Systems have specifically alleged that OHA is denying civilly committed patients an alternative appropriate long-term placement when they are civilly committed to the custody of OHA for 180 days of treatment and limiting and restricting the allocation of resources to them—a reasonable factfinder could find discrimination. Likewise, whether Health Systems' hospitals provide medically appropriate treatment to civilly committed patients is an issue of fact inappropriate for disposition on this Motion. The Court should accordingly reject OHA's argument for dismissing the Seventh Claim and let that claim proceed to discovery.

## V.    CONCLUSION

In short, for all the reasons above, the Court should deny OHA's Motion to Dismiss or, in the alternative, grant Plaintiffs Health Systems' leave to replead.


DATED: January 26, 2023                    LEWIS BRISBOIS BISGAARD & SMITH LLP


                                           By:    *s/ Eric J. Nieman*
                                                  Eric J. Neiman, OSB #823513
                                                  Emma P. Pelkey, OSB #144029
                                                  Telephone: 971.712.2800
                                                  Facsimile: 971.712.2801


                                           STOEL RIVES, LLP


                                           By:    *s/ Thomas R. Johnson*
                                                  Thomas R. Johnson, OSB #010645
                                                  Telephone: 503.224.3380
                                                  Facsimile: 503.220.2480

                                                  *Attorneys for Plaintiffs*


4871-0459-0156.1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
- 40

159922529.10

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Ave, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480