**Eric J. Neiman, OSB #823513**
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800
Facsimile: 971.712.2801

**Thomas R. Johnson, OSB #010645**
Tom.Johnson@stoel.com
STOEL RIVES LLP
730 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  503.294.9466

**Alex Van Rysselberghe, OSB #174836**
AVanRysselberghe@perkinscoie.com
PERKINS COIE, LLP
1120 NW Couch 10th Floor
Portland, OR  97209
Telephone: 503.727.2000
Facsimile:  503.727.2222

Honorable Michael W. Mosman

*Attorneys for Intervenors and Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDERS INCORPORATED, and A.J. MADISON,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants, | Case No. 3:02-cv-00339-MO (Lead Case)<br>Case No. 3:21-cv-01637-MO (Member Case)<br>Case No. 6:22-cv-01460-MO (Member Case)<br><br>**PLAINTIFFS' RESPONSE TO AMICUS BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

and

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH, LEGACY
HEALTH SYSTEM, PEACEHEALTH, and
PROVIDENCE HEALTH & SERVICES –
OREGON,

   Intervenors.

---

METROPOLITAN PUBLIC DEFENDERS
INCORPORATED, JAROD BOWMAN,
JOSHAWN DOUGLAS-SIMPSON,

   Plaintiffs,

  v.

DOLORES MATTEUCCI, Superintendent of
the Oregon State Hospital, in her individual
and official capacity, PATRICK ALLEN,
Director of the Oregon Health Authority, in
his individual and official capacity,

   Defendants,

   and

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH, LEGACY
HEALTH SYSTEM, PEACEHEALTH, and
PROVIDENCE HEALTH & SERVICES –
OREGON,

   Intervenors.

Case No. 3:21-cv-01637-MO (Member Case)

---

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH; LEGACY
HEALTH SYSTEM; PEACEHEALTH;
PROVIDENCE HEALTH & SERVICES –
OREGON, and ST. CHARLES HEALTH
SYSTEM,

   Plaintiffs,

  v.

Case No. 6:22-cv-01460-MO (Member Case)

---

4865-8460-4492.1
 PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
2

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

PATRICK ALLEN, in his official capacity as
Director of Oregon Health Authority,

               Defendant.

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
3

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

## TABLE OF CONTENTS

**Page**

I.  Introduction…………………………………………………………………9

II.  Legal Standard ………………………………………………………...11

III.  Argument ...…………………………………………………… 12

    A.  There are no conflicts of interest that interfere with the close relationship between Health Systems and civilly committed patients …..12

        1.  The interests of civilly committed patients and Health Systems align……………………………………………12

        2.  Health Systems seek to expand long-term treatment capacity for civilly committed patients, and treat more civilly committed patients in the community who are often backed up in emergency departments ...………………………………………16

        3.  Health Systems did not neglect to bring obvious claims ...………..22

        4.  Health Systems and civilly committed patients do not have "obvious contrary financial and occupational interests." ...………………… 25

        5.  Health Systems have not erroneously characterized or masked the interests and rights of civilly committed patients; it is DRO who has mischaracterized the allegations in the Amended Complaint ...………………………………………………… 29

    B.  Civilly committed patients are hindered from filing this lawsuit.......… 32

IV.  Conclusion ...…………………………………………………… 36

   PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
4

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................ 11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................ 11

*Bernard v. Myers,*
No. CV-11-608-HZ, 2011 U.S. Dist. LEXIS 122106 (D. Or. Oct. 20, 2011) ..................... 11

*Bowman v. Matteucci,*
3:21-cv-01637, 2021 WL 5316440 (D. Or. Nov. 15, 2021)................................................. 30

*Campbell v. Louisiana,*
523 U.S. 392 (1998)............................................................................................ 32

*Cervantes v. United States,*
330 F.3d 1186 (9th Cir. 2003) ........................................................................... 11

*Griswold v. Connecticut,*
381 U.S. 479 (1965)............................................................................................ 33

*Hong Kong Supermarket v. Kizer,*
830 F.2d 1078 (9th Cir. 1987) ..........................................................................14, 15, 32

*Legal Aid Soc'y v. Legal Servs. Corp.,*
145 F.3d 1017 (9th Cir. 1998) ........................................................................... 36

*McCollum v. Cal. Dep't of Corr. & Rehab.,*
647 F.3d 870 (9th Cir. 2011).............................................................................. 35

*Mercer v. Michigan State Bd. of Ed.,*
379 F. Supp. 580 584 (E.D. Mich. July 18, 1974)............................................. 31

*Olmstead v. L. C. by Zimring,*
527 U.S. 581 (1999)..........................................................................................22, 23, 24, 25

*Olson v. Allen,*
No. 3:18-cv-001208-SB, 2019 U.S. Dist. LEXIS 42561 (D. Or. Mar. 15, 2019)................ 35

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
5

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

*Oregon Advocacy Center v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) ........................................................................ 9, 10, 29, 34

*Pa. Psychiatric Soc'y v. Green Spring Health Servs.*,
  280 F.3d 278 (3rd. Cir. 2002) ........................................................................ 33

*Parham v. J.R.*,
  442 U.S. 584 (1979) ........................................................................ 33

*Pony v. Cnty of Los Angeles*,
  433 F.3d 1138 (9th Cir. 2006) ........................................................................ 32

*Powers v. Ohio*,
  499 U.S. 400 (1991) ........................................................................ 12, 32, 33

*Singleton v. Wulff*,
  428 U.S. 106 (1976) ........................................................................ 32, 33

*Siskiyou Hosp., Inc. v. California Dep't of Health Care Servs.*,
  No. 2:20-cv-00487-TLN-KJN, 2022 U.S. Dist. LEXIS 6541 (E.D. Cal. Jan. 12,
  2022) ........................................................................ 12, 13

*State v. J. J. S. (In re J. J. S.)*,
  297 Or. App. 707 (2019) ........................................................................ 34

*State v. Vanderburg*,
  98 Or. App. 428 (1989) ........................................................................ 34

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991) ........................................................................ 11

*Survjustice Inc. v. Devos*,
  2019 U.S. Dist. LEXIS 54616 (N.D. Cal. Mar. 29, 2019) ........................................................................ 35

*Unterreiner v. Goldberg*,
  No. 06-277-HU, 2007 U.S. Dist. LEXIS 110276 (D. Or. July 31, 2007) ........................................................................ 35

*Updike v. Clackamas Cnty.*,
  3:15-cv-00723-SI, 2015 U.S. Dist. LEXIS 160169 (D. Or. Nov. 30, 2015) ........................................................................ 24

*Wiltz v. New York Univ.*,
  No. 1:19-cv-03406, 2019 U.S. Dist. LEXIS 220563 (S.D. N.Y. Dec. 23, 2019) ........................................................................ 23

## Statutes

42 U.S.C. §1988 ........................................................................ 32

4865-8460-4492.1
  PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
6

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

42 U.S.C. §§ 12131(1)(A), (B)........................................................................ 23

Americans with Disabilities Act Title II (ADA)...............................................23, 24

Cal. Welfare & Institutions Code § 5150(a) ................................................... 12

Federal ADA Amendments Act of 2008 ......................................................... 24

Federal Americans with Disabilities Act of 1990 ............................................ 24

ORS 426.005(1)(f)(B).................................................................................. 19

ORS 426.060(1) ......................................................................................... 21

ORS 426.060(2)(a), (d)............................................................................... 23

ORS 426.070.............................................................................................. 35

ORS 426.095.............................................................................................. 35

ORS 426.100(2) ......................................................................................... 35

ORS 426.130(1)(a)(C) ................................................................................ 21

ORS 426.135.............................................................................................. 34

ORS 659A.139(1)........................................................................................ 24

ORS 659A.142 ........................................................................................... 24

ORS 659A.142(5)(a) ................................................................................... 24

ORS 659A.142(5)(a) and (6)(a).................................................................... 24

**Other Authorities**

28 CFR 36.203 ........................................................................................23, 24

Debra A. Pinals, M.D. & Doris A. Fuller, M.F.A., *The Vital Role of a Full
    Continuum of Psychiatric Care Beyond Beds* .......................................... 18

15 James William Moore, Moore's Federal Practice § 101.51[3][c][iii] (3d ed. 2008)..........32, 33

OAR 309-032-0870(2)...............................................................................19, 22

Pinals & Fuller, *The Vital Role of a Full Continuum of Psychiatric Care Beyond
    Beds* ................................................................................................... 20

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
7

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

Rule 8(a)(2)..................................................................................................... 11

Rule 12 ............................................................................................................. 11

Rule 12(b)(6)..................................................................................................... 11

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
8

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

## I.    INTRODUCTION

The Health Systems'[1] response to Disability Rights Oregon's (DRO) amicus brief in support of the Oregon Health Authority's (OHA) motion to dismiss begins with the *Mink* decision itself:

> We have held that civilly committed persons must be provided with mental health treatment that gives them "a realistic opportunity to be cured or improve the mental condition for which they were confined." *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980)). "Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Ohlinger*, 652 F.2d at 779.

*Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003).

The position taken by DRO in its amicus brief departs radically from the core principles of *Mink*. Health Systems' lawsuit seeks to hold OHA accountable for providing civilly committed patients with appropriate long-term treatment that gives them a realistic opportunity to be cured or improve the mental condition for which they were confined. Rather than support that effort, DRO, an entity that purports to represent and advocate for civilly committed patients, opposes the lawsuit. For reasons that are unclear, DRO supports dismissal of a lawsuit that seeks to *help* civilly committed patients receive meaningful long-term treatment in the least restrictive setting and provide an optimal care environment for those civilly committed patients in need of acute psychiatric care.

The main premise of DRO's amicus brief is that Health Systems are "attempting to block all access" to community hospitals so that civilly committed patients are unable to receive *any* care. But that is not at all what the Amended Complaint alleges. Health Systems are <u>not</u> seeking a court order allowing community hospitals to deny patients access to medical or mental health care. To the contrary, Health Systems have two goals: (1) for civilly committed patients to have

---

[1] The Health Systems include Plaintiffs Legacy Emanuel Hospital & Health Center d/b/a Unity Center for Behavioral Health, Legacy Health System, PeaceHealth, Providence Health & Services – Oregon, and St. Charles Health System.

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO AMICUS BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

9

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

access to the most appropriate and least restrictive long-term treatment facilities once they are stabilized and ready to transition to the next level of care, and (2) to care for *more* civilly committed patients who need acute psychiatric care. Both goals align fully with the interests of civilly committed patients.

DRO asserts that, as the Protection and Advocacy System for the state of Oregon, it is in a unique position to advocate for the rights of civilly committed patients. ECF[2] 42 at 2. Yet DRO has failed to pursue any litigation remedies on behalf of civilly committed patients in the 20 years since *Mink* was decided. And now, when a lawsuit is finally brought to ensure civilly committed patients receive timely access to appropriate long-term treatment, DRO seeks to dismiss that lawsuit and maintain the status quo—a crisis in which civilly committed patients are forgotten by OHA and left to languish indefinitely in hospitals that are designed for acute care rather than long-term treatment. DRO's proposed solution—that hospitals build long-term residential care facilities—seeks to impose responsibility for the entire continuum of care of civilly committed individuals on non-profit acute care hospitals rather than the entity to which they are committed, OHA.

DRO dedicates most of its amicus brief to grossly mischaracterizing the allegations in the Amended Complaint in the hopes of creating a conflict between Health Systems and civilly committed patients. But no such conflict exists. Ultimately, it is DRO which lacks the desire or ability to effectively advocate for the rights of civilly committed patients by actively seeking dismissal of a lawsuit that would help those patients. Indeed, DRO has chosen to support a motion to dismiss which declares: "**civilly committed persons do not have a fundamental right to optimal treatment or to treatment in the least restrictive setting**." ECF 30 at 29 (emphasis added).

In addition to taking a position that is directly adverse to the interests of civilly

---

[2] Health Systems refer to the ECF page numbers at the top-center of the page rather than the motion page number at the bottom-left of the page.

PLAINTIFFS' RESPONSE TO AMICUS BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

committed patients, DRO's amicus brief raises a number of policy and advocacy points that do little to address the legal sufficiency of Health Systems' claims. While DRO is welcome to express its opinions and theories (as surprising as they may be for an entity that purports to represent the interests of civilly committed patients), those opinions and theories have nothing to do with the legal issues presented by the motion to dismiss. DRO's accusations, mischaracterizations, and harsh invective are unsupported by evidence and simply not relevant to a Rule 12 motion.

## II.    LEGAL STANDARD

DRO ignores the procedural posture of its amicus brief—a motion to dismiss. In the context of a motion to dismiss under Rule 12(b)(6), all material facts as pleaded in the complaint are assumed to be true and are construed in the light most favorable to the plaintiff.[3] *See, e.g.*, *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991); *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). At this juncture, the Court need only determine whether the allegations, which taken as true, state a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When read in its entirety, the Amended Complaint satisfies the liberal pleading standard set forth in Rule 8(a)(2) and provides Defendant with "fair notice" of what the claims are and "the grounds upon which [they] rest[]." *Twombly*, 550 U.S. at 555; *Bernard v. Myers*, No. CV-11-608-HZ, 2011 U.S. Dist. LEXIS 122106 (D. Or. Oct. 20, 2011), citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.").

---

[3] Because DRO does not seek to comment on Health Systems' Article III standing, the deferential standard of Rule 12(b)(6) applies for purposes of analyzing the arguments raised by DRO.

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
11

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

## III.    ARGUMENT

### A.    There are no conflicts of interest that interfere with the close relationship between Health Systems and civilly committed patients.

DRO argues that Health Systems cannot satisfy the "close relationship" factor of the third-party standing test due to conflicts of interest.[4] According to DRO, that is because: (1) Health Systems seek a court order allowing them to "deny treatment, not provide treatment"; (2) "neglected to bring obvious claims"; (3) have "obvious financial and occupational interests"; and (4) mask "obvious important patient interests." ECF 42. As explained below, DRO's arguments are all meritless.

### 1.    The interests of civilly committed patients and Health Systems align.

DRO has a fundamental misunderstanding of Health Systems' position—which is to provide care to more individuals, not to deny care to anyone. Health Systems have two goals. First, Health Systems want civilly committed patients to receive treatment in the right care environment. Second, Health Systems want to be able to treat more civilly committed patients who need acute psychiatric care. There is no conflict of interest because Health Systems want civilly committed patients to receive care in the least restrictive treatment setting possible, and at the same time, Health Systems want to provide acute psychiatric treatment to more civilly committed patients who need it.

The relief Health Systems seek here—for OHA to ensure civilly committed individuals receive appropriate long-term placements—is readily distinguishable from *Siskiyou Hosp., Inc. v. California Dep't of Health Care Servs.*, No. 2:20-cv-00487-TLN-KJN, 2022 U.S. Dist. LEXIS 6541 (E.D. Cal. Jan. 12, 2022). In *Siskiyou*, the hospital wanted an injunction against law enforcement from bringing 5150 patients[5] there *entirely*, including the emergency department

---

[4] A party may assert the rights of a third-party, as Health Systems seek to do on behalf of civilly committed individuals, by showing: (1) its own injury; (2) a close relationship with the third party; and (3) "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

[5] This refers to detained individuals with mental health emergencies. *See* Cal. Welfare &

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
12

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

and "regardless of any physical health emergency those patients may be experiencing." *Id.* at. *11. The court reasoned that the hospital's willingness to bar ***all*** patients from one of two hospitals in the county "despite the potential benefits those patients could receive from [the hospital] for physical medical emergencies" was probative of a conflict. *Id.* The court found that "[b]y seeking to avoid providing *any* care to these patients, [the hospital was] clearly putting its own stated interests in avoiding disruptions, safety threats, and costs above those of the 5150 patients," and that the "remedy sought would hinder 5150 patients' access to emergency medical care for physical needs." *Id.* The court concluded that "while it [was] reasonable to assume 5150 patients have an interest in receiving adequate care for their mental health, it [was] not reasonable to assume they would necessarily put that interest above their interest in receiving care for their physical health emergencies at [the hospital's] ED." *Id.* at *12.

