**Eric J. Neiman, OSB #823513**                    Honorable Michael W. Mosman
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800
Facsimile: 971.712.2801

**Thomas R. Johnson, OSB #010645**
Tom.Johnson@stoel.com
STOEL RIVES LLP
730 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  503.294.9466

**Alex Van Rysselberghe, OSB #174836**
AVanRysselberghe@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch 10th Floor
Portland, OR  97209
Telephone: 503.727.2000
Facsimile:  503.727.2222

*Attorneys for Intervenors and Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDERS INCORPORATED, and A.J. MADISON, | Case No. 3:02-cv-00339-MO (Lead Case)<br>Case No. 3:21-cv-01637-MO (Member Case)<br>Case No. 6:22-cv-01460-MO (Member Case) |
| Plaintiffs, | **INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION TO CLARIFY ORDER ON INTERVENTION** |
| v. | |
| PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, | **By Intervenors Legacy Emanuel Hospital & Health Center d/b/a Unity Center for Behavior Health, Legacy Health System, PeaceHealth, and Providence Health & Services – Oregon** |
| Defendants, | |

|  | **ORAL ARGUMENT REQUESTED** |
|---|---|
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH, LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES – OREGON, | |
| Intervenors. | |

| | |
|---|---|
| METROPOLITAN PUBLIC DEFENDERS INCORPORATED, JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, | Case No. 3:21-cv-01637-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity, | |
| Defendants, | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES – Oregon, | |
| Intervenors. | |

| | |
|---|---|
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON, and ST. CHARLES HEALTH SYSTEM | Case No. 6:22-cv-01460-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, | |

4872-0504-4295.1

INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION TO CLARIFY ORDER ON INTERVENTION - 2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

Defendant.

## I. INTRODUCTION

The motion filed by the *Mink* Plaintiffs, Metropolitan Public Defender ("MPD") and Disability Rights Oregon ("DRO"), does not seek clarity on the Court's order granting Health Systems' motion to intervene. Instead, the motion asks the Court to reconsider and reverse its ruling as it relates to Health Systems' intervention on behalf of civilly committed patients.

Plaintiffs' motion should be denied because the Court's order is clear and was correctly decided. No clarification is needed. After Plaintiffs fully responded to Health Systems' motion to intervene—and raised the same arguments as here—the Court granted Health Systems' motion without qualification. ECF 299 ("The Health Systems' Motion to Intervene 281 is GRANTED."). To assess the scope of the Court's order, Plaintiffs need look no further than the motion and Plaintiffs' response themselves.

The Court should construe Plaintiffs' motion to clarify as, in reality, a motion for reconsideration. As a motion for reconsideration, Plaintiffs' motion is improper because it recycles and re-hashes old arguments that have been thoroughly briefed and carefully considered and rejected by this Court. Each one of Plaintiffs' arguments fails just as they did before. Health Systems have standing to intervene on behalf of civilly committed patients because Health Systems have a concrete interest in the outcome of this case, a close relationship with their patients, and patients are hindered from asserting their own claims. Intervention is appropriate because this case implicates the interests of both Health Systems and civilly committed patients. And the motion was timely, as it was promptly brought in response to recent activity in this case.

Plaintiffs' argument that *they* can adequately represent the interests of civilly committed patients underscores why it was proper for Health Systems to intervene. If Plaintiffs were in fact advocating for civilly committed patients, Health Systems' intervention for their patients would not have been necessary, as civilly committed patients' interests would have been adequately represented. But that was not happening. Prior to Health Systems' intervention, Plaintiffs

4872-0504-4295.1
INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 3

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

actively advocated for a position that was directly adverse to civil commitment patients by cutting off their access to the Oregon State Hospital ("OSH") unless they are severely violent (which most are not), despite the fact that civilly committed patients are to have access to OSH by Oregon law. Even now, Plaintiffs have continued to stake out positions that are adverse to civilly committed patients' interests by actively seeking both to remove intervenor status from the only party that has stepped up to advocate for civilly committed patients and dismiss the *Legacy* lawsuit, which would *help* civilly committed patients receive meaningful long-term treatment in the least restrictive setting.

