JANE E. VETTO, OSB 914564
Marion County Legal Counsel
Jvetto@co.marion.or.us
555 Court Street N.E.
P.O. Box 14500
Salem, OR 97309
Telephone No.: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Amicus Marion County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, <br><br>Plaintiffs<br><br>v.<br><br>DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants.<br><br>LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES,<br><br>Intervenors. | 3:02-cv-00339-MO (Lead Case)<br>3:21-cv-01637-MO (Member Case)<br>6:22-cv-01460-MO (Member Case)<br><br>MARION COUNTY'S RESPONSE IN OPPOSITION TO MOTION FOR ORDER TO TRANSPORT |

Page 1 – MARION COUNTY'S RESPONSE TO MOTION FOR ORDER TO TRANSPORT

| | |
|---|---|
| JARROD BOWMAN and JOSHAWN DOUGLAS-SIMPSON | 3:21-cv-01637-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her official capacity, and DAVID BADEN, Director of the Oregon Health Authority, in his individual and official capacity, | |
| Defendants, | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES, | |
| Intervenors. | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES OREGON, | 6:22-cv-01460-MO (Member Case) |
| Plaintiffs, | |
| v. | |
| DAVID BADEN, in his official capacity as Director of Oregon Health Authority, | |
| Defendant. | |

## INTRODUCTION

The Plaintiffs ask this court to order the Marion County Sheriff's Office ("MCSO"),

which is not a party to this lawsuit, to transport patients upon request by the Oregon State

Hospital ("OSH") even when there is a state circuit court order in place prohibiting transport until

Page 2 – MARION COUNTY'S RESPONSE TO MOTION FOR ORDER TO TRANSPORT

OSH provides updated patient assessments to the court.  There is no Oregon statute which authorizes county sheriffs to transport individuals back to jails upon the request of OSH.  Rather, the authority to transport an individual to or from OSH comes from the circuit court in the form of an order as part of the process of committing an individual to the custody of OSH for restoration services under ORS 161.370.

In the three[1] instances on which Plaintiffs base their motion, the circuit court did not order MCSO to transport the identified individuals back from OSH. On the contrary, in those cases the circuit court amended its commitment orders to specifically prohibit MCSO from transporting the individual back to jail. In a clear effort to avoid placing OSH in a position where it is in violation of these circuit court orders, the parties ask this Court to shift that burden to MCSO instead. Such an effort is not supported by either Oregon or federal law and, if granted, this motion would place MCSO in the untenable position of being caught between conflicting court orders.

## STATEMENT OF FACTS

On September 1, 2022, this Court entered an order ("Mosman Order") shortening the length of time individuals who are sent to OSH under ORS 161.370 could receive restoration services.  However, no portion of the order purported to alter the means by which sheriffs are ordered to conduct transports via circuit court commitment orders. The order did not authorize county sheriffs to transport individuals to and from OSH in the absence of a circuit court order. Moreover, immediately prior to the entry of the September 1, 2022 order, Marion County petitioned and was granted leave by the court to submit briefing as an amicus county. Marion County is not a party to the present lawsuit and is not directly subject to the Mosman Order.

---

[1] While Plaintiffs refer to "four individuals" throughout their motion, the redacted declaration from OSH employee Derek Wehr identifies only three transports at issue.  Because his declaration is redacted, in this response MCSO refers to the individuals in the numerical order they are identified by Mr. Wehr.

In contrast, at the state level, ORS 206.010(3) requires county sheriffs to "execute orders of the courts of justice or of judicial officers, when delivered to the sheriff for that purpose." Pursuant to state statute, therefore, when MCSO receives an order from a circuit court, it is required to follow it. ORS 161.370 provides that when a circuit court judge determines that a criminal defendant who is residing in the county jail is not fit to aid and assist in their own defense, the court may send that individual to OSH for restoration services. The standard form ORS 161.370 order of commitment used by the courts, provides a check box where the court can order that "[t]he Sheriff's Office department in the committee jurisdiction shall transport defendant from the jail to OSH in Salem, OR and shall return defendant to the jail upon notification from OSH." *See Declaration of Lieutenant. Jacob Ramsey ("Ramsey Decl.") ¶ 2; Ex 1.*

MCSO Institutions deputies track when individuals on aid and assist restoration are to return to the jail, so that the MCSO can arrange for classification and housing. *Ramsey Decl., ¶ 3.* Pursuant to the order of commitment cited above, when the jail receives notice that an individual is about to be released from OSH, deputies work with the District Attorney's Office for classification and housing purposes, and then contact OSH regarding transport details. *Id.*

