```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   OREGON ADVOCACY CENTER,      )
     et al.,                      )
 4                                )
               Plaintiffs,        )   Case No. 3:02-cv-00339-MO
 5                                )
          v.                      )
 6                                )
     BOBBY MINK, et al.,          )
 7                                )
               Defendants.        )
 8   _____)
     JAROD BOWMAN, et al.,        )
 9                                )
               Plaintiffs,        )   Case No. 3:21-cv-01637-MO
10                                )
          v.                      )
11                                )
     DELORES MATTEUCCI, et al.,   )
12                                )
               Defendants.        )
13   _____)
     LEGACY HEALTH SYSTEM, et al.,)
14                                )
               Plaintiffs,        )   Case No. 6:22-cv-01460-MO
15                                )
          v.                      )
16                                )   March 31, 2023
     PATRICK ALLEN,               )
17                                )   Portland, Oregon
               Defendant.         )
18   _____)

19

20                         Oral Argument

21                   TRANSCRIPT OF PROCEEDINGS

22            BEFORE THE HONORABLE MICHAEL W. MOSMAN

23           UNITED STATES DISTRICT COURT SENIOR JUDGE

24

25
```

```
 1

 2                              APPEARANCES

 3    FOR PLAINTIFF
      DISABILITY RIGHTS
 4    OREGON:                  Ms. Emily R. Cooper
                               Disability Rights Oregon
 5                             511 S.W. Tenth Avenue, Suite 200
                               Portland, OR 97205
 6

 7
      FOR THE DEFENDANTS:      Ms. Sheila H. Potter
 8                             Ms. Carla Scott
                               Oregon Department of Justice
 9                             Trial Division
                               100 S.W. Market Street
10                             Portland, OR 97201

11    FOR AMICUS MARION
      COUNTY:                  Ms. Jane E. Vetto
12                             Marion County Legal Counsel
                               P.O. Box 14500
13                             Salem, OR 97124

14
      FOR AMICI JUDGES:        Mr. Keith M. Garza
15                             Law Office of Keith M. Garza
                               P.O. Box 68106
16                             Oak Grove, OR 97268

17

18    ALSO PRESENT:           Dr. Debra Pinals (by telephone)

19

20    COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                               United States District Courthouse
21                             1000 S.W. Third Ave., Room 301
                               Portland, OR  97204
22                             (503) 326-8188

23

24

25
```

```
 1                  (P R O C E E D I N G S)

 2              (March 31, 2023; 1:33 p.m.)

 3                  * * * * * * * * *

 4          THE COURTROOM DEPUTY:  We are here today for oral

 5   argument in Case No. 3:02-cv-339-MO, Oregon Advocacy Center, et

 6   al. versus Mink, et. al; member Case No. 3:21-cv-1637-MO; and

 7   6:22-cv-1460-MO.

 8          Counsel, please state your name for the record.

 9          MS. COOPER:  Good afternoon, Your Honor.  My name is

10   Emily Cooper, and I represent organizational plaintiff

11   Disability Rights Oregon.

12          THE COURT:  Thank you.

13          MS. SCOTT:  Carla Scott for defendant.

14          MS. POTTER:  Sheila Potter for defendants.

15          MR. GARZA:  Keith Garza for Oregon amici circuit

16   court judges.

17          MS. VETTO:  And I'm Jane Vetto, here on behalf of

18   Marion County, also nonparty Marion County Sheriff's Office.

19          THE COURT:  Thank you all for being here.

20          Dr. Pinals, you're here listening by audio; is that

21   right?

22          DR. PINALS:  Yes, it is, Your Honor.

23          THE COURT:  All right.  Thank you.

24          Let me give my tentative thoughts -- and there's a

25   lot of question in my mind about this, so feel free to jump in
```

1    and explain where I've missed something.

2         The parties are familiar with the underlying facts

3    that gave rise to this hearing today.  The September 1 order

4    requires OSH to discharge people at certain time periods if

5    competency has not been restored and enough time has passed.

6         My own tentative view upon review particularly of

7    what the sheriffs have written is that the September 1 order

8    has a sort of a procedural or you might even think of as a

9    mechanical gap in it.  It contemplates -- really the only thing

10   it says is that there will be a certain period of notice,

11   currently 30 days, soon I guess to be 60, and then that the

12   hospital is required to discharge the patient pursuant to this

13   order.

14         What it doesn't say anything about is who will come

15   get him or her and under what auspices.  I'm confident that the

16   understanding of people involved to the point of me

17   promulgating this order was that law enforcement of some

18   kind -- typically a sheriff's office from the committing

19   county -- would come get the person and return them to the

20   county, and the county would then have to decide what to do

21   next.  I appreciate -- I'm sure that's not always clear, but I

22   do very much appreciate that that leaves counties sometimes

23   with no great choices.  But that's sort of the scheme that was

24   contemplated.

25         So we have now from Marion County certain people -- I

1    think we're down to three -- who are supposed to be discharged

2    pursuant to the September 1 order, probably supposed to be

3    picked up by Marion County Sheriff's Office and returned to

4    Marion County, and that's not happening.  And it's not

5    happening for a variety of reasons, including the possibility

6    that Marion County Sheriff's Office would get in serious

7    trouble with their own courts and judges if they were to do

8    that, and also the possibility raised currently informally that

9    the director of OSH would be in trouble with Marion County

10    judges if discharge occurred, although I don't foresee a

11    situation where discharge would occur if nobody was there to

12    pick somebody up, since they arrive at OSH in custody.

13          The relief sought, if I understand it correctly, is

14    sort of two-fold:  a restraining order requiring Marion County

15    Sheriff, nonparties, to come and receive the three people to be

16    discharged and return them to the committing county, Marion

17    County, and some idea, perhaps, that if that fails, that there

18    would be contempt of court for not doing so.

19          The gap that I think I see in the order is that it

20    doesn't really tell anybody -- it doesn't tell any sheriff's

21    office, for example, that they must come get a person about to

22    be discharged or really spell out in any way what is supposed

23    to happen next.  And so that leaves me with the tentative view

24    that before I can really restrain a nonparty, it ought to be

25    clearer that the order requires the person, the entity to do

1    what I'm about to order them to do, as opposed to being silent

2    on the subject.

3            Again, so my tentative view is that the most that can

4    happen to advance the ball forward today for the implementation

5    of the September 1 order -- which I am committed to, despite

6    its sometimes painful consequences, because I believe it's

7    required by the Constitution -- the best I can do to advance

8    the ball towards its implementation is to amend the order to

9    make clear what currently isn't clear, and make clear that

10   about which it's currently silent as to what are the

11   responsibilities of the committing county upon discharge, amend

12   the order, and then start the clock running all over again.

13   That is, allow the amended order to do whatever it is it's next

14   going to do if I amend it -- that is, provide new notice and a

15   new opportunity to now comply with the more specific commands

16   of an amended order or not.

17           We may be right back where we are right now in the

18   future or may not -- I don't know the answer to that -- but my

19   belief is that because none of this is spelled out in my

20   September 1 order, that I'm not on solid footing to order

21   compliance absent an amended order that makes what must be

22   complied with clearer than the current version of the order

23   does.

24           So that's a sort of a long-winded explanation of my

25   tentative thoughts.  I'll start with you, Ms. Cooper.

1       MS. COOPER:  Your Honor, respectfully, plaintiffs

2  don't believe there's a mechanical gap.  If you look at the

3  county briefing on page 4, they cite to a state statute 206.010

4  subsection 3.  And that is a state statute that requires county

5  sheriffs to execute orders of the courts of justice or of

6  judicial officers, which includes this Court.  And if you look

7  at Lieutenant Ramsey's testimony in his declaration, the Marion

8  County Sheriff's Office did get notice of this Court's

9  September 2022 order, and indeed the county sheriffs -- and I'm

10  quoting -- "incorporated these shortened timelines into their

11  tracking sheets," and have transported 56 individuals from

12  Oregon State Hospital, end quote, again pursuant to this

13  September 2022 order.

14       The county sheriff's office stopped complying with

15  this order only when a Marion County court issued a modified

16  order prohibiting transport.  And again quoting from Lieutenant

17  Ramsey, "MCSO could not conduct transport without being in

18  contempt of state court."

19       And so it was only through the threat of contempt

20  that this county sheriff was put in a bind.  Do we continue to

21  comply with this Court's order or the committing court's?  And

22  so I think while we can all appreciate that the sheriff's

23  office was put into a very awkward position of choosing between

24  compliance with this Court's order and the committing court,

25  what is concerning is that it is still county courts that are

1    challenging this Court's authority to issue remedial actions to

2    comply with your very clear order requiring timely transport.

3            THE COURT:  206.010 does, in fact, require compliance

4    with court orders, including federal court orders.  I guess my

5    fundamental question is where does -- and I can appreciate how

6    this worked across a number of cases prior to MCSO being at

7    risk of being in violation of a state court's order.  It worked

8    prior to that on this sort of understanding that we all had

9    about what would make sense to happen next.

10           What I'm asking, I guess, is where does one go in the

11   September 1 order to find that this Court is ordering the

12   sheriff's office to come pick up people upon discharge?

13           MS. COOPER:  Your Honor, if I may, I can point you

14   directly to where in your September order.

15           THE COURT:  I can help you.  The only possibility is

16   paragraph (3)d.

17           MS. COOPER:  Yes, Your Honor, I agree.

18           And, again, the county sheriffs acknowledged the

19   limitations imposed by them and they included that in their

20   transport orders.

21           THE COURT:  I don't mean to quibble with your point,

22   which is a good one.  It's just that people sometimes have an

23   understanding of something until they don't.  But if pressed,

24   as opposed to just adopting it as a matter of practice, if

25   pressed -- and that's what this hearing would be about -- my

question would be if you want me to -- well, let's start with

contempt, although we're not quite there yet, but let's start

with contempt.  If you want me to hold somebody in contempt for

failing to obey an order of mine, then I've got to find in my

order where Multnomah County Sheriff's Office, for example, is

failing to obey an order of mine, and I struggle to see that in

paragraph (3)d.

          MS. COOPER:  So what I'm looking at --

          THE COURT:  What are they doing that fails to obey

anything in the September 1 order?

          MS. COOPER:  It's the language in your order, Your

Honor, that says, "No later than March 15, 2023, patients

currently admitted at Oregon State Hospital who have exceeded

the length of restoration set forth in this order shall be

discharged from their restoration and from the hospital."

          Now, Your Honor, I understand what you're saying,

that there's no language about the obligation for the county

sheriff to transport.  This is where I go back to state

statute.  And the county in their own briefing acknowledged

that it's the sheriff's obligation to do so.  So if you take

that language from your order and then the statute, we don't

believe again there's any mechanical gap.

          THE COURT:  Again, so I'm not trying to discount your

point, but I do want you for a moment to set aside what the

county did.  That is, what they did was they read the

1  September 1 order and they understood it not just by way of

2  being nice, but under 206.010, they understood it to obligate

3  them to show up and pick up people from OSH and bring them back

4  to Marion County.

5         But if we set that to one side, that then

6  understanding of what they were obligated to do, and just

7  looked at what, in fact, in my order makes them do that, then I

8  guess from what you've told me, you've read (3)d. now and

9  (3)f., what you've told me is that there isn't anything textual

10  in the order that commands MCSO to come get these folks, right?

11         MS. COOPER:  That's correct.

12         THE COURT:  It's implicit, I guess, in the structure

13  of the entire order?

14         MS. COOPER:  Yes, Your Honor, coupled with state

15  statute.

16         THE COURT:  Coupled with state statute.  All the

17  state statute does is say if federal courts order you to do

18  something, you have to do it.  But I'm not asking that

19  question.  I'm asking have I, in fact, ordered them to do it.

20  And your answer is not textual.  Your answer is, well, everyone

21  thought you had and understood it that way until they were

22  threatened otherwise.  Right?

23         MS. COOPER:  That's correct.  I think the sheriff's

24  office was put in a bind.  Which court do I comply with?

25         THE COURT:  All right.  I kept you engaged while you

1    were handed a note.  Is there something you want to add?

