JANE E. VETTO, OSB 914564
Marion County Legal Counsel
jvetto@co.marion.or.us
555 Court Street N.E.
P.O. Box 14500
Salem, OR 97309
Telephone No.: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Marion County

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No. 3:02-cv-00339-MO (Lead Case) Case No. 3:21-cv-01637-MO (Member Case) Case No. 6:22-cv-01460-MO (Member Case) |
| Plaintiffs, | |
| v. | MEMORANDUM OF LAW REGARDING AMENDMENT TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS |
| DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital | |
| Defendants, | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES, | |
| Intervenors. | |

JAROD BOWMAN and
JOSHAWN DOUGLAS- SIMPSON,

                       Plaintiffs,

    v.

DOLORES MATTEUCCI, Superintendent of the
Oregon State Hospital, in her individual and
official capacity, DAVID BADEN, Director of
the Oregon Health Authority, in his official
capacity, and PATRICK ALLEN in his
individual capacity,

                       Defendants,

    and

LEGACY EMANUEL HOSPITAL & HEALTH
CENTER d/b/a UNITY CENTER FOR
BEHAVIORAL HEALTH LEGACY HEALTH
SYSTEM, PEACEHEALTH, and
PROVIDENCE HEALTH & SERVICES,

                       Intervenors.

LEGACY EMANUEL HOSPITAL & HEALTH
CENTER d/b/a UNITY CENTER FOR
BEHAVIORAL HEALTH; LEGACY HEALTH
SYSTEM; PEACEHEALTH; and
PROVIDENCE HEALTH & SERVICES
OREGON,

                       Plaintiffs,

    v.

DAVID BADEN, in his official capacity as
Director of Oregon Health Authority,

Defendant.

3:21-CV-01637-MO (Member Case)

6:22-cv-01460-MO (Member Case)

      Amicus Marion County ("the County"), by and through counsel, hereby submits the

following memorandum of law regarding its proposals for amendments to this Court's

September 1, 2022, Order to Implement Neutral Expert's Recommendations ("Mosman Order").

The County maintains that, as a non-party to this case, it is not bound by the provisions of the

Mosman Order except as permitted under FRCP 65(d), the requirement of which have not been

met here as previously briefed.  However, to the extent that this Court intends to enter an

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

amended order in this matter, the County proposes the attached language. As explained in further detail below, this proposed language represents the least intrusive means of ensuring that patients have transportation after discharge, that judges have the information necessary to make decisions in state criminal cases, and that county sheriffs are not placed in the untenable position of having to choose between obeying a federal court or the state court that they help support.

## I. BACKGROUND

On September 1, 2022, this Court issued the Mosman Order, setting maximum durational limitations on restoration for patients committed to the Oregon State Hospital (OSH) to regain fitness to proceed in their state criminal trial. Once those limitations came into effect, state criminal defendants began being discharged from OSH as they reached the maximum allowable period for restoration, often without any sort of discharge planning or information regarding the individual's current condition. Because state judges needed that information to make the decisions required of them by state law, in February 2023, the Marion County Circuit Court issued orders in two cases which prohibited the Marion County Sheriff's Office ("MCSO") from returning the individual to the County Jail unless the court first received an updated progress report. As a result, MCSO was unable to return those individuals from OSH despite notification that they had reached the time limits for restoration.

In response, Plaintiffs filed a motion in this case asking this Court to order MCSO to transport individuals at OSH in violation of the circuit court's transport orders (ECF No. 359). On March 31, 2023, following oral argument on the motion, this Court ruled that it could not grant the relief requested because the order contained a "gap"—it was silent as to the issue of transportation. Transcript (Tr.) at 24. However, the Court requested that the parties submit proposals and briefing addressing three primary issues: (1) who should be ordered to transport individuals to and from the jail; (2) what sort of obligation the order should place on OSH to

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

provide information to state circuit courts upon discharge from OSH; and (3) what role the federalism-based requirement to use the least intrusive means possible when crafting an order overriding state law has to play in the situation.[1]  Tr. at 24-26.

Following the court's ruling and request, the parties and amici participated in mediation on this issue in an effort to come to some sort of joint resolution as to how best to amend the Mosman Order to address these issues.  While this mediation was useful in addressing some issues, the parties and amici were unable to agree on a singular proposal for amended language.  Accordingly, the County now submits the proposal attached to this memorandum regarding modification of the Mosman Order, which it believes represents the simplest and least invasive means of addressing the issue of transportation as required by federal law without placing county sheriffs in the difficult position of being caught between competing court orders.

