~~Eric J. Neiman, OSB #823513~~
~~Eric.Neiman@lewisbrisbois.com~~
~~Emma P. Pelkey, OSB #144029~~
~~Emma.Pelkey@lewisbrisbois.com~~
~~LEWIS BRISBOIS BISGAARD & SMITH LLP~~
~~888 SW Fifth Avenue, Suite 900~~
~~Portland, Oregon 97204-2025~~
~~Telephone: 971.712.2800~~
~~Facsimile: 971.712.2801~~

~~Thomas R. Johnson, OSB #010645~~
~~TRJohnson@perkinscoie.com~~
~~Alex Van Rysselberghe, OSB #174836~~
~~AVanRysselberghe@perkinscoie.com~~
~~PERKINS COIE, LLP~~
~~1120 NW Couch 10th Floor~~
~~Portland, OR  97209~~
~~Telephone: 503.727.2000~~
~~Facsimile:  503.727.2222~~

*Attorneys for Plaintiffs*

**Eric J. Neiman, OSB #823513**
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800
Facsimile: 971.712.2801

**Thomas R. Johnson, OSB #010645**
Tom.Johnson@stoel.com
**Alex Van Rysselberghe, OSB #174836**
Alex.Vanrysselberghe@stoel.com
STOEL RIVES LLP
730 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.294.9466

*Attorneys for Plaintiffs*

Honorable Michael W. Mosman

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

~~PORTLAND~~EUGENE DIVISION

| | |
|---|---|
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH ~~d/b/a SACRED HEART MEDICAL CENTER UNIVERSITY DISTRICT~~; PROVIDENCE HEALTH & SERVICES – OREGON~~,~~ and ST. CHARLES HEALTH SYSTEM, <br><br> Plaintiffs, <br><br> vs. <br><br> ~~PATRICK ALLEN~~DAVID BADEN, in his official capacity as Director of Oregon Health Authority, <br><br> Defendant. | Case No. 6:22-cv-01460-MO <br><br> **SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

Under Oregon law, individuals who are dangerous to ~~themself~~themselves, dangerous to others, or unable to take care of their own basic needs due to a mental disorder may be civilly committed to the Oregon Health Authority for involuntary detention and treatment. Involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509 (1972). The State and Federal Constitutions require that mentally ill persons who are involuntarily detained receive treatment calculated to lead to the end of their involuntary detention. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). It is not acceptable under the law—let alone basic standards of human dignity and decency—to merely "~~warehous[e]~~warehouse" mentally ill individuals away from the community and not provide them appropriate treatment during their involuntary detention. *Sharp v. Weston*, 233 F.3d 1166,

~~4877-6005-3312.1~~ <br>
SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2 <br>
**LEWIS BRISBOIS BISGAARD & SMITH** LLP <br> 888 SW Fifth Avenue, Suite 900 <br> Portland, Oregon 97204-2025 <br> Telephone: 971.712.2800 • Fax 971.712.2801 <br>
~~PERKINS COIE~~STOEL RIVES LLP <br> ~~1120 N.W. Couch Street, Tenth Floor~~ <br> 760 SW Ninth Avenue, Suite 3000 <br> Portland, Oregon ~~97209-4128~~97205 <br> Phone: +1.503.~~727.2000~~224.3380 • Fax: +1.503.~~727.2222~~220.2480 <br>
~~9557568v~~1

1172 (9th Cir. 2000) (recognizing that "all too often the promise of treatment has served only to bring an illusion of benevolence to what is essentially a warehousing operation of social misfits") (quoting *U.S. ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 936 (7th Cir. 1975)).

 Civil commitment is "to the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). However, the Oregon Health Authority (OHA) has failed in its responsibilities to ~~its most~~this vulnerable population. Rather than ensure and provide timely access to meaningful treatment, OHA is ~~leaving~~abandoning civilly committed patients and leaving them for extended periods of time in ~~acute care~~ community hospitals~~, which~~. These community hospitals are ~~neither designed nor~~not equipped, staffed, or intended to provide long-term treatment for mental illness. They are equipped to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises—treatment which involves emergency psychiatric care, highly restrictive settings, and constant monitoring. Community hospitals are able to stabilize the vast majority of civilly committed patients and refer them to other community services that are able to help them reintegrate. However, there is a subset of individuals for whom longer term, specialized care is needed. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself with the goal of enabling the patient to recover from their illness and return to the community. Long-term treatment requires a calmer, less stressful, less-restrictive environment where patients have more independence, peer support, socialization, and opportunities to develop life and health skills. Thus, when OHA leaves these civilly committed patients indefinitely in community hospitals, they do not meaningfully recover because they are denied access to long-term treatment. This failure to provide the appropriate level of treatment violates patients' constitutional rights.

 Individuals in mental health crises come to community hospitals in a variety of ways: they may present on their own or be brought in by law enforcement, first responders, family,

~~4877-6005-1312.1~~

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 3

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax: +1.503.~~727.2222~~220.2480

~~9557568~~v1

friends, or others. The emergency department is the typical point of entry. By federal law, patients who come to an emergency department must be screened for an emergency medical condition, which includes a psychiatric crisis causing the patient to be dangerous to self or others. If the patient has an emergency medical condition, the hospital is required to stabilize the condition before discharge or, if the patient requires care the hospital cannot provide, arrange for an appropriate transfer to another treatment setting. Some individuals are unable to voluntarily agree to stabilizing care and are accordingly placed on a "Notice of Mental Illness," which begins civil commitment proceedings. Because of the shortage of acute care psychiatric beds in the state of Oregon, transfer of a patient who is experiencing a psychiatric crisis to another appropriate treatment setting is almost never an option.

Certain patients in psychiatric crisis are briefly detained in hospital emergency departments or acute care units to allow for an investigation by OHA, through the community mental health program under the "Notice of Mental Illness," to determine if there is probable cause to believe that the person meets civil commitment criteria. If probable cause exists, the circuit court issues a citation and warrant of detention, and the person is taken "into custody" until a civil commitment hearing takes place or the person no longer meets detention criteria. At this point, the person is not just a hospital patient, but also is part of Oregon's civil commitment system, which is governed by Oregon Revised Statutes Chapter 426 and Oregon Administrative Rules Chapter 309, Division 033. By law, a hospital may not simply discharge or refuse to treat a patient who has been detained pursuant to civil commitment laws. They must be held pursuant to the authority of the court. *See, e.g.*, ORS 441.053(2); ORS 441.054; OAR 309-033-0250(6); OAR 333-505-0055, OAR 333-520-0070(4); 42 CFR § 482.43.

Of the patients who are detained, some remain in emergency departments while others may be admitted to the limited number of inpatient psychiatric beds that exist in Plaintiffs' hospitals, and still others may be admitted to acute medical inpatient beds. No matter where they

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIESTOEL RIVES LLP**
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3300 • Fax:
+1.503.727.2222220.2480

are located in Plaintiffs' hospitals, these patients cannot be discharged while they are psychiatrically unstable, lack a safe discharge plan, and are being detained pursuant to Oregon law and the authority of the court.

In several hundred cases annually, detained patients are civilly committed by court order for up to 180 days of involuntary treatment because they meet the definition of "mentally ill" under the law, meaning they are dangerous to self or others, or unable to take care of basic needs, due to a mental disorder. Until their conditions improve and an appropriate discharge plan is available, they must remain in the hospital or another secure setting pursuant to federal and state law and court order. For a significant number of patients, this means they stay in the hospitals where they started, even when they no longer need to be there, because of OHA's unconstitutional failure to provide adequate placements and resources for long-term treatment. Legally, hospitals cannot simply discharge these patients even though they no longer need the acute care services that community hospitals are intended to provide. This would remain true even if the hospitals withdrew their applications for certification to provide acute care services to civilly committed patients. If this occurred, there would simply be nowhere to send most civilly committed patients and they would continue to remain in the hospital.

OHA's practice also violates the constitutional rights of community hospitals by taking hospitals' property with neither due process of law nor just compensation. Instead of meeting its statutory obligation to provide mental health services and treatment to civilly committed individuals, the state has inappropriately transferred all of its responsibilities to care for those individuals to community hospitals. OHA's failure to make even minimal efforts to locate appropriate long-term treatment facilities for civilly committed individuals forces acute carecommunity hospitals to shoulder thatthe obligation by making hospitals unnecessarily. Because hospitals cannot discharge civilly committed individuals, who desperately need long-term treatment, OHA's failure to act means that community hospitals must hold some civilly

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 5

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

**Formatted Table**

**Formatted:** Tab stops: 3.3", Centered

**Formatted:** Font: Bold

**Formatted:** Font: Bold

**Formatted:** Font: 8 pt, Condensed by 0.1 pt

**Formatted:** _WA Footer Space

committed individuals for ~~extended~~long periods ~~of~~ ~~often~~ of time. In many cases, community hospitals have held civilly committed individuals for weeks, months, or ~~in some cases their~~even the patient's entire 180-day commitment period (and sometimes additional recommitment periods). As a result, ~~acute care~~community hospitals must dedicate significant resources to patients who have no medical reason to be in emergency or acute care settings. These resources include the efforts of physicians, nurses, other care providers, and hospital staff as well as costs associated with medication ~~and with~~, housing patients who should be elsewhere~~.~~, injuries to hospital staff, and damage to hospital property. OHA does not adequately compensate and reimburse hospitals for expending these resources~~. The unnecessarily long lengths~~, does not hold payers accountable to provide adequate reimbursement, and fails to assist in the protection of ~~stay also negatively impact~~hospital staff and other ~~acutely ill~~patients ~~who wish to admit themselves to acute care community hospitals voluntarily but are put on waiting lists.~~ Again, due to ~~shortages~~the shortage of beds ~~and space~~in the state, this would be true even if the hospitals were not certified to provide acute care services to civilly committed patients.

In addition to harming civilly committed individuals and community hospitals, OHA's actions also negatively impact the community. Oregon is in the middle of an unprecedented mental health crisis and community hospitals are desperately needed to treat and stabilize other vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness. Because the beds of community hospitals are taken up by civilly committed individuals who should be transferred to long-term treatment facilities that can provide them with meaningful treatment, other individuals in acute mental health crises are unable to access care at community hospitals.

OHA has ~~known about~~been keenly aware of this problem for years but has done nothing to fix it. ~~Acute care community hospitals~~Instead, OHA has abdicated all responsibility for civilly

~~4877-6005-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 6

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~9557568~~\1

committed individuals, and done nothing to increase capacity to ensure these individuals have access to appropriate long-term placements.

OHA often defends its actions by pointing to the fact that a federal court order requires it to accommodate criminal defendants at state hospital facilities who are found guilty except for insanity or unable to aid and assist in their own defense. Yet OHA has been under these orders for years and has done little to build capacity in the community to ensure an adequate supply of secure beds are available for individuals who are civilly committed. To be clear, Plaintiffs strongly support the rights of criminal defendants with severe mental illness to be moved out of jails and provided treatment. But OHA is supposed to serve all three populations of patients. It is past time for change.

Community hospitals now bring this ~~Complaint~~lawsuit to remedy OHA's unlawful practice of abandoning civilly committed individuals in acute care facilities and failing to even attempt to provide them ~~adequate~~with appropriate treatment during their involuntary detention. This practice violates OHA's statutory duties and ignores the fundamental ~~principles~~rights of ~~Oregon's civil commitment scheme: to provide all~~ civilly committed ~~persons with~~Oregonians access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980).

Plaintiffs do not seek compensatory damages—instead, Plaintiffs seek only declaratory and injunctive relief, ~~nominal damages,~~ and recovery of their attorneys' fees for having to pursue litigation to force OHA to accept its responsibility to provide mental health services to civilly committed individuals ~~as required by law.~~ Plaintiffs seek a declaration that OHA's ~~conduct and~~ practices of forcing ~~acute care~~community hospitals to fulfill OHA's statutory obligations ~~violates~~violate the constitutional rights of both civilly committed individuals and the community hospitals where they are unnecessarily confined. Plaintiffs further seek an injunction

~~4877-6005-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 7

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209 412897205
Phone: +1.503. ~~727.2000~~224.3380 • Fax:
+1.503. ~~727.2222~~220.2480

~~95575689~~1

~~ending~~abolishing these practices and requiring OHA to fulfill its statutory obligations. ~~Civilly to ensure civilly~~ committed individuals ~~should~~ finally receive the care and treatment they are entitled to by law, ~~and community hospitals should not be illegally deprived of their property as a result of OHA's practices~~.

