**Eric J. Neiman, OSB #823513**
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800
Facsimile: 971.712.2801

**Thomas R. Johnson, OSB #010645**
Tom.Johnson@stoel.com
**Alex Van Rysselberghe, OSB #174836**
Alex.Vanrysselberghe@stoel.com
STOEL RIVES LLP
730 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.294.9466

Honorable Michael W. Mosman

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON and ST. CHARLES HEALTH SYSTEM,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BADEN, in his official capacity as Director of Oregon Health Authority,<br><br>Defendant. | Case No. 6:22-cv-01460-MO<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 1

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

## INTRODUCTION

Under Oregon law, individuals who are dangerous to themselves, dangerous to others, or unable to take care of their own basic needs due to a mental disorder may be civilly committed to the Oregon Health Authority for involuntary detention and treatment. Involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509 (1972). The State and Federal Constitutions require that mentally ill persons who are involuntarily detained receive treatment calculated to lead to the end of their involuntary detention. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). It is not acceptable under the law—let alone basic standards of human dignity and decency—to merely "warehouse" mentally ill individuals away from the community and not provide them appropriate treatment during their involuntary detention. *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (recognizing that "all too often the promise of treatment has served only to bring an illusion of benevolence to what is essentially a warehousing operation of social misfits") (quoting *U.S. ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 936 (7th Cir. 1975)).

Civil commitment is "to the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). However, the Oregon Health Authority (OHA) has failed in its responsibilities to this vulnerable population. Rather than ensure and provide timely access to meaningful treatment, OHA is abandoning civilly committed patients and leaving them for extended periods of time in community hospitals. These community hospitals are not equipped, staffed, or intended to provide long-term treatment for mental illness. They are equipped to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises—treatment which involves emergency psychiatric care, highly restrictive settings, and constant monitoring. Community hospitals are able to stabilize the vast majority of

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 2

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

civilly committed patients and refer them to other community services that are able to help them reintegrate. However, there is a subset of individuals for whom longer term, specialized care is needed. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself with the goal of enabling the patient to recover from their illness and return to the community. Long-term treatment requires a calmer, less stressful, less-restrictive environment where patients have more independence, peer support, socialization, and opportunities to develop life and health skills. Thus, when OHA leaves these civilly committed patients indefinitely in community hospitals, they do not meaningfully recover because they are denied access to long-term treatment. This failure to provide the appropriate level of treatment violates patients' constitutional rights.

Individuals in mental health crises come to community hospitals in a variety of ways: they may present on their own or be brought in by law enforcement, first responders, family, friends, or others. The emergency department is the typical point of entry. By federal law, patients who come to an emergency department must be screened for an emergency medical condition, which includes a psychiatric crisis causing the patient to be dangerous to self or others. If the patient has an emergency medical condition, the hospital is required to stabilize the condition before discharge or, if the patient requires care the hospital cannot provide, arrange for an appropriate transfer to another treatment setting. Some individuals are unable to voluntarily agree to stabilizing care and are accordingly placed on a "Notice of Mental Illness," which begins civil commitment proceedings. Because of the shortage of acute care psychiatric beds in the state of Oregon, transfer of a patient who is experiencing a psychiatric crisis to another appropriate treatment setting is almost never an option.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 3

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Certain patients in psychiatric crisis are briefly detained in hospital emergency departments or acute care units to allow for an investigation by OHA, through the community mental health program under the "Notice of Mental Illness," to determine if there is probable cause to believe that the person meets civil commitment criteria. If probable cause exists, the circuit court issues a citation and warrant of detention, and the person is taken "into custody" until a civil commitment hearing takes place or the person no longer meets detention criteria. At this point, the person is not just a hospital patient, but also is part of Oregon's civil commitment system, which is governed by Oregon Revised Statutes Chapter 426 and Oregon Administrative Rules Chapter 309, Division 033. By law, a hospital may not simply discharge or refuse to treat a patient who has been detained pursuant to civil commitment laws. They must be held pursuant to the authority of the court. *See, e.g.*, ORS 441.053(2); ORS 441.054; OAR 309-033-0250(6); OAR 333-505-0055, OAR 333-520-0070(4); 42 CFR § 482.43.

Of the patients who are detained, some remain in emergency departments while others may be admitted to the limited number of inpatient psychiatric beds that exist in Plaintiffs' hospitals, and still others may be admitted to acute medical inpatient beds. No matter where they are located in Plaintiffs' hospitals, these patients cannot be discharged while they are psychiatrically unstable, lack a safe discharge plan, and are being detained pursuant to Oregon law and the authority of the court.

In several hundred cases annually, detained patients are civilly committed by court order for up to 180 days of involuntary treatment because they meet the definition of "mentally ill" under the law, meaning they are dangerous to self or others, or unable to take care of basic needs, due to a mental disorder. Until their conditions improve and an appropriate discharge plan is available, they must remain in the hospital or another secure setting pursuant to federal and state

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

law and court order. For a significant number of patients, this means they stay in the hospitals where they started, even when they no longer need to be there, because of OHA's unconstitutional failure to provide adequate placements and resources for long-term treatment. Legally, hospitals cannot simply discharge these patients even though they no longer need the acute care services that community hospitals are intended to provide. This would remain true even if the hospitals withdrew their applications for certification to provide acute care services to civilly committed patients. If this occurred, there would simply be nowhere to send most civilly committed patients and they would continue to remain in the hospital.

OHA's practice also violates the constitutional rights of community hospitals by taking hospitals' property with neither due process of law nor just compensation. Instead of meeting its statutory obligation to provide mental health services and treatment to civilly committed individuals, the state has inappropriately transferred all of its responsibilities to care for those individuals to community hospitals. OHA's failure to make even minimal efforts to locate appropriate long-term treatment facilities for civilly committed individuals forces community hospitals to shoulder the obligation. Because hospitals cannot discharge civilly committed individuals, who desperately need long-term treatment, OHA's failure to act means that community hospitals must hold some civilly committed individuals for long periods of time. In many cases, community hospitals have held civilly committed individuals for weeks, months, or even the patient's entire 180-day commitment period (and sometimes additional recommitment periods). As a result, community hospitals must dedicate significant resources to patients who have no medical reason to be in emergency or acute care settings. These resources include the efforts of physicians, nurses, other care providers, and hospital staff as well as costs associated with medication, housing patients who should be elsewhere, injuries to hospital staff, and

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 5

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

damage to hospital property. OHA does not adequately compensate and reimburse hospitals for expending these resources, does not hold payers accountable to provide adequate reimbursement, and fails to assist in the protection of hospital staff and other patients. Again, due to the shortage of beds in the state, this would be true even if the hospitals were not certified to provide acute care services to civilly committed patients.

In addition to harming civilly committed individuals and community hospitals, OHA's actions also negatively impact the community. Oregon is in the middle of an unprecedented mental health crisis and community hospitals are desperately needed to treat and stabilize other vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness. Because the beds of community hospitals are taken up by civilly committed individuals who should be transferred to long-term treatment facilities that can provide them with meaningful treatment, other individuals in acute mental health crises are unable to access care at community hospitals.

OHA has been keenly aware of this problem for years but has done nothing to fix it. Instead, OHA has abdicated all responsibility for civilly committed individuals, and done nothing to increase capacity to ensure these individuals have access to appropriate long-term placements.

OHA often defends its actions by pointing to the fact that a federal court order requires it to accommodate criminal defendants at state hospital facilities who are found guilty except for insanity or unable to aid and assist in their own defense. Yet OHA has been under these orders for years and has done little to build capacity in the community to ensure an adequate supply of secure beds are available for individuals who are civilly committed. To be clear, Plaintiffs strongly support the rights of criminal defendants with severe mental illness to be moved out of

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 6

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

jails and provided treatment. But OHA is supposed to serve all three populations of patients. It is past time for change.

Community hospitals now bring this lawsuit to remedy OHA's unlawful practice of abandoning civilly committed individuals in acute care facilities and failing to even attempt to provide them with appropriate treatment during their involuntary detention. This practice violates OHA's statutory duties and ignores the fundamental rights of civilly committed Oregonians: access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980).

