FILED

JUN 5 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEGACY HEALTH SYSTEM; et al., | No. 23-35511 |
| Plaintiffs-Appellants, | D.C. Nos. 6:22-cv-01460-MO |
| v. | 3:02-cv-00339-MO |
| SEJAL HATHI, in her official capacity as Director of Oregon Health Authority, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted May 8, 2024
Seattle, Washington

Before: McKEOWN, W. FLETCHER, and OWENS, Circuit Judges.

Plaintiffs-Appellants Legacy Health System et al. ("Legacy Health System") are a group of hospital systems in Oregon. Legacy Health System sued the director of the Oregon Health Authority ("OHA"), the state agency that operates the Oregon State Hospital ("OSH"), in her official capacity.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Legacy Health System claims that OHA fails to maintain adequate bed space at OSH for people who are civilly committed due to mental illness. Legacy Health System alleges that this causes civilly committed patients to remain for long periods in Legacy Health System's acute care facilities, which are not designed or prepared to provide the treatment that civilly committed individuals need on an extended basis. Legacy Health System brought claims on its own behalf under the Due Process Clause and the Takings Clause of the federal Constitution, as well as a claim on its own behalf under the Takings Clause of the Oregon Constitution. Legacy Health System also brought constitutional and statutory claims on behalf of civilly committed patients in its facilities.

The district court dismissed Legacy Health System's complaint in its entirety. The district court concluded that Legacy Health System lacked Article III standing to bring any of its claims because its injuries were traceable to its own conduct in applying for certification to provide acute care to civilly committed patients and were therefore not traceable to the conduct of defendant. It further concluded that Legacy Health System lacked third-party standing to bring claims on behalf of the civilly committed patients because the interests of Legacy Health System and the patients were not sufficiently aligned. We have jurisdiction to hear

Legacy Health System's appeal pursuant to 28 U.S.C. § 1291, and we reverse in part, vacate in part, and remand for further proceedings.

Article III standing: The fact that Legacy Health System applied for certification to provide acute care to civilly committed patients does not defeat Article III standing. The Supreme Court has held that there is no "exception to traceability for injuries that a party purposely incurs." *FEC v. Cruz*, 596 U.S. 289, 296–97 (2022). An injury that results from a defendant's actions satisfies traceability "even if the injury could be described in some sense as willingly incurred." *Id.* at 297; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (holding that a tester who "approached the real estate agent fully expecting that he would receive false information" had standing to sue for violation of "right to truthful housing information"). Whether Legacy Health System has a cause of action (a question we do not decide) is not an Article III question. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). We reverse the judgment of the district court to the extent the court concluded that Legacy Health System lacked Article III standing to bring the claims in this suit.

Third-party standing: Whether Legacy Health System has third-party standing to bring claims on behalf of civilly committed patients is a closer question. For a litigant to have standing to assert claims on a third party's behalf,

"[t]he litigant must have suffered an 'injury in fact' . . . ; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (citations omitted) (quoting *Singleton v. Wulff*, 428 U.S. 106, 112 (1976)).

Our cases demonstrate that the "close relation" inquiry is nuanced and fact-dependent. For instance, in *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996), we held that a nonunionized gold ore processing company met the "close relation" requirement when it challenged on behalf of its employees a state statute allowing unionized ore-processing plants to schedule twelve-hour shifts but forbidding nonunionized plants from scheduling shifts of more than eight hours. *See id.* at 485–86, 489. A company would not generally have a "close relation" to its workers for purposes of third-party standing in a challenge to a statute that protects the workers from excessive hours; the interests of companies and their employees would often be adverse in such cases. But on the facts of *Viceroy Gold Corp.*, the remedy sought by the company would have benefitted the workers because many of them had "a daily commute of seventy-five miles or more each way" and had "requested a shorter work week—with fewer days at 12 hours per day—to reduce the commute and give them more free time." *Id.* at 485. We

therefore concluded that "[o]n this narrow issue, [the company's] interest is sufficiently aligned with that of its employees." *Id.* at 489.

