**Eric J. Neiman, OSB #823513**
ENeiman@ebglaw.com
**Emma P. Pelkey, OSB #144029**
EPelkey@ebglaw.com
EPSTEIN BECKER GREEN
1050 SW Sixth Ave., Suite 1530
Portland, Oregon 97204-2025
Telephone: 503-343-6475
Facsimile: 503-343-6476

**Thomas R. Johnson, OSB #010645**
Tom.Johnson@stoel.com
**Alex Van Rysselberghe, OSB #174836**
Alex.Vanrysselberghe@stoel.com
STOEL RIVES LLP
730 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.294.9466

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON and ST. CHARLES HEALTH SYSTEM, | Case No. 6:22-cv-01460-AN **SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | |
| vs. | |
| SEJAL HATHI, MD, in her official capacity as Director of Oregon Health Authority, | |
| Defendant. | |

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 1

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

**INTRODUCTION**

Under Oregon law, individuals who are dangerous to themselves or others, or unable to take care of their own basic needs, due to a mental disorder, may be civilly committed to the Oregon Health Authority (OHA) for involuntary detention and treatment. Involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509 (1972). The State and Federal Constitutions require that mentally ill persons who are involuntarily detained receive treatment calculated to lead to the end of their involuntary detention. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). It is not acceptable under the law—let alone basic standards of human dignity and decency—to merely "warehouse" mentally ill individuals away from the community and not provide them appropriate treatment during their involuntary detention. *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (recognizing that "all too often the promise of treatment has served only to bring an illusion of benevolence to what is essentially a warehousing operation of social misfits") (quoting *U.S. ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 936 (7th Cir. 1975)).

OHA is responsible for the care and treatment of civilly committed patients because patients are committed "to the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). For years, however, OHA has failed to fulfill its responsibilities to this vulnerable population. Rather than ensure and provide timely access to the appropriate level of treatment, OHA has adopted a practice of abandoning civilly committed patients and leaving them for extended periods of time in community hospitals. These acute care community hospitals are not designed, equipped, staffed, or intended to provide long-term treatment for mental illness. Acute care community hospitals are meant to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises—treatment which involves emergency care, highly restrictive settings, and constant monitoring. However, civilly committed patients who have already been stabilized do not need this type of care and have no medical need to be in such

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 2

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

restrictive environments. These patients instead need long-term treatment, in less restrictive settings, that acute care community hospitals cannot provide.

There is no legitimate state interest behind OHA's failure to provide appropriate treatment. OHA is abandoning civilly committed patients in community hospitals not because OHA is looking out for patients' best interests; rather, it is because OHA lacks sufficient facilities to provide the long-term treatment that OHA is charged by law to provide, and OHA deliberately makes a choice not to devote sufficient funding and resources necessary to providing such treatment. In essence, OHA has outsourced its responsibilities to civilly committed patients to community hospitals so that OHA does not have to devote more funding and resources to such patients.

OHA's conduct, policy, and practice harms civilly committed patients. Rather than progress to the next level of treatment, patients remain confined unnecessarily in acute care units where they are denied access to the long-term treatment that justifies their commitment in the first place, and that they are constitutionally entitled to receive as a condition of taking away their liberty. This practice violates OHA's statutory duties and ignores the fundamental rights of civilly committed Oregonians: access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980).

OHA's conduct, policy, and practice also harms community hospitals by taking hospitals' property with neither due process of law nor just compensation. Because hospitals cannot, and will not, discharge civilly committed individuals, who desperately need long-term treatment, OHA's failure to act means that community hospitals must hold some civilly committed individuals for long periods of time. As a result, community hospitals must dedicate significant resources to patients who have no medical reason to be in emergency or acute care settings. These resources include the efforts of physicians, nurses, other care providers, and hospital staff as well as costs associated with medication, housing patients who should be elsewhere, injuries

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 3

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

to hospital staff, and damage to hospital property. OHA does not adequately compensate and reimburse hospitals for expending these resources, or hold payers accountable to provide adequate reimbursement.

Moreover, OHA's conduct, policy, and practice also harms the community. Oregon is in the middle of an unprecedented mental health crisis and community hospitals are desperately needed to treat and stabilize other vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness. Because the beds of community hospitals are taken up by civilly committed individuals who should be transferred to long-term treatment facilities that can provide them with meaningful treatment, other individuals in acute mental health crises are unable to access care at community hospitals.

Community hospitals bring this lawsuit to hold OHA accountable and ensure civilly committed patients have access to the most appropriate long-term treatment options. To that end, Plaintiffs do not seek compensatory damages—instead, Plaintiffs seek only declaratory and injunctive relief, and recovery of their attorneys' fees for having to pursue litigation to force OHA to accept its responsibility to provide appropriate long-term treatment to civilly committed individuals. Plaintiffs seek a declaration that OHA's conduct, policy, and practice of forcing community hospitals to fulfill OHA's statutory obligations violate the constitutional rights of both civilly committed individuals and the community hospitals where they are unnecessarily confined. Plaintiffs further seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice and requiring OHA to fulfill its statutory obligations to ensure civilly committed individuals finally receive the care and treatment they are entitled to by law.

## <u>JURISDICTION AND VENUE</u>

1.      This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12132, and 28 U.S.C. § 2201.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

2.     This Court has subject matter jurisdiction pursuant to 28 USC § 1331 (federal question jurisdiction) and 28 USC §1343 (civil rights jurisdiction), and supplemental jurisdiction over claims based on state law pursuant to 28 USC § 1367.

3.     Declaratory and additional relief are authorized by 28 U.S.C. §§ 2201 and 2202.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.     Plaintiffs are four of Oregon's largest not-for-profit health systems that provide hospital and healthcare services throughout the state in accordance with their missions to serve patients and the community. Plaintiffs' community hospitals all receive patients who are detained or civilly committed pursuant to Oregon law, as alleged below.

6.     The community hospitals operated by Plaintiffs are not designed, equipped, staffed, or intended to provide long-term mental health treatment for civilly committed individuals. Only some of Plaintiffs' hospitals have behavioral health units. Those units are intended to serve the community as acute care facilities at which patients experiencing acute mental health crises are evaluated, stabilized, and discharged to the next appropriate level of care. By design, the average length of stay for most patients is 14 days or less. However, due to the conduct, policy, and practices of OHA, civilly committed individuals commonly remain in the units for much longer periods of time. These units are highly restrictive, locked environments. Patients can leave the units only for short periods of time, if at all, because of environmental, regulatory, and staffing limitations. This type of confined setting is not designed to provide the appropriate therapeutic setting for long-term treatment.

7.     Plaintiffs also operate emergency departments and medical-surgical units within their community hospitals. As alleged below, patients experiencing mental health crises often are left in those units pursuant to Oregon civil commitment laws because of the practices and conduct of OHA, which has led to a shortage of acute psychiatric beds. These patients cannot

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 5

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

access behavioral health units or other treatment settings that they desperately need because there are no beds available for care.

8.     Plaintiff Legacy Emanuel Hospital & Health Center, doing business as Unity Center for Behavioral Health (Unity), operates an acute care behavioral health hospital in Portland, Oregon. Unity's mission includes providing high-quality, compassionate, patient-centric behavioral healthcare to its patients and the community. Unity has 85 adult beds and 22 adolescent beds. Unity provides both emergency and inpatient services to individuals experiencing mental health crises. Unity is an acute care hospital, meaning it provides assessment and short-term stabilizing treatment for patients experiencing an acute behavioral health crisis. Unity is not a long-term treatment facility, nor is it designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed.

9.     Plaintiff Legacy Health (Legacy) operates six hospitals in Oregon. Legacy's mission includes providing high-quality, compassionate, patient-centric healthcare to its patients and the community. Legacy's hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

10.     Plaintiff PeaceHealth operates four hospitals in Oregon. PeaceHealth's mission includes providing high-quality, compassionate, patient-centric healthcare to its patients and the community. One of PeaceHealth's hospitals has a 35-bed acute care behavioral health unit. It has an average length of stay of ten days. It is not designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other PeaceHealth hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

11.     Plaintiff Providence Health & Services – Oregon (Providence) operates eight hospitals in Oregon. Providence's mission includes providing high-quality, compassionate,

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 6

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

patient-centric healthcare to its patients and the community. Four of Providence's hospitals have acute care behavioral health units, which combined include 66 adult beds, 19 senior beds, and 22 adolescent beds. None of those acute care behavioral health units are designed, equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not designed, equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

12.    Plaintiff St. Charles Health System, Inc. (St. Charles) operates four hospitals in Bend, Redmond, Madras, and Prineville, Oregon. St. Charles' mission includes providing high-quality, compassionate, patient-centric healthcare to its patients and the community. Only the hospital in Bend has acute behavioral health beds. It has a five-bed secure psychiatric services unit, and a 15-bed acute care behavioral health unit. The Bend hospital is not equipped, staffed, or intended to provide long-term care for individuals who are civilly committed. The other hospitals have emergency departments and medical-surgical units, but do not have behavioral health units. They are not equipped, staffed, or intended to provide care for individuals who are detained or civilly committed.

13.    Defendant Sejal Hathi, MD is director of OHA, an agency of the State of Oregon. She is sued in her official capacity.

## FACTS

**A.    Civilly committed patients are entitled to appropriate long-term treatment.**

14.    Hundreds of individuals with severe mental illnesses are civilly committed to OHA for treatment every year. These individuals exhibit acute symptoms such as psychosis (dissociation with reality), paranoia, hallucinations, suicidal or homicidal ideation, depression, and sometimes behaviors that can cause them to be a danger toward themselves and others. In short, these individuals with severe mental illness require significant care and treatment.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 7

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

15.     Civil commitment is a drastic measure that the state takes only if no other option for care is available. A judge may commit a person only if a mental illness makes the person a danger to themself or others or unable to take care of their own basic personal needs. The Supreme Court has held that involuntary detention due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509. Accordingly, due process requires that civilly committed persons receive treatment calculated to lead to the end of their involuntary detention. *Id.* Failing to provide this type of care to persons who are involuntarily detained—and instead using involuntary commitment to merely "warehouse" patients away from the community—violates due process, not to mention basic standards of human dignity and decency.

