**Matthew J. Kalmanson, OSB No. 041280**
Email: mjk@hartwagner.com
**Janet M. Schroer, OSB No. 813645**
Email: jms@hartwagner.com
**Michael R. O'Neil, OSB No. 231715**
Email: mro@hartwagner.com
**HART WAGNER LLP**
1000 SW Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

*Of Attorneys for Proposed Intervenor-Plaintiff National Alliance on Mental Illness*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON and ST. CHARLES HEALTH SYSTEM,

Plaintiffs,

v.

SEJAL HATHI, MD, in her official capacity as Director of Oregon Health Authority,

Defendant.

Case No. 6:22-cv-01460-AN

**PROPOSED INTERVENOR-PLAINTIFF NATIONAL ALLIANCE ON MENTAL ILLNESS-OREGON'S MOTION TO INTERVENE**

***Oral Argument Requested***

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, counsel for National Alliance on Mental Illness-Oregon ("NAMI") certifies that they conferred Plaintiffs Legacy Emanuel dba Unity Center for Behavioral

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

Health ("Unity"), Legacy Health ("Legacy"), PeaceHealth, Providence Health & Services – Oregon ("Providence"), St. Charles Health System ("St. Charles") (collectively, the "Hospitals"), and Defendant Sejal Hathi, in her official capacity as Director of Oregon Health Authority ("OHA"), by telephone, email, and sharing a draft Motion with OHA before it would take a position. Plaintiffs do not oppose this Motion. OHA does oppose this Motion.

**MOTION**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a), NAMI-Oregon requests that the Court grant its motion to intervene as a Plaintiff as a matter of right, in order to join the existing Plaintiffs in asserting the claims in the Second Amended Complaint ("SAC") (ECF#117) that are made on behalf of certain civilly committed patients.[1] In the alternative, NAMI requests permissive intervention under FRCP 24(b). This motion is supported by the following memorandum of law, the pleadings on file, and the Declaration of Christopher Bouneff.

[1] NAMI-Oregon seeks to intervene to join Plaintiffs in asserting the "third-party" claims in the existing SAC: The First, Second, Sixth, Seventh, Eighth, Tenth, Eleventh and Twelfth Claims for Relief. OHA's primary objection to intervention is that NAMI-Oregon has not included a pleading with this Motion. Because OHA intends to move against the SAC in the next few weeks, OHA is placing a pointless, costly roadblock in the way of NAMI-Oregon's participation in this important lawsuit. As explained to OHA, a separate pleading would only add the information about NAMI-Oregon that is in this Motion, and assert the same claims based on the same allegations that already exist in the SAC. *See Alexander v. Hall*, 64 F.R.D. 152, 156 (holding statement that intervenor would adopt existing complaint sufficient to satisfy pleading requirement). If this Court allows NAMI-Oregon to intervene, then after it rules on OHA's Motion to Dismiss, in which OHA easily could address NAMI-Oregon's impact on those claims, NAMI-Oregon will work with Plaintiffs to file a Third Amended Complaint that addresses the Court's ruling if necessary, and that reflects NAMI-Oregon's limited status as intervenor. *See, e.g., Disability Rights Oregon v. Patrick Allen*, Case No. 3:21-cv-01637, EFC # 70, 87 (granting motion to intervene without separate pleading when motion described claims, which it later revoked after considering standing arguments in motion to dismiss); *Waterwatch of Oregon v. U.S. Army Corps of Engineers*, Case No. 3:20-cv-00413, ECF # 19, 35 (granting motion to intervene without separate pleading when motion sought to join existing claims).

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

## MEMORANDUM OF LAW

### I. Introduction.

This lawsuit seeks to remedy OHA's violations of the rights of Oregon individuals who suffer from severe mental illness and are subject to civil commitment orders. Because a civil commitment order is a "massive" deprivation of liberty, *Humphrey v. Cady,* 405 U.S. 504, 509 (1972), OHA must provide these individuals appropriate long-term care. It is not doing so.

OHA instead is abandoning these individuals in community hospitals, often for the entire period of civil commitment, despite knowing that these facilities are not designed, equipped, staffed, or able to provide the appropriate care that these individuals need. OHA's failure to act contributes to a cycle of despair for these individuals, who in the absence of appropriate treatment can suffer repeated hospitalizations, homelessness, incarceration, injury to self and others, and even death.

