Jon W. Monson, OSB No. 102650
jmonson@cablehuston.com
Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
Victoria K. Baker, OSB No. 225400
vbaker@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201-3412
(503) 224-3092 Telephone
(503) 224-3176 Facsimile

*Special Assistant Attorneys General for Defendant Sejal Hathi, MD, in her official capacity as Director of Oregon Health Authority (Additional Counsel of Record Listed on Signature Page)*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON; METROPOLITAN PUBLIC DEFENDERS INCORPORATED; and A.J. MADISON, <br><br> Plaintiffs, <br><br> v. <br><br> SEJAL HATHI, in her official capacity as Director of Oregon Health Authority; and SARA WALKER, in her official capacity as Interim Superintendent of the Oregon State Hospital, <br><br> Defendants. <br> (*caption continued next page*) | Case No. 3:02-cv-00339-AN (Lead Case) <br> Case No. 3:21-cv-01637-AN (Member Case) <br> **Case No. 6:22-cv-01460-AN (Member Case)** <br><br> **DEFENDANT'S OPPOSITION TO NATIONAL ALLIANCE ON MENTAL ILLNESS-OREGON'S MOTION TO INTERVENE** <br><br> Request for Oral Argument |

| | |
|---|---|
| JAROD BOWMAN; and JOSHAWN DOUGLAS SIMPSON,<br><br>   Plaintiffs,<br><br>  v.<br><br>SARA WALKER, Interim Superintendent of the Oregon State Hospital, in her official capacity; DOLORES MATTEUCCI, in her individual capacity; SAJEL HATHI, Director of the Oregon Health Authority, in her official capacity; and PATRICK ALLEN, in his individual capacity,<br><br>   Defendants. | Case No.: 3:21-cv-01637-AN (Member Case) |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM, INC.,<br><br>   Plaintiffs,<br><br>  v.<br><br>SEJAL HATHI, MD, in her official capacity as Director of Oregon Health Authority,<br><br>   Defendant. | Case No.: 6:22-cv-01460-AN (Member Case) |

## I.    INTRODUCTION

The National Alliance on Mental Illness-Oregon ("NAMI") seeks party status through a motion to intervene. Defendant's counsel informed Plaintiffs' and NAMI's counsel that Defendant would not object to a third-party entity appearing on behalf of civilly committed individuals, provided the entity shows Article III standing and complies with the procedural requirements for a motion to intervene under FRCP 24. Unfortunately, NAMI's current motion

does neither. NAMI provides none of the information needed to discern whether it has Article III standing. And it does not comply with the threshold requirements to show either intervention as a matter of right or permissive intervention under FRCP 24. Accordingly, the Court should deny NAMI's motion.

## II.    BACKGROUND

The Court is familiar with the background of this litigation. Plaintiffs are private hospitals and health systems that allege claims on their own behalf and on behalf of civilly committed individuals, ultimately seeking to remove civilly committed patients from Plaintiffs' facilities. NAMI is the Oregon chapter of a national mental health organization. (Mot. at 3.) NAMI asserts that its membership includes those with mental illness, family members and caregivers, and those who are or may become subject to civil commitment orders. (*Id.*) But its motion does not identify any individual members who it contends are currently subject to a civil commitment order, let alone any civilly committed patient who resides in a private hospital. (*See generally id.*) NAMI now seeks to intervene as a party in this litigation. NAMI's motion asserts that the Court should grant its intervention "as a matter of right, in order to join the existing Plaintiffs in asserting the claims in the Second Amended Complaint ("SAC") (ECF #117) that are made on behalf of certain civilly committed patients." (Mot. at 2). In the alternative, NAMI requests permissive intervention. (*Id.*)

## III.    ARGUMENT

**A.    NAMI Does Not Attach a Proposed Pleading, as Required under FRCP 24(c).**

As a threshold matter, NAMI has not complied with FRCP 24(c), which requires a motion to intervene to "state the grounds for intervention *and be accompanied by a pleading that sets out the claim or defense for which intervention is sought*." (Emphasis added.) NAMI's motion attaches no such proposed pleading and argues that it need not comply with FRCP 24(c) because NAMI seeks to join the First, Second, Sixth, Seventh, Eighth, Tenth, Eleventh, and Twelfth claims in the SAC, as pleaded. (Mot. at 2 n.1.) Thus, NAMI contends, "a

separate pleading would only add information about NAMI[] that is in this Motion, and assert the same claims based on the same allegations that already exist in the SAC." (*Id.*)

