**Juan C. Chavez, OSB No. 136428**
Oregon Justice Resource Center
PO Box 5248
Portland, Oregon 97208
Email: jchavez@ojrc.info
Telephone: 503-944-2270
Facsimile: 971-275-1839

**Michael Fuller, OSB No. 093570**
**Nate Haberman, OSB No. 225456**
Underdog Law Office

Of Attorneys for Mental Health Association of Portland

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; [PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM, INC.;** <br>　　　　Plaintiffs, Cross-Defendants <br><br>MENTAL HEALTH ASSOCIATION OF PORTLAND <br>　　　　Plaintiff-Intervenor <br><br>　vs <br><br>**SEJAL HATHI, MD,** in her official capacity as director of Oregon Health Authority; and | Case No. 6:22-cv-01460-AN <br>Case No. 3:02-cv-00339-AN (Lead Case) <br>Case No. 3:21-cv-01637-AN (Member Case) <br><br>**COMPLAINT IN INTERVENTION** <br><br>Demand for Jury Trial |

COMPLAINT IN INTERVENTION – Page 1 of 12

**SARA WALKER**, in her official capacity as Interim Superintendent of the Oregon State Hospital,

Defendants

**1.**

**JURISDICTION, VENUE, AND THE PARTIES**

This Court has jurisdiction under 28 USC §§ 1331(a), 1343 & 1367 because plaintiff brings claims under federal law, and the federal law claims are so related to plaintiffs' state law claims that they form part of the same case or controversy.

**2.**

Venue is proper in the District of Oregon under 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the District of Oregon and because defendants are subject to personal jurisdiction in the District of Oregon.

**3.**

Plaintiff Mental Health Association of Portland ("MHAP") is a Domestic Non-Profit based in Portland, Oregon.

**4.**

The Plaintiffs/Cross-Defendants are not-for-profit corporations licensed to provide hospital and healthcare services. The community hospitals operated by plaintiffs all receive patients who are detained or civilly committed pursuant to Oregon law, as alleged below. Plaintiffs include Legacy Emanuel Hospital & Health

Center (DBA Unity Center for Behavioral Health), Legacy Health, PeaceHealth, Providence Health & Services, and St. Charles Health System, Inc.

5.

Plaintiff/Cross-Defendant Legacy Emanuel Hospital & Health Center (Unity) operates an acute behavioral health hospital in Portland, Oregon. It has 85 adult beds and 22 adolescent beds. Unity provides both emergency and inpatient services to individuals experiencing mental health crises.

6.

Plaintiff/Cross-Defendant Legacy Health operates six hospitals in Oregon.

7.

Plaintiff/Cross-Defendant PeaceHealth operates four hospitals in Oregon. One of those hospitals has a 35-bed acute care behavioral health unit.

8.

Plaintiff/Cross-Defendant Providence Health & Services operates eight hospitals in Oregon. At least four of the hospitals have acute care behavioral units, which combined include 66 adult beds, 19 senior beds, and 22 adolescent beds.

9.

Plaintiff/Cross-Defendant St. Charles Health System, Inc. operates four hospitals in central Oregon.

10.

The hospital Plaintiffs/Cross-Defendants are collectively referred to as the Hospital Corporations in this complaint.

**COMPLAINT IN INTERVENTION – Page 3 of 12**

**11.**

Defendant Segal Hathi, MD is director of OHA, an agency of the State of Oregon and is sued in her official capacity.

**12.**

Defendant Sara Walker is the interim director of the Oregon State Hospital ("OSH"), a facility controlled by the State of Oregon and is sued in her official capacity.

**13.**

Defendants Hathi and Walker will be known collectively as OHA Defendants.

**14.**

## FACTUAL ALLEGATIONS

This complaint's allegations are based on personal knowledge as to plaintiffs' own behavior and made on information and belief as to the behavior of others.

**15.**

Every year, more than 500 people are committed to OSH for treatment every year. These individuals are very ill and require significant care and treatment.

**16.**

As part of Oregon's civil commitment system, the director of OHA may assign or transfer the civilly committed person to any facility which in the opinion of the director, will appropriately meet the mental health needs of the committed person. OAR 309-033-0290(1)(a).

