

December 6, 2024

**VIA EMAIL ONLY**

Carla Scott, Assistant Attorney General
Oregon Department of Justice, Special Litigation Unit
100 SW Market
Portland OR 97201

Carla.A.Scott@doj.oregon.gov

**RE: Mediation Process for *Disability Rights Oregon v. Hathi*; Proposal Subject to Oregon and Federal Rule of Evidence 408**

Carla:

The plaintiffs have had numerous conversations over the past months about compliance in this matter. Following these conversations, DRO would like to know if your clients will consent to an enforcement court order requiring the following:

1) **Discharge of Aid-and-Assist Detainees.** By February 1, 2025, the State Defendants shall discharge from the Oregon State Hospital every aid-and-assist patient deemed ready to place or ready to transfer, or otherwise no longer requiring hospitalization ("ready to place"), within 30 days of this clinical determination;
    a. As a corresponding element of this requirement, the State Defendants must use at least an equal level of rigor and care in defining who is deemed ready to place as used prior to December 1, 2024;
    b. Wherever a patient deemed ready to place under this section has neither been actually discharged from the hospital nor had a discharge placement developed within 14 days of being deemed ready to place, the State Defendants will convene a special discharge planning process to speed and problem solve the discharge process;
    c. State Defendants shall make available further incentive funds of up to $15,000 per month for any patient described in (1)(b) above, to induce community placements to accept those patients;
    d. While state courts will have the opportunity to review and participate in the discharge process, a patient deemed ready to place under this section shall be discharged to the community within that 30-day window, without regard to whether a state court order has issued authorizing that release;
    e. This order shall supersede any state court orders seeking to impede, discourage, or prohibit the discharge of patients from the state hospital under this section;
    f. Compliance with all elements of this section shall be assessed by the Neutral Expert on an ongoing basis.
2) **Discharge of PSRB Detainees.** By February 1, 2025, the State Defendants shall discharge from the Oregon State Hospital every patient held under PSRB authority and deemed ready

to place or ready to transfer, or otherwise no longer requiring hospitalization ("ready to place") within 60 days of this clinical determination;
   a. As a corresponding element of this requirement, the State Defendants must use at least an equal level of rigor and care in defining who is deemed ready to as used prior to December 1, 2024;
   b. Wherever a patient deemed ready to place under this section has neither been actually discharged from the hospital nor had a discharge placement developed within 14 days of being deemed ready to place, the State Defendants will convene a special discharge planning process to speed and problem solve the discharge process;
   c. State Defendants shall make available further incentive funds of up to $15,000 per month for any patient described in (2)(b) above, to induce community placements to accept those patients;
   d. State Defendants shall, by December 31, 2025, develop increased community-based resources sufficient to serve 50 more PSRB patients in non-hospital settings.
   e. State Defendants shall expedite all elements of the process of conditional release partially or fully under its control, including evaluation, discharge planning, scheduling, and logistics for any hearing.
   f. While the PSRB will have the opportunity to review and participate in the discharge process, a patient deemed ready to place under this section shall be discharged to the community within that 60-day window, without regard to whether a PSRB order has issued authorizing that release;
   g. This order shall supersede any state court or PSRB orders seeking to impede, discourage, or prohibit the discharge of patients from the state hospital under this section;
   h. Compliance with all elements of this section shall be assessed by the Neutral Expert on an ongoing basis.

3) **Community Restoration Services.** By February 1, 2025, State Defendants shall require all CMHPs by any legal means, including through the State Defendants' regulatory, contractual, or spending authorities, to comply with the timelines on community restoration described in this section for individuals found unable to aid and assist.
   a. For individuals whose most serious charge is a misdemeanor, the following limits apply:
      i. Community-based restoration shall not extend beyond 90 days in total.
   b. For individuals whose most serious charge is a felony not otherwise described below, the following limits apply:
      i. Community-based restoration shall not extend beyond 180 days in total,
      ii. Total time in hospital and community-based restoration services shall not exceed 240 days of total restoration, if the individual has previously been subject to hospital-based restoration in the same case.
   c. For individuals whose most serious charge is "violent felony" described in ORS 135.240(5), the following limits apply:
      i. Community-based restoration shall not extend beyond 365 days in total,
      ii. Total time in hospital and community-based restoration services shall not exceed 425 days of total restoration, if the individual has previously been subject to hospital-based restoration in the same case.
   d. State defendants shall not admit to the state hospital any patient found unable to assist who has already been in community restoration on the same case for more

