**Behavioral Health Division**

Licensing & Certification Unit



# Memorandum

**To:** BHD Residential Treatment Providers
Community Mental Health Programs

**From:** Connie Rush, Mental Health Licensing & Certification Manager

**Date:** January 21, 2025

**Subject:** OAR 309, Division 35 Temporary Rules

Effective January 17, 2025, the Oregon Health Authority is proposing changes to the Oregon Administrative Rule (OAR) 309, division 035 related to licensure of Residential Treatment Homes (RTH), Residential Treatment Facilities (RTF), and Secure Residential Treatment Facilities (SRTF). Please click on the link below to access the rule changes.

**Bulletin link:** https://www.oregon.gov/oha/hsd/pages/mental-health-rules.aspx

## Why is this happening?

Changes to OAR 309-035-0163 were necessary to ensure compliance with Federal court orders related to United States District Court Case No. 3:02-cv-00339-MO and Case No. 3:21-cv-01637-MO. These changes are necessary to remove barriers to the expeditious placement of persons transitioning from or could be committed to the Oregon State Hospital. OHA's failure to act promptly will result in serious prejudice to forensic populations with mental illness who have a right to access an appropriate level of treatment whether that is at OSH or in a less restrictive, more integrated setting in the community. This rule would prioritize community placements for discharges from OSH and the forensic population.

Additionally, changes were made to management of waitlists. These changes are necessary to focus on realistic placement options and placement to occur more rapidly. OHA's failure to act promptly to modify the minimum waitlist numbers for community placements would seriously prejudice potential residents by giving those on the waitlist an unrealistic expectation that they will be admitted.

500 Summer St NE, E86, Salem, Oregon, 97301 | Voice: 800-527-5772 | Fax: 503-378-8467
TTY: 711 - All relay calls accepted | www.oregon.gov/OHA/HSD

Van Rysselberghe Decl. Ex. 1
Page 1 of 8

**Changes**

Changes to the rules include:

(15) Management of waitlists includes the following:

  (d) The program must prioritize admissions on a waitlist as follows:

    (A) The program must give first priority consideration to each of those prospective residents who are seeking to transition from the Oregon State Hospital into the community and are:

      (i) A candidate for court-ordered community restoration as an aid and assist defendant pursuant to ORS chapter 161; or

      (ii) Found guilty except for insanity of a criminal offense and is currently under the jurisdiction of the Psychiatric Security Review Board pursuant to ORS 161.327.

    (B) The program must give second priority consideration to each of those prospective residents who are seeking to transition from the Oregon State Hospital into the community and are under a current civil commitment, voluntary by guardian, or extremely dangerous person commitment pursuant to ORS chapter 426.

    (C) The program must give third priority consideration for admission to those prospective residents seeking admission to programs:

      (i) A candidate for court-ordered community restoration as an aid and assist defendant who is eligible for commitment to Oregon State Hospital pursuant to ORS chapter 161; or

      (ii) A candidate for court-ordered conditional release who has been found guilty except for insanity of a criminal offense and will be placed under the jurisdiction of the Psychiatric Security Review Board pursuant to ORS 161.327; or

      (iii) A candidate for court-ordered commitment to a facility designated by OHA and who is found guilty except for insanity of a criminal offense pursuant to ORS 161.328.

500 Summer St NE, E86, Salem, Oregon, 97301 | Voice: 800-527 | Fax: 503-378-8467
TTY: 711 - All relay calls accepted | www.oregon.gov/OHA/HSD

**Van Rysselberghe Decl. Ex. 1**
**Page 2 of 8**

(D) The program must give fourth priority consideration to those prospective residents seeking admissions to programs:

(i) As an alternative to or to prevent civil commitment or placement at the Oregon State Hospital; or

(ii) For the purpose of transitioning from a program or a secure residential treatment facility; or

(iii) For the purpose of transitioning from a community hospital to a community placement.

(E) The program must give fifth priority consideration to those prospective residents who do not meet the criteria establish in subsection (14)(d)(A), (B), (C) or (D) of this rule.

