Emily Cooper OSB #182254
ecooper@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
Dave Boyer, OSB # 235450
Dboyer@droregon.org
**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants. | Case No.  3:02-cv-00339-MO (Lead Case)<br>Case No.  3:21-cv-01637-MO (Member Case)<br><br>PLAINTIFFS' MEMORANDUM SUPPLEMENTING MOTION FOR SANCTIONS |

Page 1 – Plaintiffs' Supplemental Memorandum in Support of Motion for Sanctions

| | |
|---|---|
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,<br><br>   Plaintiffs,<br><br>  v.<br><br>DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity,<br><br>   Defendants. | Case No. 3:21-cv-01637-MO (Member Case) |

**PLAINTIFFS' MEMORANDUM SUPPLEMENTING MOTION FOR SANCTIONS**

Consistent with Rule 11, Plaintiffs submitted to Marion County a proposed motion for sanctions two weeks ago, in hopes that Marion County would withdraw its motion and obviate the need for further proceedings. Instead of doing so, Marion County doubled down on its frivolous motion and filed a reply that amplified the need for sanctions. Plaintiffs submit that motion as well as a brief supplemental memorandum to address the reply. That reply illustrates why the County's filings require court action.

  **1. The Reply Confirms the Untruthfulness of the Third Motion to Intervene**

Marion County filed its Third Motion to Intervene, styled as a "limited motion to intervene," allegedly "for the **limited** purpose of responding to the recently filed" motion for contempt. ECF 544, at 2 (emphasis in original). Marion County emphasized that it was "only asking to respond to a newly filed motion." ECF 544, at 4. Marion County specifically argued that its motion to intervene would not prejudice any party as "intervention is limited to responding to an existing, new motion." ECF 544, at 7. Plaintiffs pointed out that this assertion of supposedly limited purpose was highly dubious as 1) Marion County had ample ability to file the response in question as an amicus (as 4 other amici groups eventually did) and 2) Marion

Page 2 – Plaintiffs' Supplemental Memorandum in Support of Motion for Sanctions

County's second motion to intervene had also sought to obfuscate the nature of its intervention. ECF 549, at 3.

Marion County's reply, although it continues to adhere to the "limited purpose" fiction, indicates instead that the litigation "would benefit from Marion County's participation as a party" and alleges that "only Marion County can be counted on to fully defend the Court's monetary fines when the State appeals." ECF 562, at 2. Marion County alleges that it would gain "additional rights to participate in *defense* of any decision by this Court if *another party* appeals." ECF 562, at 7 (emphasis in original). In its reply, Marion County tells the Court that it "*may* limit the scope of Marion County's involvement *if* desired." ECF 562, at 7 (emphasis added). Among the ways the County suggests the Court *could* further limit its intervention is by preventing it from "raising new issues" or engaging in discovery, suggesting that (absent further limitation from the Court), the County believes that it has the power to raise new issues and open discovery. ECF 562, at 8. It is hard to read the County's third motion to intervene and its reply together and construe any purpose supposedly limited to filing a single, 5-page memorandum.

Whatever the merits or demerits of its intervention at this stage, Marion County is not entitled to mislead the court about the nature of its intervention or its intentions. Marion County may not style a motion seeking full, party-level participation in this matter as "limited." The only concession from Marion County as to *any* limitation in its reply is that it promises not "to re-litigate any prior Court decisions nor to appeal any prior orders of the Court." ECF 562, at 8. No timely appeals of any substantive prior orders could be taken by any party, since the Court has not issued an appealable order in the *Mink* or *Bowman* cases since at least June 2024, other than ministerial orders setting hearing dates and allowing extensions of time. Existing parties and full intervenors may not re-litigate old issues or bring untimely appeals either. If, as the County

Page 3 – Plaintiffs' Supplemental Memorandum in Support of Motion for Sanctions

maintains, its motion to appear as a full party-intervenor is well-supported by the law, the County would have no need to conceal its intentions. Considering the County's history regarding its obfuscation of its intent in intervention and the inconsistencies in its filings, the Court should sanction the County for its untruthful filings.

### 2. The County's Reply Continues to Rehash Already-Rejected and Frivolous Readings of Intervention Law

The primary test for timeliness of intervention in the Ninth Circuit is, has been, and continues to be: a court should look to the "stage of the proceedings," the "prejudice to the other parties," and the "reason for and length of the delay." *Disability Rts. Oregon v. Allen*, No. 3:02-CV-00339-AN, 2024 WL 1461601, at *3 (D. Or. Apr. 4, 2024). The delay of the party, as to the "reason for and length of the delay" is, has been, and continues to be measured from: "the date the proposed intervenor should have been aware that its interest would no longer be protected adequately by the parties, not the date it learned of the litigation." *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996). Based on the plain language of the current test in the Ninth Circuit, Marion County loses. The County has previously admitted neither party has protected its interests since at least 2022, and both this Court and the Ninth Circuit have so found.

