Emily Cooper OSB #182254
ecooper@droregon.org
Hanah Morin OSB #230043
hmorin@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
Dave Boyer OSB # 235450
dboyer@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC.,** & **A.J. MADISON,** Plaintiffs, | Case No. 3:02-cv-00339-MO (Lead Case) Case No. 3:21-cv-01637-MO (Member Case) |
| v. | |
| **SAJEL HATHI,** in her official capacity as head of the Oregon Health Authority, & **SARA WALKER**, in her official capacity as Superintendent of the Oregon State Hospital, Defendants. | PLAINTIFF DISABILITY RIGHTS OREGON'S REPLY TO ITS MOTION FOR A RULE TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT, AND FOR A REMEDIAL ORDER |
| **JAROD BOWMAN** and **JOSHAWN DOUGLAS-SIMPSON**, Plaintiffs, | |
| v. | |
| **SARA WALKER**, Interim Superintendent of the Oregon State Hospital, in her official capacity, **SAJEL HATHI**, Director of the Oregon Health Authority, in her official capacity, Defendants. | |

"Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation."

-   *OAC v. Mink*, 322 F.3d at 1121 (quoting *Ohlinger v. Watson*, 652 F.2d 775, 779 (1980).

REPLY ON MOTION FOR CONTEMPT
Page 1

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081

Defendants cannot justify their lack of compliance based on inadequate resources pursuant to the well-established law in this land. It is not a permissible defense to point to either the "lack of community placements" or an inadequate "array of hospital level of care (HLOC) or secure residential treatment facility (SRTF) beds, which would be the most direct way to ensure an immediate ability to meet any predictable demand to comply with the *Mink* Injunction." Defendants' Response Brief (hereinafter, "*Response"*) at 18 and 11.

This Court's specific requirement is no different from any of the other constitutional requirements placed upon the government whenever it chooses to charge a person with a crime. None of those requirements are optional or conditioned on adequate funding or facilities. *Brown v. Plata*, 563 U.S. 493, 528 (2011) (upholding court-ordered releases from California prisons for unconstitutional overcrowding where "funding for some plans [to increase capacity] had not been secured and funding for other plans had been delayed by the legislature for years"). "A state cannot avoid the obligation of correcting the constitutional violations of its institutions simply by pleading fiscal inability." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 631 F.2d 162, 165 (2d Cir. 1980). Instead, timely transfer for court ordered treatment is a constitutional requirement, not subject to the whims of politicians or shifting priorities of agency directors. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1327 (3d Cir. 1995) ("[E]lection of a new administration does not relieve it of valid obligations assumed by previous administrations."). Judge Panner appropriately rejected Defendants' attempts to excuse their lack of compliance with the constitution based upon these same defenses in 2002, and this Court should reject Defendants' attempts to re-litigate these issues today.

All Parties agree Defendants are not in compliance. *Response,* at 1; *Joinder,* at 2. Nevertheless, Defendants urge the Court to refrain from entering a contempt finding, arguing

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR 97205
(503) 243-2081

that they have taken "all reasonable steps" to comply with the injunction. *Response*, at 6. The Court should reject the Defendants' arguments for several reasons. First, this Court considered and rejected many of these arguments in the original trial, and Defendants are precluded from re-litigating them here. Second, Defendants have pointed to an alleged unprecedented referral rate since at least 2019. *See* Dkt. 103, 1 & 5. Finally, Defendants' entire defense fails to acknowledge the simple reasonable step they could have taken to comply: discharging patients found to no longer require a hospital level of care. Defendants' own data proves both why timely discharging of patients is a reasonable step to ensure compliance: there are 84 people waiting in jail for over two weeks to get to the state hospital and the exact same number of patients – 84 - taking up precious hospital beds for over a month despite being found to no longer need them.[1]

## I.    ARGUMENT

### A.    Defendants are precluded from re-litigating most of their arguments.

In their contempt defense, Defendants may not rely on the same arguments about the lack of resources or facilities that it raised in 2002. *See* Dkt. 47 at 12. A party charged with contempt of an order may not defend itself by challenging the reasons for issuing the order in the first place or by re-litigating its original defenses. *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010); *United States v. Brown*, 918 F.2d 82, 83 (9th Cir. 1990) (contemnor could not relitigate constitutional defense because "the same claim had been raised and rejected by the magistrate and the district court in the earlier enforcement proceedings").

