**OFFICE OF THE DIRECTOR**



Tina Kotek, Governor

March 11, 2025

Representative Jason Kropf, Chair
Representative Willy Chotzen, Vice-Chair
Representative Kim Wallan, Vice-Chair
House Committee on Judiciary
900 Court Street NE
State Capitol
Salem, OR 97301

SUBJECT: Support for HB 3501-3

Chair Kropf, Vice-Chair Chotzen, Vice-Chair Wallan, and members of the committee,

We are writing to outline how HB 3051, with the proposed -3 amendment, works and why it is important for both the Oregon State Hospital (OSH) and the larger behavioral health system.

### Aid & Assist

As background, let us briefly explain what brought us here.

When a person is charged with a crime but is found by a court to be unable to aid and assist in their own defense due to mental illness, and to require hospital care, they are ordered to OSH. The hospital's task is to restore them to competence so they can stand trial, assuming they can be restored.

Over the past two decades, the average number of orders OSH receives each month to admit patients under an aid & assist commitment has increased dramatically. Because OSH has a fixed number of beds and cannot legally exceed this number, there have been several consequences:

---

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

- Nearly all OSH beds are filled by patients under an aid & assist commitment or Guilty Except for Insanity (GEI) commitment, leaving almost no beds for patients under a civil commitment.
- Patients under aid & assist orders began to wait for a month or more in jail before admission to the hospital.
- Because of the 2002 Mink federal court injunction, OSH is required to admit a patient under an aid & assist order within seven days of the court's order. Oregon and Washington are the only states held to this standard.

The increased wait times led to legal action against OHA.

In December 2021, OHA entered into an interim settlement agreement with the plaintiffs. This included the federal court appointing Dr. Debra Pinals as a Neutral Expert to recommend actions to bring OSH into compliance with the Mink injunction.

Based on Dr. Pinals's recommendations, the federal court subsequently ordered new time limits for hospital restoration and other requirements for admitting, assessing, and discharging patients under aid & assist orders. The court also directed Dr. Pinals to recommend legislative changes to ensure OSH stayed in compliance with the Mink injunction. The court directed OHA to bring these changes forward and advocate for them in the Legislature.

To this end, HB 3051 was introduced as a placeholder pending the substantive language that is provided through the -3 amendment. The -3 amendment would codify the recommendations in Dr. Pinals's reports regarding amending the restoration limits for defendants committed to the Oregon State Hospital and in community restoration.

**Explanation of HB 3051-3**

*Section 1: ORS 161.355*

This section adds a definition for "person misdemeanor or contempt charge".
- A person misdemeanor would be a Class A misdemeanor as defined by the Oregon Criminal Justice Commissions' rules.

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

2 of 8

Declaration of Matthew Green, Exhibit 4, Page 2 of 8

- A contempt charge would mean an alleged violation of a court order issued under the specified statutes.

This new definition will be used in the next part of the amendment.

*Section 2: ORS 161.370*

First, this section applies the term "person misdemeanor or contempt charge" to subsections (4)(a) and (5), where the statute previously used only misdemeanor or violation. This change limits misdemeanant admissions to OSH and increase the number of individuals in community restoration, as recommended by Dr. Pinals in her second report.

Dr. Pinals recommended that OHA, OJD, DRO, and MPD make every effort to work collaboratively with stakeholders to identify alternatives to using OSH when there is no real government interest in pursuing prosecution and to work on alternative community restoration options for defendants charged with misdemeanors in the aid and assist process. Limiting misdemeanant admissions to OSH benefits the community and the forensic behavioral health system by ensuring that the highest level of care in the state is being used for the intended purpose of the aid and assist system: to ensure that defendants are fit to proceed for trial. Increasing the number of individuals in community restoration should have the downstream impact of reducing demand for inpatient restoration at OSH while simultaneously supporting compliance with Olmstead.

The existing statute discusses both adults and youth. The federal court's order does not address youth, so this bill is not intended to affect defendants under the age of 18. Language has been added to the -3 amendment to ensure the changes to forensic evaluations and restoration limits do not impact youth who fall under the adult statute.

