Steve Elzinga, OSB# 123102
John Pettifer, OSB# 223402
Marion County Legal Counsel
*selzinga@co.marion.or.us*
*jpettifer@co.marion.or.us*
555 Court Street N.E.
PO Box 14500
Salem, OR 97301
Telephone: (503) 588-5220
Attorney for Marion County

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAJEL HATHI, in her official capacity as head of the Oregon Health Authority, and SARA WALKER, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>*Defendants*.<br><br><br>JAROD BOWMAN and JOSHAWN DOUGLAS- SIMPSON,<br><br>*Plaintiffs*,<br><br>v.<br><br>SARA WALKER, Interim Superintendent of the Oregon State Hospital, in her official capacity, SAJEL HATHI, Director of the Oregon Health Authority, in her official capacity,<br><br>*Defendants*. | 3:02-cv-00339-MO (Lead Case)<br>3:21-cv-01637-MO (Member Case)<br><br>**MARION COUNTY'S LIMITED MOTION TO INTERVENE IN RESPONSE TO PLAINTIFF DISABILITY RIGHTS OREGON'S MOTION FOR A RULE TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT, AND FOR A REMEDIAL ORDER** |

**CONFERRAL CERTIFICATION**

Pursuant to the requirements of LR 7-1, Marion County hereby certifies that counsel contacted counsel for all parties in a good faith effort to confer prior to filing this motion. We were unable to resolve this motion informally.

**LIMITED MOTION TO INTERVENE**

Proposed intervenor Marion County hereby moves this Court to intervene in the above captioned case pursuant to Federal Rule of Civil Procedure 24, subsections (a) and (b) for the **limited** purpose of responding to the recently filed Plaintiff Disability Rights Oregon's ("DRO") Motion for a Rule to Show Cause Not Be Held in Contempt, and for a Remedial Order ("DRO 2025 Contempt Motion"). As explained in the attached proposed response, Marion County supports the DRO 2025 Contempt Motion in part and opposes in part.

This motion is supported by the following Memorandum of Law, the DRO 2025 Contempt Motion (Doc. 540), and Marion County's Second Motion to Intervene and supporting exhibits (Doc. 478, 478-1, 478-2, 478-3), which are hereby incorporated by reference.

**MEMORANDUM OF LAW**

**I. INTRODUCTION**

Oregon faces a mental health and public safety crisis. This has overwhelmed the undercapacity Oregon State Hospital and counties across the state. After years of failures, the solution at this point is obvious: Oregon State Hospital needs more capacity.

The DRO 2025 Contempt Motion correctly points out that Oregon State Hospital is in contempt of this Court's orders and wisely requests monetary fines. Marion County supports such monetary fines and seeks to offer guidance from a similar case in Washington on how to make those fines effective. Notably, if the Court is ready to consider meaningful financial

sanctions, allowing Marion County's limited intervention is the best way to ensure the Court's order is vigorously defended when the state appeals.

Unfortunately, the DRO 2025 Contempt Motion also requests major legislative policy changes that would make a bad situation even worse through exclusion of deserving patients. Forgoing any capacity increase would play a dangerous game of musical chairs—with treatment given to a lucky handful of patients while excluding an increasingly larger number of unlucky patients from receiving desperately needed treatment and banishing those patients to the street while in a mental state dangerous for themselves and the community. Continuing down this road will inevitably result in people being badly hurt. Again. Oregon can do better.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure sets out two ways for a party to intervene under FRCP 24(a) and 24(b): intervention by right and permissive intervention.

Intervention by right under FRCP 24(a)(2) requires proof of four elements: (1) the motion is timely, (2) the applicant claims a "significantly protectable" interest relating to the transaction that is the subject of the matter, (3) "the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest," and (4) "the applicant's interest must be inadequately represented by the parties to the action." *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). Federal courts in the Ninth Circuit construe Rule 24(a)(2) "**broadly in favor of proposed intervenors**." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal citations omitted; emphasis added).

FRCP 24(b) gives courts discretion to permit intervention when the prospective intervenor "has a claim that shares with the main action a common question of law or fact." To meet this

standard, a prospective intervenor must prove three elements: (1) the applicant "shares a common question of law or fact with the main action," (2) "the motion is timely," and (3) "the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

Once a prospective intervenor establishes all three, the district court must then decide whether to exercise its discretion. *Id*. The decision to permit intervention under a permissive intervention approach is based on whether the "intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b).

### III. ANALYSIS

Marion County is responsible both for the care of individuals who are left sitting in jail lacking OSH treatment and for individuals discharged from OSH to indefinite community restoration. Marion County's rights are inherently implicated by this case and the DRO 2025 Contempt Motion's proposed major legislative policy changes.

**A. Mandatory Intervention by Marion County**

**1. Marion County's motion to intervene is timely.**

Marion County's motion to intervene for the limited purposes of responding to the DRO 2025 Contempt Motion is as timely as reasonably possible, being filed only two days after the DRO 2025 Contempt Motion. There will be no prejudice to any parties since Marion County is only asking to respond to a newly filed motion with new concepts and is providing its proposed response. As far as Marion County is aware, DRO has made the first motion in this case to request excluding "misdemeanor and status offender referrals to the state hospital." Importantly, DRO's proposed sanctions can only be seen as a new issue for this case, since they are "forward-looking" only and are based on facts as recent as December 2024 when Dr. Packer was hired.

