Eric J. Neiman, OSB #823513
eneiman@ebglaw.com
Emma P. Pelkey, OSB #144029
epelkey@ebglaw.com
EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, OR  97209
Telephone:  503.343.6475

Thomas R. Johnson, OSB #010645
Tom.Johnson@stoel.com
Alex Van Rysselberghe, OSB #174836
Alex.VanRysselberghe@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Plaintiffs*

Hon. Adrienne Nelson

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON; METROPOLITAN PUBLIC DEFENDERS INCORPORATED; and A.J. MADISON,<br><br>                 Plaintiffs,<br><br>v.<br><br>SEJAL HATHI, in her official capacity as Director of Oregon Health Authority; and SARA WALKER, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>                 Defendants. | Case No.:  3:02-cv-00339-AN (Lead Case)<br><br>PLAINTIFFS LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; AND ST. CHARLES HEALTH SYSTEM'S RESPONSE TO DISABILITY RIGHTS OREGON'S AMICUS BRIEF REGARDING MOTIONS TO INTERVENE AND THIRD-PARTY STANDING |

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - i

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

JAROD BOWMAN; and JOSHAWN
DOUGLAS SIMPSON,

                Plaintiffs,

v.

SARA WALKER, Superintendent of the
Oregon State Hospital, in her individual and
official capacity; SEJAL HATHI, Director of
the Oregon Health Authority, in her individual
and official capacity,

                Defendants.

Case No.: 3:21-cv-01637-AN (Member Case)

---

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH; LEGACY
HEALTH SYSTEM; PEACEHEALTH;
PROVIDENCE HEALTH & SERVICES –
OREGON; and ST. CHARLES HEALTH
SYSTEM,

                Plaintiffs,

v.

SEJAL HATHI, in her official capacity as
Director of Oregon Health Authority,

                Defendant.

Case No.: 6:22-cv-01460-MO (Member Case)

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - ii

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

# INTRODUCTION

Since the start of this case, Disability Rights Oregon ("DRO") has aggressively opposed Hospitals' lawsuit seeking to ensure that civilly committed patients receive appropriate treatment in the least-restrictive setting. DRO even supported the Oregon Health Authority's ("OHA") motion to dismiss, which argued that patients were entitled to only "minimally adequate" care, and which sought to maintain a status quo in which OHA violates patients' rights by preventing them from getting long-term treatment.

At first, Hospitals were surprised. DRO claimed to be "advocat[ing] for the rights of" civilly committed patients. ECF 32-1 at 2. Why, then, would DRO oppose Hospitals' efforts to improve treatment options, and fight to maintain the unacceptable status quo?

The answer soon became clear. DRO was, in fact, *not* advocating for the interests of civilly committed patients, but rather was advocating for its own clients' competing interests in *Oregon Advocacy Center v. Mink*, 3:02-cv-339-AN. Specifically, DRO sought to ensure that aid-and-assist patients maintained priority access to scarce resources at the Oregon State Hospital ("OSH"), secure residential treatment facilities, and community residential facilities, which necessitated that civilly committed patients had *less* access to such care. Given DRO's clear conflict of interest, the Ninth Circuit decisively rejected Judge Mosman's earlier finding that DRO should speak on behalf of civilly committed patients, explaining that such finding was

> clearly erroneous. . . . DRO represents the 'mentally incapacitated criminal defendant[s]' in the *Mink* litigation. . . . It is undisputed that the defendants represented by DRO compete with civilly committed patients for the limited bed space available at OSH. The conflict between the interests of civilly committed patients and DRO's clients in the *Mink* litigation calls into serious question DRO's ability to fairly represent the civilly committed patients.

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

ECF 105 at 7.

Immediately thereafter, the Mental Health Association of Portland ("MHAP")—another advocacy organization "partnered" and ideologically aligned with DRO—moved to intervene. As explained below, MHAP has direct ties to DRO, a key fact that DRO and MHAP omit. MHAP has several DRO attorneys serving in its leadership positions, including attorneys involved in *Mink-Bowman* who represent aid-and-assist patients competing for the same resources as civilly committed patients. MHAP also has an advocacy program, the Mental Health Alliance, in which DRO serves as one of the key organizational members, and DRO attorneys serve as members of its work group.

Despite never once previously speaking out for civilly committed patients about OHA's unlawful practices in this or any case, MHAP now seeks to be the only voice for such patients in this litigation. Notably, MHAP seeks to advance the *same* arguments that DRO made; MHAP also, like DRO, opposes the participation of all other voices not ideologically aligned with it (including that of NAMI-Oregon, which seeks to voice the interests of its constituent members throughout Oregon). DRO now expresses its full-throated support for MHAP, suggesting that MHAP's intervention is coordinated to pick up DRO's mantle and advance DRO's objectives.

