IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDERS INCORPORATED, and A.J. MADISON,<br><br>       Plaintiffs,<br><br>vs.<br><br>PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>       Defendants;<br><br>JAROD BOWMAN and JOSHAWN DOUGLAS SIMPSON,<br><br>       Plaintiffs,<br>  v.<br><br>PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>       Defendants. | Case No.: 3:02-cv-00339-AN (Lead)<br>Case No.: 3:21-cv-01637-AN (Member)<br><br><br><br>**STATUS CONFERENCE MEMORANDUM OF AMICI DISTRICT ATTORNEYS, CRIME VICTIMS, AND HEALTH SYSTEMS** |

1 – STATUS CONFERENCE MEMORANDUM OF AMICI DISTRICT ATTORNEYS, CRIME VICTIMS, AND HEALTH SYSTEMS

## INTRODUCTION

District Attorney Amici, Crime Victim Amici, and Health Systems Amici ("Amici") present this memorandum to urge the Court to promptly hear Disability Rights Oregon's ("DRO") motion for a finding of civil contempt against defendants for their ongoing noncompliance with the *Mink/Bowman* orders. DRO's careful recitation of the historical events and articulation of defendants' ongoing violation of the constitutional rights of defendants awaiting restoration services in county jails warrant findings of contempt, and Amici support DRO's request that the court impose monetary sanctions. However, amici strongly oppose the modifications to the *Mink/Bowman* order that DRO requests because they are not remedial, and in fact, would further reduce the population eligible for restoration services and require the discharge of ready-to-place patients regardless of the availability of appropriate placements.

## MONETARY SANCTIONS

Amici agree with DRO that monetary penalties for noncompliance are essential and appropriate remedial sanctions, and suggest per diem sanctions of $10,000/day to be assessed each month after defendants' reports demonstrate they were out of compliance with the *Mink/Bowman* orders the previous month. Sanctions should be doubled every 60 days of ongoing noncompliance. The sanctions should begin immediately upon entry of a contempt order.

Amici propose the funds be distributed to local governments or nonprofits for programs or facilities that further the remedial goals of the contempt finding. In no event should the funds be returned to defendants.

### NON-MONETARY MEASURES AND MODIFICATIONS TO *MINK/BOWMAN* ORDERS

Amici do not support DRO's proposed modifications to the *Mink/Bowman* orders. While DRO correctly notes in their motion that the purpose of civil contempt is to coerce the contemnor into future compliance, their proposals to further reduce treatment for statutorily-eligible persons and to discharge patients regardless of the availability of placements is the opposite of remedial. The purpose of the injunction is to ensure the prompt admission to OSH of justice-involved persons who need hospital-level restoration services, not to reduce the number of persons eligible for those services.

Additionally, releasing justice-involved persons who are ready to place without an appropriate placement would overburden other community health and criminal justice system resources by displacing or redirecting offenders with mental illness to facilities, institutions, and public places where they are at risk of decompensation and may pose a safety risk to others.[1] These proposed remedies

---

[1] Community health hospitals—including hospital emergency rooms and acute behavioral health treatment facilities—will be in many (if not most) cases the place that justice-involved persons end up after they are released. As Hospitals explain in *Legacy v. Hathi*, 6:22-cv-01460-MO, such environments are unequipped to provide the long-term restorative care that OSH and other residential facilities can provide, and patients who need of long-term restorative care often decompensate in such short-term treatment environments. Community health hospitals do not have

3 – STATUS CONFERENCE MEMORANDUM OF AMICI DISTRICT
    ATTORNEYS, CRIME VICTIMS, AND HEALTH SYSTEMS

would be contrary to state law and state court orders, violating principles of federalism and comity.

DRO also proposes the Court order Defendants to hire a "cadre of evaluators" to address the backlog in re-evaluating individuals in community restoration. Amici understand that the purpose of this proposal is to increase throughput that would free OSH beds by making community restoration program spaces available for suitable candidates, as explained in Dr. Pinals' reports. While this is likely an appropriate step toward compliance, Amici believe OHA should initially be free to determine how to best deploy its resources to achieve immediate compliance, and only if the monetary sanctions fail should the Court consider specific steps. *See Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("federal courts should always seek to minimize interference with legitimate state activities in tailoring remedies.").

