STEVE ELZINGA, OSB# 123102
Marion County Legal Counsel
selzinga@co.marion.or.us
555 Court Street N.E.
PO Box 14500
Salem, OR 97301
Telephone: (503) 588-5220
Counsel for *Amicus* Marion County

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, <br><br> *Plaintiffs*, <br><br> v. <br><br> SAJEL HATHI, in her official capacity as head of the Oregon Health Authority, and SARA WALKER, in her official capacity as Superintendent of the Oregon State Hospital, <br><br> *Defendants*. <br><br><br> JAROD BOWMAN and <br><br> JOSHAWN DOUGLAS- SIMPSON, <br><br> *Plaintiffs*, <br><br> v. <br><br> SARA WALKER, Interim Superintendent of the Oregon State Hospital, in her official capacity, SAJEL HATHI, Director of the Oregon Health Authority, in her official capacity, <br><br> *Defendants*. | 3:02-cv-00339-MO (Lead Case) <br> 3:21-cv-01637-MO (Member Case) <br><br><br> **Marion County and Marion County Counsel Steve Elzinga's Combined Response in Opposition to Plaintiffs' Motion for Sanctions Against Marion County and Its Counsel** |

Page | 1 **RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS AGAINST MARION COUNTY AND ITS COUNSEL**

# TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................................3

II.   STATEMENT OF FACTS ................................................................................................4

III.  LEGAL ARGUMENT.......................................................................................................6

1.    Plaintiffs do not present a meaningful claim of frivolousness...............................6

    a.    The motion for sanctions fails to meaningfully address Marion County's arguments. ................................................................................................................6

    b.    The supplement fails to meaningfully address Marion County's arguments. ........8

2.    Marion County has reasonably exercised its constitutional rights......................11

    a.    Litigants have broad constitutional rights.............................................................11

    b.    The Ninth Circuit's summary dismissal of Plaintiffs' similar arguments in their motion to dismiss shows that Marion County's current motion is reasonable. .....12

    c.    Marion County's motion was reasonable as it was necessary for preservation of Marion County's rights pending a decision on appeal...........................................13

    d.    Timeliness relates to the filing of the motion to which a proposed limited-purpose intervenor wishes to respond; this motion was filed within two days. .................13

    e.    Ninth Circuit precedent and Plaintiffs' prior arguments both show that Marion County's motion is squarely within the Court's sound discretion........................15

    f.    No matter how Plaintiffs seek to twist Marion County's motion, at a minimum it must be considered at least a good faith argument for extension of law. Otherwise, numerous motions would improperly be deemed frivolous. ................................17

3.    FRCP 11 does not support Plaintiffs' motion......................................................18

    a.    Plaintiffs misunderstand the FRCP 11 standard. ..................................................18

    b.    The relevant standard, as applied in two Ninth Circuit cases, does not even come close to supporting sanctions here. ......................................................................19

    c.    Plaintiffs' primary cited legal authority actually weakens their argument. ..........21

    d.    FRCP 11(5) does not allow Plaintiffs' request for money fines against Marion County under FRCP 11(b)(2)...............................................................................22

4.    There is no basis for sanctions under 28 USC § 1927 .......................................22

5.    There is no basis for sanctions under the All Writs Act or Inherent Authority. ...............23

6.    Due process and Rule 11 prevent a motion against "counsel" without specifying which counsel are specifically subject to the motion. ....................................................24

7.    The requested sanctions are massively overbroad and unproportional. ...........25

8.    Objection to Plaintiffs' violation of Local Rule 7-2. .......................................26

9.    The parties agree intervention is not necessary to submit this response to Plaintiffs' sanctions motion. ................................................................................................27

IV.   CONCLUSION.................................................................................................................27

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

Marion County and Marion County Counsel Steve Elzinga file this Response to Plaintiffs'
Motion for Sanctions Against Marion County and Its Counsel as follows:

## I.  <u>INTRODUCTION</u>

Plaintiffs' motion is disappointing. It contradicts the most recent and relevant decisions
from the Ninth Circuit. Marion County has exercised its constitutional rights in good faith and
filed a motion squarely within this Court's sound discretion. Plaintiffs throw a lot of mud at the
wall, but it does not stick. There is zero legal or factual basis for sanctions.

For years, Oregon State Hospital has repeatedly violated orders from this Court and
numerous state courts, which has harmed both patients and the public. Oregon State Hospital's
misconduct has led to in-custody death, suspension of state laws, and banishing mentally-ill-
criminal-accused patients without treatment onto the streets of Salem, like one who assaulted
three Highland Elementary School teachers in 2023. All the while, Plaintiffs declined to seek
monetary sanctions against Oregon State Hospital.

At the November 18, 2024 status conference, this Court made clear that Oregon State
Hospital's noncompliance needed to end quickly and "something needs to happen in the very
near future, like less than 60 days." ECF 530 at 27, 31, 45–46. The Court specifically asked if
Plaintiffs would file a motion for contempt or if they were trying to have the Court find contempt
*sua sponte*. *Id.* Only after the Court's stern warning and Oregon State Hospital's failure—yet
again—to make notable progress, did Plaintiff Disability Rights Oregon ("DRO") finally file a
motion seeking monetary sanctions against Oregon State Hospital. Even now, Plaintiff
Metropolitan Public Defender ("MPD") still does not seek monetary sanctions against Oregon
State Hospital.

In contrast, barely three months after starting work for Marion County, the undersigned

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

counsel filed one motion for limited intervention in response to DRO's new motion, and Plaintiffs immediately sought monetary and other sanctions against "Marion County and its Counsel." Plaintiffs' inconsistent actions speak far louder than their words.

## II.    STATEMENT OF FACTS

The underlying litigation began in 2002 with an injunction requiring Oregon to admit people into the Oregon State Hospital or another treatment facility within seven days of them being declared unfit. ECF 51. The case docket shows no activity from August 2003 to May 2019.

