IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON[1], METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>        Plaintiffs,<br>  v.<br><br>SAJEL HATHI, in her official capacity as Director of the Oregon Health Authority, and SARA WALKER, in her official capacity as Interim Superintendent of the Oregon State Hospital,<br><br>        Defendants. | Case No.: 3:02-cv-00339-AN (lead)<br>             3:21-cv-01637-AN<br>             (consolidated)<br><br>OPINION AND ORDER |

On January 9, 2025, *amicus curiae* Marion County (the "County") moved, for the third time, to intervene in this case pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a) and (b), this time to respond to a motion for order to show cause filed by plaintiff Disability Rights Oregon's ("DRO"). In addition to (and before any ruling on) the motion to intervene, the County filed a proposed response to DRO's motion. On February 7, 2025, DRO and plaintiff Metropolitan Public Defenders Incorporated ("MPD") moved this Court to impose sanctions on the County and its counsel under the All Writs Act, 28 U.S.C. § 1651(a); the vexatious litigant statute, 28 U.S.C. § 1927; FRCP 11; and the Court's inherent authority.

For the reasons stated below, plaintiffs' Motion for Imposition of Sanctions, ECF [566], is GRANTED in part and DENIED in part. The Court imposes sanctions against the County and attorney Steve Elzinga under its inherent authority and STRIKES *amicus curiae* Marion County's Response to Motion for Order to Show Cause, ECF [547], from the record. The Court declines to impose sanctions against any other counsel and declines to impose sanctions against either the County or Elzinga under the

---

[1] Plaintiff Disability Rights Oregon ("DRO") is named on the docket as "Oregon Advocacy Center" and has been inconsistently and interchangeably referred to as both DRO and Oregon Advocacy Center since approximately January of 2023. The Court uses "DRO" in this Opinion and Order.

All Writs Act, the vexatious litigant statute, or FRCP 11.

## LEGAL STANDARD

### A. All Writs Act

Under the All Writs Act, 28 U.S.C. § 1651(a), a court may issue "all writs necessary or appropriate to aid of their respective jurisdictions." Such writs may include, for example, "enjoining litigants with abusive and lengthy histories." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). The All Writs Act permits courts to issue orders preventing re-litigation of decided matters. *Wood v. Santa Barbara Chamber of Comm., Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983). A court's power under the All Writs Act must only be exercised with appropriate notice, adequate factual findings to permit review, actual findings of frivolousness or a pattern of harassment, and an order of appropriate breadth. *De Long,* 912 F.2d at 1147.

### B. Vexatious Litigant Statute

Under the vexatious litigant statute, a court may sanction "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" and may require the sanctioned attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Unlike a sanction imposed under FRCP 11, which focuses on the legitimacy of particular filings, a sanction imposed under the vexatious litigant statute may address a litigant's overall conduct and its effect. *See Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). The statute requires that any sanctions imposed "be supported by a finding of subjective bad faith.'" *In re Keegan Mgmt. Co., Secs. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (quoting *New Ala. Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *New Ala. Dev. Corp.*, 869 F.2d at 1306 (internal citation and quotation marks omitted). In this way, "recklessness suffices[,]" *Fink*, 239 F.3d at 993, so long as that recklessness is coupled with "a finding that the[] [offending litigant] acted with subjective bad faith or with an intent to harass[,]" *In re Keegan Mgmt. Co.,*

*Secs. Litig.*, 78 F.3d at 436.

**C.    FRCP 11**

Federal Rule of Civil Procedure ("FRCP") 11(b) states in full:

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
  (1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
  (2) The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
  (3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;
  (4) The denials of factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
  (5) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a belief or a lack of information."

Fed. R. Civ. P. 11(b). If a "court determines that Rule 11(b) has been violated," it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). An objective standard of reasonableness applies to determinations of frivolousness and improper purpose. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830-31 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990). Inquiries into the frivolity of a filing "will often overlap" with improper purposes inquiries because "evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).