Here, unlike in *Siskiyou*, Health Systems' objective is not to avoid providing any care to civilly committed patients, nor is to bar them from coming to Health Systems' hospitals. To the contrary, Health Systems are committed to providing acute mental health care and medical care to civilly committed patients, which is precisely the role of an acute care hospital. ECF 28 at ¶¶ 5-12.

Contrary to DRO's arguments, nowhere in the Amended Complaint are there any allegations that Health Systems want to deny civilly committed patients access to acute psychiatric care, medical care, or the emergency department as in *Siskiyou*. The opposite is true, which is clear upon reviewing the Amended Complaint. As Health Systems note, "[b]y law, every patient coming to a hospital emergency department must be given a medical screening examination and provided stabilizing treatment for an emergency medical condition, including a psychiatric crisis." *Id.* at ¶ 24. DRO also overlooks the fact that Health Systems are not seeking immediate transfer of civilly committed patients, but instead refer to civilly committed patients who are ready to be transferred to appropriate long-term placements because they are stabilized

Institutions Code § 5150(a).

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
13

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

and "have no medical reason" to remain in an acute care setting. *Id.* at 3 and ¶¶ 66, 77, 85.

In addition to providing medical care, Health Systems' hospitals with acute care behavioral health units provide assessment and stabilizing treatment for patients experiencing acute behavioral health crises. *Id.* at 2 and ¶¶ 5-12. As Health Systems allege, "[t]he behavioral health units operated by Plaintiffs are intended to serve the community as acute care facilities at which patients experiencing acute mental health crises are evaluated, stabilized, and discharged to the next appropriate level of care." *Id.* at ¶ 6. Not only do Health Systems want to continue serving in that important role in the community, but they also want to be able to treat more patients, including other civilly committed patients who need access to mental health care and medical treatment during a mental health crisis. *Id.* at ¶ 42. Health Systems want to ensure that civilly committed patients are not backed up in emergency departments so that they can receive the care they need in a timely manner, recover from their illness, and return to the community. *Id.* at ¶¶ 42, 66, 77, 85.

Health Systems are confident that anyone advocating on behalf of a civilly committed patient would not want them to remain stuck indefinitely in an acute care hospital when there should be less restrictive options and more appropriate treatment settings available.[6]

As for DRO's reliance on *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078 (9th Cir. 1987), it is equally misplaced. In that case, Hong Kong Supermarket (a vendor) alleged that the selection of eligible food products for a state-funded food assistance program for Women, Infants, and Children (WIC program) was racially discriminatory because it failed to account for cultural differences, violating its customers' equal protection rights. *Id.* at 1079. The district court dismissed Hong Kong's complaint for lack of standing and Hong Kong appealed. *Id.*

---

[6] Indeed, in every Oregon civil commitment case in which counsel for Health Systems have intervened, defense counsel, once reappointed, have been supportive of transferring the patient to a more appropriate long-term placement. On that point, the interests of Health Systems and civilly committed patients are completely in alignment, and Health Systems are surprised that DRO, of all entities, is not aligned as well.

4865-8460-4492.1

| PLAINTIFFS' RESPONSE TO | **LEWIS BRISBOIS BISGAARD & SMITH LLP** | **STOEL RIVES LLP** |
| AMICUS BRIEF IN SUPPORT OF | 888 SW Fifth Avenue, Suite 900 | 760 SW Ninth Avenue, Suite 3000 |
| THE MOTION TO DISMISS | Portland, Oregon 97204-2025 | Portland, Oregon 97205 |
| PLAINTIFFS' AMENDED | Telephone: 971.712.2800 • Fax 971.712.2801 | Telephone: 503.294.9466 |
| COMPLAINT | | |
| 14 | | |

On appeal, the Ninth Circuit affirmed. In reaching its decision, the court focused on the third-party standing exception for vendors and found that the exception did not apply to Hong Kong, who had requested an injunction prohibiting state personnel from administering the WIC program entirely, "precluding the issuance of *any* WIC coupons and the expenditure of *any* state funds on the WIC program or on vendor hearings . . . until the regulations [were] amended." *Id.* at 1080 (emphasis added). The court reasoned that Hong Kong's alleged objective to remedy the discriminatory implementation of the program could be "achieved by much less drastic measures than bringing the entire program to a halt," and that its willingness to enjoin the entire program was probative of a conflict, rather than a congruence of interests, thereby undermining its claim to be a suitable champion of its customers' rights. *Id.* at. 1082. Accordingly, the court held that Hong Kong could not be granted third-party standing. *Id.*

DRO's reliance on *Hong Kong Supermarket* is misplaced for several reasons. For one, it is inapplicable because Health Systems are not vendors, they are healthcare providers, which requires a different analysis. Moreover, unlike in *Hong Kong Supermarket*, the relief sought by Health Systems would *benefit* civilly committed patients immensely by requiring the state to increase capacity to ensure they have access to appropriate long-term placements. Health Systems are not seeking an injunction that would result in no placement options for civilly committed patients or premature discharge to inappropriate settings. Nor are Health Systems trying to enjoin OHA from allowing civilly committed patients to receive treatment at their hospitals. Rather, Health Systems are asking OHA to identify *more options* to ensure an adequate supply of secure beds are available for civilly committed patients once they are stabilized, so that they can receive long-term treatment in the least restrictive setting. Those goals are in harmony with civilly committed patients' interests, making *Hong Kong Supermarket* completely inapposite.

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
15

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

2. **Health Systems seek to expand long-term treatment capacity for civilly committed patients, and treat more civilly committed patients in the community who are often backed up in emergency departments.**

DRO argues that the interests of civilly committed patients and Health Systems are "fundamentally in conflict" because Health Systems claim that their "rights are violated any time they must care for an unwanted patient." ECF 42 at 7. But nowhere in the Amended Complaint is such an offensive allegation to be found. The negative rhetoric that civilly committed patients are "unwanted patients" belongs only to DRO, not Health Systems. Health Systems are the ones who have filed a lawsuit to advocate for civilly committed patients' right to appropriate long-term treatment.

Attempting to create a conflict, DRO dedicates more than six pages of its amicus brief to support its theory that Health Systems' community hospitals have an "expressed desire to offer no treatment whatsoever to civilly committed patients." *Id.* at 13. But there is no support for DRO's argument. Health Systems have made it clear that they want to be able to treat more civilly committed patients who are experiencing acute psychiatric crises, and for the group of civilly committed patients who are stabilized and require long-term treatment to receive appropriate long-term placements in the community in far less restrictive settings than acute care hospitals.

The fundamental problem with DRO's argument is that the Court's analysis for a motion to dismiss is directed to the Amended Complaint itself. And the allegations in the Amended Complaint provide no basis to conclude that Health Systems' interests are not aligned with those of civilly committed patients. Putting aside DRO's rhetoric, the Amended Complaint states:

> Rather than ensure and provide timely access to meaningful treatment, OHA is abandoning civilly committed patients and leaving them for extended periods of time in acute care community hospitals. These acute care community hospitals are not equipped, staffed, or intended to provide long-term treatment for mental illness. Acute care community hospitals are meant to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises—treatment which involves emergency care, highly restrictive settings, and constant monitoring.

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
16

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

But civilly committed patients who have already been stabilized (that is, most civilly committed patients) do not need that kind of care; instead, they need long-term treatment. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself with the goal of enabling the patient to recover from their illness and return to the community. Long-term treatment requires a calmer, less stressful, less-restrictive environment where patients have more independence, peer support, socialization, and opportunities to develop life and health skills. Thus, when OHA leaves civilly committed patients indefinitely in acute care hospitals, they do not meaningfully recover because they are denied access to long-term treatment. This failure to provide the appropriate level of treatment violates patients' constitutional rights.

. . .