Health Systems' intervention to advocate for civilly committed patients' interests and constitutional rights remains necessary and appropriate. Issues regarding civilly committed patients are ongoing and will need to be addressed by this Court in the future.

## II.    BACKGROUND

The Court fully understands the procedural background, which will not be repeated in detail here. The *Mink* case resulted in a bench trial and a permanent injunction, which required criminal defendants who had been declared unable to proceed to trial because of mental incapacity to be committed to OSH within seven days of a finding that the defendant was unfit to proceed. ECF 47 at 14-15; *Oregon Advoc. Ctr. v. Mink,* 322 F.3d 1101, 1123 (9th Cir. 2003) (affirming opinion and permanent injunction).

The case lay dormant until 2019, when Plaintiffs filed motions for an order to show cause on the ground that OHA was out of compliance with the permanent injunction. ECF 85, 91. Further delays followed due to the pandemic, during which time the Ninth Circuit ordered the injunction to be more narrowly tailored. *Oregon Advoc. Ctr. v. Allen,* No. 20-35540, 2021 U.S. App. LEXIS 24342, at *2 (9th Cir. Aug. 16, 2021). On December 21, 2021, Dr. Debra Pinals was appointed as a neutral expert to report and make recommendations regarding OSH's admission protocol for aid-and-assist patients. ECF 240 at 2.

/ / / /

4872-0504-4295.1

INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 4

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

On August 16, 2022, the Court issued an order that enjoined any action that sought to hold those associated with the case in contempt for their efforts to comply with the permanent injunction. ECF 256. On September 1, 2022, the Court issued a subsequent order that OSH was enjoined from admitting civilly committed individuals unless they meet the criteria in OSH's expedited admission policy. ECF 271 at 2. The Court also ordered that aid-and-assist patients be discharged pursuant to a specified timeline based on the underlying crime charged. *Id.* at 3-4.

On September 28, 2022, Health Systems filed a motion to intervene in this case to advocate for their own interests and the interests of civilly committed patients. ECF 281. Plaintiffs filed a 19-page response in opposition to the motion to intervene on October 12, 2022. ECF 296. The next day, the Court granted Health Systems' motion to intervene and issued a clear and concise order: "The Health Systems' Motion to Intervene 281 is GRANTED." ECF 299.

III.    **ARGUMENT**

A.    **The order granting intervention is clear and does not require clarification.**

Plaintiffs claim that they need clarification regarding the scope of this Court's order granting Health Systems' motion to intervene. Yet by the second sentence of their motion, Plaintiffs concede that they understand the motion was filed by Health Systems "both on their own behalf and on behalf of third parties, patients civilly committed to their hospitals." ECF 331 at 2. This admission by Plaintiffs reveals that they do not need clarification of the order at all. What Plaintiffs actually want is another opportunity to persuade this Court to change its mind.

The Court should deny Plaintiffs' motion. The Court's order granting intervention is clear as written and does not need clarification. In the motion to intervene, Health Systems sought to intervene to advocate for their interests *and* the interests of civilly committed patients (which Plaintiffs concede they understand). ECF 281 at 16-26. In response, Plaintiffs filed a 19-page opposition, detailing their arguments related to timeliness, standing, and intervention. ECF 296. And on October 13, 2022, this Court granted the motion to intervene in full. ECF 299.

The Court wrote: "The Health Systems' Motion to Intervene 281 is GRANTED." *Id.*

The Court's order is clear. Plaintiffs do not need any further clarity: to understand the scope of the order, Plaintiffs need look no further than the motion to intervene, which explains precisely why intervention is proper and why this motion should be denied.

### B.    Plaintiffs' motion to clarify is an improper motion for reconsideration.

Plaintiffs' "Motion to Clarify Order on Intervention" is in fact a motion for reconsideration. Plaintiffs do not seek further instruction about the Court's order: the motion plainly asks the Court to amend or "reconsider that order" to prevent Health Systems from advocating on behalf of civilly committed patients. ECF 331 at 3.