In September of 2022, MCSO was notified that the timelines for restoration of individuals at OSH had been shortened. *Ramsey Decl., ¶ 4.* The transport deputies incorporated these shortened timelines into their tracking sheets, but otherwise the process of arranging for transport to and from OSH did not change. *Id.* The language in the committing orders also remained the same: that the jail would transport and pick up individuals from the state hospital. *Id.*

Since September 22, 2022, MCSO has transported approximately 78 individuals to OSH and 56 individuals, the most recent one on March 27, 2023, from OSH back to the Marion

County jail. *Ramsey Decl.,* ¶ 5. Plaintiff's motion included a declaration from Derek Wehr, informing the court of three circumstances since September of 2022, in which the committing orders were amended by circuit court to prohibit transfer by MCSO. *Id.,* ¶ *6.*

The first instance noted by Mr. Wehr involved an adult in custody who was admitted to OSH on August 17, 2021. *Ramsey Decl.,* ¶ *7.* On February 23, 2023, OSH contacted the MCSO seeking to return him to the jail; however, that same day MCSO was informed by the District Attorney's Office that they had filed an unopposed motion with the circuit court for an order that defendant remain at OSH.[2]  *Id.* Shortly thereafter, MCSO was notified that the court had granted the motion and was then notified the individual had been discharged from OSH under custodial care into community restoration. *Id.* In his declaration Mr. Wehr states, "[t]he Marion County Sheriff's Office has not responded to OSH's request that it transport (individual) to Marion County," failing to inform this Court that this individual is no longer at OSH. *See Wehr Decl,,* ¶ *6a.*

The second individual discussed in Mr. Wehr's declaration was admitted to OSH on June 2, 2021. *Ramsey Decl.,* ¶ *8.* On February 6, 2023, the MCSO transport desk received a 30-day notice from OSH and began planning discharge. *Id.* However, on February 8, 2023, MCSO and OSH received an amended order on this individual's commitment which ordered:

> "[Defendant] may not be returned from OSH absent an order from the committing court. **The committing court may issue an order allowing transport upon receipt of a current progress report, as contemplated by ORS 161.371, detailing the defendant's fitness to proceed**, amenability to community restoration and necessity for a hospital level of care given existing public safety concerns. The court may set a hearing upon receipt of said report or at the request of either party." (Emphasis added)

---

[2]       Notably, Mr. Wehr did not inform this Court that defense counsel in that case supported her client remaining at OSH.

*Id.; see also Wehr Decl. Ex 2.* Because transport by MCSO to and from OSH under ORS 161.370 is directed by circuit court order, this amended order precludes MCSO from transporting the individual back to jail until OSH complies with the court's order for a current progress report. *Id.*

The third individual Mr. Wehr discusses was transported to OSH per the committing court order on March 10, 2022. *Ramsey Decl., ¶ 9.* On January 26, 2023, MCSO received notification from OSH that this individual would be discharged and ready for transport on January 31, 2023. *Id.* However, on January 30, 2023, the committing court issued an amended order prohibiting transport until it received a current progress report from OSH.  *Id; see also Wehr Decl. Ex 4.*

The following day, MCSO transport deputies were at OSH regarding a different transport when they were asked about this third individual.  *Ramsey Decl., ¶ 9.* Contrary to Mr. Wehr's statement that MSCO declined to transport while "in the sally port," OSH knew that MCSO was there on a separate matter and that OSH had been ordered to complete a current progress report before MCSO could transport this third individual to jail. *Id.*

Mr. Wehr concludes his declaration by asserting MCSO is "currently declining" to transport patients.  This statement is untrue and mischaracterizes both MCSO's actions and OSH's inactions in the above matters.  <u>The MCSO has made approximately 134 transports to and from OSH since the new restoration timelines were put in place September 1, 2022, including a transport back to the jail as recently as March 27, 2023.</u> *Ramsey Decl., ¶ 5.* In the three instances cited above, one individual was moved from OSH into community restoration, and the other two were issued amended orders precluding transport until OSH issues updated progress reports, which MCSO is obligated to follow under state law or be subject to a contempt order.  When OSH provides the circuit court with updated progress reports, which does not conflict with its

obligations under the Mosman Order, MCSO will be ordered to transport, and these two issues will be resolved.

## APPLICABLE LAW

For MCSO to be bound by this Court's order as a non-party to the case subject to contempt proceedings under FRCP 65(d)(2), Plaintiff must demonstrate either that (1) MCSO is "legally identified" with the enjoined party, or (2) MCSO is in "active concert or participation" with a party and has actual notice of the injunction. *NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 634 (9th Cir. 1977). A finding that a non-party is "legally identified" with an enjoined party must be based "on either the non-party's close affiliation with the enjoined party prior to the injunction" or its "status as a successor to the enjoined party after the injunction issued." *Consumer Fin. Prot. Bureau v. Howard Law, P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016) (memorandum opinion) (internal citations omitted). A non-party is in "active concert or participation" with a party if it is "aiding and abetting" the party in violating an order. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014).