2            MS. COOPER:  No.  The note is simply that I think we

3    would take your direction if you feel like more clarity is

4    needed and more notice would put all parties on clear notice

5    that your injunction requires timely transport by the entities

6    responsible for providing transport.

7            THE COURT:  Thank you.

8            Ms. Scott, Ms. Potter, anything you wish to add to

9    this discussion?

10            MS. SCOTT:  Just briefly, Your Honor.  I think that

11    filling in the gap would be helpful for all parties, just an

12    order as you just described to the sheriff's office.  It is the

13    practice that is followed in all discharges for aid-and-assist

14    patients.

15            I did want to correct a fact.  There are only two

16    remaining patients at the hospital whose time is up who can't

17    be discharged because of the sheriffs declining to transport

18    them, but we are having down the pipeline numerous new orders

19    from Marion County ordering that committed aid-and-assist

20    patients shall only return to the jail upon court order that

21    defendant is able or never able to aid and assist.  So this is

22    an ongoing problem.  I do think a gap-filling order making

23    clear what the responsibilities are would be helpful.  The

24    hospital here just wants to comply with this Court's order and

25    the state court orders, and knowing that it must first comply

1    under the Supremacy Clause with this Court's order.

2              THE COURT:  This is sort of in weeds on state law,

3    though.  That's something I'm not familiar with to the degree I

4    need to be.  So I have assumed -- I think we all did -- that it

5    would typically be in this setting.  If anyone was to come pick

6    up a discharged patient under (3)d., it would be the county

7    sheriff's office.

8              MS. SCOTT:  That's correct.

9              THE COURT:  Is that set in stone or could it be other

10   possibilities?

11             MS. SCOTT:  It's my understanding that there are not

12   other possibilities.  I know in the briefing it was suggested

13   that potentially the Oregon State Police might be able to do

14   the transport, but Oregon statutes do not give OSP the

15   authority to transport patients from the State Hospital.  Their

16   statutory authority is very limited.  I would be happy to

17   provide the Court with further briefing, but currently Oregon

18   law does not allow OSP to transport the aid-and-assist

19   patients.

20             THE COURT:  If the investigating agency for the

21   underlying offense is, say, Salem Police Department, does that

22   mean that Salem Police Department could go pick up someone

23   committed to OSH and return them to Marion County or not?

24             MS. SCOTT:  We haven't looked at that particular

25   question, but I would be happy to provide supplemental briefing

1    at some point.

2            THE COURT:  Thank you.

3            MS. POTTER:  I think we would potentially be in a

4    situation in which the Marion County Sheriff's Office would

5    still have been ordered not to accept someone back into the

6    jail, which they also control.  And I don't know that, but --

7            THE COURT:  Because they do have sole control over

8    the jail, right?

9            MS. POTTER:  I believe that's correct.

10           THE COURT:  Compared to Oregon State Police or Salem

11   PD?

12           MS. POTTER:  Yes.

13           THE COURT:  All right.  So that's a big part of why

14   it has typically been the county, because they're returning to

15   a county facility run by the sheriff's office.

16           MS. POTTER:  Right.

17           THE COURT:  Thank you.

18           Ms. Vetto, I'll start with you.

19           MS. VETTO:  Thank you, Your Honor.

20           THE COURT:  Is your microphone on?

21           MS. VETTO:  Would it be easier --

22           THE COURT:  That's fine.  Just pull it closer

23   perhaps.

24           MS. VETTO:  I guess the first thing I just want to

25   comment on --

1          THE COURT:  I'm sorry, I'm going to pause you there.
2     I hate to interrupt you.
3          MS. VETTO:  Is this better?
4          THE COURT:  Much better.  Thank you.
5          MS. VETTO:  First of all I want to say thank you for
6     giving us the opportunity to respond to this motion today.  The
7     sheriff's office is very concerned about this -- the whole
8     county is -- and really opposes the relief that the plaintiffs
9     requested in their briefing.
10          I guess the first kind of question is for us, we are
11    nonparties to this case, and the order that you entered on
12    September 1st is directed specifically to the entities that the
13    attorneys here represent.  And so as the Court noted, there is
14    nothing in here that talks about the sheriff's offices in
15    general, who transports, reports, anything like that.  So in
16    the absence of that, the sheriff's office has to look at what
17    they are ordered to do.  And in Oregon, when a circuit court
18    commits an adult in custody who needs to be -- receive
19    restoration services at the State Hospital, the circuit court
20    orders them under a form order that's prepared by the DOJ to
21    transport that individual to the hospital and then pick them
22    up.  That is the only thing that they are legally required to
23    do.  There is no state statute that requires transport by
24    counties, by county sheriffs -- nothing.  The only thing that
25    requires them -- the only thing in the words of the plaintiffs,

1  that they're charged to do, the only thing that charges them is

2  this order that they're seeking to have you vacate.

3         THE COURT:  So when you say "transport," under what

4  authority does MCSO transport prisoners from circuit court to

5  OSH in the first place?

6         MS. VETTO:  Under the same committing order.

7         THE COURT:  The committing order is what gives the

8  sheriff authority to transport from jail to OSH?

9         MS. VETTO:  Exactly.

10         THE COURT:  There was a time not very long ago,

11  right, where MCSO was under the understanding, at least --

12  perhaps you'll tell me that was mistaken, but it was under the

13  understanding, was it not, that this Court's September 1 order

14  required and therefore authorized MCSO to pick people up who

15  had been discharged and return them to Marion County, right?

16         MS. VETTO:  So our --

17         THE COURT:  First just tell me if that's right.  Is

18  that right?

19         MS. VETTO:  I can't speak for how they understood it.

20  My understanding of the order was that the treatment -- the

21  treatment guideline -- or the treatment times would be

22  shortened, and after the required timelines had -- treatment

23  times had been met, that those individuals would be discharged

24  and we would revert back to the circuit court order for

25  transport.

| 1 | THE COURT:  Let me ask it this way.  There were a |
|---|---|

1      THE COURT:  Let me ask it this way.  There were a

2  number of people who under the September 1 order, particularly

3  paragraph (3)d. and (3)f., had maxed out their time and had

4  been by this Court ordered to be discharged whom MCSO went and

5  picked up, right, and returned them to the county?

6      MS. VETTO:  They did.  And I --

7      THE COURT:  They didn't do that out of the kindness

8  of their hearts.

9      MS. VETTO:  I believe they did that through a circuit

10  court order.  I can check on that, but I believe they received

11  an order from the court to do that.

12      THE COURT:  All right.  And then when they both quit

13  receiving such orders and, in fact, were ordered not to, that

14  practice stopped?

15      MS. VETTO:  So it hasn't stopped.  You know, that's

16  the other kind of -- there are a couple of factual inaccuracies

17  in the declaration that the plaintiffs base this motion on.

18  One of them is that the Marion County Sheriff's Office has

19  stopped transporting.  That is not the case.  The most recent

20  transport from the jail was Monday.  They keep doing it when

21  they're ordered to do it, but in --

22      THE COURT:  You mean -- because we have to be

23  specific about what order is ordering them to do it, you mean

24  orders from the circuit court to go and bring people back?

25      MS. VETTO:  Even more specifically than that.  When

1    the original committing order hasn't been changed.  In the two

2    circumstances that we're talking about here, the circuit court

3    went in and specifically amended the original committing order

4    to prohibit transfer by the sheriff's office until -- unless

5    they provided the Court with updated progress reports.  And my

6    reading of this doesn't prohibit that either.  So there's only

7    two instances that I'm aware of.  There was a third instance

8    that Mr. Wehr talked about that was a little bit different.  In

9    that case the district attorney filed an unopposed motion to

10   keep the adult in custody at the State Hospital.  It was --

11             THE COURT:  So I understand better, meaning unopposed

12   by the criminal defense attorney?

13             MS. VETTO:  Exactly, Your Honor.

14             And immediately thereafter, the State -- the jail was

15   notified the Court had entered that motion or had approved that

16   motion, and then following that, right after that, they were

17   informed that this individual had been moved into community

18   restoration and then discharged from the State Hospital.  So in

19   his declaration, Mr. Wehr says, well, Marion County isn't

20   picking up this first individual.  He's not at the State

21   Hospital anymore.

22             There are two individuals --

23             THE COURT:  Can I follow up just a minute on that

24   just so I understand better?

25             MS. VETTO:  Yes.

 1           THE COURT:  So are you telling me that there are

 2    returns -- that is, people being discharged from OSP being

 3    returned to Marion County -- being conducted by MCSO pursuant

 4    to commitment orders that also include authority from the

 5    court, the circuit court, to return people?

 6           MS. VETTO:  Exactly.

 7           THE COURT:  And then only when those are amended is

 8    there no transport?

 9           MS. VETTO:  Exactly.

10           THE COURT:  And it's always that they -- is it

11    invariably the practice that the commitment order includes

12    authorization to return upon discharge unless it's amended

13    otherwise?

14           MS. VETTO:  So the form order is attached to

15    Lieutenant Ramsey's declaration for the Court to review.  That

16    is the standard language that -- for all these commitment

17    orders, and to my knowledge, it has only been changed twice.

18           THE COURT:  So in terms of a contest, so to speak,

19    between a Supremacy Clause contest between an order from this

20    Court and a circuit court order, that has only arisen when the

21    circuit court amends its original commitment order to disallow

22    return?

23           MS. VETTO:  Yes.

24           THE COURT:  And that has been always upon motion of

25    the DA or sometimes sua sponte?

1        MS. VETTO:  I do not know.

2        THE COURT:  And those amendments -- I know the ones

3   in front of me you suggest have a certain aspect to them, but

4   do they invariably simply disallow returns until a progress

5   report is filed or are they different from each other?

6        MS. VETTO:  On page 5 of our brief, we actually cite

7   to the amendment language.  They're identical to both and they

8   say:  "The defendant may not be returned from OSH absent an

9   order from the committing court.  The committing court may

10  issue an order allowing transport upon receipt of a current

11  progress report, as contemplated by ORS 161.371, detailing the

12  defendant's fitness to proceed."

13       THE COURT:  All right.  Thank you.

14       Those are my questions.  Anything else you want to

15  add?

16       MS. VETTO:  I guess the only other thing I want to

17  talk about is -- and the plaintiffs raised this in their brief.

18  They said that we should be -- the Court should take this

19  action against a nonparty, should enter this really

20  extraordinary relief because the requirements of FR 65 have

21  been met.  And I won't rehash my brief.  We do not believe that

22  they have been met.  We're clearly not a legal entity or

23  legally tied in any way to the State Hospital, and we're not in

24  active concert with them.  In fact, I think what they're saying

25  is we haven't done anything.  And there is federal case law

1    that says to meet the second prong of FRCP 65, mere inaction by

2    a nonparty doesn't meet that aiding and abetting statute.  So I

3    don't think they've met the requirements under FRCP 65.

4              THE COURT:  Is it your theory that it's impossible to

5    reach a point where MCSO could be enjoined to return because

6    simply not returning is always going to be inaction only?

7              MS. VETTO:  I would say under these particular

8    circumstances, where we've been prohibited to take an action,

9    yes.

10              And I think the other thing is, Your Honor, even if

11   you were to find that the requirements of FRCP 65 have been

12   met, I think the Court is still required to fashion a remedy

13   that's the least intrusive possible.  And in this particular

14   circumstance, there's a lot less intrusive things that can

15   happen besides putting our sheriff in between competing and

16   conflicting court orders.  First of all, the State Hospital

17   could do these progress reports for these individuals and

18   notify the Court so that they could be safely placed either

19   back in the community or into our jail.

20              The second thing is that contrary to the State's

21   contention, there's absolutely no state law that requires us to

22   transport.  The statutes are silent to it.  So if they're

23   arguing that somehow we can do it, they can do it too.  They

24   have an entire police force.  They could also --

25              THE COURT:  They have to transport them to a facility

1    managed by your client, right?

2         MS. VETTO:  I don't think that's the issue.  I think

3    we would have to accept them because they're still under a

4    pretrial detention -- order of detention.