## II.  LEGAL FRAMEWORK

Although federal courts have broad equitable powers to remedy alleged constitutional violations, those powers are not unlimited.  When intervening in state government affairs "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)).  "The interaction between the federalism limits on a district court's remedial power, invoked in *Rizzo*, and a district court's power in general to order prospective relief against state executive officials . . . remains an open and contentious area of the law." *M.S. v. Brown*, 902 F.3d 1076, 1089–90 (9th Cir. 2018).  As a result, a district court should limit any remedy to the least intrusive available.  *Hoptowit v. Ray*, 682 F.2d 1237, 1247 (9th Cir. 1982).  "[S]uperintending federal injunctive decrees directing state officials are appropriate only when constitutional violations

---

[1]     Indeed, on the third issue, this Court has acknowledged that, "*I'm ordering the least intrusive means possible.*"  Tr. at 28.

Page **4** of **11** – MEMORANDUM OF LAW REGARDING AMENDMENT TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

have been shown *and* when the state officials are demonstrably unlikely to implement the required changes without its spur." *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). "[I]njunctive restraints that exceed constitutional minima must be narrowly tailored to prevent repetition of proved constitutional violations, and must not intrude unnecessarily on state functions." *Toussaint v. McCarthy*, 801 F.2d 1080, 1087 (9th Cir. 1986).

> "[A]lthough federal district courts have been allowed—indeed, at times constitutionally required—to intrude in the affairs of state and local governments, such intervention has been conducted with the clear understanding that the autonomy of these governmental entities should be safeguarded to the maximum extent possible. As the Court stated in *Jenkins*, "one of the most important considerations governing the exercise of [federal] equitable power is a proper respect for the integrity and function of local government institutions."

*Langton v. Johnston*, 928 F.2d 1206, 1221 (1st Cir. 1991) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 51 (1990)).

For a federal court to use its extraordinary equity powers to override existing state law it must find that other, less intrusive alternatives are inadequate to remedy the violation. *See Jenkins,* 495 U.S. at 51 (before ordering remedy, the district court "was obliged to assure itself that no permissible alternative would have accomplished the required task"); *see also Hook v. Az Dep't of Corrections*, 107 F.3d 1397, 1402 (9th Cir. 1997) ("the district court may not choose a remedial measure that conflicts with state law unless that measure is necessary to remedy the violation"); *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, (8th Cir. 2011) ("[R]emedies that override state law must be narrowly tailored so as to infringe state sovereignty as minimally as possible.").

///

///

///

///

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

## III. PROPOSALS AND ARGUMENT

The County's proposals are designed to address the three issues that this this court requested during the March 31, 2023, oral argument. Beginning with the first two, the County is proposing that OSH be required to provide certain basic types of information regarding a patient's current status by way of adding the following language to paragraph (3) of this Court's order:

> "Before any discharge under this Order, OSH will ensure that the committing court and parties to the criminal case are informed as to the current treatment status of the patient, either through a continuing care discharge plan or an updated clinical note as appropriate. At the point of release, OSH will provide the committing court with an updated clinical summary. Once OSH has provided the required information to the committing court and parties, the sheriff of the committing county shall comply with the relevant state court transport order." (County Proposal ¶ 3(e))

As this Court acknowledged during oral argument, there is an argument "*worth thinking about*" that state court judges should have access to the most current information about an individual at the time of discharge in order to fulfill their duties under state law:

> "*The argument is if you're going to send this person back to us and we have choices to make, choices that could include community care but might also include involuntary commitment for dangerousness or something like that, then we would like to know OSH's professional opinion about where this person stands.*"

Tr. at 25. This amendment recognizes that need for information and ensures that state courts have access to all means presently available of resolving the question at hand. However, it also strikes a balance against OSH's resource constraints. Because the proposed amendment does not request a full evaluation or definitive conclusion as to whether a given person is fit to proceed—only current information on the person's status—the burden on OSH's resources should be minimal. The proposed amendment then resolves the transport issue by explicitly including that, once the circuit court has received all of the most current information, the county sheriff is to conduct transport in accordance with the state transport order.