## JURISDICTION AND VENUE

1.    This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12132, and 28 U.S.C. § 2201.

2.    This Court has subject matter jurisdiction pursuant to 28 USC § 1331 (federal question jurisdiction) and 28 USC §1343 (civil rights jurisdiction), and supplemental jurisdiction over claims based on state law pursuant to 28 USC § 1367.

3.    Declaratory and additional relief are authorized by 28 U.S.C. §§ 2201 and 2202.

4.    Venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.    Plaintiffs are not-for-profit ~~Oregon~~ corporations licensed to provide hospital and healthcare services. The community hospitals operated by Plaintiffs all receive patients who are detained or civilly committed pursuant to Oregon law, as alleged below.

6.    The community hospitals operated by Plaintiffs are not designed, equipped, staffed, or intended to provide long-term mental health treatment for civilly committed individuals. The behavioral health units operated by Plaintiffs are intended to serve the community as acute care facilities at which patients ~~in~~experiencing acute mental health ~~crisis~~crises are evaluated, stabilized, and discharged to the next appropriate level of care. By design, the average length of stay for most patients in those units is 14 days or less. However, due to the practices and conduct of OHA, civilly committed individuals commonly remain in the behavioral health units of community hospitals for much longer periods of time. These units are highly restrictive, locked environments. Patients are able to leave the units only for short periods

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 8

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

of time, if at all, because of environmental, regulatory, and staffing limitations. This type of confined setting is not designed to provide the appropriate therapeutic setting for long-term treatment. As a result, patients left languishing in these environments by OHA do not receive needed care and, in some cases, decompensate back to unstable conditions. OHA's failure to provide appropriate treatment settings for civilly committed patients, despite its legal responsibility to do so, directly results in unnecessarily long lengths of stay in community hospitals.

7.    Plaintiffs also operate emergency departments and medical-surgical units within their community hospitals. As alleged below, patients experiencing mental health crises often are detained in those units pursuant to Oregon civil commitment laws because of the shortage of acute psychiatric beds due to practices and conduct of OHA. These patients cannot access behavioral health units or other treatment settings that they desperately need because theythere are stuckno beds available for care.

8.    Plaintiff Legacy Emanuel Hospital & Health Center, doing business as Unity Center for Behavioral Health (Unity), operates an acute care behavioral health hospital in Portland, Oregon. It has 85 adult beds and 22 adolescent beds. Unity provides both emergency and inpatient services to individuals experiencing mental health crises. Unity is an acute care hospital, meaning it provides assessment and short-term stabilizing treatment for patients experiencing an acute behavioral health crisis. Unity is not a long-term treatment facility, nor is it designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed.

9.    Plaintiff Legacy Health operates six hospitals in Oregon. These hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 9

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3300 • Fax:
+1.503.727.2222220.2480

95575689.1

Formatted Table
Formatted: Tab stops: 3.3", Centered
Formatted: Font: Bold
Formatted: Font: Bold
Formatted: Font: 8 pt, Condensed by 0.1 pt
Formatted: _WA Footer Space

10.    Plaintiff PeaceHealth operates four hospitals in Oregon. ~~Only one~~One of those hospitals has a 35-bed acute care behavioral health unit. It has an average length of stay of ten days. It is not designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other PeaceHealth hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

11.    Plaintiff Providence Health & Services – Oregon operates ~~seven~~eight hospitals in Oregon. Four of these hospitals have acute care behavioral health units, which ~~are not~~combined include 66 adult beds, 19 senior beds, and 22 adolescent beds. None of those acute care behavioral health units are designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

12.    Plaintiff St. Charles Health System, Inc. operates four hospitals in Bend, Redmond, Madras, and Prineville, Oregon. Only the hospital in Bend has acute behavioral health beds. It has a five-bed secure psychiatric ~~emergency~~ services unit, and a 15-bed acute care behavioral health unit. The Bend hospital is not equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

13.    Defendant ~~Patrick Allen~~David Baden is director of OHA, an agency of the State of Oregon.~~.~~ He is sued in his official capacity.

## FACTS

**A.    Civilly committed patients are entitled to meaningful long-term treatment during**

~~4877-6005-3312.1~~

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 10

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~9557568~~v1

**their involuntary detention~~, which includes stabilizing treatment followed by long-term treatment.~~** .

14.    More than 500 individuals with severe mental illnesses are civilly committed to OHA for treatment every year. These individuals exhibit acute symptoms ~~like, among other things,~~ such as psychosis (dissociation with reality), paranoia, hallucinations, suicidal or homicidal ideation, and sometimes violent behaviors toward themselves and others. In short, these individuals are very ill and require significant care and treatment.

15.    Civil commitment is a drastic measure that the state takes only if no other option for care is available. A judge may commit a person only if, ~~due to~~ a mental illness~~,~~ makes the ~~individual is dangerous to themself or others or cannot provide for basic personal needs like health and safety, and the judge finds that, unless treated, they will continue to deteriorate to become~~person a danger to themself or others or ~~become~~ unable to provide for ~~their own~~ basic personal needs like health and safety. The Supreme Court has held that involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509. Accordingly, due process requires that ~~mentally ill~~civilly committed persons ~~who are detained~~ receive treatment calculated to lead to the end of their involuntary detention. *Id.* Failing to provide ~~such~~this type of care to persons who are involuntarily detained—and instead using involuntary commitment to merely "warehouse" mentally ill persons away from the community—violates due process, not to mention basic standards of human dignity and decency.

16.    To that end, when the state pursues civil commitment, the state must provide mental health treatment that gives civilly committed patients "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778. Thus, civil commitment requires individualized treatment in the least restrictive setting possible

~~4877-6005-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 11

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209 ~~412897205~~
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~95575689~~.1

to restore with the goal of restoring the person's liberty, and commitment can last only long enough for the purpose of giving patients treatment that gives them a "realistic opportunity to be cured or to improve" so that they can return to the community and not be recommitted.

17.    To get a "realistic opportunity to be cured or to improve," a patient typically requires two phases of treatment. First, the patient must be "stabilized." The goal of stabilization is to manage and alleviate patients' most acute symptoms so that those symptoms do not inhibit long-term recovery. Stabilizing treatment typically involves heavy medication to manage acute symptoms like psychosis, hallucinations, delusions, and/or aggressive or violent physical behavior. The patient must be constantly monitored so medications can be managed and staff can promptly intervene instantly if patients try to hurt themselves or others. Due to these limitations, the patient must be housed in a highly restrictive settings setting, and patients often cannot be allowed to move about as they please. Because stabilization is intended to last for only 1-10 days, this highly restrictive environment is meant to be only temporary and is the role acute care hospitals are intended to play in the process.

18.    After being stabilized, the a civil commitment patient typically requires long-term treatment. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself with the goal of enabling the patient to recover from their illness and return to the community. Each patient in long-term treatment typically develops has an individualized treatment plan with their doctors, which helps them recover from their acute mental illness. Long-term treatment involves fewer restrictions, and offers more independence, and a more normal lifestyle so that patients can practice and develop life and health skills for being successful in the community., including the ability to take day passes and overnight visits to facilitate transition back to the community. It involves a more stable peer environment with less patient turnover, more socialization, more group counseling, and more peer support. It involves training and education programs for patients to learn how to care for

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 12

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE STOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

Formatted Table
Formatted: Tab stops:  3.3", Centered
Formatted: Font: Bold
Formatted: Font: Bold
Formatted: Font: 8 pt, Condensed by  0.1 pt
Formatted: _WA Footer Space

their basic needs, maintain employment, and maintain healthy relationships. It requires a calmer, less stressful environment than ~~an~~exists in the emergency department or acute- care ~~treatment center~~unit of a community hospital, that ~~does not~~reduces the risk ~~causing~~of the individual ~~to decompensate~~decompensating back into an acute mental health crisis ~~and require stabilization again.~~.

19.    An emergency or acute care environment, where patients are stabilized, is not ~~conducive to~~appropriate for patients who need long-term recovery. ~~Acute~~Emergency and acute care environments are, by necessity, far more restrictive than long-term treatment environments. ~~Acute~~Emergency and acute care environments typically house ~~less-stable peer~~ patients in crisis and require more monitoring and staffing than do long-term treatment environments. These features can be counterproductive to patients who have already been stabilized and who are working to recover from their mental illness so that they can regain their freedom and return to ~~the~~their community. A patient in long-term recovery cannot receive the socialization and skill-development opportunities in an emergency or acute care environment, and the increased level of restriction is unnecessary for such patients and often can aggravate patient's mental illnesses and ~~cause decompensation. Acute care environments also tend to be less stable and more stressful, which can also cause stable patients to decompensate, redevelop acute symptoms, and require new stabilization before restarting long-term treatment again.~~cause decompensation.

20.    For these reasons, it is difficult to overstate how crucial it is that a civilly committed patient, once stabilized, be transitioned into ~~a recovery~~an environment conducive to long-term ~~recovery and not left in the stabilization environment, where the highly restrictive environment is no longer medically necessary and is even counterproductive to the patient's recovery~~treatment. If a civilly committed patient is not transferred, the patient's liberty is unnecessarily curtailed, the patient does not meaningfully recover, the patient ~~often~~

~~4877-6605-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 13

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-412897205~~
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~95575689~~.1

Formatted Table
Formatted: Tab stops: 3.3", Centered
Formatted: Font: Bold
Formatted: Font: Bold
Formatted: Font: 8 pt, Condensed by 0.1 pt
Formatted: _WA Footer Space

~~decompensates~~may decompensate, the patient becomes more likely to be re-committed in the near future, and the very purpose of civil commitment is undermined.

**B.**   **Oregon law requires OHA ~~is responsible for ensuring~~ to ensure that civilly committed individuals receive appropriate long-term treatment ~~under Oregon's civil commitment system~~.**

21.    The state is responsible for the civil commitment process. The state initiates civil commitment proceedings; the state pursues civil commitment from the court; and, if commitment is ordered, patients are committed "**to the Oregon Health Authority** for treatment." ORS 426.130(1)(a)(C) (emphasis added). As such, it is the responsibility of the state to provide civilly committed individuals with necessary treatment in the most appropriate and least restrictive setting possible to fulfill patients' constitutional rights.

22.    Where a person has been civilly committed, Oregon law ~~provides that~~charges OHA ~~is responsible~~with the responsibility for finding an appropriate placement for long-term treatment. Oregon law requires that, "[u]pon receipt of the order of commitment, OHA or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1) ~~(emphasis added).~~. By statute, OHA must direct civilly committed persons "**to the facility best able to treat**" them, or delegate to a community mental health program ~~(CMHP)~~ director the responsibility for assignment of civilly committed persons to a "**suitable**" facility. ORS 426.060(2)(a), (d~~).~~) (emphasis added).

23.    The director of OHA may assign or transfer the civilly committed person to any facility "which, in the opinion of the director, will appropriately meet the mental health needs of the committed person." OAR 309-033-0290(1)(a). The director of OHA *may* place the person in a community hospital—however, in doing so, the director of OHA must "consult" with the community hospital's admitting physician, and both must, together, "determine whether the best

~~4877-6905-3312.1~~

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-~~412897205~~
Phone: +1.503.~~727.2000~~224.3380 • Fax: +1.503.~~727.2222~~220.2480

~~9557568~~v.1

interests of a committed person are served by an admission to a community hospital." ~~OAR 309-033-0270(3).~~

OAR 309-033-0270(3)(a).

**C.** **OHA is ~~ignoring its statutory obligations~~failing to provide appropriate long-term placement options for** civilly committed ~~individuals~~patients **and ~~has shut~~failed to create appropriate options in the ~~doors of the Oregon State Hospital to the civilly committed population~~community.**

24.     Oregon's civil commitment system has broken down as OHA has, for years, ignored its statutory obligations to this most vulnerable population. ~~OHA is abdicating its lawful duty to transfer civilly committed patients out of highly-restrictive acute care facilities and into proper long-term treatment environments. Severely mentally ill patients are routinely being brought to emergency departments, stabilized, detained, and committed. But, instead of transferring civilly committed patients to appropriate long-term placements for their 180-day commitment, OHA is leaving them stuck in acute care hospitals indefinitely, in overly restrictive settings, where they cannot receive the long-term treatment they need and are entitled to by law. The acute care community hospitals are not equipped, staffed, or designed to house civilly committed individuals for months at a time, let alone six months, when there is an urgent need for those beds by other acute psychiatric patients in the community.[1]~~ Despite that it is the state's responsibility to provide civilly committed individuals with constitutionally sufficient treatment—which, for most, requires long-term treatment—OHA is failing to ensure that long-term treatment is available to patients who need it.