Plaintiffs do not seek compensatory damages—instead, Plaintiffs seek only declaratory and injunctive relief, and recovery of their attorneys' fees for having to pursue litigation to force OHA to accept its responsibility to provide mental health services to civilly committed individuals. Plaintiffs seek a declaration that OHA's practices of forcing community hospitals to fulfill OHA's statutory obligations violate the constitutional rights of both civilly committed individuals and the community hospitals where they are unnecessarily confined. Plaintiffs further seek an injunction abolishing these practices and requiring OHA to fulfill its statutory obligations to ensure civilly committed individuals finally receive the care and treatment they are entitled to by law.

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12132, and 28 U.S.C. § 2201.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 7

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

2.      This Court has subject matter jurisdiction pursuant to 28 USC § 1331 (federal question jurisdiction) and 28 USC §1343 (civil rights jurisdiction), and supplemental jurisdiction over claims based on state law pursuant to 28 USC § 1367.

3.      Declaratory and additional relief are authorized by 28 U.S.C. §§ 2201 and 2202.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiffs are not-for-profit corporations licensed to provide hospital and healthcare services. The community hospitals operated by Plaintiffs all receive patients who are detained or civilly committed pursuant to Oregon law, as alleged below.

6.      The community hospitals operated by Plaintiffs are not designed, equipped, staffed, or intended to provide long-term mental health treatment for civilly committed individuals. The behavioral health units operated by Plaintiffs are intended to serve the community as acute care facilities at which patients experiencing acute mental health crises are evaluated, stabilized, and discharged to the next appropriate level of care. By design, the average length of stay for most patients in those units is 14 days or less. However, due to the practices and conduct of OHA, civilly committed individuals commonly remain in the behavioral health units of community hospitals for much longer periods of time. These units are highly restrictive, locked environments. Patients are able to leave the units only for short periods of time, if at all, because of environmental, regulatory, and staffing limitations. This type of confined setting is not designed to provide the appropriate therapeutic setting for long-term treatment. As a result, patients left languishing in these environments by OHA do not receive needed care and, in some cases, decompensate back to unstable conditions. OHA's failure to provide appropriate treatment

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 8

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

settings for civilly committed patients, despite its legal responsibility to do so, directly results in unnecessarily long lengths of stay in community hospitals.

7.    Plaintiffs also operate emergency departments and medical-surgical units within their community hospitals. As alleged below, patients experiencing mental health crises often are detained in those units pursuant to Oregon civil commitment laws because of the shortage of acute psychiatric beds due to practices and conduct of OHA. These patients cannot access behavioral health units or other treatment settings that they desperately need because there are no beds available for care.

8.    Plaintiff Legacy Emanuel Hospital & Health Center, doing business as Unity Center for Behavioral Health (Unity), operates an acute care behavioral health hospital in Portland, Oregon. It has 85 adult beds and 22 adolescent beds. Unity provides both emergency and inpatient services to individuals experiencing mental health crises. Unity is an acute care hospital, meaning it provides assessment and short-term stabilizing treatment for patients experiencing an acute behavioral health crisis. Unity is not a long-term treatment facility, nor is it designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed.

9.    Plaintiff Legacy Health operates six hospitals in Oregon. These hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

10.    Plaintiff PeaceHealth operates four hospitals in Oregon. One of those hospitals has a 35-bed acute care behavioral health unit. It has an average length of stay of ten days. It is not designed, equipped, staffed, or intended to provide long-term care for individuals who are

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 9

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

civilly committed. The other PeaceHealth hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

11.     Plaintiff Providence Health & Services – Oregon operates eight hospitals in Oregon. Four of these hospitals have acute care behavioral health units, which combined include 66 adult beds, 19 senior beds, and 22 adolescent beds. None of those acute care behavioral health units are designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

12.     Plaintiff St. Charles Health System, Inc. operates four hospitals in Bend, Redmond, Madras, and Prineville, Oregon. Only the hospital in Bend has acute behavioral health beds. It has a five-bed secure psychiatric services unit, and a 15-bed acute care behavioral health unit. The Bend hospital is not equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

13.     Defendant David Baden is director of OHA, an agency of the State of Oregon. He is sued in his official capacity.

/ / /

/ / /

/ / /

/ / /

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 10

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

## FACTS

**A.    Civilly committed patients are entitled to meaningful long-term treatment during their involuntary detention.**

14.    More than 500 individuals with severe mental illnesses are civilly committed to OHA for treatment every year. These individuals exhibit acute symptoms such as psychosis (dissociation with reality), paranoia, hallucinations, suicidal or homicidal ideation, and sometimes violent behaviors toward themselves and others. In short, these individuals are very ill and require significant care and treatment.

15.    Civil commitment is a drastic measure that the state takes only if no other option for care is available. A judge may commit a person only if a mental illness makes the person a danger to themself or others or unable to provide for basic personal needs like health and safety. The Supreme Court has held that involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509. Accordingly, due process requires that civilly committed persons receive treatment calculated to lead to the end of their involuntary detention. *Id.* Failing to provide this type of care to persons who are involuntarily detained—and instead using involuntary commitment to merely "warehouse" mentally ill persons away from the community—violates due process, not to mention basic standards of human dignity and decency.

16.    To that end, when the state pursues civil commitment, the state must provide mental health treatment that gives civilly committed patients "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778. Thus, civil commitment requires individualized treatment in the least restrictive setting possible

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 11

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

with the goal of restoring the person's liberty, and commitment can last only long enough for the purpose of giving patients treatment that gives them a "realistic opportunity to be cured or to improve" so that they can return to the community and not be recommitted.

17.    To get a "realistic opportunity to be cured or to improve," a patient typically requires two phases of treatment. First, the patient must be stabilized. The goal of stabilization is to manage and alleviate patients' most acute symptoms so that those symptoms do not inhibit long-term recovery. Stabilizing treatment typically involves medication to manage acute symptoms like psychosis, hallucinations, delusions, and/or aggressive or violent physical behavior. The patient must be monitored so medications can be managed and staff can promptly intervene if patients try to hurt themselves or others. Due to these limitations, the patient must be in a highly restrictive setting, and patients often cannot be allowed to move about as they please. Because stabilization is intended to last for only 1-10 days, this highly restrictive environment is meant to be only temporary and is the role acute care hospitals are intended to play in the process.

18.    After being stabilized, a civil commitment patient typically requires long-term treatment. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself with the goal of enabling the patient to recover from their illness and return to the community. Each patient in long-term treatment typically has an individualized treatment plan, which helps them recover from their acute mental illness. Long-term treatment involves fewer restrictions and offers more independence so that patients can practice and develop life and health skills for being successful in the community, including the ability to take day passes and overnight visits to facilitate transition back to the community. It involves a more stable peer environment with less patient turnover, more socialization, more

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 12

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

group counseling, and more peer support. It involves training and education programs for

patients to learn how to care for their basic needs, maintain employment, and maintain healthy

relationships. It requires a calmer, less stressful environment than exists in the emergency

department or acute care unit of a community hospital, that reduces the risk of the individual

decompensating back into an acute mental health crisis.

19.     An emergency or acute care environment, where patients are stabilized, is not

appropriate for patients who need long-term recovery. Emergency and acute care environments

are, by necessity, far more restrictive than long-term treatment environments. Emergency and

acute care environments typically house patients in crisis and require more monitoring and

staffing than do long-term treatment environments. These features can be counterproductive to

patients who have already been stabilized and who are working to recover from their mental

illness so that they can regain their freedom and return to their community. A patient in long-

term recovery cannot receive the socialization and skill-development opportunities in an

emergency or acute care environment, and the increased level of restriction is unnecessary for

such patients and often can cause decompensation.

20.     For these reasons, it is difficult to overstate how crucial it is that a civilly

committed patient, once stabilized, be transitioned into an environment conducive to long-term

treatment. If a civilly committed patient is not transferred, the patient's liberty is unnecessarily

curtailed, the patient does not meaningfully recover, the patient may decompensate, the patient

becomes more likely to be re-committed in the near future, and the very purpose of civil

commitment is undermined.

/ / /

/ / /

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 13

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

**B.**    **Oregon law requires OHA to ensure that civilly committed individuals receive appropriate long-term treatment.**

21.    The state is responsible for the civil commitment process. The state initiates civil commitment proceedings; the state pursues civil commitment from the court; and, if commitment is ordered, patients are committed "**to the Oregon Health Authority** for treatment." ORS 426.130(1)(a)(C) (emphasis added). As such, it is the responsibility of the state to provide civilly committed individuals with necessary treatment in the most appropriate and least restrictive setting possible to fulfill patients' constitutional rights.