In *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078 (9th Cir. 1987), we held that a supermarket lacked standing to bring a claim on behalf of its customers challenging the federal Special Food Program for Women, Infants and Children ("WIC"). *Id.* at 1079–80, 1082. The supermarket alleged that the WIC program "discriminated against Southeast Asians and Indochinese refugees by basing the selection of supplemental foods on a conventional American diet, without taking into account the diverse cultural eating habits and lactose intolerance of these groups." *Id.* at 1080. To remedy this alleged discrimination, the supermarket sought an injunction prohibiting the administration of the WIC program. *Id.*

Vendors generally have standing to assert claims on behalf of their customers. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 195 (1976). But in *Hong Kong Supermarket*, the remedy sought by the supermarket would have harmed its customers by depriving them of all WIC program benefits. Looking to "the outcome [the supermarket] seeks on the face of its complaint," we therefore concluded that "its interests and those of the nutritionally high risk WIC recipients are not 'inextricably' intertwined." *Hong Kong Supermarket*, 830 F.2d at 1082.

5

How the principles discussed in these cases and others should apply here is not obvious. Doctors often have been found to have standing to assert the rights of their patients. *See, e.g.*, *Singleton*, 428 U.S. at 117. But Legacy Health System does not seek to provide appropriate long-term treatment to civilly committed patients itself; rather, Legacy Health System seeks an injunction requiring OHA to provide appropriate long-term care to these patients. Accepting as true the complaint's allegations, "the outcome" that Legacy Health System "seeks on the face of its complaint" would benefit civilly committed patients by ensuring they receive appropriate long-term treatment from OHA. *See Hong Kong Supermarket*, 830 F.2d at 1082. But as Legacy Health System's complaint acknowledges, bed space at OSH is limited, and OSH is under competing pressure from the injunction upheld by our circuit in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003), which requires OSH to admit criminal defendants who are found "mentally incapacitated . . . within seven days of the judicial finding of their incapacity to proceed to trial." *Id.* at 1107, 1123. Whether Legacy Health System's interests are sufficiently aligned with the interests of its civilly committed patients may depend on what outcome Legacy Health System in fact is likely to achieve in this litigation and whether that outcome would benefit the patients whom Legacy Health System

seeks to represent. These questions are not clearly answered in the complaint or the present briefing.

The district court concluded that Legacy Health System lacked third-party standing in part because it concluded that Disability Rights Oregon ("DRO") would be better suited "to speak on behalf of civilly committed patients." That conclusion is clearly erroneous. *Cf. In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011) ("Factual determinations underlying the standing decision are reviewed for clear error."). DRO represents the "mentally incapacitated criminal defendant[s]" in the *Mink* litigation. *See Mink*, 322 F.3d at 1105. It is undisputed that the defendants represented by DRO compete with civilly committed patients for the limited bed space available at OSH. The conflict between the interests of civilly committed patients and DRO's clients in the *Mink* litigation calls into serious question DRO's ability fairly to represent the civilly committed patients.

The district court also found that Legacy Health System lacked third-party standing because the hospitals "complain about how much civilly committed patients are costing them and about the harms [the patients] inflict on their staff members." These allegations can be relevant to third-party standing, especially to the extent they may reflect a prioritization of the hospitals' financial concerns or

indicate a potential disjunction of interests if the remedy sought by Legacy Health System—the creation or allocation of additional bed space at OSH for civilly committed patients—proves unavailable. But some tension in Legacy Health System's complaint between the needs of civilly committed patients and the hospitals is not necessarily enough to show that Legacy Health System lacks a "close relation" to the patients in light of our precedent instructing that parties with some degree of adversity may nonetheless be "sufficiently aligned" for third-party standing purposes. *See Viceroy Gold Corp.*, 75 F.3d at 489.

The present record is insufficient to determine whether Legacy Health System has third-party standing to assert claims on behalf of civilly committed patients. We therefore vacate the judgment of the district court on this issue and remand for reconsideration in light of the third-party standing principles discussed above.

We construe Appellee's motion to substitute a party (Dkt. 36) as a motion to amend the case caption and grant it. *See* Fed. R. App. P. 43(c)(2). We grant non-party Samaritan Health Services, Inc.'s motion for leave to file an untimely amicus brief (Dkt. 39). We deny as moot Legacy Health System's motion for judicial notice (Dkt. 46) because the materials presented therein are unnecessary to our

disposition of this matter.  Each party shall bear its own costs on appeal.  *See* Fed. R. App. P. 39(a)(4).

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**