16.     To that end, when the state pursues civil commitment, the state must provide mental health treatment that gives civilly committed patients "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 775. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778. Thus, civil commitment requires individualized treatment in the least restrictive setting possible with the goal of restoring the person's liberty, and commitment can last only long enough for the purpose of giving patients treatment that gives them a "realistic opportunity to be cured or to improve" so that they can return to the community and not be recommitted.

17.     The first phase of treatment is to stabilize the patient. The goal of stabilization is to manage and alleviate patients' most acute symptoms so that those symptoms do not inhibit long-term recovery. Stabilizing treatment typically involves medication to manage acute symptoms, such as psychosis, hallucinations, delusions, and/or aggressive behavior. The patient must be monitored so medications can be managed and staff can promptly intervene if needed. Due to these limitations, the patient must be in a highly restrictive setting, and patients often cannot be allowed to move about as they please. Because stabilization is intended to be short-

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 8

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

term, this highly restrictive environment is meant to be only temporary and is the role acute care hospitals are intended to serve in the continuum of care.

18.     After being stabilized, a subset of civilly committed patients need long-term treatment. Long-term treatment does more than manage the patient's acute symptoms—it aims to address the patient's mental illness with the goal of enabling the patient to recover and return to the community. Long-term treatment involves fewer restrictions and offers more independence so that patients can practice and develop life and health skills for being successful in the community, including the ability to take day passes and overnight visits to facilitate transition back to the community. It involves a more stable peer environment with less patient turnover, more socialization, more group counseling, and more peer support. It provides training and education programs for patients to learn how to care for their basic needs, maintain employment, and sustain healthy relationships. It provides a calmer, less stressful environment than exists in the emergency department or an acute care unit of a community hospital, which reduces the risk of the individual decompensating back into an acute mental health crisis.

19.     An emergency or acute care setting, where patients are stabilized, is not appropriate for patients to remain long-term when they need long-term treatment. Emergency and acute care environments are, by necessity, far more restrictive than long-term treatment environments. Emergency and acute care units typically house patients in crisis and require more monitoring and staffing than do long-term treatment environments. These features can be counterproductive to patients who have stabilized and are working to recover so that they can regain their freedom and return to the community. A patient in long-term recovery cannot receive the socialization and skill-development opportunities in an emergency or acute care environment. The increased level of restriction is unnecessary for such patients and often can cause decompensation.

20.     For these reasons, it is difficult to overstate how crucial it is that a civilly committed patient, once stabilized, be transitioned into an environment conducive to long-term

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 9

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

treatment. If a civilly committed patient is not transferred, the patient's liberty is unnecessarily curtailed, the patient does not meaningfully recover, the patient may decompensate, the patient becomes more likely to be re-committed in the near future, and the very purpose of civil commitment is undermined.

**B.     Oregon law requires OHA to ensure that civilly committed individuals receive appropriate long-term treatment.**

21.     The state is responsible for the civil commitment process. The state initiates civil commitment proceedings; the state pursues civil commitment from the court; and, if commitment is ordered, patients are committed "**to the Oregon Health Authority** for treatment." ORS 426.130(1)(a)(C) (emphasis added). As such, it is the responsibility of the state to provide civilly committed individuals with necessary treatment during their commitment in the most appropriate and least restrictive setting possible to fulfill patients' constitutional rights.

22.     Where a person has been civilly committed, Oregon law charges OHA with the responsibility for finding an appropriate placement for long-term treatment. Oregon law requires that, "[u]pon receipt of the order of commitment, OHA or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1). By statute, OHA must direct civilly committed persons "**to the facility best able to treat**" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "**suitable**" facility. ORS 426.060(2)(a), (d) (emphasis added).

23.     The director of OHA may assign or transfer the civilly committed person to any facility "which, in the opinion of the director, will appropriately meet the mental health needs of the person under civil commitment." OAR 309-033-0290(1)(a). The director of OHA *may* place the person in a community hospital—however, in doing so, the director of OHA must "consult" with the community hospital's admitting physician, and both must, together, "determine whether

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 10

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

the best interests of a person under civil commitment are served by an admission to a community hospital." OAR 309-033-0270(3)(a).

**C.     OHA is failing to provide appropriate long-term treatment to civilly committed patients who need it during their involuntary commitment.**

24.     Oregon's civil commitment system has broken down as OHA has, for years, ignored its statutory obligations to this most vulnerable population. Despite the state's responsibility to provide civilly committed individuals with constitutionally sufficient treatment, OHA is failing to ensure that appropriate long-term treatment is available to patients who need it.

25.     Historically, civilly committed individuals went to the Oregon State Hospital (OSH), the mental health hospital operated and managed by OHA. ORS 179.321(1). OSH is intended to be used by the state "for the care and treatment of persons with mental illness." ORS 426.010. Within OSH are multiple secure long-term residential treatment units which provide the long-term treatment that many civilly committed patients need: fewer restrictions, more independence, a calmer and more stable environment, more stable peer communities, less patient turnover, more socialization and peer support, more group counseling, and more training and education programs for patients to learn to care for their basic needs, maintain employment, and sustain healthy relationships. However, over the years (and as a result of other litigation), OHA has increasingly prioritized the admission of aid-and-assist and guilty except for insanity (GEI) patients at OSH over civilly committed patients. The graph below (provided by OSH) illustrates this trend:

///

///

///

///

///

///

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 11

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480



In December of 2019, OSH stopped taking civilly committed patients virtually altogether, shifting admission priorities to focus almost entirely on the aid-and-assist and GEI populations. By May of 2024, there were less than 20 civilly committed patients at OSH out of almost 650 beds.

26.     Over this period of admitting steadily fewer civilly committed patients to its state hospital facilities, OHA has done virtually nothing to create additional capacity for civilly committed patients to receive needed treatment in appropriate settings. For instance, OHA has not increased capacity at OSH to continue accommodating civilly committed patients even as it has admitted steadily more patients from the aid-and-assist and GEI populations. Nor has OHA built other secure residential treatment facilities or other long-term treatment options outside of OSH. Despite recognizing that it is a longstanding problem, OHA has failed to step up to fix it.

27.     OHA has also failed to ensure that other entities authorized to care for civilly committed patients—like counties, municipalities, and nonprofit organizations—can fill the gap left by the state. OHA has failed to, for instance, provide sufficient funding, grants, or other incentives for other entities to create and run long-term treatment facilities needed by many of the patients who are civilly committed to OHA's custody but not receiving long-term treatment.[1]

---

[1] For example, in the entire State of Oregon, there are currently **only two** Class One secure residential treatment facilities. A Class One facility is approved "to be locked to prevent a person

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 12

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

28.     Plaintiffs strongly support the rights of aid-and-assist and GEI patients, who should be removed from jail and receive meaningful treatment. But OHA is responsible for civilly committed patients, too, and must serve aid-and-assist and GEI patients without abandoning civilly committed patients. The law prohibits OHA from prioritizing aid-and-assist and GEI patients over civilly committed patients if it means giving civilly committed patients inadequate care. The Ninth Circuit has held that, when it comes to providing constitutionally adequate treatment to involuntarily detained patients, "[l]lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Ohlinger*, 652 F.2d at 779. Indeed, OHA's recent practices have already been adjudged unlawful by this Court. On November 15, 2021, in *Bowman v. Matteucci*, 3:21-cv-01637, Judge Marco A. Hernández granted injunctive relief to GEI patients who claimed that they were unconstitutionally being denied admission to OSH because OHA was prioritizing the admission of aid-and-assist patients. OHA argued that, due to an injunction regarding admission requirements for aid-and-assist patients in *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121–22 (9th Cir. 2003), OHA had to prioritize aid-and-assist patients over other populations of patients. Judge Hernández expressly rejected the notion that OHA may prioritize the constitutional rights of some patients over others:

> If OSH cannot admit GEI patients while admitting aid-and-assist patients within the court-ordered timeframe, it's because OSH lacks the space and the funding to do so—not because the *Mink* order compels it to prioritize one group over another. In other words, any prioritization stems from Defendant's failure to provide the funds, staff, and facilities necessary to satisfy the constitutional rights of both groups. **When satisfying constitutional guarantees, Defendants cannot rob Peter to pay Paul.**

*Bowman v. Matteucci*, 3:21-cv-01637, 2021 WL 5316440, at *2 (D. Or. Nov. 15, 2021)

(emphasis added). Despite this unambiguous ruling, OHA continues to systematically prioritize

---

from leaving the facility, to use seclusion and restraint, and to involuntarily administer psychiatric medication." OAR 309-033-0520(2). These are critical resources that some civilly committed individuals may require before they are ready to step down to a lower level of care.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 13

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

care for other patients over care for civilly committed patients, again "robbing Peter to pay Paul."

**D.      OHA has effectively outsourced its responsibilities to the civilly committed population to community hospitals without hospitals' consent.**

29.      Rather than addressing these problems by increasing long-term treatment capacity and options throughout Oregon, OHA has effectively outsourced its responsibilities to civilly committed patients by leaving patients indefinitely in community hospitals' emergency rooms, acute behavioral care units, and medical-surgical units.

30.      Plaintiffs are Oregon's four largest health systems, each of which operates several community hospitals across Oregon. Each of Plaintiffs' hospitals have emergency departments or emergency rooms where patients experiencing severe crises and psychiatric emergencies may receive emergency psychiatric care. Some (but not all) of Plaintiffs' hospitals have acute behavioral care units, in which patients requiring further acute care after emergency treatment can be treated and monitored overnight or for a few weeks while they stabilize.

31.      Due to the high level of close monitoring and treatment involved in providing acute care for these patients, emergency and acute behavioral care settings are highly restrictive. Other patients occupying the units are generally not stable because they are still in the process of being treated and stabilized. Further, the environments can be stressful, and the rate of patient turnover is high. These environments are not conducive to patients who require the calm, stability, and freedom that exists in long-term treatment environments. There is no realistic way for Plaintiffs to realistically provide long-term treatment in such environments.