NAMI-Oregon is the Oregon chapter of the largest grassroots mental health organization in the United States. Its mission is to support and advocate on behalf of individuals living with mental illness. Its membership consists almost entirely of individuals living with mental illness, family members supporting a loved one living with mental illness, and parents/caregivers raising school-age youth living with behavioral health issues. It includes individuals who are subject to civil commitment orders or may become subject to such orders in the future, as well as their family members and others impacted by these issues.

NAMI requests that it be permitted to intervene in this matter as a party-Plaintiff to ensure that the interests of its members, and the population on whose behalf it advocates, are sufficiently addressed in this Court.

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

## II. Factual and Procedural History.

There are several situations where an individual who lives with a severe mental illness might become subject to a judicial order through which the State restricts the individual's liberty because of that mental illness. One is when a court concludes that an individual who has been charged with a crime is unable to aid or assist in their defense.

In *Oregon Advocacy Center v. Mink,* Case No. 02-339, 2002 WL 35578910 (D. Or. May 10, 2002), *aff'd,* 322 F.3d 11010 (9th Cir. 2003), the District Court ruled, and the Ninth Circuit affirmed, that Oregon's practice of leaving "aid and assist" defendants in prison violated their constitutional rights, and it entered an injunction requiring the State to move such individuals to appropriate facilities for treatment within seven days. The courts also ruled that an organization called "Disability Rights Oregon" ("DRO"), previously known as the Oregon Advocacy Center, had standing to represent and address the rights of aid-and-assist defendants. 322 F.3d at 1116.

This case involves the related issue of OHA's practice of abandoning individuals who are subject to civil commitment orders in community hospitals, without any opportunity for appropriate long-term treatment. *Mink* does not address this situation. NAMI-Oregon seeks the same ruling for the civil commitment system that DRO received in *Mink, i.e.,* that it may assert claims that seek to redress the harms caused by OHA's violations of the constitutional and statutory rights of individuals who are subject to civil commitment orders.

### A. This Lawsuit.

An Oregon court may issue a civil commitment order only if it finds, by clear and convincing evidence, that a person is "[d]angerous to self or others" or "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future," *inter alia.* ORS 426.005(1)(f)(A), (B). A court may issue a civil commitment order if there is particularized



**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

proof of "serious and highly probable threats of harm," in the near future, that is life-threatening or involves an inherently dangerous activity. *See State v. B.B.*, 245 P.3d 697 (Or. Ct. App. 2010). The likelihood of violence must be "highly likely." *State v. M.A.*, 371 P.3d 495 (Or. Ct. App. 2016).

An individual who becomes subject to a civil commitment order, by operation of Oregon law, is committed to "the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). OHA then must direct civilly committed persons "to the facility best able to treat" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "suitable" facility. ORS 426.060(2)(a), (d); *see also*, ORS 430.021(5).

OHA also has a constitutional obligation to provide civilly committed individuals "restorative treatment," which gives them "a realistic opportunity to be cured or improve the mental condition for which they were confined." *Mink*, 322 F.3d at 1121 (internal quotation marks and citation omitted). As alleged, OHA currently is not providing any long-term "restorative treatment" to these individuals, thereby violating their constitutional rights and OHA's statutory obligations.

Plaintiffs are a number of Oregon hospitals (the "Hospitals") who are being used as an involuntary backstop for OHA's repeated violations of the rights of individuals who are subject to civil commitment orders. As alleged in the SAC, these individuals often enter the "system" through the Hospitals' emergency rooms, due to an acute mental crisis that is beyond the treatment capabilities of the individuals' families, the police, or any "support" system that exists in Oregon.

The Hospitals are certified and equipped to provide acute, emergency care to their patients, but are not "designed, equipped, staffed, or intended to provide long-term treatment for mental illness." (SAC, p. 2.) The "stabilizing treatment" provided by the Hospitals involves "highly restrictive settings, and constant monitoring." (*Id.*) But civilly committed patients who are stable "have no medical need" to be in restrictive environments. "Patients instead need long-term

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

treatment, in less restrictive settings, that acute care community hospitals cannot provide." (*Id.,* p.2-3.) OHA is legally obligated to prove that long-term treatment, but it is not doing so.