It is true that courts have sometimes forgiven a technical violation of FRCP 24(c) in "narrow circumstances" when the motion to intervene provides "'sufficient specificity to allow the . . . court to rule.'" *Buffin v. City & Cnty. of San Francisco*, No. 15-CV-04959-YGR, 2016 WL 6025486, at *12 (N.D. Cal. Oct. 14, 2016) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992)). Courts have also forgiven an FRCP 24(c) violation when the proposed intervenor later corrected the error by filing a proposed pleading before the Court ruled on the motion to intervene. *See, e.g.*, *Assurance Co. of Am. v. MDF Framing, Inc.*, No. CV 06-00169-MO, 2006 WL 8459542, at *3 (D. Or. Apr. 7, 2006) (forgiving failure to comply with FRCP 24(c) because intervenors "corrected their oversight and filed a proposed [pleading] in conjunction with their reply papers").

Courts have denied motions to intervene, however, where the failure to include a proposed pleading deprived the opposing party of information needed to respond to the motion. *See, e.g.*, *Ewing v. Empire Cap. Funding Grp., Inc.*, No. 17CV2507-LAB (MDD), 2018 WL 3629923, at *2 (S.D. Cal. July 30, 2018) (denying motion to intervene that "failed to attach a proposed pleading under 24(c)," because "while that's only a technical defect, it matters here because her motion doesn't put Defendants or the Court on notice of her claims"); *Buffin*, 2016 WL 6025486, at *13 (denying motion to intervene for failure to include proposed pleading under FRCP 24(c) because court needed a proposed pleading "to assess adequately whether intervention is appropriate").

Such is the case here. A NAMI intervenor complaint would need to include allegations about NAMI, its members, and *how* its or its members' interests are impacted by OHA's alleged wrongful conduct. Those allegations are all critical to determining whether NAMI has standing in this case. In addition, NAMI's complaint would need to explain the basis for NAMI asserting claims "on its own behalf." (Mot. at 8 ("NAMI has standing to assert claims on its own behalf . . . .").) The SAC does not include any allegations about injuries to NAMI.

The filing of a formal pleading also has important procedural ramifications. An intervenor complaint would start the clock for Defendant's deadline to serve a responsive pleading under FRCP 12. Defendant could then assert defenses to NAMI's claims in a motion to dismiss, including defenses that may differ from the arguments raised in the pending motion to dismiss the SAC. Without an actual intervenor complaint, it's not clear how Defendant would even seek dismissal of NAMI's claims, since no actual pleading would exist to dismiss.

Finally, the Court should reject NAMI's explanations for why it did not include a proposed pleading. NAMI first suggests that complying with FRPC 24(c) would be a "costly roadblock in the way of NAMI-Oregon's participation in this important lawsuit." (Mot. at 2 n.1.) But it is unclear why preparing a proposed pleading would be costly if, as NAMI suggests, its complaint would essentially copy allegations from the SAC and NAMI's current motion to intervene. NAMI also suggests that it will work with Plaintiffs later to draft a "Third Amended Complaint" after the Court resolves Defendant's pending motion to dismiss the SAC. (*See* Mot. at 2 n.1.) That proposal is neither workable nor compliant with FRCP 24. If NAMI wants intervenor status, it needs to describe its proposed claims and allegations now, not seek leave to file undescribed possible claims later. Because NAMI fails to comply to FRCP 24(c), the Court should deny the motion to intervene.