**17.**

As part of the civil commitment process, individuals like members of MHAP are sent to Hospital Corporation facilities which lack sufficient equipment, staff, and procedures to meet their obligations to civilly committed patients.

18.

For example, Hospital Corporations are placing individuals in confined, closed-off, and heavily monitored physical spaces that do not include equipment to accommodate long-term placement care. Hospital Corporations do not provide gym facilities, education and vocational opportunities, extensive outdoor facilities, cafes, markets, or coffee shops, all which are available at OSH.

19.

In late 2021, an individual was taken to one of the Hospital Corporation's community hospitals and was confined in a restrictive setting for over five months. During that time, the individual was only allowed to walk outside his room for 10-15 minutes, could not go outside for fresh air, and was forced to wear scrubs every day.

20.

In late 2021, another individual was placed in a community hospital for more than five months, where he spent his days in a small room crying because he wanted to get out of the hospital.

///

///

21.

**COMPLAINT IN INTERVENTION – Page 5 of 12**

In early 2022, an individual was placed in an acute care hospital and spent 96 hours in seclusion. She remained in a restrictive setting without access to appropriate long-term treatment for more than four months until she was finally transferred to a secure residential treatment facility on November 17.

22.

In spring of 2022, an individual was committed to one of the Hospital Corporations community hospitals where she was put in the most restrictive setting possible for more than four months, while pregnant.

23.

The Hospital Corporations wish to use resources that could be directed towards civil commitments to other patients.

24.

Defendants Hathi and Walker have been on notice from the present suit and *Disability Rights Oregon, et. al. v. Hathi, et. al.*, Case No. 3:02-cv-00339 (D. Or. 2002) regarding the deficiencies of Oregon's mental health care system.

25.

Plaintiff MHAP was founded in 2003 by Roy Silberstein, MLS, a person with schizophrenia who died in 2014 after a long stay at the Oregon State Hospital. MHAP represents the interests of people with mental illness in statehouses with legislative advocacy, in state and Federal courtrooms, on the curbside with media, and at the bedside with urgent care management.

26.

With an agenda of uncompromising advocacy, the organization has relied on providing educational programs for financial support organized by board members and volunteers and made for clinicians, public policy administrators, attorneys, public housing administrators, and law enforcement.

27.

MHAP provides two distinct services to its community. The first is advocacy on behalf of people with severe and persistent mental illness ("SPMI") in a variety of complex legal, political, and legislative campaigns. Advocacy for the organization is closely guided by Board members, advisors, and select supporters of the organization who have SPMI. The second service is professional education for clinicians and attorneys about the welfare of people with SPMI. Educational programming is designed by both people with a SPMI and professionals in the fields of practical social work, law enforcement, and forensic psychiatry. The organization maintains a separate Education Planning Committee of professionals to assist in its programming.

28.

The MHAP Board has designated an Advisory Council to include persons the organization supports in their own work as advocates and educators. The Board itself is comprised of nine people, seven of whom identify as persons with mental illness and two with family members who have mental illness. Three of the board members are attorneys who represent people with mental illness in civil commitment hearings.

**COMPLAINT IN INTERVENTION – Page 7 of 12**

29.

Based on their experience, both personal and professional, MHAP advocates for remedies germane to this case. These remedies include structural remedies to reduce the necessity of civil commitment, such as step-up and step-down facilities, respite homes, acute detoxification, secure residential treatment facilities, and transitional housing. Remedies also include expansion and development of existing but severely limited programming, such as mobile crisis teams, assisted outpatient treatment, outpatient restoration to competency, and residential voluntary psychiatric treatment.

## CLAIM

30.

**CLAIM ONE**: VIOLATION OF DUE PROCESS CLAUSE
(Fourteenth Amendment — 42 U.S.C. § 1983)

Plaintiff MHAP incorporates the above paragraphs.

31.

Plaintiff MHAP brings this claim on behalf of the hospital patients in the Hospital Corporations' facilities currently having their due process rights violated.

32.

These patients have a liberty interest in clinically appropriate long term mental health treatment at an appropriate facility. Because of the actions and inactions of the Hospital Corporations and OHA Defendants, patients are languishing in clinically inappropriate health care settings.