2

   than 60 days.
   e. State defendants shall not allow any use of state funding, state grants, or contractual money to fund community-based restoration inconsistent with this article.
4) **CMHP Contracting**. By March 1, 2025, State Defendants shall revise, clarify, or renegotiate all contracts with CMHPs to ensure that:
   a. Not less than 25% of all funding to CMHPs shall go to community-based restoration, jail diversion, hospital diversion, or other preventive mental health services reasonably calculated to improve community-based mental health services for patients at risk of psychiatric hospitalization;
   b. Barriers to adequacy of community-based mental health care or continuity of care between the state hospital and community mental health services shall be eliminated, including but not limited to:
      i. limited drug formularies or otherwise restricted prescription drug coverage;
      ii. procedural obstacles in obtaining mental health care, medications, or other relevant supports and services;
      iii. inadequacy of coverage for substance use disorder medications; and
      iv. refusal to provide services for co-occurring substance abuse, developmental or intellectual disabilities, or traumatic brain injuries.
   c. State Defendants must conduct an audit by July 31, 2025 of all CMHP funding to document whether and to what extent the use of funds by CMHPs are efficacious in preventing hospitalization, incarceration, or rearrest.
   d. CMHP must demonstrate by December 31, 2026 the efficacy of the services discussed in section (4)(a) above, by showing that the rate of hospitalization of individuals with mental illness within its service area (as measured by a running 12-month average of the rate of psychiatric hospitalizations per 1,000 people in the service area) either is
      i. Below the state average, or
      ii. Has declined more than 10% in the CMHP's service area since December 1, 2024.
   e. Any CMHP not meeting the standards enunciated in section (4)(d) as of December 31, 2026 (or by December 31 of any succeeding calendar year) shall be placed on a performance plan adequate to ensure that it meets the standards described in this section by December 31 of the following year.
   f. Every CMHP cooperates with the State Defendants in planning and service provision for people in the Aid and Assist and PSRB population and people at risk of psychiatric hospitalization.
   g. State Defendants' efforts under this section shall be informed by the Neutral Expert's opinions.
5) **CCO Contracting.** By March 1, 2025, State Defendants shall revise, clarify, or renegotiate all contracts with CCOs to ensure that:
   a. Barriers to adequacy of community-based mental health care or continuity of care between the state hospital and community mental health services shall be eliminated, including but not limited to:
      i. limited drug formularies or otherwise restricted prescription drug coverage;
      ii. procedural obstacles in obtaining mental health care, medications, or other relevant supports and services;
      iii. inadequacy of coverage for substance use disorder medications; and

3

- iv. refusal to provide services for co-occurring substance abuse, developmental or intellectual disabilities, or traumatic brain injuries.
    - b. Every CCO adequately protects and promotes community-based mental health services within its service area and population served.
    - c. Every CCO's practices and policies robustly ensure that people in the Aid and Assist and PSRB population can find and maintain appropriate placements and services.
    - d. Every CCO cooperates with the State Defendants in planning and service provision for people in the Aid and Assist and PSRB population and people at risk of psychiatric hospitalization.
    - e. State Defendants' efforts under this section shall be informed by the Neutral Expert's opinions.
6) **Exclusion of Certain Detainees from Hospital Confinement.** The enforcement order shall prohibit placement at OSH of defendants found unable to aid and assist, in the absence of any pre-trial felony charge in an Oregon state court or in federal court. This order will prohibit the placement of detainees at the hospital on the basis of misdemeanor charges, municipal court charges, extradition proceedings, or probation violations.
7) **Evaluation.** By February 1, 2025, State Defendants shall ensure adequate and prompt evaluation of detainees in the state hospital, in community restoration, or at risk of placement in the state hospital at all stages of proceedings and for all purposes that might prevent placement in the hospital, facilitate discharge from the hospital, or document the restoration of a detainee to competency.
    - a. State Defendants must hire adequate evaluators to conduct required assessments, including at minimum three full-time evaluators. State Defendants shall continue to assess whether those evaluators are sufficient and hire more evaluators as indicated.
    - b. State Defendants shall coordinate a centralized forensic examination process to ensure the prompt resolution of ordered evaluations pursuant to ORS 161.365 and 161.370, as well as for patients in community restoration and GEI patients.
    - c. State Defendants shall adopt a protocol for forensic examination that shall provide expedited processes consistent with the recommendations of the neutral expert.
    - d. State Defendants shall adopt a protocol for forensic examination that adequately assesses and captures the pragmatic likelihood of any future restoration.
8) **Placement Array.** State Defendants shall agree to create a network of adequate placements, services, and housing options in Oregon ("Placement Array"), sufficient to permit long-term compliance with the permanent injunction in this matter.
    - a. The Placement Array described in this section shall ensure that individuals facing or at risk of psychiatric hospitalization have access to a wide array of placements, reasonably calculated to afford patients the most integrated and least restrictive setting for treatment and care.
    - b. The Placement Array shall include independent housing and supportive housing services.
    - c. The State Defendants shall pay for a contractor that shall, under the supervision and at the direction of the Neutral Expert, examine the relevant data and information. The contractor shall issue an opinion by April 15, 2025 as to the scope and nature of the Placement Array, as well as a reasonable assessment of the projected costs of creating and maintaining the placement and service array.
    - d. State Defendants agree to be bound by this opinion.
    - e. By July 15, 2025, State Defendants shall present to the court a detailed and