(g) The program may close their waitlist if there are five (5) or more prospective residents on the waitlist. When the waitlist is closed, the provider is not required to accept referrals, conduct screenings, or evaluate additional persons for admissions who are not already on the waitlist.

(h) Waitlists must be opened any time there are less than five (5) prospective residents.

## Questions

If you have questions, please contact your assigned compliance specialist or the Mental Health Licensing & Certification Team at HSD.MH.ComplaintsTA@oha.oregon.gov.

| OFFICE OF THE SECRETARY OF STATE<br>TOBIAS READ<br>SECRETARY OF STATE<br><br>MICHAEL KAPLAN<br>DEPUTY SECRETARY OF STATE |  | ARCHIVES DIVISION<br>STEPHANIE CLARK<br>DIRECTOR<br><br>800 SUMMER STREET NE<br>SALEM, OR 97310<br>503-373-0701 |
|---|---|---|

# TEMPORARY ADMINISTRATIVE ORDER
INCLUDING STATEMENT OF NEED & JUSTIFICATION

**BHS 1-2025**

CHAPTER 309
OREGON HEALTH AUTHORITY
HEALTH SYSTEMS DIVISION: BEHAVIORAL HEALTH SERVICES

**FILED**
01/17/2025 2:37 PM
ARCHIVES DIVISION
SECRETARY OF STATE
& LEGISLATIVE COUNSEL

FILING CAPTION: Removes barriers to expeditious placement of person transitioning to or from OSH

EFFECTIVE DATE: 01/17/2025 THROUGH 06/29/2025

AGENCY APPROVED DATE: 01/17/2025

| CONTACT: Connie Rush<br>503-559-5795<br>connie.l.rush@oha.oregon.gov | 500 Summer St, NE<br>SALEM,OR 97301 | Filed By:<br>JUAN RIVERA<br>Rules Coordinator |
|---|---|---|

NEED FOR THE RULE(S):

These emergency rule changes will remove barriers to the expeditious placement of persons transitioning from or could be committed to the Oregon State Hospital. OHA's failure to act promptly will result in serious prejudice to forensic populations with mental illness who have a right to access an appropriate level of treatment whether that is at OSH or in a less restrictive, more integrated setting in the community. This rule would prioritize community placements for discharges from OSH and the forensic population. Currently, there is a lengthy waitlist for admission to OSH for the forensic population. Adopting this rule now would substantially reduce the waitlist, allowing the forensic population with mental illness to access appropriate levels of treatment in the hospital or community more quickly.

In addition, OHA's failure to act promptly to modify the minimum waitlist numbers for community placements would seriously prejudice potential residents by giving those on the waitlist an unrealistic expectation that they will be admitted. This will allow potential residents and referral agencies to focus on realistic placement options and placement to occur more promptly.

JUSTIFICATION OF TEMPORARY FILING:

(1)   Describe the specific consequences that result from the failure to immediately adopt, amend or suspend the rule(s). Failure to implement these emergency rules changes will result in barriers remaining in place and individuals with mental illness not receiving the treatment they need. Additionally, failure to implement these emergency rule changes will result in the Oregon Health Authority not being compliant with Federal Court Orders.

(2) Who would suffer these consequences.
Individuals with mental health illness currently awaiting treatment in jail, individuals in the Oregon State Hospital currently awaiting community placement.

(3) Why or how failure to immediately take rulemaking action would cause these consequences;
OHA could be found non-compliant of the Federal Court Order and in-contempt of court.

(4) How the temporary action will avoid or mitigate those consequences.

Page 1 of 5

Van Rysselberghe Decl. Ex. 1
Page 4 of 8

These rules provide clarity on the screening, admissions and waitlist processes to ensure all referrals are screened and responded to timely and that individuals on waitlists are admitted in the order they were placed on the waitlist, preventing anyone from jumping to the top of the list and by-passing those who have been waiting.