Marion County raises in its reply the "change of circumstances" element, just as it did in litigating its prior motions. ECF 478, at 9 (County argues second motion to intervene was timely because of the "significant change in circumstances wrought by the March 6, 2024 Mosman order"); ECF 410, at 5 (alleging County's first motion to intervene was timely because of the "unexpected effects" of September 2022 order).[1] The County has repeatedly lost on that that

---

[1] *See also* Reply Brief of Marion County, *Oregon Advocacy Center v. Allen*, No. 23-35516, *2-*7 (9th Cir. 2023) *at* https://storage.courtlistener.com/recap/gov.uscourts.ca9.344653/gov.uscourts.ca9.344653.31.0.p

Page 4 – Plaintiffs' Supplemental Memorandum in Support of Motion for Sanctions

theory, in both the district court and the Ninth Circuit, because it has repeatedly misrepresented the law. ECF 485, at 6-7 (rejecting "change in circumstance" argument as County had long known of its adversity towards parties).

A "change in circumstances" may make otherwise belated intervention timely, but only when that "change in circumstances" is what causes a "proposed intervenor" to become aware that "its interests would no longer be protected adequately by the parties." "[T]he 'substantial change' in *Smith*, unlike here, was relevant to the point at which it became clear the intervenor's interests would no longer be protected." *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023) *discussing Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843, 854 (9th Cir. 2016). In the cases cited by Marion County, the intervenor had no reason to believe its interests were not being protected by the parties until that change in circumstances. *Smith*, 830 F.3d at 859-60 (parents' intervention timely as it came "only weeks after definitively learning that their interests were not adequately represented by the existing parties"); *Cameron v. EMW Women's Surgical Ctr., P.S.C*., 595 U.S. 267, 279-80, (2022) ("Here, the most important circumstance relating to timeliness is that the attorney general sought to intervene 'as soon as it became clear' that the Commonwealth's interests 'would no longer be protected' by the parties in the case."); *United States v. State of Or*., 745 F.2d 550, 552 (9th Cir. 1984) (state of Idaho's motion was timely where shortly after the withdrawal of two tribes from the fish plan and a week before the district court's holding that "changed circumstances of law and fact made the Plan subject to revision or modification"); *see also United States v. State of Or*., 913 F.2d 576, 586 (9th Cir. 1990) (renegotiated fish plan was "in effect" a consent decree). Marion County's

---

df (alleging first motion to intervene was timely because of "unexpected effect" of court's actions, discussing same cases cited in n.4 of ECF 562 on same point and to the same effect).

Page 5 – Plaintiffs' Supplemental Memorandum in Support of Motion for Sanctions

discussion of the "change in circumstances" concept is unavailing, as it divorces the "change in circumstances" from the established test. The "change in circumstances" did not prompt Marion County to understand finally that the parties were not representing its interests. Marion County had long known of its adversarial position towards the parties, long before January 2025.

All the "change in circumstances" cases at issue involve some action regarding fundamental elements of the case, such as the renegotiation of or reopening of some element of the final judgment or settlement, *Smith*, 830 F.3d at 848 (genesis of intervenor's dispute was a 2012 renegotiation and "execution of a Modified Consent Decree" adding a disputed "Outcome 7" that intervenors specifically challenged); *State of Oregon*, 745 F.2d at 552 (intervention prompted by renegotiation of the fish plan that resolved the litigation 5 years before). Alternately, the "change in circumstances" might entail a decision by a party not to appeal a challenge to a law that—if not opposed by the intervenor—would end the litigation. *Cameron*, 595 U.S. at 280. By contrast, countless cases denying intervention follow new motions or orders that do not affect the final judgment, consent decree, or settlement. *Oregon II*, 913 F.2d at 588 (rejecting intervenor's proposal that "adoption of the plan commences a new stage in the action" justifying intervention); *United States v. State of Wash.*, 86 F.3d 1499, 1504 (9th Cir. 1996) (intervenor's delay was not excused by new and "open antagonism" from state after memorandum decision by court). No cases that Marion County cites have ever allowed intervention at this stage purely based on changes wrought by ordinary enforcement motions or orders, only those that would alter or destroy the final judgment.