This Court determined and the Ninth Circuit reiterated that a "lack of funds, staff, or facilities" cannot excuse the denial of the constitutional right to mental health treatment of the

---

[1] Stenson Decl., Ex. I, at 1.

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081

dozens of detainees currently going through psychiatric crises in jails across the state without adequate treatment. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). Throughout their response, Defendants reiterate the same arguments rejected more than two decades ago. A scrutiny of the compliance barriers identified by the Defendants reveals they are nothing more than lacking sufficient "funds, staff, or facilities."[2] For example, Defendants point to the "lack of available community placements" as a circumstance outside of their control and barrier to compliance. *Response,* at 11. The lack of resources to respond to the demand for those services does not justify the violation of the constitutional rights of the individuals languishing in jails for these court-ordered services. Ultimately, Defendants may not turn a contempt proceeding into a "retrial of the original controversy" *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948).

**B.    Defendants' argument invoking "all reasonable steps" fails as a civil contempt defense because they failed to eliminate every other possible avenue to comply.**

Defendants argue, "OHA/OSH have *largely met* or are *actively engaged* in meeting Dr. Pinals' recommendations, with *some exceptions* which are being addressed with Dr. Pinals and discussed with MPD." *Response,* at 4; *see also* 6 (emphasis added). The legal standard is neither based on active engagement nor mere efforts. Rather, the legal standard to avoid a finding of contempt is whether the violating party has taken "all reasonable steps" to comply with the court order. *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986).

A party advancing an "all reasonable steps" defense must not show simply that it pursued *some* reasonable steps to meet the order's requirements, but that it eliminated every other possible avenue to comply. *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (holding

---

[2] *See* Stenson Decl., Ex. K, at 11 (Oregon still needs over 3700 treatment beds that are not yet even planned); Ex. L (Oregon has created only 184 beds over the past two years); Ex. O.

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081

contemnor failed to rebut burden by discussing "the steps it took to comply with the settlement agreement but fail[ed] to mention other reasonable steps it could have taken"). A party alleging that it cannot fully comply with a court order has the burden of showing why it cannot comply fully and must do so "categorically and in detail." *N.L.R.B. v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973).

Courts have routinely rejected similar contemnor's defenses, even where the party had made substantial steps and investments towards compliance, but other steps could have been taken. *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 858 (9th Cir. 1992), *as amended* (Aug. 25, 1992) (holding evidence city "spent thirty million dollars on programs to cope with the overcrowding program" did not fulfill every reasonable step defense nor make contempt finding an abuse of discretion); *see also Balla v. Idaho State Bd. of Corrections*, 869 F.2d 471 (9th Cir. 1989)(holding state's "accelerated efforts to provide additional space" to avoid overcrowding did not make contempt order an abuse of discretion); *Turay v. Seling*, 108 F.Supp. 2d 1148, 1155 (W.D. Wash. 2000), *aff'd in part, dismissed in part sub nom. Turay v. Anderson*, 12 F.App'x 618 (9th Cir. 2001) (declining to abate contempt sanctions even where state was "approaching" substantial compliance). Here, while Defendants allege that they have taken a number of steps to avoid the current crisis, they have not taken all reasonable steps. In particular, DRO sent Defendants two letters prior to the filing of this litigation asking for the Defendants to consider taking additional steps to address their lack of compliance. Dkts. 541-4 and 5. We have yet to receive a written response.

1.  <u>Defendants' Failure to Fully Implement Neutral Expert's Recommendations Provides Contempt Evidence.</u>

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081

Defendants also allege they have taken all reasonable steps to comply with Dr. Pinals' recommendations. A careful review of those recommendations reveals they have yet to be fully implemented. For example, Defendants argue that they have taken the reasonable step to timely discharge patients who have been put on the "Ready to Place List" due to a clinical finding that they no longer require a hospital level of care. *Response,* 6-7. In describing these actions, Defendants use words like "many efforts" or "conditionally paused while Defendants were in compliance" but are now "re-engaging with this work." *Id.* This is not all reasonable steps.