This section also modifies timeframes for evaluating whether defendants will gain or regain fitness to proceed from in "the foreseeable future" to "time remaining for restoration within the maximum time period established under ORS 161.370 (7). ((6)(a))." Dr. Pinals recommended this change by highlighting that "evaluations for community restoration should consider language that indicates likely timing of restorability that is more specific than 'in the foreseeable future', which for the community could mean at any time in the future."

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

3 of 8

Declaration of Matthew Green, Exhibit 4, Page 3 of 8

This language change decreases ambiguity for evaluators rendering an opinion of 'never able' or 'medication never' (meaning that an individual requires treatment with psychiatric medication to be restored), which would allow evaluators to more efficiently assess whether an individual would benefit from continued restoration efforts. Identifying individuals who would not benefit from ongoing restoration efforts protects the civil rights of those individuals, ensures that both hospital and community restoration resources are being utilized to the maximum benefit, and decreases inappropriate reliance on the aid and assist system as an avenue for mental health treatment.

This section also allows for the court to commit a defendant and order that the defendant engage in subsequent community restoration services within the same hearing, but only if a forensic evaluation indicates there is a substantial probability that the additional restoration efforts will cause the defendant to become fit to proceed. ((6)(b)).  This change means that for a defendant who has already been to OSH, if there is no substantial probability that the defendant can be restored, a court would not order a defendant to further community restoration.

The forensic evaluation requirement supports Dr. Pinals' recommendations in her Second Report that "the court, in making its findings, should rely on clinical opinions." This requirement is helpful because it will prevent situations where a patient is sent for community restoration even when there is no reason to believe it will be effective. There have been instances in which individuals from OSH with a "never able" opinion from an FES evaluator returned to the county and subsequently were ordered into community restoration on the same case. This means they take up a restoration bed that could more beneficially serve another patient.

Next, this section replaces status reports submitted by Community Mental Health Programs (CMHPs) to courts with evaluations of the defendant's community treatment status to the court within the same timelines as required of OSH under ORS 161.371. ((6)(c)). This addresses the fact that current statute requires CMHPs to report back to the court, but does not specify how or how often to do so. The amendment applies the same process as applies to the state hospital's reports back to the court.

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

4 of 8

Declaration of Matthew Green, Exhibit 4, Page 4 of 8

There is no current statutory requirement for forensic evaluations for individuals in community restoration. The proposed language in (6)(c) is intended to ensure that defendants in community restoration are evaluated by a forensic evaluator according to the same cadence required by ORS 161.371(1) when individuals are admitted to OSH. This amendment would support individuals' civil rights by ensuring that they are not being subject to a community restoration order simply because they have not had access to a forensic evaluation. Requiring a regular cadence of forensic evaluations for individuals in community restoration ensures that they move forward with their criminal case as soon as they are able to aid and assist, and allows community beds and other resources to be available for other individuals in need of restoration services.

Finally, subsection (7) of this section adds timelines for maximum authorized duration of inpatient and community restoration as follows:

- Most serious offense of violation, *misdemeanor, or contempt charge (other than person misdemeanors or contempt charge): 90 days community restoration
- Most serious offense of person misdemeanor or contempt charge: If committed to OSH, 90 days hospital restoration followed by 90 days community restoration; OR 90 days of community restoration
- Most serious offense of felony: If committed to OSH, 180 days hospital restoration, followed by 90 days of community restoration OR 180 days of community restoration
- Most serious offense of aggravated murder or crimes listed in ORS 137.300 requiring mandatory sentencing: If committed to OSH, 360 days of hospital restoration followed by 180 days of community restoration; OR 360 days of community restoration
- *Misdemeanor/contempt charge means a misdemeanor or contempt charge outside of the definition of "person misdemeanor or contempt charge".

The language regarding hospital restoration limits would be a change to statute but would not be a change in practice. OSH has been operating under these timelines since the federal court order in September 2022.

The purpose of these time limits is to ensure that, after reasonable efforts at restoration in the hospital are made, the hospital bed can be made available to

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

5 of 8

Declaration of Matthew Green, Exhibit 4, Page 5 of 8

another patient. In turn, this reduces the time that defendants wait in jail for a bed to open at the hospital.

Implementation of the timelines in the September 2022 federal court order resulted in a reduction of average length of hospital stay for patients under an aid & assist order from 160 days to 130 days, and increased aid & assist admissions by 30%.