**2. Marion County has a "significantly protectable" interest that is affected.**

A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

Marion County supports DRO's request for "imposing daily contempt sanctions for every person waiting over 7 days for transport to the state hospital for competency restoration services" and that "daily sanction amount could double for every person waiting over 14 days for transport to the state hospital." Motion at 24. Any such fines should be specifically calculated to incentivize OSH to add more capacity, like what was done in Washington. If adopted, this would reduce the number of patients waiting in Marion County jails for restoration, which would improve human health and reduce jail costs. The state's inevitable resistance of such accountability would harm Marion County further.

DRO 2025 Contempt Motion seeks major legislative policy changes that would play Russian roulette with patient safety and public safety. For example, DRO's suggestion to "[l]imit misdemeanor and status offender referrals to the state hospital" would implement exclusionary policies and create more work for Marion County. Patients would be deprived of the hospital-level care they need. Although community restoration services do their best, they do not have the resources, experience, legal tools, or capacity to accommodate such an influx of new patients. Also, persons previously released untreated after being adjudicated unable to aid and assist would be effectively told they have a free pass to re-offend all they want as long as they don't loot, steal, or damage more than $1,000 of property at a time. *See, e.g.*, ORS 164.045; ORS 164.125; ORS 164.354.

Marion County would be required to pick up the slack if OSH no longer accepted any misdemeanor referrals, which would mean providing resources and bearing the risks of harms related to the confinement of individuals on community restoration on the front end while also needing to provide more victim services as crimes increase on the back end. Increasing demand for community restoration services comes at a high cost. Marion County lacks adequate staff and funds to provide the resources needed to ensure that a new avalanche of individuals on community restoration are given appropriate placement and medications.

Individuals who are not stabilized are leaving the community restoration program. Many of these individuals are charged with grave violent offenses and pose a significant risk to themselves and others.

### 3. Marion County's interests are not adequately represented by the current parties.

The interests of the current parties in the case do not align with those of Marion County. The state seeks to make excuses and avoid accountability. Despite projecting an 11.5% increase in total revenue ($35.6 billion increase), the Governor's 2025-2027 Recommended Budget talks about "stabilizing" the state hospital while proposing zero increase in hospital **capacity**.[1] The OHA Director's December 2024 "listening tour" report doesn't even mention the state hospital.[2]

Plaintiffs seek major legislative policy changes that are outside the responsibilities of the judicial branch and endanger all Oregon residents. All current parties agree on trying to shift the burdens of restoration onto counties. Marion County stands in a unique position.

---

[1] 2025-2027 Governor's Budget, State of Oregon, https://www.oregon.gov/das/financial/documents/2025-27_gb.pdf, *compare* p. 10 *with* pp. 53-54.
[2] Oregon Health Authority, OHA Director 2024 Statewide Listening Tour (Dec. 2024) https://www.oregon.gov/oha/Documents/OHA-2024-Listening-Tour-Report_12.2024.pdf

**B. Permissive Intervention by Marion County.**

    **1. Marion County has questions of law and fact in common with the original case.**

Marion County seeks to intervene to support or oppose various portions of the DRO 2025 Contempt Motion as explained above. Principles of standing and judicial economy favor resolving the County's concerns along with those already considered.

    **2. Marion County's motion to intervene is timely.**

Marion County's motion to intervene for the limited purposes of responding to the DRO 2025 Contempt Motion is as timely as reasonably possible as explained above, being filed only two days after the DRO 2025 Contempt Motion that contains new remedy concepts.

    **3. Marion County's motion will not unduly delay or prejudice the adjudication of the original parties' rights.**

Marion County's proposed limited intervention in this case would not significantly delay or prejudice other parties as intervention is limited to responding to an existing, new motion.

## V. CONCLUSION

The current parties in this case continue to deny the fundamental reality that additional capacity is the only way out of the current crisis. Marion County brings a valuable different perspective. Marion County respectfully ask the Court to allow intervention in this case for the limited purpose of responding to the new DRO 2025 Contempt Motion.

DATED this 9th day of January, 2025.

                                                    Respectfully submitted,
                                                  MARION COUNTY LEGAL COUNSEL

                                                  *s/ Steve Elzinga*
                                                Steve Elzinga, OSB# 123102
                                                Of Attorneys for Proposed Limited Intervenor
                                                Email: selzinga@co.marion.or.us

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing MARION COUNTY'S LIMITED MOTION TO INTERVENE IN RESPONSE TO PLAINTIFF DISABILITY RIGHTS OREGON'S MOTION FOR A RULE TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT, AND FOR A REMEDIAL ORDER upon interested counsel by the following indicated method on the date set forth below:

<u>XX</u>    By electronic means through the Court's Case Management/Electronic Case File system on the date set forth below;

___    By faxing a copy thereof to each attorney at each attorney's last-known facsimile number on the date set forth below;

___    By mailing a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorney's last-known office address listed above and causing it to be deposited in the U.S. mail at Salem, Oregon on the date set forth below;

___    By causing a copy thereof to be hand-delivered to said attorney at each attorney's last-known office address listed above on the date set forth below;

Dated this 9th day of January, 2025

*s/ Steve Elzinga*
Steve Elzinga, OSB# 123102
Of Attorneys for Proposed Limited Intervenor
Marion County
555 Court St. N.E., Suite 5242
PO Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Email: selzinga@co.marion.or.us