The timing and circumstances surrounding MHAP's intervention—including its direct ties with DRO—"calls into serious question" MHAP's "ability to fairly represent the civilly committed patients." ECF 105 at 7. Nonetheless, MHAP fails to meet the basic requisites of intervention, and DRO adds nothing to rescue MHAP's arguments. DRO also rehashes its old arguments concerning Hospitals' third-party standing, which have already been rejected by the

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 2

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

Ninth Circuit and are meritless. The Court should reject DRO's arguments and deny MHAP's motion to intervene.

## ARGUMENT

**A.    DRO's direct ties to MHAP raises serious questions about MHAP's role in this case, given the Ninth Circuit's finding of DRO's conflict.**

Since 2002, DRO has fought in *Mink* to ensure that aid-and-assist patients have priority access to scarce state behavioral health resources, including admission to OSH and community residential facilities. Unfortunately, a downstream result of DRO's efforts in *Mink*—together with, critically, OHA's abject failure to fund, staff, and increase treatment resources to meet Oregon's rapidly growing behavioral health population—is that civilly committed patients have been relegated to third-priority status in Oregon's behavioral health patient community. The graph below starkly shows this trend insofar that OHA has chronically reduced admissions of civilly committed patients to OSH while increasing admissions of aid-and-assist patients:



SAC ¶ 25.

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 3

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

Seeking to end OHA's unlawful practices and ensure civilly committed patients receive access to the full range of appropriate long-term placement options, Hospitals filed this lawsuit. Almost immediately thereafter, DRO expressed its opposition to Hospitals' claims, supporting OHA's motion to dismiss and antagonistically trying to impugn Hospitals' motives for bringing the case. *See* ECF 32-1.

Although Hospitals first were perplexed by DRO's opposition to a lawsuit aimed at improving timely access to appropriate long-term treatment for civilly committed patients, Hospitals soon learned of DRO's underlying intentions. DRO was *not*—contrary to their express representations—seeking to "advocate for the rights of" civilly committed patients' interests. *Id.* at 2. DRO was instead concerned with ensuring that their work in *Mink* remained intact: specifically, that aid-and-assist patients received priority access to Oregon's scarce behavioral health resources. *See, e.g.*, *id.* at 18 (seeking to preserve aid-and-assist priority treatment by baldly asserting that civilly committed patients "may not wish to have a rule that would place a patient in civil commitment ahead of a patient on aid-and-assist commitment"). DRO also seemed to believe it was fighting for its broader public policy objectives: to resist any expansion of resources for civil commitment.[1]

---

[1] As a general matter, DRO fervently opposes civil commitment. For example, on January 28, 2025, DRO appeared before the House Committee on Judiciary where it presented a slide deck entitled, "Civil Commitment is Not the Solution." DRO's slides can be accessed at the following link: https://olis.oregonlegislature.gov/liz/2025R1/Committees/HJUD/2025-01-28-15-00/MeetingMaterials. *See also* DRO, *FAQ: Civil Commitment in Oregon*, https://www.droregon.org/advocacy/civil-commitment-faq?rq=civil%20commitment; DRO, *Danger is afoot as the 2025 Legislative Session approaches!*, https://disabilityrightsoregon.salsalabs.org/take-action-to-protect-people-with-mental-illness/index.html. It is worth noting, however, that DRO's view is not shared by all others in the behavioral health community—many other advocates hold different and nuanced views. *See, e.g.*, Brief of *Amicus Curiae* National Alliance on Mental Illness-Oregon in Support of Appellants' Opening Brief, *Legacy Health Sys. v. Allen*, No. 23-35511 (9th Cir.), Dkt 18 at 10–

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 4

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

It was in this context that DRO argued that Hospitals had disqualifying conflicts of interest with patients. *Id.* at 5–20. Judge Mosman accepted these arguments and dismissed Hospitals' third-party claims, finding, "If any party in this proceeding should be able to speak on behalf of civilly committed patients, DRO would likely be the one to do so." ECF 88 at 7.

The Ninth Circuit, however, held that this finding was "clearly erroneous." ECF 105 at 8. The Ninth Circuit observed that DRO's representation of aid-and-assist patients in *Mink* "calls into serious question DRO's ability to fairly represent" civilly committed patients, and rejected DRO's reasoning that Hospitals' supposed financial "conflicts" disqualified Hospitals from representing patients. *Id.* at 7–8. In sum, the Ninth Circuit did not buy DRO's argument that Hospitals had disingenuous motives in asserting the claims of their patients. DRO, meanwhile, had a clear conflict of interest—notwithstanding its express claim that it was "advocat[ing] for the rights of" civilly committed patients. *Id.* at 7.[2]

After DRO was conflicted out, MHAP moved to intervene. *See* ECF 139. MHAP is a Portland-based organization that purports to "represent[] the interests of people with mental illness with legislative advocacy, in state and Federal courtrooms, on the curbside with media, and at the bedside with urgent care management." MHAP Compl. ¶ 25. MHAP, to be clear, does not purport to employ attorneys (like DRO) to represent individuals in behavioral-health-

---

13 (noting "a diversity of viewpoints among organizations that advocate for the rights of" behavioral health patients, including viewpoints differing from DRO's position).