DRO's last requested modification to the *Mink/Bowman* orders is a requirement for the commission of an external study by an outside group approved and led by Dr. Pinals. The commission would be charged with studying admissions data, proposing the implementation of centralized oversight of the forensic mental

---

the resources to provide long-term restorative care that these patients often need, and to which they are constitutionally entitled. As such, the proposal to reduce treatment for statutorily-eligible persons, and to discharge patients regardless of the availability of placements, will result in poor and unsafe outcomes for many patients and will not further their recovery from the conditions that originally led to their commitment.

**4 – STATUS CONFERENCE MEMORANDUM OF AMICI DISTRICT ATTORNEYS, CRIME VICTIMS, AND HEALTH SYSTEMS**

health system, projecting capacity needs of the system, and otherwise doing as directed by Dr. Pinals.

While Amici have great respect for Dr. Pinals, further study of the problem – with one exception – will not assist defendants with immediate compliance with the *Minks/Bowman* orders. The one exception is that defendants should be ordered to supplement the Public Consulting Group's ("PCG") June 2024 report with an analysis of the current capacity of inpatient psychiatric beds, because OHA directed PCG not to provide that analysis in its June 2024 report "due to prioritized treatment facility types." (PCG Report, p. 9) The analysis of current capacity of inpatient psychiatric beds will be necessary to the Court's determination of further remedial measures if per diem fines do not induce defendants' prompt compliance.

## SPECIAL MASTER/COURT MONITOR

This Court has asked the parties to respond to the question of whether Dr. Pinals's role as neutral expert should be changed to that of a court monitor. Amici offer their support for the appointment of a special master or court monitor,[2] but believe that person should focus on implementation, as in the *Trueblood* case, and should have experience in Oregon's judicial system rather than clinical experience.

---

[2] Federal Rules of Civil Procedure allow the Court to appoint a special master in certain circumstances. In *Stone v. City & County of San Francisco*, 968 F.2d 850, 852 (9th Cir. 1992), the district court appointed a special master "to investigate, report, and recommend actions the [defendant] should take to ensure compliance [with the court's contempt order]." In *Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, 1013 (W.W.D. 2015), as part of its contempt order, the district court appointed "a monitor, as an agent of the Court, to oversee Defendants' implementation of the injunction's requirements."

5 – STATUS CONFERENCE MEMORANDUM OF AMICI DISTRICT
    ATTORNEYS, CRIME VICTIMS, AND HEALTH SYSTEMS

## SETTLEMENT TRANSPARENCY

In the event of ongoing negotiations among the parties, Amici ask the court to deny any request by DRO to withdraw its motion for contempt without a fully transparent hearing.

## EVIDENTIARY HEARING

Defendants have stated they will be requesting an evidentiary hearing. (ECF 550, p. 2)  In the event the court takes evidence concerning the appropriateness of DRO's requested modifications of the *Mink/Bowman* orders to limit eligibility for admission and to discharge ready-to-place patients after a certain time regardless of the availability of suitable placements, Amici request leave to present evidence concerning the implications of the requested changes on their respective constituencies.

Dated:  January 23, 2025.

LAW OFFICE OF ERIN OLSON, P.C.:

Erin K. Olson, OSB 934776
Phone:  (503) 546-3150
Email:  eolson@erinolsonlaw.com

*Attorney for Crime Victim Amici*

BEST BEST & KRIEGER LLP:

Billy Williams, OSB 901366
Phone:  (541) 382-3011
Email:  billy.williams@bbklaw.com

*Attorney for District Attorney Amici*

**6 – STATUS CONFERENCE MEMORANDUM OF AMICI DISTRICT ATTORNEYS, CRIME VICTIMS, AND HEALTH SYSTEMS**

STOEL RIVES LLP:

s/ Thomas R. Johnson

Thomas R. Johnson, OSB 010645
Phone: (503) 220-2480
Email: tom.johnson@stoel.com

*Of Attorneys for Health Systems Amici*