In 2019, Plaintiff MPD moved for Defendants to be found in contempt for violating that injunction. ECF 85. MPD's motion did not request monetary fines; it only requested a finding of contempt, expedited discovery, and setting an expedited hearing to determine necessary remedial sanctions. *Id.* at 2. Plaintiff DRO joined MPD's motion while also requesting that the Court "order Defendants to issue a plan for compliance for this Court's review." ECF 91 at 4. DRO's motion also did not request monetary fines and instead argued that "[t]o maximize the resources for mental health services and reduce the intake of new detainees in psychiatric crisis, the relief from this Court should be crafted specifically to favor community-based preventive services and restoration wherever clinically feasible." *Id.* at 10. The Court denied both motions. ECF 127.

As outlined in this Court's Opinion and Order, ECF 338, Plaintiffs and Defendants ultimately came to an agreement, and this Court granted their joint motion and ordered implementation of the neutral expert's recommendations in September of 2022. ("Mosman Order"). ECF 269 and 271. Following the implementation of the Mosman Order, the County participated as *amicus*. ECF 269.

After Plaintiffs filed a proposed amended order, ECF 382, requiring county sheriffs to conduct transport, Marion County filed its first Motion to Intervene on June 8, 2023, ECF 402.

The Court denied that motion without issuing a written order. ECF 415. The Court stated from the bench that it was untimely because the litigation was longstanding. ECF 421 at 19-20. The Ninth Circuit affirmed.

On March 6, 2024, Judge Mosman issued an order holding that Marion County Circuit Court Judge Broyles' February 2024 order violated the Supremacy Clause because it required the Oregon State Hospital to provide the defendant with restoration services that exceeded the Second Amended Order's maximum duration. ECF 475. On March 29, 2024 Marion County filed its Second Motion to Intervene for the purpose of appealing the March 6th 2024 Mosman Order. This Court declined to treat the Second Motion to Intervene as one for limited intervention and ultimately denied the motion under the traditional timeliness test. ECF 485. Marion County appealed that decision. ECF 486. That appeal is still pending.

The most recent decision from any court related to Marion County's intervention status was when the Ninth Circuit summarily denied Plaintiffs' motion to dismiss the appeal. Order, *Disability Rights Oregon v. Baden*, Appeal No. 24-229 (9th Cir. Jul. 29, 2024), ECF 25.1. Plaintiffs' motion advanced arguments similar to the ones they make currently. Appellee's Motion to Dismiss and for Summary Affirmance at 13, *Disability Rights Oregon v. Baden*, Appeal No. 24-229 (9th Cir. 2024), ECF No. 22.1.

On January 7, 2025 Plaintiff DRO filed a Motion for Order to Show Cause Why Defendants Should Not Be Held In Contempt. ECF 540. DRO requested, among other things, that this Court impose daily monetary sanctions against the Defendants and enact new restrictions on Oregon State Hospital admissions. *Id.* On January 9, 2025 Marion County's Limited Motion for Intervention was filed, for the limited purpose of responding to the January 7th motion. ECF 544.

### III.   <u>LEGAL ARGUMENT</u>

**1.  Plaintiffs do not present a meaningful claim of frivolousness.**

Plaintiffs rest their arguments on the unsupported allegation that Marion County filed its present motion to intervene "without identifying a nonfrivolous argument for timely intervention." ECF 566 at 6.[1] From this unsupported allegation, they deduce that the motion was intended "to harass Plaintiffs, to delay the litigation, [] to increase the cost of litigation needlessly . . . and disrupt the proceedings," *id.* at 6–7, all without citation to *any* of Marion County's briefing or even legal authority supporting a single one of those inferences, much less so many extraordinary inferences. Such conclusory "arguments," lacking a basis in fact or law, cannot be entertained. Because neither Plaintiffs' original motion for sanctions against Marion County nor their supplemental memorandum meaningfully address what Marion County actually argued, the Court may easily resolve this dispute by denying the requested sanctions on this basis alone.

> **a.   The motion for sanctions fails to meaningfully address Marion County's arguments.**

In fact, the closest Plaintiffs come to providing such legal authority is by tacitly admitting that any such inference is *not* supported. That is, they recognize Marion County's clear statement that it wished "'only [] to respond to a newly filed motion with new concepts,'" *id.* at 8 (quoting ECF 544 at 4). Although they characterize this statement as a "false assurance" masking some

---

[1] Plaintiffs also claim that Marion County "cit[ed] no legal authorities addressing timeliness." *Id.* at 9–10. This claim is plainly erroneous. Marion County noted the timeliness standard, citing Ninth Circuit cases under both the by-right and permissive standards for intervention, including the "undue delay" and "prejudice" factors. ECF 544 at 3–4. Marion County also incorporated its Second Motion to Intervene, which cites cases explaining the timeliness analysis. ECF 478 at 5–9 (citing *Smith v. Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999); *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1999)). Finally, Marion County explained how that analysis was satisfied. ECF 544 at 4, 7.

"broader intent," they fail to explain what that "broader intent" is or provide any evidence of such intent. *See id.* Instead, they simply beg the question, backing up their assertion only with *additional* conclusory assertions, claiming that Marion County hid its intent because it advanced a "frivolous argument," yet still failing to explain what was frivolous. *Id.* To effectively argue: "Marion County misled the Court because it advanced a frivolous argument; the argument was frivolous because it misled the Court"—this is a patently baseless argument. By expressly recognizing Marion County's statement of intent and then declining to provide any substantive legal or factual basis for doubting it, Plaintiffs tacitly admit the statement's truth.

Nor can Plaintiffs do anything *but* admit Marion County's limited purpose and that Marion County's arguments for same were meritorious, which is confirmed when we consider the bigger picture. Marion County was repeatedly explicit in its motion that it sought intervention only for a limited purpose. *E.g.*, ECF 544 at 2 ("**limited** purpose," with bold and underlined font in original). Indeed, every single page thereof either mentions the limited nature of the motion explicitly or addresses the DRO 2025 Contempt Motion or the inevitable plain and immediate consequences of granting it, without addressing other aspects of the case. *Id.* at 2–7. Yet, critically, Plaintiffs devote not a single word to the fact that Marion County only sought limited intervention (aside from their unsupported "false assurance" assertion about that purpose, ECF 566 at 8, which merits no consideration) or that the motion was filed promptly after the motion that gave rise to the need to intervene. The importance of this omission cannot be overstated: how can Plaintiffs claim that arguments are frivolous when they do not even address what the arguments are *about*? The claim that an argument is frivolous requires consideration *of* said argument—of what was, in fact, argued. Because Plaintiffs' *only* argument that even passingly addressed the limited nature of Marion County's request was wholly unsupported,

Plaintiffs fail, in their primary motion and memorandum, to advance any meaningful claim addressing what Marion County actually argued. A "claim" that does not meaningfully address the very thing it is aimed at is hardly a claim at all, so this Court should give no weight to any of Plaintiffs' arguments.