**D.    The Court's Inherent Authority**

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). Those inherent powers include the authority "'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). A court's

3

inherent authority to sanction litigants "'extends to a full range of litigation abuses.'" *Fink*, 239 F.3d at 992 (quoting *Chambers*, 501 U.S. at 46-47). It includes both the circumstances that implicate FRCP 11 (the legitimacy of a single filing) and the vexatious litigant statute (a litigant's overall course of conduct and its effect), as well as circumstances involving technically truthful assertions or nonfrivolous filings that are made for an improper purpose. *See id.*

To impose sanctions under its inherent authority, a court must find "bad faith or conduct tantamount to bad faith" or that the offending litigant willfully disobeyed a court order. *Id.* at 992, 994 (citing *Chambers*, 501 U.S. at 46-47). Bad faith "includes a broad range of willful improper conduct[,]" such as, for example, when "an attorney 'knowingly or recklessly raises a frivolous argument, [] argues a meritorious claim for the purpose of harassing an opponent[,]'" or "has acted recklessly [and with] an improper purpose[.]" *Id.* at 994 (internal quotation marks omitted) (quoting *In re Keegan Mgmt. Co.*, 78 F.3d 431 (9th Cir. 1996)). To be clear, "a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous[;]'" rather, "sanctions are justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Id.* at 992 (emphasis in original) (internal quotation marks omitted) (quoting *In re Itel Secs. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986)). An "improper purpose" includes, for example, "attempt[ing] to gain tactical advantage in another case[,]" *id.* (citing *Itel*, 791 F.2d at 675), or acting with intent to mislead the court, *id.* at 993 (citing *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993)).

Ultimately, courts are within their discretion to impose sanctions under their inherent authority rather than FRCP 11 or the vexatious litigant statute. *Id.* at 944. However, action under the more specific rule or statute is generally preferred. *Chambers*, 501 U.S at 33. Sanctions issued under the court's inherent authority may take a variety of forms, including "strik[ing] items from the docket as a sanction for litigation conduct." *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (2010) (collecting cases). Any monetary sanctions imposed must be compensatory, as the court's inherent authority is limited to assessing only the direct costs that result from the misconduct at issue. *Goodyear Tire & Rubber Co.*, 581 U.S. at 108-09. Finally, a court maintains its inherent authority, "including the 'power to impose silence,

4

respect, and decorum[,]'" even when it has retained only limited jurisdiction over a portion of the suit. *Ready Transp., Inc.*, 627 F.3d at 404 (quoting *Chambers*, 501 U.S. at 43).

## BACKGROUND

The factual background of this case is well set out in prior opinions and orders. *See, e.g.*, Op. & Order of Jan. 9, 2023, ECF [338]; Op. & Order of May 25, 2023, ECF [395]. As relevant to the present motion, the County has participated in this matter as *amicus curiae* since August 29, 2022. Mins. of Proceedings of August 29, 2022, ECF [269].

In June of 2023, the County sought to intervene in this case based on the indirect effects of the September 1, 2022, "Order to Implement Neutral Expert's Recommendations" (the "September 2022 order"), ECF [271], on the County's programs and services and the anticipated effects of a pending motion to amend the September 2022 order. Marion County First Mot. to Intervene, ECF [402], at 2-3. The County's motion to intervene was denied at oral argument on June 29, 2023. Mins. of Proceedings, ECF [415]. In denying the motion, U.S. District Judge Michael Mosman stated on the record:

> "I disagree that Marion County has met the standard for either mandatory or permissive intervention, both on the merits of the rule, and particularly on timeliness. Certainly some facts have changed, but the sort of litigation posture of the parties and who is advancing, for example, Marion County's interests and who isn't, that's been a longstanding situation that hasn't dramatically changed by altered facts on the ground."