Acute care community hospitals now bring this lawsuit to remedy OHA's unlawful practice of abandoning civilly committed individuals in acute care facilities and failing to even attempt to provide them with appropriate treatment during their involuntary detention. This practice violates OHA's statutory duties and ignores the fundamental rights of civilly committed Oregonians: access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980).

ECF 28 at 2-3, 5.

As alleged above and in the Amended Complaint, Health Systems are advocating on behalf of civilly committed patients to receive meaningful long-term treatment during their involuntary detention and seeking to end the pattern in which OHA abandons civilly committed patients in acute care hospitals once they are committed. Nothing about that goal creates a conflict.

Another flaw with DRO's argument is that it is based on three cherry-picked paragraphs from a forty-page complaint with over one hundred paragraphs, which have been taken out of context to create a conflict that does not exist. ECF 42 at 7. In particular, DRO mischaracterizes the allegations as community hospitals complaining about providing *any* medical or mental health treatment to civilly committed patients. But there are no such allegations. Instead, the allegations focus on how civilly committed patients are being warehoused in acute care hospitals *indefinitely*, instead of being transferred to appropriate long-term placements after stabilization.

DRO asserts that Health Systems seek to "avoid treating" civilly committed patients and declare in a footnote that "Hospital Corporations never entertain *any* relief that would allow *any*

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
17

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

civilly committed patients to be committed to their care for *any* reason." ECF 42 at 7, n 3. But those statements are both false. Health Systems are not asking for civilly committed patients to be removed from their care altogether for any reason. Rather, Health Systems want civilly committed patients who are stabilized and ready to receive long-term treatment to receive it in the right care environment, and to be able to treat more civilly committed patients experiencing acute mental health crises who come to their emergency departments in need of help. The notion that community hospitals wanting civilly committed patients to receive the appropriate level of care and meaningful treatment, thereby creates a conflict, is unsupported. The fact that DRO is opposed to that outcome only serves to reveal a conflict between DRO and civilly committed patients.

DRO fails to recognize that as acute care hospitals, Health Systems serve an important role in the behavioral health continuum of care. That role is to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises—treatment which involves emergency care, highly restrictive settings, and constant monitoring. ECF 28 at 2. But to continue serving other civilly committed patients with acute behavioral health needs, hospitals cannot serve as a long-term placement for every civilly committed patient in Oregon.[7]

---

[7] This is a critical point that the Court's expert agrees with. As explained by Dr. Pinals in a recent article she co-authored, transitional and community beds are a critical piece of the continuum of care: "Psychiatric beds and patients may also be differentiated by duration of stay. Crisis stabilization beds are typically designed for a level of care short of hospitalization and utilized for very brief stays (several hours to a few days). Transitional or respite beds in residential or other settings provide 24-hour nonmedical monitoring and significant supports and are typically utilized for a fixed or limited period following hospitalization. Long-term beds in group living environments, adult foster care settings, board-and-care facilities, nursing homes, and a variety of other settings are typically utilized for individuals with chronic mental illness who are not ready or able to reenter the community." *See* Debra A. Pinals, M.D. & Doris A. Fuller, M.F.A., *The Vital Role of a Full Continuum of Psychiatric Care Beyond Beds*, PSYCHIATRY SERVICES, July 2020, at 715; *available at* https://ps.psychiatryonline.org/doi/epdf/10.1176/appi.ps.201900516 (last accessed January 26, 2023). As Dr. Pinals found, it is "[o]nly with a more complete continuum of psychiatric care will more individuals be able to live life to its fullest while accessing any needed supports in their own homes." *Id.* at 718.

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
18

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

DRO goes on to assert that civilly committed patients "have *ultimate interests* in obtaining appropriate physical and mental health care for themselves in the *least restrictive, most integrated setting*." ECF 42 at 7 (emphasis added). Health Systems share those interests and are advocating for them in this lawsuit, which is why their interests align. ECF 28 at 3 ("Long-term treatment requires a calmer, less stressful, *less-restrictive environment* where patients have more independence, peer support, socialization, and opportunities to develop life and health skills.") (emphasis added); *id.* at ¶ 16 ("civil commitment requires individualized treatment in the *least restrictive setting* possible with the goal of restoring the person's liberty, and commitment can last only long enough for the purpose of giving patients treatment that gives them a 'realistic opportunity to be cured or to improve' so that they can return to the community and not be recommitted.") (emphasis added); *id.* at ¶ 21 ("it is the responsibility of the state to provide civilly committed individuals with necessary treatment in the most appropriate and *least restrictive setting* possible to fulfill patients' constitutional rights.") (emphasis added).

DRO next argues that Health Systems are "[a]ttempting to block all access to community hospitals for all civilly committed patients," and that individuals may require medical care, particularly those committed under the basic needs prong of ORS 426.005(1)(f)(B).[8] ECF 42 at 8-9. Health Systems take exception to this spurious claim. As community hospitals, Health Systems fully understand that stabilizing a person means addressing both medical and mental health care needs. They have never contended otherwise. But that does not mean civilly committed patients, including those committed under the basic needs prong, should be compelled

---

[8] Health Systems agree that individuals who are unable to care for their basic needs may be civilly committed and need to be stabilized in an acute care hospital. Health Systems also agree that the cases cited by DRO state as much. But the key piece DRO is missing is that once stabilized, civilly committed patients should return to a "less restrictive environment." OAR 309-032-0870(2).

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
19

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

by OHA to live in a restrictive acute care hospital indefinitely after they are stabilized.[9]

DRO further argues that Health Systems "neglect to consider or address whether the interests of patients in distant parts of the state may be poorly served by a court order requiring treatment at OSH." ECF 42 at 9. According to DRO, [e]ven if community hospitals do not offer ideal behavioral health services," civilly committed patients may end up in worse settings if they are discharged "regardless of the availability or suitability of other placements." *Id.* DRO's argument fails to acknowledge the allegations in the operative complaint. This case is not solely about OSH. Rather, it is about ensuring that civilly committed individuals have access to a range of appropriate long-term placements and are not confined indefinitely in acute care hospitals, which are not designed, equipped, or staffed to provide long-term treatment. Beyond that, Health Systems are not asking for civilly committed patients to be discharged to inappropriate placements. Health Systems want civilly committed patients to be placed by OHA in the facility best able to treat them or a suitable facility, as required by Oregon law.

DRO also seeks to shift the obligation to provide long-term solutions for civilly committed patients from OHA to acute care hospitals. According to DRO, because Health Systems have "enormous financial resources," they should simply solve OHA's failure to comply with its statutory obligations to civilly committed patients by using those supposed resources to create long-term residential programs. DRO ignores the portion of the Amended Complaint where Health Systems allege that they "are all non-profits, but their behavioral health units are suffering unsustainable losses that amount to tens of millions of dollars a year" and that "[i]f this continues, some of these important behavioral health resources may be forced to close." ECF 28 at ¶ 43. In short, Health Systems are struggling as it is to fulfill their role in the behavioral health continuum as acute care providers because, at this point in time, community

---

[9] *See* Pinals & Fuller, *The Vital Role of a Full Continuum of Psychiatric Care Beyond Beds*, at 714 ("We readily acknowledge that patients with cancer, stroke, congestive heart failure, and many other medical conditions may require hospitalization at some point, but we do not expect hospitals to provide all the care required for those patients to survive and recover.").

4865-8460-4492.1

| PLAINTIFFS' RESPONSE TO AMICUS BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT | LEWIS BRISBOIS BISGAARD & SMITH LLP 888 SW Fifth Avenue, Suite 900 Portland, Oregon 97204-2025 Telephone: 971.712.2800 • Fax 971.712.2801 | STOEL RIVES LLP 760 SW Ninth Avenue, Suite 3000 Portland, Oregon 97205 Telephone: 503.294.9466 |

20

hospitals are virtually the only place civilly committed patients can go for treatment.