Plaintiffs' motion for reconsideration is improper and should not be granted. Motions for reconsideration are disfavored and an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also Shalit v. Coppe*, 182 F.3d 1124, 1132 (9th Cir. 1999) (noting that "reconsideration is appropriate only in very limited circumstances").

"[M]otions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Hernandez v. Jefferson County Sheriff's Office*, No. 3:19-cv-1404-JR, 2021 U.S. Dist. LEXIS 109420, at *4 (D. Or. Feb. 1, 2021) (quoting *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 670 (D. Nev. 2013)). A motion for reconsideration also "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Nor should reconsideration be used to ask the Court to rethink its analysis. *Bark v. Northrop*, No. 3:13-cv-00828-AA, 2018 U.S. Dist. LEXIS 56485, at *31 (D. Or. March 31, 2018); *Aldrete v. Berkshire Hathaway Auto. LLC*, No. CV-21-00622-PHX-SMB, 2022 U.S. Dist. LEXIS 71737, at *3 (D. Az. Apr. 19, 2022) (noting that "a motion for reconsideration should not be used to voice disagreements with a court's analysis in a previous ruling, repeat prior arguments, or ask the Court to rethink what it has

already thought through.").

Reconsideration is only appropriate if the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A district court may also reconsider a decision if "other, highly unusual, circumstances" warrant it. *Id.*

Here, Plaintiffs request reconsideration of this Court's order based on the following arguments: (1) Health Systems' motion to intervene is not timely, (2) Health Systems and civilly committed patients do not have significant protectable interests, (3) Health Systems fail to show that civilly committed patients' interests are not adequately protected by existing parties, and (4) Health Systems do not have standing and cannot assert third-party standing on behalf of civilly committed patients due to "obvious conflicts of interest." ECF 331. These are the ***same*** arguments Plaintiffs made in its opposition. *See* ECF 296 at 2 ("Putative Intervenors fail to show that their motion is timely, that they have a significant protectable interest at stake, that their interests will be impaired or impeded, and that the interests they pursue are not adequately protected by existing parties . . . They also lack Article III standing to intervene."); *id.* at 10 ("The Putative Intervenors Have Not Properly Alleged a Significant Protectable Interest on Third Parties in Their Care"); *id.* at 16 ("The Court Should Not Allow Third-Party Standing for the Putative Intervenors Because of Obvious Conflicts of Interest").

None of the circumstances that would justify reconsideration apply here. For one, Plaintiffs do not present new evidence or argument, but merely summarize old arguments and cite back to their prior brief. ECF 331 at 3 (asking the Court to consider, in support of *this* motion, Plaintiffs' opposition to the motion to intervene); *id.* at 5 ("Plaintiffs stand by and cite their prior briefing on intervention"). But even if Plaintiffs had offered new arguments (which they do not), such arguments should have been presented at the time of the motion to intervene, not after. Plaintiffs' motion merely asks the Court to rethink its analysis, which is not a

4872-0504-4295.1

INTERVENORS' RESPONSE TO          **LEWIS BRISBOIS BISGAARD & SMITH LLP**          **STOEL RIVES LLP**
PLAINTIFFS' MOTION TO             888 SW Fifth Avenue, Suite 900                 760 SW Ninth Avenue, Suite 3000
CLARIFY ORDER ON                  Portland, Oregon 97204-2025                    Portland, Oregon 97205
INTERVENTION - 7                  Telephone: 971.712.2800 • Fax 971.712.2801     Telephone: 503.294.9466

sufficient reason for reconsideration.  Moreover, the Court's decision was not clear error, as there is legal support for Health Systems' position and the Court's decision, which was legally correct.  Nor was the decision manifestly unjust.  And lastly, there has not been a change in the law.  Accordingly, there is no basis for reconsideration and Plaintiffs' motion should be denied for that reason alone.