Additionally, even when a non-party is determined to be properly subject to a court order under FRCP 65(d)(2), in exercising its remedial contempt powers a federal court is subject to certain limitations. Any time that a federal court exercises its "broad equitable remedial powers," it must "exercise the least possible power adequate to the end proposed." *See Stone v. City & Cty. of S.F.*, 968 F.2d 850, 861 (9th Cir. 1992). When intervening in state affairs, "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120, 72 S. Ct. 118, 96 L. Ed. 2d 138 (1951)). "The interaction between the federalism limits on a district court's remedial power,

invoked in *Rizzo*, and a district court's power in general to order prospective relief against state executive officials . . . , remains an open and contentious area of the law." *M.S. v. Brown*, 902 F.3d 1076, 1089-90 (9th Cir. 2018).  Thus, a federal district court must limit any remedy to the least intrusive available. *Hoptowit v. Ray*, 682 F.2d 1237, 1247 (9th Cir.1982).

## ARGUMENT

I.    **Plaintiffs have not met their burden under FRCP 65(d)(2)**

A.  <u>MCSO is not "legally identified" with the enjoined party.</u>

There is no possible argument that MCSO is a "successor" to defendants.  MCSO and OSH are agencies of two completely separate governmental entities: Marion County and the State of Oregon.  Moreover, MSCO does not have a sufficiently "close affiliation" with OSH to subject them to contempt that way.  In the principal case exploring the issue, the Ninth Circuit held that a labor union's officers, although not parties to an action, were required to abide by an order to cease striking even though the order was only directed to the union itself.  *Sequoia Dist. Council of Carpenters*, 568 F.2d at 634.  The court reasoned that the close relationship between the officials and the union justified extending the terms of the order to encompass its officers, analogizing the situation to how an order issued to a corporation is "in effect a command to those who are officially responsible for the conduct of its affairs."  *Id.* at 634.

Although Plaintiffs argue that "MCSO works in active concert and participation with OSH to effectuate discharges," that fact alone falls well short of the requirements for "close affiliation."  Although MCSO had a relationship with OSH prior to the issuance of this injunction, MCSO has never been a part of OSH and has never been responsible in any way for managing OSH's affairs in a manner analogous to a corporate officer.  The only contact MCSO

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

has with OSH is county circuit court orders for it to transfer an adult in custody for treatment at the hospital. Ramsey Decl., ¶ 10. Its "relationship" with OSH thus falls far short of the sort of affiliation contemplated in *Sequoia Dist.*

      B.  <u>MCSO is not in "active concert or participation" with any party in this lawsuit.</u>

Plaintiffs' contention that MSCO is "aiding and abetting" OSH in violating the Mosman order, is that MCSO is "refusing to allow OSH to discharge these four[3] individuals" and "forcing" them into contempt of Mosman's order. This is so, they argue, because county sheriffs are "charged with completing the patient discharge process by returning the individuals to their county of origin" and that OSH thus "cannot complete their required [discharge] processes without them."

As an initial matter, Plaintiffs' argument significantly overstates the degree to which county sheriffs are required to participate in the transfer of individuals to and from OSH. No Oregon statute provides any sort of general "charge" for county sheriffs to provide transport for individuals to and from OSH. The only legal authority which requires county sheriffs to transport individual to and from OSH is an order of commitment under ORS 161.370 issued by a state circuit court.[4] Nothing in the Mosman Order changed that; the order is silent as to how patients are transferred.

Stripped then of the notion that MCSO has any sort of obligation under state law to transport people to and from OSH other than a court order, Plaintiff's argument that MCSO is "aiding and abetting" OSH's violation of the Mosman Order ultimately boils down to a single

---

[3]      Again, OSH is only asserting that three individuals were not transported back to jail per court order.
[4] The reason why the county sheriff is ordered to transport the person back is that there is usually already another order in the case requiring the sheriff's office to detain that individual pretrial (or risk contempt of that order). No provision of state law requires that MCSO be involved in a patient's discharge process.

Page 9 – MARION COUNTY'S RESPONSE TO MOTION FOR ORDER TO TRANSPORT

contention: because OSH relies on MCSO being required by court order to transport individuals to and from the hospital, MCSO must continue to provide affirmative assistance to help keep OSH out of contempt even when not required to. Plaintiffs appear to argue that even by doing nothing and without any form of legal obligation to do otherwise, MCSO is engaged in a sort of "passive" aiding and abetting that amounts to contempt of the Mosman Order. The trouble with this argument is that it lacks any sort of basis in law.