5         THE COURT:  Well, I want to be careful about this.

6    Are you saying that even today that could happen?  That if by

7    some miracle, you know, we found another law enforcement agency

8    that would do the transport, are you saying that today, given

9    the nature of the amended commitment orders, if one of these

10   two people showed up being transported by the galactic law

11   enforcement agency, you would be obligated to place them in

12   your facility?

13        MS. VETTO:  I think my client would be mad at me for

14   saying this, but I think that there's certainly an argument to

15   that, yeah.

16        THE COURT:  Is it also your client's position that

17   that would not violate the amended commitment order to do so?

18        MS. VETTO:  I don't think it would, although I don't

19   know if the Court would agree with that.  I think that the -- I

20   think actually what the amended order says is that they shall

21   not discharge, but if they decide to discharge, then I think

22   there's nothing in there that says we can't accept a person

23   under pretrial.  We just can't transport them.

24        I do think there's some other things that they can

25   do.  They haven't exhausted --

| | |
|---|---|
| 1 | THE COURT:  Can I ask just a practice question then? |
| 2 | MS. VETTO:  Yes. |
| 3 | THE COURT:  Has it been invariably the practice |
| 4 | across years of time that when for any reason there's a |
| 5 | discharge of a patient from OSH who is under an existing |
| 6 | commitment order of any kind -- meaning commitment order or |
| 7 | just custody order -- that it's the sheriff's office who goes |
| 8 | and gets them from OSH? |
| 9 | MS. VETTO:  I would say if they're picking them up |
| 10 | under this order, yes, unless there was -- |
| 11 | THE COURT:  Separate from this order, what if they're |
| 12 | just -- have competency restored?  Who goes and gets them? |
| 13 | MS. VETTO:  I did not look into that.  I can. |
| 14 | I think the last thing that we haven't talked about, |
| 15 | that the State hasn't talked about is that they haven't -- the |
| 16 | plaintiffs have not exhausted their remedies under state law. |
| 17 | I mean, if they object to a state court order, they can move to |
| 18 | quash it.  They can mandamus it.  There are a lot of things |
| 19 | that are less intrusive that they can get to try to set this |
| 20 | aside that doesn't require this really extraordinary relief |
| 21 | against a nonparty that is really untenable, that puts that |
| 22 | party in a untenable situation. |
| 23 | So I guess we ask that you deny this motion, and that |
| 24 | if you do fashion relief, that it be the least intrusive |
| 25 | alternative available. |

1    Thank you.

2    THE COURT:  Thank you.

3    I just want to follow up on one last thought to make

4    sure again that I'm thinking about this in the right way.

5    When you say that they haven't exhausted their state

6    court remedies, what I'm asking is are you maintaining that

7    there literally is some sort of exhaustion requirement, or is

8    it just that failure to do that shows a failure to use less

9    intrusive means of accomplishing your goals?

10    MS. VETTO:  I think the latter.  I think maybe

11    "exhaust" was an overstatement, but they certainly haven't

12    explored them before coming to federal court.

13    THE COURT:  All right.  Thank you.

14    Mr. Garza.

15    MR. GARZA:  Thank you, Your Honor.  Just --

16    THE COURT:  Same request.  If you wouldn't mind

17    getting that microphone close.

18    MR. GARZA:  Thank you, Your Honor.

19    I'm just here to answer any questions or concerns the

20    Court might have.

21    THE COURT:  I feel like it's been helpful so far,

22    unless you have something you specifically want to add.

23    MR. GARZA:  No.

24    THE COURT:  Do you wish to respond in any way,

25    Ms. Cooper?

1    MS. COOPER:  No, Your Honor.

2    THE COURT:  It is my view that this gap in the order

3  disqualifies this case for the remedies sought.  I feel like

4  it's not clear enough who had to do what when for me to find

5  anyone in contempt or me to order by restraining order anyone

6  to do something they clearly should have done and are not

7  doing.  So I deny the requested relief for today.

8    I am ordering the parties, and if willing, the

9  litigants in front of me here today, to submit to the Court in

10  one week's time a proposed amendment to the September 1 order

11  that fills this gap, and it needs to fill the gap -- there are

12  three issues to sort out, not all of them susceptible to

13  solution by a mere textual amendment, but it's worth a shot.

14    One is, and that is that the order should say what it

15  now doesn't say, and that is that when the moment of truth

16  arrives that section (3)d. contemplates, then who is obligated

17  to do what next.  And I think that's fairly simple with just

18  one big issue that I'm unable to sort out today that you can

19  either tell me you sort out or tell me you don't know the

20  answer to and I'll rule on it, and that is if we were certain

21  that the person who had to come to OSH and get a person being

22  discharged under (3)d. and return that person to the committing

23  county was the committing county's sheriff's office, then the

24  textual amendment I think is pretty simple to write.  What's up

25  in the air is does it have to be the sheriff.

1          And that has -- there's two ways to answer that

2   question.  One is by statutory authority, which may be silent

3   on the matter, and the other is pragmatically.  That is, if

4   there's no one else that really can do it, or if it doesn't

5   make any sense at all for some, you know, strange law

6   enforcement agency to show up at this sheriff's jail with

7   somebody, then I'm willing to do the most pragmatic thing if

8   it's the only right answer.  So that's one question:  Who is

9   supposed to show up and do what in order to effectuate (3)d.

10  and (3)f.?

11          The second is also I think worth thinking about as a

12  textual amendment, but it's also just worth thinking about, and

13  that is what obligation, if any, should the September 1 order

14  place on OSH to meet the request, at least in this case, by

15  circuit court judges for a predischarge progress report.

16          And you know the argument.  The argument is if you're

17  going to send this person back to us and we have choices to

18  make, choices that could include community care but might also

19  include involuntary commitment for dangerousness or something

20  like that, then we would like to know OSH's professional

21  opinion about where this person stands.  So that's something to

22  think about, whether it gets folded into an amendment to the

23  order or not.

24          The third is not a textual amendment.  It's just one

25  on which I'll appreciate your further input by briefing or

1    otherwise, and that is does the requirement to use the least

2    intrusive means possible impose some obligation in this very

3    situation to seek state court relief.

4           Actually, thinking this through out loud, one week

5    isn't sufficient time.  How much time would be needed to both

6    propose textual amendments and supply any additional briefing

7    on the remaining issues?

8           I'll start with you, Ms. Cooper.

9           MS. COOPER:  Your Honor, I feel that the first is

10   achievable in a week.  I think regarding the other two, I think

11   in particular the -- what I'll call the care coordination

12   requirement, that is something the parties plan on addressing

13   at -- during mediation with Judge Beckerman, and I think it is

14   critical.

15          THE COURT:  So put it past those two mediation dates?

16          MS. COOPER:  Correct.

17          THE COURT:  Into May or what?

18          MS. COOPER:  We can confer, but I think into May

19   makes sense from plaintiff's position.

20          THE COURT:  Do you agree?

21          MS. SCOTT:  I do agree.  But with respect to the

22   obligation to pursue state court remedies, I would just point

23   out that neither the hospital or plaintiffs are parties to

24   these nontransport orders, so I don't believe that there is a

25   vehicle to appeal those orders by either of the parties in the

1  main Bowman cases.

2          THE COURT:  Then it will be easy to provide your

3  brief on this question.

4          MS. SCOTT:  So we can do that quickly.  That was my

5  point.

6          MS. POTTER:  I think on the side of a week.

7          MS. SCOTT:  The second point is to what extent can,

8  should, and would the hospital be able to provide progress

9  notes to the committing court.  But we are seeing a whole slew

10  of new orders that don't require a progress report but simply

11  say -- in their original commitment orders that say, I'm

12  committing this person to the hospital.  They may not return

13  until I, state court judge, finds they are able or unable.  So

14  that is a new thing.  It's not before the Court today, but it

15  is separate and apart from the requirement for a progress

16  report.

17          THE COURT:  I understand that by not granting the

18  relief requested today, that will back people up.  That's

19  unfortunate but, in my view, unavoidable at this time.  So

20  we'll just work as quickly as possible to create a path forward

21  that doesn't allow this logjam.

22          I want to be clear.  If I thought the order were

23  clearer, then I have no question in my mind -- in my mind about

24  the application of the Supremacy Clause here, none whatsoever.

25  And so it's just a question of how to do two things that I

1    think are missing.  One is to make the order clearer about who

2    is obligated to do what; and two, to at least explore the

3    possibility that for this particular subpart of the relief

4    requested, I'm ordering the least intrusive means possible.

5    I've already made that finding on a more overarching basis, but

6    I think it has to be applied somewhat differently to this

7    particular issue.  But other than that, you know, we've gone

8    down this road already, and I'm clear in my views of what the

9    Supremacy Clause means and doesn't mean with respect to

10    competing orders here.

11           For your two clients -- I'll talk to you, Mr. Garza,

12    first.  Your clients' fundamental position has been that the

13    order should be vacated, and so I'm not sure your client is in

14    a position -- clients, I guess, in a position to participate

15    meaningfully in amending an order they wish to see vacated.  Is

16    there any point to your participation?

17           MR. GARZA:  Well, I don't want to get into what's

18    been going on in the mediation, but -- as Ms. Cooper

19    indicated --

20           THE COURT:  I mean in this particular piece of the

21    mediation, just this issue for today's purposes.

22           MR. GARZA:  Well, I think numbers two and three that

23    you indicated are matters that my clients would be interested

24    in participating in.

25           THE COURT:  Same question, Ms. Vetto.

```
1          MS. VETTO:  Yes, I think that's absolutely true.
2          THE COURT:  All right.
3          MS. VETTO:  I guess I would say that if there is some
4   criteria about a discharge progress report, I have a feeling
5   that's going to take away the whole first issue about
6   transport, because I don't think the courts will block the
7   transport at that point.  So I feel like number two --
8          THE COURT:  Well, apparently some of the orders don't
9   require a progress report.  That's what Ms. Scott has just
10  indicated.
11         MS. VETTO:  I do not know that.  That is not before
12  the Court today and I don't have that information.
13         THE COURT:  That's part of why I need this time,
14  because there's some important questions that, through no fault
15  of your own, none of you know the answer to yet.  That's an
16  important point.  That's a very different issue if all that's
17  being required, all is progress reports as opposed to just a
18  pure competing set of demands against your client.
19         What I said earlier about the Supremacy Clause means
20  for your client's purposes that there well may come a day,
21  perhaps, that your clients face competing orders -- I should
22  say irreconcilable orders.  That's too bad.  That's not a good
23  situation for your clients to be in, but the Supremacy Clause
24  does provide an answer that gives your client a clean path
25  forward.
```

1          MS. VETTO:  And we appreciate the opportunity to

2    participate as amicus and to participate in the mediations next

3    week and the week after.  I guess my question is, it was our

4    understanding that the mediations were geared toward proposals

5    for amending the order.  Is this part of that or is this

6    separate from that?

7          THE COURT:  I'll leave that to Judge Beckerman.  I'm

8    not going to step on that at all.  But I am requiring, whether

9    it's independent or folded into that, separate consideration by

10   the parties and entities represented here today of the narrow

11   issue that has been raised by Ms. Cooper's request.

12         MS. COOPER:  Your Honor, if I may.

13         THE COURT:  Yes.

14         MS. COOPER:  I think your original proposal under the

15   first -- around the proposed language clarifying the obligation

16   to transport, plaintiffs remain open to providing that

17   documentation within a week.  We think that's more than enough

18   time for the parties to meet and provide that clarity.

19         THE COURT:  I think that's right.  It's a much

20   easier -- I don't mean easier intellectually, but it's a much

21   quicker task to undertake than the rest, and it doesn't

22   require, for example, learning facts you don't currently know.

23         So one week to submit proposed textual amendments

24   that close the gap I've described, and then I'll set a date in

25   maybe -- when is the second mediation session scheduled for?

1  The 11th?  So a couple weeks after that to finish up the rest

2  of what I've requested.

3          MS. COOPER:  Yes, Your Honor.  I would imagine by the

4  last week of April we will have an idea if the mediation has

5  been successful and language around what you've identified as

6  to textual change, and then three, briefing regarding whether

7  or not a writ of mandamus is an appropriate remedy for

8  plaintiffs.