Page **6** of **11** – MEMORANDUM OF LAW REGARDING AMENDMENT TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

Crucially, the County's proposed amendment also aligns with the third issue requirement that this Court use the least intrusive means available to remedy the constitutional problem at hand. Under the principles of federalism, a district court may "give the Sheriff [the authority to override state law] only as a last resort and only as essential to achieve [constitutional] compliance." *Stone v. City & Cty. of S.F.*, 968 F.2d 850 (9th Cir. 1992). Before doing so, the Court must first make findings that the proposed grant of authority would be the "least possible power adequate to the end proposed," *Spallone v. United States*, 493 U.S. 265, 110 S. Ct. 625 (1990), and that other alternatives would be inadequate. *Stone*, 968 F.2d at 864. Through proceedings up to this point, no party has provided any evidence which would suggest that the County's proposal would not prove an adequate resolution to this issue.

Indeed, juxtaposed against the prospect of an order simply requiring county sheriffs to conduct transport, the County's proposal is readily apparent as the less intrusive alternative. In addition to the confusion that competing state and federal court orders would create for staff in doing their jobs, an order simply overriding state law would put county sheriffs in the unworkable position of having to disobey the courts that they work daily to support. *See* ORS 206.010 (providing that county sheriff executes court documents, including process, orders, and warrants, and attends court generally to provide support as lawfully directed).[2] At least in the County's case, such an arrangement would entail a wide variety of both tangible and intangible risks to MCSO's relationship with the courts. Thus, the County asks that this Court adopt its proposed language avoid these issues.

In addition to addressing transport directly, the County's proposals contain two other sections designed to improve access to community restoration resources. First, the County is proposing a requirement be added to the Mosman Order that OSH promptly begin the process of

---

[2]     Although the County only directly represents MCSO, these same considerations are applicable to county sheriffs state-wide who would all be affected by such an order.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

working with counties to develop a discharge plan early into a person's period of commitment to OSH:

> "As soon as possible and no later than 30 days following a patient's commitment, OSH will work together with the committing county and respective Community Mental Health Program (CMHP) to begin discharge planning for the patient." (County Proposal ¶ 3(f))

Second, the County is proposing an amendment authorizing a short extension of an individual's restoration period in certain narrow circumstances—namely, when additional time is necessary to allow for placement into appropriate community restoration services:

> "If a CMHP or OSH determines that a patient who the CMHP has referred out for placement in the community cannot currently be placed but is reasonably expected to be placed within 30 days, the committing court may order an extension of the discharge deadline of up to 30 days to allow for additional care coordination and discharge planning. Prior to issuing such an order, the committing court must provide the parties to the criminal case an opportunity to object. OSH must receive a copy of the extension order no fewer than 5 business days prior to the expiration of the restoration time period." (County Proposal ¶ 3(g))

The idea behind both of these proposals is to ensure access to community restoration services to provide more placement options for individuals set to return from OSH. Building off of the State's most recently proposed amendment to require 60 days' notice prior to discharge rather than 30 (ECF No. 367), the County's proposal to require OSH (which is a party to the case) to begin the process of discharge planning with Community Mental Health Providers ("CMHPs") earlier will give CMHPs greater ability to seek out placement options that meet an individual's needs. Similarly, if the Mosman Order permitted short extensions of time to allow for beds to open up at placements CMHPs have identified, then individuals are more likely to be placed into programs that can accommodate them. Taken together, the availability of better alternatives means that state courts will have more options for a person returning from OSH for treatment, thus reducing the likelihood that a court will determine that OSH is the only appropriate place for an individual and issuing an order to keep them there.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

Finally, the County's proposals include one final section to be added to the current version of the Mosman Order to address the issue of state court remedies relative to least intrusive means. In a separate paragraph from those prior, the County proposes the addition of the following language:

> "In the event that a state court order conflicts with the provisions of this Order, any aggrieved individual or entity must first seek relief from the state court order under provisions of state law prior to seeking relief in this Court." (County Proposal ¶ 3(h))

Again, this language addresses the requirement that this Court use the least intrusive means possible to remedy constitutional violations before it. Although the County is aware of no other cases which have directly considered the impact that the availability of state law remedies has on a federal court's authority to order injunctive relief that would violate state law, a wealth of other authorities have held that similar principles of federalism require exhaustion of state law remedies in other contexts. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973) ("Exhaustion of state remedies as a prerequisite to a federal habeas action is a judicially-crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a swift and imperative remedy in cases of illegal restraint or confinement."); *Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582, 115 S. Ct. 2351 (1995) (principles of "comity and federalism" prohibit federal courts from entertaining damages under § 1983 when there is an adequate state law remedy). Those principles operate in the same manner in this case to require parties to seek relief from state court orders prior to seeking relief from the federal courts.