---

[1] ~~Meanwhile, civilly committed patients have no one to advocate on their behalf because Oregon's civil commitment scheme does not provide them with counsel after the point of commitment. While individuals who are detained have a right to counsel during the court process leading up to an order of commitment, that representation ends at the time the order is entered. Having been civilly committed, individuals are no longer represented by counsel to protect their rights. They are lost to the oversight of the courts that have committed them, as is OHA, which disclaims responsibility for their care.~~

~~4877-6005-3312.1~~

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 15

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~95575689~~.1

25. ~~OHA has neglected its responsibilities to~~ Historically, civilly committed ~~patients partly because it is unlawfully prioritizing care for other populations of mentally ill~~ individuals ~~Historically, individuals civilly committed for 180 days~~ went to the Oregon State Hospital (OSH), the mental health hospital operated and managed by OHA. ORS 179.321(1). OSH is intended to be used by the state "for the care and treatment of persons with mental illness." ORS 426.010. ~~It is the only state hospital in Oregon and is supposed to serve three populations of mentally ill persons: (1) civilly committed individuals, those found guilty except for insanity (GEI) in a criminal case, and aid-and-assist patients who are arrested but not able to participate in their defense because of a mental illness.~~

~~However, over the years,~~ Within OSH are multiple secure long-term residential treatment units which provide the long-term treatment that many civilly committed patients need:



fewer restrictions, more independence, a more calm and stable environment, more stable peer communities, less patient turnover, more socialization and peer support, more group counseling, and more training and education programs for patients to learn to care for their basic needs, maintain employment, and maintain healthy relationships. However, over the years (and as a result of other litigation), OHA has increasingly prioritized the admission of aid-and-assist and GEI patients at OSH over civil commitment patients. ~~For example, in November of 2018, a 26-~~

~~4877-6605-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 16

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~95575689~~.1

bed unit for civil commitment patients at OSH was turned into a unit for aid-and-assist patients. In July of 2019, another 26-bed unit for civil commitment patients was converted to use for aid-and-assist patients. In December of 2019, OSH stopped taking civilly committed patients altogether and shifted admission priorities to focus entirely on the aid-and-assist and GEI populations. Over this period, OHA has done little to create additional capacity for civilly committed patients to receive needed treatment in appropriate settings, taking resources away from the civil commitment population to prioritize care for other populations of mentally ill persons.The graph below (provided by OSH) illustrates this trend:

In December of 2019, OSH stopped taking civilly committed patients virtually altogether, shifting admission priorities to focus almost entirely on the aid-and-assist and GEI populations.

26.    As a result, the admittance rate of civilly committed patients to OSH has plummeted (and the numberOver this period of admitting steadily fewer civil commitment patients to its state hospital facilities, OHA has done virtually nothing to create additional capacity for civilly committed individuals stuckpatients to receive needed treatment in acute care hospitalsappropriate settings. For instance, OHA has skyrocketed). Five years ago, about one-third of OSH patients, or more than 200, werenot increased capacity at OSH to continue accommodating civilly committed. Between January and March of 2021, 94% of new patients at OSH wereeven as it has admitted steadily more patients from the aid-and-assist patients, and in June of 2021, the civil commitment population made up less than 5% of OSH patientsand GEI populations. Nor has OHA built other secure residential treatment facilities (or other long-term treatment options) outside of OSH.

27.    By law, OHA may not prioritize    OHA has also failed to ensure that other entities authorized to care for civilly committed patients—like counties, municipalities, and nonprofit organizations—can fill the gap left by the state. OHA has failed to, for instance, provide sufficient funding, grants, or other incentives for other entities to create and run long-

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 17

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95576683.1

Formatted: Normal

Formatted Table
Formatted: Tab stops: 3.3", Centered
Formatted: Font: Bold
Formatted: Font: Bold
Formatted: Font: 8 pt, Condensed by 0.1 pt
Formatted: _WA Footer Space

term treatment facilities needed by many of the patients who are civilly committed to OHA's custody but not receiving long-term treatment by OHA.[2]

28.     Plaintiffs strongly support the rights of aid-and-assist and GEI patients, who should be removed from jail and receive meaningful treatment. But OHA is responsible for civilly committed patients, too, and must serve aid-and-assist and GEI patients without abandoning civilly committed patients. Indeed, the law prohibits OHA from prioritizing aid-and-assist patients over civilly committed patients if it means giving civilly committed patients inadequate care. The Ninth Circuit Court of Appeals has held that, when it comes to providing constitutionally adequate treatment to involuntarily detained patients, "[l]ack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Ohlinger v. Watson*, 652 F.2d 775,at 779 (9th Cir. 1980).. Indeed, OHA's recent practices have already been adjudged unlawful by this Court. On November 15, 2021, in *Bowman v. Matteucci*, 3:21-cv-01637, Judge Marco A. HernandezHernández granted injunctive relief to GEI patients who claimed that they were unconstitutionally being denied admission to OSH because OHA was prioritizing the admission of aid-and-assist patients. OHA had argued that, due to an injunction regarding admission requirements for aid-and-assist patients in *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121–22 (9th Cir. 2003), OHA had to prioritize aid-and-assist patients over other populations of patients. Judge HernandezHernández expressly rejected the notion that OHA may prioritize the constitutional rights of some patients over others:

> If OSH cannot admit GEI patients while admitting aid-and-assist patients within the court-ordered timeframe, it's because OSH lacks the space and the funding to

---

[2] For example, in the entire State of Oregon, there are currently **only two** Class One secure residential treatment facilities. A Class One facility is approved "to be locked to prevent a person from leaving the facility, to use seclusion and restraint, and to involuntarily administer psychiatric medication." OAR 309-033-0520(3). These are critical resources that some civilly committed individuals may require before they are ready to step down to a lower level of care.

SECONDAMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax: +1.503.727.2222220.2480

do so—not because the *Mink* order compels it to prioritize one group over another. In other words, any prioritization stems from Defendant's failure to provide the funds, staff, and facilities necessary to satisfy the constitutional rights of both groups. **When satisfying constitutional guarantees, Defendants cannot rob Peter to pay Paul.**

*Bowman v. Matteucci*, 3:21-cv-01637, 2021 WL 5316440, at *2 (D. Or. Nov. 15, 2021) (emphasis added). Despite this unambiguous ruling, OHA continues to systematically prioritize care for ~~aid-and-assist~~other patients over care for civilly committed patients, ~~once~~ again "robbing Peter to pay Paul."

**D.      OHA has effectively outsourced its responsibilities to the civilly committed population to community hospitals without hospitals' consent.**

29.     Rather than addressing these problems by increasing long-term treatment capacity and options throughout Oregon, OHA has effectively outsourced its responsibilities to civilly committed patients by leaving patients indefinitely in community hospitals' emergency rooms and acute behavioral care units.

30.     Plaintiffs are Oregon's four largest Health Systems, each of which operates several community hospitals across Oregon. Each of Plaintiffs' hospitals have emergency departments or emergency rooms where patients experiencing severe crises and psychiatric emergencies may receive emergency psychiatric care. Some (but not all) of Plaintiffs' hospitals have acute behavioral care units, in which patients requiring further acute care after emergency treatment can be treated and monitored overnight or, at most, for a few days while they stabilize.

31.     Due to the high level of close monitoring and treatment involved in providing acute care for these patients, emergency and acute behavioral care settings are highly restrictive. Other patients occupying the units them are generally not stable because they are still in the process of being treated and stabilized. Further, the environments are not calm, and the rate of patient turnover is high. These environments are not conducive to patients who require the calm, stability, and freedom that exists in long-term treatment environments. There is no realistic way for Plaintiffs to realistically provide long-term treatment in such environments.

~~4877-6005-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 19

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-413~~897205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~95575689~~1

32.    In comparison, secure residential treatment facilities are a more suitable places for a civilly committed individuals who no longer require emergency or acute behavioral care because they offer long-term treatment (which acute care hospitals do not) and allow more freedom and independence for the patient. For example, a patient at an acute care unit necessarily must live in confined, closed-off, heavily monitored physical spaces:

 



4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 20

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

A patient at OSH or a secure residential facility, meanwhile, may recover in a living space far more conducive to meaningful long-term recovery:



Long-term treatment facilities also tend to have enriching facilities and opportunities that are vital to patients' long-term recovery, like gyms, education and vocational opportunities, outdoor facilities, cafés, markets, and coffee shops. Individuals in long-term residential treatment facilities can sometimes go places on day passes, wear their own clothes, and go outside daily for fresh air. There can be family and friend events and peer support specialists on staff. Those amenities and opportunities are generally no available in the emergency departments and acute care units of community hospitals.

33.     Most individuals who become civilly committed begin the civil commitment track via the emergency department of a community hospital. Patients are often brought to Plaintiffs' hospitals by law enforcement or first responders, who deliver individuals to the emergency departments when they are in acute distress. Patients also may be brought by family or friends, or on their own accord. Under both state and federal law, whenever patients arrive at Plaintiffs' emergency room doors, Plaintiffs **must** evaluate and, if necessary, treat the patients regardless of

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 21

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

Formatted Table
Formatted: Tab stops:  3.3", Centered
Formatted: Font: Bold
Formatted: Font: Bold
Formatted: Font: 8 pt, Condensed by  0.1 pt
Formatted: _WA Footer Space

patients' ability to pay or whether the patient might later be civilly committed. The Emergency Medical Treatment and Active Labor Act ("EMTALA") requires, for example, that hospitals evaluate and treat all patients who arrive at an emergency room, regardless of whether the patient can pay or any other reason; and if Plaintiffs were to fail to evaluate and provide emergency treatment to a patient for any reason, Plaintiffs could be cited for violation of federal law and lose federal Medicare funding. Similar obligations are imposed by OHA's own regulations that apply to community hospitals. OAR 333-520-0070. As such, because of the operation of these state and federal laws and regulations, Plaintiffs must accept all patients into their emergency departments and cannot control which patients enter their hospitals.

34.     Where a patient admitted to the emergency room potentially meets the criteria for civil commitment—that is, they present a danger to themselves or others or are unable to care for their own basic needs, due to their mental illness—a licensed independent practitioner may initiate civil commitment proceedings. Where this happens, Plaintiffs must involuntarily detain and hold the patient for several days under a "Notice of Mental Illness," at least until the state holds a civil commitment hearing and a state court judge issues a commitment order (or until the patient no longer meets detention criteria). Of the patients who are detained, some remain in emergency departments while others may be admitted to the scarce number of inpatient psychiatric beds that exist in plaintiffs' hospitals, and still others may be admitted to inpatient medical unit beds. Regardless of where patients are located in plaintiffs' hospitals, federal and state law and medical ethics rules prohibit Plaintiffs from discharging these patients while they are psychiatrically unstable, lack a safe discharge plan, and are being detained under Oregon civil commitment law. Plaintiffs also cannot discharge patients in their emergency rooms under EMTALA; if they do, they would be subject to enforcement action which might include loss of Medicare funding. 42 C.F.R. § 482.43. As detailed below, this would be true even if Plaintiffs withdrew their certification for providing acute care services to civilly committed patients—if

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 22

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE/STOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

Plaintiffs did this, there would simply be no beds to which to send most patients, and patients would remain in the emergency room or in an inpatient unit.

35.     In the period between a patient's arrival in an emergency department and the time of their civil commitment hearing, Plaintiffs provide emergency psychiatric care and/or acute behavioral care to stabilize the patient. Such care is short-term in nature and, as such, requires only a brief period of treatment. After a few days, some patients generally are stabilized as much as is medically possible under their individual mental conditions and, from that point on, receive no further medical benefit from emergency psychiatric care and acute behavioral care. Patients involved in civil commitment proceedings typically reach this point around the time of, or shortly after, their civil commitment hearing and order of commitment (if the state judge orders them committed).

36.     Where a patient is ordered committed, Oregon law charges OHA with the responsibility for "tak[ing] the person with mental illness into its custody" and "ensur[ing] the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility." ORS 426.150(1). OHA must direct the civilly committed person "to the facility best able to treat them or ensure that the person is directed to a "suitable" facility. ORS 426.060(2)(a), (d). Some civilly committed patients can be stabilized within two to three weeks of commitment; for those individuals, remaining in acute care units may be appropriate because those patients may still benefit from emergency psychiatric and acute behavioral care. Other civilly committed patients, however, already have been stabilized as much as is medically possible around the time they are civilly committed (or shortly thereafter) and have received all medical benefit possible from the emergency psychiatric care and acute behavioral care that Plaintiffs provide. Under a functional statewide behavioral healthcare system, OHA is supposed to send *those* committed patients (who are no longer benefiting medically from emergency psychiatric care and acute behavioral care) to a suitable facility that provides long-term care, such as a secure residential

4877-6605-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 23

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

Formatted Table

Formatted: Tab stops: 3.3", Centered

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: 8 pt, Condensed by 0.1 pt

Formatted: _WA Footer Space

treatment facility. But OHA does not differentiate between civilly committed patients who continue to need emergency psychiatric or acute behavioral care and those who do not. Rather than consider the individual needs of the patient and exercise discretion to make affirmative decisions about whether such patients should either remain in a community hospital or be transferred to a different facility (and rather than delegating that decision to a qualified person and ensuring that they make the decision appropriately), OHA fails to exercise any discretion and make any decision and simply leaves patients in the community hospitals where they already are. In doing so, OHA also does not consult with the treating physicians of those community hospitals to determine the best location for individual patients' care, as is required by OAR 309-033-0270(3)(a).