22.    Where a person has been civilly committed, Oregon law charges OHA with the responsibility for finding an appropriate placement for long-term treatment. Oregon law requires that, "[u]pon receipt of the order of commitment, OHA or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1). By statute, OHA must direct civilly committed persons "**to the facility best able to treat**" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "**suitable**" facility. ORS 426.060(2)(a), (d) (emphasis added).

23.    The director of OHA may assign or transfer the civilly committed person to any facility "which, in the opinion of the director, will appropriately meet the mental health needs of the committed person." OAR 309-033-0290(1)(a). The director of OHA *may* place the person in a community hospital—however, in doing so, the director of OHA must "consult" with the community hospital's admitting physician, and both must, together, "determine whether the best interests of a committed person are served by an admission to a community hospital." OAR 309-033-0270(3)(a).

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 14

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

C.    **OHA is failing to provide appropriate long-term placement options for civilly committed patients and failed to create appropriate options in the community.**

24.    Oregon's civil commitment system has broken down as OHA has, for years, ignored its statutory obligations to this most vulnerable population. Despite that it is the state's responsibility to provide civilly committed individuals with constitutionally sufficient treatment—which, for most, requires long-term treatment—OHA is failing to ensure that long-term treatment is available to patients who need it.

25.    Historically, civilly committed individuals went to the Oregon State Hospital (OSH), the mental health hospital operated and managed by OHA. ORS 179.321(1). OSH is intended to be used by the state "for the care and treatment of persons with mental illness." ORS 426.010. Within OSH are multiple secure long-term residential treatment units which provide the long-term treatment that many civilly committed patients need: fewer restrictions, more independence, a more calm and stable environment, more stable peer communities, less patient turnover, more socialization and peer support, more group counseling, and more training and education programs for patients to learn to care for their basic needs, maintain employment, and maintain healthy relationships. However, over the years (and as a result of other litigation), OHA has increasingly prioritized the admission of aid-and-assist and GEI patients at OSH over civil commitment patients.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 15

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

The graph below (provided by OSH) illustrates this trend:



In December of 2019, OSH stopped taking civilly committed patients virtually altogether, shifting admission priorities to focus almost entirely on the aid-and-assist and GEI populations.

26.     Over this period of admitting steadily fewer civil commitment patients to its state hospital facilities, OHA has done virtually nothing to create additional capacity for civilly committed patients to receive needed treatment in appropriate settings. For instance, OHA has not increased capacity at OSH to continue accommodating civilly committed patients even as it has admitted steadily more patients from the aid-and-assist and GEI populations. Nor has OHA built other secure residential treatment facilities (or other long-term treatment options) outside of OSH.

27.     OHA has also failed to ensure that other entities authorized to care for civilly committed patients—like counties, municipalities, and nonprofit organizations—can fill the gap left by the state. OHA has failed to, for instance, provide sufficient funding, grants, or other incentives for other entities to create and run long-term treatment facilities needed by many of

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 16

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

the patients who are civilly committed to OHA's custody but not receiving long-term treatment by OHA.[1]

28.    Plaintiffs strongly support the rights of aid-and-assist and GEI patients, who should be removed from jail and receive meaningful treatment. But OHA is responsible for civilly committed patients, too, and must serve aid-and-assist and GEI patients without abandoning civilly committed patients. Indeed, the law prohibits OHA from prioritizing aid-and-assist patients over civilly committed patients if it means giving civilly committed patients inadequate care. The Ninth Circuit has held that, when it comes to providing constitutionally adequate treatment to involuntarily detained patients, "[l]lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Ohlinger*, 652 F.2d at 779. Indeed, OHA's recent practices have already been adjudged unlawful by this Court. On November 15, 2021, in *Bowman v. Matteucci*, 3:21-cv-01637, Judge Marco A. Hernández granted injunctive relief to GEI patients who claimed that they were unconstitutionally being denied admission to OSH because OHA was prioritizing the admission of aid-and-assist patients. OHA argued that, due to an injunction regarding admission requirements for aid-and-assist patients in *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121–22 (9th Cir. 2003), OHA had to prioritize aid-and-assist patients over other populations of patients. Judge Hernández expressly rejected the notion that OHA may prioritize the constitutional rights of some patients over others:

> If OSH cannot admit GEI patients while admitting aid-and-assist patients within the court-ordered timeframe, it's because OSH lacks the space and the funding to

---

[1] For example, in the entire State of Oregon, there are currently **only two** Class One secure residential treatment facilities. A Class One facility is approved "to be locked to prevent a person from leaving the facility, to use seclusion and restraint, and to involuntarily administer psychiatric medication." OAR 309-033-0520(3). These are critical resources that some civilly committed individuals may require before they are ready to step down to a lower level of care.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 17

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

do so—not because the *Mink* order compels it to prioritize one group over another. In other words, any prioritization stems from Defendant's failure to provide the funds, staff, and facilities necessary to satisfy the constitutional rights of both groups. **When satisfying constitutional guarantees, Defendants cannot rob Peter to pay Paul.**

*Bowman v. Matteucci*, 3:21-cv-01637, 2021 WL 5316440, at *2 (D. Or. Nov. 15, 2021) (emphasis added). Despite this unambiguous ruling, OHA continues to systematically prioritize care for other patients over care for civilly committed patients, again "robbing Peter to pay Paul."

## D.    OHA has effectively outsourced its responsibilities to the civilly committed population to community hospitals without hospitals' consent.

29.    Rather than addressing these problems by increasing long-term treatment capacity and options throughout Oregon, OHA has effectively outsourced its responsibilities to civilly committed patients by leaving patients indefinitely in community hospitals' emergency rooms and acute behavioral care units.

30.    Plaintiffs are Oregon's four largest Health Systems, each of which operates several community hospitals across Oregon. Each of Plaintiffs' hospitals have emergency departments or emergency rooms where patients experiencing severe crises and psychiatric emergencies may receive emergency psychiatric care. Some (but not all) of Plaintiffs' hospitals have acute behavioral care units, in which patients requiring further acute care after emergency treatment can be treated and monitored overnight or, at most, for a few days while they stabilize.

31.    Due to the high level of close monitoring and treatment involved in providing acute care for these patients, emergency and acute behavioral care settings are highly restrictive. Other patients occupying the units them are generally not stable because they are still in the process of being treated and stabilized. Further, the environments are not calm, and the rate of patient turnover is high. These environments are not conducive to patients who require the calm,

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 18

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

stability, and freedom that exists in long-term treatment environments. There is no realistic way for Plaintiffs to realistically provide long-term treatment in such environments.

32.    In comparison, secure residential treatment facilities are a more suitable places for a civilly committed individuals who no longer require emergency or acute behavioral care because they offer long-term treatment (which acute care hospitals do not) and allow more freedom and independence for the patient. For example, a patient at an acute care unit necessarily must live in confined, closed-off, heavily monitored physical spaces:

 



SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 19

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

A patient at OSH or a secure residential facility, meanwhile, may recover in a living space far more conducive to meaningful long-term recovery:



Long-term treatment facilities also tend to have enriching facilities and opportunities that are vital to patients' long-term recovery, like gyms, education and vocational opportunities, outdoor facilities, cafés, markets, and coffee shops. Individuals in long-term residential treatment facilities can sometimes go places on day passes, wear their own clothes, and go outside daily for fresh air. There can be family and friend events and peer support specialists on staff. Those amenities and opportunities are generally no available in the emergency departments and acute care units of community hospitals.

33.    Most individuals who become civilly committed begin the civil commitment track via the emergency department of a community hospital. Patients are often brought to Plaintiffs' hospitals by law enforcement or first responders, who deliver individuals to the emergency departments when they are in acute distress. Patients also may be brought by family or friends, or on their own accord.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 20

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Under both state and federal law, whenever patients arrive at Plaintiffs' emergency room doors, Plaintiffs **must** evaluate and, if necessary, treat the patients regardless of patients' ability to pay or whether the patient might later be civilly committed. The Emergency Medical Treatment and Active Labor Act ("EMTALA") requires, for example, that hospitals evaluate and treat all patients who arrive at an emergency room, regardless of whether the patient can pay or any other reason; and if Plaintiffs were to fail to evaluate and provide emergency treatment to a patient for any reason, Plaintiffs could be cited for violation of federal law and lose federal Medicare funding. Similar obligations are imposed by OHA's own regulations that apply to community hospitals. OAR 333-520-0070. As such, because of the operation of these state and federal laws and regulations, Plaintiffs must accept all patients into their emergency departments and cannot control which patients enter their hospitals.