32.      In comparison, secure residential treatment facilities are a more suitable place for civilly committed individuals who no longer require emergency or acute behavioral care because they offer long-term treatment (which acute care hospitals do not) and allow more freedom and independence for the patient. For example, a patient on an acute care unit necessarily must live in confined, closed-off, heavily monitored physical spaces:

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 14

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480






SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 15

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

A patient at OSH or a secure residential facility, meanwhile, may recover in a living space far more conducive to meaningful long-term recovery:



Long-term treatment facilities also tend to have enriching facilities and opportunities that are vital to patients' long-term recovery, like gyms, education and vocational opportunities, outdoor facilities, cafés, markets, and coffee shops. Individuals in long-term residential treatment facilities can sometimes go places on day passes, wear their own clothes, and go outside daily for fresh air. There can be family and friend events and peer support specialists on staff. These types of amenities and opportunities, which are often necessary to enhance the treatment of civilly committed patients, are generally not available in the emergency departments and acute care units of community hospitals.

33.    Typically, individuals who become civilly committed while in Plaintiffs' care arrive through the doors of their emergency departments. Patients are often brought to Plaintiffs' hospitals by law enforcement, or first responders, who deliver individuals to the emergency departments when they are in acute distress. Patients also may be brought by family or friends, or on their own accord. Hospitals are required by law, and as a condition of licensure, to have an emergency department, or provide emergency services, 24 hours a day, seven days a week. OAR 333-520-0070(2), (9). Hospitals must accept all patients who enter through their

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 16

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

emergency rooms, regardless of whether they might later be civilly committed or whether the hospital is approved to treat detained or civilly committed patients. Under both the Emergency Medical Treatment and Labor Act ("EMTALA") and Oregon law, a hospital must screen each patient to determine whether the patient has an emergency medical condition, including a psychiatric crisis causing them to be dangerous to themselves or others or unable to take care of their basic needs. 42 C.F.R. § 489.24(a)(1)(i); 42 U.S.C. § 1395dd(a); OAR 333-520-0070(7), (9). If an emergency medical condition exists, the hospital must provide any necessary stabilizing treatment or, if the hospital cannot provide it, arrange for an appropriate transfer to another treatment setting. 42 C.F.R. § 489.24(a)(1)(ii); 42 U.S.C. § 1395dd(b)(1)(A-B); OAR 333-520-0070(3)(a), (f), (h), (i), (j); OAR 333-520-0070(9). As such, Plaintiffs must accept all patients into their emergency departments and cannot control which patients enter their hospitals.

34.     Where a patient in the emergency room potentially meets the criteria for civil commitment—that is, they present a danger to themselves or others or are unable to take care of their own basic needs, due to a mental illness—a licensed independent practitioner may initiate civil commitment proceedings. When this happens, Plaintiffs must involuntarily detain and hold the patient for several days under a "Notice of Mental Illness," at least until the state holds a civil commitment hearing and a state court judge issues a commitment order (or until the patient no longer meets detention criteria). Of the patients who are detained, some remain in emergency departments while others may be admitted to the scarce number of inpatient psychiatric beds that exist in Plaintiffs' hospitals, and still others may be admitted to inpatient medical unit beds. Regardless of where patients are located in Plaintiffs' hospitals, federal and state laws and regulations and medical ethics prohibit Plaintiffs from discharging these patients while they are psychiatrically unstable, lack a safe discharge plan, and are being detained under Oregon civil commitment law. Plaintiffs also cannot discharge unstable patients in their emergency rooms under EMTALA; if they did, they would be subject to enforcement action which might include loss of Medicare funding. As detailed below, this would be true even if Plaintiffs withdrew their

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 17

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

certification for providing short-term acute care services to civilly committed patients—if Plaintiffs did this, there would simply be no beds to send most patients, and patients would remain in the emergency room or in an inpatient unit.

35.     Where a patient is ordered committed, Oregon law charges OHA with the responsibility for "tak[ing] the person with mental illness into its custody" and "ensur[ing] the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility." ORS 426.150(1). OHA must direct the civilly committed person "to the facility best able to treat the person" or ensure that the person is directed to a "suitable" facility. ORS 426.060(2)(a), (d). Some civilly committed patients can be stabilized within two to three weeks of commitment; for those individuals, remaining in acute care units may be appropriate because those patients may still benefit from acute behavioral care. Other civilly committed patients, however, already have been stabilized as much as is medically possible around the time they are civilly committed (or shortly thereafter) but are in need of long-term, specialized care.

36.     Under a functional statewide behavioral healthcare system, OHA is supposed to send the latter subset of civilly committed patients (who are no longer benefiting medically from acute behavioral care) to a suitable facility that provides long-term care, such as a secure residential treatment facility. But OHA does not differentiate between civilly committed patients who continue to need acute behavioral care from those patients who do not. Rather than consider the individual needs of the patient and exercise discretion to make affirmative decisions based on the patients' health about whether such patients should either remain in a community hospital or be transferred to a different facility (and rather than ensuring that an appropriate delegee make such decision appropriately), OHA fails to make *any* decision based on the patients' health, and simply abandons patients in the community hospitals where they already are so that OHA may avoid responsibility for—and the devotion of resources to—such patients. In doing so, OHA does not consult with the treating physicians of those community hospitals to determine the best location for individual patients' care, as is required by OAR 309-033-0270(3)(a). OHA is

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 18

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

willfully doing this despite knowing that, for some individuals, the patient can no longer receive any medical benefit from acute behavioral care that Plaintiffs provide and *cannot* receive the long-term treatment the patient needs, despite Plaintiffs' best efforts to provide good medical care to patients. Community hospitals are simply not equipped, staffed, or designed to house civilly committed individuals for months at a time, let alone six months or more.

37. Due to state and federal laws and regulations, medical ethics, and civil commitment orders, when OHA leaves civilly committed patients in Plaintiffs' community hospitals, Plaintiffs have no feasible options other than to continue housing the patients and providing basic care (i.e., administer medications) and consumable resources (i.e., food, toiletries, and other basic provisions) indefinitely. This indefinite period can last for several weeks, multiple months and, sometimes, more than a year.

38. Plaintiffs cannot transfer the patients elsewhere because, almost always, there is nowhere for the patient to go. Transferring a patient to a less-suitable environment for that patient is inconsistent with Plaintiffs' missions to ensure high-quality, compassionate, and patient-centric care to all patients. Moreover, under state and federal law, Plaintiffs may transfer a patient to another hospital for treatment *only if* the other hospital *both* (1) is certified to care for civilly committed patients, *and* (2) has available beds. If there is no certified hospital with available beds that agrees to accept the civilly committed patient, the patient cannot be transferred and remains in Plaintiffs' hospitals with no realistic prospect of receiving the long-term treatment they require. Plaintiffs' hospitals, however, provide most available hospital beds in the entire State of Oregon. Out of approximately 460 licensed inpatient psychiatric treatment beds available across Oregon, 264 (57.4%) are in Plaintiffs' facilities. Because of the severity of Oregon's behavioral health crisis, all other Oregon beds that are designed for long-term treatment are typically full and have long closed waitlists. Even when such other facilities are not full, they often prioritize referrals from OSH, while referrals from acute care hospitals are given

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 19

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

less priority. There simply is not enough available capacity in Oregon for Plaintiffs to transfer civilly committed patients to other facilities (whether for long-term treatment or otherwise).

39.     Despite that OHA's mission statement is to "ensur[e] all people and communities can achieve optimum physical, mental, and social well-being," OHA has suggested that if Plaintiffs can no longer medically help a civilly committed patient left in Plaintiffs' care, Plaintiffs should simply discharge the civilly committed patient to the sidewalk.

40.     But discharging civilly committed patients—as OHA recommends—would result in an unmitigated disaster for both patients and the community. As an initial matter, discharging civilly committed patients in this way would be the very opposite of serving Plaintiffs' missions to provide high-quality, compassionate, and patient-centric healthcare to its patients. Moreover, such discharges would violate both the law and court orders. A patient who is under civil commitment is, by definition, someone who presents a danger to themself or others or who is "unable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future." ORS 426.005(1)(f). Thus, if Plaintiffs followed OHA's recommendation and discharged civilly committed patients into the community without any discharge plan and with nowhere to go, there is a substantial chance that the patient would cause harm to themselves or others in the community. There is also a substantial likelihood that the individual—who is still suffering from a severe and insufficiently treated psychiatric condition or crisis—would be picked up by first responders and brought right back to one of Plaintiffs' emergency departments. Plaintiffs, meanwhile, would violate, among other laws, 42 C.F.R. § 482.43; 42 C.F.R. § 482.13; ORS 441.053(2), 441.054, OAR 333-505-0055, and OAR 333-520-0070(4), which require discharge of patients only in accordance with a discharge plan that considers and accommodates the individual needs of patients (which, for the patients at issue here, require long-term treatment). Plaintiffs would also violate EMTALA to the extent the patients are staying in beds in the emergency department.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 20

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

41.     Violations of these laws may result in fines and/or losses of Plaintiffs' licensure. Such violations would also harm Plaintiffs' reputations as hospitals and health systems that provide care for all patients of all walks of life and put patients' needs first. OHA knows, or at least certainly should know, that this is not a realistic option. In fact, it is the existence of these laws that has enabled OHA to outsource its obligation to care for civilly committed individuals to community hospitals.