The Hospitals assert claims on their own behalf and also on behalf of their patients who are subject to civil commitment orders. They seek a declaration that OHA's failures violate the constitutional and statutory rights of the Hospitals and their patients, and injunctive relief.

**B. Procedural History.**

After the Hospitals brought this action, OHA moved to dismiss their Amended Complaint on the merits and also because the Hospitals purportedly did not have standing. The District Court dismissed the Hospitals' first-party and third-party claims on standing grounds.

First, the court concluded that the Hospitals' injuries were traceable to their own conduct in becoming certified to provide acute care to civilly committed patients. Second, the court ruled that the Hospitals lacked third-party standing because their interests and those of their patients were not aligned. The court also ruled that if "any party in this proceeding should be able to speak on behalf of civilly committed patients, DRO"—the plaintiff in *Mink*—"would likely be the one to do so."

The Ninth Circuit reversed in part, vacated in part, and remanded for further proceedings. The Ninth Circuit first concluded that the Hospitals had standing to bring claims based on their own injuries. No. 23-35511, 2024 WL 2843034 at * 1 (9th Cir. June 5, 2024). It then ruled that whether the Hospitals had "third-party" standing was "not obvious," and may "depend on what outcome [the Hospitals] in fact is likely to achieve in this litigation and whether that outcome would benefit the patients whom [the Hospitals] seek[ ] to represent. These questions are not clearly answered in the complaint or the present briefing." *Id.* * 2. The court remanded for reconsideration of that issue.

The Ninth Circuit also concluded that the District Court's finding that DRO was "better suited" to speak on behalf of civilly committed patients was "clearly erroneous" because "aid and

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

assist" defendants "compete with civilly committed patients for the limited bed space available at [Oregon State Hospital]. The conflict between the interests of civilly committed patients and DRO's clients in the *Mink* litigation calls into serious question DRO's ability fairly to represent the civilly committed patients." *Id.*

**C. NAMI's Mission Is to Advocate for Individuals who Suffer From Severe Mental Illness, Including Patients Subject to Civil Commitment Orders.**

As explained in the contemporaneously-filed Declaration of Chris Bouneff, NAMI-Oregon is the state chapter of the National Alliance on Mental Illness. It is a grassroots, membership-governed organization. Membership consists almost entirely of individuals living with mental illness, family members supporting a loved one living with mental illness, and parents/caregivers raising school-age youth living with behavioral health issues.

NAMI-Oregon's mission is to improve the quality of life for individuals and families living with mental illness through education, support, and advocacy. Its mission is not limited to serving individuals in Portland. Through seventeen local affiliates across Oregon, NAMI-Oregon annually serves 15,000 Oregonians with education classes, support groups, and workshops. NAMI-Oregon annually answers 2,000 phone calls and emails on the NAMI-Oregon Resource Helpline.

NAMI-Oregon's advocacy harnesses the lived experience of its members to pursue policy reforms and investments at the state, regional, and local levels. Among NAMI-Oregon's guiding principles are that every Oregonian deserves access to timely, accessible, and effective treatments and supports. NAMI-Oregon believes recovery should be an expectation, not an exception.

Because NAMI-Oregon's mission is to support and advocate on behalf of individuals living with mental illness, its membership and constituency includes individuals who are subject to civil commitment orders, and individuals who may become subject to such orders in the future. Examples of NAMI-Oregon's advocacy for this population include passage of a sweeping health

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

insurance parity bill in the 2021 Legislature and legislation in 2023 that will lead to a fully implemented 988 crisis system in Oregon. NAMI-Oregon is currently part of efforts in the legislature to address Oregon's approach to civil commitment.

NAMI-Oregon's core mission is to support and advocate on behalf of the very individuals who suffer the harms at issue in this lawsuit.

## ARGUMENT

"Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). As explained below, NAMI has a right to intervene in this lawsuit under FRCP 24(a)(2). Alternatively, NAMI satisfies FRCP 24(b) and should be permitted to intervene.

### A. NAMI Has Standing to Assert Claims on its own Behalf and on Behalf of Patients Who Are Subject to Civil Commitment Orders.