**B.    NAMI Lacks Standing to Sue on its Own Behalf or on Behalf of Civilly Committed Patients.**

Putting aside the failure to comply with FRCP 24(c), NAMI's motion also fails because NAMI has not established standing to sue under Article III. NAMI asks the Court to postpone ruling on standing now, suggesting that OHA can instead file a motion to dismiss later after intervention is granted. But standing is a threshold issue "in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). And NAMI bears the burden to establish standing, even as a proposed intervenor. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (intervenor must have Article III standing); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). NAMI must have standing "for each claim [it] seeks to press and for each form of relief

that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up).  Yet, NAMI makes no attempt at all to establish standing.  NAMI's motion includes the heading "NAMI has standing to assert claims on its own behalf and on behalf of patients who are subject to civil commitment orders." (Mot. at 8.)  But its one-paragraph argument under that heading merely argues that the Court should wait to resolve the standing issue and includes one conclusory sentence stating, "NAMI-Oregon has standing to join Plaintiffs in asserting the 'third-party' claims in the SAC." (*Id.*)  That does not meet NAMI's burden.

There are only three conceivable grounds on which NAMI could assert standing in this case:  (1) NAMI could claim "organizational standing" to assert claims "on its own behalf" for injuries suffered by NAMI itself; (2) NAMI could claim "associational standing" to assert claims on behalf of its members; or (3) NAMI could claim "third-party standing" to assert claims on behalf of civilly committed patients.  NAMI's motion fails to establish its standing under any of these doctrines.

        **1.**        **NAMI Lacks Organizational Standing to Assert Claims on its Own Behalf.**

NAMI has not established organizational standing.  Organizational standing occurs where an entity asserts damages on behalf of the organization itself, rather than on behalf of its individual members.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982).  Organizations "may have standing to sue on their own behalf for injuries they have sustained, but organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024) (internal citations omitted).  "[A]n organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct." *Id.* at 369–70.

Here, NAMI's motion argues that it can bring claims "on its own behalf" but its motion includes no allegations or evidence that OHA's actions have injured *NAMI*.  In fact, as discussed above, NAMI alleges no facts at all, since it does not include a proposed pleading.  NAMI does

attach a two-page declaration from its Executive Director, Chris Bouneff, but that declaration does not assert that NAMI itself has suffered any injury. Thus, NAMI has not established organizational standing.

### 2. NAMI Lacks Associational Standing to Assert Claims on Behalf of Its Members.

NAMI also fails to establish associational standing. An organization may bring claims based on associational standing when "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 169 (2000) (same). To meet the first element, NAMI must demonstrate that at least one of its members has suffered an (1) injury in fact (2) caused by the defendant's challenged conduct (3) and likely redressable by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61. Thus, NAMI must "make ***specific allegations establishing that at least one identified member had suffered or would suffer harm***." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482–83 (9th Cir. 2011) (same standard applies to potential intervenors). The "requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Summers*, 555 U.S. at 498–99.

NAMI fails to meet this element. NAMI does not "identify any affected members by name nor has it submitted declarations by any of its members attesting to harm they have suffered or will suffer." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1194–95 (9th Cir. 2013). In fact, neither NAMI's motion or supporting declaration identifies any members who are currently subject to a civil commitment order in Oregon, let alone any civilly committed members who (1) are currently placed in the acute care department of a private hospital, and (2) no longer need a hospital level

of care.  Mr. Bouneff's declaration only vaguely states that NAMI's "membership includes individuals who have been subject to civil commitment orders."  (Bouneff Decl. ¶ 6.)  But that statement does provide the specificity required to establish associational standing.

### 3. NAMI Lacks Third-Party Standing to Assert Claims on Behalf of Civilly Committed Individuals Residing in Plaintiffs' Hospitals.

Lastly, NAMI cannot establish third-party standing to bring claims on behalf of civilly committed individuals.  "Federal courts have traditionally been reluctant to grant third-party standing."  *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987).  As the Supreme Court warned in *Singleton v. Wulff*, "[f]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."  428 U.S. 106, 113 (1976).  This is because standing typically requires parties to "assert their own rights rather than rely on the rights or interests of third parties," in order "(1) to avoid adjudicating rights a third-party may not wish to assert; and (2) to ensure effective advocacy."  *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 488 (9th Cir. 1996) (cleaned up).  Thus, there is a presumption *against* third-party standing.  *Miller v. Albright*, 523 U.S. 420, 422 (1998).  This presumption is overcome only if a plaintiff establishes three criteria: (1) injury in fact; (2) a close relation to the third party; and (3) "some hindrance to the third party's ability to protect his or her own interests."  *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