33.

**COMPLAINT IN INTERVENTION – Page 8 of 12**

Defendants' conduct shocks the conscience and violates the Due Process clause.

**34.**

Accordingly, Plaintiff MHAP seeks injunctive relief, as described below, to cure this constitutional deprivation, and attorney's fees.

**35.**

**CLAIM TWO**: VIOLATION OF AMERICANS WITH DISABAILITIES' ACT
(*Olmstead* Claim—A.D.A.)

Plaintiff MHAP incorporates the above paragraphs.

**36.**

In *Olmstead v. Zimring*, 527 U.S. 581, 602 (1999), the Supreme Court held that "[u]njustified isolation . . . is properly regarded as discrimination based on disability." (Interpreting 42 U.S.C. § 12132 and CFR 35.130).

**37.**

By virtue of the ADA and the *Olmstead* decision, patients have a federally protected right to receive sound recommendations from treating professionals as to whether community placement is the most appropriate to meet their needs and to fair consideration of their opposition to that transfer, even if the proposed transfer is from institutional care to an allegedly less restrictive setting.

**38.**

Pursuant to 42 U.S.C. § 12134, OHA Defendants are under a constitutional and statutory duty to: effectuate the placement of Plaintiffs in the "most integrated

**COMPLAINT IN INTERVENTION – Page 9 of 12**

setting appropriate to the needs of qualified individuals with disabilities," a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible" (28 C.F.R. pt. 35 app. A.); and not place Plaintiffs in more restrictive or dangerous placements than they currently enjoy.

**39.**

The Hospital Corporation Defendants are "places of public accommodation" under 42 U.S.C. § 12181(7)(F) (public accommodations include a "hospital") and are bound by 42 U.S.C. § 12182 prohibiting discrimination in places of public accommodation. Hospital Corporation Defendants are required to provide their "goods, services, facilities, privileges, advantages, and accommodations . . . to an individual with a disability in the most integrated setting appropriate to the needs of the individual." *See also* 28 C.F.R. § 36.203.

**40.**

Pursuant to 42 U.S.C. § 12134, Defendants are under a constitutional and statutory duty to: effectuate the placement of Plaintiffs in the "most integrated setting appropriate to the needs of qualified individuals with disabilities," a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible" (28 C.F.R. pt. 35 app. A.); and not place Plaintiffs in more restrictive or dangerous placements than they currently enjoy.

**41.**

**COMPLAINT IN INTERVENTION – Page 10 of 12**

As described above, Defendant Hospital Corporations and Defendant OHA Defendants have been keeping long term patients in conditions that violate these provisions.

42.

Accordingly, Plaintiff MHAP seeks injunctive relief, as described below, to cure this constitutional deprivation, and attorney's fees.

43.

**RELIEF REQUESTED**

**WHEREFORE Plaintiff prays for judgment as follows:**

A. Issue a Declaratory Judgment stating that Defendants violated Plaintiff's Due Process rights in violation of the Fourteenth Amendments to the United States Constitution and the Americans with Disabilities Act.

B. Issue an Injunction ordering defendants and their agents to immediately:

1. Create alternatives for persons in mental health crisis such as step-up and step-down facilities, respite homes, acute detoxification, secure residential treatment facilities, and transitional housing.

2. Expand and develop existing but severely limited programming, such as mobile crisis teams, assisted outpatient treatment, outpatient restoration to competency, and residential voluntary psychiatric treatment.

3. Cease the unconstitutional practice of placing patients in inadequate facilities for long term placement.

C. Award reasonable costs and attorney fees, pursuant to 42 U.S.C. § 1988.

**COMPLAINT IN INTERVENTION – Page 11 of 12**

D.  Grant such other relief as this court deems just and equitable.

December 6, 2024

**RESPECTFULLY FILED,**

s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Of Attorneys for Plaintiff MHAP

*LEAD ATTORNEY*

Michael Fuller, OSB No. 093570
Nate Haberman, OSB No. 225456
Underdog Law Office
Of Attorneys for Plaintiff MHAP

*LEAD ATTORNEY*

**COMPLAINT IN INTERVENTION – Page 12 of 12**