4

sufficient plan, including identified sources of funding sufficient to support the plan.
  f. If the State Defendants fail to present such a plan or the court determines the plan fails to meet the standards articulated under the plan, the court shall impose a daily fine on the State Defendants, in an amount sufficient to amass a fund by December 31, 2025 adequate to fund the creation of the Placement Array described above.
  g. State Defendants waive any claims or defenses to dispute the imposition or amount of the fines under this section, except that the State Defendants may allege that the court's findings violated the terms of this agreement or were otherwise against the weight of the evidence.
  h. The court shall continue to impose the fines under this section until the neutral expert concludes that the State Defendants are in compliance with the permanent injunction and likely to remain in compliance indefinitely.

9) **Compliance with Agreement**. The Court shall issue an enforcement order consistent with this agreement, and the terms of this agreement shall be in force at least until December 31, 2025. At the end of each 12-month period, the Court shall renew the remedial order, unless the Neutral Expert finds that State Defendants have been in compliance with the permanent injunction for at least six consecutive months and that the failure to renew the enforcement order shall not cause the State Defendants to fall out of compliance.
  a. At any time after December 31, 2025, Defendants may ask the Court to amend the enforcement order to strike out any element of the agreement, provided that the Neutral Expert concurs that the rescission of that element will not negatively affect, slow, or impair the State Defendants' compliance with the permanent injunction.
  b. The Neutral Expert shall be charged with opining on compliance with every element of this Settlement Agreement. The Neutral Expert shall seek aid from other appropriate experts as needed.
  c. If a dispute arises regarding any element of this agreement, either Plaintiff, the State Defendants, or the Neutral Expert may seek the assistance of Judge Stacie Beckerman (or a successor magistrate or judge) in mediation of the dispute.

10) **Defendants' Support of Enforcement**. State Defendants agree to take all reasonable steps to foster the aims of this agreement.
  a. State Defendants agree to make all reasonable steps to pursue appropriate funding from the state legislature as needed or appropriate to fulfill this agreement.
  b. State Defendants agree to hire staff or contract for services necessary to promote compliance with this agreement.
  c. State Defendants agree to pay reasonable fees for the ongoing supervision of this case by the Neutral Expert, including to allow her to contract for and hire supports or secondary experts as needed.
  d. State Defendants agree to pay reasonable attorney's fees and costs to Plaintiffs' counsel for all work undertaken to obtain this agreement, to monitor this agreement, and to enforce this agreement.

11) **Assessment of Fines.** Beginning on the first Sunday following the entry of the enforcement order, and assessed each Sunday afterwards, the District Court shall assess against the State Defendants a fine of $250,000 each week during which any aid-and-assist detainee is delivered to the state hospital after spending more than 7 days in jail after being found unable to aid and assist.
  a. The funds assessed against the State Defendants shall be placed in an escrow account (or other similar account as directed by the District Court) until December 31, 2025.

    b. If the State Defendants regain sustained compliance with the permanent injunction by December 31, 2025, the funds shall be returned to the Defendants.
    c. If the State Defendants remain noncompliant with the permanent injunction on December 31, 2025, the funds shall be released to the court, for use for the benefit of the affected parties as further directed by the court.
    d. After December 31, 2025, the Court shall continue to assess fines against the Defendants for each week in which at least one aid-and-assist detainee spends more than 7 days in jail after being found unable to aid and assist.
        i. If, at any point, the State Defendants remain in compliance with the permanent injunction for six months straight, all fines accrued to date in that calendar year shall be returned to the state.
        ii. On December 31 of each succeeding calendar year, the fines remaining in the escrow account shall be disbursed by the court, for use for the benefit of the affected parties as further directed by the court.
        iii. If State Defendants remain in compliance with the permanent injunction for 12 months continuously, the assessment of fines shall end.
    e. Fines assessed under Section 8(f) above may be greater than or in addition to fines assessed under this Section.

Sincerely,

_____/s/_____
Thomas Stenson