DOCUMENTS RELIED UPON, AND WHERE THEY ARE AVAILABLE:

AMEND: 309-035-0163

SUSPEND: Temporary 309-035-0163 from BHS 35-2024

RULE SUMMARY: Refilled for clarity to replace the other emergency rules, These changes clarify requirements for confidential information authorizations and anti-discrimination admissions practices.

CHANGES TO RULE:

309-035-0163
Admission to Program ¶

(1) The provider shallmust ensure the admission process includes the following:¶
(a) The provider shallmust specify in its admission policy and procedures the program staff responsible for each component of the admission information-gathering and decision-making process. The program shallmust allocate responsibilities to promote effective processing of referrals and admissions.¶
(b) The provider shallmust develop and implement admission policies and procedures that take into consideration; the placement of individualprospective residents by a supervisory authority under ORS chapters 161 or 426 or by the informed consent of the individualprospective resident's legal representative, the ability of the program to meet the service needs of both the individualprospective resident and current residents of the facility, and the prospective individualresident's right to select and choose from available service settings when the individualprospective resident has the capacity to engage in the treatment programs offered by the facility. An individual prospective resident under civil commitment has the right to appeal the placement by the OHA designee as outlined in OAR 309-033-0290(5).¶
(c) The provider shallmust support the individualprospective resident's right to select a program by assisting the person-centered service plan coordinator in identifying and documenting program options in the person-centered service plan, including providing information regarding program services and rates. The individualprospective resident's right to select a service setting may be limited by a court, OHA, CMHP, or PSRB order under ORS chapters 161 or 426, or by the informed consent of the individualprospective resident's legal representative.¶
(d2) The provider may close admissions to the program when accepting an additional prospective individual may cause the program to exceed its reasonable waitlist. When admissions are closed, the provider is not required to accept referrals, conduct screenings, or evaluate admissions criteria as directed by these rules.Unless limited by contractual agreement with the Division or other Division-approved party, the program must accept and process referrals from:¶
(a) Oregon Health Authority or its designee;¶
(b) Hospitals;¶
(2c) Unless limited by contractual agreement with the Division or other Division-approved party, the program may accept referrals from a variety of sourcCounty Mental Health Programs;¶
(d) Licensed Residential Facilities and Homes; and¶
(e) Licensed Adult Foster Homes.¶
(3) In accordance with ORS 179.505 and the 42 CFR, Part 2, the program shall obtain an authorization for the release of information for disclosure for any confidential information concerning a prospective individual.¶
(4) The provider shallmust consider an individual for admission without regard to prospective resident for admission and not discriminate based on race, color, sex, gender or sexual orientation, except as may be limited by room arrangement, religion, creed, national origin, age, except under 18 years, familial status, marital status, source of income, cultural identity, socioeconomic status, or disability in addition to the mental health disordercondition or other protected classes.¶
(5) Prior to accepting an individual prospective resident for admission to the program, the program administrator shallmust determine that the individuale prospective resident meets admission criteria including the following:¶
(a) The provider shallmust offer each individualprospective resident referred for placement at the program an