Marion County has now identified—in its opinion—at least three different "stages" of this litigation and three different radical "changes in circumstances" supposedly sufficient to permit intervention, all in the course of two years. What Marion County repeatedly has

proposed—and what is neither the law nor could it ever be the law—is that every change in litigation, by any motion, by any order, that alters the nature of the litigation in any manner that is allegedly unexpected, constitutes a "change in circumstances" allowing any intervenor to join the case in a timely way. In Marion County's idiosyncratic view of the law, intervention is timely no matter what the nature of the motion or order is, nor how long the intervenor had previously been on notice that their interests are not aligned with the parties. Marion County's baseless legal position would allow serial filings from any person to intervene in a case at all stages of the case, based on even routine and predictable motion practice, absolutely gutting the timeliness requirement.

### 3. Marion County Points to No Change in Circumstances

In its reply, Marion County falsely states that the change in circumstances is the "first motion in this case seeking to impose per diem monetary fines against Defendants." ECF 562, at 4. As previously stated by the Plaintiffs, both Plaintiffs filed motions for contempt in 2019. ECF 85; ECF 91. The motion of Metropolitan Public Defender specifically requested the court to impose "necessary remedial sanctions to punish the defendants and compensate plaintiffs and those effected by their contempt for their injuries." ECF 85, at 2. Marion County acknowledged this in its second motion to intervene, referring to plaintiffs' 2019 "motion seeking contempt sanctions against OSH for failing to comply with the *Mink* Injunction." ECF 478, at 6 *citing to* ECF 85. Plaintiffs have previously sought contempt, including monetary sanctions. This fact was obvious to Marion County, considering that the County relied on it less than a year ago.

Marion County's reply asserts that its particular desire is to see that fines are imposed on the State, disparaging the willingness of Plaintiffs to follow through. The County cites no evidence beyond a supposed failure to mention fines with sufficient frequency at a recent status

Page 7 – Plaintiffs' Supplemental Memorandum in Support of Motion for Sanctions

conference. The County's vague suspicion that Disability Rights Oregon will not follow through on its requested relief is not a change in circumstances. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (holding the "prospect of inadequate representation on the part of *future* defendants in *future* years is purely speculative, and, in any event, was known . . . the day the litigation . . . commenced"). Plaintiffs have extensively litigated these proceedings, including multiple appeals to the Ninth Circuit. While the County may not agree with Plaintiffs' positions, Plaintiffs have been diligent in pursuing their clients' interests.

Last, the County's alleged interest is not new. To the extent that the County is frustrated by the lack of monetary sanctions on the state, that absence of monetary sanctions has been in place since 2002. The state has been out of compliance almost continuously since 2018. The County failed to join or to support the first round of contempt pleadings in 2019. To the extent the County believes and has believed that the lack of monetary sanctions was harming its interests, the County has been tolerating that *status quo* for many years. Neither of its two prior motions to intervene identified a specific wish for monetary sanctions, nor has any of its prior briefing to the court inquired about contempt. The County's mere desire to hijack Disability Rights Oregon's motion for its own purposes, once DRO has taken the labor of drafting it, does not constitute a "change of circumstance."

## CONCLUSION

The County's reply highlights the deceptive nature of its original motion and the lack of truthfulness demonstrated by the county throughout this litigation. The County may not falsely tell the Court that it "only" intends to file a single 5-page memorandum, when its real intent is, essentially, to take over as a party, to displace plaintiffs, and to litigate DRO's motion for contempt in its stead through both district and circuit courts.

The County's arguments in its reply underscore the unreasonable nature of its position. The County has nothing new to say but seeks to relitigate the same "change of circumstances/unexpected effect" claims it has made in its prior two motions to intervene. Those arguments misconstrued the law then, and (having been told so twice) the County had no excuse in raising them again. The County has long known that its interests are adverse to the parties. It failed to intervene in a timely way long ago. Its refusal to accept the prior rulings of this Court and the Ninth Circuit, only to reproduce the same arguments over and over again, means that the County will surely file a fourth and a fifth motion to intervene if not sanctioned.

Respectfully submitted this 7th of February, 2025.

DISABILITY RIGHTS OREGON

/s *Thomas Stenson*
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
Dave Boyer, OSB # 235450
Dboyer@droregon.org
511 SW 10th, Suite 200
Portland OR 97205
Tel:    (503) 243 2081
FAX:   (503) 243 1738

*Counsel for Plaintiff Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

Page 9 – Plaintiffs' Supplemental Memorandum in Support of Motion for Sanctions