Defendants go on to claim that the entity to blame for these discharge delays are the county courts who are rejecting placement determinations made by OSH clinicians. *Response,* at 11; *see Harris v. City of Philadelphia,* 47 F.3d 1333, 1341 (3d Cir. 1995) (city failed to bear its burden of showing impossibility in overcrowding contempt proceeding based on a theory of "judicial resistance to paroling inmates," because city had a substantial role in engendering that resistance). Defendants fail to acknowledge that, by operation of Oregon law, a person subject to a .370 order is committed "to the custody of the superintendent of a state mental hospital…" Or. Rev. Stat. § 161.370(2)(a). From the moment the state court judge signs the order, the person is in the legal custody of the Defendants.

County jails are routinely faced with the problem of having more prisoners committed to their custody than they have bed space. When faced with that problem, county sheriffs routinely release people who have been ordered into their custody. *See, e.g., Twelve John Does v. D.C.,* 855 F.2d 874, 878 (D.C. Cir. 1988) (an institution cannot assert as part of an impossibility defense "a lack of power to alleviate the overcrowding, even if that means release of or refusal to

Disability Rights Oregon
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081

accept prisoners").[3] Defendants do not explain what legally prevents them from doing the very same thing except that they want to avoid the ire of county judges ("Additionally, MPD's request would require discharge over contrary state-court orders, which will cause outrage and backlash from state-court judges.") *Response,* at 18. Avoiding "outrage and backlash" is not a legal defense to violating a constitutional obligation. *See Twelve John Does,* 855 F.2d at 877 (moves to reduce overcrowding that may be unpopular are not "impossible").

    2.   Defendant OHA Cannot Contract Away Its Legal Responsibility to Provide Community Behavioral Health Services as Means to Avoid Contempt

       Starting in January 2022, the Neutral Expert has been recommending that OHA to coordinate community behavioral health care options to divert individuals found unable to aid and assist in their own defense from the state hospital "maximizing the utilization of hospital beds for those in need of a hospital to support their recovery." Neutral Expert First Report, p. 16. While the Oregon Health Authority (OHA) is not responsible for criminal justice practices, it *is* the primary administrative authority over behavioral health in Oregon. OHA can provide increased community-based services, supportive housing, and other supports to divert individuals from either jail or the state hospital. ORS 426.500; ORS 426.504; ORS 430.021.[4] Each of these services are examples of reasonable steps OHA should have taken to implement Dr. Pinals recommendations and avoid falling out of compliance with this Court's permanent injunction.

---

[3] *See also* KTVL-TV, Overcrowded Jackson County Jail Released the Most Prisoners in Oregon in 6 Years, June 28, 2022 (indicating Jackson County released an average of 5300 prisoners released each year since 2016 to avoid overcrowding).

[4] Defendants claim they have met Dr. Pinals' recommendations to expand substance use disorder treatments. *Response,* at 10. They cite to the work being done at Oregon State Hospital and an additional policy option package. *Id.* However, Dr. Pinals specifically recommended that this treatment be expanded into the community restoration programs. Neutral Expert Second Report, p. 26. There is no evidence that this step was taken outside a funding request nearly two years after the recommendation was made.

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR 97205
(503) 243-2081

Ultimately, OHA is the state entity responsible for providing most of the state's health care programs, including providing mental health evaluation, treatment, and services for Behavioral Health Services. *See e.g.,* OAR 301-088 through 309-120.

Because of OHA's position in administrating services from community restoration to state hospital admission and discharge, it is in the best position to reduce admissions to the hospital by increasing system capacity and related services to reduce the demand for inpatient services. This is why Plaintiffs DRO raised the example of the OHA entering into an agreement with the United States Department of Justice (the "Oregon Performance Plan") to ensure individuals with mental illness are in the least restrictive environment including timely discharges from the state hospital. Defendants have used their authority in the past to comply with their federal obligations and Plaintiff DRO is simply seeking similar, urgent leadership from the state agency ultimately responsible for community behavioral health.

Defendants also claim that the "unpredictable" referral rate is a circumstance outside of their control. *Response,* at 11.[5] Yet, failing to take adequate steps to address an anticipated rise in a subject population is evidence of contempt. *Stone*, 968 F.2d at 858 (noting the population increases at the jail had been widely anticipated and not been adequately addressed). Here, Defendants have known for a least a decade that the referral rate is going up but have failed to fully fund the community behavioral health system even after the United States Department of Justice raised the same or similar concerns over a decade ago. Even if the referral rate were

---

[5] The rise in population—although it unquestionably has spikes and dips—follows a linear progression over time. In 2012, an average of 30.5 people were referred to OSH as in need of restoration each month; six years later, in 2018, 60.8 were referred each month; six years further on, in 2024, the average was 97.7. Stenson Decl., Ex. H, at 12.