However, beginning in April 2024, the number of aid & assist orders issued by courts exceeded 94 per month (the maximum sustainable capacity for the hospital) for multiple months in a row. As a result, defendants are again waiting in jail for 20-30 days before admission to the hospital.

Fifty-nine percent of patients with felony charges are evaluated as able or never able to aid & assist prior to OSH discharge. This is slightly increased from prior to the September 2022 federal court order. So shortening the maximum duration of hospital restoration has not affected OSH's ability to restore these individuals.

Most patients under an aid & assist commitment who are discharged due to reaching the maximum duration of hospital restoration under the federal court order have only misdemeanor charges. According to a 2023 study that included individuals admitted to OSH for aid and assist orders between 2017-2022, 41% of Class A misdemeanors were dismissed following discharge.

The time limits for restoration in the community (facilities other that OSH) would fulfill and codify Dr. Pinals's recommendation to increase movement of individuals through community restoration programs, maximize utilization of community resources, and decrease reliance on community restoration as an avenue for mental health treatment.

Currently, there are no statutory time limits on how long a patient can be in community restoration. As with time limits for restoration at the hospital, the purpose of these community restoration time limits is to ensure that, after reasonable efforts at restoration in the community are made, the community bed and other resources can be made available to another patient.

The amendment also states that the maximum time period of commitment and community restoration services may not be longer than the time period that the defendant may have been sentenced to if convicted. On at least some occasions,

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

6 of 8

Declaration of Matthew Green, Exhibit 4, Page 6 of 8

a patient has stayed in community restoration longer than their sentence would have been if convicted.

According to CMHP reported data, out of 2160 completed community restoration cases from 2020 – Quarter 2 of 2024:
- 577 individuals were in community restoration for 1-90 days;
- 551 individuals were in community restoration for 91-180 days;
- 632 individuals were in community restoration for 181-365 days; and
- 400 individuals were in community restoration for more than 365 days.

Subsection (7) also prescribes how the maximum period of commitment and/or restoration services is determined. The maximum period of restoration is determined from the initial date that the defendant is first committed on any charge in the accusatory instrument. The defendant will be given credit against each charge for each day committed or ordered to participate in community restoration. The defendant will also be credited for each day the defendant was held in jail before and after the date of the first commitment or order to community restoration, unless charged with aggravated murder or a crime listed in ORS 137.700(2). The credited days may be consecutive or interrupted, if the defendant had gained or regained fitness to proceed.

*Section 3: ORS 161.371*

This section makes ORS 161.371 to be consistent with the changes made in the previous sections of the bill.

**Importance of HB 3051-3**

To summarize, HB 3051, with the -3 amendment, writes the court order into state law, so that the state hospital can better achieve and maintain compliance with admitting patients under an aid & assist order from jail within 7 days.

However, the benefits go beyond that. It also:
- Ensures that restoration services are focused on defendants who are restorable and for whom the state has an interest in prosecution;

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

7 of 8

Declaration of Matthew Green, Exhibit 4, Page 7 of 8

- Makes more efficient use of beds at the state hospital, which are the scarcest and most expensive treatment beds in the state;
- Protects defendants' rights by ensuring that defendants are regularly evaluated for competency and are not committed to restoration for longer than they would have served if convicted;
- Encourages flow in the community system, so defendants can better access restoration services at the appropriate level of care to meet their needs;
- Helps forensic evaluators give a more definite opinion of restorability by focusing on the available restoration period, which is also better aligned with reasonable expectations of medication treatment.

This bill is not the end of the discussion. There are other bills under consideration this session with the potential to positively impact the entire forensic behavioral health system. HB 3051 will serve as a foundation for those further efforts.

Thank you for your consideration. Please let us know if you have any questions.

Sincerely,

Sara C. Walker, MD
Interim Superintendent
Oregon State Hospital

Ebony Clarke
Behavioral Health Director
Oregon Health Authority

500 Summer St. NE, E-20, Salem, OR 97301 | Voice: 503-947-2340 | Fax: 503-947-2341
All relay calls accepted | www.oregon.gov/oha

8 of 8

Declaration of Matthew Green, Exhibit 4, Page 8 of 8