[2] DRO's efforts to prioritize aid-and-assist treatment over civil commitment treatment remains active. Just two weeks ago, DRO helped secure the passage of a temporary OHA rule to amend OAR 309-035-0163 to prioritize aid-and-assist admissions in long-term residential treatment facilities and homes. *See* Declaration of Alex Van Rysselberghe, Exhibit 1. The rule explicitly marginalizes civilly committed patients, requiring residential facilities to give literal "*second priority consideration*" to prospective residents "seeking to transition from [OSH] into the community and are under a current civil commitment," and give "first priority consideration" to aid-and-assist and guilty-except-for-insanity patients. *Id.* at 2, 7 (emphasis added).

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 5

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

related litigation. Rather, MHAP appears to be a smaller organization that primarily offers support and educational resources to those who contact it, including referring individuals to outside attorneys (including DRO).[3] MHAP also advocates for public policies aligning with its ideology, including "reducing the necessity of civil commitment, rather than expanding the practice." MHAP Motion to Intervene, ECF 139 ("Intvn.") at 14. On this issue, MHAP and DRO are closely aligned: MHAP and DRO frequently work together to jointly advance this shared ideological goal.

MHAP now seeks to assert claims not on behalf of its own members (MHAP does not appear to have true "members"), but rather "on behalf of the hospital patients in Hospitals Corporations' facilities." MHAP Compl. ¶ 31. However, DRO's direct ties to MHAP "calls into serious question" MHAP's interests for intervening and (like DRO) its ability to fairly represent Hospitals' patients. While DRO makes a great deal out of the fact that two Providence employees sit on NAMI-Oregon's board, MHAP's connections to DRO are even greater. Numerous DRO employees have sat on MHAP's leadership committees[4]; a DRO lawyer currently sits on MHAP's board of directors; DRO's Legal Director (who represents Plaintiffs in *Mink-Bowman*) currently sits on MHAP's Conference Planning Committee; DRO's Managing

---

[3] *See* https://www.mentalhealthportland.org/need-help/ (stating that "this organization does not give . . . legal advice" and listing attorneys to which MHAP often refers, including DRO).

[4] For instance, DRO's Executive Director used to sit on MHAP's Project Council, and numerous DRO employees—including DRO's staff attorney, disability rights attorney, disability and civil rights attorney, managing attorney, investigator, and Executive Director—have all served on MHAP's Mental Health Alliance. *See* Wayback Machine: MHAP, *About Us*, 2019–2024, https://web.archive.org/web/20190808151958/https://www.mentalhealthportland.org/about-2/; https://web.archive.org/web/20200703213932/https://www.mentalhealthportland.org/about-2/; https://web.archive.org/web/20210711022843/https://www.mentalhealthportland.org/about-2/; https://web.archive.org/web/20220808111025/https://www.mentalhealthportland.org/about-2/; https://web.archive.org/web/20230804205206/https://www.mentalhealthportland.org/about-2/; https://web.archive.org/web/20240714180213/https://www.mentalhealthportland.org/about-2/.

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 6

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

Attorney currently sits on MHAP's Mental Health Alliance[5]; and MHAP expressly lists DRO as one of a small handful of "Partnering Organizations."[6]  Moreover, DRO serves as one of the key organizational members of MHAP's Mental Health Alliance.[7]  MHAP and DRO are also both advocacy organizations that work together to advance their shared ideology of reducing or ending civil commitment statewide, and have a long history of partnering on litigation.[8]  Given these deep ties and the suspicious timing of MHAP's appearance, it strongly appears that MHAP seeks to intervene to serve as DRO's arm, notwithstanding DRO's recognized conflict.

The Court should reject MHAP's (and DRO's) efforts to intervene in this case.  It is inappropriate for MHAP to have direct ties to a blatantly conflicted party, especially where (as here) MHAP seeks to be the sole voice for all civilly committed patients in this litigation.  The Court should disregard DRO's arguments and deny MHAP's motion to intervene.

**B.      DRO adds nothing to show how MHAP has standing to assert claims on behalf of Hospitals' patients.**

Even putting aside DRO's (and MHAP's) conflicts, DRO adds nothing to demonstrate that MHAP has either standing to sue or a protectable interest justifying intervention.  DRO first tries to rescue MHAP's anemic standing argument by raising a new argument under *Hunt v.*

---

[5] *See* https://www.mentalhealthportland.org/about-2/.

[6] *See* https://www.mentalhealthportland.org/wp-content/uploads/2021/06/MHAP-Board-of-Directors-2021.pdf.