### b. The supplement fails to meaningfully address Marion County's arguments.

Plaintiffs did, in their supplemental brief, substantively *address* Marion County's arguments for the first time, but still failed to provide substantive arguments about them. Surprisingly, they open that brief by pointing out all the ways in which Marion County affirmed both the limited nature of its request and the court's discretion to limit Marion County's involvement, somehow concluding that those affirmations mean Marion County did *not* seek limited intervention. ECF 566-1 at 3. While the backwards nature of that conclusion is self-evident, other aspects of the supplement warrant further response. The supplement is rife with Plaintiffs' continued assertions that Marion County harbors some hidden motive. *E.g., id.* at 3–4. Leaning on the fact that Marion County described this Court's discretion to limit intervention, Plaintiffs go so far as to claim, without any evidence whatsoever, that Marion County attempts to "mislead" the Court. *Id.* at 3.[2] Again, these claims are unsupported by the facts Plaintiffs cite, and Plaintiff provide no legal basis or caselaw to support such extreme and out-of-the-blue inferences.

The supplement also discusses the "change in circumstances" analysis, *id.* at 4–8, but the

---

[2] One of the many out-of-context statements that Plaintiffs argue was allegedly misleading in Marion County's motion appears to be that it did not reference any possible appeal. ECF 566-1 at 2-3. However, the motion itself noted that "if the Court is ready to consider meaningful financial sanctions, allowing Marion County's limited intervention is the best way to ensure the Court's order is vigorously defended when the state appeals." ECF 544 at 2-3. The reply confirmed this. ECF 562.

assertions there are both self-defeating and defeated by caselaw. Plaintiffs claim that the "fundamental elements of the case" must be triggered in order for the "change in circumstances" test to be met, such as changes that "affect the final judgment." *Id.* at 6. But the 2002 Judgment in this case required timely hospital admission of *all* "persons who are declared unable to proceed to trial pursuant to ORS § 161.370(2)." ECF 51 at 1. It did not limit those who should be timely admitted other than by its reference to ORS § 161.370(2). ORS § 161.370(2) covers those charged with misdemeanors. Accordingly, the DRO 2025 Contempt Motion's proposal to "[l]imit misdemeanor and status offender referrals," ECF. 540 at 25, *would* fundamentally alter the final judgment. So Plaintiffs are hoist by their own petard as to that argument. Moreover, as discussed below, numerous courts within the Ninth Circuit have found that motions which would have an impact on a proposed intervenor *do* constitute a change in circumstances sufficient to satisfy the timeliness criteria when *limited* intervention is sought. Plaintiffs' arguments fail for that reason as well.

More fundamentally, despite these legal arguments, Plaintiffs even still in their supplemental brief largely fail to discuss the *factual* bases for Marion County's motion for limited intervention: (1) the DRO 2025 Contempt Motion's proposed monetary sanction scheme and (2) that motion's proposed admission policy changes. This means that, despite the *legal* arguments discussed in the foregoing paragraph, those arguments *remain* simply abstract, not showing how *Marion County's* arguments were frivolous and thus, yet again, failing to raise any substantive claim.

Specifically, concerning the proposed monetary sanctions, Plaintiffs rely wholly on an incorrect contention to assert that such sanctions had previously been proposed. Marion County stated, "*As far as counsel for Marion County is aware*, this is the first motion in this case seeking

to impose per diem monetary fines against Defendants *with increasing amounts the longer contempt continues*." ECF 562 at 4. Omitting the italicized sections at both the beginning and end of this statement (though providing no brackets or other indication of omission), Plaintiffs claim that Marion County had "falsely" stated only that it was "the 'first motion in this case seeking to impose per diem monetary fines against Defendants.'" ECF 566-1 at 7. It is no wonder that they so fundamentally altered the meaning of what Marion County said: that is the only way they can make *this* motion for sanctions against the state sound the same as the previous, generic motions they describe, *id.* (citing ECF 85, ECF 91), which did not specifically call for monetary sanctions *at all*, *see generally* ECF 85; ECF 91, much less per diem monetary sanctions that increase over time.[3] Because Plaintiffs' argument that these various motions were all the same is incorrect, bizarrely accusing Marion County of falsehood (and twisting its words as "evidence") on the basis that it *correctly* identified the difference between them, that argument fails. Because that is the crux of its argument that there was no change in circumstances, it has presented no meritorious argument for same.[4] Accordingly, it has not and cannot show that Marion County's argument was frivolous.

Finally, even absent all the foregoing, the supplement suffers yet another fatal flaw: it does not address *at all* the DRO 2025 Contempt Motion's proposed admission policy changes. *See generally* ECF 566-1. As noted above, such a change would fundamentally alter the judgment in this case. And Marion County explained clearly how it would be affected by such a

---

[3] Plaintiffs' present motion for sanctions against Marion County further demonstrates that requesting "sanctions" is not the same thing as requesting "monetary fines"—indeed most of the sanctions Plaintiffs currently seek are entirely unrelated to money. ECF 566 at 3.

[4] Note that Plaintiffs do not argue in the alternative that these differences were not significant enough to constitute a significant change in circumstances, presumably because the arguments would center heavily on weighing matters of degree (what is "significant"?) and would thus involve a great deal of discretion—precisely the sort of argument that cannot be frivolous.

change. Plaintiffs' choice to simply ignore those facts constitutes a concession that Marion County's arguments for intervention based on the proposed policy changes were meritorious.