Tr. of Oral Arg. of June 29, 2023, ECF [421], 19:23-20:5. The County filed a notice of appeal on July 27, 2023, ECF [424], and the Ninth Circuit affirmed the denial on May 10, 2024, ECF [494].

On July 3, 2023, Judge Mosman issued a "Second Amended Order to Implement Neutral Expert's Recommendations" (the "second amended order"), ECF [416], which is the operative injunctive order in this case. On February 9, 2024, Marion County Circuit Court Judge Audrey Broyles ordered the Oregon State Hospital to provide outpatient restoration services to a criminal defendant. Op. & Order of March 6, 2024, ECF [475], at 2. The defendant had already received the maximum duration of restoration services authorized under the second amended order, but he was not restored to competency. *Id.* On March 6, 2024, Judge Mosman issued an order (the "March 2024 order") holding that Judge Broyles' order violated the Supremacy Clause because it required the Oregon State Hospital to provide the defendant with

5

restoration services that exceeded the second amended order's maximum duration.

On March 29, 2024, the County filed a second motion to intervene based on allegations that, as a result of the September 2022 order, "the County's community restoration caseload tripled while placement options dwindled." Marion County Second Mot. to Intervene ("2d Mot. to Intervene"), ECF [478], at 2. The County argued that the March 2024 order "further increase[d] the financial and administrative burdens on the County" because "[b]y prohibiting Oregon State Hospital . . . outpatient services as an alternative to community restoration, the County will be presented with even more individuals requiring services." Id. This, the County alleged, "further burden[ed] the County's already strained resources" because it created "an increase in the number of individuals remaining in jail," "an increased number of individuals charged with violent crimes simply leaving services without receiving stabilizing treatment, and "obvious fiscal consequences to the County from the increase in services that is caused by turning individuals away from outpatient services." Id. at 3. The County also indicated in its motion that, if allowed to intervene, it intended to "appeal the March 2024 [] order." 2d Mot. to Intervene 3; Proposed Notice of Appeal, ECF [478-1], at 1 (indicating an intent to appeal only a judgment or order dated March 6, 2024). This Court denied the County's second motion to intervene on April 4, 2024. Op. & Order of April 4, 2024, ECF [485]. In denying the motion, this Court found that the County's motion was not timely because it was "brought twenty-one years after judgment was entered, and four years into the enforcement stage of the proceedings, would result in substantial prejudice to the parties, and suffer[ed] from, at best, a one-and-a-half-year delay with no justifiable reason for the delay." Id. at 7. The County filed a notice of appeal on April 5, 2024, wherein it appealed the March 2024 Order and three additional orders. Notice of Appeal, ECF [486].

On January 7, 2025, DRO filed a motion for order to show cause why defendants should not be held in contempt and for a remedial order (the "contempt motion"). Pl. DRO Mot. for Order to Show Cause ("DRO Mot."), ECF [540]. The contempt motion asks the Court to impose incremental monetary civil contempt sanctions and to modify admissions to and discharges from the state hospital in various ways. MPD filed a partial joinder to the contempt motion on January 23, 2025. Pl. MPD Partial Joinder to DRO

6

Mot., ECF [557].

The County then moved, for a third time, to intervene in this case, alleging that DRO's contempt motion proposes "major legislative policy changes that "inherently implicate[]" the County's rights. Marion County 3d Mot. to Intervene ("3d Mot. to Intervene"), ECF [544], at 4. The County argued that its third motion to intervene was timely because timeliness is measured under the totality of the circumstances, and here, the contempt motion created a change in circumstances and ushered the litigation into "a new stage" that made intervention appropriate. Marion County Reply Supp. 3d Mot. to Intervene, ECF [562], at 2. The County filed its response to the contempt motion the same day. Marion County Resp. to DRO Mot., ECF [547]. Defendants took no position on the third motion to intervene, but plaintiffs opposed it. *See* Pls. Resp. Opp'n to 3d Mot. to Intervene, ECF [549]. The Court denied the third motion to intervene on March 11, 2025, finding it—like the first and second motions to intervene—to be untimely. Op. & Order of March 11, 2025, ECF [581].