While it is curious that DRO has decided to join forces with OHA in its efforts to push responsibility for long-term care entirely onto non-profit, acute care hospitals such as Health Systems, that is not what the law requires. By law, OHA is responsible for ensuring that civilly committed individuals receive appropriate long-term placements because civilly committed individuals are committed to OHA for treatment. ORS 426.130(1)(a)(C) (the court may "order commitment of the person with mental illness to the Oregon Health Authority for treatment"); ORS 426.060(1) ("[c]ommitments to the Oregon Health Authority shall be made only by the judge of a circuit court in a county of this state."); ECF 28 at ¶ 50. This case is about the state's responsibility to civilly committed patients. And while DRO's policy advocacy arguments may be interesting, they are outside the scope of the allegations in the Amended Complaint and ignore the relevant statutes at issue.

DRO's argument that there is nothing prohibiting Health Systems from "cultivating their own long-term behavioral health placements," demonstrates a fundamental misunderstanding of the capabilities and type of treatment offered in an acute care hospital. ECF 42 at 10-12. The allegations in the Amended Complaint, which is the only issue before this Court, clearly state that acute care hospitals are not equipped, staffed, designed, or intended to provide long-term treatment for civilly committed patients despite acute care hospitals' best efforts. ECF 28 at ¶¶ 17, 24. The amenities and opportunities available in a less restrictive setting are simply not available in acute care hospitals. *Id.* at ¶ 32. Several of Health Systems' hospitals have emergency departments and medical-surgical units, but do not have behavioral health units at all. *Id.* at ¶¶ 7, 9-12. Other hospitals have acute care behavioral health units, but those units are designed to provide "acute care," meaning short-term stabilizing treatment for patients experiencing an acute behavioral health crisis, not long-term placement.[10] *Id.* at ¶¶ 8, 10-12.

---

[10] The word "acute" is defined, in relevant part, as "being, providing, or requiring short-term medical care (as for serious illness or traumatic injury)" and "lasting a short time." *See Acute,*

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
21

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

Remarkably, DRO fails to even acknowledge that an acute care behavioral health unit is the most restrictive setting possible for civilly committed patients. As alleged in the Amended Complaint, an acute care environment is a highly restrictive setting by design to provide patients with stabilizing treatment. ECF 28 at 2 and ¶ 17. But civilly committed patients who have already been stabilized and are ready for long-term treatment require a less restrictive environment, which cannot be satisfied by confining patients to acute care hospitals that are not equipped, staffed, or intended to provide such care. *Id.* at 2. This is consistent with Oregon's administrative rule regarding the purpose of acute psychiatric services, which states: "The goal of a regional acute care service is the stabilization, control, and amelioration of acute dysfunctional symptoms or behaviors that result in the earliest possible return of the individual to a less restrictive environment." OAR 309-032-0870(2).

In short, DRO's argument that a conflict exists is not reflected in the allegations of the Amended Complaint. Contrary to DRO's belief, Health Systems have not alleged an "expressed desire to offer no treatment whatsoever to civilly committed patients." ECF 42 at 13. Nor is there any support for DRO's theories that Health Systems "mistreat their patients," "never wanted to admit patients in the first place," or have "refuse[d] to provide adequate care . . . [or] respect their rights." *Id.* at 12. These theories lack any factual basis and are therefore irrelevant to the issue before the Court.

### 3.     Health Systems did not neglect to bring obvious claims.

DRO next argues that a conflict of interest exists because Health Systems neglected to bring obvious claims on behalf of patients that might subject themselves to liability. ECF 42 at 13. According to DRO, "Hospital Corporations have an obvious conflict of interest in, essentially, not suing themselves for *Olmstead* violations." *Id.* at 14. DRO is wrong for several

---

Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/acute#:~:text=%3A%20being%2C%20providing%2C%20or%20requiring,acute%20hospital.

4865-8460-4492.1

| PLAINTIFFS' RESPONSE TO | **LEWIS BRISBOIS BISGAARD & SMITH** LLP | **STOEL RIVES LLP** |
| AMICUS BRIEF IN SUPPORT OF | 888 SW Fifth Avenue, Suite 900 | 760 SW Ninth Avenue, Suite 3000 |
| THE MOTION TO DISMISS | Portland, Oregon 97204-2025 | Portland, Oregon 97205 |
| PLAINTIFFS' AMENDED | Telephone: 971.712.2800 • Fax 971.712.2801 | Telephone: 503.294.9466 |
| COMPLAINT | | |
| 22 | | |

reasons.

To begin with, civilly committed patients do not have an "obvious" *Olmstead* claim

against Health Systems. *Olmstead* claims are brought under Title II of the Americans with

Disabilities Act (ADA), which applies to public entities. *Olmstead v. L. C. by Zimring*, 527 U.S.

581, 587 (1999). A "public entity" includes "any State or local government," and "any

department, agency, special purpose district, or other instrumentality of a State or States or local

government." 42 U.S.C. §§ 12131(1)(A), (B). Private hospitals are not public entities subject to

Title II of the ADA. Therefore, there is no basis for an *Olmstead* claim against them. *Wiltz v.*

*New York Univ.*, No. 1:19-cv-03406, 2019 U.S. Dist. LEXIS 220563, at *20-21 (S.D. N.Y. Dec.

23, 2019) ("It is well settled that private universities and private hospitals are not public entities

subject to Title II, even if they receive government funding.").

Further, there is no "reciprocal *Olmstead* standard" that applies to private entities, such as

non-profit hospitals, under Title III of the ADA. In *Olmstead*, the Court interpreted Title II of the

ADA, not Title III. *Olmstead* is therefore inapplicable for purposes of Title III of the ADA.

Nor is there a viable claim against Health Systems under Title III of the ADA. For one,

Health Systems are not in control of where civilly committed patients are placed. Civilly

committed patients are committed to the custody of OHA, and OHA has authority to place or

delegate placement of civilly committed patients.[11] Beyond that, there are no allegations in the

Amended Complaint that Health Systems are discriminating against civilly committed patients or

violating their rights.[12] To the contrary, the allegations show that Health Systems are providing

---

[11] OHA is supposed to ensure civilly committed patients are transferred to the facility best able to
treat them or a suitable facility. ORS 426.060(2)(a), (d).

[12] Moreover, the claim that DRO describes under 28 CFR 36.203 would be an entirely different
claim than what is at issue here. Even assuming, for the sake of argument, that a patient could
have a viable claim against a hospital under 28 CFR 36.203, such a claim would be specific to
the individual patient and based on the unique circumstances surrounding that individual's
particular experience within the hospital. It would have little or nothing to do with OHA. Such a
patient-specific claim is fundamentally different and separate from the claims against OHA in

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO           LEWIS BRISBOIS BISGAARD & SMITH LLP       STOEL RIVES LLP
AMICUS BRIEF IN SUPPORT OF        888 SW Fifth Avenue, Suite 900            760 SW Ninth Avenue, Suite 3000
THE MOTION TO DISMISS             Portland, Oregon 97204-2025               Portland, Oregon 97205
PLAINTIFFS' AMENDED               Telephone: 971.712.2800 • Fax 971.712.2801   Telephone: 503.294.9466
COMPLAINT
23

the best care they can as acute care hospitals, and advocating for civilly committed patients to receive appropriate long-term placements in the least restrictive setting possible once stabilized.[13]

Moreover, Health Systems have alleged the state law equivalent of an *Olmstead* claim. Specifically, Health Systems' Seventh Claim alleges a violation of ORS 659A.142(5)(a) and (6)(a). ECF 28 at ¶¶ 102-108. By statute, claims brought under ORS 659A.142 "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended by the federal ADA Amendments Act of 2008 and as otherwise amended." ORS 659A.139(1). This Court has previously explained that ORS 659A.142(5)(a) "provides the Oregon statute most analogous to Title II of the ADA." *Updike v. Clackamas Cnty.*, 3:15-cv-00723-SI, 2015 U.S. Dist. LEXIS 160169, at *15 (D. Or. Nov. 30, 2015). This is clear from the plain language of ORS 659A.142(5)(a), which provides that "[i]t is an unlawful practice for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability." *Compare with* 42 U.S.C. § 12132 of Title II of the ADA ("Subject to the provisions of this

_____

this action, which Health Systems here bring on behalf of the population of civil commitment patients left in Health Systems' care. Accordingly, even if DRO was correct that some patients might have claims against their hospital under 28 CFR 36.203, that would not change that Health Systems and their civilly committed patients, as a whole, have aligned interest in bringing the claims in this case against OHA.