        **C.**        **The motion to intervene was timely because this case only recently implicated the rights of Health Systems and their civilly committed patients.**

Plaintiffs ask this Court to reconsider its order because Health Systems failed to timely intervene on their own behalf and on behalf of civilly committed patients.  ECF 331 at 5.  In support of this argument, Plaintiffs offer no new evidence or legal argument, instead choosing to "stand by and cite to their prior briefing on intervention."  *Id.*

The Court should reject Plaintiffs' argument because they already raised the issue of timeliness in their prior brief, and this Court already carefully considered and rejected it.  In other words, this is nothing more than an attempt by Plaintiffs to re-litigate and rehash its old argument, which is an improper use of a motion for reconsideration for the reasons stated above.

While it should not be necessary to consider Plaintiffs' timeliness argument, even if it was considered, it still fails.  In its prior brief, Plaintiffs argued that the motion to intervene was not timely because this case was filed in 2001 and Health Systems waited "until the last moment."

Health Systems do not dispute that this case began in 2001, but the mere passage of time is not dispositive and this is not an ordinary case by any means.  Health Systems had a good reason for not moving to intervene earlier:  activity in the case only recently implicated the interests of Health Systems and civilly committed patients to the point where intervention was necessary.  Before the August 16 and September 1, 2022 orders, Health Systems had no indication that they would be enjoined from seeking to enforce judicial orders in civil commitment cases, that the vast majority of civil commitment patients would be judicially enjoined from admittance to OSH, or that individuals would be discharged from OSH based on a

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

predetermined timeline regardless of whether they are clinically appropriate for discharge. Once Health Systems' and civilly committed patients' rights were implicated, Health Systems promptly filed their motion to intervene, and on the same day, they initiated a separate civil action to advocate for civilly committed individuals. It is hard to imagine how the request could have been more timely.

Beyond that, Plaintiffs' argument fails to take into account that on August 29, 2022, this Court ordered that any outside party was permitted to file "any brief addressing legal issues" by September 28, 2022. ECF 269. Health Systems filed their motion to intervene that day based on the deadline imposed by the Court. It was therefore timely on that basis as well.

In short, Health Systems' motion to intervene was timely. Until recently, Health Systems had no means of knowing that the orders in this case would implicate the interests of Health Systems and civilly committed patients and give rise to the necessity of intervention.[1] Once it became clear that the interests of Oregon's health systems and civilly committed patients would be adversely affected by the outcome of this case, Health Systems promptly intervened. While Plaintiffs may feel this case is close to over, the reality is that the implications of this case continue to reverberate and impact Oregon's behavioral health system as a whole, which means issues regarding civilly committed patients will need to be addressed by this Court in the future.

### D.    Health Systems and civilly committed patients have a protectable interest.

Plaintiffs next ask this Court to reconsider its order because civilly committed patients do not have a significantly protectable interest and neither do Health Systems who care for them.[2] ECF 331 at 5-6. Again, this argument is nothing more than an attempt by Plaintiffs to re-litigate

---

[1] For that reason, the cases cited by Plaintiffs in its original opposition are unpersuasive and distinguishable because they each involve situations where a party knew or had reason to know that their interests would be affected by the outcome of the litigation.

[2] Plaintiffs' argument that civilly committed patients do not have a protectable interest in this case demonstrates precisely why they are not adequate parties to represent the interests of civilly committed patients.

4872-0504-4295.1
INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 9

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

issues that were already carefully considered and rejected by this Court and, therefore, it is an improper basis for filing a motion for reconsideration.

Aside from being improper, Plaintiffs' argument, once again, ignores the liberal standard for intervention of right under Rule 24(a)(2).  As previously noted in the motion to intervene, in evaluating whether the requirements for intervention are met, courts construe Rule 24 "broadly in favor of proposed intervenors." *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citations omitted).  That is because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (citation omitted).  "[I]t is generally enough that the [putative intervenor's] interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (citation omitted). "Furthermore, a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Id.* (citation omitted).

This case implicates the rights and interests of both Health Systems and their patients. For one, Section 2.b of the September 1, 2022 order keeps virtually all civil commitment patients from being admitted to OSH (except in exceedingly rare cases where OSH's expedited admission criteria are met) and provides no other alternative long-term placement options for them.  The effect of the order is to leave civilly committed patients in acute care hospitals that are not equipped to provide long-term treatment, and close off one of the only places where they can receive appropriate long-term treatment.  At the same time, the order also prevents other patients experiencing acute psychiatric crises from being able to access acute care hospital beds that are already full with civilly committed patients, who are ready to transition to the next level of care, but cannot due to a lack of appropriate long-term placement options in the community.