Plaintiffs cite no authority for the proposition that a non-party to a case can aid and abet a violation of a court order through complete inaction. Although some district courts have endorsed the idea of "passive" contempt, all such cases involve a non-party providing some sort of service that was then used by a party to violate a court order. *See Arista Records, LLC v. Vita Tkach*, 122 F. Supp. 3d 32 (S.D.N.Y. 2015) (internet site that redirected users to enjoined content via server was "aiding and abetting" contempt); *S. Cent. Bell Tel. Co. v. Constant, Inc.*, 304 F. Supp. 732 (E.D. La. 1969) (telephone company's failure to prevent customer from using its services to violate terms of court order amounted to "passive contempt"). Indeed, in the only case Marion County could locate in which a non-party was alleged to be in "passive contempt" by virtue of taking no action whatsoever, the Seventh Circuit held that the non-party's "mere inactivity [was] simply inadequate to render them aiders and abettors in violating the injunction." *Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010) (website's refusal to remove defamatory content posted by enjoined defendants did not constitute passive contempt). Here, non-party MCSO is not providing any services to enable OSH to violate the Mosman order. Rather, it is merely complying with an order to take no action issued by the same court that authorized the transport in the first place. It is a dangerous and slippery slope to begin attaching contempt liability to a non-party's inaction, particularly when that inaction is required by order of

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

a court. Continuing down that road, the eventual conclusion is virtually infinite contempt liability for anyone capable of transporting from OSH with knowledge of the order.

Furthermore, as a practical matter, Plaintiff has not demonstrated how MCSO's compliance with a circuit court order mandates OSH's noncompliance with the Mosman order. The state has its own law enforcement agency, the Oregon State Police. If OSH really believes it was "being forced to carry out a prohibited act" it could have taken a number of steps to ensure its compliance, including requesting transport to jail of these three individuals by OSP, hiring a private security company for transport, or seeking relief in state court, as will be discussed below.

What Plaintiffs fail to point out is the amended orders explicitly ordered OSH to continue to hold the individuals. The OSH's clear unwillingness to violate a circuit court order appears to be the real reason why Plaintiffs are filing this unprecedented motion. The parties are attempting to have this Court fashion a remedy against a nonparty which would protect the state while at the same time ensuring that the Marion County Sheriff is in contempt of court no matter which order he follows. The requested relief places the MCSO in an untenable situation and should not be contemplated by this Court.

## II.     Plaintiff's requested relief is not the least intrusive alternative available.

While federal courts have broad equitable powers, they are limited by the principle that relief ordered against state officials, such as the county sheriff, must be limited to the least intrusive remedy. The parties failed to demonstrate or explain why other alternatives were inadequate, making it impossible for this Court to make the proper findings. Therefore, even if this Court finds that MCSO is subject to an order as a non-party under FRCP 65(d)(2), it must, at a minimum, require the parties to demonstrate that available alternatives are inadequate.

A. <u>This Court should order OSH to provide the circuit court with the outstanding updated progress reports for the two individuals.</u>

Two of the amended court orders that are the basis for this motion prohibit release and transport until the circuit court receives updated progress reports. The least intrusive alternative is clearly for this court to direct OSH to provide the circuit court with the requested progress reports so that the court can order transport. The provision of these reports does not conflict with the Mosman Order and would resolve this issue.

B. <u>This Court should order OSH to exhaust its state court remedies before taking action against a nonparty to this litigation.</u>

Another less intrusive means than compelling a non-party local governmental entity to violate a state judicial order would be to require OSH to exhaust its state-level remedies prior to seeking federal relief. To date, there is no evidence that OSH has attempted to seek relief from the state court order directly. Instead, the parties' very first step was to come to a federal court and seek an order to circumvent the state court order. Similarly, there is no evidence that OSH has sought relief from the Oregon Supreme Court in the form of a petition for writ of mandamus under ORS 34.110 compelling the circuit court to rescind its order. Under the circumstances, it is reasonable and less intrusive to require OSH to pursue these avenues before this Court issues an order overruling a state judicial order.

///

///

///

///

///

///

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

## CONCLUSION

For the reasons stated above, Marion County respectfully requests that this Court decline to order Plaintiffs' requested relief and instead order that the parties first pursue less intrusive solutions to compliance with the Mosman Order.

DATED this 29th day of March, 2023.

Jane E. Vetto, OSB No. 914564
Marion County Counsel
Attorney for Amicus Marion County