9          THE COURT:  Ms. Scheele, can you suggest a date?

10          THE COURTROOM DEPUTY:  April 25th.

11          THE COURT:  I'll receive briefing on that date, and

12  then I'll set a further hearing if necessary.

13          MS. SCOTT:  Your Honor, I think also within one week

14  we can provide briefing on No. 3, which is whether or not the

15  parties should appeal the state court nontransport orders.

16          THE COURT:  Wonderful.  I'll look forward to reading

17  it.

18          Anything else, Ms. Cooper?

19          MS. COOPER:  No, Your Honor.  Thank you.

20          THE COURT:  Ms. Scott?

21          MS. SCOTT:  No, Your Honor.  Thank you.

22          THE COURT:  Ms. Potter?

23          MS. POTTER:  No, Your Honor.  Thank you.

24          THE COURT:  Mr. Garza?

25          MR. GARZA:  No.

```
 1                 THE COURT:  Ms. Vetto?

 2                 MS. VETTO:  No, Your Honor.

 3                 THE COURT:  Thank you all for your assistance in this

 4      matter today.  We'll be in recess.

 5                 THE COURTROOM DEPUTY:  All rise.  Court is in recess.

 6                 (Proceedings concluded at 2:19 p.m.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

--o0o--


         I certify, by signing below, that the foregoing is a

correct transcript of the record of proceedings in the

above-entitled cause.  A transcript without an original

signature or conformed signature is not certified.



/s/Bonita J. Shumway                    April 5, 2023
_____               _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

DR. PINALS: [1]  3/22
MR. GARZA: [7]  3/15 23/15 23/18 23/23 28/17 28/22 31/25
MS. COOPER: [18]  3/9 7/1 8/13 8/17 9/8 9/11 10/11 10/14 10/23 11/2 24/1 26/9 26/16 26/18 30/12 30/14 31/3 31/19
MS. POTTER: [7]  3/14 13/3 13/9 13/12 13/16 27/6 31/23
MS. SCOTT: [10]  3/13 11/10 12/8 12/11 12/24 26/21 27/4 27/7 31/13 31/21
MS. VETTO: [36]
THE COURT: [75]
THE COURTROOM DEPUTY: [3]  3/4 31/10 32/5

-
--o0o [1]  33/2

/
/s/Bonita [1]  33/9

1
100 [1]  2/9
1000 [1]  2/21
11th [1]  31/1
14500 [1]  2/12
15 [1]  9/12
161.371 [1]  19/11
1:33 [1]  3/2
1st [1]  14/12

2
200 [1]  2/5
2022 [2]  7/9 7/13
2023 [4]  1/16 3/2 9/12 33/9
206.010 [3]  7/3 8/3 10/2
25th [1]  31/10
2:19 [1]  32/6

3
30 [1]  4/11
301 [1]  2/21
31 [2]  1/16 3/2
326-8188 [1]  2/22
3:02-cv-00339-MO [1]  1/4
3:02-cv-339-MO [1]  3/5
3:21-cv-01637-MO [1]  1/9
3:21-cv-1637-MO [1]  3/6

5
503 [1]  2/22
511 [1]  2/5
56 [1]  7/11

6
60 [1]  4/11
65 [4]  19/20 20/1 20/3 20/11
68106 [1]  2/15
6:22-cv-01460-MO [1]  1/14
6:22-cv-1460-MO [1]  3/7

8
8188 [1]  2/22

9
97124 [1]  2/13
97201 [1]  2/10
97204 [1]  2/21
97205 [1]  2/5
97268 [1]  2/16

A
abetting [1]  20/2
able [5]  11/21 11/21 12/13 27/8 27/13
about [27]  3/25 4/14 5/21 6/1 6/10 8/9 8/25 9/17 14/7 14/14 16/23 17/2 17/8 19/17 21/5 22/14 22/15 23/4 25/11 25/12 25/21 25/22 27/23 28/1 29/4 29/5 29/19
above [1]  33/6
above-entitled [1]  33/6
absence [1]  14/16
absent [2]  6/21 19/8
absolutely [2]  20/21 29/1
accept [3]  13/5 21/3 21/22
accomplishing [1]  23/9
achievable [1]  26/10
acknowledged [2]  8/18 9/19
across [2]  8/6 22/4
action [2]  19/19 20/8
actions [1]  8/1
active [1]  19/24
actually [3]  19/6 21/20 26/4
add [4]  11/1 11/8 19/15 23/22
additional [1]  26/6
addressing [1]  26/12
admitted [1]  9/13
adopting [1]  8/24
adult [2]  14/18 17/10
advance [2]  6/4 6/7
ADVOCACY [1]  1/3 3/5
after [4]  15/22 17/16 30/3 31/1
afternoon [1]  3/9
again [8]  6/3 6/12 7/12 7/16 8/18 9/22 9/23 23/4
against [3]  19/19 22/21 29/18
agency [4]  12/20 21/7 21/11 25/6
ago [1]  15/10
agree [4]  8/17 21/19 26/20 26/21
aid [4]  11/13 11/19 11/21 12/18
aiding [1]  20/2
air [1]  24/25
al [7]  1/3 1/6 1/8 1/11 1/13 3/6 3/6
all [26]  3/19 3/23 6/12 7/22 8/8 10/16 10/25 11/4 11/11 11/13 12/4 13/13 14/5 16/12 18/16 19/13 20/16 23/13 24/12 25/5 29/2 29/16 29/17 30/8 32/3 32/5
ALLEN [1]  1/16
allow [3]  6/13 12/18 27/21
allowing [1]  19/10
already [2]  28/5 28/8
also [11]  2/18 3/18 5/8 13/6 18/4 20/24 21/16 25/11 25/12 25/18 31/13
alternative [1]  22/25
although [3]  5/10 9/2 21/18
always [4]  4/21 18/10 18/24 20/6
am [3]  6/5 24/8 30/8
amend [3]  6/8 6/11 6/14
amended [9]  6/13 6/16 6/21 17/3 18/7 18/12 21/9 21/17 21/20

amending [2]  28/15 30/5
amendment [7]  19/7 24/10 24/13 24/24 25/12 25/22 25/24
amendments [3]  19/2 26/6 30/23
amends [1]  18/21
amici [2]  2/14 3/15
amicus [2]  2/11 30/2
another [1]  21/7
answer [9]  6/18 10/20 10/20 23/19 24/20 25/1 25/8 29/15 29/24
any [12]  5/20 5/22 9/22 19/23 22/4 22/6 23/19 23/24 24/5 25/13 26/6 28/16
anybody [1]  5/20
anymore [1]  17/21
anyone [3]  12/5 24/5 24/5
anything [8]  4/14 9/10 10/9 11/8 14/15 19/14 19/25 31/18
apart [1]  27/15
apparently [1]  29/8
appeal [2]  26/25 31/15
APPEARANCES [1]  2/2
application [1]  27/24
applied [1]  28/6
appreciate [6]  4/21 4/22 7/22 8/5 25/25 30/1
appropriate [1]  31/7
approved [1]  17/15
April [3]  31/4 31/10 33/9
April 25th [1]  31/10
are [34]
arguing [1]  20/23
argument [5]  1/20 3/5 21/14 25/16 25/16
arisen [1]  18/20
around [2]  30/15 31/5
arrive [1]  5/12
arrives [1]  24/16
as [15]  4/8 6/1 6/10 8/24 8/24 11/12 14/13 19/11 25/11 27/20 27/20 28/18 29/17 30/2 31/5
aside [2]  9/24 22/20
ask [3]  16/1 22/1 22/23
asking [4]  8/10 10/18 10/19 23/6
aspect [1]  19/3
assist [4]  11/13 11/19 11/21 12/18
assistance [1]  32/3
assumed [1]  12/4
attached [1]  18/14
attorney [2]  17/9 17/12
attorneys [1]  14/13
audio [1]  3/20
auspices [1]  4/15
authority [7]  8/1 12/15 12/16 15/4 15/8 18/4 25/2
authorization [1]  18/12
authorized [1]  15/14
available [1]  22/25
Ave [1]  2/21
Avenue [1]  2/5
aware [1]  17/7
away [1]  29/5
awkward [1]  7/23

B
back [9]  6/17 9/18 10/3 13/5 15/24

**B**

back... [4]  16/24 20/19 25/17 27/18
bad [1]  29/22
ball [2]  6/4 6/8
base [1]  16/17
basis [1]  28/5
be [51]
because [11]  6/6 6/19 11/17 13/7 13/14
16/22 19/20 20/5 21/3 29/6 29/14
Beckerman [2]  26/13 30/7
been [20]  4/5 13/5 13/14 15/15 15/23
16/4 17/1 17/17 18/17 18/24 19/21 19/22
20/8 20/11 22/3 23/21 28/12 28/18 30/11
31/5
before [5]  1/22 5/24 23/12 27/14 29/11
behalf [1]  3/17
being [12]  3/19 6/1 7/17 8/6 8/7 10/2
18/2 18/2 18/3 21/10 24/21 29/17
belief [1]  6/19
believe [8]  6/6 7/2 9/22 13/9 16/9 16/10
19/21 26/24
below [1]  33/4
besides [1]  20/15
best [1]  6/7
better [4]  14/3 14/4 17/11 17/24
between [4]  7/23 18/19 18/19 20/15
big [2]  13/13 24/18
bind [2]  7/20 10/24
bit [1]  17/8
block [1]  29/6
BOBBY [1]  1/6
Bonita [3]  2/20 33/9 33/10
both [3]  16/12 19/7 26/5
BOWMAN [2]  1/8 27/1
Box [2]  2/12 2/15
brief [4]  19/6 19/17 19/21 27/3
briefing [11]  7/3 9/19 12/12 12/17 12/25
14/9 25/25 26/6 31/6 31/11 31/14
briefly [1]  11/10
bring [1]  10/3 16/24

**C**

call [1]  26/11
can [25]  5/24 6/3 6/7 7/22 8/5 8/13 8/15
16/10 17/23 20/14 20/23 20/23 21/24
22/1 22/13 22/17 22/18 23/19 24/18 25/4
26/18 27/4 27/7 31/9 31/14
can't [4]  11/16 15/19 21/22 21/23
care [2]  25/18 26/11
careful [1]  21/5
Carla [2]  2/8 3/13
case [11]  1/4 1/9 1/14 3/5 3/6 14/11
16/19 17/9 19/25 24/3 25/14
cases [2]  8/6 27/1
cause [1]  33/6
CENTER [2]  1/3 3/5
certain [5]  4/4 4/10 4/25 19/3 24/20
certainly [2]  21/14 23/11
certified [1]  33/7
certify [1]  33/4
challenging [1]  8/1
change [1]  31/6
changed [2]  17/1 18/17
charged [1]  15/1
charges [1]  15/1

**C** (continued)

check [1]  16/10
choices [3]  4/23 25/17 25/18
choosing [1]  7/23
circuit [12]  3/15 14/17 14/19 15/4 15/24
16/9 16/24 17/2 18/5 18/20 18/21 25/15
circumstance [1]  20/14
circumstances [2]  17/2 20/8
cite [2]  7/3 19/6
clarifying [1]  30/15
clarity [1]  11/3 30/18
Clause [6]  12/1 18/19 27/24 28/9 29/19
29/23
clean [1]  29/24
clear [10]  4/21 6/9 6/9 6/9 8/2 11/4
11/23 24/4 27/22 28/8
clearer [4]  5/25 6/22 27/23 28/1
clearly [2]  19/22 24/6
client [5]  21/1 21/13 28/13 29/18 29/24
client's [2]  21/16 29/20