Moreover, as a practical matter, here there is a state law remedy for challenging any future state law orders forbidding transport by the sheriff. Under Oregon law, an aggrieved entity may seek relief from a "fundamental legal error" or choice "outside the permissible range of discretionary choices" via petition for writ of mandamus pursuant to ORS 34.110. *Or. State*

Page **9** of **11** – MEMORANDUM OF LAW REGARDING AMENDMENT TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

*Hosp. v. Butts*, 358 Or. 49, 56, 359 P.3d 1187 (2015). If any entity contends that the circuit court's orders as issued are fundamentally unlawful, then mandamus relief would therefore be available to challenge them. Accordingly, it would be improper for this Court to issue an order overriding state law without first requiring that less intrusive option to be explored first.

## IV.  CONCLUSION

In sum, the County proposes the attached edits to the Mosman Order as the best solutions to address the issues that this Court identified during the March 31, 2023, hearing. As explained above, this proposed language represents the least intrusive means of ensuring that patients have transportation after discharge, that judges have the information necessary to make decisions in state criminal cases, and that county sheriffs are not placed in the untenable position of having to choose between obeying a federal court or the state court that they help support. Thus, the County respectfully requests that this Court accept its suggestions and amend the Mosman Order accordingly.

Dated this 9th day of May, 2023

Respectfully submitted,

Jane E. Vetto OSB # 914564
Marion County Counsel
Attorney for Defendants Marion County

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2023, I filed a true and correct copy of the

foregoing document with the Clerk of the Court for the United States District Court – district of

Oregon via the CM/ECF system. Participants in the case who are registered CM/ECF users will

be served by the CM/ECF system.

/s/Jane E. Vetto
Jane E. Vetto OSB # 914564
Marion County Counsel
Attorney for Defendants Marion County

JANE E. VETTO, OSB 914564
Marion County Legal Counsel
jvetto@co.marion.or.us
555 Court Street N.E.
P.O. Box 14500
Salem, OR 97309
Telephone No.: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Marion County

## UNITED STATES DISTRICT COURT

### FOR DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No. 3:02-cv-00339-MO (Lead Case)<br>Case No. 3:21-cv-01637-MO (Member Case)<br>Case No. 6:22-cv-01460-MO (Member Case) |
| Plaintiffs, | |
| v. | MARION COUNTY'S PROPOSED AMENDMENTS TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS |
| DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital | |
| Defendants, | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES, | |
| Intervenors. | |

Page **1** of **7** – MARION COUNTY'S PROPOSED AMENDMENTS TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS

JAROD BOWMAN and
JOSHAWN DOUGLAS- SIMPSON,

          Plaintiffs,

  v.

DOLORES MATTEUCCI, Superintendent of the
Oregon State Hospital, in her individual and
official capacity, DAVID BADEN, Director of the
Oregon Health Authority, in his official capacity,
and PATRICK ALLEN in his individual capacity,

          Defendants,

  and

LEGACY EMANUEL HOSPITAL & HEALTH
CENTER d/b/a UNITY CENTER FOR
BEHAVIORAL HEALTH LEGACY HEALTH
SYSTEM, PEACEHEALTH, and PROVIDENCE
HEALTH & SERVICES,

          Intervenors.

LEGACY EMANUEL HOSPITAL & HEALTH
CENTER d/b/a UNITY CENTER FOR
BEHAVIORAL HEALTH; LEGACY HEALTH
SYSTEM; PEACEHEALTH; and PROVIDENCE
HEALTH & SERVICES OREGON,

          Plaintiffs,

  v.

DAVID BADEN, in his official capacity as Director
of Oregon Health Authority,

          Defendant.

3:21-CV-01637-MO (Member Case)

6:22-cv-01460-MO (Member Case)

THIS MATTER comes before the Court on Plaintiffs' Unopposed Motion to Implement Neutral Expert's Recommendations. Having reviewed the papers filed in support of this motion, the Court finds that Defendants are not in compliance with this Court's permanent injunction in *Mink* and ORDERS the following which are necessary to move Defendants towards compliance with that injunction:

///

///

Page **2** of **7** – MARION COUNTY'S PROPOSED AMENDMENTS TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

(1)     The Oregon State Hospital, the Oregon Health Authority, Disability Rights

Oregon, and Metropolitan Public Defenders shall implement the

recommendations in the Court's Neutral Expert's January and June 2022 reports.

If necessary to comply with paragraph three (3) of this order, Dr. Pinals may

grant extensions of other deadlines in her recommendations after conferring with

the parties. Any such extensions shall be documented in Defendants' monthly

progress reports.