37.    Currently, OHA is simply leaving civilly committed patients in the community hospitals where they were first brought, despite that, for some individuals, the patient can no longer receive any medical benefit from the emergency psychiatric care and acute behavioral care that Plaintiffs provide and *cannot* receive the long-term treatment the patients need, despite Plaintiffs' best efforts to provide good medical care to patients. Community hospitals are simply not equipped, staffed, or designed to house these civilly committed individuals for months at a time, let alone six months or more.

38.    Due to the operation of state and federal laws and regulations and medical ethical rules, where OHA leaves civilly committed patients in Plaintiffs' community hospitals, Plaintiffs have no feasible options other than to continue to house the patient and provide basic care (i.e., administer basic regular medications) and consumable resources (i.e., food, toiletries, and other basic provisions) indefinitely. For a handful of civilly committed patients, this indefinite period lasts for several weeks and, sometimes, several months.

39.    Plaintiffs cannot transfer the patients elsewhere because, almost always, there is nowhere for the patient to go. Under state and federal law, Plaintiffs can transfer a patient to

4877-6905-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 24

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

another hospital for treatment *only if* the other hospital *both* (1) is certified to care for civil commitment patients *and* (2) has available beds. If there is no certified hospital with available beds that agrees to accept the civilly committed patient, the patient cannot be transferred and remains in the Plaintiffs' hospitals with no realistic prospect of receiving the long-term treatment they require. Plaintiffs' hospitals, however, provide most available hospital beds in the entire state of Oregon. Out of approximately 460 licensed inpatient psychiatric treatment beds available across all Oregon's communities, 264 (57.4%) are in plaintiffs' facilities. Because of the severity of Oregon's behavioral health crisis, all other Oregon beds that are designed for long-term treatment are typically full with long and often closed waitlists of their own. And even when such other facilities are not full, they often prioritize referrals from OSH, while referrals from acute care hospitals are given less priority. There simply is not enough available capacity in Oregon for Plaintiffs to transfer civilly committed patients to other facilities (whether for long-term treatment or otherwise).

40.    Plaintiffs cannot afford to add more beds to their hospitals or build their own long-term treatment facilities for civilly committed patients left in their care.

41.    Despite that OHA's mission statement is to "ensur[e] all people and communities can achieve optimum physical, mental, and social well-being," OHA has suggested to Plaintiffs that, if Plaintiffs can no longer medically help a civilly committed patient left in Plaintiffs' care, Plaintiffs should simply discharge the civilly committed patient to the sidewalk.

42.    But discharging civilly committed patients—as OHA recommends—would result in an unmitigated disaster for both patients and the community and would require Plaintiffs to violate both law and court orders. A patient who is under civil commitment is, by definition, someone who presents a danger to themself or others or who is "unable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future." ORS 426.005(1)(f). Thus, if Plaintiffs followed OHA's recommendation and discharged civilly

4877-6605-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 25

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE STOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-4128 97205
Phone: +1.503.727.2000 224.3380 • Fax:
+1.503.727.2222 220.2480

95575689 1

Formatted Table
Formatted: Tab stops: 3.3", Centered
Formatted: Font: Bold
Formatted: Font: Bold
Formatted: Font: 8 pt, Condensed by 0.1 pt
Formatted: _WA Footer Space

committed patients into the community without any discharge plan and with nowhere to go, there is a substantial chance that the patient will cause harm to themselves or others in the community. There is also a substantial likelihood that the individual—who is still suffering from a severe and insufficiently treated psychiatric condition or crisis—would be picked up by first responders and brought right back to one of Plaintiffs' emergency departments. Plaintiffs, meanwhile, would violate several state and federal laws and ethical rules. For instance, Plaintiffs would violate OAR 309-033-0250(6), which requires that civilly committed patients in hospital facilities "may only be released by the court" unless transferred to another facility. Plaintiffs would also violate ORS 441.053(2), 441.054, OAR 333-505-0055, and OAR 333-520-0070(4), which require discharge of patients only in accordance with a discharge plan that considers and accommodates the individual needs of patients (which, for the patients at issue here, require long-term treatment). Plaintiffs would also violate EMTALA to the extent the patients are staying in beds in the emergency department. *See* 42 CFR § 482.43. These violations may result in fines and/or losses of Plaintiffs' licensure. Such violations would also harm Plaintiffs' reputations as hospitals and health systems that provide care for all patients of all walks of life and put patients' needs first. OHA knows or should know that this is not a realistic suggestion. In fact, it is the existence of these laws that has enabled OHA to essentially outsource its obligation to care for civilly committed individuals to community hospitals.

43.     OHA has also suggested that Plaintiffs could avoid having civilly committed patients left in their care indefinitely if Plaintiffs declined to acquire certification to treat civilly committed patients. But declining to acquire certification to treat civilly committed individuals would not materially change the situation for Plaintiffs. Even if Plaintiffs were not certified to treat civilly committed patients, Plaintiffs would still be required by law to receive, evaluate, and treat all patients who enter their emergency rooms, before civil commitment occurs. Plaintiffs would still have to hold and provide emergency psychiatric treatment to patients who are placed

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 26

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3300 • Fax:
+1.503.727.2222220.2480

95575689.1

in civil commitment proceedings, before commitment. Plaintiffs would still be prohibited by state and federal laws and regulations, and medical ethical rules, to discharge the patient while civil commitment proceedings are ongoing. And, when patients are committed, Plaintiffs still would be unable to lawfully discharge the patient or transfer the patient to another hospital unless the other hospitals both (1) is certified and (2) has available beds. If no other certified beds are available elsewhere, the patient would nonetheless remain in Plaintiffs' hospitals regardless of whether Plaintiffs are certified to treat civilly committed patients, because Plaintiffs would be legally prohibited from discharging the patient and there is nowhere else for the patient to go.

44.    Indeed, if Plaintiffs ceased acquiring approval and certification to treat civilly committed patients, it would be certain that there would be woefully insufficient certified beds available in the rest of the state to receive Plaintiffs' civilly committed patients. As noted, there are only certified 460 psychiatric beds in Oregon in all, and 264 of them (over 57%) are located in Plaintiffs' hospitals. If Plaintiffs removed their 264 beds from the statewide pool, *far more* civilly committed patients would be in need of transfer, yet *far fewer* licensed beds would be available in the rest of the state to receive them (as noted, those beds are already full and have long and often closed waitlists of their own). Because Plaintiffs are four of Oregon's largest health systems and make up so much of Oregon's total psychiatric resources, the withdrawal of Plaintiffs' beds from the available certified pool would create an unprecedented shortage of psychiatric resources that would make it essentially certain that Plaintiffs would have no available places to send civilly committed patients left in their care. Instead, the patients would remain at the hospital and Plaintiffs would suffer the same or worse injuries as they do when certified.[3]

---

[3] Although OHA has suggested that Plaintiffs could avoid their injuries by simply declining to become certified in the future, OHA knows that this realistically would not address the backup of civilly committed patients in the Plaintiffs' emergency departments. As discussed below, OHA

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 27

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** **STOEL RIVES** LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-4128 97205
Phone: +1.503.727.2000 224.3380 • Fax:
+1.503.727.2222 220.2480

95575689.1

Formatted Table

Formatted: Tab stops: 3.3", Centered

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: 8 pt, Condensed by 0.1 pt

Formatted: _WA Footer Space

45. Plaintiffs' choice to acquire state certification from OHA to provide emergency psychiatric care and acute behavioral care to civilly committed patients does not amount to consent to be left indefinitely with civilly committed patients who no longer benefit from such care. Nor does Plaintiffs' choice to acquire state certification amount to a voluntary choice to be left with the responsibility to provide long-term treatment to such patients. To the contrary, the certification process is highly specific to certain kinds of psychiatric and behavioral care. Hospitals are certified to provide only specific services that they are equipped to provide, and nothing more. This is for good reason. It is a serious responsibility to provide any treatment to civil commitment patients, as doing so often involves providing treatment to an unwilling patient who, due to their several mental illness, vigorously resists treatment. Not just any hospital can be trusted with this grave responsibility. To become certified, hospitals must undergo a rigorous certification process to show they have sufficient staff, training, equipment, space, and so on to safely, effectively, and ethically provide such care to civilly committed patients. Because civilly committed patients generally need multiple different kinds of care during their commitment (i.e., emergency care, acute care, long-term care)—and each kind of care requires different kinds of training, equipment, facilities, and so on to safely, effectively, and ethically provide—certification is treatment-specific so that patients who need a certain kind of care are not treated by hospitals that are unable to provide that care safely, effectively, and ethically. *See* OAR 309-

---

conducted a study of "Emergency Department Boarding of Psychiatric Patients in Oregon" in 2017 and concluded that the decreasing number of beds available for civilly committed patients at OSH "results in more civilly committed individuals waiting in acute care" in community hospitals, which in turn "decreases the access to acute care beds, which causes a backup in the ED." Oregon Health Authority, Emergency Department Boarding of Psychiatric Patients in Oregon, Report Briefing, Feb. 1, 2017, *available at* https://www.oahhs.org/assets/documents/files/publications/0%20OHA%20Psychiatric%20ED%20Boarding%20Report%20Brief%20Final.pdf. Thus, OHA knows that, with *both* the unavailability of beds at OSH for civilly committed patients *and* the suggested withdrawal of Plaintiffs' 264 acute care beds (out of 460 in Oregon, that is, 57%), there would be far too few available acute care beds in Oregon to meet the overwhelming demand—and the result of this shortage will be felt in community hospitals' (including Plaintiffs') emergency departments.

4877-6005-1312.1

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 28

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

033-0530(1) ("Only hospitals . . . approved by the Division . . . shall provide care and treatment services for persons under civil commitment . . . ."). A hospital can become certified to provide the following types of care:

    (a)    Acute and emergency care (which includes an even more limited subcategory of "hospital hold and seclusion room services (5 day Hold)");

    (b)    Class I secure residential treatment, a form of long-term treatment in which a hospital may physically restrain patients and involuntarily administer psychiatric medication; and

    (c)    Class II secure residential treatment, another form of long-term treatment in which a hospital may not physically restrain or medicate patients but may lock the facility so the patient cannot leave.

46.    Plaintiffs' hospitals have acquired certification for only the first kind of treatment—emergency and acute psychiatric care. Plaintiffs have not sought certification or voluntarily consented to providing long-term treatment, and OHA has neither evaluated Plaintiffs' hospitals nor deemed them suitable for such treatment. Yet OHA leaves civilly committed patient who no longer need emergency or acute psychiatric care, and who instead need long-term care, in Plaintiffs' hospitals indefinitely. As such, OHA effectively has outsourced its responsibility to ensure adequate treatment for such patients to Plaintiffs' hospitals, without Plaintiffs' consent and to both Plaintiffs' and patients' detriment.

**E.**    **OHA's practices hurt both civilly committed patients and community hospitals.**

47.    OHA's practices cause civilly committed patients requiring long-term treatment to be left indefinitely in community hospitals that are not equipped and able to provide the

4877-6605-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 29

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

needed long-term care. This leads to an unconscionable (but, unfortunately, common) situation where individuals are denied the care that justifies their commitment in the first place and that they are constitutionally entitled to receive. As a result, the patient's liberty is unnecessarily curtailed, the patient does not meaningfully recover, the patient becomes more likely to be re-committed in the near future, and the very purpose of civil commitment is undermined.

48.    OHA's practices also negatively impact community hospitals. When civilly committed patients are left in community hospitals after the point at which they no longer medically benefit from emergency psychiatric and acute behavioral treatment, Plaintiffs must divert resources to house and provide basic care for civilly committed patients and not Plaintiffs' other patients. Housing and providing basic care to civilly committed patients require significant resources and attention by physicians, nurses, and other healthcare professionals—resources and attention that Plaintiffs cannot simultaneously direct toward other patients who would medically benefit from emergency psychiatric and acute behavioral treatment. Basic care to such civilly committed individuals includes provision of a hospital bed, medication, food, housekeeping services, and other hospital resources, which Plaintiffs accordingly cannot allocate to other patients. Oftentimes, civilly committed patients require a one-on-one sitter 24 hours a day to ensure their safety and the safety of other patients and staff.