34.      Where a patient admitted to the emergency room potentially meets the criteria for civil commitment—that is, they present a danger to themselves or others or are unable to care for their own basic needs, due to their mental illness—a licensed independent practitioner may initiate civil commitment proceedings. Where this happens, Plaintiffs must involuntarily detain and hold the patient for several days under a "Notice of Mental Illness," at least until the state holds a civil commitment hearing and a state court judge issues a commitment order (or until the patient no longer meets detention criteria). Of the patients who are detained, some remain in emergency departments while others may be admitted to the scarce number of inpatient psychiatric beds that exist in plaintiffs' hospitals, and still others may be admitted to inpatient medical unit beds. Regardless of where patients are located in plaintiffs' hospitals, federal and state law and medical ethics rules prohibit Plaintiffs from discharging these patients while they are psychiatrically unstable, lack a safe discharge plan, and are being detained under Oregon

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 21

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

civil commitment law. Plaintiffs also cannot discharge patients in their emergency rooms under EMTALA; if they do, they would be subject to enforcement action which might include loss of Medicare funding. 42 C.F.R. § 482.43. As detailed below, this would be true even if Plaintiffs withdrew their certification for providing acute care services to civilly committed patients—if Plaintiffs did this, there would simply be no beds to which to send most patients, and patients would remain in the emergency room or in an inpatient unit.

35.     In the period between a patient's arrival in an emergency department and the time of their civil commitment hearing, Plaintiffs provide emergency psychiatric care and/or acute behavioral care to stabilize the patient. Such care is short-term in nature and, as such, requires only a brief period of treatment. After a few days, some patients generally are stabilized as much as is medically possible under their individual mental conditions and, from that point on, receive no further medical benefit from emergency psychiatric care and acute behavioral care. Patients involved in civil commitment proceedings typically reach this point around the time of, or shortly after, their civil commitment hearing and order of commitment (if the state judge orders them committed).

36.     Where a patient is ordered committed, Oregon law charges OHA with the responsibility for "tak[ing] the person with mental illness into its custody" and "ensur[ing] the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility." ORS 426.150(1). OHA must direct the civilly committed person "to the facility best able to treat them or ensure that the person is directed to a "suitable" facility. ORS 426.060(2)(a), (d). Some civilly committed patients can be stabilized within two to three weeks of commitment; for those individuals, remaining in acute care units may be appropriate because those patients may still benefit from emergency psychiatric and acute behavioral care.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 22

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Other civilly committed patients, however, already have been stabilized as much as is medically possible around the time they are civilly committed (or shortly thereafter) and have received all medical benefit possible from the emergency psychiatric care and acute behavioral care that Plaintiffs provide. Under a functional statewide behavioral healthcare system, OHA is supposed to send *those* committed patients (who are no longer benefiting medically from emergency psychiatric care and acute behavioral care) to a suitable facility that provides long-term care, such as a secure residential treatment facility. But OHA does not differentiate between civilly committed patients who continue to need emergency psychiatric or acute behavioral care and those who do not. Rather than consider the individual needs of the patient and exercise discretion to make affirmative decisions about whether such patients should either remain in a community hospital or be transferred to a different facility (and rather than delegating that decision to a qualified person and ensuring that they make the decision appropriately), OHA fails to exercise any discretion and make any decision and simply leaves patients in the community hospitals where they already are. In doing so, OHA also does not consult with the treating physicians of those community hospitals to determine the best location for individual patients' care, as is required by OAR 309-033-0270(3)(a).

37.    Currently, OHA is simply leaving civilly committed patients in the community hospitals where they were first brought, despite that, for some individuals, the patient can no longer receive any medical benefit from the emergency psychiatric care and acute behavioral care that Plaintiffs provide and *cannot* receive the long-term treatment the patients need, despite Plaintiffs' best efforts to provide good medical care to patients. Community hospitals are simply not equipped, staffed, or designed to house these civilly committed individuals for months at a time, let alone six months or more.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 23

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

38.     Due to the operation of state and federal laws and regulations and medical ethical rules, where OHA leaves civilly committed patients in Plaintiffs' community hospitals, Plaintiffs have no feasible options other than to continue to house the patient and provide basic care (i.e., administer basic regular medications) and consumable resources (i.e., food, toiletries, and other basic provisions) indefinitely. For a handful of civilly committed patients, this indefinite period lasts for several weeks and, sometimes, several months.

39.     Plaintiffs cannot transfer the patients elsewhere because, almost always, there is nowhere for the patient to go. Under state and federal law, Plaintiffs can transfer a patient to another hospital for treatment *only if* the other hospital *both* (1) is certified to care for civil commitment patients *and* (2) has available beds. If there is no certified hospital with available beds that agrees to accept the civilly committed patient, the patient cannot be transferred and remains in the Plaintiffs' hospitals with no realistic prospect of receiving the long-term treatment they require. Plaintiffs' hospitals, however, provide most available hospital beds in the entire state of Oregon. Out of approximately 460 licensed inpatient psychiatric treatment beds available across all Oregon's communities, 264 (57.4%) are in plaintiffs' facilities. Because of the severity of Oregon's behavioral health crisis, all other Oregon beds that are designed for long-term treatment are typically full with long and often closed waitlists of their own. And even when such other facilities are not full, they often prioritize referrals from OSH, while referrals from acute care hospitals are given less priority. There simply is not enough available capacity in Oregon for Plaintiffs to transfer civilly committed patients to other facilities (whether for long-term treatment or otherwise).

40.     Plaintiffs cannot afford to add more beds to their hospitals or build their own long-term treatment facilities for civilly committed patients left in their care.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 24

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

41.    Despite that OHA's mission statement is to "ensur[e] all people and communities can achieve optimum physical, mental, and social well-being," OHA has suggested to Plaintiffs that, if Plaintiffs can no longer medically help a civilly committed patient left in Plaintiffs' care, Plaintiffs should simply discharge the civilly committed patient to the sidewalk.

42.    But discharging civilly committed patients—as OHA recommends—would result in an unmitigated disaster for both patients and the community and would require Plaintiffs to violate both law and court orders. A patient who is under civil commitment is, by definition, someone who presents a danger to themself or others or who is "unable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future." ORS 426.005(1)(f). Thus, if Plaintiffs followed OHA's recommendation and discharged civilly committed patients into the community without any discharge plan and with nowhere to go, there is a substantial chance that the patient will cause harm to themselves or others in the community. There is also a substantial likelihood that the individual—who is still suffering from a severe and insufficiently treated psychiatric condition or crisis—would be picked up by first responders and brought right back to one of Plaintiffs' emergency departments. Plaintiffs, meanwhile, would violate several state and federal laws and ethical rules. For instance, Plaintiffs would violate OAR 309-033-0250(6), which requires that civilly committed patients in hospital facilities "may only be released by the court" unless transferred to another facility. Plaintiffs would also violate ORS 441.053(2), 441.054, OAR 333-505-0055, and OAR 333-520-0070(4), which require discharge of patients only in accordance with a discharge plan that considers and accommodates the individual needs of patients (which, for the patients at issue here, require long-term treatment). Plaintiffs would also violate EMTALA to the extent the patients are staying in beds in the emergency department. *See* 42 CFR § 482.43. These violations may result in fines and/or

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 25

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

losses of Plaintiffs' licensure. Such violations would also harm Plaintiffs' reputations as
hospitals and health systems that provide care for all patients of all walks of life and put patients'
needs first. OHA knows or should know that this is not a realistic suggestion. In fact, it is the
existence of these laws that has enabled OHA to essentially outsource its obligation to care for
civilly committed individuals to community hospitals.

43.    OHA has also suggested that Plaintiffs could avoid having civilly committed
patients left in their care indefinitely if Plaintiffs declined to acquire certification to treat civilly
committed patients. But declining to acquire certification to treat civilly committed individuals
would not materially change the situation for Plaintiffs. Even if Plaintiffs were not certified to
treat civilly committed patients, Plaintiffs would still be required by law to receive, evaluate, and
treat all patients who enter their emergency rooms, before civil commitment occurs. Plaintiffs
would still have to hold and provide emergency psychiatric treatment to patients who are placed
in civil commitment proceedings, before commitment. Plaintiffs would still be prohibited by
state and federal laws and regulations, and medical ethical rules, to discharge the patient while
civil commitment proceedings are ongoing. And, when patients are committed, Plaintiffs still
would be unable to lawfully discharge the patient or transfer the patient to another hospital
unless the other hospitals both (1) is certified and (2) has available beds. If no other certified
beds are available elsewhere, the patient would nonetheless remain in Plaintiffs' hospitals
regardless of whether Plaintiffs are certified to treat civilly committed patients, because Plaintiffs
would be legally prohibited from discharging the patient and there is nowhere else for the patient
to go.