42.     As described above in paragraphs 33 and 34, Plaintiffs cannot avoid having civilly committed patients left in their care indefinitely by declining to acquire certification to treat civilly committed patients. Even if Plaintiffs were not certified to provide short-term treatment to civilly committed patients, Plaintiffs would still be required by law to receive, evaluate, and treat all patients who enter through the doors of their emergency rooms before civil commitment occurs. Plaintiffs would still have to hold and provide emergency psychiatric treatment to patients who are detained before commitment. Plaintiffs would still be prohibited by state and federal laws and regulations and medical ethics from discharging the patient while civil commitment proceedings are ongoing. And, when patients are committed, Plaintiffs still would be unable to lawfully discharge the patient or transfer the patient to another hospital unless the other hospital (1) is certified, and (2) has available beds. If no other certified beds are available elsewhere, the patient would nonetheless remain in Plaintiffs' hospitals regardless of certification, because Plaintiffs would be legally prohibited from discharging the patient and there is nowhere else for the patient to go.

43.     Indeed, if Plaintiffs withdrew their certifications, there would not be enough certified beds in the rest of the state to receive Plaintiffs' civilly committed patients. As noted, there are only 460 acute psychiatric beds in Oregon, and 264 of them (over 57%) are in Plaintiffs' hospitals. If Plaintiffs removed their 264 beds from the statewide pool, *far more* civilly committed patients would need to be transferred, yet *far fewer* licensed beds would be available in the rest of the state to receive them (as noted, those beds are already full and have

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 21

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

long and often closed waitlists). Because Plaintiffs are four of Oregon's largest health systems and make up so much of Oregon's total psychiatric resources, the withdrawal of Plaintiffs' beds from the available certified pool would create an unprecedented shortage of psychiatric resources that would make it essentially certain that Plaintiffs would have no available places to send civilly committed patients left in their care. Instead, the patients would remain at the hospital and Plaintiffs would suffer the same or worse injuries as they do when certified.[2]

44.    Plaintiffs' certification to provide short-term treatment to civilly committed patients does not amount to consent to be left with the responsibility to provide long-term treatment to such patients. To the contrary, the certification process is highly specific in distinguishing types of care. Hospitals are approved to provide only short-term treatment, and nothing more. Because civilly committed patients generally need multiple different kinds of treatment (i.e., emergency care, acute care, long-term treatment)—and each level of care requires different kinds of training, equipment, facilities, and so on to safely, effectively, and ethically provide—certification is treatment-specific so that patients who need a certain kind of care are not treated by acute care hospitals that are unable to provide that care safely, effectively, and ethically. *See* OAR 309-033-0530(1) ("Only hospitals . . . approved by the Division . . . shall provide care and treatment services for persons under civil commitment or for persons in custody . . . ."). For purposes of certification, there are five "program types":

1)    Regional Acute Care Psychiatric Services for Adults

2)    Hospital Hold and Seclusion Room Services (5 day Hold)

3)    Hospital Transport Custody Services (12 Hour Transport Custody)

4)    Class I Secure Residential Treatment Facility (Non-hospital facility), approved to be locked to prevent a person from leaving

---

[2] As detailed below, OHA has repeatedly studied Oregon's shortage of behavioral health beds and is well aware of the catastrophe that would occur if Plaintiffs suddenly withdrew their participation from Oregon's behavioral health system.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 22

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

the facility, to use seclusion and restraint and to involuntarily
administer psychiatric medication

5) Class II Secure Residential Treatment Facility (Non-hospital
facility), approved to be locked to prevent a person from leaving
the facility

45.     Plaintiffs Providence and Unity applied to be certified for "Hospital Hold and
Seclusion Room Services (5 day Hold)." Plaintiff PeaceHealth applied to be certified for
"Regional Acute Care Psychiatric Services for Adults." Plaintiff St. Charles applied to be
certified for both. Both program types refer to short-term treatment. A hospital hold occurs
*before* a person is committed and cannot exceed five judicial days, and "Regional Acute Care
Psychiatric Services" means "stabilization, control, and amelioration of acute dysfunctional
symptoms or behaviors *that result in the earliest possible return of the individual to a less
restrictive environment*." OAR 309-032-0870(2) (emphasis added). Plaintiffs did not apply to
provide long-term treatment, and OHA has neither evaluated Plaintiffs' hospitals nor deemed
them suitable for such treatment. Yet OHA purposely leaves civilly committed patients who no
longer need emergency or acute psychiatric care, and who instead need long-term treatment, in
Plaintiffs' hospitals indefinitely. In short, OHA effectively has outsourced its responsibility to
ensure adequate treatment for civilly committed patients to Plaintiffs' hospitals, without their
consent and to the detriment of patients, the community, and Plaintiffs' hospitals.

46.     Due to the complex interplay between federal and state laws and regulations,
Plaintiffs have no choice but to become certified for at least some of the program types above to
avoid violating the law and jeopardizing Plaintiffs' licensure and funding. This is because,
among other reasons, OHA requires hospitals to be approved and certified in order to provide
"care and treatment services for persons under civil commitment or for persons in custody."
OAR 309-033-0530(1). In other words, Plaintiffs' certifications are mandated by OHA
regulations, not sought voluntarily. Given all the circumstances described above, if Plaintiffs

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 23

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

failed to become certified, Plaintiffs inevitably would be forced to, among other things, provide treatment to civilly committed patients without certification to do so.

**E.    OHA's conduct, policy, and practice harms both patients and community hospitals.**

47.    OHA harms civilly committed patients by failing to meet its duty to ensure patients in need of long-term treatment receive it, and deliberately leaving patients indefinitely in community hospitals that are not equipped or staffed to provide such treatment. This leads to an unconscionable situation where individuals are denied the care that justifies their commitment in the first place and that they are constitutionally entitled to receive. As a result, the patient's liberty is unnecessarily curtailed, the patient does not meaningfully recover and becomes more likely to be re-committed, and the very purpose of civil commitment is undermined.

48.    OHA knows that it is harming civilly committed patients but continues to do it anyways. For example, in 2021, a patient with chronic schizophrenia was committed to the custody of OHA for 180 days of treatment. However, after the order was entered, OHA deliberately failed to make any placement decision for him, and instead left him to languish in a community hospital for almost his entire commitment. The patient spent more than four months (a total of 137 days) confined in a restrictive setting, where he spent his days in a small room, in anguish because he wanted to get out of the hospital. The hospital could not release or transfer this patient, and sought to provide the best care it could.

49.    In 2022, an individual came to the emergency department of a community hospital after she was found wandering the streets. She presented with symptoms of schizoaffective disorder and psychosis. She was six weeks pregnant. After she was committed to the custody of OHA for 180 days of treatment, OHA never made a placement decision, and instead left her in the acute care hospital. She remained there into the third trimester of her pregnancy, depressed, and sad. She spent her birthday there and was isolated even more afterward. Due to OHA's failures, she remained stuck in the acute care hospital, in the most restrictive setting possible, that was not best able to treat her—for more than four months, while

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 24

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

pregnant, and most of her 180-day commitment. The hospital could not release or transfer the patient, and sought to provide the best care it could.

50.     OHA's conduct, policy, and practice also negatively impacts community hospitals. When OHA abandons civilly committed patients in community hospitals after the point at which they can no longer medically benefit from receiving emergency and acute care, this prevents hospitals from being able to care for other psychiatric patients in the community who are in need of emergency and acute care resources—including other detained and civilly committed patients. Housing and providing basic care to civilly committed patients requires significant resources and attention by physicians, nurses, and other healthcare professionals— resources and attention that Plaintiffs cannot simultaneously direct toward other patients who would medically benefit from emergency and acute behavioral treatment. Basic care to such civilly committed individuals includes provider time, provision of a hospital bed, medication, food, housekeeping services, and other hospital resources, which Plaintiffs accordingly cannot allocate to other patients. Oftentimes, civilly committed patients require a one-on-one sitter 24 hours a day to ensure their safety and the safety of other patients and staff.

51.     When the hospital beds occupied by civilly committed patients who no longer require emergency or acute care are not available for other patients who need them (including other detained and civilly committed patients), patients back up in emergency departments, resulting in hardship for others who need to access acutely needed medical and mental health treatment. Some individuals are so acute that adjacent rooms must be closed for safety. In many cases, these individuals cannot safely be in shared rooms, further reducing capacity.

52.     OHA's conduct, policy, and practice deprives Plaintiffs of their property without due process of law and effectuates a taking of Plaintiffs' property as OHA forces community hospitals to indefinitely hold and care for civilly committed individuals who, by law, have been committed to the custody of OHA for treatment. Although OHA provides Plaintiffs with a small amount of reimbursement for holding civilly committed patients, the reimbursement received is

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 25

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

inadequate and does not cover costs of care, causing financial harm. Additionally, OHA does not require their Coordinated Care Organizations to contract with all Oregon hospitals who are certified to provide care, resulting in inadequate reimbursement for necessary medical care and no consequences for having failed network panel adequacy as required by their contracts. In addition, Plaintiffs incur additional expenses for additional staff and workers' compensation costs, property damage, and room closures, for which they are not reimbursed. Plaintiffs are all nonprofits, but their behavioral health units are suffering unsustainable losses that amount to tens of millions of dollars a year. If this continues, some of these important behavioral health resources may be forced to close.

53.     Despite knowing of its unlawful practices for years, OHA continues to engage in these practices. OHA benefits by passing the costs of Oregon's civil commitment system to private entities, enabling OHA to avoid having to provide additional funding and resources to this most vulnerable population. In effect, OHA has silently outsourced the civil commitment system to Oregon health systems and acute care community hospitals without their consent or agreement.

54.     The negative impact of OHA's practices, conduct, failures, and inaction on Plaintiffs and other Oregon community hospitals are severe and ongoing. Because the patients are civilly committed, they can only be discharged to secure settings, or else must be kept in the hospital until they no longer meet commitment criteria. This can mean hospital stays of several weeks, to several months, up to the entire 180-day commitment, and, in some cases, through recommitment periods as well. In turn, this prevents community hospitals from being able to treat and stabilize other vulnerable patients experiencing mental health crises, many of whom are also struggling with substance abuse disorder and houselessness in addition to mental illness.