The court previously dismissed this lawsuit because the Hospitals purportedly lacked first-party and third-party standing, but that order was reversed with instructions to reconsider the third-party standing issue. NAMI-Oregon has standing to join Plaintiffs in asserting the "third-party" claims in the SAC. [2] This Court does not need to rule on standing in the context of this Motion, however. NAMI-Oregon agrees that, if this Court grants intervention, OHA could move to dismiss NAMI-Oregon's claims based on standing, either in its impending motion to dismiss or in an appropriate motion post-intervention, if it wishes. The information Mr. Bouneff's Declaration is far more detailed than one might see in a federal "pleading" on issues pertaining to standing.

[2] When the parties conferred, NAMI-Oregon proposed that if OHA agreed not to oppose intervention, then OHA could address NAMI's standing in its Motion to Dismiss the SAC, so these issues are before the Court at the same time. OHA refused. OHA respectfully proposes that this Court grant this motion because the intervention standard is satisfied, and order OHA to address NAMI's standing, if it wishes to do so, in its anticipated Motion to Dismiss.

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

**B. NAMI is Entitled to Intervene as of Right to Assert the Patients' Claims.**

NAMI-Oregon satisfies the test for mandatory intervention. FRCP 24(a)(2) provides, in relevant part, that the Court "must permit" the intervention of any third party who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

This court must examine four factors: (1) the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the action. *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011).

These requirements "are [to be] broadly interpreted in favor of intervention" because a "liberal policy of intervention serves both efficient resolution of issues and broadened access to the courts." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (internal quotation marks and citations omitted; brackets in the original). As addressed below, NAMI meets each of these requirements and should be granted intervention as of right.

*(i) NAMI's Motion is Timely.*

To determine whether a motion to intervene is timely, courts consider (1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997). A motion is timely if "made at an early stage of the proceedings, [so that] the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

delay in the proceedings." *Citizens for Balanced Use*, 647 F.3d at 897. "Mere lapse of time, without more" does not bar intervention. *Day v. Apolonia*, 505 F.3d 963, 965 (9th Cir. 2007) (permitting intervention two years into case).

NAMI-Oregon's Motion is timely. Although the Hospitals filed their Complaint on September 28, 2022, the court dismissed this lawsuit on standing grounds before discovery or any inquiry into the merits. The Ninth Circuit reversed on June 6, 2024, and remanded on the issue of third-party standing. At that time, it found that the court's finding that DRO was "better suited" to speak on behalf of patients was "clearly erroneous."

Nothing of note has happened since. While the Hospitals have filed their SAC, and the parties agreed to a briefing schedule on OHA's anticipated motion to dismiss, there have been no substantive rulings from this Court or discovery since the Ninth Circuit's decision. If OHA wishes to address the impact of NAMI-Oregon's participation on the claims in the SAC, OHA can do so in the anticipated motion to dismiss without affecting the existing briefing schedule. NAMI-Oregon's Motion to intervene therefore will not prejudice the parties or delay or disrupt the proceedings. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).

Accordingly, NAMI satisfies the first requirement for intervention as of right.

*(ii) NAMI-Oregon has a protectable interest.*

The significantly protectable interest requirement is a "practical, threshold inquiry" used to "dispos[e] of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks and citation omitted). There is no "clear-cut [test] or bright-line rule" for determining whether an applicant has such an interest. *Id.* Courts recognize, however, that an applicant has a significant protectable interest if it "asserts an interest that is protected under some

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

law" and "there is a relationship between its legally protected interest and the plaintiff's claims." *Id.* (internal quotation marks and citation omitted). Additionally, "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

NAMI-Oregon seeks to intervene to assert the rights of its members and constituents, which includes individuals who are impacted by a lawsuit that seeks to assert the rights of individuals who are or may in the future become subject to civil commitment orders. It necessarily follows that NAMI-Oregon, through its members and the individuals it serves, has a "protectable interest related to this action." NAMI therefore satisfies the second requirement for intervention as of right.

*(iii) Resolution of this case would impair NAMI-Oregon's ability to protect its interest.*

Again, because NAMI-Oregon seeks to assert the claims of its members and the patients, it necessarily follows that resolution of those claims could impair or impede those individuals' interests. NAMI is required to show that an unfavorable resolution of this lawsuit "may, as a practical matter, impair or impede" its interests, not that it "will necessarily" do so. *City of Los Angeles*, 288 F.3d at 397, 401 (internal quotation marks and citations omitted); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 817, 822; see *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967) (impairment need not be substantial to satisfy this requirement).