NAMI does not establish any of these elements.  First, the "injury in fact" element requires NAMI to "demonstrate the constitutional prerequisites to standing" in its own right.  *HPG Corp. v. Aurora Loan Servs., LLC*, 436 B.R. 569, 580 (E.D. Cal. 2010).  As discussed above, NAMI cannot establish either organizational or associational standing, so it has no standing in its own right.  Second, NAMI's motion provides insufficient information to determine whether its interests are aligned with the interests of civilly committed patients residing in acute facilities at private hospitals.  As explained in Defendant's recently filed motion to dismiss the SAC, the Ninth Circuit has made clear that this element requires more information

about what remedy Plaintiffs (or, in this case, NAMI) might seek and how that remedy would benefit civilly committed patients. (ECF 128 at 9–16.) NAMI provides no such information. And, third, for the same reasons Defendant discusses in its motion to dismiss the SAC, NAMI has not shown a hindrance to civilly committed persons' abilities to protect their own interests. (*Id.* at 16–18.) NAMI has thus failed to establish third-party standing to bring claims on behalf of civilly committed patients.

C.     **NAMI Is Not Entitled to Intervention as of Right Under FRCP 24(a).**

Apart from the standing problems, NAMI's motion also does meet the elements required for intervention as of right under FRCP 24(a). To establish intervention as a matter of right, NAMI must satisfy four criteria under FRCP 24(a)(2): (1) NAMI must timely move to intervene; (2) NAMI must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) NAMI must be situated such that the disposition of the action may impair or impede its ability to protect that interest; and (4) NAMI's interest must not be adequately represented by existing parties. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (cleaned up). "Failure to satisfy any one of the requirements is fatal to the application, and [the Court] need not reach the remaining elements if one of the elements is not satisfied." *Id.* The proposed intervener "bears the burden of showing that each of the elements is met." *In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, 829 F. App'x. 805, 805 (9th Cir. 2020). NAMI's motion fails three of the four required elements.

First, NAMI has not shown that it or its members (as opposed to civilly committed patients generally) have a "significantly protectable interest" in this litigation. NAMI argues that it "seeks to intervene to assert the rights of its members and constituents, which includes individuals . . . who are or may in the future become subject to civil commitment orders." (Mot. at 11.) But it does not identify what the right or interest is. And, in any event, this just brings us back to NAMI's failure to establish standing. NAMI's vague declaration fails to identify any harm being suffered by NAMI itself or any specific NAMI "member or constituent" whose

Page 9 - DEFENDANT'S OPPOSITION TO NAMI'S MOTION TO INTERVENE

interests will be affected by the outcome of this case. *See Donnelly v. Glickman,* 159 F.3d 405, 410 (9th Cir. 1998) ("An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant."). For the same reasons NAMI fails to establish associational standing, it fails to show any "significantly protectable interest" in this case. *See Doe, next friend of Doe v. Horne*, No. 23-3188, 2024 WL 4119371, at *2 (9th Cir. Sept. 9, 2024) (affirming denial of motion to intervene based on failure to prove "legally protectable interest," because proposed intervenor had "not shown that at least one of its members would have standing to sue in his own right," as required for associational standing) (cleaned up).

Second, since NAMI has not shown that it has a protectable interest in this case, it necessarily follows that it has not established that such an interest cannot be protected without its presence in this case.

Third, NAMI has not established that NAMI's interests will not be adequately protected by Plaintiffs. "If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). NAMI argues that its ultimate objective in this case is the same as Plaintiffs'. But this Court is currently considering whether Plaintiffs can adequately represent the interests of civilly committed patients as part of Defendant's pending motion to dismiss the SAC. If the Court agrees with Defendant that Plaintiffs' interests are not adequately aligned with civilly committed patients, then NAMI may have a better argument that this element is met. If the Court, however, finds that Plaintiffs' interests are sufficiently aligned such that Plaintiffs have third-party standing, then Plaintiffs adequately represent the interests of civilly committed patients and this element fails. Put another way, the Court cannot evaluate whether the "adequate representation" element is met until *after* it resolves the motion to dismiss. For now, NAMI has not established a right to intervene under FRCP 24(a).