Page 2 of 5

Van Rysselberghe Decl. Ex. 1
Page 5 of 8

opportunity to participate in a screening interview prior to being accepted or denied placement at a program. The screening is intended to provide information about the program and the services available as well as to obtain information from the prospective ~~individual~~resident, a relative, and agencies currently providing services to the ~~individual~~prospective resident sufficient to determine eligibility for admission and service needs; and¶
(b) The provider ~~shall~~must receive screening packets for each ~~individual~~prospective resident referred for placement. At a minimum, screening packets ~~shall~~must include:¶
(A) Written documentation that the prospective ~~individual~~resident has or is suspected of having a mental health ~~disorder~~condition;¶
(B) Background information including a current mental health assessment, description of previous living arrangements, service history, behavioral ~~issue~~support needs, and service needs;¶
(C) Medical information including a brief history of any health conditions, documentation from a Licensed Medical Professional or other qualified health care professional of the ~~individual~~prospective resident's current physical condition, and a written record of any current or recommended medications, treatments, dietary specifications, and aids to physical functioning;¶
(D) Copies of ~~documents or other~~ documentation relating to guardianship, conservatorship, commitment status, advance directives, declaration of mental health treatment, conditions of placement if on a trial visit or outpatient commitment, or any other legal restrictions or jurisdiction;¶
(E) A copy of the prospective individual's most recent mental health treatment plan or in the case of an emergency or crisis-respite admission a summary of current mental health treatment involvement; and¶
(F) Documentation of the prospective ~~individual~~resident's ability to evacuate ~~the~~a building ~~consistent with the facility's designated evacuation capability~~with or without assistance consistent with OAR 309-035-0145(5)(b) and within three minutes, and other concerns about potential safety risks.¶
(c) The provider ~~shall~~must ensure that screenings be conducted at the prospective program setting unless:¶
(A) Travel arrangements cannot be made due to inclement weather; or¶
(B) The ~~individual or~~prospective resident or their legal representative requests a phone screening or screening at the ~~individual~~prospective resident's current location.¶
(d) The provider ~~shall~~must contact the referring agency to schedule a screening appointment within 48 hours of receipt of the referral packet;¶
(e) The provider ~~shall~~must coordinate with the referring agency to schedule a screening appointment to occur within 14 calendar days from the date of receipt of the referral packet;¶
(f) The provider ~~shall~~must provide the following to each ~~individual~~prospective referred for placement:¶
(A) Materials explaining conditions of residency;¶
(B) Services available to ~~individuals~~resident residing in the program; and¶
(C) An opportunity to meet with a prospective roommate if the program uses a shared room model.¶
(g) The screening meeting ~~shall~~must include the program administrator, the prospective ~~individual, and the individual's representativ~~resident, and the prospective resident's legal representative, if applicable. With the consent of the prospective ~~individual or the individual~~resident or the prospective resident's legal representative, the meeting may also include family members, ~~other representatives as appropriate,~~ representatives of relevant service-providing agencies, and others with an interest in the ~~individual~~prospective resident's admission.¶
(6) If a~~n individual~~ prospective resident is referred for emergency ~~or crisis-respite~~ admission, an amended or abbreviated screening process may be used to more quickly meet the needs of the ~~individual~~prospective resident. Screening and admission information obtained may be less comprehensive than for regular admissions but ~~shall~~must be sufficient to determine th~~at the individual~~e prospective resident meets admission criteria and that the setting and program is appropriate considering the ~~individual~~prospective resident's needs. The program ~~shall~~must document the reasons for incomplete information.¶
(7) Prior to admission, the provider ~~shall~~must evaluate and determine whether a prospective individual is eligible for admission based on the following criteria. The ~~individual shall~~prospective resident must:¶
(a) Be assessed to have a mental health disorder or a suspected mental health disorder;¶
(b) Be at least 18 years of age;¶
(c) Not require continuous nursing care unless a reasonable plan to provide the care exists, the need for residential treatment supersedes the need for nursing care, and the Division approves the placement;¶
(d) Have evacuation capability consistent with the setting's ~~SR~~ occupancy classification with or without assistance as described in OAR 309-035-0145(5)(b); and¶
(e) Meet additional criteria required or approved by the Division through contractual agreement or condition of licensing.¶
(8) For admission to an SRTF, the provider ~~shall~~must also evaluate and determine whether a prospective ~~individual~~resident is eligible for admission, based on the ~~individual~~prospective resident meeting all criteria in OAR 410-172-0720(7).¶
(9) The provider may only deny a~~n individual~~ prospective resident admission to its program for the following