REPLY ON MOTION FOR CONTEMPT
Page 8

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR 97205
(503) 243-2081

unpredictable, more drastic relief is appropriate where "previous remedial efforts had succumbed to the inexorably rising tide of population." *Brown*, 563 U.S. at 528.

Further, having insufficient funds to comply with an order or having funds that are not earmarked for a designated purpose are not defenses to contempt. *Hook v. Arizona Dept. of Corrections*, 107 F.3d 1397, 1404 (9th Cir. 1997), *as amended* (Apr. 22, 1997) (fact that Arizona legislature specifically prohibited spending money to comply with the order did not excuse Department of Corrections' contempt); *Stone*, 968 F.2d at 858 ("[F]inancial constraints do not allow states to deprive persons of their constitutional rights."). Since adding resources are all scalable responses to fix this problem, Defendants must explain why adding more staff, more funding, and more space in anticipation of this need was impossible to prevent these Constitutional violations. Considering the size of the Behavioral Health Investments (more than $111 million in the 2023-25 biennium), diverting more resources to accommodate more "aid and assist" patients is not obviously unworkable or unreasonable. *See* St. of Or. Legis. Fiscal Off., 2023-25 Budget Highlights (2023).

Dr. Pinals also recommended OHA to "review existing contracts with the CCOs and CMHP's to determine the scope of existing contractual obligations to serve Aid and Assist and GEI populations." Neutral Expert Second Report, pgs. 26 and 33. While the Defendants allege that they have spent some money creating community-based restoration services, additional evaluators, and community placements, nowhere do they explain why that amount of money was the right amount of money, or why the state could not or should not have spent more. Defendants' discussion of their role emphasizes a passive approach to its role in managing this system, by emphasizing its "indirect funding" scheme and diminishing its function to the passive provision of funds, which private entities, Community Mental Health Providers (CMHPs), and

Disability Rights Oregon
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081

Coordinated Care Organizations (CCOs) must seize the initiative to use or request additional funds to meet the needs of their community members.[6]

Defendants sit atop a complex hierarchy of the Oregon mental health system. Defendants "shall directly or by contract with private or public entities" fund, regulate, and operate the statewide mental health system. ORS 430.021(2); *see also* ORS 413.032(1)(d) &(1)(e); ORS 426.500. Oregon is ultimately responsible for ensuring the right to affordable, appropriate health care to all Oregonians. Or. Const., Art. I, § 47. Defendants falsely indicate that they can "delegate to the counties the responsibility" to care for people with mental illness, including in the aid-and-assist and GEI populations. ECF 556, at 7. While Defendants can contract for those services with CCOs, CMHPs, and private entities, OHA is without power to contract away its *legal responsibilities* to ensure that the contracted-for services meet the needs of Oregonians. It is impossible to assess whether or to what extent the proposed changes to the CCO and CMHP contracts reflect "all reasonable steps" or otherwise genuine improvements due to the generic characterizations listed in Defendants' response.

The little evidence at hand demonstrates the inadequacy of Defendants' efforts to implement Dr. Pinal's recommendations. As Defendants admit, they still have not reformed the CCO contract process, reporting instead that "changes are currently in motion" to affect the CCO contracts. ECF 563, at 8; *id.* at 9 ("appropriate updates to the 2026 CCO Contract are actively

---

[6] As an example of this passive role, OHA authorizes grant payments but provides no meaningful advocacy to recruit providers, to work with them to overcome barriers, and to ensure the grant monies are actually used for the intended purpose. In 2021, the state legislature allotted funds for four peer-supported respite care sites around the state for people with mental illnesses at risk of hospitalization. *See* ORS 430.275. After almost four years, only one of the four sites is currently functioning, in part because of OHA's passive role in the process, refusing to support one grantee in a zoning dispute with a local government. *See* Declaration of Thomas Stenson, ¶¶ 3-18.