[7] *See* https://www.mentalhealthportland.org/about-2/ (noting that Mental Health Alliance is a program of MHAP); *see also* https://www.mentalhealthalliance.org/ (describing Mental Health Alliance and disclosing DRO as an organizational member).

[8] For example, in 2018, MHAP's Mental Health Alliance, joined the federal lawsuit, *United States v. City of Portland* as an amicus curie, where it disclosed that it was "comprised of Disability Rights Oregon, the Mental Health Association of Portland, and Cascadia Behavioral Healthcare."  *See* Mental Health Alliance's Motion for Enhanced-Amicus Curiae Status in *United States of America v. City of Portland*, No. 3:12-cv-02265-SI (ECF 173 at 3).

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 7

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

*Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  According to DRO, *Hunt*
establishes that MHAP can have standing even if none of its "members" are, or likely will be,
civilly committed.  DRO Amicus Brief, ECF 164 ("Amc.") at 2–4.  According to DRO, being a
"constituent organization" with supposed "constituent 'indicia of membership'" is enough to
establish standing.  *Id.*

DRO mischaracterizes *Hunt*.  *Hunt* involved an organization nothing like MHAP: a state
agency with a mandatory membership of apple growers, on whose behalf the agency's governing
commission ("Commission") sued to challenge a state law that negatively impacted all apple
growers within the mandatory membership.  432 U.S. at 337.  The Supreme Court held that the
Commission had associational standing to represent its mandatory members, for two reasons.
First, although the Commission was not a "traditional trade association," it had a mandatory
membership that "possess[ed] all the indicia of membership in an organization," including that
growers "alone elect the members of the Commission," growers "alone may serve" on the
Commission, and growers "alone finance [the Commissions'] activities . . . through assessments
levied on" growers.  *Id.* at 344–45.  Second, the Commission suffered its own direct injury, as
the state law could have hurt the apple market which, in turn, "could reduce the amount of the
assessments due the Commission and used to support its activities."  *Id.* at 345.

MHAP has nothing in common with the Commission in *Hunt*.  Notwithstanding MHAP's
vague reference to undefined "members," MHAP Compl. ¶ 17, MHAP appears to have no
"members" at all, mandatory or otherwise.[9]  Indeed, DRO effectively admits this, *see* Amc. at 3–
4, instead referring to MHAP's "constituency"—but likewise failing to define whom that
supposed "constituency" includes, *see id.* at 2–3.  Nor does either DRO or MHAP show how

---

[9] *See generally* https://www.mentalhealthportland.org/.

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 8

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

MHAP has even "indicia of membership." *Hunt*, 432 U.S. at 345. Neither DRO nor MHAP claims that the patients it seeks to represent elect or serve as MHAP's leaders or finance MHAP's activities, or do anything else for MHAP. *See id.* Contrary to DRO's assertion, *Hunt* does not say that any civilly committed patient in the universe is MHAP's "constituent" merely because MHAP claims to advocate for civilly committed patients generally. MHAP also alleges no direct injury, unlike the Commission in *Hunt*, which identified a direct financial injury to itself arising from the state's conduct. *Hunt* accordingly does not help MHAP and DRO.

**C.    DRO fails to show that MHAP will be "actually affected" by Hospitals' claims in this litigation or that MHAP's claims are viable.**

DRO likewise adds nothing to show that MHAP has a protectible interest favoring intervention. DRO agrees that intervention should be denied as "unrelated" if resolution of the parties' original claims would not "actually affect" the intervenor. Amc. at 12; *see Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998). If anything, DRO's arguments confirm that MHAP will *not* be affected by this case.

MHAP asserts that its protectable interest arises from its political advocacy to reduce civil commitment statewide. Intvn. at 7–8. DRO, however, carefully avoids this subject and argues instead that MHAP's interest comes from MHAP's representation of Hospitals' patients. *See* Amc. at 13; *see also* MHAP Compl. ¶ 31 (MHAP seeks to bring its claims "on behalf of the hospital patients in the Hospital Corporations' facilities").[10] According to DRO, MHAP "would

---

[10] This is an important distinction between MHAP's and NAMI-Oregon's cases for intervention. NAMI-Oregon seeks to intervene to assert claims of its constituent members facing civil commitment—which overlaps with, but is ultimately broader than, Hospitals' patients at any given point in time. Intvn. at 3, 11. MHAP, in contrast, does not purport to assert the claims of its members (indeed, it does not even appear to have constituent members), and does not allege that any members, employees, or associates now or likely will face civil commitment in Hospitals' facilities. MHAP instead seeks to assert claims "on behalf of *the hospital patients in the Hospital Corporations' facilities*," despite not showing any existing connection with

be greatly affected by an outcome" in this case because MHAP "seeks to step into the role of representing" patients in Hospitals' facilities, who would be affected by this case. Amc. at 13.