In sum, Plaintiffs' claims that Marion County's arguments were frivolous hardly addressed those very arguments at all. To the extent they *did* address them, they relied on brief, conclusory claims; fallacious, circular reasoning that can hold no weight; and an incorrect statement of case history. Moreover, they tacitly concede that Marion County's arguments relating to the proposed policy changes are meritorious, which means its motion to intervene cannot be considered frivolous.

### 2. Marion County has reasonably exercised its constitutional rights.

#### a. Litigants have broad constitutional rights.

The Ninth Circuit has recognized that there is a strong presumption against sanctions to protect constitutional rights to access the court system:

> Freedom of access of the courts is a cherished value in our democratic society. Incremental changes in settled rules of law often result from litigation. . . *There is, and should be, the strongest presumption of open access to all levels of the judicial system.* Creating a risk that the invocation of the judicial process may give rise to punitive sanctions simply because the litigant's claim is unmeritorious could only deter the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means. . . . The strong presumption is against the imposition of sanctions for invoking the processes of the law.

*Operating Eng'rs Pension Tr. v. A-C Co*., 859 F2d 1336, 1344 (9th Cir 1988) (emphasis added) (*quoting Talamini v. All-State Insurance Co.*, 470 U.S. 1067, 105 S. Ct. 1824, 1827-28, 85 L. Ed. 2d 125 (1985) (Stevens, J., joined by Brennan, Marshall, and Blackman, concurring).

Due to their profound impact, sanctions are "an extraordinary remedy" that must "be exercised with extreme caution." *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F3d 431, 437 (9th Cir 1996). This is true regardless of whether sanctions are based on

FRCP 11, 28 U.S.C. § 1927, or a court's inherent powers. *Id.*

> **b. The Ninth Circuit's summary dismissal of Plaintiffs' similar arguments in their motion to dismiss shows that Marion County's current motion is reasonable.**

Plaintiffs continuously rely on the first and second motions to intervene as the basis for their assertion that no reasonable attorney would advance a third motion to intervene. ECF 566 at 8. Plaintiffs' argument conveniently omits that the denial of the second motion to intervene is currently being litigated in the Ninth Circuit. Plaintiffs advanced arguments similar to the ones that they make now when they requested the Ninth Circuit to dismiss the appeal. For example, they argued that the "Court has already decided upon a rule of law--the County's attempt at full intervention is untimely because it comes more than two decades after the 2002 injunction and four years the start of contempt proceedings." Appellee's Motion to Dismiss and for Summary Affirmance at 13, *Disability Rights Oregon v. Baden*, Appeal No. 24-229 (9th Cir. 2024), ECF No. 22.1.

The Ninth Circuit summarily denied the motion to dismiss. Order, *Disability Rights Oregon v. Baden*, Appeal No. 24-229 (9th Cir. Jul. 29, 2024), ECF 25.1. This Court should similarly deny Plaintiff's sanctions motion that attempts to relitigate what the Ninth Circuit summarily denied.

Marion County's present motion cannot possibly be considered frivolous given that the most recent decision of any court on such issues was to reject Plaintiffs' arguments. Rather than dismiss the underlying appeal, the Ninth Circuit allowed the action to proceed to the briefing stage. The Ninth Circuit recognizes a claim's "surviv[al of] an earlier motion to dismiss . . . as evidence that the claim is not without merit." *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999) (citation omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 15-16 and

n.13 (1980) (arguments that "receive[] the careful consideration of . . . the Court of Appeals" are not groundless even if the claims *are* eventually dismissed); *Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir. 1985) (citing same) (denial of motion to dismiss "suggest[s] that [the] claims were not without merit.").

> **c.   Marion County's motion was reasonable as it was necessary for preservation of Marion County's rights pending a decision on appeal.**

"[S]anctioning a [litigant] for making (or even for repeating) a plausible argument that has failed previously in district court when the failure to make (or to repeat) that argument will potentially have the consequence of depriving the [litigant] of a favorable ruling from an appellate court is not an appropriate use of the sanction power." *Gibson v. Chrysler Corp.*, 261 F3d 927, 950 (9th Cir 2001), *cert. denied*, 534 U.S. 1104, 122 S. Ct. 903, 151 L. Ed. 2d 872 (2002).

While the Ninth Circuit appeal is still pending it is possible that Marion County will prevail and reverse the denial of its motion to intervene. Absent a decision from the Ninth Circuit, Marion County must advance argument to preserve its rights as a proposed intervenor. An award of sanctions in this matter would do nothing more than chill the ability of an attorney to zealously advocate their client's position. *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1363 (9th Cir 1990) ("Were vigorous advocacy to be chilled by the excessive use of sanctions, wrongs would go uncompensated."). Plaintiffs' motion for sanctions is nothing more than an attempt to chill Marion County's advocacy over circumstances that directly impact its community.

> **d.   Timeliness relates to the filing of the motion to which a proposed limited-purpose intervenor wishes to respond; this motion was filed within two days.**

Analysis of the timeliness factor here does not relate to the beginning of this case, despite

Plaintiffs' numerous incorrect assertions that it does. Instead, the Ninth Circuit has held that "intervention at [a] particular stage of the lawsuit" does not necessarily result in untimeliness, *United States v. Alisal Water Corp.*, 370 F.3d 915, 921–22 (9th Cir. 2004) (citing, *inter alia*, *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987), for the proposition that "given the nature of an applicant's interest, he or she may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole").