After the County filed its third motion to intervene, on February 7, 2025, plaintiffs filed a motion for imposition of sanctions (the "sanctions motion") against the County "and [] its counsel." Pls. Mot. for Imposition of Sanctions ("Pls. Mot. for Sanctions"), ECF [566], at 2. Plaintiffs seek "some or all of the following sanctions": (1) "[s]trike Marion County's Third Motion to Intervene from the record"; (2) "[d]eclare Marion County and its attorneys to be vexatious litigants"; (3) "[r]evoke Marion County's role as an amicus in these proceedings"; (4) "[p]rohibit Marion County from filing further motions, memoranda, or other documents in this case or from appearing in court proceedings"; (5) "[i]mpose an appropriate monetary sanction on Marion County and its attorney"; and/or (6) "[o]rder Marion County and its attorney to reimburse [p]laintiffs for any fees, costs, and litigation expenses associated with responding to its motions and other filings." *Id.* at 3. The County filed its response in opposition to the sanctions motion on February 24, 2025. Marion County & Steve Elzinga Resp. Opp'n to Pls. Mot. for Sanctions ("Marion County & Elzinga Resp."), ECF [571]. Plaintiffs filed a reply in support of the sanctions motion on March 7, 2025. Pls. Reply Supp. Mot. for Sanctions, ECF [575]. All the County's filings related to the third motion to intervene (the third motion to intervene, accompanying response to the contempt motion, and reply in

support of the third motion to intervene) and the sanctions motion (the reply in opposition) are signed by attorney Steve Elzinga ("Elzinga"). Elzinga did not sign any filings related to the County's first or second motions to intervene and appears on the docket for the first time on the date the County filed its third motion to intervene: January 9, 2025.

A two-day hearing on the contempt motion took place on March 12 and 13, 2025, and at its conclusion, the Court took the contempt motion and MPD's partial joinder under advisement. Mins. of Proceedings of March 12, 2025, ECF [584]; Mins. of Proceedings of March 13, 2025, ECF [586].

## DISCUSSION

**A.     Local Rule 7-2**

As an initial matter, the County and Elzinga argue that plaintiffs' sanctions motion violates Local Rule 7-2. Local Rule 7-2(b) provides:

> "Without prior Court approval, memoranda . . . may not exceed 11,000 words, or in the alternative, 35 pages. If the document exceeds the page limit, then the party must certify compliance with the word-count limit. This limitation includes headings, footnotes and quotations, but excludes the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel."

When a party violates Local Rule 7-2 by exceeding its word count or page limit through incorporation of other pleadings by reference, the court has discretion to sanction that violation "by declining to consider the arguments in the incorporated brief[.]" *Nichol v. City of Springfield*, 6:14-cv-01983-AA, 2017 WL 6028465, at *6 n.3 (D. Or. Dec. 3, 2017) (citation omitted).

Plaintiffs' sanctions motion does not include a certification of word count. As such, to comply with Local Rule 7-2, it may not exceed thirty-five pages. The sanctions motion is seven pages and includes an eight-page supplemental memorandum, thereby totaling fifteen pages. The County and Elzinga argue, however, that because the sanctions motion "incorporat[es] [plaintiffs'] arguments in opposition to Marion County's" first, second, and third motions to intervene, which are, respectively, sixteen, sixteen, and nine pages, it totals approximately fifty-six pages of memoranda. Marion County & Elzinga Resp. 26.