[13] It is quite puzzling why DRO would oppose such a positive endeavor for civilly committed patients, and support dismissal of a lawsuit that seeks to finally provide appropriate long-term treatment options to Oregon's civilly committed patients who badly need them. Perhaps it is because DRO has chosen to prioritize the rights of aid-and-assist patients over civilly committed patients. Health Systems strongly support the rights of aid-and-assist patients to receive treatment outside of jail, but believe that rather than providing those patients with treatment at the cost of civilly committed patients, OHA should ensure that there are sufficient resources to provide *all* patients with the appropriate level of treatment.

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO          LEWIS BRISBOIS BISGAARD & SMITH LLP      STOEL RIVES LLP
AMICUS BRIEF IN SUPPORT OF       888 SW Fifth Avenue, Suite 900            760 SW Ninth Avenue, Suite 3000
THE MOTION TO DISMISS            Portland, Oregon 97204-2025               Portland, Oregon 97205
PLAINTIFFS' AMENDED              Telephone: 971.712.2800 • Fax 971.712.2801   Telephone: 503.294.9466
COMPLAINT
24

subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

The fact that Health Systems have not brought an *Olmstead* claim against OHA that DRO thinks has potential is not evidence that Health Systems have a conflict or cannot advocate effectively for civilly committed patients in a situation where no one else is. Health Systems asserted claims they thought were appropriate, which includes an *Olmstead* version of an ADA claim under Oregon law.

In any event, if civilly committed patients have such an obvious *Olmstead* claim against OHA, then shouldn't the entity who purports to represent civilly committed patients be suing the state over it? And why hasn't DRO made that claim on behalf of civilly committed patients over the last 20 years, when they claim to be the sole entity that has the right to speak on behalf of them? If DRO thinks an *Olmstead* claim needs to be brought now, then it can make it—rather than supporting dismissal of a lawsuit that seeks to provide civilly committed patients with access to more appropriate long-term treatment in less restrictive settings.

### 4.    Health Systems and civilly committed patients do not have "obvious contrary financial and occupational interests."

DRO further argues that Health Systems do not have third-party standing because community hospitals have "obvious contrary financial and occupational interests" and "manifest obvious animus" towards civil commitment patients. ECF 42 at 15. According to DRO, the Amended Complaint only makes "occasional nods to the rights of their patients," and "primarily addresses civil commitment patients as a financial and occupational nuisance." *Id.* That is false. In support of its argument, DRO has selected four paragraphs from a forty-page complaint with over one-hundred paragraphs and mischaracterized those four paragraphs to suit its own narrative.

DRO's narrative is not reflected in the allegations of the Amended Complaint. Health

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
25

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

Systems have not alleged that they would rather give beds to "preferred patients" or that civilly committed patients are a "nuisance," "undesired," or "unwanted." *Id.* at 15-16. Again, those are the words of DRO, not Health Systems. At this point in time, Health Systems' community hospitals are the only ones providing care for this vulnerable population and advocating on their behalf.

It cannot be overstated that Health Systems' goal is not to stop taking care of civilly committed patients. Health Systems are not asking to be "relieved" of providing acute psychiatric care to civilly committed patients, nor do they "resent" providing care, as DRO argues. *Id.* at 16. Rather, Health Systems want civilly committed patients to have access to the most appropriate and least restrictive long-term treatment facilities once they are ready to transition to that level of care. This could not have been made clearer in the Amended Complaint. ECF 28 at 2-4, ¶¶ 16, 20-24, 26-27, 29-30, 32, 34, 46, 50, 58-59, 105-106. As for the "other patients" DRO incorrectly insinuates are the so-called "preferred patients," many of those are other civilly committed patients. *See id.* at 4 ("Because the beds of acute care hospitals are taken up by civilly committed individuals, who should be transferred to long-term treatment facilities that can provide them with meaningful treatment, *individuals in acute mental health crises are unable to access care* at acute care hospitals.") (emphasis added); *id.* at ¶ 24 (acute care hospitals are not "equipped, staffed, or designed to house civilly committed individuals for months at a time, let alone six months or more, when there is an *urgent need for those beds by other acute psychiatric patients* in the community") (emphasis added).

Health Systems want to be able to care for *more* patients who need acute psychiatric care as a result of a mental health crisis, many of whom will be civilly committed. But to do so, there needs to be appropriate long-term treatment options available for civilly committed patients who are stabilized. Otherwise, civilly committed patients who no longer require acute care languish in community hospitals, which are not equipped to provide long-term treatment, while other patients in acute crises are deprived of access to an acute care bed.

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
26

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

Health Systems serve an important role in the continuum of care, but it only works if there are long-term placements available. Even DRO concedes that a "key element of the resolution of this problem in a way that benefits patients will surely be the creation of and use of more community-based beds for behavioral health care." ECF 42 at 16. This is precisely what Health Systems have emphasized needs to happen and why they pursued litigation in the first place.

Aside from misconstruing the relief Health Systems seek in the Amended Complaint, DRO also apparently overlooked when Health Systems made clear that "**most civilly committed individuals** . . . **are not violent at all**, and have done nothing wrong other than to suffer from a mental illness." ECF 28 at ¶ 30 (emphasis added); *id.* at 4 ("OSH has limited expedited admission to only those civilly committed patients who are severely violent (**which most are not**) . . .") (emphasis added). Health Systems also clarified that even when a patient is disruptive, it is not a reflection of who they are, but instead due to the acuity of their illness and symptoms. *Id.* at ¶ 41.

Notably, much of Health Systems' discussion about violence refers to Oregon State Hospital's expedited admission policy, which requires a patient to be violent towards others and/or property and have already injured someone or destroyed property while in the acute care hospital to even be considered for admission to OSH. *Id.* at ¶ 30. But even then, OSH routinely refuses to accept patients due to not being violent enough. *Id.* As one OSH physician noted off the record, a patient would almost have to kill someone to get in that way. *Id.* at ¶ 36. The point is that it is OSH who has decided that violence is the deciding factor for whether civilly committed patients are worthy of admission. Health Systems strongly disagree with such an approach, particularly when the majority of civilly committed patients are not violent at all. *Id.* at ¶ 30.

As for the stories Health Systems shared, they show that civilly committed patients are being committed, forgotten by OHA, and left to languish in acute care hospitals. In one case, for

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
27

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

example, a civilly committed patient had to spend her entire commitment in acute care hospitals, while pregnant, due to OHA's failure to place her. In another case, a patient spent his days in a small room crying because he wanted to get out of the hospital and had been there for more than four months. These stories and others are representative of individuals who need a specific type of long-term care that acute care hospitals are not equipped, staffed, or intended to provide. They are important stories to tell so that OHA's unlawful practices stop, and civilly committed patients are no longer ignored and given access to placements in a less restrictive setting that will appropriately meet their mental health needs. An attorney retained to represent civilly committed patients would certainly be calling the Court's attention to the fact that civilly committed patients are routinely being left in inappropriate settings indefinitely, which is exactly what Health Systems have done.

DRO's suspicions about the purpose of this lawsuit are not only misinformed, but also irrelevant. The only issues before this Court are the allegations in the operative complaint, which plainly read, do not support DRO's narrative. Health Systems are not seeking to "discourage" the Court from "contemplating less restrictive, more integrated placements for [civilly committed patients] in the community." ECF 42 at 18-19. The operative complaint states the exact opposite. Over and over, Health Systems allege that civilly committed are entitled to receive individualized treatment in the most appropriate and least restrictive setting possible so they can return to the community and not be recommitted. And Health Systems allege that OHA has done virtually nothing to create additional capacity needed for civilly committed patients to receive appropriate long-term placements in the community. *See, e.g.*, ECF 28 at 4, ¶¶ 16, 21, 25, 26, 27, 32, 46.