Further, Section 3 of the September 1, 2022 order directs OSH to discharge aid-and-assist patients after prescribed durations, regardless of whether they are safe or ready to discharge. This will inevitably result in unstable patients decompensating in the community and being

INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 10

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

brought to the emergency departments of community hospitals—including Health Systems' hospitals—at which point, some will be civilly committed. These individuals will then join the group of civilly committed patients who are left indefinitely in acute care hospitals for their entire commitment.

Plaintiffs argue that "[v]acating or rescinding any portion of the September 1 order would not alter OHA's or OSH's practice in admitting patients to the state hospital." ECF 331 at 5. But of course it would. Health Systems filed the *Legacy* case in part because OSH's expedited admission policy violates the constitutional rights of civilly committed patients and acute care hospitals. While this Court has not yet addressed these constitutional issues,[3] OSH will not be permitted to continue enforcing its policy of barring civilly committed patients if the Court determines that it violates the rights of civilly committed patients and acute care hospitals.

Moreover, Plaintiffs' argument assumes that this Court's September 1 order will remain in effect forever, but that was not the intent of the order. The order was put in place to bring OHA in compliance with the permanent injunction as a temporary solution. Despite that, OHA has not said anything about whether they ever intend to allow civilly committed patients back into OSH, consistent with their policy of pushing responsibility onto the counties and acute care hospitals. The point of all this is that OSH's expedited admission policy remains an ongoing issue that has not been resolved and continues to implicate the rights of Health Systems and civilly committed patients and, therefore, it will need to be addressed in the future in this case.

Plaintiffs go on to argue that the likelihood of more patients being funneled into the civil commitment population is "speculative" and not adequate to constitute a sufficient interest. ECF 331 at 6. Plaintiffs are wrong. This scenario is not speculative nor far-fetched. It is literally OHA's plan. This is made clear by the OHA memo entitled "Mosman Ruling Frequently Asked Questions," which explains how OHA intends to implement the September 1 order. Oregon

---

[3] This Court's January 9, 2023 order and opinion was made "[w]ithout addressing the merits of the constitutional question." ECF 338 at 13.

4872-0504-4295.1

INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 11

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

Health Authority, *Mosman Ruling Frequently Asked Questions* at 3-4 (Sept. 16, 2022), *available at* https://www.oregon.gov/oha/OSH/Documents/OSH-mink-mosman-FAQ.pdf.  The nine-page memo states nine times that patients discharged from OSH can and will be civilly committed.[4]

Plaintiffs further argue that the discharge "timelines apply to *aid-and-assist detainees*, not to the civilly committed patients."  ECF 331 at 6.  In making this argument, Plaintiffs contradict themselves by arguing that aid-and-assist patients and civilly committed patients are *different* in this motion, and then accusing Health Systems of failing to acknowledge that aid-and-assist and civilly committed patients *overlap* in their amicus brief.  Regardless, Plaintiffs' argument that the timelines have no impact on civilly committed patients fails to recognize that Oregon's behavioral health system is interconnected and that what affects aid-and-assist patients also affects civil commitment patients (as well as the system as a whole).

Finally, Plaintiffs argue that Health Systems have taken no other steps to protect the interests of civilly committed patients.  That is wrong.  Aside from seeking to dissolve or amend the September 1, 2022 order (which they continue to pursue),[5] Health Systems have filed a