clients [5]  28/11 28/14 28/23 29/21
29/23
clients' [1]  28/12
clock [1]  6/12
close [2]  23/17 30/24
closer [1]  23/22
come [9]  4/14 4/19 5/15 5/21 8/12 10/10
12/5 24/21 29/20
coming [1]  23/12
commands [2]  6/15 10/10
comment [1]  13/25
commitment [10]  18/4 18/11 18/16
18/21 21/9 21/17 22/6 22/6 25/19 27/11
commits [1]  14/18
committed [3]  6/5 11/19 12/23
committing [15]  4/18 5/16 6/11 7/21
7/24 15/6 15/7 17/1 17/3 19/9 19/9 24/22
24/23 27/9 27/12
community [3]  17/17 20/19 25/18
Compared [1]  13/10
competency [2]  4/5 22/12
competing [4]  20/15 28/10 29/18 29/21
compliance [3]  6/21 7/24 8/3
complied [1]  6/22
comply [6]  6/15 7/21 8/2 10/24 11/24
11/25
complying [1]  7/14
concerned [1]  14/7
concerning [1]  7/25
concerns [1]  23/19
concert [1]  19/24
concluded [1]  32/6
conduct [1]  7/17
conducted [1]  18/3
confer [1]  26/18
confident [1]  4/15
conflicting [1]  20/16
conformed [1]  33/7
consequences [1]  6/6
consideration [1]  30/9
Constitution [1]  6/7
contemplated [2]  4/24 19/11
contemplates [2]  4/9 24/16
contempt [7]  5/18 7/18 7/19 9/2 9/3 9/3
24/5
contention [1]  20/21

**C** (continued)

contest [2]  18/18 18/19
continue [1]  7/20
contrary [1]  20/20
control [2]  13/6 13/7
Cooper [7]  2/4 3/10 6/25 23/25 26/8
28/18 31/18
Cooper's [1]  30/11
coordination [1]  26/11
correct [7]  10/11 10/23 11/15 12/8 13/9
26/16 33/5
correctly [1]  5/13
could [9]  7/17 12/9 12/22 20/5 20/17
20/18 20/24 21/6 25/18
Counsel [2]  2/12 3/8
counties [2]  4/22 14/24
county [44]
county's [1]  24/23
couple [2]  16/16 31/1
coupled [2]  10/14 10/16
court [56]
court's [9]  7/8 7/21 7/21 7/24 8/1 8/7
11/24 12/1 15/13
Courthouse [1]  2/20
courts [5]  5/7 7/5 7/25 10/17 29/6
create [1]  27/20
criminal [1]  17/12
criteria [1]  29/4
critical [1]  26/14
CRR [2]  2/20 33/10
CSR [2]  2/20 33/10
current [2]  6/22 19/10
currently [7]  4/11 5/8 6/9 6/10 9/13
12/17 30/22
custody [4]  5/12 14/18 17/10 22/7
cv [6]  1/4 1/9 1/14 3/5 3/6 3/7

**D**

DA [1]  18/25
dangerousness [1]  25/19
date [4]  30/24 31/9 31/11 33/10
dates [1]  26/15
day [1]  29/20
days [1]  4/11
Debra [1]  2/18
decide [2]  4/20 21/21
declaration [4]  7/7 16/17 17/19 18/15
declining [1]  11/17
defendant [4]  1/17 3/13 11/21 19/8
defendant's [1]  19/12
defendants [4]  1/7 1/12 2/7 3/14
defense [1]  17/12
degree [1]  12/3
DELORES [1]  1/11
demands [1]  29/18
deny [2]  22/23 24/7
Department [3]  2/8 12/21 12/22
described [2]  11/12 30/24
despite [1]  6/5
detailing [1]  19/11
detention [2]  21/4 21/4
did [8]  7/8 9/25 9/25 11/15 12/4 16/6
16/9 22/13
didn't [1]  16/7
different [3]  17/8 19/5 29/16
differently [1]  28/6

**D**

directed [1]  14/12
direction [1]  11/3
directly [1]  8/14
director [1]  5/9
DISABILITY [3]  2/3 2/4 3/11
disallow [2]  18/21 19/4
discharge [11]  4/4 4/12 5/10 5/11 6/11
 8/12 18/12 21/21 21/21 22/5 29/4
discharged [12]  5/1 5/16 5/22 9/15
 11/17 12/6 15/15 15/23 16/4 17/18 18/2
 24/22
discharges [1]  11/13
discount [1]  9/23
discussion [1]  11/9
disqualifies [1]  24/3
district [5]  1/1 1/2 1/23 2/20 17/9
Division [1]  2/9
do [53]
documentation [1]  30/17
does [11]  6/23 8/3 8/5 8/10 10/17 12/18
 12/21 15/4 24/25 26/1 29/24
doesn't [11]  4/14 5/20 5/20 17/6 20/2
 22/20 24/15 25/4 27/21 28/9 30/21
doing [4]  5/18 9/9 16/20 24/7
DOJ [1]  14/20
don't [20]  5/10 6/18 7/2 8/21 8/23 9/21
 13/6 20/3 21/2 21/18 21/18 24/19 26/24
 27/10 28/17 29/6 29/8 29/12 30/20 30/22
done [2]  19/25 24/6
down [3]  5/1 11/18 28/8
Dr [1]  2/18
Dr. [1]  3/20
Dr. Pinals [1]  3/20
during [1]  26/13

**E**

each [1]  19/5
earlier [1]  29/19
easier [3]  13/21 30/20 30/20
easy [1]  27/2
effectuate [1]  25/9
either [4]  17/6 20/18 24/19 26/25
else [3]  19/14 25/4 31/18
Emily [2]  2/4 3/10
end [1]  7/12
enforcement [4]  4/17 21/7 21/11 25/6
engaged [1]  10/25
enjoined [1]  20/5
enough [3]  4/5 24/4 30/17
enter [1]  19/19
entered [2]  14/11 17/15
entire [2]  10/13 20/24
entities [3]  11/5 14/12 30/10
entitled [1]  33/6
entity [2]  5/25 19/22
et [7]  1/3 1/6 1/8 1/11 1/13 3/5 3/6
even [4]  4/8 16/25 20/10 21/6
everyone [1]  10/20
Exactly [4]  15/9 17/13 18/6 18/9
example [3]  5/21 9/5 30/22
exceeded [1]  9/13
execute [1]  7/5
exhaust [1]  23/11
exhausted [3]  21/25 22/16 23/5

exhaustion [1]  23/7
existing [1]  22/5
explain [1]  4/1
explanation [1]  6/24
explore [1]  28/2
explored [1]  23/12
extent [1]  27/7
extraordinary [2]  19/20 22/20

**F**

face [1]  29/21
facility [3]  13/15 20/25 21/12
fact [6]  8/3 10/7 10/19 11/15 16/13
 19/24
facts [2]  4/2 30/22
factual [1]  16/16
failing [2]  9/4 9/6
fails [1]  5/17 9/9
failure [2]  23/8 23/8
fairly [1]  24/17
familiar [2]  4/2 12/3
far [1]  23/21
fashion [2]  20/12 22/24
fault [1]  29/14
federal [4]  8/4 10/17 19/25 23/12
feel [6]  3/25 11/3 23/21 24/3 26/9 29/7
feeling [1]  29/4
filed [2]  17/9 19/5
fill [1]  24/11
filling [2]  11/11 11/22
fills [1]  24/11
find [4]  8/11 9/4 20/11 24/4
finding [1]  28/5
finds [1]  27/13
fine [1]  13/22
finish [1]  31/1
first [12]  11/25 13/24 14/5 14/10 15/5
 15/17 17/20 20/16 26/9 28/12 29/5 30/15
fitness [1]  19/12
fold: [1]  5/14
folded [2]  25/22 30/9
folks [1]  10/10
follow [2]  17/23 23/3
followed [1]  11/13
following [1]  17/16
footing [1]  6/20
force [1]  20/24
foregoing [1]  33/4
foresee [1]  5/10
form [2]  14/20 18/14
forth [1]  9/14
forward [1]  6/4 27/20 29/25 31/16
found [1]  21/7
FR [1]  19/20
FRCP [3]  20/1 20/3 20/11
free [1]  3/25
front [1]  19/3 24/9
fundamental [2]  8/5 28/12
further [1]  12/17 25/25 31/12
future [1]  6/18

**G**

galactic [1]  21/10
gap [10]  4/9 5/19 7/2 9/22 11/11 11/22
 24/2 24/11 24/11 30/24

gap-filling [1]  11/22
Garza [6]  2/14 2/15 3/15 23/14 28/11
 31/24
gave [1]  4/3
geared [1]  30/4
general [1]  14/15
get [9]  4/15 4/19 5/6 5/21 7/8 10/10
 22/19 24/21 28/17
gets [3]  22/8 22/12 25/22
getting [1]  23/17
give [2]  3/24 12/14
given [1]  21/8
gives [2]  15/7 29/24
giving [1]  14/6
go [4]  8/10 9/18 12/22 16/24
goals [1]  23/9
goes [2]  22/7 22/12
going [7]  6/14 14/1 20/6 25/17 28/18
 29/5 30/8
gone [1]  28/7
good [3]  3/9 8/22 29/22
got [1]  9/4
granting [1]  27/17
great [1]  4/23
Grove [1]  2/16
guess [12]  4/11 8/4 8/10 10/8 10/12
 13/24 14/10 19/16 22/23 28/14 29/3 30/3
guideline [1]  15/21

**H**

had [12]  8/8 10/21 15/15 15/22 15/23
 16/3 16/3 17/15 17/15 17/17 24/4 24/21
handed [1]  11/1
happen [5]  5/23 6/4 8/9 20/15 21/6
happening [2]  5/4 5/5
happy [2]  12/16 12/25
has [16]  4/5 4/5 4/8 13/14 14/16 16/18
 18/17 18/20 18/24 22/3 25/1 28/6 28/12
 29/9 30/11 31/4
hasn't [3]  16/15 17/1 22/15
hate [1]  14/2
have [31]  4/7 4/20 4/25 7/11 8/22 9/13
 10/18 10/19 12/4 13/5 13/7 15/2 16/22
 19/3 19/20 19/22 20/11 20/24 20/25 21/3
 22/12 22/16 23/20 23/22 24/6 24/25
 25/17 27/23 29/4 29/12 31/4
haven't [7]  12/24 19/25 21/25 22/14
 22/15 23/5 23/11
having [1]  11/18
He's [1]  17/20
HEALTH [1]  1/13
hearing [3]  4/3 8/25 31/12
hearts [1]  16/8
help [1]  8/15
helpful [3]  11/11 11/23 23/21
her [1]  4/15
here [13]  3/4 3/17 3/19 3/20 11/24 14/13
 14/14 17/2 23/19 24/9 27/24 28/10 30/10
him [1]  4/15
his [2]  7/7 17/19
hold [1]  9/3
Honor [23]  3/9 3/22 7/1 8/13 8/17 9/12
 9/16 10/14 11/10 13/19 17/13 20/10
 23/15 23/18 24/1 26/9 30/12 31/3 31/13
 31/19 31/21 31/23 32/2