(2)     The Oregon State Hospital shall not admit patients except as provided for by the

recommendations in the Neutral Expert's January and June 2022 reports or as

otherwise provided by this Court. Namely, Aid and Assist ("A&A") and Guilty

Except Insane ("GEI") persons shall be admitted according to their place on the

admissions wait list or pursuant to the relevant expedited admissions policy. In

addition, the Oregon State Hospital:

a.   may admit PSRB GEI revocations and persons pursuant to ORS 426.701

(extremely dangerous persons);

b.   shall not admit persons civilly committed unless they meet the criteria in the

civil admission expedited admissions policy;[2]

c.   shall not admit transfers from the Oregon Youth Authority except as provided by

ORS l79.473(1)(c), OAR 309-120-0080 and OAR 416-425-0020; and

d.   shall not admit transfers from the Oregon Department of Corrections unless

they meet expedited admissions standards as articulated in the expedited

admissions policy.[3]

(3)     The Oregon State Hospital shall immediately implement the maximum time for

inpatient restoration in the Neutral Expert's June 2022 report as follows:

a.   For patients whose most serious charge is a misdemeanor, the maximum

duration of commitment for restoration shall be the lesser of the maximum

pe1missible sentence for the underlying offense or 90 days;

b.   For patients whose most serious charge is a felony, the maximum duration of

commitment for restoration shall be six (6) months, unless the felony is listed

in ORS 137.700(2) in which case the maximum duration of commitment for

restoration shall be one year.

c.   For purposes of this Order, restoration across multiple charges shall be

consolidated and contiguous consecutive periods of restoration should be

eliminated unless there are new charges incurred after an initial period of

restoration has ended.

d.   Before a patient reaches this maximum duration of commitment for

restoration under this Order and remains unfit to proceed, OSH shall notify

the committing court of the patient's impending discharge *60* days before the

date on which the hospital is required to discharge the patient pursuant to this

Order.

e.   *Before any discharge under this Order, OSH will ensure that the*

*committing court and parties to the criminal case are informed as to the*

*current treatment status of the patient, either through a continuing care*

*discharge plan or an updated clinical note as appropriate. At the point of*

*release, OSH will provide the committing court with an updated clinical*

*summary. Once OSH has provided the required information to the committing*

*court and parties, the sheriff of the committing county shall comply with the*

*relevant state court transport order.*

f.   *As soon as possible and no later than 30 days following a patient's*

*commitment, OSH will work together with the committing county and*

*respective Community Mental Health Program (CMHP) to begin*

*discharge planning for the patient.*

Page **4** of **7** – MARION COUNTY'S PROPOSED AMENDMENTS TO ORDER TO IMPLEMENT NEUTRAL
EXPERT'S RECOMMENDATIONS

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

g. *If a CMHP or OSH determines that a patient who the CMHP has referred out for placement in the community cannot currently be placed but is reasonably expected to be placed within 30 days, the committing court may order an extension of the discharge deadline of up to 30 days to allow for additional care coordination and discharge planning. Prior to issuing such an order, the committing court must provide the parties to the criminal case an opportunity to object. OSH must receive a copy of the extension order no fewer than 5 business days prior to the expiration of the restoration time period.*

h. *In the event that a state court order conflicts with the provisions of this Order, any aggrieved individual or entity must first seek relief from the state court order under provisions of state law prior to seeking relief in this Court.*

i. From the date of this Order, for patients who, at the time of this Order, are already past the maximum length of restoration set out herein, Defendants shall provide the 30-day notice to committing courts before discharging such patients pursuant to this Order;

j. No later than March 15, 2023, patients currently admitted at OSH who have exceeded the length of restoration set forth in this Order shall be discharged from their restoration commitment and from the hospital; and

k. Defendants shall consult with the Neutral Expert regarding operational and clinical aspects of implementing these limitations on the duration of inpatient restoration.

(4)    This Order shall terminate upon the Neutral Expert reporting to this Court that OSH/OHA has timely admitted A&A and GEI patients for at least three consecutive months, and that the termination of this Order would not cause the Defendants to fall back out of compliance. For purposes of this Order "timely admission" means within seven days of a State Court order delivered to OSH ordering that the patient be admitted.

(5)     If this Order is not terminated pursuant to Paragraph (4), this Order will expire on

September 1, 2023, unless renewed by the Court prior to that time

DATED: _____

_____

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May, 2023, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – district of Oregon via the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Jane E. Vetto
Jane E. Vetto OSB # 914564
Marion County Counsel
Attorney for Defendants Marion County

Page **2** of **7** – MEMORANDUM OF LAW REGARDING AMENDMENT TO ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367