49.    The beds occupied by civilly committed patients are not available for other patients who need them, as patients back up in emergency departments, resulting in hardship for others who need to access acutely needed medical and mental health treatment. Some individuals are so acute that adjacent rooms must be closed for safety. In many cases, these individuals cannot safely be in shared rooms, further reducing capacity.

50.    OHA's practices deprive Plaintiffs of their property without due process of law and effectuate a taking of Plaintiffs' property as OHA forces community hospitals to hold and care for civilly committed individuals who, by law, have been committed to the custody of OHA

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 30

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

for treatment. Although OHA provides Plaintiffs with a small amount of reimbursement for holding civilly committed patients, the reimbursement received is inadequate, causing financial harm. Additionally, OHA does not require their Coordinated Care Organizations to contract with all Oregon hospitals who are certified to provide care, resulting in inadequate reimbursement for necessary medical care and no consequences for having failed network panel adequacy as required by their contracts. In addition, Plaintiffs incur additional expenses for additional staff and workers' compensation costs, property damage, and room closures, for which they are not reimbursed. Plaintiffs are all non-profits, but their behavioral health units are suffering unsustainable losses that amount to tens of millions of dollars a year. If this continues, some of these important behavioral health resources may be forced to close.

51.     Despite knowing of its unlawful practices for years, OHA continues to allow them. OHA benefits by passing the costs of treating severely mentally ill patients to private entities. In effect, OHA has silently outsourced the civil commitment system to Oregon health systems and acute care community hospitals without their consent or agreement.

52.     The negative impact of OHA's practices, conduct, failures, and inaction on Plaintiffs and other Oregon community hospitals are severe and ongoing. Because the patients are civilly committed, they can only be discharged to secure settings, or else must be kept in the hospital until they no longer meet commitment criteria. This can mean hospital stays of several weeks, to several months, up to the entire 180-day commitment, and, in some cases, through recommitment periods as well. In turn, this prevents community hospitals from being able to treat and stabilize other vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness.

**F.      Rather than engage meaningfully with the problem, OHA has failed to find a solution for civilly committed individuals and blamed the counties and nonprofit care providers.**

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 31

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE STOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000 224.3380 • Fax:
+1.503.727.2222 220.2480

95575689.1

Formatted Table
Formatted: Tab stops: 3.3", Centered
Formatted: Font: Bold
Formatted: Font: Bold
Formatted: Font: 8 pt, Condensed by 0.1 pt
Formatted: _WA Footer Space

53.     Over the past several years, Plaintiffs have pleaded with OHA for assistance and support in finding appropriate placements for civilly committed individuals countless times. Plaintiffs have asked OHA to seek more resources, expand services, and build capacity rather than detain civilly committed individuals indefinitely in restrictive acute care settings. Plaintiffs have offered to collaborate with OHA to find, or invent, a workable solution. Almost without exception, OHA has been unresponsive and has failed to provide a solution for the patients for whom it is responsible. Plaintiffs have also asked OHA to hold the Coordinated Care Organizations accountable for reimbursement for their members who are placed in non-contracted hospitals. OHA has also failed to provide a solution for these patients for whom their contracted entities are responsible.

54.     OHA's failure to provide appropriate and legally required treatment to civilly committed individuals—and the negative impact on Oregon's community hospitals—is well known to OHA. A 2017 study for OHA concluded: "Patients at the state hospital for aid and assist take up beds that could be used for civil commitment patients. This results in more civilly committed individuals waiting in acute care for a state hospital bed to open up. This decreases the access to acute care beds, which causes a backup in the ED. Multiple strategies have tried to reverse this trend with only minimal success. OHA is revitalizing planning and actions and will have a strategic action plan in place by February 2017."[4] But, despite having known of its practices since 2017, OHA has continued to ignore its statutory obligations and has continued to knowingly reduce long-term placement options for civilly committed patients over that time.

55.     Today, OSH rarely admits civilly committed patients—despite the fact that OSH

---

[4] Oregon Health Authority, Emergency Department Boarding of Psychiatric Patients in Oregon, Report Briefing, Feb. 1, 2017, *available at* https://www.oahhs.org/assets/documents/files/publications/0%20OHA%20Psychiatric%20ED%20Boarding%20Report%20Brief%20Final.pdf.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 32

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE STOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax: +1.503.727.2222220.2480

95575689.1

is not at 100% capacity and has empty beds.[5] This last year, OSH averaged less than 20 civil commitment patients per month, including a grand total of 16 in June of 2022. In the last few years, the only way a handful of civilly committed individuals have gotten into OSH is by qualifying for expedited admission due to being severely violent. To qualify for expedited admission, OHA requires that the person exhibit severe aggression directed towards other persons and/or property in the previous two weeks, and which has resulted in injury to others or property destruction, required frequent or prolonged restraint and/or seclusion, has persisted and remains at ongoing high risk of recurrence despite adequate treatment, and cannot be safely treated on an acute psychiatric unit.[6] In other words, OHA requires the person to be severely violent towards others and/or property—while in the acute care hospital—to even be considered for admission to OSH. Even then, individuals who should qualify for expedited admission are routinely denied, and left in acute care hospitals. In effect, OHA has made admission to OSH next to impossible for most civilly committed individuals who are not violent at all, and have done nothing wrong other than to suffer from a mental illness.

Meanwhile, **not one** civilly committed person has been admitted to OSH in the last several years based on the regular admission criteria. While individuals who meet regular admission criteria are routinely placed on the wait list for OSH, they are never admitted. Essentially, it has become a wait list to nowhere.

This past month, despite its legal obligations to avoid prioritizing the constitutional rights of some patients over others, OHA acquiesced to a motion in related litigation to compel OHA to do just that. In ongoing litigating in *Or. Advocacy Ctr. v. Mink*, 3:02-cv0339-MO, the plaintiffs—who represent aid-and-assist and GEI patients—moved to

---

[5] This is according to sworn testimony from behavioral health director Steve Allen on July 20, 2022.
[6] Request for Oregon State Hospital Expedited Admission, https://www.oregon.gov/oha/OSH/LEGAL/Documents/Expedited_Admission_for_Patients_Under_CIVIL_Commitments.pdf.

4877-6005-3312.1

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 33

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

enjoin OSH to effectively prioritize admission of aid-and-assist and GEI patients into OSH. Among other things, the plaintiffs asked for an injunction that expressly prohibits admission of civilly committed patients into OSH unless the civilly committed patient meets the stringent criteria for expedited admission, while admitting more readily admitting aid-and-assist and GEI patients. Despite that such prioritization is unlawful under both Supreme Court precedent and this Court's prior order in *Bowman v. Matteucci*, 3:21-cv-01637, 2021 WL 5316440, at *2 (D Or Nov 15, 2021),[7] OHA declined to oppose the plaintiffs' motion and did not raise the issue to the Court. The Court granted the plaintiffs' motion as unopposed on September 1, 2022. Partly because OHA willfully declined to oppose the plaintiffs' motion in *Mink*, it is now even less likely that a civilly committed patient is timely admitted to OSH and receives constitutionally adequate treatment.[8]

---

[7] *Bowman* was later consolidated with *Mink* after the November 15, 2021 Order but before the September 1, 2022 Order.

[8] The *Mink* Order also sets firm time limits on the time which aid-and-assist patients can remain at OSH; these time limits expire regardless of whether the patient has recovered from their mental illness and is ready to return to the community. Patients discharged from OSH before full recovery will likely end up right back in the state's custody, through civil commitment; but, under the status quo, these individuals will then be even less likely to receive appropriate care than they could as aid-and-assist patients.
4877-6005-3312.1

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 34

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax: +1.503.727.2222220.2480

95575680.1

**Formatted Table**

**Formatted:** Tab stops: 3.3", Centered

**Formatted:** Font: Bold

**Formatted:** Font: Bold

**Formatted:** Font: 8 pt, Condensed by 0.1 pt

**Formatted:** _WA Footer Space

~~The closure of OHS's doors to the civilly committed population means that these individuals are denied access to appropriate long-term treatment in a far less restrictive setting. In comparison to a restrictive acute care unit, OSH is a much more humane place for an individual to be not only because it offers long-term treatment (which acute care hospitals do not), but also because individuals have much more freedom and a better quality of life.~~

Despite knowing about how its practices are hurting both civilly committed patients and community hospitals, OHA has indifferently continued its practiced and indicated no serious



intent or interest in changing its ways otherwise helping patients or hospitals. OHA officials apathetically shrug their shoulders and say that the chief problem is OHA's lack of enough funding in their budget and available beds in the state hospital system. OHA knowingly communicates to Plaintiffs that they will simply have to keep forfeiting their property for the service of OHA and that civilly committed patients will have to forego needed long-term treatment, notwithstanding their need and constitutional entitlement to it.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 35

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

95575689.1

56.    OHA may not outsource For example, a patient at an acute care unit necessarily must live in confined, closed-off, heavily monitored physical spaces:

A patient at an OSH facility, meanwhile, may recover in a living space far more conducive to meaningful long-term recovery:



OSH has gym facilities, education and vocational opportunities, extensive outdoor facilities, and even a café. Individuals at OSH can go places on day passes, wear their own clothes, and go outside daily for fresh air. There are also family and friend events and peer support specialists on staff at OSH. None of those amenities and opportunities are available in acute care hospitals.

**D.    OHA has systematically failed the civilly committed population and left them to languish indefinitely in acute care community hospitals.**

OHA has systematically failed in its responsibility to ensure that civilly committed individuals receive the care and treatment they need and are legally entitled to receive as a condition of taking away their liberty. This failure has been the subject of rulings by Oregon courts and repeated pleas to OHA for help.

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 36

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

Due to OHA's inaction, there is a severe shortage of appropriate placements that are able to provide higher levels of care and long-term treatment needed to care for this vulnerable population.[9] Most secure residential treatment facilities are often full and have closed waitlists. Even when a facility is not full, most prioritize referrals from OSH, while referrals from acute care hospitals are given less priority. With no options for long term placement, civilly committed individuals remain stuck in acute care hospitals without access to meaningful treatment. It leads to an unconscionable, but all too common situation, where individuals are denied the care that justifies their commitment in the first place and that they are constitutionally entitled to receive.

The following stories represent just some of the harrowing experiences civilly committed patients have endured after being committed to OHA and then left to languish in community hospitals indefinitely, without access to appropriate long-term treatment.

On October 23, 2021, an individual was brought by ambulance to the emergency department of a community hospital after assaulting another resident at his group home. He was on a trial visit after being involuntarily committed for 180 days of treatment on December 9, 2022, and recommitted for another 180 days of treatment on June 7, 2021. Once evaluated in the emergency department, he revealed that he was acting on command auditory hallucinations. Given his risk of assaultive behavior, he was admitted to the acute behavioral health unit. On October 28, 2021, the court revoked his trial visit and remanded him to the custody of OHA. The order should have resulted in him being transferred to an appropriate long-term placement. But that did not happen, and he remained in the community hospital. On November 17, the court continued his commitment for an additional 180 days. This order, too, should have resulted in

---

[9] For example, in the entire State of Oregon, there are currently **only two** Class One secure residential treatment facilities. A Class One facility is approved "to be locked to prevent a person from leaving the facility, to use seclusion and restraint, and to involuntarily administer psychiatric medication." OAR 309-033-0520(3). These are critical resources that some civilly committed individuals may require before they are ready to step down to a lower level of care.

4877-6005-3312.1

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 37

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

him being transferred to an appropriate long-term placement. But again, that did not happen and he remained indefinitely in a restrictive acute care setting. During his admission, the patient exhibited exceptionally aggressive behavior that was instantaneous and unpredictable. He assaulted a nurse which resulted in a concussion, verbally threatened to kill staff, threw objects at his care team, and cornered a nurse in the hallway. As a result of his threatening and disruptive behavior, staff called out for their own mental health, voluntary patients left, and one staff member resigned. The attending physician described the patient as "ONE OF THE MOST DANGEROUS patients [he had] treated on an acute unit in [his] 30 plus years as a psychiatrist." The community hospital tried to get the patient admitted to OSH, but he was denied expedited admission three times. On one of the denials, a physician from OSH said "off the record" that the patient would almost have to kill someone to get in that way. Ultimately, it took intervention in the civil commitment case by the hospital, until two days before a hearing, OSH finally offered expedited admission. Had there been a hearing, the court would have heard that this civilly committed individual spent **over five months** confined in a restrictive setting, where he was only allowed to walk outside his room for 10-15 minutes per shift, could not go outside for fresh air, and wore scrubs every day. The court would have heard that this civilly committed individual spent **165 days** in a community hospital, with no placement decision ever being made by OHA to whom he was committed for treatment.