44.    Indeed, if Plaintiffs ceased acquiring approval and certification to treat civilly
committed patients, it would be certain that there would be woefully insufficient certified beds

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 26

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

available in the rest of the state to receive Plaintiffs' civilly committed patients. As noted, there are only certified 460 psychiatric beds in Oregon in all, and 264 of them (over 57%) are located in Plaintiffs' hospitals. If Plaintiffs removed their 264 beds from the statewide pool, *far more* civilly committed patients would be in need of transfer, yet *far fewer* licensed beds would be available in the rest of the state to receive them (as noted, those beds are already full and have long and often closed waitlists of their own). Because Plaintiffs are four of Oregon's largest health systems and make up so much of Oregon's total psychiatric resources, the withdrawal of Plaintiffs' beds from the available certified pool would create an unprecedented shortage of psychiatric resources that would make it essentially certain that Plaintiffs would have no available places to send civilly committed patients left in their care. Instead, the patients would remain at the hospital and Plaintiffs would suffer the same or worse injuries as they do when certified.[2]

45.     Plaintiffs' choice to acquire state certification from OHA to provide emergency psychiatric care and acute behavioral care to civilly committed patients does not amount to consent to be left indefinitely with civilly committed patients who no longer benefit from such

---

[2] Although OHA has suggested that Plaintiffs could avoid their injuries by simply declining to become certified in the future, OHA knows that this realistically would not address the backup of civilly committed patients in the Plaintiffs' emergency departments. As discussed below, OHA conducted a study of "Emergency Department Boarding of Psychiatric Patients in Oregon" in 2017 and concluded that the decreasing number of beds available for civilly committed patients at OSH "results in more civilly committed individuals waiting in acute care" in community hospitals, which in turn "decreases the access to acute care beds, which causes a backup in the ED." Oregon Health Authority, Emergency Department Boarding of Psychiatric Patients in Oregon, Report Briefing, Feb. 1, 2017, *available at* https://www.oahhs.org/assets/documents/files/publications/0%20OHA%20Psychiatric%20ED%20Boarding%20Report%20Brief%20Final.pdf. Thus, OHA knows that, with *both* the unavailability of beds at OSH for civilly committed patients *and* the suggested withdrawal of Plaintiffs' 264 acute care beds (out of 460 in Oregon, that is, 57%), there would be far too few available acute care beds in Oregon to meet the overwhelming demand—and the result of this shortage will be felt in community hospitals' (including Plaintiffs') emergency departments.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 27

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

care. Nor does Plaintiffs' choice to acquire state certification amount to a voluntary choice to be

left with the responsibility to provide long-term treatment to such patients. To the contrary, the

certification process is highly specific to certain kinds of psychiatric and behavioral care.

Hospitals are certified to provide only specific services that they are equipped to provide, and

nothing more. This is for good reason. It is a serious responsibility to provide any treatment to

civil commitment patients, as doing so often involves providing treatment to an unwilling patient

who, due to their several mental illness, vigorously resists treatment. Not just any hospital can be

trusted with this grave responsibility. To become certified, hospitals must undergo a rigorous

certification process to show they have sufficient staff, training, equipment, space, and so on to

safely, effectively, and ethically provide such care to civilly committed patients. Because civilly

committed patients generally need multiple different kinds of care during their commitment (i.e.,

emergency care, acute care, long-term care)—and each kind of care requires different kinds of

training, equipment, facilities, and so on to safely, effectively, and ethically provide—

certification is treatment-specific so that patients who need a certain kind of care are not treated

by hospitals that are unable to provide that care safely, effectively, and ethically. *See* OAR 309-

033-0530(1) ("Only hospitals . . . approved by the Division . . . shall provide care and treatment

services for persons under civil commitment . . . ."). A hospital can become certified to provide

the following types of care:

> (a)    Acute and emergency care (which includes an even more
>
>          limited subcategory of "hospital hold and seclusion room
>
>          services (5 day Hold)");
>
> (b)    Class I secure residential treatment, a form of long-term
>
>          treatment in which a hospital may physically restrain

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 28

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

patients and involuntarily administer psychiatric
medication; and

(c)    Class II secure residential treatment, another form of long-
term treatment in which a hospital may not physically
restrain or medicate patients but may lock the facility so the
patient cannot leave.

46.    Plaintiffs' hospitals have acquired certification for only the first kind of
treatment—emergency and acute psychiatric care. Plaintiffs have not sought certification or
voluntarily consented to providing long-term treatment, and OHA has neither evaluated
Plaintiffs' hospitals nor deemed them suitable for such treatment. Yet OHA leaves civilly
committed patient who no longer need emergency or acute psychiatric care, and who instead
need long-term care, in Plaintiffs' hospitals indefinitely. As such, OHA effectively has
outsourced its responsibility to ensure adequate treatment for such patients to Plaintiffs'
hospitals, without Plaintiffs' consent and to both Plaintiffs' and patients' detriment.

**E.    OHA's practices hurt both civilly committed patients and community hospitals.**

47.    OHA's practices cause civilly committed patients requiring long-term treatment
to be left indefinitely in community hospitals that are not equipped and able to provide the
needed long-term care. This leads to an unconscionable (but, unfortunately, common) situation
where individuals are denied the care that justifies their commitment in the first place and that
they are constitutionally entitled to receive. As a result, the patient's liberty is unnecessarily
curtailed, the patient does not meaningfully recover, the patient becomes more likely to be re-
committed in the near future, and the very purpose of civil commitment is undermined.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 29

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

48.     OHA's practices also negatively impact community hospitals. When civilly committed patients are left in community hospitals after the point at which they no longer medically benefit from emergency psychiatric and acute behavioral treatment, Plaintiffs must divert resources to house and provide basic care for civilly committed patients and not Plaintiffs' other patients. Housing and providing basic care to civilly committed patients require significant resources and attention by physicians, nurses, and other healthcare professionals—resources and attention that Plaintiffs cannot simultaneously direct toward other patients who would medically benefit from emergency psychiatric and acute behavioral treatment. Basic care to such civilly committed individuals includes provision of a hospital bed, medication, food, housekeeping services, and other hospital resources, which Plaintiffs accordingly cannot allocate to other patients. Oftentimes, civilly committed patients require a one-on-one sitter 24 hours a day to ensure their safety and the safety of other patients and staff.

49.     The beds occupied by civilly committed patients are not available for other patients who need them, as patients back up in emergency departments, resulting in hardship for others who need to access acutely needed medical and mental health treatment. Some individuals are so acute that adjacent rooms must be closed for safety. In many cases, these individuals cannot safely be in shared rooms, further reducing capacity.

50.     OHA's practices deprive Plaintiffs of their property without due process of law and effectuate a taking of Plaintiffs' property as OHA forces community hospitals to hold and care for civilly committed individuals who, by law, have been committed to the custody of OHA for treatment. Although OHA provides Plaintiffs with a small amount of reimbursement for holding civilly committed patients, the reimbursement received is inadequate, causing financial harm. Additionally, OHA does not require their Coordinated Care Organizations to contract with

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 30

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

all Oregon hospitals who are certified to provide care, resulting in inadequate reimbursement for necessary medical care and no consequences for having failed network panel adequacy as required by their contracts. In addition, Plaintiffs incur additional expenses for additional staff and workers' compensation costs, property damage, and room closures, for which they are not reimbursed. Plaintiffs are all non-profits, but their behavioral health units are suffering unsustainable losses that amount to tens of millions of dollars a year. If this continues, some of these important behavioral health resources may be forced to close.

51.     Despite knowing of its unlawful practices for years, OHA continues to allow them. OHA benefits by passing the costs of treating severely mentally ill patients to private entities. In effect, OHA has silently outsourced the civil commitment system to Oregon health systems and acute care community hospitals without their consent or agreement.