**F.     Despite having ample opportunities to address the problem, OHA has failed to find a solution for civilly committed individuals and blamed the counties and nonprofit care providers.**

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 26

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

55.     Over the past several years, Plaintiffs have devoted significant time, energy, money, and other resources to plead with OHA for assistance and support in providing appropriate long-term placements for civilly committed individuals. Plaintiffs have asked OHA to seek more resources, expand services, and build capacity rather than detain civilly committed individuals indefinitely in restrictive acute care settings. Plaintiffs have offered to collaborate with OHA to find, or invent, a workable solution. Almost without exception, OHA has been unresponsive and has failed to provide a solution for the patients for whom it is responsible. Plaintiffs have also asked OHA to hold the Coordinated Care Organizations accountable for reimbursement for their members who are placed in non-contracted hospitals. OHA has also failed to provide a solution for these patients for whom their contracted entities are responsible.

56.     OHA's failure to provide appropriate and legally required treatment to civilly committed individuals—and the negative impact on patients and Oregon's community hospitals—is well known to OHA. A 2017 study for OHA concluded: "Patients at the state hospital for aid and assist take up beds that could be used for civil commitment patients. This results in more civilly committed individuals waiting in acute care for a state hospital bed to open up. This decreases the access to acute care beds, which causes a backup in the ED. Multiple strategies have tried to reverse this trend with only minimal success. OHA is revitalizing planning and actions and will have a strategic action plan in place by February 2017."[3] Despite having known of its practices since 2017, OHA has continued to ignore its obligations and knowingly *reduced* long-term placement options for civilly committed patients over that time.

57.     In 2023, Oregon Governor Tina Kotek directed OHA to lead a new study to evaluate Oregon's behavioral health facility capacity, including whether Oregon had enough psychiatric and residential treatment beds across the state. OHA contracted with Public

---

[3] Oregon Health Authority, Emergency Department Boarding of Psychiatric Patients in Oregon, Report Briefing, Feb. 1, 2017, *available at* https://www.oahhs.org/assets/documents/files/publications/0%20OHA%20Psychiatric%20ED%20Boarding%20Report%20Brief%20Final.pdf.https://www.oahhs.org/assets/documents/files/publications/0%20OHA%20Psychiatric%20ED%20Boarding%20Report%20Brief%20Final.pdf.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 27

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

Consulting Group LLC ("PCG") to complete the study. PCG issued its final report in June 2024 ("OHA Report"). Notably, the OHA Report shows that Oregon needs **more than 3,700** adult behavioral health treatment beds across the continuum of care to close gaps in the current system of care and ensure Oregonians have access to the appropriate level of care. The OHA Report makes several findings, which squarely confirm that Oregon has a behavioral health treatment bed shortage of constitutional magnitude and that as a result, hospitals cannot transfer patients elsewhere to receive the appropriate level of care because, almost always, there is nowhere for them to go. Among other things, it projects that an additional 486 acute psychiatric inpatient beds are initially needed to meet demand. It also reveals a severe shortage of beds in secure residential treatment facilities (SRTF): there are 510 SRTF beds in Oregon—but because 165 beds are at OSH and "are not readily accessible to those in a community setting," this "limits the total number of SRTF beds available within the State to 345, which strains the care continuum for this type of bed." According to the OHA Report, even if 77 SRTF beds are added by next year, Oregon will still need another 198 SRTF beds to meet demand. The OHA Report notes that, due to the lack of beds, hospitals offering emergency services experience "[e]xtended wait times" in transferring patients to other facilities, which "often [leads] to individuals spending multiple days or weeks in the emergency department while waiting for available placements." It describes how community partners shared concerns that "there is nowhere to place individuals experiencing a mental health crisis" and that "[o]ften, these individuals must stay in the facilities' emergency department, putting a strain on available resources."

58.     Despite having ample opportunities to deliberate, OHA has indifferently indicated no serious intent or interest in changing its ways. OHA officials apathetically shrug their shoulders and say that they lack funding to address the problem, that Plaintiffs will simply have to keep forfeiting their property, and—most troublingly—that civilly committed patients will simply have to continue foregoing needed long-term treatment, despite being entitled to it.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 28

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

59.     OHA may not outsource its ultimate responsibility to provide constitutionally adequate care to civilly committed patients. By law, OHA is responsible for ensuring that civilly committed individuals receive appropriate long-term treatment because civilly committed individuals are committed to OHA, not the county or a community mental health program. ORS 426.130(1)(a)(C) (the court may "order commitment of the person with mental illness to the Oregon Health Authority for treatment"); ORS 426.060(1) ("[c]ommitments to the Oregon Health Authority shall be made only by the judge of a circuit court in a county of this state."). As such, Plaintiffs seek declaratory and injunctive relief against OHA's unlawful practices.

**G.     Plaintiffs have third-party standing to advocate for civilly committed patients.**

60.     Plaintiffs have standing to assert claims on behalf of civilly committed patients being cared for in Plaintiffs' hospitals. Plaintiffs' interests as healthcare providers are closely aligned with the interests of their patients on these issues. As healthcare providers, Plaintiffs have inherently close, fiduciary, and confidential relationships with patients. Plaintiffs' care teams (including doctors, nurses, and staff members) provide patients with medical and psychiatric treatment. Hospitals provide patients with healthcare and housing and safeguard patients' confidential information. Protection of patients' rights, and ensuring patients receive the appropriate care, is integral to Plaintiffs' missions to provide high-quality, compassionate, and patient-centric care to patients and the community.

61.     Plaintiffs' interests in this case are further aligned with those of their civilly committed patients because the relief Plaintiffs seek in this case will only benefit, and not harm, Plaintiffs' patients. Plaintiffs' desired relief—(1) for civilly committed patients to have access to the most appropriate and least restrictive long-term treatment options once they are ready for such care, and (2) for Plaintiffs to be able to treat more civilly committed patients who enter through their emergency rooms—aligns with patients' interests. If Plaintiffs are successful in this lawsuit, it will result in civilly committed patients having access to the most appropriate and least restrictive long-term treatment options, while opening more beds for detained and civilly

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 29

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

committed patients in need of emergency and acute care. In short, successfully compelling OHA to cease its unconstitutional practices will stop injuries to both patients and Plaintiffs simultaneously.

62.     Plaintiffs are not seeking any relief that will result in fewer placement options for civilly committed patients, the creation of less-suitable placement options for Plaintiffs' patients, or that will allow for the premature discharge of Plaintiffs' patients to inappropriate settings. Critically, Plaintiffs seek no relief in which a patient receiving treatment at Plaintiffs' hospitals will receive less treatment at Plaintiffs' hospitals, *unless and until* more suitable treatment for that patient is available elsewhere and it is in the patients' best interests to receive that treatment. Nor are Plaintiffs seeking to treat fewer or less-acute civilly committed patients. Indeed, any such outcomes would contravene Plaintiffs' missions to ensure high-quality, compassionate, and patient-centric healthcare for patients and the community. The only outcome Plaintiffs will be satisfied with is one in which OHA creates *more* treatment options for Plaintiffs' patients, *in addition to* those that already exist within Plaintiffs' hospitals and elsewhere in Oregon.[4] Unless and until OHA ensures that additional treatment options are available, Plaintiffs will continue treating all civilly committed patients in their care—as Plaintiffs have for decades—in accordance with Plaintiffs' patient-focused nonprofit missions.

63.     Civilly committed patients face several hindrances from bringing an action for injunctive relief themselves, in which they would seek for OHA to provide constitutionally adequate treatment during the period of their commitment. First, civilly committed patients are generally committed for 180 days, making it likely that their injuries and equitable claims for relief will become moot before litigation can run its course. Second, civilly committed patients face a recognized stigma for their commitment and thus are inherently disincentivized from

---

[4] OHA could expand available treatment options by, among other things, funding the creation of additional independent or state-run SRTFs throughout Oregon, or expanding bed capacity at OSH, or both.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 30

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

bringing a public action related to their commitment.[5] *See generally State v. T.T.*, 293 Or. App. 376, 386, 428 P.3d 921, 927 (2018) (Aoyagi, J., dissenting) (noting the "serious . . . social stigma . . . attendant to a civil commitment"); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 290 (3rd Cir. 2002) ("[t]he stigma associated with receiving mental health services presents a considerable deterrent to litigation."). Third, civilly committed patients suffer from severe mental illnesses that often involve severe symptoms including psychosis, hallucinations, and delusions. This makes it exceptionally difficult for them to advocate for themselves or even find and hire someone to advocate for them.[6] And finally, civilly committed patients may lack the resources to pursue litigation of this scale. *Pa. Psychiatric Soc'y*, 280 F.3d at 290. These obstacles have all been deemed sufficient hindrances to justify third-party standing. *Singleton v. Wulff*, 428 U.S. 106, 117 (1976); *Pa. Psychiatric Soc'y*, 280 F.3d at 291–92.

## CLAIMS

### FIRST CLAIM

### Violation of Civilly Committed Individuals' Substantive Due Process Rights Under the Fourteenth Amendment to the United States Constitution

64.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 63 above.

65.    All individuals have the constitutional right not to be deprived of liberty without due process of law. U.S. Const. amend. XIV, § 1. Involuntarily detaining a person due to mental illness is "a massive curtailment of liberty." *Humphrey*, 405 U.S. at 509.

66.    The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process

---

[5] There is a reason civil commitment court case files are closed to the public.

[6] Patients are generally assigned no one to advocate on their behalf because Oregon's civil commitment scheme does not provide them with counsel after the point of commitment. While individuals who are detained have a right to counsel during the court process leading up to an order of commitment, that representation ends at the time the order is entered. Having been civilly committed, individuals are no longer represented by counsel to protect their rights. They are lost to the oversight of the courts that have committed them, as is OHA, which disclaims responsibility for their care.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 31

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

prohibits governmental deprivation of liberty without adequate procedure. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Substantive due process forbids the government from depriving a person of liberty in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp. v. City of Milwaukie*, 450 F. Supp. 2d 1164, 1175 (D. Or. 2006) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). Liberty interests "may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009).