NAMI meets this standard because its and its members' interests will be affected if OHA succeeds in dismissing this lawsuit. If the Hospitals' claims are dismissed, then individuals who are subject to civil commitment orders will continue to be abandoned in community hospitals, contrary to law. They will not receive the long-term treatment they need and are entitled to under the law,

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

and will instead be subject to cycles of hospitalization, incarceration, homelessness and injury to themselves and others.

Accordingly, NAMI satisfies the third requirement for intervention as of right.

*(iv) NAMI-Oregon, as an organization wholly dedicated to individuals suffering from severe mental illness, has a unique interest in this litigation.*

The burden to demonstrate inadequate representation is "minimal" and is satisfied if an applicant shows that representation of its interests "may be inadequate." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (internal quotation marks omitted) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

To determine whether an applicant satisfies this standard, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Nw. Forest Res. Council*, 82 F.3d at 838. Ultimately, however, "[t]he most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086.

As discussed above, the Ninth Circuit has remanded the issue of whether the Hospitals have third-party standing to assert claims on behalf of the patients. NAMI-Oregon believes that both it and the Hospitals can assert the third-party claims. It is unknown if OHA will continue to make standing arguments against the SAC, but if it does, those arguments likely would not apply to NAMI-Oregon, whose mission is to support and advocate on behalf of people with mental illness.

Moreover, while there is overlap between the Hospitals' interests and that of NAMI-Oregon as it relates to the plaintiffs, the interests are not identical, and both the Hospitals and NAMI-Oregon have unique perspectives that should be before this Court as it relates to the patients' claims and

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

potential remedies. The Hospitals are positioned to advocate on behalf of individuals who are their present and future patients, due to the therapeutic relationship. NAMI-Oregon should be permitted to intervene to ensure that all interests and perspective are adequately represented in this litigation.

All that to say, NAMI-Oregon has a unique and important perspective, and its motives in advocating for these individuals in this lawsuit cannot be questioned, despite OHA's attempts to keep it out. Its involvement in this lawsuit would benefit the Court, the parties, and of course, the patients. Accordingly, NAMI satisfies the fourth requirement for intervention as of right.

NAMI-Oregon requests that this Court grant its Motion to intervene.

**C. Alternatively, NAMI Should be Granted Permissive Intervention Under Rule 24(b).**

In the alternative, NAMI requests permission to intervene under FRCP 24(b). Permissive intervention is proper where an applicant's motion is timely, an intervenor's "claim or defense … shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3); see, e.g., *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-11 (9th Cir. 2002) (permissive intervention appropriate where intervenors asserted defenses of the challenged agency rule directly responsive to the claim for injunction).

As explained above, this motion is timely, and intervention would neither delay nor prejudice the adjudication of the original parties' rights, and NAMI-Oregon seeks to raise claims that share common questions of law and fact as those already asserted here, and will alleviate any concerns about third-party standing that OHA may raise against the Hospitals.

Accordingly, if the Court does not grant intervention as of right, NAMI should be granted permission to intervene in this case as a defendant with full rights to protect its and its members' shared and unique interests.

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**

## CONCLUSION

NAMI respectfully requests that the Court grant its motion to intervene as of right under Rule 24(a) so that it may join with the Hospitals to advocate on behalf of individuals who have been, are, or may be civilly committed. Alternatively, NAMI requests permission to intervene under Rule 24(b).

DATED this 21st day of October 2024

HART WAGNER LLP

By: */s/ Matthew J. Kalmanson*

Matthew J. Kalmanson, OSB No. 041280
mjk@hartwagner.com
Janet M. Schroer, OSB No. 813645
jms@hartwagner.com
Michael R. O'Neil, OSB No. 231715
mro@hartwagner.com
*Of Attorneys for Proposed Intervenor-Plaintiff National Alliance on Mental Illness*

Trial Attorney: Matthew J. Kalmanson, OSB No. 041280

Page 14– PROPOSED INTERVENOR-PLAINTIFF NATIONAL ALLIANCE ON MENTAL ILLNESS-OREGON'S MOTION TO INTERVENE

**HART WAGNER LLP**
**Trial Attorneys**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Fax: (503) 222-2301**