/ / /

**D.     NAMI Is Not Entitled to Permissive Intervention under FRCP 24(b).**

NAMI also fails to justify permissive intervention under FRCP 24(b).  A party seeking permissive intervention under FRCP 24(b) must establish, at a minimum, that "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."  *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021).  Even if these elements are met, the Court has "considerable discretion" in determining whether to allow permissive intervention.  *Buffin*, 2016 WL 6025486, at *12 (citing *In re Benny*, 791 F.2d 712, 721–22 (9th Cir. 1986).  Thus, "the court may also consider other factors in the exercise of its discretion, including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties."  *Perry*, 587 F.3d at 955 (cleaned up).  FRCP 24(b)(3) also *requires* that the court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Finally, "[w]here proposed intervenors would present no new questions to the court, conferring amicus status is generally preferred over a grant of permissive intervention."  *Oregon Env't Council v. Oregon Dep't of Env't Quality*, 775 F. Supp. 353, 360 (D. Or. 1991).

NAMI cannot seek permissive intervention because it has not shown "an independent basis for jurisdiction" over its proposed claims.  As discussed above, NAMI has failed to establish standing to assert claims against Defendant, which is required for subject matter jurisdiction in federal courts.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); *Town of Chester, N.Y.*, 581 U.S. at 439.  And because NAMI fails to attach a proposed intervenor complaint laying out its specific claims, the Court and parties have no way to determine whether it has adequately pleaded subject matter jurisdiction.

What's more, even if NAMI had standing and could establish the *required* elements for permissive intervention, the Court should not exercise its discretion to grant NAMI party status now.  NAMI's motion to intervene is premature.  Defendant's motion to dismiss the SAC is pending.  That motion could moot the need to consider NAMI's potential intervention.  Adding

NAMI as a party now will only complicate the current litigation and potentially lead to additional motion practice in the interim. NAMI argues that allowing it to intervene would "alleviate any concerns about third-party standing that OHA may raise against the Hospitals." (Mot. at 13.) But Plaintiffs must independently establish their third-party standing—NAMI's presence does not affect that analysis. *See Wash. Env't. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

Lastly, NAMI does not argue that its claims would present any "new questions" to the court, so NAMI has not overcome the presumption in favor of granting amicus status over intervenor status. *Oregon Env't Council*, 775 F. Supp. at 360. To the extent NAMI wants to present its own arguments and perspectives, it can do so as an amicus—NAMI provides no reason why the Court needs to grant it intervenor status at this time.

## IV.    CONCLUSION

It very well may be that NAMI can establish standing and a right to intervene under FRPC 24 at some point in the future. OHA isn't in a position to know whether NAMI has standing because NAMI has not provided information about who its members are and how they would be affected by this litigation. NAMI's current motion to intervene does not meet its burden under FRCP 24. For the foregoing reasons, therefore, the Court should deny NAMI's motion.[1]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Alternatively, if the Court grants NAMI's motion to intervene, it should order NAMI to file its intervenor complaint within 10 days of entry of the Court's order.

Page 12 - DEFENDANT'S OPPOSITION TO NAMI'S MOTION TO INTERVENE

DATED: November 18, 2024.

        CABLE HUSTON LLP

        s/ Jon W. Monson
        Jon W. Monson, OSB No. 102650
        jmonson@cablehuston.com
        Nicole M. Swift, OSB No. 141419
        nswift@cablehuston.com
        Victoria K. Baker, OSB No. 225400
        vbaker@cablehuston.com
        1455 SW Broadway, Suite 1500
        Portland, OR 97201-3412
        Tele: (503) 224-3092

        *Special Assistant Attorneys General for Defendant Sejal Hathi, MD, in her official capacity as Director of Oregon Health Authority*

        Carla A. Scott, OSB No. 054725
        Senior Assistant Attorney General
        Sheila H. Potter, OSB No. 993485
        Deputy Chief Trial Counsel
        Craig M. Johnson, OSB No. 080902
        Senior Assistant Attorney General
        Trial Attorneys
        Tel (971) 673-1880
        Fax (971) 673-5000
        Carla.A.Scott@doj.state.or.us
        Sheila.Potter@doj.state.or.us
        Craig.M.Johnson@doj.state.or.us

        *Attorneys for Defendants*