Page 3 of 5

Van Rysselberghe Decl. Ex. 1
Page 6 of 8

reasons:
(a) Failure to meet admission criteria established by these rules;
(b) Inability to pay for services due to lack of presumed Medicaid eligibility or other funds;
(c) Documented instances of behaviors within the last 14 calendar days of receipt of the referral packet that would pose a reasonable and significant risk to the health, safety, and well-being of the ~~individual~~prospective resident or another individual, if the ~~individual~~prospective resident is admitted;
(d) Lack of availability of necessary medical services required to maintain the health and safety of the ~~individual (no nursing, etc.) or lack of an opening at the setting; or~~
~~(e) The individual declines the offer for screening~~prospective resident and those services cannot be reasonably arranged; or
(e) The prospective resident declines the offer for screening, unless the placement of the prospective resident is by a supervisory authority under ORS chapters 161 or 426 or by the informed consent of the prospective resident's legal representative.
(10) The provider may not deny an ~~individual~~ prospective resident admission to its program as follows:
(a) Prior to offering a face-to-face screening or other screening process as allowed by these rules unless the program waitlist is currently closed as outlined in subsection (15)(g) of this rule; or
(b) Due to county of origin, responsibility, or residency.
~~(11) The provider's admission decision shall be made as follows:~~
~~(a; or~~
(c) Due to supervisory entity.
(11) The pro~~gram~~vider's decision ~~shall~~must be based on review of screening materials, information gathered during the face-to-face screening meeting, and evaluation of the admission criteria;
(~~b~~12) The program ~~shall~~must inform the prospective ~~individual, and the individual~~resident, and the prospective resident's legal representative, supervisory entity, and referring entity, as applicable, of the admission decisions within 72 hours of the screening meeting~~;~~.
(~~c~~13) When the program denies admission, the program shall provide written notification to the ~~individual and the individual~~prospective resident and the prospective resident's legal representative, supervisory entity, and referring entity, as applicable, of the specific basis for the decision and the ~~individual~~prospective resident's right to appeal the decision;
(~~d~~14) When the program approves admission, the program ~~shall~~must inform the ~~individual and the individual~~prospective resident's and the prospective resident's legal representative, supervisory entity, and referring entity, as applicable, through an acceptance notification that ~~shall~~must include:
(~~A~~a) When not waitlisted or first on the waitlist, an estimated date of admission; and
(~~B~~b) When waitlisted, the number on the waitlist.
(1~~2~~5) Management of waitlists includes the following:
(a) The program ~~shall~~must establish admission waitlists ~~of reasonable length~~;
(b) The program ~~shall~~must document actions taken in the management of the waitlist;
(c) The program ~~shall~~must contact a waitlisted ~~individual, the individual's~~prospective resident, the prospective resident's legal representative, and the referring entity, as applicable, monthly to determine if the ~~individual~~prospective resident has been placed elsewhere;
(d) The program ~~shall~~must prioritize admissions on a waitlist as follows:
(A) The program ~~shall~~must give first priority consideration to each of those ~~individuals who may be:~~
~~(i) Under a current civil commitment or extremely dangerous person commitment pursuant to ORS chapter 426;~~ prospective residents who are seeking to transition from the Oregon State Hospital into the community and are:
(i~~i~~) ~~Placed on~~A candidate for court-ordered community restoration as an aid and assist defendant pursuant to ORS chapter 161; or
(iii) Found guilty except for insanity of a criminal offense and is currently under the jurisdiction of the Psychiatric Security Review Board pursuant to ORS 161.327~~;~~.
~~(iv) Found guilty except for ins~~B) The program must give second priority consideration to each of those prospective residents who are seeking to transit~~y of a criminal offense and has been committed to a facility designated by OHA pursuant to ORS 161.328; or~~
~~(v) Is seeking to transition from the Oregon State Hospital or other hospital level of care into the community~~ion from the Oregon State Hospital into the community and are under a current civil commitment, voluntary by guardian, or extremely dangerous person commitment pursuant to ORS chapter 426.
(C) The program must give third priority consideration for admission to those prospective residents seeking admission to programs:
(i) A candidate for court-ordered community restoration as an aid and assist defendant who is eligible for commitment to Oregon State Hospital pursuant to ORS chapter 161; or
(ii) A candidate for court-ordered conditional release who has been found guilty except for insanity of a criminal