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR 97205
(503) 243-2081

being reviewed now"). Instead, Defendants' briefing demonstrates that more could have been done to prevent noncompliance, by moving forward and finalizing changes to the CCO contract at any point between 2019 and the present. At the county/CMHP level, OHA fails to appropriately fund restoration services. A recent study commissioned by OHA showed that Defendants fail to provide tens of millions of dollars in needed funding to CMHPs for restoration services, crisis care, and civil commitment.[7] The stark deficits of the CMHP and CCO contracts remain today.

Even as they bear the central responsibility to ensure statewide mental health services, Defendants passively stand to the side of Plaintiff MPD's request to fund a study to determine how to increase the supply of community behavioral health services, address gaps in care, and come up with a compliance plan based on actual metrics. *Response,* at 3. This passivity should not be tolerated given the gravity of the state's failure to protect the constitutional rights of over eighty people and counting.

**C.    Plaintiff DRO's relief is reasonably tailored to address Defendants' contempt, of which the character and magnitude of the harm is significant, and a contempt finding and sanctions are likely to be effective at purging Defendants' contempt.**

Defendants dismiss Plaintiff DRO's request for relief as not "reasonably tailored" and inappropriate for federal court relief. *Response*, at 5. This claim lacks factual and legal merit. Factually, for example, Defendants' data reveals that 51 GEI patients have been found to no longer require a hospital level of care and are taking up a precious hospital bed, on average, 219 days. Yet, Defendants argue that taking the reasonable step of timely discharging GEI patients

---

[7] CBIZ Optumas, Oregon Health Authority: Expenditures Associated with Behavioral Health Services through Local Mental Health Authorities (LMHAs) and Community Mental Health Programs (CMHPs) – House Bill 4092, at 1-2 (Dec. 2024).

REPLY ON MOTION FOR CONTEMPT
Page 11

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081

"is not needed at this time." *Id.* at 19. Similarly, Defendants claim that hiring more evaluators to see if the nearly 300 people in indefinite community restoration still need to take up that limited resource is "too premature" in part because there are no "statutory timeframes" despite Dr. Pinals' long-standing recommendation to also implement those limits. *Id.* at 19.

Relief is warranted here because this Court has broad remedial powers to address noncompliance. *Stone*, 968 F.2d at 861-62 (affirming court's power to authorize sheriff to override state law). *See also, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011) (imposing prison population limit); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536 (9th Cir. 1987) (affirming appointment of a Special Master). When the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable. *Stone*, 968 F.2d at 861 (citing *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978)).

Extraordinary circumstances requiring a Court to reject abstention arguments include when a party suffers irreparable injury including death. *See Betschart v. Oregon*, 103 F.4th 607, 617/620 (9th Cir. 2024). Here, the Court has a valid basis to use its broad powers to compel Defendants to comply with the Court's orders. The numbers of people waiting in jail and how long they are waiting is only increasing; many have died, and others have been irreparably injured. Defendants cannot tell this Court when it will comply or how. Plaintiff DRO cannot fathom a more extraordinary circumstance nor a more tailored request for relief beyond 1) modifying the Court's remedial order to fully implement the neutral expert's recommendations, 2) conducting a study to determine how to right size the forensic mental health system, and 3) levying contempt sanctions to help fully fund the array of community-based placements and services for those whose mental illnesses have decompensated, which Defendants acknowledge will yield compliance.

REPLY ON MOTION FOR CONTEMPT
Page 12

**Disability Rights Oregon**
511 SW 10th Avenue, 2nd Floor
Portland, OR 97205
(503) 243-2081

## IV.     CONCLUSION

Defendants have failed to provide court ordered restoration services within seven days in violation of this Court's orders. If Defendants fail to show cause why they have violated these court orders, Plaintiffs request the Court to use its broad authority to find Defendants in contempt, levy contempt sanctions until compliance is reached, and modify the Court's order to impose additional injunctive relief.

DATED this 14th day of February 2025.

DISABILITY RIGHTS OREGON

/s Hanah Morin
Hanah Morin OSB #230043
hmorin@droregon.org
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
511 SW 10th, Suite 200
Portland OR 97205
Telephone: (503) 243 2081
Facsimile: (503) 243 1738
Counsel for Plaintiff
Disability Rights Oregon

REPLY ON MOTION FOR CONTEMPT
Page 13

Disability Rights Oregon
511 SW 10th Avenue, 2nd Floor
Portland, OR  97205
(503) 243-2081