This, however, does not show that a party is "actually affected" by a case. DRO's reasoning is circular: MHAP is affected by this litigation, and therefore should join it to represent patients, because, if MHAP joined to represent patients, MHAP would be affected. Unsurprisingly, DRO identifies no authorities relying on such logic. *See* Amc. at 11–15.

Moreover, DRO fails to address a glaring threshold question: *how* can MHAP "step in" to "represent" Hospitals' patients? Amc. at 13. MHAP does not claim that its members, or anyone affiliated with MHAP, are or will be civilly committed (indeed, MHAP does not even appear to have "members"[11]). Nor does MHAP claim to directly represent any of Hospitals' patients. MHAP only seems to seek to assert their claims on a third-party or associational standing basis. But neither DRO nor MHAP try to meaningfully explain how MHAP can establish third-party standing with the individuals who are patients in Hospitals' facilities. *See Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (requiring, among other things, a "close relation" with the third party, like a "confidential relationship" as between doctor and patient). Nor does DRO explain how MHAP has associational standing, as discussed above and in Hospitals' Response to MHAP's Motion to Intervene at 7–9.

---

Hospitals' patients. MHAP Compl. ¶ 31 (emphasis added). Or as DRO puts it, MHAP "seeks to step into the role of representing" Hospitals' patients in Hospitals' place (that is, push Hospitals aside so that MHAP, not Hospitals, represent Hospitals' patients). Amc. at 13. If granted this role, MHAP would "advance" MHAP's (and DRO's) political "cause of reducing civil commitments," Intvn. at 9, under the guise of "provid[ing] the kind of representation" to Hospitals' patients that MHAP has unilaterally decided are what "persons with mental illness want and deserve." Intvn. Reply at 1–2.

[11] *Compare* NAMI-Oregon Membership – Renew or Join, at https://fs25.formsite.com/namioregon/membership/index.html.

PLAINTIFFS' RESPONSE TO DISABILITY RIGHTS OREGON'S AMICUS BRIEF PAGE - 10

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

DRO further fails to explain how MHAP's new claims asserted against Hospitals are not "unrelated" to the present litigation. *See* Amc. at 14–15. Whether Hospitals successfully establish that OHA is failing its legal duties to civilly committed patients has no bearing on whether MHAP can establish that *Hospitals* are supposedly failing *their distinct* legal duties to patients. These claims are logically independent. Indeed, DRO's citation to *Arakaki v. Cayetano*, 324 F.3d 1078, 1085 (9th Cir. 2003) and *Akina v. Hawaii*, 835 F.3d 1003, 1012 (9th Cir. 2016) supports Hospitals, not DRO, on this point. In both cases, the Ninth Circuit rejected intervenors' arguments on the same reasoning as Hospitals assert above. *See Arakaki*, 324 F.3d at 1085 (affirming denial of intervention of party seeking to limit class of eligible beneficiaries of Office of Hawaiian Affairs benefits, which was unrelated to original parties' claims challenging the overall constitutionality of race-based provision of such benefits); *Akina*, 835 F.3d at 1012 (affirming denial of intervention of party seeking to challenge the definition of "Native Hawaiian" as unrelated to original parties' claims challenging the process in which "Native Hawaiians" sought to establish their own government).

DRO finally fails to address other flagrant problems with MHAP's claims against Hospitals on the merits. MHAP alleges that Hospitals have failed to provide long-term treatment to patients who OHA abandons in their care.[12] DRO now clarifies that this claim is essentially

---

[12] Throughout its Reply Brief in Support of Motion to Intervene, both DRO and MHAP make numerous false statements about Hospitals' allegations, such as that Hospitals "were caught admitting to not providing the least restrictive environment possible for their own patients and prioritizing the pecuniary impact that has on their businesses." Intvn. Reply at 3. DRO makes similar statements, Am. at 5, and asserts that Hospitals harbor "overwhelming hostility" toward their patients because of the language and font used by Hospitals' counsel in a previous pleading, *id.* at 7–9. It is difficult to figure where to begin in responding to such obtuse and seemingly intentionally misleading statements. Nowhere do Hospitals suggest that they are "not providing the least restrictive treatment possible for their own patients." Not once do Hospitals allege that less restrictive options are available in their facilities, let alone that Hospitals are inappropriately denying patients access to such spaces. Further, Hospitals' accurate factual description of the

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 11

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

intended to force community hospitals to change their care models to begin offering residential

treatment services that they are not equipped to provide. *See* Amc. at 14–15.[13]  But this claim

makes no sense, either factually or legally.  For one, it demonstrates a fundamental

misunderstanding of the capabilities and type of treatment offered in a community hospital

setting.  Community hospitals provide emergency and acute care because that is what they are

equipped, staffed, and designed to provide.  Community hospitals are not long-term placements,

such as secure residential treatment facilities or residential facilities, because that is an entirely

different type of care setting.  While it is curious that DRO is eager to join forces with OHA to

push responsibility for long-term care onto acute care hospitals, that is not what the law requires.