Therefore, courts analyzing limited-purpose motions to intervene frequently recognize that when a movant seeks intervention for the purpose of responding to a specific motion, the motion to intervene is timely if filed shortly after same. *E.g.*, *Bolooki v. Honda Motor Co. Ltd.*, No. 2:22-cv-04252-MCS-AFM, 2023 U.S. Dist. LEXIS 55768, at *5 (C.D. Cal. Jan. 12, 2023) (finding limited-purpose motion to intervene timely when filed "only two weeks after" motion to which intervenors sought to respond, "which provided the parties adequate time for briefing before the [] hearing on [the] motion"); *SEC v. Muroff*, No. 1:17-cv-00180-EJL, 2018 U.S. Dist. LEXIS 221745, at *14 (D. Idaho Dec. 4, 2018) (finding limited-purpose motions to intervene timely, and "no relevant delay," when "filed within 21 days of service" of the motion to which intervenors sought to respond); *Perez v. Idaho Falls Sch. Dist. No. 91*, No. 4:15-cv-00019-BLW, 2016 U.S. Dist. LEXIS 34513, at *6, 8 (D. Idaho Mar. 15, 2016) (finding that "a motion to intervene for the purpose of responding to" a petition for writ of mandamus was timely when filed "two-and-a-half weeks after the" petition was filed); *Jordan v. Nationstar Mortg., Ltd. Liab. Co.*, No. 2:14-CV-0175-TOR, 2018 U.S. Dist. LEXIS 246576, at *4–5, *7–8 (E.D. Wash. Apr. 24, 2018) (finding that motion "to intervene for the limited purpose of being heard on [a] motion for renewed class notice," filed seven days after same, was timely); *Wavetronix, Ltd. Liab. Co. v. Swenson*, No. 4:12-CV-244-E-MJP, 2014 U.S. Dist. LEXIS 195734, at *3 (D. Idaho July 29,

2014) (finding no prejudice would accrue from granting motion to intervene for the "limited purpose of joining in the pending motions to stay and the pending motion for partial summary judgment").

In light of the many instances in which district courts within the Ninth Circuit have found that limited-purpose motions to intervene in order to respond to specific motions are proper and timely, Marion County's motion to do just that cannot be considered frivolous on the untimeliness grounds argued by Plaintiffs.

The breadth of this application of timeliness is also worth noting. Although the present briefing concerns intervention to respond to a *motion*, courts have also permitted intervention at a late stage for purposes of advising the court of issues arising from orders. *E.g.*, *Madrid v. Woodford*, No. C90-3094 TEH, 2004 U.S. Dist. LEXIS 23255, at *37–38 (N.D. Cal. Nov. 17, 2004) (finding that intervention at late stage was not untimely when intervenor was limited to addressing changes that it might be required to implement as a result of an investigation ordered by the court). Particularly relevant here, this very court has permitted municipalities to intervene at a late stage for the purpose of advising the court of issues that may arise as a result of anticipated *proposed modifications* of orders. *Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs & Nat'l Marine Fisheries Serv.*, No. 3:18-cv-00437-HZ, 2024 U.S. Dist. LEXIS 117501, at *7 (D. Or. July 2, 2024) (permitting intervention so that cities could "seek judicial relief" from aspects of remedial plan affecting them "should they have concerns over the [] Defendant's proposed modifications").

> **e.  Ninth Circuit precedent and Plaintiffs' prior arguments both show that Marion County's motion is squarely within the Court's sound discretion.**

If a motion is within the Court's discretion to grant or deny, then by definition, it is not

frivolous. Thus, when Plaintiffs argue that the motion was frivolous, they are effectively arguing that the Court did not have discretion on the motion. That is inconsistent with the law. Courts often reach different conclusions after considering new facts and new arguments.

This Court denied Marion County's second motion to intervene based entirely on a finding that it was not timely. Thus, Plaintiffs' assertion that the current limited motion to intervene is frivolous because it supposedly re-litigates prior court decisions is entirely based on timeliness.

Yet, Plaintiffs' current arguments on timeliness are defeated by their past arguments. In the ongoing appeal of Marion County's second motion to intervene, Plaintiffs filed a motion to dismiss. Appellee's Motion to Dismiss and for Summary Affirmance, *Disability Rights Oregon v. Baden*, Appeal No. 24-229 (9th Cir. 2024), ECF No. 22.1. Plaintiffs asserted that the district court's decision should not be disturbed because "timeliness is a 'flexible concept' and is 'left to the district court's discretion.'" *Id*. at 7-8 (*quoting United States v. Alisal Water Corp*., 370 F3d 915, 921 (9th Cir 2004)). Advancing an argument that is within this Court's discretion to grant or deny cannot be, as Plaintiffs now claim, "an argument that [Marion County and its counsel] know or should know not to be supported by law, and that no counsel in the present context could believe to be supported by law." ECF 566 at 5. To borrow from Charles Dickens, the ghost of Plaintiffs' past haunts them in the present.

Equally important, Marion County offered new arguments on timeliness related to a new change in circumstances. Plaintiffs are still unable to cite a legal precedent that blocks this Court's discretion to grant limited intervention as timely based on *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). In that case, the Ninth Circuit reversed a district court decision denying intervention even though the case began in 1968, went through multiples stages in the

1970s, adopted a universally agreed-upon management plan in 1977, and started a new phase in 1982 when some parties withdrew from the plan. *Id.* at 551-552. The intervention motion was not filed until late 1983. *Id.* The party seeking intervention claimed changed circumstances from "the possibility of new and expanded negotiations" and the Ninth Circuit found this sufficient as it "suggests that the litigation is entering a new stage" and "indicates that the stage of the proceeding and reason for delay are factors which militate in favor of granting the application." *Id.* at 552. DRO's recent motion requesting new monetary sanctions and new policy changes created a change in circumstances similar to what the Ninth Circuit found sufficient in *United States v. Oregon.* This is more than ample grounds for the Court to find the motion is timely.[5]

### f. No matter how Plaintiffs seek to twist Marion County's motion, at a minimum it must be considered at least a good faith argument for extension of law. Otherwise, numerous motions would improperly be deemed frivolous.

If anything, the fact that Plaintiffs felt the need to dedicate numerous pages to their argument and to distinguishing cases is, in itself, evidence that the issues here are not so black-and-white as to render Marion County's arguments frivolous.

The similarities between this case and *United States v. Oregon* are striking. Even if Plaintiffs were right that other cases create obstacles to finding timeliness here, and even if the Court ultimately denies the motion, Marion County's arguments here must at least be considered a reasonable argument for extension of law. Plaintiffs bear the burden of proving otherwise and are unable to do so relying on vague and conclusory statements that lack factual support.

---

[5] Marion County explained this in more detail in the reply supporting the limited to motion to intervene. ECF 652.