The Court declines to deny plaintiffs' sanctions motion on this basis. The Court is

8

cognizant of the potential for gamesmanship presented by a litigant's incorporation by reference of prior pleadings to circumvent the limitations of Local Rule 7-2. In this circumstance, however, plaintiffs' reference to its oppositions to the County's three motions to intervene are, it appears, made primarily to illustrate the vigorousness with which plaintiffs have opposed the County's intervention and the County's behavior in continuing to pursue intervention despite plaintiffs' repeated arguments (and this Court's repeated rulings) that the County's intervention is not timely or appropriate. Unlike the response in opposition to summary judgment filed in *Nichol*, which did not address the relevant legal issue and only referenced legal arguments made in prior pleadings, the sanctions motion sets forth relevant law and argument regarding sanctions and appears to reference prior responses in opposition primarily, as noted, for illustrative purposes regarding the County's ongoing conduct in this case. As such, and without finding that a violation in fact occurred, the Court declines to deny plaintiffs' sanctions motion on this basis.

**B.      Sanctions**

   1.    *Preliminary Findings Regarding the County and its Counsels' Conduct*

Plaintiffs' motion arises from the filing of the County's third motion to intervene, which plaintiffs argue is an extension of a history of misconduct by the County and its counsel in this case. The crux of plaintiffs' argument is, in essence, twofold. First, plaintiffs argue that the County and its counsel, "having already lost two motions to intervene in this matter on timeliness grounds[,]" knew or should have known "that further intervention into a matter filed [twenty-three] years ago, decades into its enforcement processes, and six years after motions for contempt were first filed by [p]laintiffs would be frivolous." Pls. Mot. for Sanctions 4. Second, plaintiffs argue that the third motion to intervene is styled as being for an implausible limited purpose that, coupled with the County's own contradictory statements, evidences an attempt to mislead the Court into granting a broader-than-intended scope of intervention. In opposition, the County and Elzinga argue that sanctions are not appropriate for a variety of reasons, namely being that the cited authorities do not support findings of frivolousness or a pattern of harassment, vexatiousness, or bad faith.

9

a.       Frivolousness and Pattern of Harassment

Regarding frivolousness, plaintiffs assert that the arguments set forth in the third motion to intervene were not "justified by a nonfrivolous argument for extending, modifying, or reversing current law, or creating new law." Pls. Mot. for Sanctions 5 (citing Fed. R. Civ. P. 11(b)(2)).  Plaintiffs argue this is evidenced by the fact that the third motion to intervene sets forth much of the same law and arguments that were rejected by this Court when denying the County's first two motions to intervene, and especially where the Court's denial of the first motion to intervene has been affirmed by the Ninth Circuit on appeal. In opposition, the County and Elzinga argue that the third motion to intervene "cannot be considered frivolous" because plaintiffs' sanctions motion does not address the substantive arguments set forth in the third motion to intervene; plaintiffs' arguments regarding the County's intended scope of intervention are speculative and conclusory; a motion that is within a court's discretion is, "by definition, [] not frivolous"; and plaintiffs raised much the same argument when they moved the Ninth Circuit, and the Ninth Circuit declined, to dismiss the County's appeal of this Court's denial of the second motion to intervene.  Marion County & Elzinga Resp. 6-7, 11-13, 15.

Regarding harassment, plaintiffs argue that the third motion to intervene "indicates a particular intent to harass [p]laintiffs, to delay the litigation, and to increase the cost of litigation needlessly[,]" and demonstrates the County's "bitter[] oppos[ition]" to "any efforts at redress in this matter that will impose any costs or responsibility on the County beyond the bare minimum the County believes to be desirable."  Pls. Mot. for Sanctions 6.  In opposition, the County and Elzinga argue that the third motion to intervene was not frivolous and was filed to protect the County's constitutional rights, and that plaintiffs' arguments regarding harassment are entirely unsupported, particularly where plaintiffs failed to meaningfully engage with the substantive arguments set forth in the third motion to intervene.  Marion County & Elzinga Resp. 6-11.