The idea that Health Systems are lacking empathy and have not demonstrated the injustice that civilly committed patients encounter, as DRO describes, is not well taken because, again, it inaccurately depicts the allegations in the Amended Complaint. The Amended Complaint is a patient-oriented complaint because civilly committed patients have been largely

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
28

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

ignored by OHA for years. It is well past time that someone advocate for civilly committed patients so they can finally receive the care and treatment they are entitled to by law.

Ultimately, it is DRO which has proven that it is ill-positioned to advocate for civilly committed patients. Rather than support a lawsuit that seeks for civilly committed patients to *finally* receive access to appropriate long-term placements in far less restrictive settings in the community, DRO has chosen to actively support dismissal of that lawsuit. DRO has chosen to support OHA's motion to dismiss that is directly contrary to civilly committed patients' interests—a motion that declares "**civilly committed persons do not have a fundamental right to optimal treatment or to treatment in the least restrictive setting**." ECF 30 at 29 (emphasis added). In doing so, DRO has not demonstrated the desire or ability to advocate for the rights of civilly committed patients.

**5.     Health Systems have not erroneously characterized or masked the interests and rights of civilly committed patients; it is DRO who has mischaracterized the allegations in the Amended Complaint.**

DRO argues that Health Systems have failed to acknowledge that aid-and-assist and civilly committed patient populations overlap. ECF 42 at 17. Again, DRO could not be more wrong. In the *Mink* case, which was consolidated with this case, Health Systems have repeatedly recognized that "Oregon's complex behavioral health system is interconnected" and that "what affects [aid-and-assist] and [guilty except for insanity] patients also affects civil commitment patients (as well as the system as a whole)." ECF 316 at 7; ECF 316 at 8 (noting that once discharged from OSH, aid-and-assist patients often end up in the civil commitment system); *id.* at 13 (explaining how acutely ill aid-and-assist patients that are automatically discharged from OSH, who are not ready to be discharged and have nowhere to go, are frequently brought to Health Systems' emergency departments and put on the civil commitment track); *id.* at 27 (noting how the September 1, 2022 order results in funneling high acuity aid-and-assist patients back onto the streets or into the civil commitment system); ECF 284 at 20-22 (explaining how patients discharged from OSH to an inappropriate level of care often decompensate in the

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
29

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

community, present to emergency departments, and cycle through the civil commitment system or the forensic system at OSH, over and over again.).

DRO next asserts that, because civil commitment patients may end up charged with a crime[14] and found unable to aid-and-assist, even patients who are civilly committed "may not wish to have a rule that would place a patient in civil commitment ahead of a patient on aid-and-assist commitment." ECF 42 at 19. But the Amended Complaint does not request such a "rule." To the contrary, Health Systems make the point that OSH exists for all three populations of patients and that OHA needs to create appropriate treatment settings for *all* of them. ECF 28 at 5 ("But OHA is supposed to serve all three populations of patients."), and ¶ 25 (noting that OSH is "supposed to serve three populations of mentally ill persons"). In short, OHA cannot prioritize the constitutional rights of some patients over others. *Bowman v. Matteucci*, 3:21-cv-01637, 2021 WL 5316440, at *2 (D. Or. Nov. 15, 2021).

DRO goes on to insinuate that Health Systems are seeking to have aid-and-assist patients spend "months in a jail cell." ECF 42 at 19. But, again, that is inaccurate. Health Systems are not asking for any patients to be in jail. The Amended Complaint states the opposite: "To be clear, Plaintiffs strongly support the rights of criminal defendants with severe mental illness to be moved out of jails and provided treatment." ECF 28 at 4-5. Later, Health Systems state again that they "strongly support the rights of aid-and-assist and GEI patients to be removed from jail and to receive meaningful treatment." *Id.* at ¶ 28.

DRO further mischaracterizes Health Systems' interests by claiming that acute care hospitals want civilly committed patients to be transferred without regard to what effect the transfer would have on the patient. ECF 42 at 20. But, again, that is false. DRO's theory that community hospitals want to send civilly committed patients to inappropriate placements is pure

---

[14] Health Systems pause to note that DRO's assumption that a civilly committed patient would be charged with a crime is a bit hypocritical given that DRO accused Health Systems of describing civilly committed patients in a negative light.

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
30

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

fiction. It certainly is not reflected in the Amended Complaint, which shows that Health Systems want civilly committed patients to receive treatment in the most appropriate and least restrictive setting possible—even if that place continues to be an acute care hospital because they are not stabilized yet. Health Systems are only seeking long-term placements for those who are ready for that level of care. ECF 28 at 2-3, ¶¶ 11, 17-20.

Contrary to DRO's argument, Health Systems are not seeking a "drastic remedy," nor are they trying to "chang[e] the rules for admission of civilly committed patients." ECF 42 at 20. Instead, Health Systems seek to have OHA follow the law by placing civilly committed patients in the facility best able to treat them or a suitable facility during their 180-day commitment, so they can receive appropriate long-term treatment. As for DRO's comment about "changing the rules for admissions of civilly committed patients," it reveals that DRO is focused only on OSH. But this case is not solely about OSH. It is much broader. This case is about the full range of appropriate placement options that should be, but are not, available to civilly committed patients. It is about how OHA has abdicated all responsibility for civilly committed patients and done nothing to build capacity in the community to ensure an adequate supply of secure beds are available.

DRO relies on a handful of cases in support of its argument that Health Systems are seeking a "drastic remedy" that conflicts with the interests of civilly committed patients. But none of the cases support DRO's argument. Instead, they do the opposite.

The first case, *Mercer v. Michigan State Bd. of Ed.*, 379 F. Supp. 580 584 (E.D. Mich. July 18, 1974), concerned a teacher that sought to prohibit the enforcement of a state education law, which prohibited discussion of birth control in schools. *Id.* at 582. The court found that the teacher did not fit within one of the exceptions to the third-party standing rule and did not have standing to assert the rights of other students and parents who could easily assert their own rights. *Id.* at 584. Here, unlike in *Mercer*, Health Systems fit within one of the exceptions to the third-party standing rule as the community hospitals and healthcare providers of civilly

PLAINTIFFS' RESPONSE TO AMICUS BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
31

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

committed patients, and civilly committed patients are hindered in their ability to assert their own rights.

DRO's reliance on *Pony v. Cnty of Los Angeles*, 433 F.3d 1138, 1147 (9th Cir. 2006) is also misplaced. *Pony* stands for the unremarkable principle that the right to recover attorney's fees under 42 U.S.C. §1988 is vested in the prevailing party, not the attorney. In that case, an attorney asserted a claim for statutory fees after his former client accepted a settlement conditioned on the waiver of those fees. *Id.* at 1141-42. The court held that the attorney did not have standing to assert a claim for attorney's fees based on his former client's rights because she did not wish to bring the claim, which was directly adverse to her interests. *Id.* at 1148. This case does not involve the situation in *Pony*. Health Systems are seeking to enforce the law (not do something not permitted by law), and the interests of Health Systems and civilly committed patients are properly aligned because Health Systems are seeking appropriate long-term placements to ensure civilly committed patients receive the care they require in the least restrictive setting possible.[15]

### B.    Civilly committed patients are hindered from filing this lawsuit.

DRO also argues that Health Systems cannot satisfy the third requirement for third-party standing. The third requirement for third-party standing is that the third party face some obstacles that prevent it from pursuing its own claims. *Campbell v. Louisiana*, 523 U.S. 392, 397-98 (1998). This factor does not require an absolute bar from suit, but "some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 410. The hindrance need not amount to an insurmountable hurdle. *Id.* at 415 (holding excluded juror's limited incentive to bring discrimination suit satisfied obstacle requirement for criminal defendant to merit third-party standing); *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (recognizing lawsuit's invasion of patient's privacy and "imminent mootness" of pregnancy sufficiently impeded

---

[15] The other two cases cited by DRO, *Hong Kong Supermarket* and *Siskiyou Hospital*, are inapplicable for the same reasons set out in III(A)(1) above.