---

[4] For instance, in response to the question, "Will OSH discharge patients to the street?," OHA explains, "If the person is discharged based solely on the end of the length of inpatient restoration set out in the [September 1] order, the court will still need to . . . determine whether the person should be . . . civilly committed[.]"  *Id.* at 3-4.  Addressing the question, "What will happen to clients who are not stable when the clock expires?," OHA says that the committing court "makes a determination under ORS 161.370(2)(c), which can include initiation of civil commitment where the person poses a risk to themselves or others or is unable to provide for their own basic needs[.]"  *Id.* at 5.  In answer to the question, "Why doesn't the court order allow for case-by-case exceptions?," OHA explains that "there are mechanisms in place [to recommit] people who have more serious charges, or who are a danger to themselves or others," including that "the court may initiate civil commitment proceedings which can also commit a person for an additional 180 days (or more, if recommitted)."  *Id.* at 2-3.  In response to the question, "Where will a patient be released if their committing county does not have any secure residential treatment facility (SRTF) capacity?," OHA offers "initiat[ion of] civil commitment" for a person determined to be "still unfit" after discharge from the state hospital.  *Id.* at 3.

[5] This Court denied Health Systems' motion to dissolve or modify the September 1, 2022 order "with leave to renew," and has invited Health Systems and *amici* to submit further briefing.  ECF 336, 338.

4872-0504-4295.1

INTERVENORS' RESPONSE TO          LEWIS BRISBOIS BISGAARD & SMITH LLP          STOEL RIVES LLP
PLAINTIFFS' MOTION TO             888 SW Fifth Avenue, Suite 900                 760 SW Ninth Avenue, Suite 3000
CLARIFY ORDER ON                  Portland, Oregon 97204-2025                    Portland, Oregon 97205
INTERVENTION - 12                 Telephone: 971.712.2800 • Fax 971.712.2801     Telephone: 503.294.9466

lawsuit to remedy OHA's unlawful practice of abandoning civilly committed individuals and failing to even attempt to provide them with appropriate long-term treatment during their commitment.

     **E.**    **Plaintiffs are not adequately protecting civilly committed patients' interests.**

     Plaintiffs ask this Court to reconsider its order because civilly committed patients' interests are already adequately protected by the parties to this action.  ECF 331 at 6.  As with Plaintiffs' other arguments, this argument is another improper attempt to recast an old argument that was previously considered and rejected by this Court.

     In addition to being improper, Plaintiffs' argument remains meritless.  Plaintiffs argue that they can adequately protect civilly committed patients' interests because: (1) they represent individuals in civil commitment proceedings in Multnomah and Washington Counties; (2) DRO is a protection and advocacy system; and (3) Health Systems have "conflicts of interest" and "adverse financial interests" with civilly committed patients.  Each one of these arguments fails.

     Plaintiffs' first argument that they represent patients during their commitment hearing in two counties ignores the fact that their representation ends once an individual is committed.[6] Plaintiffs do not advocate for the interests of civilly committed patients after commitment to ensure patients actually receive an appropriate long-term placement (as counsel for Health Systems have done on several occasions on behalf of patients).  Further, Plaintiffs only represent civilly committed patients in two of Oregon's 36 counties, leaving the rest of the civilly committed population unrepresented in this case without Health Systems' intervention.  ECF 331 at 7.

     Plaintiffs' second argument that DRO is a protection and advocacy system only serves to demonstrate why civilly committed patients' interests were not adequately protected until Health Systems intervened.  Indeed, DRO has failed to pursue any litigation remedies on behalf of

---

[6] DRO's representation of patients in commitment hearings suggests that if anyone has a conflict it is DRO as a result of taking adverse positions to its own clients in this litigation.

4872-0504-4295.1
INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 13

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

civilly committed patients in the 20 years since *Mink* was decided. And even now, no one other than Health Systems have stepped forward to advocate on behalf of civilly committed patients to receive appropriate long-term treatment.

Given that DRO is a protection and advocacy system, it is disappointing that DRO has decided to take a position adverse to the best interests of civilly committed patients. And it is alarming that Plaintiffs have decided to join forces with OHA by aggressively supporting dismissal of the *Legacy* lawsuit—a lawsuit that seeks to finally *help* civilly committed patients receive meaningful long-term treatment in the least restrictive setting and provide an optimal care environment for those civilly committed patients in need of acute psychiatric care.