**H**

**HONORABLE [1]** 1/22
**hospital [17]** 4/12 7/12 9/13 9/15 11/16 11/24 12/15 14/19 14/21 17/10 17/18 17/21 19/23 20/16 26/23 27/8 27/12
**how [4]** 8/5 15/19 26/5 27/25

**I**

**I'll [12]** 6/25 13/18 24/20 25/25 26/8 26/11 28/11 30/7 30/24 31/11 31/12 31/16
**I'm [25]** 3/17 4/15 4/21 6/1 6/20 7/9 8/10 9/8 9/23 10/18 10/19 12/3 14/1 14/1 17/7 23/4 23/6 23/19 24/18 25/7 27/11 28/4 28/8 28/13 30/7
**I've [5]** 4/1 9/4 28/5 30/24 31/2
**idea [2]** 5/17 31/4
**identical [1]** 19/7
**identified [1]** 31/5
**imagine [1]** 31/3
**immediately [1]** 17/14
**implementation [2]** 6/4 6/8
**implicit [1]** 10/12
**important [2]** 29/14 29/16
**impose [1]** 26/2
**imposed [1]** 8/19
**impossible [1]** 20/4
**inaccuracies [1]** 16/16
**inaction [2]** 20/1 20/6
**include [3]** 18/4 25/18 25/19
**included [1]** 8/19
**includes [2]** 7/6 18/11
**including [2]** 5/5 8/4
**incorporated [1]** 7/10
**indeed [1]** 7/9
**independent [1]** 30/9
**indicated [3]** 28/19 28/23 29/10
**individual [3]** 14/21 17/17 17/20
**individuals [4]** 7/11 15/23 17/22 20/17
**informally [1]** 5/8
**information [1]** 29/12
**informed [1]** 17/17
**injunction [1]** 11/5
**input [1]** 25/25
**instance [1]** 17/7
**instances [1]** 17/7
**intellectually [1]** 30/20
**interested [1]** 28/23
**interrupt [1]** 14/2
**intrusive [7]** 20/13 20/14 22/19 22/24 23/9 26/2 28/4
**invariably [3]** 18/11 19/4 22/3
**investigating [1]** 12/20
**involuntary [1]** 25/19
**involved [1]** 4/16
**irreconcilable [1]** 29/22
**is [122]**
**isn't [4]** 6/9 10/9 17/19 26/5
**issue [9]** 8/1 19/10 21/2 24/18 28/7 28/21 29/5 29/16 30/11
**issued [1]** 7/15
**issues [2]** 24/12 26/7
**it [67]**
**it's [24]** 5/4 6/6 6/10 6/13 8/22 9/11 9/20 10/12 12/11 18/10 18/12 20/4 22/7 23/21

24/4 24/13 25/8 25/12 25/24 27/14 27/25 30/9 30/19 30/20
**its [3]** 6/6 6/8 18/21

**J**

**jail [8]** 11/20 13/6 13/8 15/8 16/20 17/14 20/19 25/6
**Jane [2]** 2/11 3/17
**JAROD [1]** 1/8
**judge [4]** 1/23 26/13 27/13 30/7
**judges [5]** 2/14 3/16 5/7 5/10 25/15
**judicial [1]** 7/6
**jump [1]** 3/25
**just [30]** 8/22 8/24 10/1 10/6 11/10 11/11 11/12 11/24 13/22 13/24 15/17 17/23 17/24 21/23 22/1 22/7 22/12 23/3 23/8 23/15 23/19 24/17 25/12 25/24 26/22 27/20 27/25 28/21 29/9 29/17
**justice [2]** 2/8 7/5

**K**

**keep [2]** 16/20 17/10
**Keith [3]** 2/14 2/15 3/15
**kept [1]** 10/25
**kind [4]** 4/18 14/10 16/16 22/6
**kindness [1]** 16/7
**know [16]** 6/18 12/12 13/6 16/15 19/1 19/2 21/7 21/19 24/19 25/5 25/16 25/20 28/7 29/11 29/15 30/22
**knowing [1]** 11/25
**knowledge [1]** 18/17

**L**

**language [7]** 9/11 9/17 9/21 18/16 19/7 30/15 31/5
**last [3]** 22/14 23/3 31/4
**later [1]** 9/12
**latter [1]** 23/10
**law [10]** 2/15 4/17 12/2 12/18 19/25 20/21 21/7 21/10 22/16 25/5
**learning [1]** 30/22
**least [7]** 15/11 20/13 22/24 25/14 26/1 28/2 28/4
**leave [1]** 30/7
**leaves [2]** 4/22 5/23
**LEGACY [1]** 1/13
**legal [2]** 2/12 19/22
**legally [2]** 14/22 19/23
**length [1]** 9/14
**less [3]** 20/14 22/19 23/8
**Let [2]** 3/24 16/1
**let's [2]** 9/1 9/2
**Lieutenant [3]** 7/7 7/16 18/15
**like [7]** 11/3 14/15 23/21 24/3 25/20 25/20 29/7
**limitations [1]** 8/19
**limited [1]** 12/16
**listening [1]** 3/20
**literally [1]** 23/7
**litigants [1]** 24/9
**little [1]** 17/8
**logjam [1]** 27/21
**long [2]** 6/24 15/10
**long-winded [1]** 6/24
**look [5]** 7/2 7/6 14/16 22/13 31/16

**looked [2]** 10/7 12/24
**looking [1]** 9/8
**lot [3]** 3/25 20/14 22/18
**loud [1]** 26/4

**M**

**mad [1]** 21/13
**made [1]** 28/5
**main [1]** 27/1
**maintaining [1]** 23/6
**make [7]** 6/9 6/9 8/9 23/3 25/5 25/18 28/1
**makes [3]** 6/21 10/7 26/19
**making [1]** 11/22
**managed [1]** 21/1
**mandamus [2]** 22/18 31/7
**March [3]** 1/16 3/2 9/12
**March 15 [1]** 9/12
**MARION [21]** 2/11 2/12 3/18 4/25 5/3 5/4 5/6 5/9 5/14 5/16 7/7 7/15 10/4 11/19 12/23 13/4 15/15 16/18 17/19 18/3
**Market [1]** 2/9
**matter [3]** 8/24 25/3 32/4
**matters [1]** 28/23
**MATTEUCCI [1]** 1/11
**maxed [1]** 16/3
**may [11]** 6/17 6/18 8/13 19/8 19/9 25/2 26/17 26/18 27/12 29/20 30/12
**maybe [2]** 23/10 30/25
**MCSO [9]** 7/17 8/6 10/10 15/4 15/11 15/14 16/4 18/3 20/5
**me [18]** 3/24 4/16 5/23 9/1 9/3 10/8 10/9 15/12 15/17 16/1 18/1 19/3 21/13 24/4 24/5 24/9 24/19 24/19
**mean [8]** 8/21 12/22 16/22 16/23 22/17 28/9 28/20 30/20
**meaning [2]** 17/11 22/6
**meaningfully [1]** 28/15
**means [5]** 23/9 26/2 28/4 28/9 29/19
**mechanical [3]** 4/9 7/2 9/22
**mediation [6]** 26/13 26/15 28/18 28/21 30/25 31/4
**mediations [2]** 30/2 30/4
**meet [4]** 20/1 20/2 25/14 30/18
**member [1]** 3/6
**mere [2]** 20/1 24/13
**met [5]** 15/23 19/21 19/22 20/3 20/12
**MICHAEL [1]** 1/22
**microphone [2]** 13/20 23/17
**might [4]** 4/8 12/13 23/20 25/18
**mind [4]** 3/25 23/16 27/23 27/23
**mine [2]** 9/4 9/6
**MINK [2]** 1/6 3/6
**minute [1]** 17/23
**miracle [1]** 21/7
**missed [1]** 4/1
**missing [1]** 28/1
**mistaken [1]** 15/12
**MO [6]** 1/4 1/9 1/14 3/5 3/6 3/7
**modified [1]** 7/15
**moment [2]** 9/24 24/15
**Monday [1]** 16/20
**more [6]** 6/15 11/3 11/4 16/25 28/5 30/17
**MOSMAN [1]** 1/22

## M

**most [3]**  6/3 16/19 25/7
**motion [7]**  14/6 16/17 17/9 17/15 17/16 18/24 22/23
**move [1]**  22/17
**moved [1]**  17/17
**Mr [1]**  2/14
**Mr. [5]**  17/8 17/19 23/14 28/11 31/24
**Mr. Garza [3]**  23/14 28/11 31/24
**Mr. Wehr [2]**  17/8 17/19
**Ms [4]**  2/4 2/7 2/8 2/11
**Ms. [15]**  6/25 11/8 11/8 13/18 23/25 26/8 28/18 28/25 29/9 30/11 31/9 31/18 31/20 31/22 32/1
**Ms. Cooper [5]**  6/25 23/25 26/8 28/18 31/18
**Ms. Cooper's [1]**  30/11
**Ms. Potter [2]**  11/8 31/22
**Ms. Scheele [1]**  31/9
**Ms. Scott [3]**  11/8 29/9 31/20
**Ms. Vetto [3]**  13/18 28/25 32/1
**much [5]**  4/22 14/4 26/5 30/19 30/20
**Multnomah [1]**  9/5
**must [3]**  5/21 6/21 11/25
**my [27]**  3/9 3/24 3/25 4/6 6/3 6/18 6/19 6/24 8/4 8/25 9/4 10/7 12/11 15/20 17/5 18/17 19/14 19/21 21/13 24/2 27/4 27/19 27/23 27/23 28/8 28/23 30/3

## N

**name [2]**  3/8 3/9
**narrow [1]**  30/10
**nature [1]**  21/9
**necessary [1]**  31/12
**need [2]**  12/4 29/13
**needed [2]**  11/4 26/5
**needs [2]**  14/18 24/11
**neither [1]**  26/23
**never [1]**  11/21
**new [5]**  6/14 6/15 11/18 27/10 27/14
**next [6]**  4/21 5/23 6/13 8/9 24/17 30/2
**nice [1]**  10/2
**no [22]**  1/4 1/9 1/14 3/5 3/6 4/23 9/12 9/17 11/2 14/23 18/8 20/21 23/23 24/1 25/4 27/23 29/14 31/19 31/21 31/23 31/25 32/2
**No. [1]**  31/14
**No. 3 [1]**  31/14
**nobody [1]**  5/11
**none [3]**  6/19 27/24 29/15
**nonparties [2]**  5/15 14/11
**nonparty [5]**  3/18 5/24 19/19 20/2 22/21
**nontransport [2]**  26/24 31/15
**not [51]**
**note [2]**  11/1 11/2
**noted [1]**  14/13
**notes [1]**  27/9
**nothing [3]**  14/14 14/24 21/22
**notice [5]**  4/10 6/14 7/8 11/4 11/4
**notified [1]**  17/15
**notify [1]**  20/18
**now [6]**  4/25 6/15 6/17 9/16 10/8 24/15
**number [3]**  8/6 16/2 29/7
**numbers [1]**  28/22
**numerous [1]**  11/18

## O

**o0o [1]**  33/2
**Oak [1]**  2/16
**obey [3]**  9/4 9/6 9/9
**object [1]**  22/17
**obligate [1]**  10/2
**obligated [4]**  10/6 21/11 24/16 28/2
**obligation [6]**  9/17 9/20 25/13 26/2 26/22 30/15
**occur [1]**  5/11
**occurred [1]**  5/10
**offense [1]**  12/21
**office [22]**  2/15 3/18 4/18 5/3 5/6 5/21 7/8 7/14 7/23 8/12 9/5 10/24 11/12 12/7 13/4 13/15 14/7 14/16 16/18 17/4 22/7 24/23
**officers [1]**  7/6
**offices [1]**  14/14
**Official [1]**  33/11
**one [17]**  8/10 8/22 10/5 16/18 21/9 23/3 24/10 24/14 24/18 25/2 25/4 25/8 25/24 26/4 28/1 30/23 31/13
**ones [1]**  19/2
**ongoing [1]**  11/22
**only [17]**  4/9 7/15 7/19 8/15 11/15 11/20 14/22 14/24 14/25 15/1 17/6 18/7 18/17 18/20 19/16 20/6 25/8
**open [1]**  30/16
**opinion [1]**  25/21
**opportunity [3]**  6/15 14/6 30/1
**opposed [3]**  6/1 8/24 29/17
**opposes [1]**  14/8
**oral [2]**  1/20 3/4
**order [88]**
**ordered [6]**  10/19 13/5 14/17 16/4 16/13 16/21
**ordering [5]**  8/11 11/19 16/23 24/8 28/4
**orders [22]**  7/5 8/4 8/4 8/20 11/18 11/25 14/20 16/13 17/14 18/4 18/17 20/16 21/9 26/24 26/25 27/10 27/11 28/10 29/8 29/21 29/22 31/15
**OREGON [16]**  1/2 1/3 1/17 2/4 2/4 2/8 3/5 3/11 3/15 7/12 9/13 12/13 12/14 12/17 13/10 14/17
**organizational [1]**  3/10
**original [6]**  17/1 17/3 18/21 27/11 30/14 33/6
**ORS [1]**  19/11
**OSH [12]**  4/4 5/9 5/12 10/3 12/23 15/5 15/8 19/8 22/5 22/8 24/21 25/14
**OSH's [1]**  25/20
**OSP [3]**  12/14 12/18 18/2
**other [10]**  12/9 12/12 16/16 19/5 19/16 20/10 21/24 25/3 26/10 28/7
**otherwise [3]**  10/22 18/13 26/1
**ought [1]**  5/24
**our [5]**  15/16 19/6 20/15 20/19 30/3
**out [9]**  5/22 6/19 16/3 16/7 24/12 24/18 24/19 26/4 26/23
**over [2]**  6/12 13/7
**overarching [1]**  28/5
**overstatement [1]**  23/11
**own [4]**  4/6 5/7 9/19 29/15

## P

**p.m [2]**  3/2 32/6
**P.O [2]**  2/12 2/15
**page [2]**  7/3 19/6
**painful [1]**  6/6
**paragraph [3]**  8/16 9/7 16/3
**part [3]**  13/13 29/13 30/5
**participate [3]**  28/14 30/2 30/2
**participating [1]**  28/24
**participation [1]**  28/16
**particular [7]**  12/24 20/7 20/13 26/11 28/3 28/7 28/20
**particularly [2]**  4/6 16/2
**parties [10]**  4/2 11/4 11/11 24/8 26/12 26/23 26/25 30/10 30/18 31/15
**party [1]**  22/22
**passed [1]**  4/5
**past [1]**  26/15
**path [2]**  27/20 29/24
**patient [3]**  4/12 12/6 22/5
**patients [9]**  9/12 11/14 11/16 11/20 12/15 12/19
**PATRICK [1]**  1/16
**pause [1]**  14/1
**PD [1]**  13/11
**people [14]**  4/4 4/16 4/25 5/15 8/12 8/22 10/3 15/14 16/2 16/24 18/2 18/5 21/10 27/18
**perhaps [4]**  5/17 13/23 15/12 29/21
**period [1]**  4/10
**periods [1]**  4/4
**person [10]**  4/19 5/21 5/25 21/22 24/21 24/21 24/22 25/17 25/21 27/12
**pick [7]**  5/12 8/12 10/3 12/5 12/22 14/21 15/14
**picked [2]**  5/3 16/5
**picking [2]**  17/20 22/9
**piece [1]**  28/20
**Pinals [2]**  2/18 3/20
**pipeline [1]**  11/18
**place [3]**  15/5 21/11 25/14
**placed [1]**  20/18
**plaintiff [2]**  2/3 3/10
**plaintiff's [1]**  26/19
**plaintiffs [12]**  1/4 1/9 1/14 7/1 14/8 14/25 16/17 19/17 22/16 26/23 30/16 31/8
**plan [1]**  26/12
**please [1]**  3/8
**point [12]**  4/16 8/13 8/21 9/24 13/1 20/5 26/22 27/5 27/7 28/16 29/7 29/16
**police [5]**  12/13 12/21 12/22 13/10 20/24
**Portland [4]**  1/17 2/5 2/10 2/21
**position [6]**  7/23 21/16 26/19 28/12 28/14 28/14
**possibilities [2]**  12/10 12/12
**possibility [4]**  5/5 5/8 8/15 28/3
**possible [4]**  20/13 26/22 27/20 28/4
**potentially [2]**  12/13 13/3
**Potter [4]**  2/7 3/14 11/8 31/22
**practice [6]**  8/24 11/13 16/14 18/11 22/1 22/3
**pragmatic [1]**  25/7
**pragmatically [1]**  25/3

**P**

**predischarge [1]** 25/15
**prepared [1]** 14/20
**PRESENT [1]** 2/18
**pressed [2]** 8/23 8/25
**pretrial [2]** 21/4 21/23
**pretty [1]** 24/24
**prior [2]** 8/6 8/8
**prisoners [1]** 15/4
**probably [1]** 5/2
**problem [1]** 11/22
**procedural [1]** 4/8
**proceed [1]** 19/12
**proceedings [1]** 1/21 32/6 33/5
**professional [1]** 25/20
**progress [11]** 17/5 19/4 19/11 20/17
  25/15 27/8 27/10 27/15 29/4 29/9 29/17
**prohibit [2]** 17/4 17/6
**prohibited [1]** 20/8
**prohibiting [1]** 7/16
**promulgating [1]** 4/17
**prong [1]** 20/1
**proposal [1]** 30/14
**proposals [1]** 30/4
**propose [1]** 26/6
**proposed [3]** 24/10 30/15 30/23
**provide [8]** 6/14 12/17 12/25 27/2 27/8
  29/24 30/18 31/14
**provided [1]** 17/5
**providing [2]** 11/6 30/16
**pull [1]** 13/22
**pure [1]** 29/18
**purposes [2]** 28/21 29/20
**pursuant [4]** 4/12 5/2 7/12 18/3
**pursue [1]** 26/22
**put [5]** 7/20 7/23 10/24 11/4 26/15
**puts [1]** 22/21
**putting [1]** 20/15

**Q**

**quash [1]** 22/18
**question [14]** 3/25 8/5 9/1 10/19 12/25
  14/10 22/1 25/2 25/8 27/3 27/23 27/25
  28/25 30/3
**questions [3]** 19/14 23/19 29/14
**quibble [1]** 8/21
**quicker [1]** 30/21
**quickly [2]** 27/4 27/20
**quit [1]** 16/12
**quite [1]** 9/2
**quote [1]** 7/12
**quoting [2]** 7/10 7/16

**R**

**raised [3]** 5/8 19/17 30/11
**Ramsey [1]** 7/17
**Ramsey's [2]** 7/7 18/15
**reach [1]** 20/5
**read [2]** 9/25 10/8
**reading [2]** 17/6 31/16
**really [9]** 4/9 5/20 5/22 5/24 14/8 19/19
  22/20 22/21 25/4
**reason [1]** 22/4
**reasons [1]** 5/5
**receipt [1]** 19/10

**receive [3]** 5/15 14/18 31/11
**received [1]** 16/10
**receiving [1]** 16/13
**recent [1]** 16/19
**recess [2]** 32/4 32/5
**record [2]** 3/8 33/5
**regarding [2]** 26/10 31/6
**rehash [1]** 19/21
**relief [9]** 5/13 14/8 19/20 22/20 22/24
  24/7 26/3 27/18 28/3
**remain [1]** 30/16
**remaining [2]** 11/16 26/7
**remedial [1]** 8/1
**remedies [4]** 22/16 23/6 24/3 26/22
**remedy [2]** 20/12 31/7
**report [7]** 19/5 19/11 25/15 27/10 27/16
  29/4 29/9
**REPORTER [2]** 2/20 33/11
**reports [4]** 14/15 17/5 20/17 29/17
**represent [2]** 3/10 14/13
**represented [1]** 30/10
**request [3]** 23/16 25/14 30/11
**requested [5]** 14/9 24/7 27/18 28/4 31/2
**require [5]** 8/3 22/20 27/10 29/9 30/22
**required [4]** 4/12 6/7 14/22 15/14 15/22
  20/12 29/17
**requirement [4]** 23/7 26/1 26/12 27/15
**requirements [3]** 19/20 20/3 20/11
**requires [7]** 4/4 5/25 7/4 11/5 14/23
  14/25 20/21
**requiring [3]** 5/14 8/2 30/8
**respect [2]** 26/21 28/9
**respectfully [1]** 7/1
**respond [2]** 14/6 23/24
**responsibilities [2]** 6/11 11/23
**responsible [1]** 11/6
**rest [2]** 30/21 31/1
**restoration [4]** 9/14 9/15 14/19 17/18
**restored [2]** 4/5 22/12
**restrain [1]** 5/24
**restraining [2]** 5/14 24/5
**return [4]** 4/19 5/16 11/20 12/23 15/15
  18/5 18/12 18/22 20/5 24/22 27/12
**returned [4]** 5/3 16/5 18/3 19/8
**returning [2]** 13/14 20/6
**returns [2]** 18/2 19/4
**revert [1]** 15/24
**review [4]** 4/6 18/15
**right [24]** 3/21 3/23 6/17 6/17 10/10
  10/22 10/25 13/8 13/13 13/16 15/11
  15/15 15/17 15/18 16/5 16/12 17/16
  19/13 21/1 23/4 23/13 25/8 29/2 30/19
**RIGHTS [3]** 2/3 2/4 3/11
**rise [2]** 4/3 32/5
**risk [1]** 8/7
**RMR [2]** 2/20 33/10
**road [1]** 28/8
**Room [1]** 2/21
**rule [1]** 24/20
**run [1]** 13/15
**running [1]** 6/12

**S**

**S.W [3]** 2/5 2/9 2/21
**safely [1]** 20/18

**said [2]** 19/18 29/19
**Salem [4]** 2/13 12/21 12/22 13/10
**same [3]** 15/6 23/16 28/25
**say [15]** 4/14 10/17 12/21 14/5 15/3
  19/8 20/7 22/9 23/5 24/14 24/15 27/11
  27/11 29/3 29/22
**saying [5]** 9/16 19/24 21/6 21/8 21/14
**says [6]** 4/10 9/12 17/19 20/1 21/20
  21/22
**scheduled [1]** 30/25
**Scheele [1]** 31/9
**scheme [1]** 4/23
**Scott [5]** 2/8 3/13 11/8 29/9 31/20
**second [5]** 20/1 20/20 25/11 27/7 30/25
**section [1]** 24/16
**see [3]** 5/19 9/6 28/15
**seeing [1]** 27/9
**seek [1]** 26/3
**seeking [1]** 15/2
**send [1]** 25/17
**SENIOR [1]** 1/23
**sense [3]** 8/9 25/5 26/19
**separate [4]** 22/11 27/15 30/6 30/9
**September [16]** 4/3 4/7 5/2 6/5 6/20 7/9
  7/13 8/11 8/14 9/10 10/1 14/12 15/13
  16/2 24/10 25/13
**September 1 [11]** 4/3 4/7 5/2 6/5 6/20
  8/11 9/10 10/1 15/13 16/2 24/10
**September 1st [1]** 14/12
**September 2022 [2]** 7/9 7/13
**serious [1]** 5/6
**services [1]** 14/19
**session [1]** 30/25
**set [8]** 9/14 9/24 10/5 12/9 22/19 29/18
  30/24 31/12
**setting [1]** 12/5
**shall [3]** 9/14 11/20 21/20
**sheets [1]** 7/11
**Sheila [2]** 2/7 3/14
**sheriff [6]** 5/15 7/20 9/18 15/8 20/15
  24/25
**sheriff's [24]** 3/18 4/18 5/3 5/6 5/20 7/8
  7/14 7/22 8/12 9/5 9/20 10/23 11/12 12/7
  13/4 13/15 14/7 14/14 14/16 16/18 17/4
  22/7 24/23 25/6
**sheriffs [6]** 4/7 7/5 7/9 8/18 11/7 14/24
**shortened [2]** 7/10 15/22
**shot [1]** 24/13
**should [10]** 19/18 19/18 19/19 24/6
  24/14 25/13 27/8 28/13 29/21 31/15
**show [3]** 10/3 25/6 25/9
**showed [1]** 21/10
**shows [1]** 23/8
**Shumway [3]** 2/20 33/9 33/10
**side [2]** 10/5 27/6
**signature [2]** 33/7 33/7
**signing [1]** 33/4
**silent [4]** 6/1 6/10 20/22 25/2
**simple [2]** 24/17 24/24
**simply [4]** 11/2 19/4 20/6 27/10
**since [1]** 5/12
**situation [5]** 5/11 13/4 22/22 26/3 29/23
**slew [1]** 27/9
**so [47]**
**sole [1]** 13/7

**S**

**solid** [1]  6/20
**solution** [1]  24/13
**some** [11]  4/17 5/17 13/1 21/7 21/24
  23/7 25/5 26/2 29/3 29/8 29/14
**somebody** [3]  5/12 9/3 25/7
**somehow** [1]  20/23
**someone** [2]  12/22 13/5
**something** [10]  4/1 8/23 10/18 11/1
  12/3 23/22 24/6 25/19 25/21 26/12
**sometimes** [4]  4/22 6/6 8/22 18/25
**somewhat** [1]  28/6
**soon** [1]  4/11
**sorry** [1]  14/1
**sort** [10]  4/8 4/23 5/14 6/24 8/8 12/2
  23/7 24/12 24/18 24/19