On November 9, 2021, an individual with chronic schizophrenia was arrested for threatening pedestrians with a five-inch knife. Officers intervened in time, but had to use tasers, less than lethal ammunition, and pepper spray to subdue him. He was arrested and taken to jail. Officials asked to transfer him to OSH, but OSH denied the request. On November 24, he was placed on a magistrate's hold, which required him to be transported to a community hospital due to the court's belief that he was an imminent danger to self or others. Once in the emergency department, he was placed on a notice of mental illness where he was held until being transferred

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 38

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

to the behavioral health unit. On December 2, he was involuntarily committed to the custody of OHA for 180 days of treatment. However, after the commitment order was entered, OHA deliberately failed to make any placement decision for him, and instead left him to languish in the community hospital for almost his entire commitment. The patient spent **more than four months** (a total of **137 days**) confined in a restrictive setting, where he spent his days in a small room without access to fresh air or the outdoors, and crying because he wanted to get out of the hospital. Ultimately, it took intervention in the civil commitment case by the community hospital, a full day hearing, and several rounds of briefing and orders from the trial and appellate courts until OHA complied and he was discharged to a secure residential treatment facility on March 25, 2022.

On January 1, 2022, an individual with impulsive and unpredictable behavior motivated by psychosis was admitted to an acute care hospital. This patient had a lengthy history of psychiatric hospitalizations and interactions with the criminal justice system, including convictions for attempted kidnapping, assault in the fourth degree, and strangulation. She was involuntarily committed to OHA for 180 days of treatment on February 11. However, she remained in the acute care hospital for the next **49 days**. During that time, she required a one-on-one sitter 24 hours a day, and frequently endorsed suicidal ideation with a plan to overdose and homicidal ideation towards her family. She was hypersexual towards male patients and assaulted several staff members. After **90 days**, she was discharged on a trial visit, but she rapidly decompensated in the community and was sent to jail. After her trial visit failed, OHA should have taken custody of her. But that did not happen. Instead, she was sent back to the acute care hospital. Due to her psychotic symptoms, the hospital was unable to keep other patients and staff safe from her explosive and violent outbursts. She spent approximately **96 hours in seclusion**. She was placed on the wait list for OSH on May 3, but denied expedited admission. On July 15, she was transferred to a Class Two secure residential treatment facility, only to return the next

4877-6605-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 39

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

~~day around midnight. According to reports from the facility, she engaged in highly aggressive sexual behavior towards others, refused medication, and eloped. Staff were able to bring her back, but she continued to refuse medication and engage in appropriate behavior. The facility called 911, and she was taken back to the acute care hospital. To this day, she remains in the acute care hospital where she has been for most of this year. She has been taken on and off OSH's regular admission wait list on multiple occasions, and now spent~~ **~~more than eight months~~** ~~confined in a restrictive setting without access to appropriate long-term treatment. OHA has no plan for placement, and cannot provide a date when placement will occur. At this point, it is conceivable that she could spend her entire recommitment period—which ends on February 7, 2023—stuck in the acute care hospital.~~

~~On March 30, 2022, an individual presented to the emergency department of a community hospital after she was found wandering the streets. She presented with symptoms of schizoaffective disorder and psychosis. She was six weeks pregnant. On April 14, she was involuntarily committed to the custody of OHA for 180 days of treatment. Despite the court's order committing her to OHA for treatment, OHA never made a placement decision, and instead left her in the acute care hospital. She is now in the third trimester of her pregnancy, depressed, and sad that all of the other patients are being discharged except for her. She spent her birthday in the hospital and has isolated more ever since then. Due to OHA's failure to find an appropriate long-term placement for her, she has remained stuck in the acute care hospital, in the most restrictive setting possible, that is not best able to treat her—~~**~~for more than four months, while pregnant, and almost her entire 180-day commitment~~**~~.~~

~~OHA's practices also negatively affects community hospitals. When civilly committed patients are left in community hospitals, they require Plaintiffs to divert significant resources to care for civilly committed patients and not Plaintiffs' other patients. Civilly committed patients require significant care by physicians, nurses, and other healthcare~~

~~4877-6905-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 40

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~**PERKINS COIE**~~**STOEL RIVES** LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~95575689~~.1

**Formatted Table**

**Formatted:** Tab stops: 3.3", Centered

**Formatted:** Font: Bold

**Formatted:** Font: Bold

**Formatted:** Font: 8 pt, Condensed by 0.1 pt

**Formatted:** _WA Footer Space

professionals—care that Plaintiffs cannot simultaneously direct toward other patients. Civilly committed individuals receive a hospital bed, medication, food, housekeeping services, and other hospital resources, which Plaintiffs accordingly cannot allocate to other patients. Oftentimes, civilly committed patients require a one-on-one sitter 24 hours a day to ensure their safety and the safety of other patients and staff.

Due to acuity of illness, security personnel frequently are involved, and staff and other patients are often threatened and sometimes injured, and sometimes hospital property is destroyed. As a result of their illness and symptoms, civilly committed patients are often disruptive to the care environment, affecting other patients, visitors, and staff and affecting the care which can be provided to other patients.

The beds unnecessarily occupied by civilly committed patients are not available for other patients who need them, as patients back up in emergency departments, resulting in hardship for others who need to access acutely needed medical and mental health treatment.

OHA's practices deprive Plaintiffs of their property without due process of law and effectuate a taking of Plaintiffs' property as OHA forces community hospitals to hold and care for civilly committed individuals who, by law, have been committed to the custody of OHA. Although OHA provides Plaintiffs with a small amount of reimbursement for holding civilly committed patients, the reimbursement received is inadequate, causing financial harm. In addition, Plaintiffs incur additional expenses for additional staff and workers' compensation costs for which they are not reimbursed.

57.    Despite knowing of its unlawful practices for years, OHA continues to allow them. OHA benefits by passing the costs of treating severely mentally ill patients to private entities. In effect, OHA has silently outsourced the civil commitment system, including the role of OSH, to Oregon health systems and acute care community hospitals.

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 41

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

Formatted Table

Formatted: Tab stops: 3.3", Centered

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: 8 pt, Condensed by 0.1 pt

Formatted: _WA Footer Space

58. The negative impact of OHA's practices, conduct, failures, and inaction on Plaintiffs and other Oregon community hospitals are severe and ongoing. Because the patients are civilly committed, they can only be discharged to secure settings, or else must be kept in the hospital until they no longer meet commitment criteria. This can mean hospital stays of several weeks, to several months, up to the entire 180-day commitment and recommitment period.

E. OHA has responded to pleas for help by attempting to shift its responsibilities to counties and nonprofit care providers, to the detriment of patients and community hospitals.

Plaintiffs have asked OHA for assistance and support in finding appropriate placements for civilly committed individuals. Plaintiffs have asked OHA to seek more resources and expand services, rather than detain civilly committed individuals indefinitely in restrictive acute care settings. Plaintiffs have offered to collaborate with OHA to find, or invent, a workable solution. Almost without exception, OHA has been unresponsive and has failed to provide a solution for the patients for whom it is responsible.

In fact, OHA has gone so far as to **deny** having **any** responsibility for civilly committed patients and asserting that all its responsibility has been delegated to counties. In

```
14      Q      Oregon Health Authority has responsibilities
15  to civilly committed patients, true?
16      A      Yes.
17      Q      And is it your testimony that those
18  responsibilities have all been delegated to Oregon
19  counties?
20      A      I'm not -- I can't -- I'm not picking up an
21  example particular to this case that that isn't.
```

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 42

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE STOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-4128 97205
Phone: +1.503.727.2000 224.3380 • Fax:
+1.503.727.2222 220.2480

95575689.1

Formatted Table

Formatted: Tab stops:  3.3", Centered

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: 8 pt, Condensed by  0.1 pt

Formatted: _WA Footer Space

sworn testimony to a trial court on February 11, 2022, OHA's behavioral health director Steve Allen testified as follows:

In testimony to the legislature on February 18, 2022, Mr. Allen testified as follows with respect to OHA's role in providing appropriate treatment for civilly committed patients: "we don't actually do the work."[10]

And in sworn testimony to a trial court on August 24, 2022, defendant Patrick Allen, testifying for OHA, would not answer whether OHA had responsibility to an individual committed to OHA for 180 days of treatment as a civilly committed individual. Instead, Mr. Allen testified that OHA had delegated responsibility for civilly committed patients to the county and that "they would have the primary responsibility."

OHA may not delegate its ultimate responsibility to provide constitutionally adequate care to civilly committed patients. By law, OHA is responsible for ensuring that civilly committed individuals receive appropriate long-term placements because civilly committed individuals are committed to OHA, not the county or a community mental health program. ORS 426.130(1)(a)(C) (the court may "order commitment of the person with mental illness to the Oregon Health Authority for treatment"); ORS 426.060(1) ("[c]ommitments to the Oregon Health Authority are only to be made by a judge of circuit court in a county of this state."). As such, Plaintiffs seek declaratory and injunctive relief against OHA's unlawful practices.

CAUSES OF ACTION

CLAIMS

**FIRST CLAIM**

**Violation of Civilly Committed Individuals' Rights Under the Due Process Clause
of the Fourteenth Amendment to the United States Constitution**

Violation of Community Hospitals' Rights Under the Due Process Clause

---

[10] Relevant portions of his testimony begin at about 1:41:00, and can be accessed at the following link: https://olis.oregonlegislature.gov/liz/mediaplayer/?clientID=4879615486&eventID=2022021222.

4877-6005-1312.1

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 43

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3300 • Fax:
+1.503.727.2222220.2480

9557568v1

of the Fourteenth Amendment to the United States Constitution

59.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 56 above.

60.    All individuals have the constitutional right not to be deprived of liberty without due process of law. U.S. Const. amend. XIV, § 1. Involuntarily detaining a person due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509.

61.    The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process prohibits governmental deprivation of liberty without adequate procedure. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Substantive due process forbids the government from depriving a person of liberty in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp. v. City of Milwaukie*, 450 F. Supp. 2d 1164, 1175 (D. Or. 2006) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). Liberty interests "may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009).

62.    Civilly committed individuals have a constitutional liberty interest in being free from bodily restraint. The state may involuntarily detain individuals for purposes of providing treatment; however, individuals who are involuntarily detained for this purpose "have a liberty interest in receiving restorative treatment." *Mink*, 322 F.3d at 1121. Due process requires that mentally ill persons who are detained receive treatment calculated to lead to the end of their involuntary detention. *Id.* To that end, states must provide all civilly committed persons with access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778.

4877-6605-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 44

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3300 • Fax:
+1.503.727.2222220.2480

9557568\1

63.     Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant David Baden was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

64.     For years, OHA has engaged in conduct and a policy and practice that violates civilly committed individuals' right to substantive and procedural due process. OHA's conduct, policy, and practice violates civilly committed individuals' liberty interest in restorative treatment and deprives them of a realistic opportunity to be cured or improve the mental condition for which they were confined. When OHA leaves civilly committed individuals in acute care community hospitals, they do not receive access to specialized treatment, care, and training oriented to their long-term needs and focused on their reentry into the community. Instead, they remain confined in unnecessary, overly-restrictive settings without access to long-term treatment for weeks, months, and sometimes their entire 180-day commitment. As a result of OHA's practices, they are more likely to be recommitted and cycle through the system over and over again.

65.     OHA lacks legitimate state interests in leaving civilly committed patients in unnecessary, overly restrictive settings where patients do not receive access to minimally adequate treatment and transition services. Despite knowing of its practices for years, OHA has deliberately avoided addressing these problems, at least in part because OHA directly benefits from its practices by effectively outsourcing the civil commitment process to community hospitals and making community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

66.     There is no state law procedure for community hospitals to ensure civilly committed individuals are placed by OHA in the facility best able to treat them or a suitable facility during their 180-day commitment, so they can receive appropriate long-term treatment.

4877-6005-3312.1

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 45

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

67.     OHA will continue engaging in its conduct, policy, and practice in violation of the Fourteenth Amendment unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law to protect their patients' right to appropriate long-term treatment.

68.     Plaintiffs have standing to represent the population of civilly committed patients being cared for in Plaintiffs' hospitals. Plaintiffs' interests as healthcare providers are closely aligned with the interests of patients on these issues. Successfully compelling OHA to cease its unconstitutional practices would directly stop injuries to both patients and Plaintiffs simultaneously. Plaintiffs do not seek any relief for itself that will injure or not also help civilly committed patients. The only relief Plaintiffs seek in this action involve solutions in which the civilly committed patients will leave Plaintiffs' hospitals only if it means receiving long-term treatment that patients need to recover but that Plaintiffs are not equipped to provide.