52.     The negative impact of OHA's practices, conduct, failures, and inaction on Plaintiffs and other Oregon community hospitals are severe and ongoing. Because the patients are civilly committed, they can only be discharged to secure settings, or else must be kept in the hospital until they no longer meet commitment criteria. This can mean hospital stays of several weeks, to several months, up to the entire 180-day commitment, and, in some cases, through recommitment periods as well. In turn, this prevents community hospitals from being able to treat and stabilize other vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness.

/ / /

/ / /

/ / /

/ / /

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 31

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

**F.      Rather than engage meaningfully with the problem, OHA has failed to find a solution for civilly committed individuals and blamed the counties and nonprofit care providers.**

53.      Over the past several years, Plaintiffs have pleaded with OHA for assistance and support in finding appropriate placements for civilly committed individuals countless times. Plaintiffs have asked OHA to seek more resources, expand services, and build capacity rather than detain civilly committed individuals indefinitely in restrictive acute care settings. Plaintiffs have offered to collaborate with OHA to find, or invent, a workable solution. Almost without exception, OHA has been unresponsive and has failed to provide a solution for the patients for whom it is responsible. Plaintiffs have also asked OHA to hold the Coordinated Care Organizations accountable for reimbursement for their members who are placed in non-contracted hospitals. OHA has also failed to provide a solution for these patients for whom their contracted entities are responsible.

54.      OHA's failure to provide appropriate and legally required treatment to civilly committed individuals—and the negative impact on Oregon's community hospitals—is well known to OHA. A 2017 study for OHA concluded: "Patients at the state hospital for aid and assist take up beds that could be used for civil commitment patients. This results in more civilly committed individuals waiting in acute care for a state hospital bed to open up. This decreases the access to acute care beds, which causes a backup in the ED. Multiple strategies have tried to reverse this trend with only minimal success. OHA is revitalizing planning and actions and will have a strategic action plan in place by February 2017."[3] But, despite having known of its

---

[3] Oregon Health Authority, Emergency Department Boarding of Psychiatric Patients in Oregon, Report Briefing, Feb. 1, 2017, *available at* https://www.oahhs.org/assets/documents/files/publications/0%20OHA%20Psychiatric%20ED%20Boarding%20Report%20Brief%20Final.pdf.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 32

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

practices since 2017, OHA has continued to ignore its statutory obligations and has continued to

knowingly reduce long-term placement options for civilly committed patients over that time.

    55.    Despite knowing about how its practices are hurting both civilly committed

patients and community hospitals, OHA has indifferently continued its practiced and indicated

no serious intent or interest in changing its ways otherwise helping patients or hospitals. OHA

officials apathetically shrug their shoulders and say that the chief problem is OHA's lack of

enough funding in their budget and available beds in the state hospital system. OHA knowingly

communicates to Plaintiffs that they will simply have to keep forfeiting their property for the

service of OHA and that civilly committed patients will have to forego needed long-term

treatment, notwithstanding their need and constitutional entitlement to it.

    56.    OHA may not outsource its ultimate responsibility to provide constitutionally

adequate care to civilly committed patients. By law, OHA is responsible for ensuring that civilly

committed individuals receive appropriate long-term placements because civilly committed

individuals are committed to OHA, not the county or a community mental health program. ORS

426.130(1)(a)(C) (the court may "order commitment of the person with mental illness to the

Oregon Health Authority for treatment"); ORS 426.060(1) ("[c]ommitments to the Oregon

Health Authority are only to be made by a judge of circuit court in a county of this state."). As

such, Plaintiffs seek declaratory and injunctive relief against OHA's unlawful practices.

/ / /

/ / /

/ / /

/ / /

/ / /

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 33

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

# CLAIMS

## FIRST CLAIM

### Violation of Civilly Committed Individuals' Rights Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution

57.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 56 above.

58.     All individuals have the constitutional right not to be deprived of liberty without due process of law. U.S. Const. amend. XIV, § 1. Involuntarily detaining a person due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509.

59.     The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process prohibits governmental deprivation of liberty without adequate procedure. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Substantive due process forbids the government from depriving a person of liberty in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp. v. City of Milwaukie*, 450 F. Supp. 2d 1164, 1175 (D. Or. 2006) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). Liberty interests "may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009).

60.     Civilly committed individuals have a constitutional liberty interest in being free from bodily restraint. The state may involuntarily detain individuals for purposes of providing treatment; however, individuals who are involuntarily detained for this purpose "have a liberty interest in receiving restorative treatment." *Mink*, 322 F.3d at 1121. Due process requires that mentally ill persons who are detained receive treatment calculated to lead to the end of their involuntary detention. *Id.* To that end, states must provide all civilly committed persons with

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 34

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778.

61.     Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant David Baden was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

62.     For years, OHA has engaged in conduct and a policy and practice that violates civilly committed individuals' right to substantive and procedural due process. OHA's conduct, policy, and practice violates civilly committed individuals' liberty interest in restorative treatment and deprives them of a realistic opportunity to be cured or improve the mental condition for which they were confined. When OHA leaves civilly committed individuals in acute care community hospitals, they do not receive access to specialized treatment, care, and training oriented to their long-term needs and focused on their reentry into the community. Instead, they remain confined in unnecessary, overly-restrictive settings without access to long-term treatment for weeks, months, and sometimes their entire 180-day commitment. As a result of OHA's practices, they are more likely to be recommitted and cycle through the system over and over again.

63.     OHA lacks legitimate state interests in leaving civilly committed patients in unnecessary, overly restrictive settings where patients do not receive access to minimally adequate treatment and transition services. Despite knowing of its practices for years, OHA has deliberately avoided addressing these problems, at least in part because OHA directly benefits

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 35

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

from its practices by effectively outsourcing the civil commitment process to community hospitals and making community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

64.     There is no state law procedure for community hospitals to ensure civilly committed individuals are placed by OHA in the facility best able to treat them or a suitable facility during their 180-day commitment, so they can receive appropriate long-term treatment.

65.     OHA will continue engaging in its conduct, policy, and practice in violation of the Fourteenth Amendment unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law to protect their patients' right to appropriate long-term treatment.

66.     Plaintiffs have standing to represent the population of civilly committed patients being cared for in Plaintiffs' hospitals. Plaintiffs' interests as healthcare providers are closely aligned with the interests of patients on these issues. Successfully compelling OHA to cease its unconstitutional practices would directly stop injuries to both patients and Plaintiffs simultaneously. Plaintiffs do not seek any relief for itself that will injure or not also help civilly committed patients. The only relief Plaintiffs seek in this action involve solutions in which the civilly committed patients will leave Plaintiffs' hospitals only if it means receiving long-term treatment that patients need to recover but that Plaintiffs are not equipped to provide.

67.     Plaintiffs also, as patients' healthcare providers, have close, fiduciary, and confidential relationships with patients, ensuring and incentivizing Plaintiffs to be effective advocates for patients. Plaintiffs are generally bound by federal, state, and ethical rules to serve

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 36

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

their patients interests and "do no harm" to patients. Plaintiffs are also bound by state, federal, and ethical rules to maintain confidentiality with patients.

68.    Civilly committed patients face several hindrances from bringing an action for injunctive relief themselves, in which they would seek for OHA to provide constitutionally adequate treatment during the period of their commitment. First, civilly committed patients are committed for only a short duration of time—180 days at most—making it likely that their injuries and equitable claims for relief will become moot before litigation can run its course. Second, civilly committed patients face a recognized stigma for their commitment and thus are inherently disincentivized from bringing a public action related to their commitment. *See generally State v. T.T.*, 293 Or. App. 376, 386, 428 P.3d 921, 927 (2018) (Aoyagi, J., dissenting) (noting the "serious . . . social stigma . . . attendant to a civil commitment"). Third, civilly committed suffer from severe mental illnesses that, as alleged above, often involve severe symptoms including psychosis, hallucinations, and delusions. This makes it exceptionally difficult for them to advocate for themselves or even find and hiring someone to advocate for them.[4] Fourth, civilly committed patients are often indigent and lack funds to hire a lawyer or other advocate, limiting their advocacy options to either themselves (which, as noted, is often a poor option because of their mental condition) or pro bono advocacy. Fifth, civilly committed patients are confined in hospitals and oftentimes, due to their illness, must have highly restricted

---

[4] Patients are generally assigned no one to advocate on their behalf because Oregon's civil commitment scheme does not provide them with counsel after the point of commitment. While individuals who are detained have a right to counsel during the court process leading up to an order of commitment, that representation ends at the time the order is entered. Having been civilly committed, individuals are no longer represented by counsel to protect their rights. They are lost to the oversight of the courts that have committed them, as is OHA, which disclaims responsibility for their care.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 37

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

access to phones and the internet, making it even more difficult for them to find a lawyer or similar advocate to assert claims on their behalf.