67.    Civilly committed individuals have a constitutional liberty interest in being free from bodily restraint. The state may involuntarily detain individuals for purposes of providing treatment; however, individuals who are involuntarily detained for this purpose "have a liberty interest in receiving restorative treatment." *Mink*, 322 F.3d at 1121. Due process requires that mentally ill persons who are detained receive treatment calculated to lead to the end of their involuntary detention. *Id.* To that end, states must provide all civilly committed persons with access to mental health treatment that gives them "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. "Adequate and effective treatment is constitutionally required because, absent treatment, [civilly committed persons] could be held indefinitely as a result of their mental illness." *Id.* at 778.

68.    Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant Sejal Hathi, MD, was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

69.    For years, OHA has engaged in conduct and a policy and practice that violates civilly committed individuals' right to substantive and procedural due process. OHA's conduct, policy, and practice violates civilly committed individuals' liberty interest in restorative treatment and deprives them of a realistic opportunity to be cured or improve the mental condition for which they were confined. When OHA leaves civilly committed individuals

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 32

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

indefinitely in community hospitals, they do not receive access to specialized treatment, care, and training oriented to their long-term needs and focused on their reentry into the community. Instead, they remain confined in unnecessary, overly restrictive acute care settings without access to long-term treatment for weeks, months, and sometimes their entire 180-day commitment. As a result of OHA's practices, they are more likely to be recommitted and cycle through the system over and over again.

70.    OHA lacks legitimate state interests in leaving civilly committed patients in unnecessary, overly restrictive acute care settings where patients do not receive access to constitutionally adequate long-term treatment and transition services. Despite knowing of its practices for years, OHA has deliberately avoided addressing these problems, at least in part because OHA directly benefits from its practices by effectively outsourcing the civil commitment system to community hospitals and making community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

71.    There is no state law procedure for community hospitals to ensure civilly committed individuals are placed by OHA in the facility best able to treat them or a suitable facility during their 180-day commitment, so they can receive appropriate long-term treatment.

72.    OHA will continue engaging in its conduct, policy, and practice in violation of the Fourteenth Amendment unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law to protect their patients' right to appropriate long-term treatment.

73.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates civilly committed individuals' Fourteenth Amendment substantive due process rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 33

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

74.     Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## SECOND CLAIM

### Violation of Civilly Committed Individuals' Procedural Due Process Rights Under the Fourteenth Amendment to the United States Constitution

75.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 above.

76.     There is no adequate state law procedure for either community hospitals or civilly committed patients to contest civilly committed patients' forced housing in community hospitals. Although Oregon regulations purport to provide an appeal mechanism for patients who desire assignment to a different facility, the procedure is illusory and futile and, further, provides for no due process *before* a patient is deprived of liberty. Neither community hospitals nor civilly committed patients are being afforded a meaningful opportunity to be heard regarding whether civilly committed patients should remain in Plaintiffs' community hospitals for long-term treatment lasting up to 180 days. Rather, OHA is simply leaving patients at Plaintiffs' hospitals without any meaningful process. Nor is there a remedy available for civilly committed patients to seek compensation from OHA or their contracted Coordinated Care Organizations for costs associated with OHA forcibly housing civilly committed individuals.

77.     OHA will continue engaging in its policy and practice in violation of the Due Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory and injunctive relief are appropriate because Plaintiffs and civilly committed patients lack an adequate remedy at law. Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates civilly committed patients' Fourteenth Amendment procedural due process rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and practice.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 34

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

78. Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## THIRD CLAIM

### Violation of Community Hospitals' Substantive Due Process Rights Under the Fourteenth Amendment to the United States Constitution

79. Plaintiffs reallege and incorporate by reference paragraphs 1 through 78 above.

80. The Due Process Clause of the Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in the Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The right to exclude others from an owner's property and to use the property as the owner sees fit is one such fundamental right. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).

81. The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Procedural due process prohibits governmental deprivation of liberty and property rights without adequate procedure. *Cleveland Bd. of Educ.*, 470 U.S. at 541. Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Emmert Indus. Corp.*, 450 F. Supp. 2d at 1175 (quoting *Nunez*, 147 F.3d at 871).

82. Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant Sejal Hathi, MD, was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 35

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

83.     For years, OHA has engaged in conduct and a policy and practice that violates Plaintiffs' and other community hospitals' right to due process. Specifically, OHA has knowingly and/or deliberately failed to build or otherwise ensure the availability of long-term treatment capacity for individuals who have been civilly committed to its care under ORS 426.060. OHA has failed to do so for no reason that furthers public health, safety, or welfare. Rather, OHA has failed to do so because it purportedly lacks funding to provide care for such patients and wishes to avoid devoting necessary funding and resources to such patients, regardless of any violation of their (or Plaintiffs') constitutional rights. OHA does this despite knowing of the detrimental consequences for patients and hospitals and, moreover, that multiple federal courts have ruled OHA's reasons to be insufficient as a matter of law, *see Ohlinger*, 652 F.2d at 779, *Or. Advocacy Ctr.*, 322 F.3d at 1121, *Bowman*, 2021 WL 5316440, at *2.

84.     OHA's conduct, policy, and practice results in a deprivation of Plaintiffs' property and a denial of Plaintiffs' fundamental right to use its hospital beds. OHA's failures cause civilly committed patients to stay in Plaintiffs' hospitals after the point when they can no longer medically benefit from emergency and acute psychiatric care, and results in the relevant community hospital having to house the individual for weeks, months, and sometimes their entire 180-day commitment and recommitment period. As a result, community hospitals are deprived of using their hospital beds for other patients in need of emergency and acute psychiatric care (including other detained and civilly committed patients), which negatively impacts community hospitals' ability to serve the community and have throughput in their emergency departments, which are often full of patients waiting to be admitted. Because of OHA's failure to comply with its statutory obligations, Plaintiffs and other community hospitals must dedicate significant resources to civilly committed patients who have no medical reason to be in acute care settings, preventing Plaintiffs from providing emergency and acute behavioral care to other patients who do have a medical reason to be in acute care settings (including other civilly committed individuals or pre-commitment individuals, to whom Plaintiffs want to provide

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 36

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6ᵗʰ Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

emergency and acute behavioral treatment). These resources include not only the costs associated with medicating and housing these individuals for extended periods of time, but also damage to hospital property as well as the services of its care providers and other precautions needed, such as security and one-on-one sitters, to ensure the safety of the individual and others.

85.     OHA has known about its practices—and the resulting effects on community hospitals—for years but has failed to meaningfully address these problems. OHA has deliberately and indifferently avoided addressing these problems at least in part because OHA directly benefits from its practices, and the resulting harm to community hospitals and patients, by effectively outsourcing the civil commitment system to community hospitals and making community hospitals bear OHA's would-be costs, responsibilities, and liabilities.

86.     OHA will continue engaging in its policy and practice in violation of the Due Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory and injunctive relief are appropriate because Plaintiffs lack an adequate remedy at law.

87.     Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates community hospitals' Fourteenth Amendment substantive due process rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and practice.

88.     Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## FOURTH CLAIM

### Violation of Community Hospitals' Procedural Due Process Rights Under the Fourteenth Amendment to the United States Constitution

89.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 88 above.

90.     There is no adequate state law procedure for community hospitals to contest being forced to house civilly committed individuals indefinitely during their 180-day commitment. Although Oregon civil commitment procedure involves a process by which OHA or its delegee

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 37

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

consults with the admitting physician of a hospital to "determine whether the best interests of a committed person are served by an admission to [that] community hospital," OAR 309-033-0270(3)(a), that procedure is not being followed. Plaintiffs are not being afforded a meaningful opportunity to be heard regarding whether a civilly committed patient should be committed to Plaintiffs' community hospitals for long-term treatment lasting up to 180 days. Rather, OHA is simply leaving patients at Plaintiffs' hospitals without any meaningful process. Nor is there a remedy available for community hospitals to seek compensation from OHA or their contracted Coordinated Care Organizations for most of its costs associated with OHA forcing them to house civilly committed individuals in lieu of OHA providing placements for them in an appropriate long-term treatment facility. OHA's policy and practice has resulted in working conditions for Plaintiffs' care providers that many find intolerable. As a result, an already difficult workforce shortage has become a crisis. The strains on Plaintiffs' care providers and resources are not sustainable, presenting a risk of loss of critical mental health services to members of the community who are in crisis.

91.     OHA will continue engaging in its policy and practice in violation of the Due Process Clause of the Fourteenth Amendment unless the Court enjoins such conduct. Declaratory and injunctive relief are appropriate because Plaintiffs lack an adequate remedy at law. Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates community hospitals' Fourteenth Amendment procedural due process rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its policy and practice.

92.     Plaintiffs do not seek compensatory damages for OHA's due process violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 38

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

## FIFTH CLAIM

### Violation of Community Hospitals' Rights Under the Takings Clause
### of the Fifth Amendment to the United States Constitution (Physical Taking)

93.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 92 above.

94.    The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the taking of private property for public use, without just compensation. U.S. Const. Amend. V. The Fifth Amendment is applicable to individual states pursuant to the Fourteenth Amendment.

95.    The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The prohibition includes physical takings in which the government physically appropriates an owner's real and personal property. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071–72 (2021).

96.    Pursuant to 42 U.S.C. § 1983, every person acting under color of law who deprives another person of his or her constitutional rights is liable at law and in equity. At all times relevant, Defendant Sejal Hathi, MD, was a person acting under color of state law who is liable for OHA's unconstitutional conduct, policy, and practice.

97.    For years, OHA has engaged in conduct and a policy and practice that results in a physical taking of Plaintiffs' and other community hospitals' property for public use without just compensation. Once individuals are stabilized and civilly committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility. Instead, however, after individuals are civilly committed—and as a result no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 39

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

98.     Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospital beds for weeks, months, and sometimes their entire 180-day commitment and recommitment periods, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in an acute care setting, and prevents other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments. Because of OHA's actions, community hospitals are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day.

99.     OHA and their contracted Coordinated Care Organizations do not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

100.    OHA will continue engaging in its conduct, policy, and practice in violation of the Fifth and Fourteenth Amendments unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, OHA intends to continue using Plaintiffs' hospitals and other community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law.