Page 4 of 5

Van Rysselberghe Decl. Ex. 1
Page 7 of 8

offense and will be placed under the jurisdiction of the Psychiatric Security Review Board pursuant to ORS 161.327; or¶
(iii) A candidate for court-ordered commitment to a facility designated by OHA and who is found guilty except for insanity of a criminal offense pursuant to ORS 161.328.¶
(BD) The program shallmust give secondfourth priority consideration for admission to those individualto those prospective residents seeking admissions to programs:¶
(i) As an alternative to or to prevent civil commitment or placement at the Oregon State Hospital; or¶
(ii) For the purpose of transitioning from a program or a secure residential treatment facility.¶
(e) The program shall; or¶
(iii) For the purpose of transitioning from a community hospital to a community placement.¶
(E) The program must give fifth priority consideration to those prospective residents who do not meet the criteria establish in subsection (14)(d)(A), (B), (C) or (D) of this rule.¶
(e) The program must determine priority for admission based on the priorities described above and on a first-come first-served basis based on the date of receipt of the referral packet. The program may not consider the individualprospective resident's county of origin, responsibility, or residency; and¶
(f) Within 72 hours of a provider learning of a pending opening, the program shallmust provide written or electronic notification to the referring CMHP, the individual on the waitlist,entity, the first prospective resident on the established waitlist, as well as their referring entity and their legal representative, or supervisory entity, as applicable, of the expected opening. The CMHPreferring entity is responsible to verify the individualprospective resident or their representative or supervisory entity, as applicable, received the notification of the opening and respond to the program within three business days of the provider's notification. If any of the following occurs, the program may offer the opening to the next individualprospective resident on the wait list:¶
(A) The program receives no response from the individual the individualprospective resident, the prospective resident's legal representative, supervisory entity, or the referring entity, as applicable, within three business days;¶
(B) The individual will not be ready to transition into the program within one week; or¶
(C) The individual no longer desires placement at the program.¶
(13g) The program shall obtain informed consent for services from the individual or the individualmay close their waitlist if there are five (5) or more prospective residents on the waitlist. When the waitlist is closed, the provider is not required to accept referrals, conduct screenings, or evaluate additional persons for admissions who are not already on the waitlist.¶
(h) Waitlists must be opened any time there are less than five (5) prospective residents. ¶
(i) The program must verify and update their waitlist by contacting prospective residents or their legal representative monthly to confirm continued need for placement. All verifications must be documented.¶
(16) The program must obtain informed consent for services from the prospective resident or the prospective resident's legal representative prior to admission to the program. Informed consent is not required for individuals placed at a program pursuant to a court, OHA, CMHP or PSRB order issued under ORS chapter 161 or 426.¶
(147) The program must obtain copies of legal orders for residents placed at a program pursuant to a court, OHA, CMHP or PSRB order issued under ORS chapter 161 or 426. ¶
(18) Upon admission, the program administrator shallmust provide and document an orientation to each new individualresident that includes, but is not limited to, the following:¶
(a) A complete tour of the setting;¶
(b) Introductions to other individualresidents and program staff;¶
(c) Discussion of house rules;¶
(d) Explanation of the laundry and food service schedule and policies;¶
(e) Review of the individualresident's rights;¶
(f) Review of grievance procedures;¶
(g) Review of the residency agreement;¶
(h) Discussion of the conditions under which residency would be terminatinvoluntarily transferred or discharged;¶
(i) General description of available services and activities;¶
(j) Review and explanation of advance directives. If the individualresident does not already have any advance directives, the program shallmust provide an opportunity to complete advanced directives;¶
(k) Emergency procedures in accordance with OAR 309-035-0145(2).¶
(l) Review of the person-centered planning process; and¶
(m) Review of the process for imposing individually-based limitations on certain program obligations to the individual.
Statutory/Other Authority: ORS 413.042, ORS 443.450
Statutes/Other Implemented: ORS 413.032, ORS 443.400 - 443.465, ORS 443.991

Page 5 of 5

Van Rysselberghe Decl. Ex. 1
Page 8 of 8