By law, it is OHA's duty to ensure that sufficient long-term treatment options exist for civilly

committed patients throughout the state because patients are committed *to OHA* for treatment.

*See* ORS 426.130(1)(a)(C).  Nothing in Oregon law, the ADA, the Due Process Clause, or any

other law has ever required nonprofit community hospitals—which provide emergency and acute

care—to create long-term treatment facilities sufficient to shoulder OHA's burden when OHA

has chosen not to provide adequate treatment resources.

Ultimately, DRO's (and MHAP's) arguments are premised on mischaracterizing what

this case is about.  The issue is not "who is responsible" for civilly committed patients, as DRO

---

terrible outcomes of OHA's failures in no way evidences hostility; Hospitals are merely
describing what happens when OHA fails to provide civilly committed patients appropriate long-
term treatment.  That MHAP and DRO resort to such misstatements suggests a troubling
willingness to mischaracterize Hospitals' allegations and ignore the unacceptable status quo of
OHA's practice of abandoning patients who are civilly committed to its custody for treatment.

[13] This would serve DRO's and MHAP's policy objectives of reducing reliance on state
institutional treatment.  *See* DRO, *Danger is afoot as the 2025 Legislative Session approaches!*,
https://disabilityrightsoregon.salsalabs.org/take-action-to-protect-people-with-mental-
illness/index.html.

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 12

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

submits.  *See* Amc. at 13–15.  OHA has already agreed, from the start of this case, that "OHA is responsible for [patients] once they are civilly committed."  ECF 75 at 30.  The issue, rather, is *what care and treatment OHA is obligated to provide to civilly committed individuals, and in what setting*.  OHA's failures to its own patients do not create an obligation for Hospitals to change their acute care model and transform into long-term treatment facilities.  Neither DRO nor MHAP shows otherwise.

### D.     DRO's arguments about Hospitals' third-party standing have already been rejected by the Ninth Circuit, and regardless are meritless.

In addition to trying to rescue MHAP's arguments for intervention, DRO again attacks Hospitals' claims by rehashing the same argument it has made since the start of this case: that Hospitals have "conflicts" with their patients due to vague "financial interests."  Amc. at 11–15.

As an initial matter, it is perplexing that DRO continues to make this argument, as the Ninth Circuit has already rejected it as a basis for dismissing Hospitals' third-party claims.  *See* ECF 105 at 8.  DRO simply blows past this and urges this Court to dismiss Hospitals' third-party claims again, on the very same grounds.  Obviously, doing so would just lead to the same result as before: the Ninth Circuit vacating this Court's ruling and remanding the case back for further analysis.  The Court should reject DRO's invitation to err a second time.

In any event, DRO continues to fail to articulate Hospitals' supposed "conflict" in any meaningful detail.  DRO's argument seems to be that, because Hospitals allege that their resources are depleted due to OHA's practice of abandoning patients in community hospitals, Hospitals' "interest . . . is not to have the patients in their care *at all*," and to "get[] the patients out *quickly*—even to an inappropriate setting like a homeless shelter or a residential care setting

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 13

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

that doesn't offer appropriate services," conflicting with patients' interests of "getting to a *better*

placement, even if that takes some time."  Amc. at 9–10 (emphases in original).

DRO's assertion is utterly false, for numerous reasons.  For one, DRO completely ignores

Hospitals' allegations *refuting this very issue*:

> Plaintiffs are *not* seeking any relief that will . . . *allow for the*
> *premature discharge of Plaintiffs' patients to inappropriate*
> *settings*.  Critically, Plaintiffs seek no relief in which a patient
> receiving treatment at Plaintiffs' hospitals will receive less
> treatment at Plaintiffs' hospitals, *unless and until more suitable*
> *treatment for that patient is available elsewhere* and *it is in the*
> *patients' best interests to receive that treatment*. . . .  Indeed, any
> such outcomes *would contravene Plaintiffs' missions to ensure*
> *high-quality, compassionate, and patient-centric healthcare for*
> *patients and the community*. . . .  Unless and until OHA ensures
> that additional treatment options are available, Plaintiffs will
> continue treating all civilly committed patients in their care—as
> Plaintiffs have for decades—in accordance with Plaintiffs' patient-
> focused nonprofit missions.

SAC ¶ 62 (emphases added).  This is critical because, in assessing Hospitals' third-party claims

at the pleading stage, the Court must take these allegations as true and construe them in the light

most favorable to Hospitals.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Despite

this standard, DRO's response to Hospitals' allegations appears to be simply, "we don't believe

Hospitals."  That is no reason to dismiss a claim at the pleading stage—to do so would be, again,

reversible error.