### 3. FRCP 11 does not support Plaintiffs' motion.

#### a. Plaintiffs misunderstand the FRCP 11 standard.

Courts "must exercise extreme caution in sanctioning attorneys under Rule 11." *Larez v. Holcomb*, 16 F3d 1513, 1522 (9th Cir 1994). "Rule 11 is an extraordinary remedy" reserved "for the rare and exceptional case," and, as the Ninth Circuit has recognized:

> Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution. . . . [Even if] an attorney's legal theory failed to persuade the district court [that] does not demonstrate that counsel lacked the requisite good faith in attempting to advance the law.

*Operating Eng'rs Pension Tr. v. A-C Co*., 859 F2d 1336, 1344-45 (9th Cir 1988) (internal citations omitted; cleaned up).

Marion County's motion far surpasses what is needed to avoid sanctions. "Rule 11 sets a low bar," requiring only "some plausible basis for the theories alleged." *Strom v. United States*, 641 F3d 1051, 1059 (9th Cir 2010). Even "quite a weak" basis is sufficient to avoid sanctions. *Id. (quoting United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001)).

FRCP 11 provides two independent grounds for the imposition of sanctions: first, if a pleading is frivolous, and second, if a pleading has been filed for an improper purpose. *Westlake North Property Owners Ass'n v. Thousand Oaks,* 915 F2d 1301, 1305 (9th Cir 1990). However, the Ninth Circuit adopted a frivolousness standard and defined a frivolous filing as one "that is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.,* 929 F2d 1358, 1362 (9th Cir 1991) (en banc).

In defending against sanctions, a party must merely present a feasible basis for bringing forward its motion or action. Even if a motion is "not correct in [its] view of the law," that does

not make it frivolous; instead, there need only be a "good faith argument" for the motion's "view of what the law is, or should be." *Wasyl, Inc. v. First Bos. Corp.*, 813 F2d 1579, 1583 (9th Cir 1987). Even "cit[ing] no controlling authority to support" a request is not sanctionable. *Larez v. Holcomb*, 16 F3d 1513, 1522 (9th Cir 1994); *see also Morasch Meats, Inc. v. Frevol Hpp, LLC*, No. 3:16-cv-0269-PK, 2018 US Dist LEXIS 245785, at *14 (D Or Oct. 1, 2018) (even though some filings "included dubious arguments and were somewhat disorganized" sanctions were not warranted).

**b. The relevant standard, as applied in two Ninth Circuit cases, does not even come close to supporting sanctions here.**

The Ninth Circuit has taken a different approach than what Plaintiffs assert. In *Conn*, an attorney repeatedly argued that her client should get out of a case due to immunity by:

- filing a motion to dismiss, which was denied,

- moving to set aside the denial order, which was denied again,

- moving to set aside the new denial order, which was yet again denied,

- arguing against the latest order at a status conference that prompted the court to enter an order further explaining the reasons for denial; and

- moving for reconsideration of the core immunity question yet again and was denied yet again; the district court then sanctioned this final motion as frivolous for "merely restat[ing] what defendant has been contending all along."

*Conn v. Borjorquez*, 967 F2d 1418, 1420 (9th Cir 1992). Despite all this, the Ninth Circuit reversed the district court's sanctions. *Id.* at 1421. "Each motion was based on a new issue" due to the "subtle" legal distinctions "between 'official' and 'employee,' between 'official capacity' and 'individual capacity' and between 'sued' and 'acted.'" *Id.* Also, there was no evidence of an

attempt to cause undue delay since the final motion was filed more than a month before the trial date. *Id.*

Similarly, the Ninth Circuit affirmed a district court's dismissal of claims as barred by *res judicata* while also finding that the district court abused its discretion when it imposed sanctions related to those dismissed claims. *Lee v. POW Ent., Inc.*, No. 20-55928, 2021 U.S. App. LEXIS 35881, at *3 (9th Cir Dec. 6, 2021) (unpublished memorandum opinion).

Although no two cases are identical, *Lee* and *Conn* both show that Plaintiffs' request for sanctions in this case cannot stand. Since five attempts to leave a case based on subtly different arguments was not sanctionable in *Conn*, Marion County's three attempts to join a case based on more-than-subtly different arguments likewise is not sanctionable here.

Plaintiffs' memo in support of its Motion for Sanctions highlights why Marion County's Limited Motion to Intervene is nonfrivolous and supported by law. Plaintiffs leap into the analysis and merits of the Marion County's legal position, specifically what constitutes a change in circumstance for the purposes of intervention. The scope of those arguments are better left in the litigation of the motion to intervene not in support of a motion for sanctions. Although the parties disagree in their analysis of the applicable law it is not a basis for sanctions under FRCP 11(b)(2). "The key question in assessing frivolousness is whether a complaint states an arguable claim -- not whether the pleader is correct in his perception of the law." *Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1159 (9th Cir 1987).

Plaintiffs are under the impression that the Limited Motion to Intervene will be denied simply based on the denial of two previous motions, while simultaneously arguing the legal principle advanced by Marion County. For the purposes of their motion for sanctions, Plaintiffs cannot have it both ways. They cannot argue that the motion is frivolous but also advance an

alternate legal theory addressing the merits raised by Marion County in what appears to be a recitation of its opposition to the motion to intervene.

### c. Plaintiffs' primary cited legal authority actually weakens their argument.

Plaintiffs argue that a motion to intervene is frivolous if a prior motion to intervene was denied. In doing so, they rely primarily on a few out-of-context phrases in an unreported decision from a district court in another circuit. Yet, Plaintiffs omit the most important parts of the case they cite. Their case undermines the very point they claim it supports.