The Court declines to make a finding of frivolousness or a pattern of harassment at this time.  To be clear, the County's arguments in its third motion to intervene were not well taken by the Court, and the County should be wary that any further motions to intervene must adequately address the timeliness

issue that has now been thrice ruled upon. Nonetheless, on the record before it, the Court does not yet find the County's third motion to intervene to reach the point of frivolousness or the County or any of its counsels' conduct to reach the point of harassment. Because the Court declines to make a finding of frivolousness or a pattern of harassment, the Court is without authority to exercise its power under the All Writs Act. *See De Long*, 912 F.2d at 1147.

        b.      Bad Faith

Plaintiffs argue that the third motion to intervene was filed "because the County wishes in bad faith to extend, protract, and subvert these proceedings[,]" and that "[t]he County's bad faith is evidenced, in part, by its false assurance that it is 'only asking to respond to a newly filed motion with new concepts,' rather than admitting its broader intent in intervention." Pls. Mot. for Sanctions 8. Plaintiffs further argue that "[a] party demonstrating good faith does not need to mislead the court, nor to advance a legal argument it knows is meritless[,]" and that the County and its counsels' conduct in this case includes "serial, bad-faith actions in filing repetitious pleadings and advancing frivolous theories of intervention." *Id.* at 9. In opposition, the County and Elzinga argue that "[t]here is no demonstration of bad faith here[,]" where the third motion to intervene was brought in good faith and sets forth non-frivolous arguments, and where the County seeks only to exercise its constitutional rights. Marion County & Elzinga Resp. 23.

The Court finds that the County and Elzinga's conduct constituted bad faith or conduct tantamount to bad faith. The County's third motion to intervene is captioned as a limited one, and the motion argues that the County seeks to intervene "for the **limited** purpose of responding to the recently filed [contempt motion]." 3d Mot. to Intervene 2 (emphasis in original). However, as plaintiffs point out, and as further explained below, the County (1) could have filed its response as an *amicus*, and (2) sets forth contradictory statements regarding its desired scope of intervention. Indeed, the County has filed pleadings as an *amicus* before on multiple occasions, and it and Elzinga at least implicitly acknowledge its ability to do so in their response to plaintiffs' sanctions motion. *See* Marion County & Elzinga Resp. 7 (acknowledging that "the Court can accept this response [to plaintiffs' sanctions motion] without any separate intervention"). They offer no explanation for why intervention is necessary to file a response that

11

could be filed as an *amicus*. Instead, the County explains that the Court can simply limit its involvement to whatever scope the Court desires. *See* Marion County Reply Supp. 3d Mot. to Intervene 8 (arguing that the Court is free to impose limits on the County's ability, as an intervenor, to raise new claims or take discovery). But this explanation evinces the very desire that the County protests it does not have; indeed, it reveals the County's understanding to be that granting the third motion to intervene would give the County the ability to raise new claims or take discovery *unless otherwise limited* by the Court. The County cannot have it both ways; litigants are not entitled to "perpetually alter[] their line of argument as the moment suits them" to avoid sanctions. *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 709 (7th Cir. 2016), *opinion modified on reh'g*, 832 F.3d 699 (7th Cir. 2016). Even if the Court has declined to make a finding of frivolousness, the County and Elzinga's conduct was reckless and undertaken for an improper purpose—that is, to mislead the Court as to the County's desired scope of intervention.

Simply put, the County's argument that it sought only to intervene to file a response to the contempt motion, when considered either standing alone or in the overall context of this case's history, is neither reasonable nor plausible. Standing alone, the County's own motion contradicts its supposed limited purpose, stating that "allowing Marion County's limited intervention is the best way to ensure the Court's order is vigorously defended when the state appeals." 3d Mot. to Intervene 2-3. Likewise, the County's subsequent pleadings are contradictory; though the County professes to continue to seek only to intervene for the limited purpose of responding to the contempt motion, it also states that this case "would benefit from Marion County's participation as a party[,]" that "only Marion County can be counted on to fully defend the Court's monetary fines when the State appeals[,]" and that "[w]hat Marion County does gain by intervention is additional rights to participate in *defense* of any decision by this Court if *another party* appeals." *See* Marion County Reply Supp. 3d Mot. to Intervene 2, 7 (emphases in original). Finally, considering the County's representations in the context of this case's history, the Court's suspicion as to the County's purported purpose is heightened, particularly where the County represented in its second motion to intervene that it sought intervention in part to "appeal the March 2024 [] Order[,]" 2d Mot. to Intervene 3 & Ex. 1 at 1, but then proceeded to appeal not only that order, but also three additional orders "that it