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
32

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

patient from bringing suit herself); 15 James William Moore, Moore's Federal Practice §
101.51[3][c][iii] (3d ed. 2008). Instead, a mere practical disincentive to sue can suffice to
overcome the third-party standing bar. *Id.*

It is well settled that civilly committed individuals face substantial obstacles to pursuing
litigation themselves. Courts have recognized that "[t]he stigma associated with receiving mental
health services presents a considerable deterrent to litigation." *Pa. Psychiatric Soc'y v. Green
Spring Health Servs.*, 280 F.3d 278, 290 (3rd. Cir. 2002); *Cf. Parham v. J.R.*, 442 U.S. 584, 622
(1979) (Stewart, J., concurring) ("There can be no doubt that commitment to a mental institution
results in massive curtailment of liberty. In addition to the physical confinement involved, a
person's liberty is also substantially affected by the stigma attached to treatment in a mental
hospital.") (quotations and citations omitted). Further, the Supreme Court has repeatedly held
that doctors and clinics have third-party standing to challenge abortion laws on their patients'
behalf because patients are often "hindered" from doing so themselves, due to both concerns of
privacy and the likelihood that their claims will become moot before litigation resolves. *See, e.g.*,
*Singleton*, 428 U.S. at 117–18 (plurality opinion); *Griswold v. Connecticut*, 381 U.S. 479, 481
(1965). Likewise, here, civilly committed patients are hindered due to privacy concerns, the
stigma associated with receiving mental health treatment, and the likelihood that their claims will
become moot before litigation resolves.

Civilly committed patients face additional substantial hindrances as well. "Besides the
stigmatization that may blunt mental health patients' incentive to pursue litigation, their impaired
condition may prevent them from being able to assert their claims." *Pa. Psychiatric Soc'y*, 280
F.3d at 290. Civilly committed patients also may lack the resources to retain counsel to cover the
substantial costs of litigation. *Powers*, 499 U.S. at 414-15 (recognizing "practical barriers to suit"
including "economic burdens of litigation").

Here, Health Systems have established a hindrance to civilly committed patients' ability

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
33

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

to assert their own interests in this case.[16] Health Systems have alleged that civilly committed patients are vulnerable individuals with severe mental illnesses, who are committed for up to 180 days, and that there is no one to advocate on their behalf after the point of commitment because Oregon's civil commitment scheme does not provide them with counsel to ensure OHA places them in an appropriate long-term placement. Taken together, those allegations, combined with the reasons described above, demonstrate that civilly committed patients are hindered from being able to pursue their own claims in this case.

To find that civilly committed patients are hindered, the Court need look no further to the fact that not one civilly committed patient in Oregon has ever brought a lawsuit of this nature against the state. Even though *Mink* has been ongoing for decades, and this lawsuit was filed months ago, no one other than Health Systems has stepped forward to advocate on behalf of civilly committed patients.

Despite that, DRO argues that civilly committed patients are not hindered from bringing a lawsuit such as this one for three reasons. As explained below, none of the arguments hold up.

DRO first argues that representation does not end for civilly committed patients at the time the commitment order is entered. ECF 42 at 21. According to DRO, there are "literally hundreds of civil commitment cases in Oregon that are litigated to appeals" and "a search of Westlaw or LexisNexis for civil commitment cases in the appellate courts in Oregon should yield more than 300 appellate cases." *Id.* at 21-22. However, all that tells us is that a very small percentage[17] of civilly committed patients are appointed counsel *on appeal*. But Health Systems are not talking about counsel appointed on appeal which, of course, is provided. ORS 426.135; *State v. Vanderburg*, 98 Or. App. 428, 430 (1989) (noting that counsel was appointed to represent a civil commitment patient on appeal). Health Systems are referring to the point at

---

[16] *See also* Plaintiffs' Opposition to Defendant's Motion to Dismiss, at 23-25.

[17] This is a particularly small percentage given that more than 500 individuals with severe mental illnesses are civilly committed to OHA for treatment every year.

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
34

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

which an individual is civilly committed, and the order is entered, because that is when representation ends. *See, e.g., State v. J. J. S. (In re J. J. S.)*, 297 Or. App. 707, 708 (2019) ("ORS 426.100(2) provides, as relevant here, that a person alleged to have a mental illness has a right to counsel when the person is detained under ORS 426.070 and in a commitment hearing under ORS 426.095."). Having been civilly committed, individuals are no longer represented by counsel to protect their rights, including their right to receive meaningful long-term treatment. ECF 28 at 12.

DRO next argues that civilly committed patients have found means to challenge the conditions and circumstances of their confinement. ECF 42 at 21. In support of this argument, DRO cites four cases. But none of the cases support DRO's argument.

*Olson v. Allen*, No. 3:18-cv-001208-SB, 2019 U.S. Dist. LEXIS 42561 (D. Or. Mar. 15, 2019) and *Unterreiner v. Goldberg*, No. 06-277-HU, 2007 U.S. Dist. LEXIS 110276 (D. Or. July 31, 2007) are not instructive to the instant case. For one, the patients in those cases were not held indefinitely in acute care hospitals, whereas this case concerns the state's failure to make *any* placement decision for civilly committed patients after they arrive at acute care hospitals. Further, Health Systems in this case have brought different claims and seek different relief— ensuring that OHA provides civilly committed patients with meaningful long-term treatment and does not abandon them in acute care hospitals for extended periods of time after they are stabilized.

DRO's reliance on *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870 (9th Cir. 2011), and *Survjustice Inc. v. Devos*, 2019 U.S. Dist. LEXIS 54616 (N.D. Cal. Mar. 29, 2019), is also unpersuasive. In *McCollum*, "prisoners challenged the program in [the] very lawsuit and in at least one similar suit." 647 F.3d at 879. And in *Survjustice*, there was "pending litigation involving similarly situated plaintiffs asserting their own claims against the same defendants challenging the same government action," which cut directly against the plaintiffs' allegations of hindrance. 2019 U.S. Dist. LEXIS 54616, at *24. Neither situation exists here. No civilly

4865-8460-4492.1

PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
35

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

committed patients are parties to this lawsuit, and there is no pending litigation brought by civilly committed patients asserting the same claims against Defendant challenging the same issue.

DRO's final argument is that Health Systems have not come forward with evidence to show that civilly committed patients are unable to assert their own interests. ECF 42 at 23. But that is not the standard for a motion to dismiss. For that reason, DRO's reliance on *Legal Aid Soc'y v. Legal Servs. Corp.*, 145 F.3d 1017, 1031 (9th Cir. 1998), is misplaced because that case addressed the issue of third-party standing in the procedural posture of a motion for summary judgment, not a motion to dismiss.

## IV.    CONCLUSION

Health Systems agree with DRO that "Oregon's mental health system is in profound chaos." Health Systems seek to advocate on behalf of individuals with mental illness, and especially those who, having been civilly committed, have lost their liberty in a situation in which the state has abandoned its responsibilities to those individuals. Legally, the health systems have demonstrated that they meet the requirements for third-party standing. This is critical, as the health systems are presently the only ones who are speaking for people who have been civilly committed and are being denied access to the long-term care they are entitled to.

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
36

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

DATED January 26, 2023

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:   *s/ Eric J. Neiman*
Eric J. Neiman, OSB #823513
Emma P. Pelkey, OSB #144029
Telephone: 971.712.2800
Facsimile: 971.712.2801

*Attorneys for Intervenors and Plaintiffs*

PERKINS COIE, LLP

By:   *s/ Alex Van Rysselberghe*
Alex Van Rysselberghe, OSB #174836
Telephone: 503.727.2000
Facsimile:  503.727.2222

*Attorneys for Intervenors and Plaintiffs*

STOEL RIVES LLP

By:   *s/ Thomas R. Johnson*
Thomas R. Johnson, OSB #010645
Telephone: 503.294.9466

*Attorneys for Intervenors and Plaintiffs*

4865-8460-4492.1
PLAINTIFFS' RESPONSE TO
AMICUS BRIEF IN SUPPORT OF
THE MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT
37

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466