Plaintiffs' third argument that Health Systems have "conflicts of interest" and "adverse financial interests" with civilly committed patients is meritless.[7] There is no conflict because Health Systems want civilly committed patients to receive care in the least restrictive treatment setting possible, and at the same time, provide more acute psychiatric treatment to civilly committed patients who need it. Nor are there any "adverse financial interests" because, again, Health Systems want to be able to treat more civilly committed patients. The theory that Health Systems want to replace civilly committed patients "with more lucrative patients" as Plaintiffs previously argued is simply made up. Health Systems have proudly provided emergency and acute psychiatric care to civilly committed patients for decades and hope to continue serving in that important role. But to continue serving civilly committed patients with acute behavioral needs, acute care hospitals cannot serve as long-term placements for every civilly committed patient for the duration of their 180-day commitment. Acute care hospitals represent one aspect of the behavioral health continuum of care, but transitional and community beds are a critical piece of the continuum of care as well. "Only with a more complete continuum of psychiatric

---

[7] Health Systems who are Plaintiffs in the *Legacy* case have thoroughly briefed why DRO's conflict of interest argument fails, and Health Systems incorporate those arguments as if fully set forth herein. *See* Plaintiffs' Response to Amicus Brief in Support of The Motion to Dismiss Plaintiffs' Amended Complaint.

4872-0504-4295.1
INTERVENORS' RESPONSE TO     **LEWIS BRISBOIS BISGAARD & SMITH LLP**     **STOEL RIVES LLP**
PLAINTIFFS' MOTION TO     888 SW Fifth Avenue, Suite 900     760 SW Ninth Avenue, Suite 3000
CLARIFY ORDER ON     Portland, Oregon 97204-2025     Portland, Oregon 97205
INTERVENTION - 14     Telephone: 971.712.2800 • Fax 971.712.2801     Telephone: 503.294.9466

care will more individuals be able to live life to its fullest while accessing any needed supports in their own homes." *See* Debra A. Pinals, M.D. & Doris A. Fuller, M.F.A., *The Vital Role of a Full Continuum of Psychiatric Care Beyond Beds*, Psychiatry Services, July 2020, at 718.

Plaintiffs go on to argue about the "limitations of mental health resources," which further illustrates why they cannot advocate effectively for civilly committed patients in this case. ECF 331 at 8. The premise of Plaintiffs' argument is that (1) a person with mental illness would prefer to avoid a lengthy stay in jail by having a lengthy stay in a community hospital, and (2) a civilly committed patients' due process rights are not as important as the due process rights of aid-and-assist patients in jail. *Id.* at 8-9. There are several problems with this argument.

For one, Plaintiffs' argument assumes that Health Systems want individuals with mental illness, including civilly committed and aid-and-assist patients, to be in jail. **That is false.** Health Systems are not asking for any patients to be in jail. With respect to aid-and-assist patients, Health Systems clearly state in the operative complaint of the *Legacy* case that they want patients *moved out of jail*. ECF 28, Amended Complaint at 4-5 ("To be clear, Plaintiffs strongly support the rights of criminal defendants with severe mental illness to be moved out of jails and provided treatment."); *id.* at ¶ 28 (community hospitals "strongly support the rights of aid-and-assist and GEI patients to be removed from jail and to receive meaningful treatment."). As for civilly committed patients, Health Systems are advocating for *more suitable* facilities for civilly committed individuals to receive appropriate long-term placements *where clinically necessary*. Under no circumstances do Health Systems want civilly committed patients to be routinely sent to jail or receive less care or inadequate treatment.

Plaintiffs' argument that a lengthy acute care hospital stay is better than nothing is a lack of resources argument, which has been rejected by the Ninth Circuit on numerous occasions and demonstrates why Plaintiffs cannot adequately protect the interests of civilly committed patients. As the Ninth Circuit ruled **in this case**, lack of funds do not justify OHA's failure to care for civilly committed patients and provide them with treatment necessary for rehabilitation. *Mink*,

4872-0504-4295.1
INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 15

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

322 F.3d at 1121 (quoting *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980) ("Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation."). Plaintiffs' failure to recognize this fundamental principle after 20 years of litigation is surprising.