**sought** [2]  5/13 24/3
**speak** [2]  15/19 18/18
**specific** [2]  6/15 16/23
**specifically** [4]  14/12 16/25 17/3 23/22
**spell** [1]  5/22
**spelled** [1]  6/19
**sponte** [1]  18/25
**standard** [1]  18/16
**stands** [1]  25/21
**start** [6]  6/12 6/25 9/1 9/2 13/18 26/8
**state** [33]  3/8 7/3 7/4 7/12 7/18 8/7 9/13
  9/18 10/14 10/16 10/17 11/25 12/2 12/13
  12/15 13/10 14/19 14/23 17/10 17/14
  17/18 17/20 19/23 20/16 20/21 22/15
  22/16 22/17 23/5 26/3 26/22 27/13 31/15
**State's** [1]  20/20
**STATES** [3]  1/1 1/23 2/20
**statute** [9]  7/3 7/4 9/19 9/21 10/15
  10/16 10/17 14/23 20/2
**statutes** [2]  12/14 20/22
**statutory** [2]  12/16 25/2
**step** [1]  30/8
**still** [4]  7/25 13/5 20/12 21/3
**stone** [1]  12/9
**stopped** [4]  7/14 16/14 16/15 16/19
**strange** [1]  25/5
**Street** [1]  2/9
**structure** [1]  10/12
**struggle** [1]  9/6
**sua** [1]  18/25
**subject** [1]  6/2
**submit** [2]  24/9 30/23
**subpart** [1]  28/3
**subsection** [1]  7/4
**successful** [1]  31/5
**such** [1]  16/13
**sufficient** [1]  26/5
**suggest** [2]  19/3 31/9
**suggested** [1]  12/12
**Suite** [1]  2/5
**supplemental** [1]  12/25
**supply** [1]  26/6
**supposed** [4]  5/1 5/2 5/22 25/9
**Supremacy** [6]  12/1 18/19 27/24 28/9
  29/19 29/23
**sure** [3]  4/21 23/4 28/13
**susceptible** [1]  24/12
**SYSTEM** [1]  1/13

**T**

**take** [5]  9/20 11/3 19/18 20/8 29/5
**talk** [2]  19/17 28/11
**talked** [3]  17/8 22/14 22/15
**talking** [1]  17/2
**talks** [1]  14/14
**task** [1]  30/21
**telephone** [1]  2/18
**tell** [6]  5/20 5/20 15/12 15/17 24/19
  24/19
**telling** [1]  18/1
**tentative** [5]  3/24 4/6 5/23 6/3 6/25
**Tenth** [1]  2/1
**terms** [1]  18/18
**testimony** [1]  7/7
**textual** [9]  10/9 10/20 24/13 24/24 25/12
  25/24 26/6 30/23 31/6
**than** [6]  6/22 9/12 16/25 28/7 30/17
  30/21
**thank** [19]  3/12 3/19 3/23 11/7 13/2
  13/17 13/19 14/4 14/5 19/13 23/1 23/2
  23/13 23/15 23/18 31/19 31/21 31/23
  32/3
**that** [227]
**that's** [32]  4/21 4/23 5/4 6/24 8/25 10/11
  10/23 12/3 12/8 13/9 13/13 13/22 14/20
  15/17 16/25 20/13 21/2 24/17 25/8 25/21
  27/18 29/1 29/5 29/9 29/13 29/15 29/16
  29/16 29/22 29/22 30/17 30/19
**their** [13]  5/7 7/10 8/19 9/15 9/19 12/15
  14/9 16/3 16/8 19/17 22/16 23/5 27/1
**them** [29]  4/19 5/16 6/1 8/19 10/3 10/3
  10/7 10/19 11/18 12/23 14/20 14/21
  14/25 15/1 15/15 16/5 16/18 16/23 19/3
  19/24 20/25 21/3 21/11 21/23 22/8 22/9
  22/12 23/12 24/12
**then** [23]  4/11 4/20 6/12 9/4 9/21 10/5
  10/7 14/21 16/12 17/16 17/18 18/7 21/21
  22/1 24/16 24/23 25/7 25/20 27/2 27/23
  30/24 31/6 31/12
**theory** [1]  20/4
**there** [28]  4/10 5/11 5/17 9/2 10/9 11/1
  11/15 12/11 14/1 14/13 14/23 15/10 16/1
  16/16 17/7 17/22 18/1 18/8 19/25 21/22
  22/10 22/18 23/7 24/11 26/24 28/16 29/3
  29/20
**there's** [14]  3/24 7/2 9/17 9/22 17/6
  20/14 20/21 21/14 21/22 21/24 22/4 25/1
  25/4 29/14
**thereafter** [1]  17/14
**therefore** [1]  15/14
**these** [8]  7/10 10/10 18/16 20/7 20/17
  20/17 21/9 26/24
**they** [52]
**they're** [10]  13/14 15/1 15/2 16/21 19/7
  19/24 20/22 21/3 22/9 22/11
**they've** [1]  20/3
**thing** [12]  4/9 13/24 14/22 14/24 14/25
  15/1 19/16 20/10 20/20 22/9 25/7 27/14
**things** [4]  20/14 21/24 22/18 27/25
**think** [44]
**thinking** [4]  23/4 25/11 25/12 26/4
**third** [3]  2/21 17/7 25/24
**this** [72]
**those** [6]  15/23 18/7 19/2 19/14 26/15

**though** [1]  12/3
26/25
**thought** [3]  10/21 23/3 27/22
**thoughts** [2]  3/24 6/25
**threat** [1]  7/19
**threatened** [1]  10/22
**three** [5]  5/1 5/15 24/12 28/22 31/6
**through** [4]  7/19 16/9 26/4 29/14
**tied** [1]  19/23
**time** [12]  4/4 4/5 11/16 15/10 16/3 22/4
  24/10 26/5 26/5 27/19 29/13 30/18
**timelines** [2]  7/10 15/22
**timely** [2]  8/2 11/5
**times** [2]  15/21 15/23
**today** [14]  3/4 4/3 6/4 14/6 14/6 21/6 21/8
  24/7 24/9 24/18 27/14 27/18 29/12 30/10
  32/4
**today's** [1]  28/21
**told** [2]  10/8 10/9
**too** [2]  20/23 29/22
**toward** [1]  30/4
**towards** [1]  6/8
**tracking** [1]  7/11
**transcript** [3]  1/21 33/5 33/6
**transfer** [1]  17/4
**transport** [27]  7/16 7/17 8/2 8/20 9/18
  11/5 11/6 11/17 12/14 12/15 12/18 14/21
  14/23 15/3 15/4 15/8 15/25 16/20 18/8
  19/10 20/22 20/25 21/8 21/23 29/6 29/7
  30/16
**transported** [2]  7/11 21/10
**transporting** [1]  16/19
**transports** [1]  14/15
**treatment** [4]  15/20 15/21 15/21 15/22
**Trial** [1]  2/9
**trouble** [2]  5/7 5/9
**true** [1]  29/1
**truth** [1]  24/15
**try** [1]  22/19
**trying** [1]  9/23
**twice** [1]  18/17
**two** [14]  5/14 11/15 17/1 17/7 17/22
  21/10 25/1 26/10 26/15 27/25 28/2 28/11
  28/22 29/7
**two-fold:  a** [1]  5/14
**typically** [3]  4/18 12/5 13/14

**U**

**unable** [2]  24/18 27/13
**unavoidable** [1]  27/19
**under** [19]  4/15 10/2 12/1 12/6 14/20
  15/3 15/6 15/11 15/12 16/2 20/3 20/7
  21/3 21/23 22/5 22/10 22/16 24/22 30/14
**underlying** [2]  4/2 12/21
**understand** [5]  5/13 9/16 17/11 17/24
  27/17
**understanding** [9]  4/16 8/8 8/23 10/6
  12/11 15/11 15/13 15/20 30/4
**understood** [4]  10/1 10/2 10/21 15/19
**undertake** [1]  30/21
**unfortunate** [1]  27/19
**UNITED** [3]  1/1 1/23 2/20
**unless** [4]  17/4 18/12 22/10 23/22
**unopposed** [2]  17/9 17/11
**untenable** [2]  22/21 22/22

## U

**until [5]**  8/23 10/21 17/4 19/4 27/13
**up [21]**  5/3 5/12 8/12 10/3 10/3 11/16
12/6 12/22 14/22 15/14 16/5 17/20 17/23
21/10 22/9 23/3 24/24 25/6 25/9 27/18
31/1
**updated [1]**  17/5
**upon [7]**  4/6 6/11 8/12 11/20 18/12
18/24 19/10
**us [4]**  14/6 14/10 20/21 25/17
**use [2]**  23/8 26/1

## V

**vacate [1]**  15/2
**vacated [2]**  28/13 28/15
**variety [1]**  5/5
**vehicle [1]**  26/25
**version [1]**  6/22
**versus [1]**  3/6
**very [8]**  4/22 7/23 8/2 12/16 14/7 15/10
26/2 29/16
**Vetto [5]**  2/11 3/17 13/18 28/25 32/1
**view [5]**  4/6 5/23 6/3 24/2 27/19
**views [1]**  28/8
**violate [1]**  21/17
**violation [1]**  8/7

## W

**want [14]**  9/1 9/3 9/24 11/1 11/15 13/24
14/5 19/14 19/16 21/5 23/3 23/22 27/22
28/17
**wants [1]**  11/24
**was [26]**  4/17 4/23 5/11 7/19 7/20 7/23
9/25 10/24 12/5 12/12 15/10 15/11 15/12
15/12 15/13 15/20 16/20 17/7 17/8 17/10
17/14 22/10 23/11 24/23 27/4 30/3
**way [7]**  5/22 10/1 10/21 16/1 19/23 23/4
23/24
**ways [1]**  25/1
**we [38]**
**we'll [2]**  27/20 32/4
**we're [5]**  5/1 9/2 17/2 19/22 19/23
**we've [2]**  20/8 28/7
**weeds [1]**  12/2
**week [9]**  26/4 26/10 27/6 30/3 30/3
30/17 30/23 31/4 31/13
**week's [1]**  24/10
**weeks [1]**  31/1
**Wehr [2]**  17/8 17/19
**well [8]**  9/1 10/20 17/19 21/5 28/17
28/22 29/8 29/20
**went [2]**  16/4 17/3
**were [11]**  5/7 10/6 10/21 11/1 16/1
16/13 17/16 20/11 24/20 27/22 30/4
**what [45]**
**what's [2]**  24/24 28/17
**whatever [1]**  6/13
**whatsoever [1]**  27/24
**when [13]**  7/15 14/17 15/3 16/12 16/20
16/25 18/7 18/20 22/4 23/5 24/4 24/15
30/25
**where [12]**  4/1 5/11 6/17 8/5 8/10 8/14
9/5 9/18 15/11 20/5 20/8 25/21
**whether [4]**  25/22 30/8 31/6 31/14
**which [10]**  6/5 6/10 7/6 8/22 10/24 13/4

13/6 25/2 25/25 31/14
**while [2]**  7/22 10/25
**who [16]**  4/14 5/1 9/13 11/16 14/15
14/18 15/14 16/2 22/5 22/7 22/12 24/4
24/16 24/21 25/8 28/1
**whole [3]**  14/7 27/9 29/5
**whom [1]**  16/4
**whose [1]**  11/16
**why [2]**  13/13 29/13
**will [6]**  4/10 4/14 27/2 27/18 29/6 31/4
**willing [2]**  24/8 25/7
**winded [1]**  6/24
**wish [3]**  11/8 23/24 28/15
**within [2]**  30/17 31/13
**without [2]**  7/17 33/6
**won't [1]**  19/21
**Wonderful [1]**  31/16
**words [1]**  14/25
**work [1]**  27/20
**worked [2]**  8/6 8/7
**worth [3]**  24/13 25/11 25/12
**would [39]**
**wouldn't [1]**  23/16
**writ [1]**  31/7
**write [1]**  24/24
**written [1]**  4/7

## Y

**yeah [1]**  21/15
**years [1]**  22/4
**yes [12]**  3/22 8/17 10/14 13/12 17/25
18/23 20/9 22/2 22/10 29/1 30/13 31/3
**yet [2]**  9/2 29/15
**you [76]**
**you'll [1]**  15/12
**you're [3]**  3/20 9/16 25/16
**you've [4]**  10/8 10/8 10/9 31/5
**your [54]**