69.     Plaintiffs also, as patients' healthcare providers, have close, fiduciary, and confidential relationships with patients, ensuring and incentivizing Plaintiffs to be effective advocates for patients. Plaintiffs are generally bound by federal, state, and ethical rules to serve their patients interests and "do no harm" to patients. Plaintiffs are also bound by state, federal, and ethical rules to maintain confidentiality with patients.

70.     Civilly committed patients face several hindrances from bringing an action for injunctive relief themselves, in which they would seek for OHA to provide constitutionally adequate treatment during the period of their commitment. First, civilly committed patients are committed for only a short duration of time—180 days at most—making it likely that their injuries and equitable claims for relief will become moot before litigation can run its course. Second, civilly committed patients face a recognized stigma for their commitment and thus are

4877-6005-3312.1

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 46

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

inherently disincentivized from bringing a public action related to their commitment. *See generally State v. T.T.*, 293 Or. App. 376, 386, 428 P.3d 921, 927 (2018) (Aoyagi, J., dissenting) (noting the "serious . . . social stigma . . . attendant to a civil commitment"). Third, civilly committed suffer from severe mental illnesses that, as alleged above, often involve severe symptoms including psychosis, hallucinations, and delusions. This makes it exceptionally difficult for them to advocate for themselves or even find and hiring someone to advocate for them.[11] Fourth, civilly committed patients are often indigent and lack funds to hire a lawyer or other advocate, limiting their advocacy options to either themselves (which, as noted, is often a poor option because of their mental condition) or pro bono advocacy. Fifth, civilly committed patients are confined in hospitals and oftentimes, due to their illness, must have highly restricted access to phones and the internet, making it even more difficult for them to find a lawyer or similar advocate to assert claims on their behalf.

71.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates civilly committed individuals' Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

72.    Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## SECOND CLAIM

### 51Violation of Community Hospitals' Substantive Due Process Rights Under the Fourteenth Amendment to the United States Constitution

---

[11] Patients are generally assigned no one to advocate on their behalf because Oregon's civil commitment scheme does not provide them with counsel after the point of commitment. While individuals who are detained have a right to counsel during the court process leading up to an order of commitment, that representation ends at the time the order is entered. Having been civilly committed, individuals are no longer represented by counsel to protect their rights. They are lost to the oversight of the courts that have committed them, as is OHA, which disclaims responsibility for their care.

SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 47

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

73.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 70 above.

74.    The Due Process Clause of the Fourteenth Amendment provides that states shall

not "deprive any person of life, liberty, or property without due process of law." U.S. Const.

amend. XIV, § 1. The Due Process Clause "specially protects those fundamental rights and

liberties which are, objectively, deeply rooted in the Nation's history and tradition, and implicit

in the concept of ordered liberty, such that neither liberty nor justice would exist if they were

sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The right to exclude others

from an owner's property and to use the property as the owner sees fit is one such fundamental

right. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).

75.    The Due Process Clause of the Fourteenth Amendment protects two distinct but

related rights: procedural due process and substantive due process. Procedural due process

prohibits governmental deprivation of liberty and property rights without adequate procedure.

*Cleveland Bd. of Educ.*, *v. Loudermill*, 470 U.S. 532,at 541 (1985).. Substantive due process

forbids the government from depriving a person of life, liberty, or property in such a way that

"shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty."

*Emmert Indus. Corp.*, *v. City of Milwaukie*, 450 F. Supp. 2d 1164,at 1175 (D. Or. 2006) (quoting

*Nunez v. City of Los Angeles*, 147 F.3d 867,at 871 (9th Cir. 1998)). ).

76.    Pursuant to 42 U.S.C. § 1983, every person acting under color of law who

deprives another person of his or her constitutional rights is liable at law and in equity. At all

times relevant, defendant Patrick AllenDefendant David Baden was a person acting under color

of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

77.    For years, OHA has engaged in conduct and a policy and practice that violates

Plaintiffs' and other community hospitals' right to substantive and procedural due process.

Specifically, OHA has knowingly and/or deliberately failed to build or otherwise ensure the

availability of long-term treatment capacity for individuals who have been civilly committed to

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 48

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIESTOEL RIVES LLP**
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

its care under ORS 426.060. OHA has failed to do so for no reason that furthers public health, safety or welfare—rather, OHA has failed to do so because it claims it simply lacks funding and, moreover, wishes to prioritize use of its funds to other populations of mentally ill individuals (like aid-and-assist and GEI patients). OHA knows that multiple federal courts have found these reasons insufficient as a matter of law, *see Ohlinger*, 652 F.2d at 779, *Or. Advocacy Ctr.*, 322 F.3d at 1121, *Bowman*, 2021 WL 5316440, at *2, but deliberately continues its practices anyway.

78.     Independently and/or alternatively, OHA knowingly outsources its responsibilities to Plaintiffs' hospitals, as described above, for no reason or purpose related to public health, safety, or welfare. OHA knows that civilly committed patients left indefinitely in Plaintiffs' community hospitals need long-term treatment but are not receiving it, yet OHA continues its practices, serving no health, safety, welfare, or other purpose. OHA knowingly engages in these practices because it claims it lacks funds to act differently, even though OHA knows that federal courts have found this reason insufficient as a matter of law. *See Ohlinger*, 652 F.2d at 779, *Or. Advocacy Ctr.*, 322 F.3d at 1121, *Bowman*, 2021 WL 5316440, at *2.

79.     OHA's conduct, policy, and practice results in a ~~taking~~deprivation of Plaintiffs' property ~~belonging to Plaintiffs and other community hospitals for public use~~ and a denial of Plaintiffs' fundamental right to use its hospital beds. ~~When a~~OHA's failures cause civilly committed ~~individual is committed~~patients to ~~stay in Plaintiffs' hospitals after~~ the ~~custody of OHA~~point when they can no longer medically benefit from emergency psychiatric care and ~~not immediately transferred to an appropriate long-term placement~~acute behavioral care, the relevant community hospital is required to house the individual for weeks, months, and sometimes their entire 180-day commitment and recommitment period. As a result, community hospitals are deprived of using their hospital beds for other patients, which negatively impacts community hospitals' ability to serve the community and have throughput in their emergency departments, which are often full of patients waiting to be admitted. Because of OHA's failure to comply with

~~4877-6605-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 49

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE**STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax: +1.503.~~727.2222~~220.2480

~~95575689~~.1

Formatted: Normal

Formatted Table

Formatted: Tab stops: 3.3", Centered

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: 8 pt, Condensed by 0.1 pt

Formatted: _WA Footer Space

its statutory obligations, Plaintiffs and other community hospitals must dedicate significant

resources to civilly committed patients who have no medical reason to be in acute care settings., preventing Plaintiffs from providing emergency psychiatric and acute behavioral care to other patients who do have a medical reason to be in acute care settings (including other civilly committed individuals or pre-commitment individuals, to whom Plaintiffs want to provide emergency psychiatric and acute behavioral treatment). These resources include not only the

costs associated with medicating and housing these individuals for extended periods of time, but

also damage to hospital property as well as the services of its care providers and other

precautions needed, such as security and one-on-one sitters, to ensure the safety of the individual

and others.

80.    OHA has known about its practices—and the resulting effects on community

hospitals—for years but has failed to meaningfully addressesaddress these problems. OHA has

deliberately and indifferently avoided addressing these problems at least in part because OHA

directly benefits from its practices, and the resulting harm to community hospitals and patients,

by effectively outsourcing the civil commitment process to community hospitals and making

community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

81.    OHA will continue engaging in its policy and practice in violation of the Due

Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory

and injunctive relief are appropriate because Plaintiffs lack an adequate remedy at law.

82.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates

community hospitals' Fourteenth Amendment substantive and procedural due process rights.

Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and

practice.

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 50

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

**Formatted Table**
**Formatted:** Tab stops: 3.3", Centered
**Formatted:** Font: Bold
**Formatted:** Font: Bold
**Formatted:** Font: 8 pt, Condensed by 0.1 pt
**Formatted:** _WA Footer Space

83.    Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

### THIRD CLAIM

**Violation of Community Hospitals' Procedural Due Process Rights Under the Fourteenth Amendment to the United States Constitution**

84.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 above.

85.    There is no state law procedure for community hospitals to contest being forced to house civilly committed individuals indefinitely during their 180-day commitment. Although Oregon civil commitment procedure involves a process by which OHA or its delegee consults with the admitting physician of a hospital to "determine whether the best interests of a committed person are served by an admission to [that] community hospital," OAR 309-033-0270(3)(a), that procedure is not being followed. Plaintiffs are not being afforded a meaningful opportunity to be heard regarding whether a civilly committed patient should be committed to Plaintiffs' community hospitals for long-term treatment lasting up to 180 days. Rather, OHA is simply leaving patients at Plaintiffs' hospitals without any meaningful process. Nor is there a remedy available for community hospitals to seek compensation from OHA or their contracted Coordinated Care Organizations for most of its costs associated with OHA forcing them to house civilly committed individuals in lieu of OHA providing placements for them at OSH or another appropriate long-term treatment facility. OHA's policy and practice has resulted in working conditions for Plaintiffs' care providers that many find intolerable. As a result, an already difficult workforce shortage has become a crisis. The strains on Plaintiffs' care providers and resources are not sustainable, presenting a risk of loss of critical mental health services to members of the community who are in crisis.

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 51

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

86.    OHA will continue engaging in its policy and practice in violation of the Due Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory and injunctive relief are appropriate because Plaintiffs lack an adequate remedy at law.

87.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates community hospitals' Fourteenth Amendment substantive and procedural due process rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and practice.

88.    Plaintiffs do not seek compensatory damages for OHA's due process violations.

89.    Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, ~~nominal damages,~~ and recovery of their attorneys' fees and costs in bringing this action.

~~SECOND CLAIM~~

**FOURTH CLAIM**

**Violation of Community Hospitals' Rights Under the Takings Clause
of the Fifth Amendment to the United States Constitution (Physical Taking)**

90.    Plaintiffs reallege and incorporate by reference paragraphs 1 through ~~51~~86 above.

91.    The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the taking of private property for public use, without just compensation. U.S. Const. Amend. V. The Fifth Amendment is applicable to individual states pursuant to the Fourteenth Amendment.

92.    The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The prohibition ~~extends not only to a~~includes physical ~~taking~~takings in which the government ~~condemns or~~physically appropriates an owner's real and personal property~~, but also regulatory interferences which occur when a significant restriction is placed on an owner's ability to use its own property for which justice~~

~~SECOND~~ AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 52

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4~~12897205
Phone: +1.503.~~727.2000~~224.3380 • Fax: +1.503.~~727.2222~~220.2480

~~4877-6005-3312.1~~

~~95575689~~1

and fairness require that compensation be given.. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071-72 (2021).

93.     Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, defendant Patrick AllenDefendant David Baden was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

94.     For years, OHA has engaged in conduct and a policy and practice that results in a physical taking of Plaintiffs' and other community hospitals' property for public use without just compensation. Once a general judgment of commitment is entered and individuals are civilly committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility at the time of commitment. Instead, however, after individuals are civilly committed—and they areas a result no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals, where they are forgotten by OHA.—

95.     Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospital beds for weeks, months, and sometimes their entire 180-day commitment and recommitment periods, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in an acute care setting, and prevents other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments. Because of OHA's actions, community hospitals are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 53

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801,

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480,

95575689,1

significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day.

96. ~~OHA does~~ OHA and their contracted Coordinated Care Organizations do not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

97. OHA will continue engaging in its conduct, policy, and practice in violation of the Fifth and Fourteenth Amendments unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using Plaintiffs' hospitals and other community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly committed patient left in Plaintiffs' care because the expenses of pursuing so many individual legal actions would exceed the compensation Plaintiffs seek to recover.

98. Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' Fifth and Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

99. Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

### FIFTH CLAIM
### Violation of Community Hospitals' Rights Under the Takings Clause
### of the Fifth Amendment to the United States Constitution (Regulatory Taking)

100. Plaintiffs reallege and incorporate by reference paragraphs 1 through 96 above.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 54

101.   The Takings Clause under the Fifth Amendment (applied to the states through Fourteenth Amendment) extends not only to physical takings but also to regulatory interferences which occur when a significant restriction is placed on an owner's ability to use its own property for which justice and fairness require that compensation be given. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071-72 (2021).