69.     Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates civilly committed individuals' Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

70.     Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## SECOND CLAIM

## Violation of Community Hospitals' Substantive Due Process Rights Under

## the Fourteenth Amendment to the United States Constitution

71.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 70 above.

72.     The Due Process Clause of the Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in the Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The right to exclude others from an owner's property and to use the property as the owner sees fit is one such fundamental right. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).

73.     The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process prohibits governmental deprivation of liberty and property rights without adequate procedure.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 38

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

*Cleveland Bd. of Educ.*, 470 U.S. at 541. Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp.*, 450 F. Supp. 2d at 1175 (quoting *Nunez*, 147 F.3d at 871).

74.     Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant David Baden was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

75.     For years, OHA has engaged in conduct and a policy and practice that violates Plaintiffs' and other community hospitals' right to due process. Specifically, OHA has knowingly and/or deliberately failed to build or otherwise ensure the availability of long-term treatment capacity for individuals who have been civilly committed to its care under ORS 426.060. OHA has failed to do so for no reason that furthers public health, safety or welfare—rather, OHA has failed to do so because it claims it simply lacks funding and, moreover, wishes to prioritize use of its funds to other populations of mentally ill individuals (like aid-and-assist and GEI patients). OHA knows that multiple federal courts have found these reasons insufficient as a matter of law, *see Ohlinger*, 652 F.2d at 779, *Or. Advocacy Ctr.*, 322 F.3d at 1121, *Bowman*, 2021 WL 5316440, at *2, but deliberately continues its practices anyway.

76.     Independently and/or alternatively, OHA knowingly outsources its responsibilities to Plaintiffs' hospitals, as described above, for no reason or purpose related to public health, safety, or welfare. OHA knows that civilly committed patients left indefinitely in Plaintiffs' community hospitals need long-term treatment but are not receiving it, yet OHA continues its practices, serving no health, safety, welfare, or other purpose. OHA knowingly engages in these

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 39

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

practices because it claims it lacks funds to act differently, even though OHA knows that federal courts have found this reason insufficient as a matter of law. *See Ohlinger*, 652 F.2d at 779, *Or. Advocacy Ctr.*, 322 F.3d at 1121, *Bowman*, 2021 WL 5316440, at *2.

77.    OHA's conduct, policy, and practice results in a deprivation of Plaintiffs' property and a denial of Plaintiffs' fundamental right to use its hospital beds. OHA's failures cause civilly committed patients to stay in Plaintiffs' hospitals after the point when they can no longer medically benefit from emergency psychiatric care and acute behavioral care, the relevant community hospital is required to house the individual for weeks, months, and sometimes their entire 180-day commitment and recommitment period. As a result, community hospitals are deprived of using their hospital beds for other patients, which negatively impacts community hospitals' ability to serve the community and have throughput in their emergency departments, which are often full of patients waiting to be admitted. Because of OHA's failure to comply with its statutory obligations, Plaintiffs and other community hospitals must dedicate significant resources to civilly committed patients who have no medical reason to be in acute care settings, preventing Plaintiffs from providing emergency psychiatric and acute behavioral care to other patients who do have a medical reason to be in acute care settings (including other civilly committed individuals or pre-commitment individuals, to whom Plaintiffs want to provide emergency psychiatric and acute behavioral treatment). These resources include not only the costs associated with medicating and housing these individuals for extended periods of time, but also damage to hospital property as well as the services of its care providers and other precautions needed, such as security and one-on-one sitters, to ensure the safety of the individual and others.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 40

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

78.     OHA has known about its practices—and the resulting effects on community

hospitals—for years but has failed to meaningfully address these problems. OHA has

deliberately and indifferently avoided addressing these problems at least in part because OHA

directly benefits from its practices, and the resulting harm to community hospitals and patients,

by effectively outsourcing the civil commitment process to community hospitals and making

community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

79.     OHA will continue engaging in its policy and practice in violation of the Due

Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory

and injunctive relief are appropriate because Plaintiffs lack an adequate remedy at law.

80.     Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates

community hospitals' Fourteenth Amendment substantive and procedural due process rights.

Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and

practice.

81.     Plaintiffs do not seek compensatory damages for OHA's due process violations.

Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and

costs in bringing this action.

## THIRD CLAIM

## Violation of Community Hospitals' Procedural Due Process Rights Under

## the Fourteenth Amendment to the United States Constitution

82.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 above.

83.     There is no state law procedure for community hospitals to contest being forced to

house civilly committed individuals indefinitely during their 180-day commitment. Although

Oregon civil commitment procedure involves a process by which OHA or its delegee consults

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 41

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

with the admitting physician of a hospital to "determine whether the best interests of a committed person are served by an admission to [that] community hospital," OAR 309-033-0270(3)(a), that procedure is not being followed. Plaintiffs are not being afforded a meaningful opportunity to be heard regarding whether a civilly committed patient should be committed to Plaintiffs' community hospitals for long-term treatment lasting up to 180 days. Rather, OHA is simply leaving patients at Plaintiffs' hospitals without any meaningful process. Nor is there a remedy available for community hospitals to seek compensation from OHA or their contracted Coordinated Care Organizations for most of its costs associated with OHA forcing them to house civilly committed individuals in lieu of OHA providing placements for them at OSH or another appropriate long-term treatment facility. OHA's policy and practice has resulted in working conditions for Plaintiffs' care providers that many find intolerable. As a result, an already difficult workforce shortage has become a crisis. The strains on Plaintiffs' care providers and resources are not sustainable, presenting a risk of loss of critical mental health services to members of the community who are in crisis.

84.    OHA will continue engaging in its policy and practice in violation of the Due Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory and injunctive relief are appropriate because Plaintiffs lack an adequate remedy at law.

85.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates community hospitals' Fourteenth Amendment substantive and procedural due process rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and practice.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 42

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

86.    Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

**FOURTH CLAIM**

**Violation of Community Hospitals' Rights Under the Takings Clause**

**of the Fifth Amendment to the United States Constitution (Physical Taking)**

87.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 86 above.

88.    The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the taking of private property for public use, without just compensation. U.S. Const. Amend. V. The Fifth Amendment is applicable to individual states pursuant to the Fourteenth Amendment.

89.    The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The prohibition includes physical takings in which the government physically appropriates an owner's real and personal property. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071-72 (2021).

90.    Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant David Baden was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

91.    For years, OHA has engaged in conduct and a policy and practice that results in a physical taking of Plaintiffs' and other community hospitals' property for public use without just compensation. Once a general judgment of commitment is entered and individuals are civilly

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 43

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility at the time of commitment. Instead, however, after individuals are civilly committed—and as a result no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals, where they are forgotten by OHA.

92.    Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospital beds for weeks, months, and sometimes their entire 180-day commitment and recommitment periods, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in an acute care setting and prevents other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments. Because of OHA's actions, community hospitals are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day.

93.    OHA and their contracted Coordinated Care Organizations do not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

94.    OHA will continue engaging in its conduct, policy, and practice in violation of the Fifth and Fourteenth Amendments unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 44

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

continue using Plaintiffs' hospitals and other community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly committed patient left in Plaintiffs' care because the expenses of pursuing so many individual legal actions would exceed the compensation Plaintiffs seek to recover.

95.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' Fifth and Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

96.    Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## FIFTH CLAIM

### Violation of Community Hospitals' Rights Under the Takings Clause

### of the Fifth Amendment to the United States Constitution (Regulatory Taking)

97.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 96 above.

98.    The Takings Clause under the Fifth Amendment (applied to the states through Fourteenth Amendment) extends not only to physical takings but also to regulatory interferences which occur when a significant restriction is placed on an owner's ability to use its own property for which justice and fairness require that compensation be given. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071-72 (2021).

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 45

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

99.     OHA's practices regulate Plaintiffs' use of their consumable property such that Plaintiffs are deprived of all economically viable use of their property. OHA's conduct unreasonably frustrates Plaintiffs' investment-backed expectations in such property.

100.    OHA's practices also regulate Plaintiffs' use of their beds in such a way that so frustrates Plaintiffs' distinct investment-backed expectations in their beds so as to constitute a taking under the Fifth Amendment.