101.    Seeking just compensation for OHA's repeated deprivations of Plaintiffs' property would require Plaintiffs to repeatedly litigate a multiplicity of suits involving the same and similar repeated deprivations of property as long as OHA's practices continue indefinitely. This is an inadequate remedy. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly committed patient left in Plaintiffs' care because, among other reasons, the expenses of pursuing so many individual legal actions may exceed the

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 40

**EPSTEIN BECKER & GREEN, P.C.**
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

compensation Plaintiffs seek to recover. By contrast, equitable relief that includes a declaration and injunction will protect Plaintiffs from OHA's current ongoing and future harms.

102.    Plaintiffs accordingly seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' Fifth and Fourteenth Amendment rights. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

103.    Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## SIXTH CLAIM

### Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq., 28 C.F.R. § 35.130

104.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 103 above.

105.    Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

106.    In enacting the ADA, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[.]" 42 U.S.C. § 12101(a)(2). Among the areas in which Congress found that discrimination persists was "institutionalization . . . and access to public services[.]" 42 U.S.C. § 12101(a)(3). "[I]ndividuals with disabilities continually encounter various forms of discrimination, including . . . segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5). According to Congress, "the Nation's proper goals regarding individuals with disabilities are to assure equality of

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 41

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(7).

107.    More than 25 years ago, in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999), the United States Supreme Court held that the unnecessary institutionalization of individuals with disabilities is a form of discrimination prohibited under Title II of the ADA.

108.    The regulations implementing Title II of the ADA similarly state that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); *Olmstead*, 527 U.S. at 592 (quoting Title II regulation). The integration mandate of Title II of the ADA protects both people who are currently institutionalized and people with disabilities who are at risk of re-institutionalization. *See, e.g.*, *M.R. v. Dreyfus*, 697 F.3d 706, 720, 734 (9th Cir. 2012).

109.    Civilly committed patients have severe mental illnesses that substantially limit one or more major life activities. Civilly committed patients are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of services, programs, or activities of OHA. 42 U.S.C. § 12131(2).

110.    OHA is a public entity as used in Title II of the ADA. 42 U.S.C. § 12131(1)(B). Defendant, acting in her official capacity, is a public entity as defined by the ADA, 42 U.S.C. § 12131, and its implementing regulations, 28 C.F.R. § 35.104.

111.    Title II of the ADA prohibits OHA from discriminating against civilly committed patients in its services, programs, and activities. 42 U.S.C. § 12132.

112.    Treatment professionals at Plaintiffs' community hospitals believe that community-based treatment is appropriate for civilly committed patients who have stabilized and are ready for that level of treatment. Civilly committed patients do not oppose community-based treatment. These services can be reasonably accommodated.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 42

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

113.    Despite that, OHA has institutionalized civilly committed patients, or placed them at serious risk of institutionalization, in Plaintiffs' acute care hospitals, even though they need community-based treatment, in violation of the integration mandate.

114.    OHA's unnecessary institutionalization of civilly committed individuals is exactly the sort of unlawful discrimination prohibited by Title II of the ADA under the Supreme Court's landmark *Olmstead* decision. OHA is legally obligated to administer its services, programs, and activities to civilly committed patients in the most integrated setting appropriate to their needs, 28 C.F.R § 35.130(d), and is prohibited from unjustifiably institutionalizing and segregating them during their entire 180-day commitment. *See Olmstead*, 527 U.S. at 587.

115.    OHA violates the ADA, and its implementing regulations, including as follows:

a.    By administering the state's mental health system in a way that subjects civilly committed patients to unnecessary institutionalization in acute care community hospitals instead of providing them with community-based treatment resources.42 U.S.C. § 12132.

b.    By directly or through contractual, licensing, or other arrangements, providing aids, benefits, or services in such a way that denies civilly committed patients the opportunity to participate in or benefit from such aids, benefits, or services; failing to afford civilly committed patients an equal opportunity to participate in or benefit from such aids, benefits, or services; providing aids, benefits, or services in such a way that civilly committed patients are not afforded equal opportunity to obtain the same result as that provided to others; and by otherwise limiting civilly committed patients in the enjoyment of a right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. 28 C.F.R. § 35.130(b)(1).

c.    By directly or through contractual or other arrangements utilizing criteria or methods of administration in the state's mental health system that subject civilly

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 43

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

committed patients to discrimination on the basis of their disabilities. 28 C.F.R.

§ 35.130(b)(3).

d.      By failing to administer services, programs, and activities in "the most

integrated setting" appropriate to the needs of civilly committed patients. 28 C.F.R.

§ 35.130(d).

e.      By failing to make reasonable modifications to allow civilly committed

patients to participate in OHA's services, programs, and activities in an integrated

community setting. 28 C.F.R. § 35.130(b)(7).

116.    Providing civilly committed patients with the community-based treatment

resources they need to avoid unnecessary institutionalization would not fundamentally alter

OHA's programs, services, or activities.

117.    As a result of OHA's actions and inactions, civilly committed patients have

suffered and will continue to suffer irreparable harm, discrimination, institutionalization, and the

inability to access community-based mental health services and support.

118.    In the absence of declaratory and injunctive relief, OHA will continue to

institutionalize and deny civilly committed patients their right to live in the most integrated

setting appropriate to their needs.

119.    Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their

attorneys' fees and costs in bringing this action.

## SEVENTH CLAIM

## Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, 28 C.F.R. § 41.51

120.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 119 above.

121.    Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

122.    The Rehabilitation Act contains an "integration mandate" requiring covered entities to provide any aid, benefit, and service that affords people with disabilities "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement" . . . "in the most integrated setting appropriate to the person's needs." 28 C.F.R. § 41.51(b)(1)(iii), (d).

123.    Civilly committed patients are qualified individuals with disabilities entitled to the protections of the Rehabilitation Act. *See* 29 U.S.C. § 705(20)(B) (citing to the ADA's definition at 42 U.S.C. § 12102). The Rehabilitation Act defines a "program or activity," in pertinent part, as "all of the operations of a department [or] agency . . . of a State or of a local government." 29 U.S.C. § 794(b)(1)(A).

124.    OHA is a governmental agency that receives "federal financial assistance" as used in the Rehabilitation Act and operates programs or activities within the meaning of Section 504. *See* 29 U.S.C. § 794(b)(1)(A). Defendant, acting in her official capacity, administers programs or activities as defined by the Rehabilitation Act, 29 U.S.C. § 794(b), and its implementing regulations, 28 C.F.R. § 41.51.

125.    OHA is engaged in providing programs or activities receiving Federal financial assistance sufficient to invoke the coverage of Section 504. 29 U.S.C. § 794(b)(1), (b)(3).

126.    Treatment professionals at Plaintiffs' hospitals believe that community-based treatment is appropriate for civilly committed patients who have stabilized and are ready for that level of treatment. Civilly committed patients do not oppose community-based treatment. These services can be reasonably accommodated. Despite that, OHA has institutionalized these civilly committed patients, or placed them at serious risk of institutionalization, in Plaintiffs' acute care hospitals, when they need community-based treatment, in violation of the integration mandate.

127.    OHA violates Section 504, and its implementing regulations, including as follows:

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 45

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

      a.      By failing to administer programs and activities in "the most integrated setting appropriate" to the needs of civilly committed patients. 28 C.F.R. § 41.51(d).

      b.      By directly or through contractual, licensing, or other arrangements, providing aids, benefits, or services in such a way that denies civilly committed patients the opportunity to participate in or benefit from such aids, benefits, or services; failing to afford civilly committed patients an equal opportunity to participate in or benefit from such aids, benefits, or services; providing aids, benefits, or services in such a way that civilly committed patients are not afforded equal opportunity to obtain the same result as that provided to others; and by otherwise limiting civilly committed patients in the enjoyment of a right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. 28 C.F.R. § 41.51(b)(1).

      c.      By directly or through contractual or other arrangements utilizing criteria or methods of administration in the state's mental health system that subject civilly committed patients to discrimination on the basis of their disabilities. 28 C.F.R. § 41.51(b)(3).

128.    Providing civilly committed patients with the community-based treatment resources they need to avoid unnecessary institutionalization would not fundamentally alter OHA's programs, services, or activities.

129.    As a result of OHA's actions and inactions, civilly committed patients have suffered and will continue to suffer irreparable harm, discrimination, institutionalization, and unequal access to community-based treatment services.

130.    In the absence of declaratory and injunctive relief, OHA will continue to unnecessarily institutionalize and deny civilly committed patients the right to live in the most integrated settings appropriate to their needs.

131.    Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 46

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

## EIGHTH CLAIM

### Violation of Section 1557 of the Patient Protection and Affordable Care Act

132.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 131 above.

133.    OHA receives Federal financial assistance for its health programs, including programs and activities related to civil commitment of individuals with mental disabilities and treatment during their period of commitment. As such, OHA is a covered entity subject to the requirements of 45 C.F.R. Part 92 and Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 et seq.

134.    As a covered entity, OHA is prohibited from discriminating against individuals with mental disabilities, both directly and through coordinated care organizations that it regulates and funds for its Medicaid programs.

135.    OHA discriminates against individuals with mental disabilities who are civilly committed by failing to provide adequate treatment resources, failing to ensure treatment is received in the least restrictive and most integrated setting, creating unreasonable risks of institutionalization and segregation, failing to legally design and implement benefits, failing to ensure adequate provider networks, denying services, and failing to provide for reimbursement rates sufficient to avoid discrimination.

136.    OHA's practices violate Section 1557 and its regulations, including 45 C.F.R. §§ 92.101, 92.205 and 92.207.

137.    Pursuant to 42 U.S.C. § 18116(a), the Court should enter declaratory judgment that OHA's practices violate Section 1557 and an injunction against further violations.