Even putting the legal standard aside, DRO's argument simply makes things up in

claiming that Hospitals' interest "is not to have the patients in their care *at all*."  Amc. at 9.  This

assertion is totally ignorant of the realities of healthcare.  It is, in fact, *very much in Hospitals'*

*interests* to serve their crucial role in the behavioral health continuum of care by providing

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 14

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

civilly committed patients with emergency and acute care, which Hospitals are equipped to provide and what they have done for decades in accordance with their patient-focused nonprofit missions.  As Hospitals have repeatedly explained, their injuries arise not from having patients in their Hospitals at all, but specifically from having to house patients for extended periods of time, after the point at which patients can no longer medically benefit from emergency and acute care.  This, in turn, prevents Hospitals from continuing to treat other detained and civilly committed patients who need emergency and acute care, and in turn leads to patients getting backed up in emergency rooms.

DRO, further, ignores that Hospitals have legal, ethical, and mission-based duties to civilly committed patients, including not to discharge patients inappropriately.  SAC ¶¶ 8–12, 34, 37–38, 40, 42, 44.  To be sure, this Court need not take Hospitals at their word: history serves as proof.  Hospitals have faced these problems for years, yet have not sought premature or inappropriate discharge of civilly committed patients (indeed, their inability to appropriately discharge patients when they are ready *is the whole premise of this lawsuit*).  At oral argument before the Ninth Circuit, Judge Fletcher zeroed in on this fact; despite his repeated questioning, OHA was unable to resolve this crucial flaw in OHA's and DRO's argument:

> Judge Fletcher: . . . [I]s the hospital seeking permission to send them to some sub—suboptimal place?  I mean, is that what they're requesting in the lawsuit?

> OHA: No. That's not what their relief is in the lawsuit.  No. . . .

> Judge Fletcher: So—so, what makes you think that's going to be the result of the lawsuit?

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 15

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

OHA: Because I think the practical reality is, as DRO noted in its briefing below, that there is just a tension between trying to get them out as soon as you can so the beds are—

Judge Fletcher: . . . I understand that. But—and that—that exists no matter how we rule. I mean, that—that's—that's been in existence for a very long time. And they apparently—they're keeping them. So, how would an order from our court that says, uh, Oregon has an obligation to provide suitable placement for these people—how would that change the reality? How would that then allow them to send them to some suboptimal place where they're not now sending them?

. . . . .

OHA: . . . I just think if you have a situation where these hospitals are rendering care because they need to, um, and because of the strain on the system—you know, as they say in their complaint, there just are not beds elsewhere to send them to. And I think that that means if you're trying to transition them out, you know, there's an assumption that there are other beds, and that's just not the case as alleged.

. . . . .

Judge Fletcher: . . . [A]nd I'm having trouble still understanding the nature of the divergence because I think I just heard you say that if we allow them to go forward as third party representatives, uh, they're nonetheless going to be subject to the same obligations they have now in terms of not placing them to some suboptimal place. But you told me they're going to do that. And I don't get—I don't quite understand yet.

Declaration of Alex Van Rysselberghe, Exhibit 2 at 36–39. Notwithstanding OHA's answers to these questions, the Ninth Circuit rejected Judge Mosman's, OHA's, and DRO's reasoning about Hospitals' "conflicts" as insufficient to justify dismissing the third-party claims. ECF 105 at 8.

DRO also cites (again) *Siskiyou Hospital, Inc. v. California Department of Health Care Services*, No. 22CV00487TLNKJN, 2022 WL 118409 (E.D. Cal. Jan. 12, 2022), in which a district court held that a hospital could not assert its patients' claims because the hospitals

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 16

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

ultimately sought to remove those patients entirely, creating a conflict with patients' interests. *Id.* at *4–5. Tellingly, while both DRO and OHA have repeatedly cited this case, neither have once addressed its key distinguishing fact. In *Siskiyou Hospital*, the hospital sought "to avoid providing *any* care to these patients," *precluding* involuntarily committed patients from getting any mental and physical health care, *id.* at *4, whereas here, that is ***the opposite of what Hospitals are seeking***. Again, Hospitals here seek to *continue providing acute and emergency* care to civilly committed patients, as they are equipped, designed, and licensed to do. ECF 140 at 1. DRO and OHA ignore this fact, and the Court should accordingly reject the comparison.[14]

In sum, this Court should reject DRO's repeated efforts to smear Hospitals as having "overwhelming hostility" toward their patients. Amc. at 8. Hospitals again urge this Court to consider the context in which DRO makes these aggressive arguments: to preserve the rights of its own clients in *Mink*. As the Ninth Circuit recognized, DRO is not a reliable authority to advocate for civilly committed patients regarding the matters in this case. ECF 105 at 7.