Plaintiffs' cited case does not support sanctions just because a litigant files a motion to intervene after a prior motion is denied. Rather, while the court was still considering a second motion to intervene (and thus while the litigant knew it was not yet a party), the litigant filed a series of nine frivolous filings as if it were a party and hijacked the litigation, including:

1. Response to a party's request;

2. First motion for entry of default;

3. Second motion for entry of default (which "complained that the Clerk of the Court had, without authority, referred [litigant's] first Motion for Entry of Default to this Court for consideration");

4. Third motion for entry of default;

5. A document requesting judicial notice that the litigant will be filing complaints against the parties with the Securities and Exchange Commission and "11 other nations;"

6. A request to enter default (the Court found that this document and document #5 were both "little more than glorified press releases, trumpeting [the litigant's] efforts to attack the [parties] in other *fora*");

7. Motion for relief from denial of the three prior default motions (#2, #3, and #4 above);

**RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS AGAINST MARION COUNTY AND ITS COUNSEL**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

8. Supplemental motion for relief from the denial of the three prior default motions; and

9. A notice of "Fraud Inquiry" regarding a party.

*UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Mining Corp.*, No. 05-CV-01100MSKCBS, 2007 WL 2871013, at *2–7 (D. Colo. Sept. 26, 2007), *aff'd sub nom. UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Min. Corp.*, 276 F. App'x 747 (10th Cir. 2008).

A careful reading of the entire case indicates that sanctions were based entirely (or at least mostly) on the "nine challenged filings" listed in bullet points above, not the second motion to intervene. *Compare id.* at *3 (sanctions analysis topic sentence referencing only "nine challenged filings" under heading "1. Warranted by existing law") *with id.* at *7 (sanctions analysis topic sentence referencing "these documents" under heading "2. Improper purpose").

Regardless, when sanctions were upheld in another unpublished option on appeal in a different circuit, the single paragraph addressing sanctions focused entirely on pleadings filed *after* the motion to intervene. *UFCW Local 880-Retail Food Emplrs. Joint Pension Fund v. Newmont Mining Corp.*, 276 F App'x 747, 749-50 (10th Cir 2008).

### d. FRCP 11(5) does not allow Plaintiffs' request for money fines against Marion County under FRCP 11(b)(2).

Plaintiffs request monetary sanctions against Marion County. Yet, FRCP 11(5)(A) prohibits the Court from imposing a monetary sanction "against a represented party" based on FRCP 11(b)(2). Marion County is obviously represented, so no monetary sanctions can be based on FRCP 11(b)(2).

### 4. There is no basis for sanctions under 28 USC § 1927.

The analysis above also applies here and need not be repeated. Only a few other points

are worth mentioning.

First, 28 USC § 1927 deals with vexatious litigants and does not authorize sanctions against "a party" like Marion County. *FTC v. Alaska Land Leasing, Inc.*, 799 F2d 507, 510 (9th Cir 1986). At most, by its plain text, this statute can only authorize sanctions against an "attorney or other person admitted to conduct cases in any court." *Id.*; 28 USC § 1927. Thus, this statute does not allow Plaintiffs' efforts to declare Marion County a vexatious litigant nor to shoehorn in actions by a party that occurred prior to the current motion, since the analysis is about a specific attorney.

Second, since 28 USC § 1927 only applies to an "attorney," it does not allow Plaintiffs' efforts to mix and match actions of other attorneys in its analysis of actions of a specific attorney.

Third, the statute only applies to an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 USC § 1927. This is obviously not applicable here for an attorney who has only filed one motion.[6]

Fourth, a specific finding of bad faith is required before a court can impose sanctions under 28 USC §1927. *MGIC Indem. Corp.,* 952 F2d at 1122. There is no demonstration of bad faith here.

### 5.  There is no basis for sanctions under the All Writs Act or Inherent Authority.

Just as with 28 USC § 1927, the analysis above also applies here and need not be repeated. Only a few other points are worth mentioning.

---

[6] Notably, the cases that Plaintiffs cite likewise do not support sanctions. For example, in *Trulis*, sanctions occurred only after an attorney continued a case with *multiple* filings despite (1) his clients releasing their claims; (2) his client's specific instructions to dismiss the case; and (3) no appeal was filed in another case that confirmed the release of his client's claims. *Trulis v. Barton*, 107 F.3d 685, 688-692 (9th Cir. 1995) (there were also allegations about filing a fictitious declaration). In *Peoro*, sanctions occurred only when a new adversary proceeding in bankruptcy court was filed and dismissed after losing (and not appealing) three prior bankruptcy decisions. *In re Peoro*, 793 F.2d 1048, 1049-51 (9th Cir. 1986).

Plaintiffs rely on *Fink v. Gomez*, 239 F.3d 989 (9th Cir 2001) as the source for the court to impose sanctions via its inherent authority, although they admit that sanctions under a specific rule is preferred. ECF 556 at 8-10. However, there must be "bad faith or willful disobedience of a court's order." *Fink*, 239 F3d at 992. There must also be specific findings. *Id.* at 994 The Court in *Fink* after reviewing case precedent established what amounts to a two-factor test for sanctions under the court's inherent authority: it require some type of willful action coupled with an additional factor such as frivolousness, harassment or, improper purpose. *Id* at 994. As previously stated the Limited Motion for Intervention has been brought in good faith and none of the factors are present to warrant sanctions under this Court's inherent authority.

Plaintiffs' argument under the All Writs Act also fails as it sets an even higher bar requiring substantive findings as to the frivolous or harassing nature of the litigant's actions. See *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir 1990). There has been no establishment of an abusive or lengthy history in this case, and this is emphasized by the fact that the 9th Circuit has allowed the appeal denying the second motion to intervene to continue by denying the Plaintiffs' motion to dismiss.

### 6. Due process and Rule 11 prevent a motion against "counsel" without specifying which counsel are specifically subject to the motion.

There are major constitutional due process issues with a motion that asks "the court to impose sanctions on Marion County and on its counsel." ECF 566 at 3. By failing to specify which counsel by name in their specific motion, Plaintiffs' motion violates basic constitutional due process protections regarding those unnamed counsel. The fact that the supporting memorandum later names some counsel does not save the motion itself from unconstitutionality, especially regarding those counsel who were not served.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

Similarly, FRCP 11(c)(1) only allows sanctions for violation of Rule 11(b). FRCP 11(c)(2) similarly requires a motion for sanctions to "describe the specific conduct that allegedly violates Rule 11(b)." FRCP 11(b), in turn, only applies to an attorney who presents a pleading to the Court or later advocates for it. Here, only Marion County Counsel Steve Elzinga signed the relevant filings and no counsel have appeared in court to advocate for it, so Plaintiffs cannot seek sanctions against any other counsel.[7]

FRCP 11(c)(2) also requires a motion for sanctions to be served under FRCP 5. In turn, FRCP 5 requires service on a specific party. As there was no service on counsel beyond Steve Elzinga and John Pettifer, Plaintiffs cannot seek sanctions against any other counsel. The Court does not have jurisdiction over counsel for Marion County who have not been served, let alone those who have never appeared in the matter nor ever worked on this case.