12

never identified to the Court as part of its alleged purpose for intervention[,]" Pls. Resp. Opp'n to 3d Mot. to Intervene 3-4 (citing Notice of Appeal, ECF [492]).

In sum, the County and Elzinga's obfuscation of the County's desired scope of intervention was reckless and undertaken for an improper purpose, and the Court finds that they acted in bad faith.

c. Vexatiousness

Regarding vexatiousness, plaintiffs set forth many of the same arguments, including that the frivolousness of the third motion to intervene and the bad faith evidenced by the County and its counsels' conduct warrant sanctions under the vexatious litigant statute. In opposition, the County and Elzinga argue that sanctions under this statute may only be levied against an "attorney or other person admitted to conduct cases in any court[,]" not against a party, and therefore cannot be issued against the County. Marion County & Elzinga Resp. 23 (citing *F.T.C. v. Ala. Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986)). The County and Elzinga also argue that the statute does not support sanctions in the form of "declar[ing] Marion County [to be] a vexatious litigant nor [] shoehorn[ing] in actions by a party that occurred prior to the [sanctions] motion, since the analysis is about a specific attorney." *Id.* (citing *F.T.C.*, 799 F.2d at 510). The County and Elzinga further argue that sanctions are not appropriate under this statute because the Elzinga cannot be said to have "multiplie[d] the proceedings in [the] case unreasonably and vexatiously" where he "has only filed one motion"—the third motion to intervene—and was not undersigned on either of the prior two motions to intervene. *Id.* Finally, the County and Elzinga argue that "[t]here is no demonstration of bad faith here" and that sanctions under the vexatious litigant statute are thus not appropriate. *Id.*

Sanctions against the County are not appropriate under the vexatious litigant statute which, by its plain language, applies only to "attorney[s] or other person[s] admitted to conduct cases in any court[.]" 28 U.S.C. § 1927; *see F.T.C.*, 799 F.2d at 510 (noting, in relevant part, that the statute "does not authorize recovery from a party"). Thus, the Court considers only whether sanctions are appropriate under the vexatious litigant statute as applied to Elzinga. Though plaintiffs raise passing reference to theories of other counsels' involvement, without more, the Court considers plaintiffs' arguments only as applied to

13

Elzinga, as the undersigned counsel of all pleadings at issue.

Having already found that Elzinga acted in bad faith because he acted recklessly and for an improper purpose, sanctions are permissible against Elzinga under the vexatious litigant statute. *See In re Keegan Mgmt. Co., Secs. Litig.*, 78 F.3d at 436. However, particularly considering the Court's above findings regarding frivolousness and harassment, the Court declines to exercise its discretion to award sanctions under this authority. The Court does not, at least at this time, believe monetary sanctions against either the County or Elzinga to be necessary.

    2.    *Basis of Sanctions Imposed*

Having found sanctions to be inappropriate under the All Writs Act and having declined to exercise the Court's discretion to impose sanctions under the vexatious litigant statute, all that remains before the Court is analysis of FRCP 11 and the Court's inherent authority. The Court addresses each in turn.