As for Plaintiffs' argument regarding due process rights, it is based on the assumption that the liberty interests of the civil commitment population are not as important as the aid-and-assist population. This Court should reject such an unfounded and, frankly, alarming argument. The fact that a person is civilly committed does not make them any less deserving of an appropriate placement or the violation of their constitutional rights any less egregious. Involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509 (1972). And by law, OHA may not prioritize aid-and-assist patients over civilly committed patients if it means giving civilly committed patients inadequate care. *Bowman v. Matteucci*, No. 3:21-cv-01637-HZ, 2021 U.S. Dist. LEXIS 220094, at *7 (D. Or. Nov. 15, 2021) ("When satisfying constitutional guarantees, Defendants cannot rob Peter to pay Paul.").

F.  **Health Systems have standing to assert their own interests and third-party standing to advocate for the interests of civilly committed patients.**

Plaintiffs' final argument is two-fold: (1) Health Systems "do not claim to have standing on their own to assert the rights of their patients," and (2) Health Systems cannot assert third-party standing on behalf of their patients based on "obvious conflicts of interest." ECF 331 at 10-13. The Court should reject each of these arguments.

Health Systems previously explained in their motion to intervene why they have standing on their own to assert the rights and interests of civilly committed patients left in their care, and have further briefed this issue in response to OHA's motion to dismiss. Health Systems have made it clear that their acute care hospitals have been co-opted by the state and have reached capacity on account of long-length-of-stay civilly committed patients and, as a result, they have not been able to accommodate other civilly committed patients in need of acute psychiatric care.

Health Systems' injuries are "fairly traceable" to OHA which has refused to make placement decisions for civilly committed individuals and, instead, abandoned them in Health Systems' hospitals for the duration of their period of commitment.  And Health Systems are seeking relief that will redress both their own injuries and their patients' injuries.  Health Systems thus have standing.

Health Systems also have third-party standing to advocate for the interests of civilly committed patients.  This, too, was already explained in the motion to intervene and correctly decided.  ECF 281 at 21-22.  For the sake of judicial efficiency, those arguments will not be repeated, as they have been thoroughly briefed in Health Systems' oppositions to OHA's motion to dismiss and DRO's amicus brief.  However, Health Systems do pause to respond briefly to Plaintiffs' line of argument about "obvious conflicts of interest."

In short, just like in DRO's amicus brief, Plaintiffs have grossly mischaracterized the allegations in the Amended Complaint and the record in the hopes of creating a conflict between Health Systems and their patients.  But no such conflict exists.  The interests of Health Systems and their patients fully align because Health Systems want civilly committed patients to have access to the most appropriate and least restrictive long-term treatment facilities, and they also want to care for *more* civilly committed patients who need acute psychiatric care.  The notion that Health Systems' goal of wanting civilly committed patients to receive the appropriate level of care and meaningful treatment, thereby creates a conflict of interest, is unpersuasive and unsupported.  And the fact that Plaintiffs are so adamantly opposed to that goal only serves to reveal a conflict between them and civilly committed patients.

## IV.    CONCLUSION

For the reasons discussed, Health Systems respectfully ask the Court to deny Plaintiffs' motion to clarify order on intervention because it is nothing more than a motion for

/ / / / /

/ / / / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466

reconsideration and there is no basis for reconsideration.  This Court correctly allowed intervention in this case and the order should remain in effect.

DATED this 26th day of January, 2023.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    s/ Eric J. Neiman
Eric J. Neiman, OSB #823513
Emma P. Pelkey, OSB #144029
Telephone: 971.712.2800
Facsimile: 971.712.2801

PERKINS COIE LLP

By:    s/ Alex Van Rysselberghe
Alex Van Rysselberghe, OSB #174836
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Intervenors and Plaintiffs*

STOEL RIVES LLP

By:    s/ Thomas R. Johnson
Thomas R. Johnson, OSB #010645
Telephone: 503.294.9466

*Attorneys for Intervenors and Plaintiffs*

4872-0504-4295.1
INTERVENORS' RESPONSE TO
PLAINTIFFS' MOTION TO
CLARIFY ORDER ON
INTERVENTION - 18

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: 503.294.9466