102.   OHA's practices regulate Plaintiffs' use of their consumable property such that Plaintiffs are deprived of all economically viable use of their property. OHA's conduct unreasonably frustrates Plaintiffs' investment-backed expectations in such property.

103.   OHA's practices also regulate Plaintiffs' use of their beds in such a way that so frustrates Plaintiffs' distinct investment-backed expectations in their beds so as to constitute a taking under the Fifth Amendment.

104.   OHA and their contracted Coordinated Care Organizations do not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

105.   OHA will continue engaging in its conduct, policy, and practice in violation of the Fifth and Fourteenth Amendments unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using Plaintiffs' hospitals and other community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly committed patient left in Plaintiffs' care because the expenses of pursuing so many individual legal actions would exceed the compensation Plaintiffs seek to recover.

106.   Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' Fifth and Fourteenth Amendment rights. Plaintiffs

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 55

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

107. Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, ~~nominal damages,~~ and recovery of their ~~attorneys fees'~~ attorneys' fees and costs in bringing this action.

**SIXTH~~THIRD~~ CLAIM**
**Violation of Civilly Committed Individuals' Rights Under the Due Process Clause**
**of the Fourteenth Amendment to the United States Constitution**

~~Plaintiffs reallege and incorporate by reference paragraphs 1 through 51 above.~~

~~108. All individuals have the constitutional right not to be deprived of liberty without due process of law. U.S. Const. amend. XIV, § 1. Involuntarily detaining a person due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509.~~

~~109. The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process prohibits governmental deprivation of liberty without adequate procedure. *Cleveland Bd. of Educ*, 470 U.S. at 541. Substantive due process forbids the government from depriving a person of liberty in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp*, 450 F. Supp. 2d at 1175 (quoting *Nunez*, 147 F.3d at 871). Liberty interests "may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009).~~

~~110. Civilly committed individuals have a constitutional liberty interest in being free from bodily restraint. The state may involuntarily detain individuals for purposes of providing treatment; however, individuals who are involuntarily detained for this purpose "have a liberty interest in receiving restorative treatment." *Mink*, 322 F.3d at 1121. Due process requires that mentally ill persons who are detained receive treatment calculated to lead to the end of their involuntary detention. *Id.* To end, states must provide all civilly committed persons with~~

~~4877-6905-3312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 56

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4~~12897205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

~~9557568~~v1

access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778.

Civilly committed individuals also have liberty interests arising from state law. Pursuant to ORS 426.385, "[e]very person with mental illness committed to [OHA] shall have the right to," among other things, "[d]aily access to fresh air and the outdoors" so long as it would not create a significant risk of harm to the person or others. ORS 426.385(m).

Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or constitutional rights is liable at law and in equity. At all times relevant, defendant Patrick Allen was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

111. For years, OHA has engaged in conduct and a policy and practice that violates civilly committed individuals' right to substantive and procedural due process. OHA's conduct, policy, and practice violates civilly committed individuals' liberty interest in restorative treatment and deprives them of a realistic opportunity to be cured or improve the mental condition for which they were confined. When OHA leaves civilly committed individuals in acute care community hospitals, they do not receive access to specialized treatment, care, and training oriented to their long-term needs and focused on their reentry into the community. Instead, they remain confined in unnecessary, overly-restrictive settings without access to long-term treatment for weeks, months, and sometimes their entire 180-day commitment. As a result of OHA's practices, they are more likely to be recommitted and cycle through the system over and over again.

112. OHA lacks legitimate state interests in leaving civilly committed patients in unnecessary, overly restrictive settings where patients do not receive access to minimally

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 57

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

adequate training and treatment. Despite knowing of its practices for years, OHA has deliberately avoided addressing these problems, at least in part because OHA directly benefits from its practices by effectively outsourcing the civil commitment process to community hospitals and making community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

113.    There is no state law procedure for community hospitals to ensure civilly committed individuals are placed by OHA in the facility best able to treat them or a suitable facility during their 180-day commitment, so they can receive appropriate long-term treatment.

114.    OHA will continue engaging in its conduct, policy, and practice in violation of the Fourteenth Amendments unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law to protect their patients' right to appropriate long-term treatment.

115.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates civilly committed individuals' Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

116.    Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys fees' and costs in bringing this action.

**FOURTH CLAIM**

**Violation of Community Hospitals' Rights under Article I, Section 18
of the Oregon Constitution – Unlawful Taking**

117.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 51104 above.

4877-6605-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 58

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

118.    Article I, Section 18, of the Oregon Constitution provides in part that "[p]rivate property shall be taken for public use . . . without just compensation; nor except in the case of the state, without such compensation first assessed and tendered."

119.    For years, OHA has engaged in conduct and a policy and practice that results in a taking of Plaintiffs' and other community hospitals' property for public use without just compensation. Once a general judgment of commitment is entered and individuals are civilly committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility at the time of commitment. Instead, however, after individuals are civilly committed—and they are no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals, where they are forgotten by OHA.

120.    Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospitals' beds for weeks, months, and sometimes their entire 180-day commitment and recommitment period, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in acute care settings, and prevents other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments. Because of OHA's actions, community hospitals are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day.

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 59

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

121.    OHA doesand their contracted Coordinated Care Organizations do not provide

sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for

civilly committed patients left at Plaintiffs' hospitals.

122.    OHA will continue engaging in its conduct, policy, and practice unless the Court

enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help

over the years, it is clear that OHA intends to continue using community hospitals to house

civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief

are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot

feasibly seek adequate and just compensation through individual legal actions for each civilly

committed patient left in Plaintiffs' care because the expenses of pursuing so many individual

legal actions would exceed the compensation Plaintiffs seek to recover.

123.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates

Plaintiffs' and other community hospitals' rights under Article 1, Section 18 of the Oregon

Constitution. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its

conduct, policy, and practice.

124.    Plaintiffs do not seek compensatory damages for OHA's unlawful takings.

Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their

attorneys fees'attorneys' fees and costs in bringing this action.

### FIFTHSEVENTH CLAIM

**Violation of Civilly Committed Individuals' Rights under ORS 426.060**

125.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 54112

above.

126.    OHA must direct civilly committed persons "to the facility best able to treat"

them, or delegate to a community mental health program director the responsibility for

assignment of civilly committed persons to a "suitable" facility. ORS 426.060(2)(a), (d).

4877-6605-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 60

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

127.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A426.060 by deliberately failing to make any placement decision for civilly committed individuals. Instead of being placed in the facility "best able to treat" them or a "suitable facility," at the time of commitment, OHA is choosing to leave civilly committed individuals indefinitely in acute care hospitals, and deliberately failing to make any placement decision for them as contemplated by the statute.

128.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

129.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates its duties under ORS 659A426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place civilly committed individuals in the facility best able to treat them or a suitable facility at the time of commitment.

130.    Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys fees'attorneys' fees and costs in bringing this action.

### SIXTHEIGHTH CLAIM

**Violation of Civilly Committed Individuals' Rights under ORS 426.150(1)**

131.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 54118 above.

132.    When an individual is civilly committed, "[OHA] or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 61

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax: +1.503.727.2222220.2480

95575689.1

person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1).

133.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A426.150(1). Once individuals are civilly committed, OHA is failing to take custody of these individuals and ensure the safekeeping and proper care of these individuals until they are delivered to an assigned treatment facility or to a representative of the assigned treatment facility. Instead, OHA is leaving civilly committed individuals in acute care community hospitals where they are initially detained for emergency purposes on a notice of mental illness, and failing to place patients after they are civilly committed.

134.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

135.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates its duties under ORS 659A426.150, and that OHA has a legal duty to take civilly committed individualindividuals into its custody, and ensure the safekeeping and proper care of them by delivering them to an assigned treatment facility that is best able to treat them or a suitable facility.

136.    Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, nominal damages, and recovery of their attorneys fees'attorneys' fees and costs in bringing this action.

**~~SEVENTH~~NINTH CLAIM**

**Violation of Civilly Committed Individuals' Rights under ORS 659A.142(5)(a) and (6)(a)**

4877-6905-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 62

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

9557568\1

137.   Plaintiffs reallege and incorporate by reference paragraphs 1 through ~~51~~124 above.

138.   ORS 659A.142(5)(a) provides that "[i]t is an unlawful practice for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability."

139.   ORS 659.142(6)(a) provides that "[i]t is an unlawful practice for a provider or any person acting on behalf of a provider to discriminate by doing any of the following based on the patient's race, color, national origin, sex, sexual orientation, gender identity, age or disability: (A) Deny medical treatment to the patient that is likely to benefit the patient based on an individualized assessment of the patient using objective medical evidence; or (B) Limit or restrict in any manner the allocation of medical resources to the patient."

140.   OHA's conduct, policy, and practice violates its statutory duties under ORS 659A.142(5)(a) because OHA is excluding civilly committed individuals from admission to OSH, and denying them an alternative appropriate long-term placement when they are civilly committed to the custody of OHA for 180 days of treatment.

141.   OHA's conduct, policy, and practice violates its statutory duties under ORS 659.142(6)(a) because OHA is discriminating against civilly committed individuals by denying them appropriate long-term treatment once they are civilly committed to the custody of OHA, and limiting and restricting the allocation of resources to them.

142.   OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law.

~~4877-6005-1312.1~~
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 63

~~9557568\1~~

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

~~PERKINS COIE~~STOEL RIVES LLP
~~1120 N.W. Couch Street, Tenth Floor~~
760 SW Ninth Avenue, Suite 3000
Portland, Oregon ~~97209-4128~~97205
Phone: +1.503.~~727.2000~~224.3380 • Fax:
+1.503.~~727.2222~~220.2480

143.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' rights under ORS 659A.142(5)(a) and (6)(a). Plaintiffs also seek a permanent injunction pursuant to ORS 659A.885(1) enjoining OHA from continuing its statutory violations and their attorneys' fees pursuant to ORS 659A.885(8)(d).

## RELIEF REQUESTED

Plaintiffs respectfully request the following relief:

A.    Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates the Fifth and Fourteenth Amendments to the United States Constitution because:

i.    They force community hospitals to house and treat civilly committed individuals indefinitely, thus occupying and taking their property, despite the fact that community hospitals cannot are not equipped, staffed, or designed to provide the facilities and long-term care and treatment appropriate for long length of stay civilly committed individuals;

ii.    There is no state law procedure for community hospitals to contest being forced to house civilly committed individuals;

iii.    They result in a thea taking of community hospitals' private property for public use without just compensation;

iv.    They result in a violation of civilly committed individuals' right to receive appropriate treatment and, further, deny liberty interests arising from state law, such as daily access to fresh air and the outdoors; and

v.    There is no state law procedure for community hospitals to ensure that civilly committed individuals are placed by OHA in the facility best able to treat them or even a suitable facility.

B.    Declare that OHA's conduct, policy, and practice regarding civilly committed

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 64

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3300 • Fax:
+1.503.727.2222220.2480

95575689.1

individuals violates Article I, Section 18, of the Oregon Constitution because they result in thea taking of Plaintiffs' and other community hospitals' private property for public use without just compensation.

C.   Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 659A426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place them in the facility best able to treat them or a suitable facility at the time of commitment.

D.   Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 659A426.150, and that OHA has a legal duty to take civilly committed individualindividuals into its custody, and ensure the safekeeping and proper care of them by delivering them to an assigned treatment facility best able to treat them or a suitable facility.

E.   Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates ORS 659A.142(5) and (6).

F.   Permanently enjoin OHA from continuing to violate civilly committed patients' due process rights to liberty and hospitals' due process rights to property, and from continuing to take hospitals' property without just compensation, and further requiring OHA to fulfill its obligations to provide civilly committed patients the care and treatment they are entitled to by law.

G.   Award Plaintiffs nominal damages and their reasonable attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988(b) and ORS 659A.885(8)(d); and

H.   Grant such further relief as justice requires.

4877-6005-3312.1
SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 65

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

DATED this 28th day of September, 2022.June 26, 2023.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Eric J. Neiman, OSB #823513
Emma P. Pelkey, OSB #144029
Telephone: 971.712.2800
Facsimile: 971.712.2801

PERKINS COIE,STOEL RIVES LLP

By: _____

By: _____
Thomas R. Johnson, OSB #010645
Alex Van Rysselberghe, OSB #174836
Telephone: 503.727.2000294.9466
Facsimile: 503.727.2222

*Attorneys for Intervenors and Plaintiffs*

4877-6005-3312.1
SECOND AMENDED COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF - 66

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIESTOEL RIVES LLP
1120 N.W. Couch Street, Tenth Floor
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97209-412897205
Phone: +1.503.727.2000224.3380 • Fax:
+1.503.727.2222220.2480

95575689.1