101.    OHA and their contracted Coordinated Care Organizations do not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

102.    OHA will continue engaging in its conduct, policy, and practice in violation of the Fifth and Fourteenth Amendments unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using Plaintiffs' hospitals and other community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly committed patient left in Plaintiffs' care because the expenses of pursuing so many individual legal actions would exceed the compensation Plaintiffs seek to recover.

103.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' Fifth and Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 46

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

104.    Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## SIXTH CLAIM

### Violation of Community Hospitals' Rights under Article I, Section 18

### of the Oregon Constitution – Unlawful Taking

105.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 104 above.

106.    Article I, Section 18, of the Oregon Constitution provides in part that "[p]rivate property shall not be taken for public use . . . without just compensation; nor except in the case of the state, without such compensation first assessed and tendered."

107.    For years, OHA has engaged in conduct and a policy and practice that results in a taking of Plaintiffs' and other community hospitals' property for public use without just compensation. Once a general judgment of commitment is entered and individuals are civilly committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility at the time of commitment. Instead, however, after individuals are civilly committed—and they are no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals, where they are forgotten by OHA.

108.    Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospitals' beds for weeks, months, and sometimes their entire 180-day commitment and recommitment period, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 47

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

by civilly committed individuals who have no medical reason to be in acute care settings, and

prevents other acute psychiatric patients in the community from accessing much needed care,

including patients who are backed up in emergency departments. Because of OHA's actions,

community hospitals are deprived of the services of its care providers, forced to incur costs

associated with housing patients who should be elsewhere, and left with no choice but to devote

significant resources to patients who have no medical reason to be there, including medication,

food, housekeeping services, security, and one-to-one sitters 24 hours a day.

109.    OHA and their contracted Coordinated Care Organizations do not provide

sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for

civilly committed patients left at Plaintiffs' hospitals.

110.    OHA will continue engaging in its conduct, policy, and practice unless the Court

enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help

over the years, it is clear that OHA intends to continue using community hospitals to house

civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief

are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot

feasibly seek adequate and just compensation through individual legal actions for each civilly

committed patient left in Plaintiffs' care because the expenses of pursuing so many individual

legal actions would exceed the compensation Plaintiffs seek to recover.

111.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates

Plaintiffs' and other community hospitals' rights under Article 1, Section 18 of the Oregon

Constitution. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its

conduct, policy, and practice.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 48

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

112.    Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## SEVENTH CLAIM

### Violation of Civilly Committed Individuals' Rights under ORS 426.060

113.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 112 above.

114.    OHA must direct civilly committed persons "to the facility best able to treat" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "suitable" facility. ORS 426.060(2)(a), (d).

115.    OHA's conduct, policy, and practice violates its statutory duties under ORS 426.060 by deliberately failing to make any placement decision for civilly committed individuals. Instead of being placed in the facility "best able to treat" them or a "suitable facility" at the time of commitment, OHA is choosing to leave civilly committed individuals indefinitely in acute care hospitals, and deliberately failing to make any placement decision for them as contemplated by the statute.

116.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

117.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 49

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

its duties under ORS 426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place civilly committed individuals in the facility best able to treat them or a suitable facility at the time of commitment.

118.    Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## EIGHTH CLAIM

### Violation of Civilly Committed Individuals' Rights under ORS 426.150(1)

119.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 118 above.

120.    When an individual is civilly committed, "[OHA] or its designee shall take the person with mental illness into its custody and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1).

121.    OHA's conduct, policy, and practice violates its statutory duties under ORS 426.150(1). Once individuals are civilly committed, OHA is failing to take custody of these individuals and ensure the safekeeping and proper care of these individuals until they are delivered to an assigned treatment facility or to a representative of the assigned treatment facility. Instead, OHA is leaving civilly committed individuals in acute care community hospitals where they are initially detained for emergency purposes on a notice of mental illness, and failing to place patients after they are civilly committed.

122.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 50

95575689.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

123.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates its duties under ORS 426.150, and that OHA has a legal duty to take civilly committed individuals into its custody and ensure the safekeeping and proper care of them by delivering them to an assigned treatment facility that is best able to treat them or a suitable facility.

124.    Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## NINTH CLAIM

## Violation of Civilly Committed Individuals' Rights under ORS 659A.142(5)(a) and (6)(a)

125.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 124 above.

126.    ORS 659A.142(5)(a) provides that "[i]t is an unlawful practice for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability."

127.    ORS 659.142(6)(a) provides that "[i]t is an unlawful practice for a provider or any person acting on behalf of a provider to discriminate by doing any of the following based on the patient's race, color, national origin, sex, sexual orientation, gender identity, age or disability: (A) Deny medical treatment to the patient that is likely to benefit the patient based on an individualized assessment of the patient using objective medical evidence; or (B) Limit or restrict in any manner the allocation of medical resources to the patient."

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 51

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

128.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A.142(5)(a) because OHA is excluding civilly committed individuals from admission to OSH and denying them an alternative appropriate long-term placement when they are civilly committed to the custody of OHA for 180 days of treatment.

129.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A.142(6)(a) because OHA is discriminating against civilly committed individuals by denying them appropriate long-term treatment once they are civilly committed to the custody of OHA, and limiting and restricting the allocation of resources to them.

130.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law.

131.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' rights under ORS 659A.142(5)(a) and (6)(a). Plaintiffs also seek a permanent injunction pursuant to ORS 659A.885(1) enjoining OHA from continuing its statutory violations and their attorneys' fees pursuant to ORS 659A.885(8)(d).

## **RELIEF REQUESTED**

Plaintiffs respectfully request the following relief:

A.    Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates the Fifth and Fourteenth Amendments to the United States Constitution because:

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 52

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

i.   They force community hospitals to house and treat civilly committed individuals indefinitely, thus occupying and taking their property, despite the fact that community hospitals are not equipped, staffed, or designed to provide long-term care and treatment appropriate for civilly committed individuals;

ii.   There is no state law procedure for community hospitals to contest being forced to house civilly committed individuals;

iii.   They result in a taking of community hospitals' private property for public use without just compensation;

iv.   They result in a violation of civilly committed individuals' right to receive appropriate treatment and, further, deny liberty interests arising from state law; and

v.   There is no state law procedure for community hospitals to ensure that civilly committed individuals are placed by OHA in the facility best able to treat them or even a suitable facility.

B.   Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates Article I, Section 18, of the Oregon Constitution because they result in a taking of Plaintiffs' and other community hospitals' private property for public use without just compensation.

C.   Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place them in the facility best able to treat them or a suitable facility at the time of commitment.

D.   Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 426.150, and that OHA has a legal duty to take civilly

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 53

95575689.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

committed individuals into its custody and ensure the safekeeping and proper care of them by

delivering them to an assigned treatment facility best able to treat them or a suitable facility.

      E.      Declare that OHA's conduct, policy, and practice regarding civilly committed

individuals violates ORS 659A.142(5) and (6).

      F.      Permanently enjoin OHA from continuing to violate civilly committed patients'

due process rights to liberty and hospitals' due process rights to property, and from continuing to

take hospitals' property without just compensation, and further requiring OHA to fulfill its

obligations to provide civilly committed patients the care and treatment they are entitled to by

law.

      G.      Award Plaintiffs their reasonable attorneys' fees and costs in this action pursuant

to 42 U.S.C. § 1988(b) and ORS 659A.885(8)(d); and

      H.      Grant such further relief as justice requires.


June 26, 2023.

                      LEWIS BRISBOIS BISGAARD & SMITH LLP


                      By:    */s/ Eric J. Neiman*
                              Eric J. Neiman, OSB #823513
                              Emma P. Pelkey, OSB #144029
                              Telephone: 971.712.2800


                      STOEL RIVES LLP


                      By:    */s/ Thomas R. Johnson*
                              Thomas R. Johnson, OSB #010645
                              Alex Van Rysselberghe, OSB #174836
                              Telephone: 503.294.9466


                              *Attorneys for Plaintiffs*

SECOND AMENDED COMPLAINT    **LEWIS BRISBOIS BISGAARD & SMITH LLP**    **STOEL RIVES LLP**
FOR DECLARATORY AND             888 SW Fifth Avenue, Suite 900         760 SW Ninth Avenue, Suite 3000
INJUNCTIVE RELIEF - 54             Portland, Oregon 97204-2025           Portland, Oregon 97205
                             Telephone: 971.712.2800 • Fax 971.712.2801    Phone: +1.503.224.3380 • Fax: +1.503.220.2480
95575689.1