## NINTH CLAIM

### Violation of Community Hospitals' Rights under Article I, Section 18 of the Oregon Constitution – Unlawful Taking

138.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 137 above.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 47

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

139.    Article I, Section 18, of the Oregon Constitution provides in part that "[p]rivate property shall not be taken for public use . . . without just compensation; nor except in the case of the state, without such compensation first assessed and tendered."

140.    For years, OHA has engaged in conduct and a policy and practice that results in a taking of Plaintiffs' and other community hospitals' property for public use without just compensation. Once individuals are stabilized and civilly committed to the custody of OHA for up to 180 days of treatment, they are supposed to be transferred to an appropriate long-term treatment facility. OHA is supposed to ensure they are transferred to the facility best able to treat them or a suitable facility. Instead, however, after individuals are civilly committed—and they are no longer represented by counsel to protect their rights—these individuals are left indefinitely in restrictive and confined settings in acute care hospitals, where they are forgotten by OHA.

141.    Because civilly committed individuals who are committed to the custody of OHA for treatment are occupying community hospitals' beds for weeks, months, and sometimes their entire 180-day commitment and recommitment period, OHA's conduct deprives Plaintiffs and other community hospitals of their hospital beds. It results in beds being unnecessarily occupied by civilly committed individuals who have no medical reason to be in acute care settings, and prevents other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments. Because of OHA's actions, community hospitals are deprived of the services of its care providers, forced to incur costs associated with housing patients who should be elsewhere, and left with no choice but to devote significant resources to patients who have no medical reason to be there, including medication, food, housekeeping services, security, and one-to-one sitters 24 hours a day.

142.    OHA and their contracted Coordinated Care Organizations do not provide sufficient compensation to cover the costs and fair value of Plaintiffs' property used to care for civilly committed patients left at Plaintiffs' hospitals.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 48

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

143.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law. Plaintiffs cannot feasibly seek adequate and just compensation through individual legal actions for each civilly committed patient left in Plaintiffs' care because the expenses of pursuing so many individual legal actions would exceed the compensation Plaintiffs seek to recover.

144.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' and other community hospitals' rights under Article 1, Section 18 of the Oregon Constitution. Plaintiffs also seek a permanent injunction enjoining OHA from continuing its conduct, policy, and practice.

145.    Plaintiffs do not seek compensatory damages for OHA's unlawful takings. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## TENTH CLAIM

### Violation of Civilly Committed Individuals' Rights under ORS 426.060

146.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 145 above.

147.    OHA must direct civilly committed persons "to the facility best able to treat" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "suitable" facility. ORS 426.060(2)(a), (d).

148.    OHA's conduct, policy, and practice violates its statutory duties under ORS 426.060 by deliberately failing to make any placement decision for civilly committed individuals. Instead of being placed in the facility "best able to treat" them or a "suitable facility" at the time of commitment, OHA is choosing to leave civilly committed individuals indefinitely

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 49

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

in acute care hospitals, and deliberately failing to make any placement decision for them as contemplated by the statute.

149.     OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

150.     Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates its duties under ORS 426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place civilly committed individuals in the facility best able to treat them or a suitable facility.

151.     Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## ELEVENTH CLAIM

### Violation of Civilly Committed Individuals' Rights under ORS 426.150(1)

152.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 151 above.

153.     When an individual is civilly committed, "[OHA] or its designee shall take the person with mental illness into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility or to a representative of the assigned treatment facility." ORS 426.150(1).

154.     OHA's conduct, policy, and practice violates its statutory duties under ORS 426.150(1). Once individuals are civilly committed, OHA is failing to take custody of these individuals and ensure the safekeeping and proper care of these individuals until they are delivered to an assigned treatment facility or to a representative of the assigned treatment facility. Instead, OHA is leaving civilly committed individuals in acute care community hospitals

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 50

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

where they are initially detained for emergency purposes on a notice of mental illness, and failing to place patients after they are civilly committed.

155.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory relief is appropriate because community hospitals lack an adequate remedy at law.

156.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates its duties under ORS 426.150, and that OHA has a legal duty to take civilly committed individuals into its custody, and ensure the safekeeping and proper care of them by delivering them to an assigned treatment facility that is best able to treat them or a suitable facility.

157.    Plaintiffs do not seek compensatory damages for OHA's statutory violations. Plaintiffs seek only declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs in bringing this action.

## TWELFTH CLAIM

## Violation of Civilly Committed Individuals' Rights under ORS 659A.142(5)(a) and (6)(a)

158.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 157 above.

159.    ORS 659A.142(5)(a) provides that "[i]t is an unlawful practice for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability."

160.    ORS 659A.142(6)(a) provides that "[i]t is an unlawful practice for a provider or any person acting on behalf of a provider to discriminate by doing any of the following based on the patient's race, color, national origin, sex, sexual orientation, gender identity, age or disability: (A) Deny medical treatment to the patient that is likely to benefit the patient based on an

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 51

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

individualized assessment of the patient using objective medical evidence; or (B) Limit or restrict in any manner the allocation of medical resources to the patient."

161.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A.142(5)(a) because OHA is excluding civilly committed individuals from admission to OSH, and denying them an alternative appropriate long-term placement when they are civilly committed to the custody of OHA for 180 days of treatment.

162.    OHA's conduct, policy, and practice violates its statutory duties under ORS 659A.142(6)(a) because OHA is discriminating against civilly committed individuals by denying them appropriate long-term treatment once they are civilly committed to the custody of OHA, and limiting and restricting the allocation of resources to them.

163.    OHA will continue engaging in its conduct, policy, and practice unless the Court enjoins such conduct. As demonstrated by its inaction, despite repeated pleas to OHA for help over the years, it is clear that OHA intends to continue using community hospitals to house civilly committed individuals indefinitely, if not permanently. Declaratory and injunctive relief are appropriate because community hospitals lack an adequate remedy at law.

164.    Plaintiffs seek a declaration that OHA's conduct, policy, and practice violates Plaintiffs' rights under ORS 659A.142(5)(a) and (6)(a). Plaintiffs also seek a permanent injunction pursuant to ORS 659A.885(1) enjoining OHA from continuing its statutory violations and their attorneys' fees pursuant to ORS 659A.885(8)(d).

## RELIEF REQUESTED

Plaintiffs respectfully request the following relief:

A.    Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates the Fifth and Fourteenth Amendments to the United States Constitution because:

i.    They force community hospitals to house and treat civilly committed individuals indefinitely, thus occupying and taking their property, despite the fact that

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 52

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

community hospitals are not equipped, staffed, or designed to provide long-term care and treatment appropriate for civilly committed individuals;

ii.      There is no state law procedure for community hospitals to contest being forced to house civilly committed individuals when they no longer require that level of treatment;

iii.      They result in a taking of community hospitals' private property for public use without just compensation;

iv.      They result in a violation of civilly committed individuals' right to receive appropriate treatment and, further, deny liberty interests arising from state law; and

v.      There is no state law procedure for community hospitals to ensure that civilly committed individuals are placed by OHA in the facility best able to treat them or even a suitable facility.

B.      Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and the implementing regulations, because:

i.      They administer the state's mental health system in a way that subjects civilly committed patients to unnecessary institutionalization in community hospitals instead of providing them with community-based treatment resources;

ii.      They directly or through contractual or other arrangements utilize criteria or methods of administration in the state's mental health system that subject civilly committed patients to discrimination on the basis of their disabilities;

iii.      They fail to administer services, programs, and activities in the most integrated setting appropriate to the needs of civilly committed patients; and

iv.      They fail to make reasonable modifications to allow civilly committed patients to participate in OHA's services, programs, and activities in an integrated community setting.

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 53

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

C.      Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates Section 1557 of the of the Patient Protection and Affordable Care Act, and its implementing regulations, because OHA discriminates against individuals with mental disabilities who are civilly committed by failing to provide adequate treatment resources, failing to ensure treatment is received in the least restrictive and most integrated setting, creating unreasonable risks of institutionalization and segregation, failing to legally design and implement benefits, failing to ensure adequate provider networks, denying services, and failing to provide for reimbursement rates sufficient to avoid discrimination.

D.      Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates Article I, Section 18, of the Oregon Constitution because they result in a taking of Plaintiffs' and other community hospitals' private property for public use without just compensation.

E.      Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 426.060, and that OHA has a legal duty to provide civilly committed individuals meaningful treatment during their 180-day commitment and place them in the facility best able to treat them or a suitable facility.

F.      Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates its duties under ORS 426.150, and that OHA has a legal duty to take civilly committed individuals into its custody, and ensure the safekeeping and proper care of them by delivering them to an assigned treatment facility best able to treat them or a suitable facility.

G.      Declare that OHA's conduct, policy, and practice regarding civilly committed individuals violates ORS 659A.142(5)(a) and (6)(a).

H.      Permanently enjoin OHA from continuing to violate civilly committed patients' due process rights to liberty and hospitals' due process rights to property, and from continuing to take hospitals' property without just compensation, and further requiring OHA to fulfill its

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 54

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480

obligations to provide civilly committed patients the care and treatment they are entitled to by law.

      I.      Permanently enjoin OHA from continuing to violate civilly committed individuals' rights under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Section 1557 of the of the Patient Protection and Affordable Care Act.

      J.      Award Plaintiffs their reasonable attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988(b) and ORS 659A.885(8)(d); and

      K.      Grant such further relief as justice requires.

DATED: October 4, 2024

EPSTEIN BECKER GREEN, P.C.


By:   *s/ Eric J. Neiman, OSB #823513*
       Eric J. Neiman, OSB #823513
       Emma P. Pelkey, OSB #144029
       Telephone: 503.334.6475
       Facsimile: 503.343.6476


STOEL RIVES LLP


By:   *s/ Thomas R. Johnson, OSB #010645*
       Thomas R. Johnson, OSB #010645
       Alex Van Rysselberghe, OSB #174836
       Telephone: 503.294.9466

       *Attorneys for Plaintiffs*

SECOND AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF - 55

EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Ave., Ste. 1530
Portland, Oregon 97204
Telephone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: +1.503.224.3380 • Fax: +1.503.220.2480