### E.    DRO fails to show that MHAP is a more appropriate intervenor than NAMI-Oregon.

The Court should finally reject DRO's arguments that NAMI-Oregon is an inappropriate representative of patients in this case, and that MHAP is a preferable representative. DRO's main argument against NAMI-Oregon is that two members of NAMI-Oregon's board of directors are employed by Providence, which purportedly suggests that NAMI-Oregon is "captured" by Hospitals. Again, NAMI-Oregon's ties to Providence pale in comparison to MHAP's ties to DRO. *See supra* Part A. In any event, DRO does not explain why the fact that

---

[14] DRO also cites purported examples in which Hospitals have allegedly discharged patients prematurely. But DRO grossly mischaracterizes the facts of each occurrence. Moreover, none of DRO's examples concern civilly committed patients, let alone show that Hospitals now or will mistreat or prematurely discharge patients *under orders of civil commitment*.

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 17

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

just two Providence employees sitting on NAMI-Oregon's board would cause NAMI-Oregon to abandon its mission to advocate for its members and prosecute this case to protect Hospitals' purported financial interests over members' interests.

Compare this with MHAP's even closer direct ties to DRO. Even *more* DRO employees and leaders serve as MHAP's leaders, and MHAP openly calls DRO a "partner." Moreover, MHAP and DRO are both advocacy organizations, which frequently work together to advance shared policy objectives. There is accordingly far more of a concern that MHAP, if allowed to intervene, will work to further DRO's objectives, at least some of which have already been established to be in conflict with civilly committed patients' interests here.[15]

## CONCLUSION

In *Mink*, DRO has aggressively resisted all efforts of other stakeholders to weigh in about DRO's claims and proposed relief. *See Ore. Advocacy Ctr. v. Mink*, 3:02-cv-339, ECF 292 (opposing intervention by judges); ECF 296 (opposing intervention by Hospitals); ECF 408 (opposing intervention by Marion County); ECF 472 (opposing intervention by crime victims); ECF 480 (opposing second motion to intervene by Marion County). DRO even threatened to seek sanctions against Marion County for seeking to intervene. *See* ECF 549. Yet ironically,

---

[15] Putting conflict issues aside, DRO's "me too" arguments are misplaced: they apply to MHAP, not NAMI-Oregon, insofar as MHAP asserts claims against OHA. Critically, NAMI-Oregon seeks to assert claims not on behalf of Hospitals' patients, but instead for NAMI-Oregon's *broader statewide membership*, which are a different subset of individuals than Hospitals seek to represent. NAMI-Oregon therefore represents distinct interests than Hospitals, even if some of NAMI-Oregon's members' interests overlap with those of Hospitals' patients. MHAP, meanwhile, seeks to represent only Hospitals' patients, asserting the Due Process and ADA claims that Hospitals already assert, on behalf of the exact same individuals. *See* MHAP Comp. ¶¶ 31–42. MHAP also seeks the same relief that Hospitals seek: expansion of long-term treatment options for civilly committed patients, including more secure residential treatment facility beds and step-down treatment where appropriate. *Compare* MHAP Compl. ¶¶ 29, 43.B.1., *with* SAC 52–55 *and id.* ¶¶ 61–62.

ever since the start of *this* litigation, DRO has repeatedly tried to influence its outcome—first by joining OHA's motion to dismiss while purporting to "advocate for" Hospitals' patients, and now by urging this Court to grant its "partner's" motion to intervene. Hospitals find it alarming that DRO continues to seek to influence this litigation under the guise of "advocating for" civilly committed patients, after the Ninth Circuit found that DRO is an unsuitable representative of such patients (which DRO makes no attempt to address).

The Court should reject DRO's and MHAP's attempts to take control of Hospitals' case and become the sole representatives of civilly committed patients in this consolidated litigation. DRO's and MHAP's positions, at best, reflect a joint attempt of ideologically aligned policy advocacy "partners" to inject unrelated (and controversial) public policy issues into this litigation—and at worst, roll in a Trojan Horse that will enable DRO to undermine civilly committed patients for the benefit of other behavioral health patients. For all the reasons above and in Hospitals' Response to MHAP's Motion to Intervene, the Court should reject DRO's amicus arguments and deny MHAP's request for intervention.

DATED: February 4, 2025

EPSTEIN BECKER & GREEN, P.C.

STOEL RIVES LLP

*/s/ Eric J. Neiman*
Eric J. Neiman, OSB No. 823513
Emma P. Pelkey, OSB No. 144029
ENeiman@ebglaw.com
EPelkey@ebglaw.com

*/s/ Thomas R. Johnson*
Thomas R. Johnson, OSB No. 010645
Alex Van Rysselberghe, OSB No. 174836
tom.johnson@stoel.com
alex.vanrysselberghe@stoel.com

PLAINTIFFS' RESPONSE TO
DISABILITY RIGHTS OREGON'S
AMICUS BRIEF
PAGE - 19

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480