### 7.  The requested sanctions are massively overbroad and unproportional.

A sanction "must be limited to what suffices to deter repetition." FRCP 11.

"Because [Rule 11] is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories, courts have interpreted [Rule 11's] language to prescribe sanctions, including fees, only in the exceptional circumstance, where a claim or motion is patently unmeritorious or frivolous."

*Riverhead Sav. Bank v. National Mortg. Equity Corp.*, 893 F.2d 1109, 1115 (internal citations omitted). Even when there is a potential basis for sanctions, this Court has "give[n] counsel the benefit of the doubt and decline[d] to impose sanctions or issue a reprimand" since sanctions are "an extraordinary remedy" and "can have an unintended detrimental impact on an attorney's career and personal well-being." *W. Radio Servs. Co. v. Allen*, No. 6:14-00747-AA, 2015 US Dist LEXIS 202045, at *16-17 (D Or Apr. 17, 2015) (Aiken, J.).

---

[7] While FRCP 11(c)(1) allows sanctions against a "law firm" there is no law firm here.

Plaintiffs' overly broad sanctions request improperly seeks to block access to the courts and silence free speech of Marion County on matters unrelated to the motion at hand. Plaintiffs' requests go far beyond this by attempting to exclude the County and its counsel from raising concerns that directly impact the residents that it serves

Plaintiffs' main thrust of their articulated concerns in their response to Marion County's limited motion to intervene was concern about time, effort, and cost on appeal. Marion County offered for Marion County, DRO, and MPD to all agree that none of them would appeal whatever this Court decides on the motion for limited intervention. Plaintiffs declined. If Plaintiffs truly believed that there is 0% chance the Court will grant the motion—which would be necessary to seek sanctions—then they had nothing to lose. Notably, the offer was not conditioned on what Plaintiffs might choose to do regarding this threatened sanctions motion. Thus, Marion County has been reasonable, and sanctions are unnecessary here.

### 8. Objection to Plaintiffs' violation of Local Rule 7-2.

Local Rule 7-2 limits memoranda to "11,000 words, or in the alternative, 35 pages" with a certification of word count if it exceeds 35 pages. Plaintiffs' motion does not include a certification of word count so it must not exceed 35 pages. Plaintiffs' motion includes a memorandum that is 7 pages and a supplemental memorandum that is 8 pages. ECF 566; EDF 566-1. Although those 15 pages would be within the page limit standing alone, Plaintiffs' motion also says that they "incorporate their responses to the County's first, second, and third motions to intervene by reference. ECF 408, ECF 478, ECF 549." Adding these responses exceeds 35 pages. ECF 408 includes 16 pages of memorandum. ECF 478 is actually a filing by Marion County that includes 11 pages of memorandum, and if Plaintiffs assumedly meant ECF 480, that includes 16 pages of memorandum; either way, this is at least 11 more pages. ECF 549 includes

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

9 pages of memorandum. Altogether, this is 51 or 56 pages of memoranda—far more than the allowed 35 pages.

This district Court noted in a similar situation that "plaintiff's counsel violated the spirit, if not the letter, of Local Rule 7-2(B) when he imported an additional seventeen pages into their already full-length response brief." *Nichol v. City of Springfield*, No. 6:14-cv-01983-AA, 2017 U.S. Dist. LEXIS 199467, at *19 n.3 (D. Or. Dec. 3, 2017). The Court noted its "discretion to sanction that behavior by declining to consider the arguments in the incorporated brief[.]" *Id.*

Applying Plaintiffs' own aggressively incorrect sanctions standard to their own briefing should result in declining to consider any of the incorporated documents. Alternatively, Marion County acknowledges that under the correct sanctions standard outlined earlier in this brief, no sanction would be imposed against either Plaintiffs or Marion County. Marion County supports reasonable discretion but objects to any double standard.

**9.  The parties agree intervention is not necessary to submit this response to Plaintiffs' sanctions motion.**

*Amicus* Marion County, Marion County Counsel Steve Elzinga, State Defendants, and Plaintiffs MPD and DRO all agree that the Court can accept this response without any separate intervention. In the event the Court believes that limited intervention is necessary to consider this response, Marion County and Marion County Counsel Steve Elzinga are willing to submit a motion for such limited intervention.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Marion County and Marion County Counsel Steve Elzinga request that Plaintiffs' Motion for Sanctions Against Marion County and Its Counsel be denied in its entirety.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

Dated this 24th day of Feburary, 2025

_s/ Steve Elzinga_
Steve Elzinga, OSB# 123102
Of Attorneys for *Amicus* Marion County
555 Court St. N.E., Suite 5242
PO Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Email: selzinga@co.marion.or.us

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **Marion County and Marion County Counsel Steve Elzinga's Combined Response in Opposition to Plaintiffs' Motion for Sanctions Against Marion County and Its Counsel** upon interested counsel by the following indicated method on the date set forth below:

XX By electronic means through the Court's Case Management/Electronic Case File system on the date set forth below;

\_\_\_\_ By faxing a copy thereof to each attorney at each attorney's last-known facsimile number on the date set forth below;

\_\_\_\_ By mailing a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorney's last-known office address listed above and causing it to be deposited in the U.S. mail at Salem, Oregon on the date set forth below;

\_\_\_\_ By causing a copy thereof to be hand-delivered to said attorney at each attorney's last-known office address listed above on the date set forth below;

Dated this 24th day of Feburary, 2025

        *s/ Steve Elzinga*
        Steve Elzinga, OSB# 123102
        Of Attorneys for *Amicus* Marion County
        555 Court St. N.E., Suite 5242
        PO Box 14500
        Salem, OR 97309
        Telephone: (503) 588-5220
        Email: selzinga@co.marion.or.us