    a.    FRCP 11

The County and Elzinga's arguments regarding FRCP 11 largely center around frivolousness. Having decided that issue already, the Court does not address these arguments here. However, "FRCP 11 provides two independent grounds for the imposition of sanctions:" frivolousness *and* improper purpose. *Westlake N. Prop. Owners Ass'n v. Thousand Oaks*, 915 F.2d 1301, 1305 (9th Cir. 1990) (en banc). Though FRCP 11 does not mention misleading a court in its reference to improper purpose, the language of the rule makes clear that it contemplates a range of possible improper purposes, Fed. R. Civ. P. ("an attorney or unrepresented party certifies that . . . [the filing at issue] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"), and applicable law makes clear that misleading a court is an improper purpose, *see Fink*, 239 F.3d at 993 (citing *Yagman*, 987 F.2d at 628). Thus, having found as part of the bad faith analysis that the County and Elzinga acted with an improper purpose, sanctions are permissible under FRCP 11(b).

Nonetheless, the Court declines to exercise its discretion under this authority. The Court is cognizant of the fact that FRCP 11 "is an extraordinary remedy" and "must not be construed so as to

14

conflict with the primary duty of an attorney to represent [their] client zealously." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988). The Court is also cognizant that this case involves decades of litigation with wide-reaching issues and that zealous advocacy is at play here. As with the vexatious litigant statute, the Court does not find FRCP 11 sanctions to be necessary at this time and therefore declines to exercise its discretion to impose sanctions on this basis.

    b.  The Court's Inherent Authority

Finally, the Court considers sanctions under its inherent authority. The County and Elzinga argue that sanctions cannot issue under the Court's inherent authority because there must be "specific findings" of "'bad faith or willful disobedience of a court's order[,]'" such as finding "some type of willful action coupled with an additional factor such as frivolousness, harassment or, improper purposes." Marion County & Elzinga Resp. 24 (quoting *Fink*, 239 F.3d at 992). However, having already made a finding of recklessness coupled with improper purpose, and thus a finding of bad faith, the Court is well within its discretion to sanction the County and Elzinga under the Court's inherent authority. *See Fink*, 239 F.3d at 992 (citation omitted) ("In reviewing sanctions under the court's inherent power, [the Ninth Circuit's] cases have consistently focused on bad faith."). Though application of the more specific rule or statute is generally preferred, as previously noted, "[i]t is well settled[] that the district court may, in its informed discretion, rely on inherent power rather than the federal rules or [section] 1927." *Id.* at 994 (citing *Chambers*, 501 U.S. at 50). The Court finds it appropriate to do so here, where the County and Elzinga have acted "*for an improper purpose*—even if the act consist[ed] of making . . . a non-frivolous argument." *Id.* at 992 (emphasis in original).

The final question remaining before the Court is what sanction, or sanctions, are appropriate to impose. Although the County and Elzinga acted in bad faith in misrepresenting the intended scope of intervention, their conduct is not so severe as to warrant revocation of *amicus* status, limiting their ability to file, or imposing monetary sanctions. Instead, the Court strikes the County's response to the contempt motion from the docket. That response is appropriately filed as an *amicus*, *not* as an intervenor or proposed-intervenor. This sanction is not punitive, as is required when invoking the Court's inherent

authority, and the Court considers this to be "'an appropriate sanction for conduct which abuse[d] the judicial process.'" *Goodyear Tire & Rubber Co.*, 581 U.S. at 107 (quoting *Chambers*, 501 U.S. at 44-45).

## CONCLUSION

For the reasons stated above, plaintiffs' Motion for Imposition of Sanctions, ECF [566], is GRANTED in part and DENIED in part. Sanctions are imposed against *amicus curiae* Marion County and attorney Steve Elzinga under the Court's inherent authority as follows: *amicus curiae* Marion County's Response to Motion for Order to Show Cause, ECF [547], is STRICKEN from the record. The Court declines to award sanctions against any other counsel and declines to award sanctions against either Marion County or Steve Elzinga under the All Writs Act, the vexatious litigant statute, or FRCP 11.

IT IS SO ORDERED.

DATED this 20th day of March, 2025.

*[signature]*
Adrienne Nelson
United States District Judge